# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
           Plaintiff,                     )
                                          )     Civil No. 99-CV-02496 (GK)
    v.                                     )
                                          )     Next scheduled court appearance:
PHILIP MORRIS USA INC.,                   )     March 15, 2004
    f/k/a PHILIP MORRIS INC., et al.,     )
                                          )     **EXPEDITED CONSIDERATION**
           Defendants.                     )     **REQUESTED**
_____)

### UNITED STATES' MOTION TO QUASH SUBPOENAS ISSUED BY COUNSEL FOR NEIL H. KOSLOWE, SHEARMAN & STERLING, AND BATAS

The United States respectfully moves to quash five subpoenas issued and signed by counsel for Neil H. Koslowe, Shearman & Sterling, and BATAS on February 4, 2004. The subpoenas invoke the authority of the Court to command that four government attorneys appear for depositions on February 9 and 10, 2004, and that documents be produced on February 10, 2004. The subpoenas were issued in an effort to obtain discovery in response to the United States' motion to disqualify Mr. Koslowe and his law firm, Shearman & Sterling, from representing BATAS in this action, filed January 21, 2004. As shown in the United States' accompanying memorandum, none of the discovery sought will assist the Court in resolving the issues presented by the United States' motion; even if any discovery were appropriate, prior leave of Court would have been required before seeking it; and the subpoenas were not properly served and are therefore void and should be quashed. This motion is brought pursuant to Fed. R. Civ. P. 45(c)(3)(A), 26(c), and 26(b)(2), as well as the Court's inherent authority.

The subpoenas' validity was discussed at length during a meet-and-confer session held at the end of the day on Wednesday, February 4, 2004,[1] as well as at length during an emergency Special Master teleconference held the following evening, Thursday, February 5, 2004, on the United States' proposed motion to quash.  At a status conference before the Court previously scheduled for Friday, February 6, 2004, the United States orally moved that the orders be quashed, pursuant to Fed. R. Civ. P. 7(b)(1).  After discussing the issue with the parties, the Court directed the United States to prepare and file this motion in written form by Monday, February 9, 2004.  The United States has therefore fulfilled all applicable meet-and-confer requirements.

For the reasons stated above and in the accompanying memorandum, the United States respectfully requests the Court quash all five subpoenas and enter the attached Proposed Order.

---

[1] Copies of the subpoenas were served on counsel for the United States less than ten minutes before this meet-and-confer session; counsel for Mr. Koslowe, Shearman & Sterling, and BATAS had not consulted with the United States before issuing and signing the subpoenas.

2

Dated:  February 9, 2004
   Washington, D.C.

            Respectfully submitted

            PETER D. KEISLER
            Assistant Attorney General


            _____
            SHARON Y. EUBANKS (D.C. Bar No. 420147)
            Director, Tobacco Litigation Team


            _____
            STEPHEN D. BRODY  (D.C. Bar No. 459263)
            Deputy Director, Tobacco Litigation Team


            _____
            DANIEL K. CRANE-HIRSCH
            Trial Attorney, Tobacco Litigation Team


            _____
            CAROLYN I. HAHN
            Trial Attorney, Tobacco Litigation Team
            Torts Branch, Civil Division
            United States Department of Justice
            Post Office Box 14524
            Washington, D.C. 20044-4524
            Telephone: (202) 616-4185

            Attorneys for Plaintiff
            United States of America

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 99-CV-02496 (GK) |
| v. | ) | |
| | ) | Next scheduled court appearance: |
| PHILIP MORRIS USA INC., | ) | March 15, 2004 |
| f/k/a PHILIP MORRIS INC., et al., | ) | |
| | ) | **EXPEDITED CONSIDERATION** |
| Defendants. | ) | **REQUESTED** |
| _____ | ) | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF ITS
### MOTION TO QUASH SUBPOENAS ISSUED BY COUNSEL FOR
### NEIL H. KOSLOWE, SHEARMAN & STERLING, AND BATAS

### INTRODUCTION

In accord with the Court's instruction at the February 6, 2004 status conference, the

United States respectfully submits this motion to quash four subpoenas for testimony (one of

which also includes a demand for documents) and a document subpoena directed to a custodian

of records. The subpoenas were issued late in the day on Wednesday, February 4, 2004, with

return dates on Monday and Tuesday, February 9 and 10, 2004; the first deposition was

scheduled to begin at 10:00 a.m. on Monday, February 9, 2004.

As shown below, the subpoenas should have been issued, at all, only with prior leave of

Court, and the relevant standards are not satisfied here. The subpoenas should be quashed

because they would not provide the Court with any information that it needs to resolve the issues

presented by the United States' disqualification motion, because they seek privileged and

protected information, and because of the deliberate delay and conspicuous disregard shown by

Mr. Koslowe, Shearman & Sterling and BATAS towards this Court's Local Rules, this Court's

own orders, and the Federal Rules of Civil Procedure.

**PROCEDURAL HISTORY**

On January 6, 2004, the United States engaged in an extensive meet-and-confer session

with counsel for Mr. Koslowe and Shearman & Sterling[1] on its proposed motion to disqualify

them from representing BATAS. (Even though the meet-and-confer session was scheduled by

Mr. Koslowe on behalf of BATAS, neither Mr. Koslowe nor any other counsel for BATAS

participated. Tr. 1/6/04 meet-and-confer at 2 (ex. 1).) During the meet-and-confer, Mr. Marzen

did not dispute that Mr. Koslowe had been engaging in informal discovery efforts by contacting

former Department of Justice colleagues. Id. at 55-58. In fact, Mr. Marzen requested the United

States' permission to continue making such contacts and conducting such informal discovery,

and counsel for the United States answered that we had no objection to Mr. Koslowe or

Shearman & Sterling's doing so, provided that they did not seek privileged information from

government employees. Id. at 57-58. In addition, the United States provided Mr. Koslowe,

Shearman & Sterling and BATAS with documents, including Mr. Koslowe's time records from

Coyne Beahm and American Advertising, as well as the Justice Department, Civil Division's

time sheet.

At the end of the January 6, 2004 meet-and-confer, Mr. Marzen requested additional time

– until January 12, 2004 – to consider the disqualification issue and to decide whether Mr.

Koslowe and Shearman & Sterling would voluntarily withdraw. It was only at the end of the day

---

[1] Mr. Marzan explicitly stated during the meet-and-confer session that he was not representing BATAS, but rather only Mr. Koslowe and Shearman & Sterling. Tr. 1/6/04 meet-and-confer at 15 (ex. 1).

2

on January 12, 2004 that the United States learned that Mr. Koslowe and Shearman & Sterling would not agree to voluntarily withdraw.  The United States then filed its disqualification motion on Wednesday, January 21, 2004, following careful consideration.  (R. 2925.)

On January 26, 2004, the parties met and conferred regarding Mr. Koslowe and Shearman & Sterling's proposed motion for an additional 10 days' time to respond to the United States' disqualification motion. 1/27/03 ltr., Crane-Hirsch to Marzen at 1-2 (ex. 2).[2]  At no time during the meet and confer session regarding the time extension motion did Mr. Marzen (the only attorney on the phone for Mr. Koslowe or Shearman & Sterling; counsel for BATAS did not participate) indicate that he needed additional time to respond to the disqualification motion in order to conduct discovery.  Two days later, on January 28, 2004, Mr. Koslowe, Shearman & Sterling, and BATAS filed a joint time-extension motion, in which they sought an additional 17 days' time (rather than the 10 that Mr. Marzen had proposed, on behalf of Mr. Koslowe and Shearman & Sterling only, during the meet-and-confer session).  (R. 2956).[3]  They stated that they needed 17 days' more time, due to delays in obtaining copies of court filings from the Clerk of Court's office in North Carolina.  The time extension motion appears to have been less than candid with the Court, because it made no mention of any need for or intent to seek formal discovery, issue and sign subpoenas in the Court's name, and failed to apprize the Court of the

---

[2] Following the meet and confer, the United States wrote Mr. Marzen this detailed letter, stating that, as a professional courtesy, the United States would agree to an extension of time of up to 7 days, and explaining why, in the absence of any stated reasons that more time was needed, the United States was unable to agree to any time extension request greater than 7 days.  (Id.)  The letter was attached as an exhibit to the time-extension motion.

[3] BATAS did not meet and confer with the United States before filing the motion.  The attorney who signed the motion on BATAS's behalf was Mr. Koslowe.  This was at least the third time in this case that Mr. Koslowe has filed motions on behalf of BATAS without meeting and conferring.  12/12/03 ltr., Eubanks to Koslowe (ex. 3); 2/3/04 ltr., Crane-Hirsch to Koslowe (ex. 4).  Counsel for BATAS has not responded to the United States' February 3, 2004 letter.

possibility that a further time extension might well be needed to seek formal discovery.  The time extension motion was granted by minute order the day following its filing, January 29, 2004 (R. 2956), and any opposition to the United States' disqualification motion by Mr. Koslowe, Shearman & Sterling, and BATAS is due on the day that they requested, February 18, 2004.

On February 3, 2004, Mr. Marzen contacted Mr. Crane-Hirsch to request a meet-and-confer (on behalf solely of Mr. Koslowe and Shearman & Sterling), about a proposed "motion to take depositions." (Thus, from the January 21, 2003 filing of the United States' disqalification motion until February 3, 2004, BATAS, Mr. Kolsowe, and Shearman & Sterling never indicated a need to take formal discovery, and took no action to initiate formal discovery.)  The parties scheduled a meet and confer for February 4, 2004 at 5:00 p.m.

Less then ten minutes before the start of the February 4, 2004 meet and confer, the United States received copies of subpoenas, attached to notices of deposition, commanding the attendance of four witnesses at depositions on February 9 and 10, 2004, and the production of documents by February 10, 2004.[4]  At the meet-and-confer session, Mr. Marzen appeared on behalf of Mr. Koslowe and Shearman & Sterling; Mr. Koslowe and three other Shearman & Sterling attorneys appeared on behalf of BATAS.  At the start of the meet-and-confer session,

_____

[4] The subpoenas commanding testimony, attached to the notices of deposition, are for:  Deborah M. Autor, a former Justice Department, Civil Division attorney and currently Associate Director for Compliance Policy Office of Compliance, FDA Center for Drug Evaluation and Research, with a return date of 10 a.m. Monday, February 9, 2004 (ex. 5); Eugene Thiroff, Director, Office of Consumer Litigation, Justice Department, Civil Division, with a return date of 1 p.m. Monday, February 9, 2004 (ex. 6); Douglas N. Letter, Appellate Litigation Counsel in the Appellate Staff, Justice Department, Civil Division, with a return date of 4 p.m. Monday, February 9, 2004 (ex. 7); Gerald C. Kell, Senior Trial Counsel in the Office of Consumer Litigation, Justice Department, Civil Division, with a return date of 10 a.m. Tuesday, February 10, 2004 (ex. 8) (requiring both testimony and documents).  As explained below, at least three of these subpoenas were not properly served.

