UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                                                           )<br>             Plaintiff,                            )<br>                                                           )<br>     v.                                                 )<br>                                                           )<br>PHILIP MORRIS USA INC.,                 )<br>f/k/a PHILIP MORRIS INC., et al.,       )<br>                                                           )<br>             Defendants.                       )<br>                                                           ) | Civil Action No. 99-CV-02496 (GK)<br><br>Next scheduled court appearance:<br>July 15, 2004 |

**UNITED STATES' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY
OF J. HOWARD BEALES III, PH.D., AT TRIAL AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**INTRODUCTION**

The United States respectfully moves the Court for an order excluding trial testimony by J. Howard Beales III, Ph.D.[1] In their final list of fact witnesses for trial, Defendants proffer Dr. Beales's deposition testimony (his deposition and exhibits are attached as Exhibit A);[2] Dr. Beales is currently Director of the Federal Trade Commission's (FTC) Bureau of Consumer Protection. His deposition testimony is proffered on two topics: 1) "research he conducted on the Joe Camel [advertising] campaign;" and, 2) "his interactions with employees of the Federal Trade Commission"

---

[1] The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. See Luce v. United States, 469 U.S. 38, 41 n. 4 (1984), citing Fed. R. Evid. 103(c) (although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice had developed under the district court's inherent authority to manage the course of trials); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996).

[2] Although Defendants' designated Beales's prior testimony, see Joint Defendants' Trial Witness List - Fact Witnesses at 3 (April 5, 2004) (Exhibit B), puzzlingly Defendants also stated "if [Beales] appears live, he may also address the evidence relied on by plaintiff's experts who testify regarding the Joe Camel [marketing] campaign." Id.

on the Joe Camel advertising campaign Joint Defendants' Trial Witness List - Fact Witnesses at 3 (April 5, 2004) (excerpt attached as Exhibit B).  During both of these activities, Dr. Beales served a consultant to Collier, Shannon, Rill & Scott representing R.J. Reynolds.  Deposition of Howard Beales, United States v. Philip Morris, June 20, 2002, at 14:25-33:14, 35:12-38:18, and 54:11-62:17 (Exhibit A).  Although identified as a fact witness by Defendants and briefly describing some vague factual testimony, this designation is mere charade.  Defendants' Proposed Preliminary Findings of Fact undeniably identified Dr. Beales's proffered trial testimony as consisting exclusively of the opinions that he developed while he was a consultant to R.J. Reynolds.  See JD. PFF ¶¶ 806 and 1814-1817 at pp. 395-396 and 768-769.  As explained in detail below, Dr. Beales's purported "fact witness" testimony concerning his research is actually improper expert opinion testimony and should be excluded on that ground because such testimony violates Orders #65 and #495, Fed. R. Civ. P. 26(a)(2)(B) & 37(c)(1), and Fed. R. Evid. 602, 701, 702 & 403.  In addition, Dr. Beales's proffered deposition  fact testimony concerning his interactions with the FTC and his research should be excluded on the independent ground that it is contrary to Orders #356, #399, and #100 and thereby violates Fed. R. Evid. 403.  Under these circumstances, the Court should exclude the testimony of Dr. J. Howard Beales III at trial in this matter.

The parties met and conferred on this motion on April 27, 2004, and Defendants oppose the relief requested herein.

**FACTUAL BACKGROUND**

Dr. J. Howard Beales III, Ph.D., is employed as the FTC's Director of the Bureau of Consumer Protection.  Through Dr. Beales's testimony, Defendants apparently intend to establish the short procedural history of the FTC's actions and inactions in connection with the R.J. Reynolds' Joe Camel cartoon marketing campaign in the 1990's.  Defendants seek to have Dr. Beales's

deposition testimony admitted regarding:

> matters related to research he conducted regarding the Joe Camel campaign, as more fully described in writings and testimony in this matter. He may also describe his interactions with employees of the Federal Trade Commission and others regarding his research and writings on that subject. If he appears live, he may also address the evidence relied upon by plaintiff's experts who testify regarding the Joe Camel campaign.

Joint Defendants' Trial Witness List - Fact Witnesses at 3 (April 5, 2004) (Exhibit B).

Defendants' Preliminary Proposed Findings of Fact clearly identify Dr. Beales's proffered trial testimony as consisting wholly of the expert opinions that he developed while he was a consultant to R.J. Reynolds, rather than any "fact witness" testimony. See JD. PFF ¶¶ 806 and 1814-1817 at pp. 395-396 and 768-769.

