**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PHILIP MORRIS USA INC., ) <br> f/k/a PHILIP MORRIS INC., *et al.*, ) <br> ) <br> Defendants. ) | Civil No. 99-CV-02496 (GK) <br><br> Next scheduled court appearance: <br> July 15, 2004 |

**UNITED STATES' MOTION IN LIMINE AND SUPPORTING MEMORANDUM
TO EXCLUDE TESTIMONY OF WILLIAM WECKER
BASED UPON CALCULATIONS AND DATA PRODUCED TO THE
UNITED STATES IN VIOLATION OF ORDER #240**

**INTRODUCTION**

The Court should exclude testimony of William Wecker based upon calculations, data, and analyses that were produced by Joint Defendants in direct contravention of Order #240, and were not produced to the United States until October and December 2003, long after the deadlines for production of expert reports set forth in Orders #65 and #230.  As this Court has already ruled in Order #240, to allow Joint Defendants' experts to critique the supplemental/rebuttal reports of the United States' experts would upset the standard procedure for production of expert testimony under Fed R. Civ. P. 26 and would prejudice the United States by giving Joint Defendants a "procedural and substantive advantage."  Based upon this reasoning, in Order #240 the Court precluded Joint Defendants from having their expert, William Wecker, produce a supplemental report critiquing the United States' experts' supplemental/rebuttal reports

filed with the Court in July 2002.  Despite the Court's clear and unequivocal ruling, in October and again in December, 2003, Joint Defendants, through William Wecker, produced supplemental data, calculations, and analyses that further critique the supplemental/rebuttal reports and calculations of the United States' experts Jonathan Gruber and Timothy Wyant.

William Wecker's supplemental calculations, data, and analyses are in direct contravention of Order #240.  The Court has already ruled that supplemental critiques would prejudice the United States by providing a "substantive and procedural advantage" to Defendants.  Order #240 Mem. Op. at 3.  Moreover, the untimely nature of the production of William Wecker's supplemental calculations, data, and analyses prevented the United States from a meaningful examination of the expert at deposition.  Based upon all of the foregoing facts, the Court must preclude any testimony that Joint Defendants attempt to elicit from William Wecker at trial related to his supplemental critique of the United States' experts not produced by Joint Defendants until October and December 2003.[1]

## FACTS

As required by Order #65, the Court's scheduling order regarding expert discovery, in November 2001 the United States submitted expert reports from Dr. Jonathan Gruber [R. 672] and Drs. Timothy Wyant and Scott Zeger [R. 674].  Dr. Gruber calculated the size of the Youth Addicted Population:  the number of individuals who became addicted to smoking before turning 21 years old in each year from 1954 to 2000.  For the Youth Addicted Population, Drs. Wyant and Zeger then offered opinions as to the material impact of the allegedly unlawful conduct of

---

[1] The parties met and conferred on this motion on April 22, 2004, and Defendants oppose the requested relief.

the Defendants by computing the smoking-attributable health care costs, the number of cases of treatment for major smoking related diseases, and the number of premature deaths and the years of life lost as a result of smoking.

Order #65 also required that Joint Defendants' expert reports be filed by February 1, 2002. By agreement of the parties – and pursuant to provisions in Order #65 providing for limited exceptions to the February 1, 2002 cutoff date – this deadline was extended to May 10, 2002, for a handful of Joint Defendants' experts, including William Wecker and Donald Rubin. Order #65, p. 1; Order #240, Mem. Op. at 2, ¶ 2.

In July 2002, again in accordance with Order #65, Dr. Gruber [R. 1453] and Drs. Wyant and Zeger [R. 1449] submitted supplemental/rebuttal reports. Unhappy with the content of these reports, on September 11, 2002, on the eve of the deadline for completing expert discovery Joint Defendants "moved to expand the discovery period for five Government experts [including Drs. Wyant and Zeger] and to supplement the reports of four of their own experts [including Dr. Wecker and Dr. Rubin]." Order #240, Mem. Op. at 1. However, Order #65, as negotiated and agreed to by Joint Defendants and as entered by the Court, did not allow Defendants to file and serve a second round of expert reports after receiving the United States' supplemental/rebuttal reports. In Order #240, the Court thus rejected both requests and ruled that Joint Defendants' experts, including William Wecker and Donald Rubin, were precluded from filing additional critiques. Specifically, the Court found that Order #65

> follows the standard procedure customarily used for the submission
> of expert reports under Rule 26, i.e., the proponent submits their
> report, the opponent submits their opposing report, and the
> proponent submits their final report, which responds to the
> criticism raised by the opponent's report. This procedure does not

> contemplate that the opponent, here the Joint Defendants, has a
> further opportunity to once again critique the supplemental/rebuttal
> reports provided by the proponent, here the Government.
>
> What the Joint Defendants are seeking is a significant change in
> this customary procedure and in Order #65 - - a change which
> would give them both a procedural and substantive advantage.