The package also included a copy of a subpoena to the Custodian of Records, Civil Division, Department of Justice, commanding the production of certain documents by 10 a.m., Tuesday, February 10, 2004.  (Ex 9).  Finally, the package included Requests for Production of Documents, seeking the same documents subpoenaed from the Custodian of Records.  (Ex. 10).

contrary to his earlier representation to Mr. Crane-Hirsch, Mr. Marzen stated that what he was

contemplating was a "motion for expedited discovery on behalf of BATAS, Neil Kolsowe, and

Shearman & Sterling."  Tr. 2/4/04 meet-and-confer at 4-5 (ex. 11) (emphasis added).  At the

close of the meet-and-confer session, Mr. Marzen indicated his intention to "promptly" file a

motion "seeking to take the discovery that's been served on you at the dates and times listed." Id.

at 50.  Although Mr. Marzen indicated that he would "endeavor" to file the motion before the

status conference scheduled for Friday, February 6, 2004, id., no such motion has been filed.

    In light of the impending deposition and production dates, the United States requested an

emergency conference with the Special Master, in accordance with Order #51, ¶ II.B.6(a) at 15-

16, to address the issues raised by the serving of the discovery subpoenas and seek a motion to

quash.  Tr. 2/5/04 telephonic hr'g at 3-4 (ex. 12).  For the first time during the emergency

conference with the Special Master, Mr. Koslowe proposed postponing the discovery sought by

the subpoenas and suggested a briefing schedule  for their "motion for expedited discovery." Id.

at 7-11.  Because a status conference before the Court was already set for the next day, the

Special Master proposed that the Court address the issues raised by the discovery subpoenas.  Id.

at 29-30.  At the Court's status conference, the Court set up a briefing schedule, pursuant to

which the United States submits the instant motion to quash.[5]  The Court also ordered all five

subpoenas stayed, pending resolution of the United States' motion to quash.

---

[5] The transcript is not yet available for the Court's February 6, 2004 status conference.  The Court ordered the United States to file its motion to quash by Monday, February 9, 2004, with any opposition due Wednesday, February 11, 2004, and the United States' reply due Tuesday, February 17, 2004 (due to the holiday on Monday, February 16, 2004).

## ARGUMENT

1.   **Legal Standard:  The Court Should Permit the Fact Discovery Sought, If at All, Only If it Is Necessary to Resolve the United States' Disqualification Motion**

Formal discovery in support of or in opposition to a disqualification motion is rare.

Richard E. Famm, Lawyer Disqualification:  Conflicts of Interest and Other Bases § 22.2 at 424

(2003) ("Parties do not usually engage in formal discovery – either in support of a

disqualification motion or in opposition to it.").  The United States has found no support for the

proposition that an attorney opposing disqualification under former government attorney

"revolving door" professional responsibility rules has any right to obtain formal discovery.  The

only specific case that Mr. Koslowe, Shearman & Sterling, and BATAS have identified as

authorizing them to obtain formal discovery is Brown v. D.C. Board of Zoning Adjustment, 486

A.2d 37, 52-53 (D.C. 1984) (en banc).  Tr. 1/6/04 meet-and-confer at 47-48 (ex. 1); tr. 2/4/04

meet-and-confer at 23-25 (ex. 11) (counsel for Mr. Koslowe and Shearman & Sterling relying

upon Brown and "other cases too.  I don't have them handy."); see also tr. 2/5/04 telephonic hr'g

at 18 (ex. 12) (Mr. Koslowe asserting, "we will cite to abundant authority").  But the paragraph

of Brown on which Mr. Koslowe, Shearman & Sterling, and BATAS rely, 486 A.2d at 52-53,

refers to the moving party's protest that he was improperly "denied access to certain materials

and . . . information" necessary to support his motion to disqualify the former government

attorneys now working for his litigation opponents.  (The former government attorneys in that

case "presented seven witnesses, a number of sworn affidavits, and numerous documentary

exhibits," id. at 52, all without formal discovery.)  The Brown court indicated that the court may

be required to provide discovery to the party seeking disqualification (especially if that party is

6

not the former government agency itself):  "the <u>complainant</u> may not have specific enough knowledge of the information gathered in the earlier transaction to proffer adequate support for the motion to disqualify, unless there is sufficient access to it through discovery."  <u>Id.</u> at 49 (emphases added).  But <u>Brown</u> provides no authority for the proposition that a former government attorney (or his current law firm, or his current client) is entitled to obtain formal discovery in <u>opposition</u> to a motion to disqualify.[6]

Moreover, the United States' review of the sparse caselaw on formal discovery in private "side-switching" disqualification motions has found no express authority for the proposition that a client's former attorney, now facing a disqualification motion, is entitled to obtain discovery in opposition to a disqualification motion.  Rather, the cases (limited as they are) uniformly appear to address the ability of the former client to seek discovery in support of its disqualification motion.  <u>Lefrak v. Arabian Am. Oil Co.</u>, 527 F.2d 1136, 1140 (2nd Cir. 1975) (defendants, seeking to disqualify plaintiffs' counsel based on alleged improper solicitation of clients, sought right to question opposing counsel); <u>European Community v. RJR Nabisco, Inc.</u>, 134 F. Supp. 2d 297, 309 (E.D.N.Y. 2001) (tobacco company defendants, seeking to disqualify plaintiff's counsel, sought discovery from plaintiff); <u>Riddell Sports, Inc. v. Brooks</u>, No. 92 Civ. 7851 (PKL), 1994 WL 67836, at *3, 1994 U.S. Dist. LEXIS 2290 (S.D.N.Y. Mar. 3, 1994) (defendant, seeking to disqualify plaintiff's counsel because its former paralegal went to work for plaintiff's counsel, sought discovery in support of its motion to disqualify plaintiff's counsel); <u>Polymer Color, Inc. v. Mesa Indus., Inc.</u>, No. 93 C 4197, 1994 WL 161684, at *2, 1994 U.S. Dist. LEXIS

---

[6] It is remarkable that throughout these proceedings, Mr. Koslowe, Shearman & Sterling, and BATAS have failed to articulate precisely what information is needed through formal discovery to resolve factual disputes.

5437 (N.D. Ill. Apr. 26, 1994) (defendant, seeking to disqualify plaintiff's counsel based on claim that one of plaintiff's attorneys might formerly have represented defendant's president, sought to depose plaintiff's counsel).[7]

The sparse caselaw on discovery, even in the private "side-switching" context, indicates that discovery would be authorized, if at all, by the Court's inherent authority, rather than by the discovery rules for litigation.[8]  Thus, the Second Circuit <u>rejected</u> "the premise that the disqualification proceeding is not properly termed a 'judicial proceeding' but in fact is adversary in nature, entitling the defendants' counsel to employ the traditional litigation techniques of discovery as well as direct and cross-examination." <u>Lefrak</u>, 527 F.2d at 1140 (citing <u>Randall v. Brigham</u>, 74 U.S. (7 Wall.) 523, 540 (Dec. Term 1868)).

Whether any discovery on a disqualification motion is permissible "is clearly within [the trial court's] discretion in any event." <u>Id.</u>  <u>See also</u> <u>European Community v. RJR Nabisco, Inc.,</u>

_____

[7] One case might be to the contrary.  In <u>Adams v. Aerojet-General Corp.</u>, 104 Cal. Rptr. 2d 116 (Ct. App. 2001) (2-1), the defendant sought to disqualify plaintiff's counsel based on a claim that plaintiff's counsel had formerly worked for a law firm that had represented the defendant.  The majority of appellate court remanded for evidentiary findings and added that, "Prior to ruling on the disqualification motion the court, in its discretion, and with an eye toward avoiding satellite litigation and unwarranted annoyance, embarrassment, burden, or expense, may allow further limited discovery reasonably calculated to produce admissible evidence with respect to these issues." <u>Id.</u> at 128 (citation omitted).  This open-ended language left open the possibility that the party opposing disqualification might be allowed to seek discovery.
        The dissent observed that it would be "problematic" to allow discovery, because it would require investigating:
        the inner workings of the [attorney's former] firm (e.g., how it assigned and handled the case; how litigation strategy was formed and discussed among partners and associates; whether members of the firm chat about cases in the hallway where their discussions could be overheard by others in the firm who are not directly involved in the litigation; whether billing records show the attorney charged any time to the client, etc.).
<u>Id.</u> at 129 (Scotland, J., dissenting).

[8] Even if discovery is authorized under the Court's inherent authority, the procedural mechanisms to seek it are supplied by the usual rules and Court orders that govern the taking of discovery, such as requiring consultation and prior notice before scheduling depositions.  As discussed below, the manner in which Mr. Koslowe, Shearman & Sterling and BATAS sought discovery here violated numerous rules and Court orders.

134 F. Supp. 2d at 309 ("The quantum of discovery required in connection with such a [disqualification] motion is left to the discretion of the trial judge."); Adams, 104 Cal. Rptr. 2d at 128 ("Prior to ruling on the disqualification motion the court, in its discretion, and with an eye toward avoiding satellite litigation and unwarranted annoyance, embarrassment, burden, or expense, may allow further limited discovery reasonably calculated to produce admissible evidence with respect to these issues.") (citation omitted).

Discovery is neither warranted nor appropriate here. Mr. Koslowe, Shearman & Sterling, and BATAS have already engaged in informal discovery and have not to date in any correspondence, meet-and-confer sessions, or hearings before the Special Master or the Court set forth what information, necessary to resolve the disqualification issue, requires obtaining formal discovery. Mr. Koslowe is qualified to give evidence regarding his recollections, and the Court may consider such evidence against the backdrop of the substantial documentary evidence presented by the United States (as well as the declaration of Mr. Kell). Mr. Koslowe is able to provide his evidence without disruptive and unnecessary formal discovery.