> 806. J. Howard Beales, Director of the FTC's Bureau of Consumer Protection, has testified that he has "prepare[d] an analysis of the factors that lead teenagers to smoke cigarettes, and . . . examine[d] the role of advertising in that decision. . . . I concluded that there was no evidence that advertising caused or significantly influenced teenage smoking decisions. . . . The most important factor that influences a teenager smoking decision is the behavior of their peers. The influence of siblings who smoke is also important. Smoking decisions respond to teens' perceptions of the benefits and risks of smoking, and those are the primary factors that influence smoking decisions." (Beales Dep., 6/20/02, at 18-19.)
>
> * * *
>
> 1814. The best statistical analysis of the impact of cigarette advertising, including Joe Camel advertising, on youth smoking decisions is the study conducted by Dr. J. Howard Beales, currently the Director of the FTC's Bureau of Consumer Protection. J. Howard Beales III, "The Determinants of Teenage Smoking Behavior," The George Washington University School of Business and Public Management Working Paper Series (June 1996) ("Beales").[3]
>
> 1815. In that study, Dr. Beales undertook a statistical analysis to look at the impact of advertising, including Joe Camel advertising, on youth smoking after

---

[3] Dr. Beales's paper was published as a working paper: J.H. Beales III, "The Determinants of Teenage Smoking Behavior, " GWU School of Business and Public Placement Working Paper 96-34 (1996), but was never published in a peer-reviewed journal. Deposition of Howard Beales, United States v. Philip Morris, June 20, 2002, at 59:4-60:18.

3

        controlling for other factors that are generally recognized to affect youth smoking. Dr. Beales concluded that the "most important variables determining teenage smoking behavior are those reflecting the behavior of peers. Teens are more likely to smoke if most of their acquaintances smoke, and more likely to smoke the more their best friends smoke." Beales, at 45.

1816.  Dr. Beales testified that his study's results showed "that there was no evidence that advertising caused or significantly influenced teenage smoking decisions. (Beales Dep., 6/20/02, at 18.)

1817.  In particular, Dr. Beales' results showed that the "effects of total industry advertising are always [statistically] insignificant and often negative . . . ." Beales, at 46. As for the Camel brand of cigarettes, "the coefficients for its advertising are negative in models explaining current or daily smoking." *Id*.

In addition to the expert opinion testimony cited in their Preliminary Proposed Findings of Fact, Defendants also stated that Dr. Beales, if he appears live, "**may** also address the evidence relied upon by plaintiff's experts who testify regarding the Joe Camel campaign." Joint Defendants' Trial Witness List - Fact Witnesses at 3 (April 5, 2004) (Exhibit B)(emphasis added). Such testimony would also render only classic expert opinion testimony, not fact witness testimony.

     Defendants also stated that Dr. Beales "**may** also describe his interactions with employees of the Federal Trade Commission and others regarding his research and writings on that subject." Joint Defendants' Trial Witness List - Fact Witnesses at 3 (April 5, 2004) (Exhibit B)(emphasis added). Defendants' indecision may result from the vague nature of Dr. Beales's fact testimony at his deposition. Dr. Beales testified that he was involved with making two or three pre-complaint presentations to the FTC on the Joe Camel cartoon advertising campaign as a consultant to Collier, Shannon, Rill & Scott representing R.J. Reynolds. In April 1992, he provided the FTC with his opinions regarding a trio of then-recent articles that were published in the Journal of the American Medical Association addressing the Joe Camel cartoon marketing campaign's appeal to young children. Deposition of Howard Beales, <u>United States v. Philip Morris</u>, June 20, 2002, at 16:1-8, 17:19-23 and Deposition Exhibit No. 3 (Exhibit A). Dr. Beales could not recall what happened at