Order #240, Mem. Op. at 3. Effectively the Court ruled that, as the party with the burden at trial, the United States' experts should have the final word and the final opportunity to submit analyses.

Despite Order #240, which precluded submissions by William Wecker and Donald Rubin after May 10, 2002, Joint Defendants have continued to repeatedly serve supplemental reports, data, calculations, and analyses by these experts, including the following:

- On March 20, 2003, Joint Defendants served a supplemental report of Donald Rubin. Ex. A.

- On April 7, 2003, Joint Defendants served a supplemental report of William Wecker related to the Youth Addicted Population, disgorgement, and related health care implications.[2] Ex. B.

- On October 17, 2003 Joint Defendants served data and calculations from William Wecker in electronic form, which had never previously been produced to the United

---

[2] Joint Defendants also filed a second report prepared by William Wecker on April 7, 2003. This second report produced by Joint Defendants on April 7, 2003, as well as the report produced by Joint Defendants on July 28, 2003, are completely unrelated to the United States' experts' calculations of the Youth Addicted Population, the appropriate proceeds amount, or the health care implications calculated by Drs. Wyant, Zeger, and Miller. Instead, these reports constituted Dr. Wecker's first foray into Monograph 13 and the related issues of light and low tar cigarettes. These reports bear not relationship to any analyses previously done by Dr. Wecker in this case and both reports were prepared for cases other than the instant case. The United States is filing a simultaneous motion in limine to exclude any testimony related to the April 7 and July 28 Monograph 13 reports on the grounds that they are in violation of Order #65 and Fed. R. Civ. P. 26(c).

>States. Ex. C (October 17, 2003, letter from Robert McDermott to Renee Brooker). The production did not include any written description or information that would allow the United States or its experts to readily understand or analyze the contents of the production, and arrived only five days before the renewed deposition of Dr. Wecker in San Francisco.

- On October 21, 2003, yet additional electronic data and calculations from William Wecker were served upon counsel for the United States at a hotel room in San Francisco, literally on the eve of the continuation of Dr. Wecker's deposition.

- Finally, on December 12, 2003, Joint Defendants sent another set of electronic data and calculations from William Wecker, which appear to be yet another analysis of the United States' disgorgement and medical cost and premature death experts. Ex. D (December 12, 2003 letter from Peter Biersteker to Stephen Brody and James Gette).

All of these productions violated Order #240.[3] Indeed, in a meet and confer on Joint Defendants' Motion to Compel an Additional Depositions of United States' experts Timothy Wyant and Scott Zeger, Joint Defendants' unequivocally stated that Joint Defendants were well aware that the supplemental disclosure of Dr. Wecker was exactly that which was prohibited by Order #240: a "critique of the supplemental/rebuttal reports provided by the . . . Government."

>MR. BIERSTEKER: **[Dr. Wecker's] supplemental work consisted of a further analysis of Wyant and Zeger. He had criticisms of that further work of Wyant and Zeger.** They were disclosed. You deposed [Wecker]. And now Wyant and Zeger have responded, but you say I don't get to depose them, and that doesn't seem right to me. I mean, you know, it would be one thing if Zeger and Wyant had no opportunity to respond, and that's what the Judge was saying would have been unfair. In the Judge's view, the Plaintiff gets to go last. Okay, fine.

---

[3]The productions in October and December, 2003, also violated the Court's September 1, 2003 deadline for expert related discovery established in Order #230.

> But now you've done it. You've gone last. So that's not an issue anymore. The issue is whether you get to do it and get to be completely immune from having these guys [Wyant and Zeger] answer any questions about why they rejected all of the other criticisms that were made, something you didn't even bother to disclose except in the letter of November 4th. And I think I'm entitled to ask them okay, on what basis do you reject all the other criticisms? That's all I'm asking to do.

Ex. E (November 17, 2003 meet & confer transcript) at 63 (emphasis added).

In the summer of 2003, at a point when Joint Defendants had only just begun their violations of Order #240, the United States believed that the situation could be resolved by the parties without the need for Court intervention.[4] Thus, rather than embarking on what it thought would be a waste of the Court's time, the United States agreed to forego Court intervention given certain intervening developments. First, Joint Defendants agreed to make William Wecker and Donald Rubin, who unquestionably filed late reports, available for supplemental depositions. Ex. F (August 8, 2003 letter from Peter Biersteker to Stephen Brody and Renee Brooker) at 5; Ex. G (August 19, 2003 letter from Stephen Brody to Peter Biersteker). Those depositions took

---

[4] The United States could properly bring a motion to preclude testimony related to all of the supplemental data, calculations, and analyses of both Drs. Wecker and Rubin produced after May 10, 2002, as violative of Order #240. However, given intervening events and in an attempt to limit the motions practice before the Court, the United States has chosen to focus on the productions from William Wecker that were most egregiously late and, indeed, came so late (either after or on the eve of his renewed deposition) that there was no reasonable way to meaningfully question Dr. Wecker about the late productions at his deposition. In addition, these productions in October and December, 2003, were unaccompanied by any explanation from Dr. Wecker regarding the contents of the productions. The United States reserves it right to later challenge the other reports from Drs. Wecker and Rubin that violated Order #240 if such a challenge becomes appropriate.