Should the Court decide that it is appropriate at all to allow discovery in opposition to a motion to disqualify, the standard for the Court to determine whether to quash (or modify) the subpoenas is whether the Court will need the testimony and documents sought to decide the United States' disqualification motion. European Community v. RJR Nabisco, Inc., 134 F. Supp. 2d at 310 (affirming magistrate judge's denial of discovery sought by tobacco manufacturers in support of their motion to disqualify plaintiff's counsel, on ground that discovery would not have assisted magistrate judge in making "a determination as to whether or not the various fee agreement provisions complained of violate the governing ethics laws"). Thus, discovery should

be allowed only if the Court finds that the United States' opening brief makes a prima facie case that disqualification is required; otherwise, the Court should quash the discovery sought, as unnecessary. Riddell Sports, No. 92 Civ. 7851 (PKL), 1994 WL 67836, at *3, 1994 U.S. Dist. LEXIS 2290 (the defendant, who moved to disqualify plaintiff's counsel, "has requested discovery on this matter. The Court concludes that it is not necessary. Simply stated, there has been an insufficient threshold showing of any impropriety, appearance of impropriety, or of shared confidences; and the effort and expense of further discovery is therefore not merited."). This Court should authorize the discovery sought here only if it finds that it is "necessary . . . to make this significant [disqualification] decision." Polymer Color, No. 93 C 4197, 1994 WL 161684, at *2, 1994 U.S. Dist. LEXIS 5437 (finding that magistrate acted within his discretion in ordering that depositions be taken in support of defendant's motion to disqualify plaintiff's counsel).

   As noted above, the effort and expense of discovery is unwarranted, as discovery would not uncover any pertinent, non-privileged facts not available to Mr. Koslowe, Shearman & Sterling, and BATAS. Even if the Court does find that the discovery sought is necessary to decide the motion, though, it must limit the discovery sought, to prevent attorneys for Mr. Koslowe's former client, the United States, from being deposed "to determine whether confidences were actually shared" with Mr. Koslowe when he represented the United States; any "depositions [must be] intended to uncover whether the subject matter of the legal advice given [the former client] by [the former attorney] is involved in, or has any substantial relationship to those matters alleged in the counterclaim." Id., 1994 WL 161684, at *1 (internal quotation marks omitted).

**2.      There Is No Need for Fact Discovery to Resolve the United States' Disqualification
Motion**

The discovery sought by Mr. Koslowe, Shearman & Sterling, and BATAS, is completely
unnecessary.  As an initial matter, Mr. Kolsowe, Shearman & Sterling, and BATAS have never
claimed that they have been unable to acquire enough information through informal discovery to
be able to respond to the United States' disqualification motion.  Nor have they made any claim
that they must depose the government's attorneys to be able to respond.  To the contrary, during
the January 6, 2004 meet-and-confer session, Mr. Marzen, as counsel for Mr. Koslowe and
Shearman & Sterling, did not dispute that his client had been contacting government attorneys
regarding their recollections of his tobacco work.  Tr. 1/6/04 meet-and-confer at 56-57 (ex. 1).
One of the subpoenaed witnesses in fact e-mailed Mr. Koslowe four of the briefs that the United
States filed in the Middle District of North Carolina, in order to "help you recall whether you
were involved in the litigation."  1/21/04 e-mail, Autor to Koslowe, re. "Tobacco briefs" (ex.
13).[9]  During the February 4, 2004 meet-and-confer session, Mr. Marzen acknowledged that he
and/or his client had spoken extensively with various government personnel.[10]  In addition,
counsel for the United States has provided Mr. Koslowe, Shearman & Sterling and BATAS with
Mr. Koslowe's time records from Coyne Beahm and American Advertising, as well as the Justice
Department, Civil Division's time sheet for attorneys.  Even when specifically asked, counsel for
Mr. Kolsowe, Shearman & Sterling, and BATAS resolutely avoided answering whether they had

---

[9] It is noteworthy that Mr. Koslowe apparently shared with Ms. Autor that his recollections are less than
clear, but has chosen not to concede this to counsel for the United States.

[10] "MS. EUBANKS:  . . . I know that you've been in contact with various people.  You've already talked to
Mr. Thirolf, you've talked to Ms. Auter, you've called Mr. Taylor, you have talked to Eric Blumberg, you have
spoken with Louisa Nickerson."  Tr. 2/4/04 meet-and-confer session at 16 (ex. 11).

encountered any difficulties in obtaining information or declarations, much less whether formal discovery was necessary for them to respond to the United States' disqualification motion.[11]

As set out in the United States' Disqualification Motion, the D.C. Rules of Professional Conduct provide:  "A lawyer shall not accept other employment in connection with a matter which is the same as, or substantially related to, a matter in which the lawyer participated personally and substantially as a public officer or employee."  D.C. Rules Prof'l Conduct R. 1.11(a).  The term "matter" is restricted to "any matter involving a specific party or parties."  Id., R. 1.11(g).  The United States' motion identified three tobacco-related matters on which Mr. Koslowe worked while at the Department of Justice:  Two cases in the Middle District of North Carolina (Coyne Beahm and American Advertising), challenging the FDA's proposed and final tobacco regulations; and the state attorneys general lawsuits against the tobacco industry.  The

---

[11]

> MR. MARZEN:  . . . [M]any of the relevant fact witnesses who you just named are current DOJ employees.  And we need to talk to those folks.
> MS. EUBANKS:  You already have spoken with those folks.
> MR. MARZEN:  Right.  And I guess what you're saying is that access is sufficient . . .
>
> * * * *
>
> MR. CRA[NE]-HIRSCH:  Has Gene Thirolf resisted any efforts that you have made to speak with him?
> MR. MARZEN:  I think the government's position is clear and this meet-and-confer is at an end unless the government has any thoughts or wants to list conditions under which it would voluntarily cooperate with the discovery that has been served.
> MR. CRA[NE]-HIRSCH:  That's a nonresponse.  My question goes to whether or not there's any need whatever for compelled deposition testimony.  And what I'm hearing you say, for Mr. Thirolf at least, is that there's no need whatever for compulsory means to secure information from him.
>         Is there anyone else that you have issued a subpoena for who has declined to speak with you or refused to speak with you?
> MR. MARZEN:  Mr. Cra[ne]-Hirsch, those are your words about Mr. Thirolf, not mine.
> MR. CRA[NE]-HIRSCH:  Is there anybody at all upon whom you have served a subpoena who has refused to speak with you?  What I'm getting at here is[,] is there any need whatever for this compulsory mechanism of discovery?  . . .
> MR. MARZEN:  If the government is going to stand on its position that it will oppose discovery –
> Tr. 2/4/04 meet-and-confer session at 20, 33-34 (ex. 11).

United States' evidence showed that Mr. Koslowe recorded working 382 hours as part of the

litigation team that defended the FDA's proposed and final tobacco regulations in the Middle

District of North Carolina litigation.  U.S. Mot. to Disqualify at 11-15.  Likewise, the United

States' evidence showed that, in relation to a proposed 1997 settlement of the state attorneys

general lawsuits, Mr. Koslowe personally assessed the application of various aspects of privilege

law to tobacco industry documents withheld on grounds of privilege.  Id. at 16-17.  None of the

discovery sought is required to resolve the two central issues raised by the United States'

disqualification motion:  (1) Whether the three tobacco-related matters described in the United

States' disqualification motion are matters which are "the same as, or substantially related" to the

present case; and (2) whether Mr. Koslowe "participated personally and substantially" in these

three tobacco-related matters while an attorney at the Department of Justice.

        **a.**       ***Discovery Is Not Required to Resolve Whether  the Three Tobacco-Related Matters Are "the Same As, or Substantially Related" to the Present Case and BATAS's Privilege Assertions***

The legal test under D.C. Rule 1.11 for whether one matter is "the same as, or

substantially related to" another matter is whether "it is reasonable to infer counsel may have

received information during the first representation that might be useful to the second."  Brown,

486 A.2d at 50 (emphases added) (citations omitted).  To whatever extent Mr. Koslowe,

Shearman & Sterling, and BATAS seek information about the two cases in the Middle District of

North Carolina, they apparently have already sought court filings directly from the Clerk of

Court's office, 1/28/03 Time Extension Mot. at 3 (R. 2956), as well as from government

13

attorneys, 1/21/04 e-mail, Autor to Koslowe (ex. 13).[12]  Indeed, they described the court filings in

those cases as a "critical source of relevant factual evidence."  1/28/03 Time Extension Mot. at 3.

In addition, they can presumably obtain any additional relevant, non-privileged documents

relating to those cases from BATAS's corporate affiliate, Brown & Williamson, which was a

party to the litigation in the Middle District of North Carolina.

        As discussed below, the remainder of the information that is sought – such as the

government's entire litigation files from the Middle District of North Carolina litigation – is

presumptively privileged and protected by attorney work-product doctrine.  Precisely because it

is privileged, though, it is legally unnecessary for the Court to consider it:

> The substantial-relationship test avoids requiring disclosure of confidential information by <u>focusing upon the general features of the matters involved</u> and <u>inferences as to the likelihood that confidences were imparted</u> by the former client that could be used to adverse effect in the subsequent representation. The inquiry into the issues involved in the prior representation should be as specific as possible without thereby revealing the confidential client information itself or confidential information concerning the second client.

<u>Restatement (Third) of The Law Governing Lawyers</u> § 132 cmt. d(iii) (2000) (emphases added).

Thus, the non-public portions of the government's litigation files from the Middle District of

North Carolina litigation – that is, the privileged and protected portions – are legally irrelevant

under the "substantially related" legal test that the Court will need to apply.  <u>Brown</u>, 486 A.2d at

50 n.17 ("the determination of whether there is a substantial relationship turns on the possibility,

or appearance thereof, that confidential information may have been given to the attorney. . . .  <u>[I]t

is not appropriate for the court to inquire into whether actual confidences were disclosed.</u>")

_____

[12] The time-extension motion failed to advise the Court that, at Mr. Koslowe's request, Ms. Autor had already provided him with four of the briefs that the government had filed in the Middle District of North Carolina litigation.