4

that meeting. Id. at 18:4-5. After that meeting, "Reynolds obtained the underlying data from one of the JAMA studies, the Pierce study, . . . from the California Tobacco Survey in 1990, and Reynolds provided [Dr. Beales] with data on [proprietary] advertising expenditures in different regions of California. [He] used that data to prepare an analysis of the factors that lead teenagers to smoke cigarettes, and to examine the role of advertising in that decision." Id. at 18:9-17. Subsequently, in or about 1993-94, Dr. Beales wrote a white paper using this data that was submitted to the FTC regarding the Joe Camel cartoon advertising campaign and was discussed with the commissioners. Id. at 20:14-18, 21:7-13, and Deposition Exhibit No. 4. No complaint issued from the FTC at that time. Id. at 22:8. "In 1996, the [FTC] staff reopened the investigation of the Camel Advertising campaign on a slightly different theory than articulated in [the earlier complaint], and [Dr. Beales] again presented the results of [his] empirical work to the staff and to the commissioners in response to that investigation." Id. at 23:2-8. After the FTC complaint was issued, "[Dr. Beales] was involved on Reynolds' behalf in analysis of the data to both criticize the FTC's position and to develop Reynolds' defense." Id. at 36:17-22. But the FTC proceeding was resolved before Dr. Beales testified. Id. at 38:13-18.

**ARGUMENT**

I.  **Defendants' Proffered Purported "Fact Witness" Testimony from the Dr. Beales Deposition Is Actually Improper Expert Opinion Testimony and Should Be Excluded.**

Defendants' description of Dr. Beales's proffered trial testimony and their citations of specific deposition testimony in their Preliminary Proposed Findings of Fact demonstrate undeniably that they intend to call Dr. Beales to give expert opinion testimony under the guise of fact witness testimony, in violation of the Federal Rules of Evidence and Civil Procedure as well as the Orders of this Court. See Fed. R. Evid. 602, 701, & 702; this Court's Orders #65 & #495; Fed. R. Civ. P. 26(a)(2)(B) and 37(c)(1). The Court should not permit Defendants' attempted end-run around the

5

rules and the Orders of this Court.

      A.    <u>The Proffered "Fact Witness" Testimony Is Prohibited by Federal Rule of Evidence 701.</u>

In order for a fact witness to be able to offer opinion testimony, the testimony must satisfy the requirements of Fed. R. Evid. 701. Historically, Rule 701 permitted lay witnesses to testify regarding scientific or technical subjects. <u>In re LTV Steel Co., Inc.</u>, 285 B.R. 259, 265 (Bankr. N.D. Ohio 2002). However, in 2000, Rule 701 was amended to add subsection (c):

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, <u>and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702</u>.[4]

Fed. R. Evid. 701 (emphasis added).

The Advisory Committee Notes to Rule 701 stress that the 2000 amendment was intended to prevent blurring the distinction between lay and expert testimony, and to ensure that expert witnesses did not evade the requirements of Rule 702 "through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 Adv. Comm. Notes; <u>see also</u> <u>DIJO, Inc. v. Hilton Hotels Corp.</u>, 351 F.3d 679, 685 (5th Cir. 2003) (Rule 701 amended to "prohibit lay witnesses from offering opinions based on 'scientific technical or other specialized knowledge within the scope of Rule 702'"). The Advisory Notes to Rule 701 further make clear that "[b]y channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade

---

[4] Rule 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26. . . by simply calling an expert witness as a layperson."

According to Rule 701's Advisory Notes, "[t]he amendment makes clear that any part of a witness' testimony that is based on scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules."  Id.; see also 4 Weinstein's Federal Evidence §701.03[1] ("if the witness's opinion rests in any way upon scientific, technical, or other specialized knowledge, the court should analyze the admissibility of the testimony under the rules applicable to expert testimony rather than those applicable to lay opinion testimony"); Mueller & Kirkpatrick, Federal Evidence §347 (2d ed. Supp. July 2003) (purpose of the amendment was to "put an end to the blurring of the line between [lay and expert testimony], which allowed 'lay' witnesses to testify more and more like experts, relying on training and experience and drawing conclusions that lay witnesses are not normally allowed to draw").

The "distinction between an expert and a non-expert witness is that a non-expert witness's testimony results from a process of reasoning familiar in everyday life and an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field."  Rule 701 Advisory Comm. Notes (incorporating the distinctions as announced in State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992)).

As set forth above, the proffered Dr. Beales's deposition testimony about his research is precisely the type of evidence that the amendment to Rule 701 was intended to preclude, in that it is based on scientific, technical, or other specialized knowledge within the scope of Rule 702 and results from a process of reasoning that can be mastered only by specialists in the field, and not through a process of reasoning familiar in everyday life.  Simply put, Defendants seek to introduce

7

through his purported "fact witness" testimony Beales's statements about his opinions on the complex issue of the role of cigarette advertising on cigarette demand, particularly its effect on smoking initiation by teenagers. Dr. Beales's opinions on this subject do not result from "a process of reasoning familiar in everyday life" as contemplated by Rule 701, but instead require scientific, technical, or other specialized knowledge within the scope of Rule 702.