6

place on October 22, 2003[5] and August 30, 2003.  Second, United States' expert Jonathan Gruber re-calculated the Youth Addicted Population as necessitated by  Dr. Wecker's April 7, 2003 untimely production.  Ex. I (August 13, 2003 letter form James Gette to Peter Biersteker) at 2.  Third, Drs. Wyant and Zeger re-ran the health care costs and premature death calculations to take account of Dr. Gruber's revised estimation of the Youth Addicted Population. Id.[6]   Fourth, the parties' agreed to continue the deposition of Dr. Gruber.  Id. at 1.  That deposition took place on September 11, 2003.  It should be noted that none of these additional depositions and machinations would have been necessary had Joint Defendants not unilaterally decided to disregard the Court's ruling in Order #240.

Joint Defendants' October and December 2003 productions contain data, calculations, and analyses that are different from any work previously done by Dr. Wecker, and thus represent the very supplemental critique of the United States' experts Jonathan Gruber and Timothy Wyant that

---

[5]In his deposition on October 22, 2003, William Wecker admitted that his April, 2003 report was the exact sort of "critique [of] the supplemental/ rebuttal reports" precluded by Order # 240:

> Q. When you prepared your report in April of  2003, were there materials that you considered in preparing this report, other than those that had been provided in July, 2002, by plaintiff's experts?
>
> A. Well, I think probably yes.  The -- **it's certainly correct that my new work that I wanted to describe here was work on their [Wyant and Zeger] new work from July or August, 2002.**  But a lot of the old work survives, and I really didn't disentangle that in my thinking.

Wecker Dep., 10/22/03 at 371, attached hereto as Ex. H (emphasis added).

[6]As found by the Special Master, "Drs. Wyant and Zeger also corrected two errors in computer code identified by Joint Defendant' experts." R&R #152 at 14, n. 10.  These corrections were on the order of typographical errors.

is precluded by Order #240.  In short, these productions are exactly that which Order #240 prohibited: "a further opportunity to once again critique the supplemental/rebuttal reports provided by the proponent, here the Government."  Order #240, Mem Op. at 3.[7]  As such, Dr. Wecker should be precluded from offering testimony related to the data, calculations, and analyses contained in his untimely productions in October and December, 2003, which are after the September 1, 2002 deadline for expert discovery in Order #230.

## ARGUMENT

The purpose of a motion in limine is to allow the trial court to rule in advance on the admissibility of forecasted evidence.  See Luce v. United States, 469 U.S. 38, 41 n. 4 (1984), citing Fed. R. Evid. 103(c) ("although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice had developed pursuant to the district court's inherent authority to manage the course of trials"); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996).  Here, the Court should employ its trial management authority to enforce the "standard procedure customarily used for the submission of expert reports under Rule 26" (Order #240, Mem. Op. at 3), to enforce the law as already established in this case, to prevent prejudice to the United States, and to protect its inherent authority to manage trial activities so as to avoid the introduction of potentially confusing testimony.[8]

There can be no dispute that William Wecker's supplemental productions served on the

---

[7] Given that these significant productions of data, calculations, and analyses in October and December, 2003, arrived either after or on the eve of the renewed deposition of William Wecker, the United States has not even had an opportunity to question the expert on his calculations, data, and analyses.

[8] The Court has broad discretion in its case management authority to enforce requirements in a manner designed to secure fairness and to avoid prejudice.  See Fed. R. Evid. 102.

United States in October and December, 2003, violated Order #240.  Specifically, the Court's Order concluded that:

> The procedure [under Order #65] does not contemplate that the opponent, here the Joint Defendants, has a further opportunity to **once again critique** the supplemental/rebuttal reports provided by the proponent, here the Government.

Order #240 at 3 (emphasis added).  This ruling of the Court was premised on the standard procedures for expert analyses as envisioned in the Federal Rules of Civil Procedure:

> [the schedule in this case] follows the standard procedure customarily used for the submission of expert reports under Rule 26, i.e., the proponent submits their report, the opponent submits there opposing report, and the proponent submits their final report, which responds to the criticism raised by the opponent's report.