(emphasis added) (internal quotation marks and citation omitted).  Accordingly, as a matter of law, the extent to which Mr. Koslowe <u>actually</u> received specific government information and confidences in his prior tobacco-related work for the government is legally irrelevant.  There is thus no need for discovery on such matters.

Likewise legally irrelevant is any testimony from the four government attorneys subpoenaed.  The attorneys – Deborah Autor, Gene Thiroff, Douglas Letter, and Gerald Kell – were all involved with the two cases in the Middle District of North Carolina.  Mr. Koslowe, Shearman & Sterling, and BATAS offer no information about what testimony they hope to elicit from these witnesses.[13]  Especially given the availability of extensive public documentary evidence on the litigation in the Middle District of North Carolina, testimony from these government attorneys is completely unnecessary for the Court to resolve whether Mr. Koslowe's work on those cases is "substantially related" to his current work on behalf of BATAS (i.e., by examining whether his work on those cases may have exposed him to information likely to be of use to him in defending privilege assertions on behalf of BATAS in the present case).  In any event, documentary evidence relating to those cases is clearly better evidence than whatever recollections the individuals may have, years after these cases were filed and eventually resolved.[14]  And, for the reasons discussed above, whatever specific recollections the subpoenaed

_____

[13] When oral testimony is sought from Justice Department employees in a case or matter in which the United States is a party, the party seeking the testimony must provide an affidavit or statement "setting forth a summary of the testimony sought . . . to the Department attorney handling the case or matter."  28 C.F.R. § 16.23(c).  Mr. Koslowe, Shearman & Sterling, and BATAS have not provided the required affidavits or statements.

[14] Mr. Kell based his declaration upon personal knowledge.  However, at least one of the other subpoenaed government attorney witnesses has already written Mr. Koslowe that she doesn't have any recollections likely to be of use to him:  "As I mentioned, I don't remember your being involved in the litigation.  But, I could be mistaken."  1/21/04 e-mail, Autor to Koslowe (ex. 13).

government attorneys have regarding specific privileged or confidential information that Mr.
Koslowe came into contact with as part of his work on the Middle District of North Carolina
litigation, is irrelevant as a matter of law.

With respect to the third tobacco-related matter, the provisions of the 1997 proposed
settlement of the state attorneys general lawsuits addressing tobacco industry claims of privilege
over tobacco documents, the United States articulated in its disqualification motion (and
submitted substantial evidence) regarding how the proposed settlement was "substantially
related" to the current litigation and the BATAS privilege assertions.  Indeed, as discussed
below, the only specific discovery on the proposed settlement, or Mr. Koslowe's work on it, that
BATAS, Mr. Koslowe, and Shearman & Sterling seek are the privileged documents that the
United States filed with the Court in camera.

In conclusion, there is ample evidence already in the record to enable the Court to resolve
whether the three tobacco-related matters cited in the United States' disqualification motion are
"substantially related" to the present litigation, based on the required test:  Is it "reasonable to
infer counsel may have received information during the first representation that might be useful
to the second."  Brown, 486 A.2d at 50 (emphases added) (citations omitted).  The additional
discovery requested by BATAS, Mr. Koslowe, and Shearman & Sterling, is wholly unnecessary
and legally irrelevant to this question.

> **b.**    ***Discovery Is Not Required to Resolve the Issue of Whether Mr. Koslowe
> "Participated Personally and Substantially" in These Three Tobacco Related
> Matters While an Attorney at the Department of Justice***

The United States' disqualification motion presented voluminous evidence – most of it
documentary, with one short declaration – showing that Mr. Koslowe worked "personally and

16

substantially" on the two litigated cases in North Carolina challenging the FDA's proposed and final tobacco regulations, and on privilege issues relating to the proposed settlement of the state attorneys general lawsuits.  As an initial matter, Mr. Koslowe has made no claim that he cannot recall whether he worked personally and substantially on the two cases in the Middle District of North Carolina, or that he needs discovery to refresh his recollection.  To the contrary, he flat-out stated in a letter to the United States that, "I did not at any time appear on behalf of or represent the federal defendants in this case [Coyne Beahm] in the district court, the court of appeals, or the Supreme Court." 12/16/03 ltr., Koslowe to Eubanks at 4 (Ex. 4 to U.S. Mot. to Disqualify).

As discussed below, the only discovery that Mr. Koslowe, Shearman & Sterling and BATAS seek that is relevant to whether Mr. Koslowe participated "personally and substantially" in the Justice Department's review of the proposed settlement of the state attorneys general lawsuits (particularly relating to tobacco industry assertions of privilege over tobacco industry documents) are the privileged documents that the United States submitted to the Court in camera.

> **i.** ***The Deposition Testimony Sought Is Legally Irrelevant to Whether Mr. Koslowe "Participated Personally and Substantially" in Two Related Cases in the Middle District of North Carolina***

The deposition testimony sought by BATAS, Mr. Kolsowe, and Shearman & Sterling is not necessary to resolve the issue of whether Mr. Koslowe participated personally and substantially in the litigation in the Middle District of North Carolina.  As previously stated, there is substantial evidence in the record, including publicly filed time records, indicating that Mr. Koslowe did work on the litigation in the Middle District of North Carolina.  Moreover, subject to his obligations to preserve the United States' confidences under D.C. Rules of Professional Conduct Rule 1.6, Mr. Koslowe is presumably in a better position than his former colleagues to

17

give evidence on his recollections as to the nature of his work and whether he participated

personally and substantially in the litigation in the Middle District of North Carolina.  Obviously

Mr. Koslowe's evidence is material to a determination.

      In addition, even if any of the witnesses subpoenaed were to testify that they distinctly

recall that Mr. Koslowe did not participate in the Middle District of North Carolina litigation,

such testimony would be of no legal relevance.  In a recent ethics opinion, the D.C. Bar Ethics

Committee addressed the analysis that applies when there are conflicting recollections about

whether a former government attorney participated personally and substantially in a particular

matter while working for the government.  D.C. Bar Legal Ethics Comm., Op. 315, section II

(2002).  This opinion addressed a former Justice Department attorney who – approximately 18

years prior – had attended at least one meeting regarding a long-running desegregation case.

However, different attorneys had different recollections as to whether the former Justice

Department attorney had attended more than one meeting.  (Evidently there were no

contemporaneous case management records or privileged government documents to shed light on

the situation.)  The D.C. Bar Ethics Committee observed that (unlike a court) it was not a fact-

finding body.  In resolving the issue, the D.C. Bar Ethics Committee opined that, when

recollections conflict and a factual determination is not possible, "the only prudent course for the

inquirer to follow would be to decline other employment in connection with this matter, lest he

risk violating Rule 1.11." Id.

      Thus even if any of the subpoenaed government attorneys were to testify that they had a

firm and distinct recollection that Mr. Koslowe had not participated personally and substantially

in the Middle District of North Carolina litigation, at odds with the United States' documentary

and testimonial evidence, such conflicting recollections still would not relieve Mr. Koslowe of

his ethical obligation not to represent BATAS in the present litigation.  Thus, additional

testimonial evidence form the witnesses subpoenaed is both unnecessary, given the ample

evidence already in the record demonstrating Mr. Koslowe's substantial and personal

participation in the litigation in the Middle District of North Carolina, and also legally irrelevant,

because if the issue turns upon conflicting recollections, disqualification is mandatory.

> ii.     ***The Documents Sought Are Legally Irrelevant to Whether Mr. Koslowe
> "Participated Personally and Substantially" in Two Related Cases in the
> Middle District of North Carolina***

The documentary discovery sought is also completely unnecessary to resolve whether Mr.

Koslowe participated "personally and substantially" in the Middle District of North Carolina

litigation.  The United States submitted ample documentary evidence demonstrating Mr.

Koslowe's involvement in those cases, including Mr. Koslowe's own time records reporting 382

hours of work on those cases.[15]  Moreover, the documents sought are completely irrelevant to Mr.

Kolsowe's involvement in the litigation in the Middle District of North Carolina.

For example, the first category of documents that Mr. Koslowe, Shearman & Sterling and

BATAS have subpoenaed from the Justice Department's Custodian of Records is "[a]

compilation of all time related to the Food and Drug Administration's ("FDA's") proposed

rulemaking to tobacco marketing and children."  2/4/04 Record Custodian subpoena, Sched. A

---

[15] It is noteworthy that a plaintiff's attorney was held to have had "direct involvement" in representing BATAS's corporate affiliate Brown & Williamson while at his prior law firm, even though his time records showed only 1.2 hours of work for B&W.  Dewey v. R.J. Reynolds Tobacco Co., 536 A.2d 243, 246 (N.J. 1988).  The court ruled that, due to the attorney's prior representation of B&W, he was disqualified from representing a plaintiff against B&W in subsequent tobacco litigation.  Id. at 250-51.

¶ 1 (ex. 9).[16]  However, the amount of time that Mr. Koslowe (or any other Department of Justice attorney) spent on the FDA's proposed rulemaking is irrelevant to whether Mr. Koslowe worked personally and substantially on the two litigated cases in the Middle District of North Carolina.

Mr. Koslowe, Shearman & Sterling, and BATAS next command the production of "compilation[s] of all time [listed by attorney] recorded to" the Coyne Beahm and American Advertising cases, in substantially the same form as Exhibits 20 and 21 to the United States' disqualification motion.  Id. ¶¶ 2, 3 (emphasis added).  But how many or how few hours other attorneys worked on the Coyne Beahm and American Advertising cases, though, has nothing to do with whether Mr. Koslowe worked on them personally and substantially.[17]

 The Record Custodian document subpoena commands all of Mr. Koslowe's "original time sheets" from 1994 to 1998.  Id. ¶ 5.  Once again, the amount of hours Mr. Koslowe recorded to other cases and non-case-specific activities over a five-year time span is irrelevant to whether Mr. Koslowe participated personally and substantially in the two cases in the Middle District of North Carolina (and also has nothing to with whether he worked, personally and substantially, on advising the Department of Justice about the 1997 proposed settlement of the state attorney general lawsuits).  (In any event, the United States' preliminary inquires suggest that original time sheets from those years are no longer available.)  Likewise, "[i]nstructions for the entry into the case management system of attorney work time if the attorney's original time sheets are blank

---

[16] All the documents subpoenaed are also included in Mr. Koslowe, Shearman & Sterling, and BATAS's request for production of documents (ex. 10).