For example, Defendant's Preliminary Proposed Findings of Fact set forth Dr. Beales's proffered testimony and it is indistinguishable from expert opinion testimony:

> "I concluded that there was no evidence that advertising caused or significantly influenced teenage smoking decisions. . . . The most important factor that influences a teenager smoking decision is the behavior of their peers. The influence of siblings who smoke is also important. Smoking decisions respond to teens' perceptions of the benefits and risks of smoking, and those are the primary factors that influence smoking decisions." (Beales Dep., 6/20/02, at 18-19.)

JD. PFF ¶806 at pp. 395-396.

> Dr. Beales undertook a statistical analysis to look at the impact of advertising, including Joe Camel advertising, on youth smoking after controlling for other factors that are generally recognized to affect youth smoking. Dr. Beales concluded that the "most important variables determining teenage smoking behavior are those reflecting the behavior of peers. Teens are more likely to smoke if most of their acquaintances smoke, and more likely to smoke the more their best friends smoke." Beales, at 45.

JD. PFF ¶1815 at pp. 768-769.

> Dr. Beales testified that his study's results showed "that there was no evidence that advertising caused or significantly influenced teenage smoking decisions." (Beales Dep., 6/20/02, at 18.)

JD. PFF ¶1815 at p. 769.

Furthermore, the proffered testimony of this "fact witness" is not "rationally based" on his own perceptions as Rule 701 requires. See DIJO, Inc., 351 F.3d at 685-86 ("it has always been the rule that lay opinion testimony may be elicited only if it is based on the witness's first-hand knowledge or observations"); see also Fed. R. Evid. 602 ("witness may not testify to a matter unless

8

evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). In DIJO, Inc., the Fifth Circuit held that it was reversible error for the trial court to allow a lay witness to offer opinion testimony as to the lost future profits of a business because the witness did not have the "requisite first-hand personal knowledge" of the company. 351 F.3d at 686. Although the lay witness had performed his own appraisal of the business, the court in DIJO, Inc. emphasized that the witness's analysis was based on income figures and other information received from someone else, and thus was not based on his own "independent knowledge or observations." Id. at 686. The court noted that "[t]he further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion testimony will be admissible under Rule 701." Id.; accord Zenith Electronics Corp. v. WH-TV Broadcasting Corp., 2003 WL 22284326, *3 (N.D. Ill. Oct. 2, 2003) (lay witness business managers not permitted to offer opinion testimony on future lost profits because such analysis would be based on market analysis, and not witnesses' "perception or personal knowledge, and would require specialized knowledge").

      Dr. Beales purported "fact witness" testimony about his research is not based on any first-hand knowledge of any of Defendants' conduct that is at issue in this litigation. Rather, he has – as an expert witness routinely does – reviewed data and reports, and conducted studies and reached conclusions based thereon. The only personal, first-hand knowledge that Dr. Beales has is about the FTC's initial inaction and subsequent action with regard to the Joe Camel advertising campaign, a government activity that the Court has already found to be irrelevant to this litigation. See Orders #356, #399, & #100. As such, Dr. Beales's opinion deposition testimony is inadmissible under Rule 701 and should be excluded.

      B.    <u>The Proffered Testimony of Dr. Beales Is Also Prohibited by Orders #65 & #495 and Fed. R. Civ. P. 26 & 37</u>.

As explained above, Defendants seek to introduce expert opinion testimony through Dr.

9

Beales despite the fact that he is listed exclusively as a fact witnesses. Fed. R.Civ. P. 26(a)(2)(B) requires Defendants to disclose the identity, reports and materials of its expert witnesses as directed by the Court, which the Court mandated in Order #65 be done no later than February 1, 2002 – over two years ago. Defendants did not identify Dr. Beales as an expert witness and did not serve an expert report as required by Rule 26(a)(2)(B) and Order #65. In such a circumstance, Rule 37(c) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a). . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