Order #240, Mem. Op. at 3.  Allowing William Wecker to testify concerning his productions from October and December, 2003, would contravene the ruling and reasoning of Order #240, and would be contrary to the standard procedures established by Rule 26.

Under the "law of the case" doctrine, "the **same** issue presented a second time in the **same case** in the **same court** should lead to the **same result**."  LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (emphasis in original); accord  Messenger v. Anderson, 225 U.S. 436, 444 (1912); Kimberlin v. Quinlan, 199 F.3d 496, 500 (D.C. Cir. 1999).  The purpose of this prudential doctrine is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." 18 Wright, Miller & Cooper §§ 4478; see also United States v. Singleton, 759 F.2d 176, 183 (D.C. Cir. 1985).  Indeed, "[t]he Supreme Court has instructed the lower courts to be 'loathe' to reconsider issues already decided 'in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and

would work a manifest injustice.'" LaShawn A., 87 F.3d at 1393 (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)).

Order #240 represents the law of this case. It precludes several of Joint Defendants' experts, including William Wecker, from further critiquing the United States' experts. As the Court has found, to allow the additional critique would prejudice the United States because it would "give [Joint Defendants] both a procedural and substantive advantage." Despite the clear ruling in Order #240, which was issued on October 3, 2002, William Wecker produced supplemental data, calculations, and analyses that critique the United States' experts a total of three times in October and December, 2003. As such, any testimony related to the improper supplemental data, calculations, and analyses should be excluded as contrary to the law of the case.

Even if relevant,[9] the Court has the inherent authority to exclude evidence that is unfairly prejudicial or potentially confusing. Fed. R. Evid. 403 (excluding even relevant evidence whose probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues ... or by considerations of undue delay [or] waste of time"). As this Court has already found in Order #240, the supplemental critiques by Dr. Wecker are prejudicial to the United State because they represent a "significant change in th[e] customary procedure [provided for in

---

[9]Because the late productions at issue were provided after or on the eve of deposition and because they were unaccompanied by any explanatory information or instructions, the United States is by no means certain that the data, calculations, and analyses in Dr. Wecker's October and December, 2003 productions are even relevant. Thus, the United State reserves its right to move to exclude testimony related to the productions on relevancy grounds if it becomes apparent that the data, calculations, and analyses are in fact not relevant.

10

Rule 26] and in Order #65 – a change which would give [Defendants] both a procedural and substantive advantage." Order #240, Mem. Op. at 3. Obviously providing Defendants with a procedural and substantive advantage would prejudice the United States. The prejudice to the United States in allowing Joint Defendants a supplemental opportunity to critique the United States' experts is only amplified if those critiques are presented in a meaningful way – that is, with actual explanation and instruction from Dr. Wecker, which is currently missing – for the first time at trial.

The introduction of this evidence would also be potentially confusing. Neither Dr. Wecker nor Joint Defendants have, to date, provided any explanation of what is contained in the late productions from October and December 2003. One of the productions (in December, 2003) came well after Dr. Wecker was deposed. The other two productions (in October, 2003) were produced by Joint Defendants with complete awareness that there was insufficient time for the United States to prepare to effectively examine Dr. Wecker at his deposition, which was already scheduled to take place after the Court's September 1, 2003 deadline for expert discovery set forth in Order #230. Given the complete lack of explanation or instructions related to the supplemental data, calculations, and analyses; the lateness of the production; and the fact that the United States' testifying experts have, in most instances, not even reviewed the submissions, testimony related to the late productions cannot avoid being confusing to the United States' testifying experts, counsel for the United States who must cross-examine Dr. Wecker, and, most importantly, to the Court.

## **CONCLUSION**

For the foregoing reasons the United States respectfully requests that the Court exclude

11

any testimony by William Wecker related to data, calculations and analyses that Joint Defendants produced in October and December, 2003, in violation of Orders #230 and #240, and grant such other relief as it deems appropriate.

                                                Respectfully submitted,
PETER D. KEISLER, Jr.
Assistant Attorney General


_____\s\_____
SHARON Y. EUBANKS (D.C. Bar # 420147)
Director, Tobacco Litigation Team


_____\s\_____
STEPHEN D. BRODY  (D.C. Bar # 459263)
Deputy Director, Tobacco Litigation Team


_____\s\_____
RENEE BROOKER (D.C. Bar # 459263)
Assistant Director, Tobacco Litigation Team


_____\s\_____
JAMES D. GETTE (D.C. Bar # 429047)
Trial Attorney, Tobacco Litigation Team
United States Department of Justice
Post Office Box 14524
Washington, D.C. 20044-4524
Telephone: (202) 616-4185

May 5, 2004                    Attorneys for Plaintiff
United States of America