[17] The United States submitted an unredacted copy of all hours recorded by all attorneys in those cases to the Court as in camera exhibits 2 and 3.  Protective orders were issued before the United States was ordered to produce similar attorney time records in a case challenging the Justice Department's overtime policies, Doe v. United States, 54 Fed. Cl. 404 (2002), appeal docketed, No. 03-5075 (Fed. Cir. oral argument heard Jan. 7, 2004).

or have the designation "NEW-CD" or "CD-NEW'," <u>id.</u> ¶ 6, "[i]nstructions for assigning DJ numbers to cases in the Civil Division," <u>id.</u> ¶ 7, "[a]ll documents relating to the assignment of work by the Civil Division on the Youth Tobacco Rulemaking and FDA Statutory Authority Litigation," <u>id.</u> ¶ 8, and "all documents exchanged between the FDA and DOJ on the handling of work on the Youth Tobacco Rulemaking and FDA Stautotry Authority Litigation," <u>id.</u> ¶ 9, are irrelevant to whether Mr. Koslowe worked, personally and substantially, on the Middle District of North Carolina litigation.

Similarly, the document subpoena directed to Mr. Kell (incorporated by ¶ 10 of the Record Custodian subpoena) seeks legally irrelevant and privileged information. The identity of the other members of the litigation team who defended the FDA regulations in court in the Middle District of North Carolina litigation is irrelevant to Mr. Koslowe's role in that litigation, 2/4/04 Kell subpoena, Sched. A, ¶ 1 (ex. 8). The documents showing the specific work that Mr. Koslowe did on that litigation, <u>id.</u> ¶ 2, and the documents that Mr. Koslowe personally reviewed at the FDA for purposes of that litigation, <u>id.</u> ¶ 3, both would be relevant, if at all, only to whether Mr. Koslowe's former representation <u>actually</u> exposed him to specific government information that would be likely to be useful to him in his current representation. But Mr. Koslowe's <u>actual</u> exposure to specific government information is irrelevant as a matter of law; indeed, as a matter of law, the Court is not permitted to probe into the actual confidences that Mr. Koslowe was exposed to. <u>Brown</u>, 486 A.2d at 50 n.17. Thus, the great majority of the documents sought are irrelevant as a matter of law to any questions that the Court will need to resolve. (As discussed below, the remaining categories of documents are privileged.)

21

Because the discovery sought – testimony and documents alike – is irrelevant, both factually and legally, to any of the issues concerning whether Mr. Koslowe is subject to disqualification, and seeks privileged information, the Court has no need for the information sought.  Because the discovery sought here is not "necessary . . . to make this significant [disqualification] decision," <u>Polymer Color</u>, No. 93 C 4197, 1994 WL 161684, at *2, 1994 U.S. Dist. LEXIS 5437, the Court should quash the subpoenas.

**3.      Much of the Discovery Sought is Privileged**

The United States' disqualification motion explained the bind that it faces in explaining why Mr. Koslowe (and his law firm) are disqualified, without revealing its privileged information.  U.S. Mot. to Disqualify at 8-10.  As the <u>Restatement (Third) of The Law Governing Lawyers</u> § 132 cmt. d(iii) states, in addressing private "side-switching" professional responsibilty rules, "A concern to protect a former client's confidential information would be self-defeating if, in order to obtain its protection, the former client were required to reveal in a public proceeding the particular communication or other confidential information that could be used in the subsequent representation."  These concerns are rooted in an attorney's duty under D.C. Rule 1.6 to preserve a former client's confidences.

Nonetheless, Mr. Koslowe, Shearman & Sterling and BATAS demand – indeed, have invoked the name of the Court to command – that the United States disclose its privileged and protected information to them.  As discussed above, though, the "substantially related" test is designed precisely so that a government agency is <u>not</u> required to disclose its privileged and protected information to prevent "revolving door" representation.  Similarly, precisely to avoid invading the government's privileges, it is improper for the Court to inquire into whether a

22

former government attorney <u>actually</u> received any information in his earlier representation that would be useful in his current representation.  <u>Brown</u>, 486 A.2d at 50 n.17 ("'the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information may have been given to the attorney. . . .  <u>[I]t is not appropriate for the court to inquire into whether actual confidences were disclosed.</u>'") (emphasis added) (quoting <u>Westinghouse Elec. Corp. v. Gulf Oil Corp.</u>, 588 F.2d 221, 224 (7th Cir. 1978)).

    As shown above, subpoenaed document categories 1-3 and 5-10 are legally irrelevant to any question before the Court (and many of them in addition seek privileged information, also as shown above[18]).  The fourth category of subpoenaed documents is "[t]he Department of Justice files for DJ Numbers 21-54M-79 and 21-54M-80," 2/4/04 Record Custodian subpoena, Sched. A ¶ 4, that is, the Justice Department's entire litigation files for the <u>Coyne Beahm</u> and <u>American Advertising</u> cases.  Presumably, the only materials in these files that are not subject to attorney-client privilege or work product protection are correspondence among the parties and the publicly filed pleadings which Mr. Kolsowe, Shearman & Sterling, and BATAS have already obtained from Ms. Autor, 1/21/04 e-mail, Autor to Koslowe (ex. 13), or are obtaining from the Clerk of Court's Office in the Middle District of North Carolina (and in any event could presumably have

---

[18] For example, the 9th category of documents is "[a]ll documents exchanged between the FDA and DOJ on the handling of work on the Youth Tobacco Rulemaking and FDA Statutory Authority Litigation."  2/4/04 Record Custodian subpoena, Sched. A ¶ 9.  The Food and Drug Administration is a client agency of the Department of Justice, and thus the large bulk of the documents exchanged between the DOJ and FDA are subject to attorney-client privilege, work product protection, and other privileges such as deliberative process privilege.
    Similarly, the second category of documents in the Kell subpoena – documents showing the specific work that Mr. Koslowe did on the Middle District of North Carolina litigation, 2/4/04 Kell subpoena Sched. A ¶ 2, are privileged (and thus appear on the United States' privilege log in this action; those that were filed with the Court were filed <u>in camera</u> because they are privileged); likewise, as shown in the United States' disqualification motion, many of the documents that Mr. Koslowe personally reviewed at the FDA for purposes of that litigation, <u>id.</u> ¶ 3, were confidential and/or trade secret materials, and in any event represented privileged client confidences.

obtained from BATAS's corporate affiliate, Brown & Williamson, which was a party to that litigation).

The 11th category of documents that Mr. Koslowe, Shearman & Sterling and BATAS command is the privileged and in camera documents that the United States filed with the Court in support of its disqualification motion.  2/4/04 Record Custodian subpoena, Sched. A. ¶ 11 (ex. 9) ("all documents submitted to the Court in camera in connection with the Government's DQ motion, for disclosure only to the putative author of those documents, Neil H. Koslowe").  But (through counsel) Mr. Koslowe and Shearman & Sterling have already conceded that they do not dispute the authority of the Court to review the United States' privileged documents in camera or, presumably, the United States' ability to submit its privileged documents to the Court in camera without waiving privilege or being forced to give those documents to Mr. Koslowe.  Tr. 1/6/04 meet-and-confer at 24-25 (ex. 1).[19]  Moreover, as set out in the United States' disqualification motion (at 8-10), ample caselaw supports the United States' ability to submit its privileged documents to the Court in camera without being required to turn them over to its former attorney.[20]  There is no basis for the Court to order the United States to disclose its privileged information to opposing counsel, and all portions of the subpoenas that purport to order privileged information should be quashed.  Even if such information would help the Court

---

[19] Since counsel for BATAS scheduled the January 6, 2004 meet-and-confer but did not attend, the Court should not hear BATAS now to make any contention that the United States is obliged to share with BATAS the privileged documents that it filed with the Court in camera.

[20] Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 741 (2nd Cir. 1978) (Mansfield, J., concurring) ("I am confident that in such rather rare cases the court will devise appropriate means, including use of in camera or other protective devices, to  safeguard the interests of the former client"); Rogers v. Pittston Co., 800 F. Supp. 350, 355 (W.D. Va. 1992) ("because  the moving party is not required to publicly reveal actual confidences, in camera submission of documents is a recognized way of establishing that the two matters are substantially related").

decide any of the issues before it, it the Court may not order the production of such privileged

information

**4.      Even if the Discovery Sought Were Relevant and Non-Privileged, The Court Should
Quash It on Grounds of Undue Burden and Abusiveness**

Court supervision of discovery is frequently necessary in complex cases:  "[A]lthough the

Federal Rules of Civil Procedure contemplate that in the ordinary case discovery will be directed

by counsel, with infrequent intervention by the judge when counsel are unable to agree, this

pattern may be ineffective in complex cases if they are to be processed expeditiously."  United

States v. AT&T, 83 F.R.D. 323, 327 n.1 (D.D.C. 1979) (citing Manual for Complex Litigation at

15).[21]  Rule 26(c) provides that, the Court "may make any order which justice requires to protect

a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

---

[21] As discussed below, this Court has entered numerous case management orders to ensure that legitimate
discovery is taken in an orderly manner, most notably Order #51 (Case Management Order #9).  This Court
authorized BATAS to intervene in this case only subject to the requirement that it obey all discovery orders in the
case.  Order #449.  Notably, counsel for BATAS has gone to extreme lengths to avoid saying whether BATAS
believes it is, or is not, subject to the discovery provisions of Order #51:

> MS. EUBANKS:  Well, I want the answer to the questions that I posed to BATAS.  And that is
> whether you maintain that Order 51 isn't applicable to BATAS?
> MR. KOSLOWE:  This is Neil Koslowe speaking for BATAS.  BATAS' position in response to
> the series of questions raised is the same as the response that Mr. Marzen gave.
> MS. EUBANKS:  Well, the response that Mr. Marzen gave was not a yes or no.  Does Order 51
> apply to BATAS, Mr. Marzen?  I suppose you're going to give an answer to that?
> MR. MARZEN:  Well, I did give an answer.  It may be good, it may be bad, it may be something
> in between.  But that is my answer.  And, if you're asking me where I stand on that, I do --
> MS. EUBANKS:  Wait a minute.
> MR. CRA[NE]-HIRSCH:  Let's ask Mr. Koslowe or one of the other attorneys for BATAS.  Do
> the attorneys for BATAS have a position on whether Order 51 applies to BATAS[?]
> MR. KOSLOWE:  I already said BATAS' position is the same as the position referred to by Mr.
> Marzen.
> MR. CRA[NE]-HIRSCH:  BATAS' position is maybe Order 51 applies to it and maybe it doesn't?
> MR. MARZEN [sic; counsel for the United States recalls this as Mr. Koslowe]:  I believe the
> record will reflect what my position is.