In addition, Order #495 limited Joint Defendants to a total of 25 expert witnesses at trial in this matter. By offering Dr. Beales's expert opinions through this purported "fact" witness, Defendants have exceeded their allotted number of expert witnesses in violation of Order #495. Further, allowing Dr. Beales to testify at trial would prejudice the United States by permitting Defendants to avoid the timing requirement of Order #65, to avoid the expert witness disclosure requirements of Rule 26(a)(2)(B), and to exceed their allotted number of expert witnesses under Order #495.[5] Defendants' attempted end-run around the Rules and the Orders of this Court should not be permitted and Defendants should be prohibited from introducing such testimony by Dr. J. Howard Beales III at trial in this matter.[6]

---

[5] In addition, Donald Martin, Ph.D., had been designated as an expert whose opinions were based in part on Dr. Beales's paper. Expert Report of Dr. Donald Martin, January 25, 2002 at 39-40 (excerpt attached as Exhibit C). But inasmuch as he had not been given access to Dr. Beales's data, including proprietary data, or analysis, Deposition of Donald Martin, United States v. Philip Morris, July 23, 2002 at 131:22-133:21 (excerpt attached as Exhibit D), the United States did not receive the data underlying Dr. Beales's study under Rule 26(a)(2)(B) in connection with Dr. Martin's expert report. Further, Dr. Martin was dropped from Defendants' expert witness list after the Court limited Defendants to 25 expert witnesses under Order #495. For this reason, Dr. Beales's trial testimony should not be permitted as an end-run around Order #495, in order to address matters that will no longer be addressed by Dr. Martin.

[6] In addition, Dr. Beales's testimony should be disallowed due to the potential for the unfair prejudice and confusion it may engender. See Fed. R. Civ. P. 403. Although Dr. Beales is currently employed by the FTC, prior to and during the time he "interacted" with FTC employees and conducted his research, he served as a paid

10

## II. Defendants' Proffered Dr. Beales Fact Deposition Testimony Should be Excluded Under this Court's Order #356 and Fed. R. Evid. 403.

### A. Dr. Beales's Deposition Testimony Relates to Matters Which the Court Has Previously Considered and Found Irrelevant to this Litigation.

Defendants' proffered fact deposition testimony from Dr. Beales concerning "his interactions with employees of the Federal Trade Commission" on the Joe Camel marketing campaign should also be disallowed because such testimony appears to contradict the Court's express holding that the jurisdiction and regulation of the tobacco industry by the FTC does not constitute a valid affirmative defense, and does not preempt, the instant action.  See Order #356; see also Order #399 (denying Defendants' Motion for partial reconsideration of Order #356) and accompanying Memorandum Opinions.  Therefore, under the holding of this Court, Dr. Beales's testimony is irrelevant and immaterial to any issue of fact or law remaining in this case.

In Order #356 and the accompanying Memorandum Opinion, the Court considered Joint Defendants' Motion for Partial Summary Judgment on Advertising, Marketing, Promotion, and Warning Claims, in which Defendants sought "summary judgment as to the United States' advertising, marketing, promotion and warning claims on the basis that these claims are within the exclusive jurisdiction of the Federal Trade Commission."  United States v. Philip Morris Inc., 263 F. Supp. 2d 72, 74 (D.D.C. 2003).  The Court squarely rejected Defendants' contention, finding that:

> The Defendants misperceive the thrust of the Government's case.  It is true that conduct relating to advertising, marketing, promotion and product warning labels can fall within the reach of a number of overlapping statutes. . .  However, in this case, the Government's Amended Complaint charges only RICO violations; it does not

---

consultant of the law firm Collier, Shannon, Rill & Scott, which represented the tobacco industry at the time and continues to represent Defendants in the instant case.  The opinions and research of Dr. Beales that Defendants seek to introduce at trial were presented in opposition to the FTC in its proceeding against R.J. Reynolds's Joe Camel advertising campaign.  Deposition of Howard Beales, United States v. Philip Morris, June 20, 2002, at 18:9-17, and 36:17-22.  Therefore, Dr. Beales's testimony should be excluded because due to his current position with the FTC, his testimony would improperly appear to represent an official position of the FTC, despite the fact that his interactions and research were actually conducted on behalf of R.J. Reynolds.

> allege violation of any other statutes. Because the FTC has no authority to enforce RICO, the logical consequence of the Defendants' position would be that, at least in this instance, the RICO statute would be nullified.