Tr. 2/4/04 meet-and-confer at 17-18 (ex. 11).
At the telephonic hearing before the Special Master the following day, Mr. Koslowe denied saying that he
agreed that Order #51 applied to BATAS.  2/5/04 telephonic hr'g at 10 (ex. 12).

Fed. R. Civ. P. 26(c).  A protective order may issue "for good cause shown," id., and may include

quashing, the relief here sought, see Rule 26(c)(1) (authorizing order "that the disclosure or

discovery not be had").[22]

This Court authorized BATAS to intervene in what it shortly afterwards characterized as

"starting down what is a constructive – albeit long-delayed and obstruction-strewn – path."

Mem.-Op. accompanying Order #454 at 2.  However, as shown below, it appears that Mr.

Koslowe, Shearman & Sterling, and BATAS have deliberately delayed seeking formal discovery

here in order further to protract what were already "long-delayed and obstruction-strewn"

proceedings to provide the United States with the opportunity to litigate its privilege challenges

against a lawyer who did not formerly advise the Justice Department on tobacco industry claims

of privilege for tobacco industry documents.

The United States filed its disqualification motion on Wednesday, January  21, 2004, and

yet no mention whatever of subpoenas was made for another two weeks, until Wednesday,

February 4, 2004.  Even though Mr. Koslowe, Shearman & Sterling, and BATAS filed their time

extension motion on Wednesday, January 28, 2004, their motion made no mention of any intent

to seek formal discovery or to avoid the consultation and prior notice requirements of the Federal

Rules of Civil Procedure, this Court's Local Rules, and this Court's discovery orders.  Instead,

they delayed any mention of their intent to issue and sign subpoenas until another seven days had

passed of the 17-day time-extension that they had sought, until the meet-and-confer on

---

[22] In addition, discovery is to be limited if:
(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some
other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or
expense of the proposed discovery outweighs its likely benefit . . .
Rule 26(b)(2) (emphases added).

Wednesday, February 4, 2004.  (The meet and confer had been scheduled the previous day under the guise of "a motion to seek deposition testimony," without any mention of subpoenas.)  The delay in seeking formal discovery and issuing subpoenas is thus clearly designed to further delay the Court's ability to consider the United States' disqualification motion.  Given that Mr. Koslowe and Shearman & Sterling agreed to expedited consideration of the disqualification motion, such delays are clearly for strategic purposes, and this Court should not countenance them.  The cavalier disregard for the rules of civil procedure, this Court's orders, and the concerns of the witnesses that have been shown further dictate that the Court exercise its authority to quash the subpoenas here.

> a.   **The Court's Case Management Orders Require Leave of Court to Take Fact Witness Depositions after June 1, 2002**

Pursuant to Fed. R. Civ. P. 16 and 30(a), the Court has the authority to issue case management orders that limit the number and timing of depositions.  Under Rule 16(e), all case management orders "shall control the subsequent course of the action unless modified by a subsequent order."  In Order #197 (later redesignated as Order #204), the Court ordered "that all motions for leave to conduct fact witness depositions after the July 1, 2002 deadline are to be filed with the Court."  Pursuant to this Order, all subsequent fact witness depositions taken after the June 1, 2002 case management deadline have indeed been done by prior leave of Court.

This has been as true for discovery addressing the merits of the United States' Amended Complaint and the defendants' answers, as it has been for discovery on corollary matters.  Philip Morris's failure to keep and retain all e-mails in accord with the Court's Order #1 is one particularly salient example:  The United States knew that it would need discovery from Philip

27

Morris witnesses before filing a motion seeking sanctions for Philip Morris's spoliation.  But

rather than simply issue notices of deposition (much less subpoenas), the United States

approached the Court to seek – and obtained – leave of Court first.

The United States does not contend that Mr. Koslowe, Shearman & Sterling, and

BATAS's failure to seek prior leave of Court before noticing the depositions and issuing the

subpoenas at issue here, standing alone, is sufficient basis to quash them.  But this failure,

combined with their conspicuous delay and cavalier attitude towards other Court orders and

rules, does indicate that the Court should quash the subpoenas.

> **b.     Subpoenas were issued and signed in the name of the court by counsel as an officer of the court, notwithstanding counsel's knowledge that they were invalid without prior leave of Court**

Most significantly, the conduct of counsel for Mr. Koslowe, Shearman & Sterling, and

BATAS indicates that they knew that, without prior leave of Court, the subpoenas that Mr.

Marzen issued and signed in the name of the Court were <u>invalid</u> at the time that he issued and

signed them – but that he did so anyway.  Under this Court's local rules, parties must

presumptively be given five business days' notice before a deposition.  LCvR 30.1 (D.D.C.

2003).  Moreover, Order #51 expands the requirements of the Local Rules for this case, to

require a 30-day consultation period and 14 days' advance notice before a deposition is

scheduled.  Order #51, ¶ III.C.1(b) & III.C.2.  But the depositions were noticed only three

business days in advance (other than the Kell deposition, for which four business days' notice

was given).

Mr. Koslowe, Shearman & Sterling, and BATAS indicated during the February 4, 2004

meet-and-confer session – minutes after noticing the depositions – that they proposed to file a

"motion for <u>expedited discovery</u> on behalf of BATAS, Neil Kolsowe, and Shearman & Sterling."

Tr. 2/4/04 meet-and-confer at 4-5 (ex. 11) (emphasis added).  During the meet-and-confer

session, Mr. Marzen, on behalf of Mr. Koslowe and Shearman & Sterling, stated that they

wanted leave of Court to shorten the 30-day consultation period of Order #51 <u>that they had</u>

<u>already violated</u>:

> MS. HAHN:  And, furthermore, Order 51 requires 30 days notice of when you file
>     a deposition subpoena, that you give 30 days.  And it looks like the dates
>     that you provide are next week.
> MR. MARZEN:  Carolyn, you're exactly right as to the requirements of Order 51.
>     That's why what I wanted to talk about and the principal subject of the
>     meet-and-confer is our request to shorten the deadlines for a response.
> . . . .
> MR. MARZEN:  Let me just clarify.  We want to shorten the time for the notice.

<u>Id.</u> at 11-12.  The following day, Mr. Koslowe told the Special Master that the deadline that they

sought to "expedite" was, instead, Local Rule 30.1's five business day notice deadline – a second

deadline that they had <u>also</u> already violated:  "That is, the notices that we gave, if the local rule is

applicable, would require a minimum of five days to satisfy the reasonable time period for notice

and these depositions would take place within a shorter period of time."  Tr. 2/5/04 telephonic

hr'g at 7 (ex.12).

In other words, even as Mr. Marzen, as counsel for Mr. Koslowe and Shearman &

Sterling, was issuing and signing subpoenas on Wednesday, February 4, 2004 – subpoenas which

invoked the name of this Court to command witnesses to appear for depositions beginning at 10

a.m., three business days later – counsel for Mr. Koslowe, Shearman & Sterling and BATAS

recognized that, absent leave of Court, they were <u>prohibited</u> from taking depositions on such short notice.[23]

Further demonstrating the less than good-faith conduct by Mr. Koslowe, Shearman & Sterling and BATAS is that BATAS's corporate affiliates have previously recognized the principle that discovery on a motion to disqualify should be sought by motion for leave to take discovery, rather than by unilaterally issuing subpoenas.  In <u>European Community v. RJR Nabisco, Inc.</u>, 134 F. Supp. 2d at 300-01, several of BATAS's affiliates, including its American corporate affiliates, Brown & Williamson ("B&W") and British American Tobacco U.S. ("BATUS"), as well as BATAS's owners, BATCo and BAT Industries plc, in addition to other tobacco companies, sought to disqualify counsel for the plaintiff governments.  In those consolidated cases, though, the tobacco entities asked the Court "to review our request for production of documents <u>and to authorize its being served on plaintiffs</u>."  Tr. 12/21/2000, at 86, <u>Dep't of Amazonas v. Philip Morris Co.</u>, No. CV-00-2881 (NGG) (E.D.N.Y.) (attached as ex. 14) (emphasis added).  They did not, as Mr. Koslowe, Shearman & Sterling, and BATAS have done here, unilaterally issue and sign subpoenas for testimony and documents.

---

[23] Because the witness are all attorneys, they were well aware of the possibility that they might be held in contempt of Court if they did not appear in response to the command of the subpoenas.  They did not know, of course, that the attorney who signed the subpoenas in the name of, and as an officer of, the District Court <u>knew</u> that he had no authority to issue them on such short notice without leave of Court.

Rule 45(c)(1) provides that "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."  It is difficult to think of a more extreme example of an attorney's "imposing undue burden" on a witness than to issue and serve subpoenas that the attorney knows are without authority.

### c.  Required Consultation and Prior Notice Not Provided

Consultation and prior notice were required by the Federal Rules of Civil Procedure, this Court's Local Rules, and this Court's Orders, before Mr. Koslowe, Shearman & Sterling and BATAS scheduled the depositions at issue, and prior notice was required before they issued their document subpoenas.  Nonetheless, no consultations were made, and no prior notice was given.  As a result of this failure to consult and give the required prior notice, Mr. Kell learned of his deposition, scheduled for 10 a.m., Tuesday, February 10, 2004, only one day before the date he was commanded to appear, after returning from travel out of the country; Ms. Autor learned of her deposition, scheduled for 10 a.m., Monday, February 9, 2004, less than two business days beforehand, at around 2:30 p.m., Thursday, February 5, 2004.  Mr. Thirolf and Mr. Letter both learned of their depositions (scheduled for 1 p.m. and 4 p.m., respectively, February 9, 2004) four business days in advance, around 5 p.m. or somewhat later on Wednesday, February 4, 2004.