Id. at 77. The Court concluded that "there is no inherent conflict or positive repugnancy between RICO and the FTCA [Federal Trade Commission Act] or the FCLAA [Federal Cigarette Labeling and Advertising Act] and that the FTC is therefore not vested with exclusive jurisdiction over the Government's advertising, marketing, promotion and warning claims." Id. at 81. Accordingly, the Court denied Defendants' Motion for Partial Summary Judgment and granted in part the United States' Cross Motion for Partial Summary Judgment, striking Defendants' affirmative defenses to the extent they were solely based upon the FTC's purportedly exclusive jurisdiction.[7]

The Court's ruling in Order #356 is also consistent with its prior finding in Order #100, in which the Court considered Defendants' attempt to gain disclosure of approximately 155 applications submitted to the Food and Drug Administration ("FDA") requesting marketing approval for products designed to help individuals reduce or eliminate their use of nicotine. Mem. Op. accomp. Order

---

[7] This Court's ruling in Order #356 is consonant with the recent decision of the Madison County, Illinois Circuit Court in Price v. Philip Morris (f/k/a Miles v. Philip Morris), a case which alleged that Philip Morris violated two Illinois state fraud statutes by deceptively using the descriptor "lights" in the name of its cigarettes and fraudulently representing that its "lights" cigarettes result in lowered tar and nicotine yields in smokers. Price v. Philip Morris Inc., 2003 WL 22597608 (Ill. Cir. Ct. Mar. 21, 2003).

As Defendants attempt to do in this case, Philip Morris contended in Price that the plaintiff's action was preempted by the FCLAA and by the FTC's jurisdiction and regulation of the cigarette industry. Id. at *19. The Price court squarely rejected Philip Morris's contention, holding that "[n]either the FCLAA nor any regulation of the FTC governs the conduct at issue in this case - Philip Morris' voluntary use of 'Lights' and 'Lowered Tar and Nicotine' descriptors on its cigarette packages." Id. at *21. In rejecting Defendants argument, the court reasoned,

> Philip Morris has attempted to mis-characterize Plaintiffs' claims in an attempt to succeed on its affirmative defenses. Plaintiffs' claims in this case are not based upon any challenge to the FTC machine measuring procedures or the tar and nicotine ratings published based upon those testing procedure[s]. Plaintiffs' claims in this case are related to Philip Morris' specific intentional misrepresentations on the packages of Marlboro Lights and Cambridge Lights.

Id. at *22. Ultimately, the court in Price concluded that "the fact that Philip Morris attempted to defend its fraudulent misrepresentations based upon FTC measurements does not convert Plaintiffs' claims into claims based upon those measurements." Id. Regarding Dr. Beales's limited fact testimony, Defendants appear to be trying to engender the same confusion of issues with the FTC's regulation and enforcement powers related to advertising.

12

#100 at 2 (R. 651, Nov. 14, 2001).  The Court found the requested discovery to be of minimal relevance to the case at hand, and granted the Government's motion for a protective order, holding:

> Contrary to the arguments of Joint Defendants, whether third parties. . . were developing such products, or whether the Government knew about it, or whether the Government should have better, or more effectively, regulated the activities of the Joint Defendants, is, at best, of minimal, if any, relevance to whether the Joint Defendants were themselves participating in the conspiracy and committing the acts of which they are accused.

Mem. Op. accomp. Order #100 at 6.

Evidence of the FTC's regulation of Defendants' activities or the FTC's knowledge cannot comprise a valid affirmative defense in this case and is not otherwise relevant.  As the Court has already held, "[t]he Government's Complaint describes in detail what it alleges to be a four-decade long conspiracy, dating from at least 1953, **to intentionally and willfully deceive and mislead the American public** about, among other things, the harmful nature of tobacco products, the addictive nature of nicotine, and the possibility of manufacturing safer and less addictive tobacco products." United States v. Philip Morris, Inc., 116 F.Supp.2d 131, 136 (D.D.C. 2000) (emphasis added).  As the Court acknowledged, the Complaint properly alleges that "Defendants intended to **defraud individual smokers** of their property (i.e., the money they spent on cigarettes)," and does not allege a scheme to defraud the United States or the FTC.  Id. at 153 (emphasis added); accord United States v. Philip Morris, Inc., 2004 WL 111820 (D.D.C. Jan. 23, 2004) ("The Government seeks injunctive relief and $289 billion for what it alleges to be an unlawful **conspiracy to deceive the American public**.") (emphasis added).  In addition, in order to establish Defendants' liability under RICO, the scheme to defraud purchasers need not be successful, and the United States' is not required to prove reliance on the Defendants' fraud nor "damages" resulting from the fraud in order to prevail on its RICO claims.  As this Court has held, it is legally sufficient that "a defendant who uses the mail with the intent of defrauding someone of property is guilty  . . .  whether the attempt succeeds or not."