Rule 30(b)(1) requires that before a deposition may be taken, "reasonable notice" must be given to all parties.  As discussed above, this Court's Local Rules construe the Rule 30(b)(1) "reasonable notice" requirement to mean that parties presumptively be given five business days' notice before a deposition.  LCvR 30.1.  Moreover, in its Ninth Case Management Order, Order #51, this Court expanded the local rules' default period for notice, to require 30 days' advance consultation with opposing counsel, as well as 14 days' notice before a deposition is actually scheduled.[24]

---

[24] Order #51 provides in relevant part:

**C. Deposition Protocols**
  **1.  Consultation and scheduling**
  . . . .
  (b)  Absent extraordinary circumstances, at least thirty (30) days in advance of a proposed deposition, an attorney or designated representative for the party

To be sure, Mr. Koslowe, Shearman & Sterling, and BATAS have recently – and repeatedly – claimed not to be subject to Order #51.  Tr. 2/4/04 meet-and-confer at 12 (ex. 11) (Mr. Marzen denying that Order #51 applies to BATAS); tr. 2/5/04 telephonic hr'g at 10 (ex. 12) (Mr. Koslowe denying saying that he "agree[d] that Order 51 governs the discovery proceedings in this case").  But Order #51 specifically provides, "This Order, in conjunction with others previously entered, shall govern discovery and all other pre-trial activity until further order of the Court."  Order #51, ¶ I.C ("Scope of Order").  Moreover, the Court explicitly conditioned its consent to BATAS's motion to intervene into this case on BATAS's promise to abide by the Court's discovery orders:

> Finally, it is absolutely necessary to spell out the representations that BATAS has made in its papers and upon which this Court is relying in granting the Motion for intervention.
> . . . .
> . . . . Finally, the Government raises the possibility that BATAS would not be willing as part of its limited intervention to be bound by any contempt finding and/or sanctions if it does not comply with discovery orders.  In addition to promising to abide by the Court's final decision on privilege, BATAS has also represented that it will "acquiesce in the Court's orders governing review and production of the Documents."  Reply Mem. in Support of Motion, p. 19. There is no question in the Court's mind that these broad statements cover <u>any</u> issues relating to compliance with discovery orders relating to BATAS' intervention.

---

> wishing to take a deposition shall initiate the consultation process with the liaison person for the party involved . . . .  <u>The consultation process shall be for the purpose of scheduling the deposition at a mutually convenient time and place</u> and of discussing the estimated length of the deposition.
> . . . .
> **2.      Notice**
> Pursuant to the provisions of Fed. R. Civ. P. 30, a notice of deposition shall be served no later than fourteen (14) days before the scheduled deposition, unless a shorter period is agreed to by all parties or ordered by the Court or the Special Master for good cause shown.

Order #51, ¶ III.C.1(b), III.C.2 at 27-29 (emphasis added).

Mem.-Op. accompanying Order #449 at 5-7 (emphasis in original).  This Court should not now

hear BATAS (in particular) to assert that it is not, in fact, subject to the Court's discovery orders,

including the deposition discovery requirements of Order #51.

Even if, somehow, Mr. Koslowe, Shearman & Sterling and BATAS were not subject to

Order #51's deposition consultation and prior notice requirements, when a compact discovery

schedule is sought, "the only reasonable notice [under the requirements of Rule 30(b)(1)] would

have consisted of both written notice and oral notice <u>accompanied by a good faith effort to</u>

<u>schedule the deposition at a mutually convenient time</u>."  <u>C&F Packing Co. v. Doskocil Cos.</u>, 126

F.R.D. 662, 678 (N.D. Ill. 1989) (emphasis added) (holding that three days' notice of deposition

was insufficient).[25]

Where a subpoena is issued upon a witness only three business days before the

deposition, "reasonable notice" certainly is not provided under Rule 45, and the subpoena has no

force.  <u>Alexander v. Jesuits of Mo. Province</u>, 175 F.R.D. 556, 559 (D. Kan. 1997).  Mr. Koslowe,

Shearman & Sterling and BATAS's boldly abusive conduct, in failing to make the good-faith

consultation with counsel required by Order #51 (as well as by good practice generally and, given

the compressed schedule that they demanded, by the "reasonable notice" requirement of Rule

30(b)(1)), as well as their failure to provide the witnesses with the advance notice required by

---

[25] Mr. Koslowe, Shearman & Sterling, and BATAS's failure to consult with counsel for the United States before scheduling the depositions and issuing and signing subpoenas – even ignoring that Order #51 imposes the <u>duty</u> to do so as a Court order – is telling:

> It is an accepted practice . . . for attorneys to make an effort to agree among themselves on the arrangements for the taking of depositions before resorting to the giving of formal notice.  This enables them to make arrangements that will suit the convenience of all interested parties.  It is a very commendable procedure and one that should be encouraged.

<u>Warning Lites Co. v. S.H. Leggitt</u>, 32 F.R.D. 431, 433 (W.D. Tex. 1963), <u>as quoted in</u> <u>C&F Packing Co.</u>, 126 F.R.D. at 649 n.12.

Order #51, Local Rule 30.1, and Rule 30(b)(1), all indicate that the deposition subpoenas should be quashed.

In addition, the failure of Mr. Koslowe, Shearman & Sterling and BATAS to provide prior notice before issuing and signing their document production subpoenas violated the requirements of Rule 45(b)(1). The purpose of the notice requirement for document production subpoenas is to provide opposing parties an opportunity to object to the subpoena. Rule 45 Advisory Committee Notes to 1991 amendments, subdiv. (b).

> A contrary interpretation of Rule 45(b)(1), as noted by the district court, would allow a party to mail notice to opposing counsel one day prior to the date of compliance, effectively prohibiting counsel from responding. . . . For an objection to be reasonably possible, notice must be given well in advance of the production date.

Butler v. Biocore Med. Techs., Inc., 348 F.3d 1163, 1173 (10th Cir. 2003) (internal quotation marks and citations omitted). "The requirement that prior notice must be given has important underpinnings of fairness and efficiency." Cootes Drive LLC v. Internet Law Library, Inc., No. 01 CIV. 0877(RLC), 2002 WL 424647, at *2 (S.D.N.Y. Mar. 19, 2002) (quashing subpoenas issued without prior notice to opposing counsel).[26] The Court should quash the Record Custodian subpoena, and the document production portions of the Kell subpoena, due to, in addition to the other reasons here discussed, the failure of Mr. Koslowe, Shearman & Sterling and BATAS to provide the prior notice required by Rule 45(b)(1).

---

[26] Counsel may be sanctioned for failing to provide opposing parties with prior notice of document production subpoenas. Murphy v. Bd. of Ed. of Rochester City School Dist., 196 F.R.D. 220, 224-25 (W.D.N.Y. 2000); Spencer v. Steinman, 179 F.R.D. 484, 489 (E.D. Pa. 1998) (sanctioning counsel for directing subordinate attorney and paralegal to issue document production subpoenas without prior notice to opposing counsel).

### d.    The Deposition Subpoenas Are Wholly Invalid and Should Be Quashed

Subpoenas were not needed to take the depositions of the witnesses, because, as attorneys for the United States, they are presumably within the control of the United States.  Likewise, the documents sought through the subpoenas <u>duces tecum</u> are presumably within the possession, custody or control of the United States.[27]  Thus, both the witnesses and documents sought through the subpoenas would have been amenable to production by the United States as a party to the action, subject to there being proper authority for the discovery.  Accordingly, there was thus no need whatever for Mr. Koslowe, Shearman & Sterling and BATAS to issue any of their subpoenas.

Nonetheless, having chosen to issue and sign subpoenas, they are bound by the requirements governing the service of subpoenas set out in Rule 45.  This rule was amended in 1991 to allow counsel to issue and sign subpoenas, without obtaining them from the clerk of court.  However, when an attorney issues and signs a subpoena, he or she does so "as officer of the court."  Rule 45(a)(3). "Necessarily accompanying the evolution of this power of the lawyer as officer of the court is the development of increased responsibility and liability for the misuse of this power."  Rule 45 Advisory Committee note to 1991 Amendment, subdiv. (a).  As shown above, counsel for Mr. Koslowe, Shearman & Sterling and BATAS misused this power by noticing depositions on notice so short that they knew prior Court approval was required.  As

---

[27] Indeed, the documents demanded in the Justice Department Record Custodian subpoena are the same documents that Mr. Koslowe, Shearman & Sterling and BATAS simultaneously demanded by a Rule 34 Request for Production of Documents, and specify the same return date, time and location.  <u>Compare</u> 2/4/04 Record Custodian subpoena (ex. 9) <u>with</u> 2/4/04 Request for Production of Documents (ex. 10).

shown below, they also neglected to comply with the mandatory service provisions of Rule 45 itself.

### i.    No Witness Fees Were Tendered, Contrary to Fed. R. Civ. P. 45(b)(1)

Rule 45 requires that witness fees and mileage fees must be tendered with service of a subpoena to take a witness's testimony:  "Service of a subpoena upon a person named therein shall be made by delivering a copy . . . and, if the person's attendance is commanded, by tendering to that person the fees for one day's attendance and the mileage allowed by law."  Fed. R. Civ. P. 45(b)(1).[28]  Notwithstanding this requirement, Mr. Koslowe, Shearman & Sterling and BATAS failed to tender witness fees (or mileage fees) to <u>any</u> of the four witnesses whom they subpoenaed to give deposition testimony.  As a result, the four deposition subpoenas are invalid. In <u>Martin v. Howard University</u>, 209 F.R.D. 20, 20 (D.D.C. 2002), the court held:

> Federal Rule of Civil Procedure 45(b)(1) similarly requires the service of any subpoena to be accompanied by a tender of the witness fees for one's day attendance.  Hence, it is clear beyond all question that the failure to tender the witness fee is legitimate grounds for the witness to refuse to appear.