13

United States v. Philip Morris Inc., 116 F.Supp.2d at 153; accord Neder v. United States, 527 U.S. 1, 23-25 (1999) ("The common law requirements of 'justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes."); Carpenter v. United States, 484 U.S. 19, 26-27 (1987); Durland v. United States, 161 U.S. 306, 315 (1896) (proof that the mailing succeeded in deceiving the intended violation is not required); United States v. Pollack, 534 F.2d 964, 971 (D.C. Cir. 1976) (the mail and wire fraud statutes "do not require that the deception bear fruit for the wrongdoer or cause injury to the intended victim").  Nor is it necessary to prove that the mailing or wire contains false information.  "[I]t has long been the law that, in order to establish mail [or wire] fraud, 'it is not necessary that the individual mailing [or wire] relied upon . . . be shown to be in any way false or inaccurate, if the matter mailed [or wired] is in furtherance of or pursuant to the scheme to defraud.'" United States v. Philip Morris Inc., 304 F.Supp.2d 60, 70 (D.D.C. 2004).

Accordingly, under the Court's Orders #356, #399, and #100, any proffered trial fact testimony regarding the FTC's jurisdiction, regulation, and/or knowledge of the tobacco industry is irrelevant to the instant litigation.  For this reason, Defendants' proffer of Dr. Beales's vague and extremely limited fact testimony about two or three meetings with the FTC in the 1990's, the sole purpose of which appears to be to testify regarding the FTC's powers of regulation and enforcement of advertising in connection with the Joe Camel campaign, should be excluded.

    B.    <u>Dr. Beales's Fact Deposition Testimony Should Be Disallowed as Irrelevant and a Waste of the Court's Time</u>

As demonstrated above, the sole relevance of the proffered Dr. Beales's deposition fact testimony appears to be whether or not the United States' advertising, marketing, promotion and warning claims are within the exclusive jurisdiction of the FTC, and/or whether the FTC properly regulated the Joe Camel campaign and its appeal to youth or Defendants' intent in marketing Camels to youth.  The proffered testimony can serve no other purpose.  The Court already has found these

14

subjects to be irrelevant to Defendants' conduct in Order #100, and has determined that FTC regulation does not bar this action in Orders #356 and #399.

Accordingly, the proffered testimony is irrelevant and thus inadmissible under the Federal Rules of Evidence. See Fed. R. Evid. 401, 402 & 403. Under Fed. R. Evid. 402, evidence is admissible only if it is relevant to a claim or defense. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. Even evidence that is relevant may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Trial courts are afforded wide discretion in determining whether to exclude relevant evidence on grounds of prejudice, confusion, or waste of time. United States v. Abel, 469 U.S. 45, 54-55 (1984); United States v. Nelson-Rodriguez, 319 F.3d 12, 34 (1st Cir. 2003).

Because the Dr. Beales's fact deposition testimony goes only to the efficacy of the FTC's Joe Camel proceedings and the FTC's inaction or actions regarding that campaign – topics that have been excluded by the Court from consideration in this litigation – his testimony has no tendency to make the existence of any fact that is of consequence to the determination of this action more probable or less probable. For that reason, Dr. Beales's fact witness testimony is inadmissible and should be excluded. In addition, if admitted, Dr. Beales's testimony would only create the potential for wasting the Court's time and confusing the facts that are actually in dispute.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court preclude Defendants from offering the testimony of Dr. J. Howard Beales III at trial in this matter.

Dated: May 4, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

_____
SHARON Y. EUBANKS (D.C. Bar No. 420147)
Director, Tobacco Litigation Team

_____
STEPHEN D. BRODY (D.C. Bar No. 459263)
Deputy Director, Tobacco Litigation Team

_____
RENÉE BROOKER (D.C. Bar No. 430159)
Assistant Director, Tobacco Litigation Team

_____
RUSSELL B. KINNER (D.C. Bar No. 243519)
Senior Trial Attorney, Tobacco Litigation Team

_____
ROBERT P. WILLIAMS (D.C. BAR No. 474730)
Trial Attorney, Tobacco Litigation Team
United States Department of Justice
Post Office Box 14524
Ben Franklin Station
Washington, DC 20044-4524
Tele: (202) 616-4185

Attorneys for Plaintiff United States of America