<u>Id.</u> at 20 (citations omitted).  Thus, just last year the Fifth Circuit held that even when a subpoena was accompanied by the required $40 witness fee, but not by the required mileage fee (even though it would have been $5 or less), the subpoena was properly quashed.  <u>Dennis</u>, 330 F.3d at 705 ("To be sure, the [mileage] allowance would have been less than five dollars, because Smith lived just a few miles from the deposition site, but rule 45(b)(1) contains no <u>de minimis</u> exception.").  Where either the witness fee or the mileage fee is not tendered with the subpoena,

---

[28] The statutorily required witness fee is $40.00 per day.  28 U.S.C. § 1821(b).  The statutorily required mileage fee is based on either a mileage allowance promulgated by the Administrator of General Services, or the witness's actual travel expenses.  <u>Id.</u> § 1828(c).  The mileage fee may be estimated (subject to a reasonableness requirement), but even if estimated, it must be tendered to the witness with the subpoena.  <u>Dennis v. Kelly (In re Dennis)</u>, 330 F.3d 696, 705 (5th Cir. 2003).

"[t]he courts [and] the leading treatises on civil procedure" "uniformly agree" that the subpoena is not properly served.[29]  See, e.g., CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), 713 F.2d 494, 496 (9th Cir. 1983) ("Thus, we hold the plain meaning of Rule 45(c) requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with service of a subpoena.") (emphasis added).  Because courts will quash subpoenas that are served without the required fees, Song v. Dreamtouch, Inc., No. 01 Civ. 0386(AGS), 2001 WL 487413, at *7 (S.D.N.Y. May 8, 2001) (quashing subpoena but authorizing reservice); Smith, 162 F.R.D. at 686 (denying motion to compel compliance with subpoena where required fees were not tendered), the four deposition subpoenas should be quashed due to Mr. Koslowe, Shearman & Sterling, and BATAS's failure to tender the required witness and mileage fees.

### ii.    Service Was Not Validly Effected

Moreover, several of the deposition subpoenas were not validly served under Rule 45 (and possibly none of them were validly served).  To the knowledge of the undersigned counsel, the subpoenas for Deborah Autor, Douglas Letter, and Gerald Kell were simply turned over to their buildings' mail rooms for delivery or, possibly, left with support staff in their offices. (Counsel has not yet ascertained how the subpoena for Eugene Thirolf was sent.)[30]

---

[29] Id. at 704 & n.9 (for courts, citing Tedder v. Odel, 890 F.2d 210 (9th Cir. 1989); In re Stratosphere Corp. Secs. Litig., 183 F.R.D. 684 (D. Nev. 1999); Alexander v. Jesuits of Mo. Province, 175 F.R.D. 556; Smith v. Midland Brake, Inc., 162 F.R.D. 683 (D. Kan. 1995); Coleman v. St. Vincent De Paul Soc'y, 144 F.R.D. 92 (E.D. Wis. 1992); Meyer v. Foti, 720 F. Supp. 1234 (E.D. La. 1989); Badman v. Stark, 139 F.R.D. 601 (M.D. Pa. 1991)); and at 705 & n.10 (for leading treatises, citing 9 James W. Moore et al., Moore's Federal Practice § 45.03[4][b][ii] (3d ed. 1997); 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2454, at 25-26 (2d ed. 1995)).

[30] The United States therefore expects that Mr. Koslowe, Shearman & Sterling, and BATAS will file proofs of service, as provided for by Rule 45(b)(3).  Significantly, the subpoenas name Mr. Marzen – who is also counsel for Mr. Koslowe and Shearman & Sterling – as the server.  Mr. Marzen should therefore not be allowed to advocate the validity of service as an attorney in the matter.  Even more significantly, though, Rule 45(b)(1) requires that a subpoena "be served by any person who is not a party."  Mr. Marzen is a member of Shearman & Sterling LLP,

Service of a subpoena under Rule 45 is subject to different standards than govern service

of a complaint under Rule 4.  9A Wright & Miller, Federal Practice and Procedure § 2454 at 24.

Most notably, "Rule 4 does not require the personal service of a summons and complaint."  Id.

By contrast, Rule 45 does require personal service of a subpoena:  "Service of a subpoena upon a

person named therein shall be made by delivering a copy thereof to such person."  Fed. R. Civ. P.

45(b)(1) (as amended in 1991).[31]  This language "impose[s] the requirement of personal service."

F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson, 636 F.2d 1300, 1323 (D.C. Cir. 1980)

(addressing former Rule 45(c) in context of rules governing service of FTC administrative

agency subpoena).[32]  Accordingly, service of a subpoena must be personal; it is not sufficient

merely to leave it at a witness's home or place of work.  As a result, the four deposition

subpoenas are invalid.  Especially given the choice of Mr. Koslowe, Shearman & Sterling and

---

which has entered an appearance in this case on its own behalf.

[31] The language in current Rule 45(b)(1) was formerly in Rule 45(c), until the 1991 amendments to Rule 45.

[32] The same rule is followed in numerous other courts.  See, e.g., Scarpa v. Saggese, Nos. 93-1356, 93-1672, 1994 WL 38620, at *1, 1994 U.S. App. LEXIS 2229, at *3 (1st Cir. Feb. 10, 1994) (per curiam) ("[A] subpoena cannot be left at someone's home; it must be served upon the person."); Harrison v. Prather, 404 F.2d 267, 273 (5th Cir. 1968) (service of subpoena on plaintiff's counsel, as opposed to the plaintiff himself, renders such service a nullity) (former Rule 45(c)); Klockner Namasco Holdings Corp. v. Daily Access.Com, Inc., 211 F.R.D. 685 (N.D. Ga. 2002) ("service on Burkart's wife at their residence did not satisfy the requirements of Rule 45 because Burkart himself was not personally served"); Agran v. City of New York, No. 95 Civ. 2170 (JFK), 1997 WL 107452, at *1 (S.D.N.Y. Mar. 11, 1997) (subpoena served by mail invalid); Conanicut Inv. Co. v. Coopers & Lybrand (In re Smith), 126 F.R.D. 461, 462 (E.D.N.Y. 1989) (service upon witness's daughter at witness's residence, and mailing subpoena to witness's residence, insufficient; "the Court has no discretion to permit alternative service when a party has difficulty effecting [personal] service") (former Rule 45(c)); Benford v. Am. Broad. Cos., 98 F.R.D. 40, 41 n.5 (D. Md. 1983) ("Under Rule 45(c), Federal Rules of Civil Procedure, personal service is required when an individual is subpoenaed."); Ghandi v. Police Dep't of Detroit, 74 F.R.D. 115, 120-21 (E.D. Mich. 1977) ("Where the witness named in the subpoena is a natural person, the subpoena must be personally served upon that individual.") (former Rule 45(c)); Application of Johnson & Johnson, 59 F.R.D. 174, 177 (D. Del. 1973) ("Under Rule 45(c), personal service of a subpoena is required when an individual is subpoenaed."); Gillam v. A. Shyman, Inc., 22 F.R.D. 475, 479 (D. Alaska 1958) ("The subpoena duces tecum calling on Al Shyman to appear personally as a witness fails because it was not personally served . . .").

BATAS to invoke the name and authority of the Court to command these witnesses' attendance through unnecessary subpoenas, the subpoenas should be quashed.

## **CONCLUSION**

For the reasons stated above, the United States respectfully requests the Court quash the subpoenas and enter the attached Proposed Order.

Dated:  February 9, 2004
   Washington, D.C.

         Respectfully submitted

         PETER D. KEISLER
         Assistant Attorney General


         _____
         SHARON Y. EUBANKS (D.C. Bar No. 420147)
         Director, Tobacco Litigation Team


         _____
         STEPHEN D. BRODY  (D.C. Bar No. 459263)
         Deputy Director, Tobacco Litigation Team


         _____
         DANIEL K. CRANE-HIRSCH
         Trial Attorney, Tobacco Litigation Team


         _____
         CAROLYN I. HAHN
         Trial Attorney, Tobacco Litigation Team
         Torts Branch, Civil Division
         United States Department of Justice
         Post Office Box 14524
         Washington, D.C. 20044-4524
         Telephone: (202) 616-4185

         Attorneys for Plaintiff
         United States of America

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil No. 99-CV-02496 (GK) |
| v. | ) |
| | ) Next scheduled court appearance: |
| PHILIP MORRIS USA INC., | ) March 15, 2004 |
| f/k/a PHILIP MORRIS INC., et al., | ) |
| | ) **EXPEDITED CONSIDERATION** |
| Defendants. | ) **REQUESTED** |
| | ) |

## EXHIBITS IN SUPPORT OF THE UNITED STATES'
## MOTION TO QUASH SUBPOENAS ISSUED BY COUNSEL FOR
## NEIL H. KOSLOWE, SHEARMAN & STERLING, AND BATAS

| Exhibit | Description |
|---|---|
| 1 | Tr. 1/6/04 meet-and-confer session |
| 2 | 1/27/03 ltr., Daniel K. Crane-Hirsch to Stephen Marzen |
| 3 | 12/12/03 ltr., Sharon Y. Eubanks to Neil H. Koslowe |
| 4 | 2/3/04 ltr., Daniel K. Crane-Hirsch to Neil H. Koslowe |
| 5 | 2/4/04 Notice of Deposition and Subpoena to take deposition of Deborah M. Autor at 10 a.m., Monday, February 9, 2004 |
| 6 | 2/4/04 Notice of Deposition and Subpoena to take deposition of Eugene Thirolf at 1 p.m., Monday, February 9, 2004 |
| 7 | 2/4/04 Notice of Deposition and Subpoena to take deposition of Douglas N. Letter, at 4 p.m., Monday, February 9, 2004 |
| 8 | 2/4/04 Notice of Deposition and Subpoena to take deposition of, and require production of documents by, Gerald C. Kell at 10 a.m., Tuesday, February 10, 2004 |
| 9 | 2/4/04 Subpoena to require production of documents by the Custodian of Records, Civil Division, Department of Justice, at 10 a.m., Tuesday, February 10, 2004 |

| 10 | 2/4/04 Request for the Production of Documents |
|----|-----------------------------------------------|
| 11 | Tr. 2/4/04 meet-and-confer |
| 12 | Tr. 2/5/04 Telephonic Hearing before the Special Master |
| 13 | 1/21/04 e-mail, Autor to Koslowe, re. "Tobacco briefs" (forwarded to Carolyn Hahn 1/29/04, and to Daniel Crane-Hirsch 1/29/04) |
| 14 | Tr. 12/21/2000, Dep't of Amazonas v. Philip Morris Co., No. CV-00-2881 (NGG) (E.D.N.Y.) |