**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|                              ) | |
|           Plaintiff,         ) | |
|                              ) | Civil No. 99-CV-02496 (GK) |
|           v.                 ) | |
|                              ) | Next scheduled court appearance: |
| PHILIP MORRIS USA INC.,      ) | July 15, 2004 |
|     f/k/a PHILIP MORRIS INC., et al., ) | |
|                              ) | **[referred to Special Master Levie]** |
|           Defendants.        ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS FIRST AND SECOND
MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD BY BATAS
BASED ON ASSERTIONS OF PRIVILEGE OR PROTECTION**

**INTRODUCTION**

Although BATAS's opposition is long on invective, it is short on substance. BATAS's unfamiliarity with the Court's Orders has led it to mislead this Court. The relief sought by the United States is important; to assist the Special Master, the United States is filing this reply brief early. BATAS attempts to deflect attention from the numerous delays that it has caused, and improperly attempts to place expert testimony before the Court.

I.  **BATAS's "Expert" Affidavits Should Be Rejected**

BATAS criticizes the United States for failing to provide "expert testimony" in support of its Motions to Compel, and states that it "relies upon" the "Joint Opinions" of its "experts." BATAS Opp'n at 10.[1] Indeed, BATAS repeatedly refers to the affidavits as "Expert Opinions." Id. at 11-14, 18-20, 23-24; see also id. at 19 ("The experts agree") (citing affidavits of BATAS "experts"). However, in the United States, expert opinion is not appropriate for questions of law. To the contrary, as a general matter, courts do not receive expert affidavits on matters of law. There is a motion in limine pending before the Court on precisely this issue. U.S. Mot. in Limine to Exclude the Testimony of David A. Clanton, Esq. (R. 3162; filed 5/4/04). BATAS's "expert testimony" affidavits consist of improper legal opinion impermissibly intruding upon the functions of the Court in determining the law and applying the law to the facts at issue.

Moreover, BATAS has failed to comply with this Court's Order #65, under which all "testifying expert witnesses" for this case were required to provide expert reports by February 1,

---

[1] BATAS asserts that the United States' "summary of Australian law [is] based on selected cases from an out-of-date text book." Id. To the contrary, the United States' opening brief discussed and provided copies of all three cases that BATAS identifies as "relevant and ground-breaking High Court decisions" that post-date Dr. Desiatnik's treatise, namely, Esso, Mann v. Carnell, and Daniels Corporation. Id. at 10 n.9.

1

2002, and be made available for depositions (which were to be complete by September 15, 2002). Order #65, § II at 1-2 (furthering and superceding Order #37 and Order #51).[2] Thus, if BATAS felt it necessary to proffer "testifying expert witnesses," Order #65 at 1, to provide "expert testimony," BATAS Opp'n at 10, BATAS was obliged to move for leave to identify expert witnesses after Order #65's February 1, 2002 deadline, as well as to provide expert reports and to allow the United States the opportunity to depose its experts. BATAS's violation of these requirements of Order #65 is clear. The Court should disregard the entirety of BATAS's "expert opinions."

## II.    BATAS's Assertions Regarding Australian Law Should Be Rejected

BATAS seeks to create the impression that there are vast differences between U.S. and Australian privilege law. To the contrary, there are substantial similarities between Australian and U.S. privilege law. BATAS acknowledges that under Australian privilege law, "privileged communications must be confidential." BATAS Opp'n at 22. But BATAS has in fact previously produced many of the Challenged Documents as part of its appeal in the Cowell case or in this case.[3] These documents are thus not confidential, and any privilege has therefore been waived.[4]

---

[2] This Court was recently obliged to admonish BATAS for failing to seek leave of Court before noticing fact witness depositions in February 2004 with only three business days' advance notice, in "clear . . . violation" of provisions of Order #51 requiring 14 days' advance notice and 30 days' consultation, and in "clear . . . violation" of Order #197 (later redesignated as Order #204), establishing a July 1, 2002 deadline for completing all fact witness depositions. Order #518, Mem.-Op. at 16-18, published as United States v. Philip Morris Inc., 312 F. Supp. 2d 27 (D.D.C. 2004). In the same opinion, The Court stated that it wished to "make it crystal clear" that BATAS was subject to Order #51 and that "any issue relating to compliance with discovery orders relating to BATAS's intervention." Id., slip op. at 17 n.13 (emphasis in original) (second quotation quoting Order #449, Mem.-Op. at 7).

[3] As set out in the Appendix to this brief, Challenged Documents (CDs) 118, 126, 127, 175, 182, 183, and 237 (and possibly CD 168 as well) appear to be duplicates of documents previously produced by BATAS in this or other litigation. (Note that CD 237 appears to be a duplicate of a document voluntarily produced by BATCo in this case, after BATAS voluntarily provided it for use in this case.) Moreover, CD 214 and CD 215 appear to be duplicates of a document that this Court has already determined is not privileged in this case.

[4] Under Order #51, ¶ III.G.9, BATAS and BATCo were required to produce as part of their privilege assertions a list of all documents over which they assert privilege which were previously voluntarily produced or over which other courts had overruled privilege assertions. Although the United States specifically advised BATAS

2

BATAS goes to great lengths to defend its assertion that copies of even admittedly non-privileged documents found in its attorneys' files are entitled to privilege under Australian law. BATAS Opp'n at 19-22. But BATAS does not dispute that if the sole copy of a non-privileged document is in an attorney's files, privilege may be asserted over the copy in the attorney's files only if another, non-privileged copy of the document is available. Commissioner of Australian Federal Police v. Propend Finance Pty Limited (1997) 188 CLR 501, 512 (ex. 46 to U.S. opening br.). Moreover, it is BATAS's burden to defend its privilege assertions, not the United States'. BATAS's assertions that the United States is somehow obliged to determine whether there are non-privileged copies available, and is somehow better able to do so than BATAS itself, BATAS Opp'n at 21, is ludicrous.

Similarly, BATAS asserts that it "defies common sense" to suggest that Wills or BATAS documents were sent to attorneys for anything other than legal advice. BATAS Opp'n at 20. BATAS again reveals its lack of familiarity with the Orders and Reports & Recommendations in this case. To the contrary of its statements, the Special Master has found on numerous occasions that tobacco companies hired attorneys for public relations and business functions, and that allegedly privileged BAT Group documents actually "relate[d] to business and administrative aspects of document discovery, and not to legal advice, as represented by BATCo." R&R #100 at 69, adopted in relevant part by Order #346. See also id. at 81 ("The Special Master does not believe that in-house counsel was acting in a legal capacity when drafting the record management guidelines, as

---

of this requirement, and requested a compliant privilege log by January 23, 2004, 1/12/04 ltr., Crane-Hirsch to Koslowe at 2 (U.S. Ex. 12), neither BATAS nor BATCo has complied with these provisions of Order #51, ¶ III.G.9.

[BATCo's] records management program is primarily business in nature"); at 96 (document retention is "an everyday administrative or business issue" rather than a "legal issue").

BATAS also asserts that it is entitled to legal professional privilege for any communications to or from Mr. Cannar after he became a Wills director (either in September 1996 or March 1997), on the ground that it is entitled to a presumption that Mr. Cannar was providing "independent" legal advice. BATAS Opp'n at 23 & n.15. To the contrary, though, BATAS bears the burden of demonstrating the independence of the advice. Southern Equities Corp. (in liq.) v. Arthur Andersen & Co (No. 6) [2001] SASC 398, at para. 13 (South Austl. Sup. Ct.) (Austl.) (ex. 47 to U.S. opening br.). Moreover, BATAS appears to assert that Mr. Cannar was providing "independent" advice because he was a company director. BATAS Opp'n at 23 n.15. To the contrary, though, under Australian law, a director is presumed not to be independent of the corporation.[5]

### III. BATAS Has Waived Privilege Over the Foyle Memorandum

BATAS's privilege log includes a document which BATAS conceded during the meet-and-confer session (but only after being asked by the United States), was the Foyle Memorandum. Challenged Document #189 (BATAS1403); see tr. 5/12/04 meet-and-confer at 152-53 (U.S. opening br. ex. 20) (referring to "the file [sic] memorandum that is discussed in the McCabe decision"). In so doing, BATAS ignores prior Orders of this Court specifically and unambiguously finding that BATAS has waived privileged regarding the Foyle Memorandum.

---

[5]
A company can only act through its directors. In other words, the directors are the corporate mind of the company. It follows that the director cannot be independent of the company. Thus, if a lawyer who is a director gives professional legal advice, it is likely that it will lack the necessary degree of independence to qualify for legal professional privilege.

Southern Equities Corp., para. 22 (ex. 47 to U.S. opening br.).

Order #160, issued May 31, 2002, provided BATAS with the opportunity to intervene to oppose an order directing BATCo to produce the Foyle Memorandum:

> BATCo has mentioned the possible intervention of [BATAS]. Any such intervention and a supporting memorandum of law on the merits of the issues before the Court must be filed no later than June 2, 2002. In the absence of such a filing, BATAS will be deemed to have waived any opportunity to present its views to the Court.

Order #160 at 2. Five weeks later, BATAS had not sought to intervene and had not filed a memorandum of law. Thus, on July 2, 2002, the Court stated:

> There is also some suggestion that the Court's Orders should be reconsidered because privilege claims of an unrepresented third party may be affected. That third party, BATAS, in which BATCo is a minority shareholder, has had an ample time to intervene, and has not been heard from. Accordingly, pursuant to Order #160, BATAS "will be deemed to have waived any opportunity to present its views to the Court."

Order #183, Mem.-Op. at 5 (footnote omitted). Although BATCo successfully appealed other aspects of Order #183 to the D.C. Circuit,[6] BATAS never challenged any aspect of this Court's determination that it had waived any privilege in the Foyle Memorandum. Moreover, the question of intervention by BATAS regarding the Foyle Memorandum was not the subject of the appeal, and remains undisturbed as the law of the case. Finally, nothing in Order #449, which permitted BATAS a limited right to intervene, makes these Orders ineffective. The Court should order BATAS to produce the Foyle Memorandum, as it has waived any privilege in the document.

---

[6] See United States v. Philip Morris Inc., 347 F.3d 951, 955 (D.C. Cir. 2003) (vacating and remanding "[t]he orders requiring production of the Foyle Memorandum").

5

**IV.  NO BASIS EXISTS FOR PERMITTING BATAS TO REMOVE DOCUMENTS FROM ITS PRIVILEGE LOGS ON THE GROUNDS OF NON-RESPONSIVENESS**

BATAS provides no response to the argument set forth in the United States' opening brief that no Orders of this Court permit a party to withdraw entries from its privilege logs on the grounds of non-responsiveness. While Order #45 permitted a party to "clawback" privileged documents inadvertently produced, there is no comparable Order permitting a party to "clawback" entries on its privilege log on the grounds of non-responsiveness. Indeed, no party in this case prior to BATAS had ever attempted to assert <u>ex post facto</u> that documents on its privilege logs were non-responsive. Moreover, even if there was a procedure in place to "claw back" non-responsive documents inadvertently placed on a privilege log, BATAS' claim that it "inadvertently included non-responsive documents on its privilege log because the initial log was produced under considerable time pressure and required law firms in both Australia and the United States to coordinate their work on the log," BATAS Opp'n at 3, is spurious. BATAS's initial log was produced on December 15, 2003. (U.S. opening br., exs. 2 & 3.) BATAS does not dispute that from December 15, 2003 to May 12, 2004, it produced at least five "revised" privilege logs to the United States, U.S. opening br. at 1-2 & n.2, without ever once indicating either to the United States or the Court that it had "inadvertently" included non-responsive documents.

BATAS misstates the law in arguing that a party is per se "entitled" to remove documents from its privilege logs on the grounds of non-responsiveness. BATAS Opp'n at 4. Rather, the cases that BATAS cites merely hold that <u>in certain factual circumstances</u>, a party may be permitted to reclassify certain documents, previously logged as privileged or on a FOIA <u>Vaughn</u> index, as non-responsive. See <u>Judicial Watch Inc. v. Doe</u>, 310 F. Supp 2d 271 (D.D.C. 2004) (permitting

reclassification of certain recently created documents as non-responsive to a FOIA request); Abdallah v. Coca Cola, No. 1:98-CV-3679-RWS, 2000 WL 33249254 (N.D. Ga. Jan. 25, 2000) (permitting redesignation of certain documents previously listed on party's privilege log as non-responsive); Thai Merry Co. v. BIC Corp. No. M8-85, 1997 WL 678166 (S.D.N.Y. Oct. 30, 1997) (allowing party to withhold certain documents previously identified on party's privilege log from production on the grounds of non-responsiveness).  Furthermore, all of these case are factually distinguishable in that, unlike BATAS, none of the parties seeking to reclassify certain documents as non-responsive had the benefit of multiple opportunities to revise their privilege logs or Vaughn index.[7]

### V.    Judicial Estoppel and Imputed Waiver Preclude BATAS From Asserting Common Interest Privilege

In arguing that judicial estoppel and the fairness element of "imputed waiver" do not bar it from asserting common interest privilege over the same documents it previously argued in 2003 may not be protected by the common interest privilege, BATAS attempts to draw a distinction where none exists. BATAS claims that producing its privileged documents to BATCo in 2003 "pursuant to Court Order" created a substantially greater risk of waiver than when it shared the documents with BATCO at the time they were created when BATCo and BATAS "had a common legal interest in ongoing and/or anticipated litigation and in common legal issues not specifically related to litigation." BATCo Opp. at 17-18.  Contrary to BATAS's assertion, when BATAS in 2003 argued that it risked waiver by turning over its privileged documents to BATCo there was no Court Order requiring BATAS to do anything-Order #343 required BATCo, not BATAS, to produce or log

---

[7] BATAS makes no effort to reconcile its attempt to remove documents from its privilege logs with FTC R&R #7, discussed in U.S. opening br. at 5-6 & n.5.

certain documents in the possession of BATAS. BATAS's assertion that "preparing and sharing documents in the context of developing legal strategies and evidence to defend ongoing litigation is different from responding to discovery requests for historic documents," is similarly misguided in that BATCo, not BATAS, was the party responding to discovery requests in 2003. Id.

In addition, BATAS's position on the applicability of the Common Interests Privilege with respect to the interests BATCo and BATAS have in litigation filed against companies in the BAT group is inconsistent with the position BATAS took in 2003 that the Common Interest privilege might not protect BATAS's disclosure of its privileged documents to BATCo. See 5/14/03 lttr. Westgarth to Gilbey (ex. 43 to U.S. Opening br.). In claiming that numerous documents at issue are protected by the Common Interest privilege, BATAS now argues that "[i]t is perfectly plain that BATAS, BATUS, BATCo and other related entities each have a common interest in helping the other in relation to the successful defense of cases brought against any one or more of them." BATAS Opp'n at 15. If BATCo and other BAT group companies had a "common interest" in litigation brought against Wills or BATAS in Australia so as to protect BATAS's disclosure of documents to these entities, than it should follow that BATAS and other BAT group companies would have a "common interest" in the current litigation brought against BATCo in the United States so as to have protected any disclosure of privileged documents by BATAS to BATCo in 2003. Therefore, the concept of Judicial Estoppel under United States' law and Imputed Waiver under Australian Law precludes BATAS from taking inconsistent positions on the protections afforded by

the applicability of the Common Interest Privilege. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001); Attorney-General for the Northern Territory v. Maurice (1986) 161 CLR 475, 484 (Austl.).[8]

## VI.    Crime-Fraud Exception to Privilege

The Special Master has repeatedly found that a prima facie case of fraud exists with respect to Defendants BATCo and Brown & Williamson. Furthermore, in Order #499 adopting R&R #146 the Court adopts the Special Master's finding of a prima facie fraud. Two more Report & Recommendations finding fraud against BATCo and B&W, R&R Nos. 157 and 158, respectively, are pending before the Court. Nevertheless, BATAS fails to address either the findings of the Special Master and the Court or the evidence before them, instead of focusing on issues already resolved or having little bearing on the ultimate determination of the exception's applicability.

BATAS's primary argument against application of the crime-fraud exception is that the United States does not establish a prima facie case of crime fraud. This position simply ignores numerous rulings of the Special Master and precedent of the Court. BATAS attempts to escape the ambit of crime-fraud by shifting the inquiry from BATCo, who the Court has repeatedly upheld has control over the Challenged Documents, to BATAS. This position represents a fundamental misunderstanding of both the law of the case, as well as the crime-fraud exception to privilege. In Order #449, the Court permitted BATAS to intervene in this matter for the limited purpose of asserting and, if necessary, litigating privilege. The United States' RICO case is not against BATAS, but against related companies BATCo and B&W, as well as the other named Defendants.

---

[8] BATAS's belated assertions under U.S. law of U.S. joint defense privileges – first raised a full week after the close of the meet and confer session on May 12, 2004 – should also be rejected. BATAS makes no attempt to demonstrate that it satisfies that requirements for U.S. joint defense privilege set out in R&R #130 at 45-50, adopted by Order #480 (and cited in U.S. opening br. at 40).

9

Accordingly, the United States has investigated and proved a prima facie case of fraud against BATCo and B&W, as repeatedly found by the Special Master. Although ample evidence of BATAS's participation in BATCo and B&W's fraud exists, BATAS's limited intervention does not expand the fraud case that the United States must prove. Though BATAS attempts to divert the Court's attention to whether a prima facie case of fraud can be made against BATAS, such an inquiry is immaterial. BATAS's claims of privilege over the documents cannot rescue BATCo from its fraud. A prima facie case of fraud against BATCo exists. To the extent that any challenged document was created in furtherance of that fraud, the existence or absence of fraud on the part of BATAS is of no moment.[9] Amnesty from the crime-fraud exception is not granted simply because another party claims privilege in a crime-fraud document, for that does not impact the whether or not the document was created in furtherance of a crime or fraud, or whether such crime or fraud was consummated. R&R #114 at 60 (quoting In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985)) ("Under the crime-fraud exception, '[c]ommunications otherwise protected by the attorney-client privilege [and work product doctrine] are not protected if the communications are made in furtherance of a crime, fraud, or other misconduct.'").

BATAS's second line of defense against the crime-fraud exception is the Cowell decision. As has already been established by previous R&Rs, Cowell does not shield the documents. As explained on several occasions, Cowell does not bind this Court. Comity is not applicable as Cowell was between different parties, addressed different issues, considered different evidence, and was not a final judgment. See David Epstein, David Snyder & Charles Baldwin, International Litigation: A

---

[9] Indeed, to the extent that BATAS played a role in creation of a document that was created in furtherance of a consummated crime or fraud, BATAS participated in the crime or fraud, as well.

10

Guide to Jurisdiction Practice, and Strategy § 11.02 (3d ed. 2002) (citing Cunard Steamship Co., Ltd. v. Salen Reefer Servs. AB, 773 F.2d 452, 457 (2d Cir. 1985)).

Finally, BATAS's assertion that Australian law on crime-fraud offers it relief from the exception is similarly flawed. In fact, as noted in the United States' opening brief, Australian law expands, rather than limits application of crime-fraud exception to privilege, as it does not include the requirement under U.S. law that the crime or fraud must be consummated.[10] Accordingly, a finding of a prima facie case of crime-fraud is once again appropriate.

---

[10] BATAS's argument regarding Australian evidentiary standards for crime-fraud is similarly unavailing, as even under the standard as enunciated by BATAS, it fails to demonstrate that the Gulson Affidavit would be inadmissible, and even if it were, the United States relies upon ample evidence beyond the Gulson Affidavit that supports a prima facie case of fraud.

## **CONCLUSION**

For the foregoing reasons and those set out in the United States' opening Motions, the United States respectfully requests that the Court enter the proposed orders attached to its two Motions and order BATAS to produce the documents challenged in the two Motions.

Dated: June 14, 2004

    Washington, D.C.

        Respectfully submitted

        PETER D. KEISLER
        Assistant Attorney General


        _____
        SHARON Y. EUBANKS (D.C. Bar No. 420147)
        Director, Tobacco Litigation Team


        _____
        STEPHEN D. BRODY  (D.C. Bar No. 459263)
        Deputy Director, Tobacco Litigation Team


        _____
        BRETT SPIEGEL
        Trial Attorney, Tobacco Litigation Team


        _____
        DANIEL K. CRANE-HIRSCH
        Trial Attorney, Tobacco Litigation Team


        _____
        CAROLYN I. HAHN
        Trial Attorney, Tobacco Litigation Team

        Torts Branch, Civil Division
        United States Department of Justice
        Post Office Box 14524
        Washington, D.C. 20044-4524
        Telephone: (202) 616-4185

        Attorneys for Plaintiff
        United States of America

**Appendix on Documents Over Confidentiality Has Not Been Preserved
and Privilege Has Been Waived**

  BATAS appears to have produced the following Challenged Documents (CDs) in the <u>McCabe</u> case, and then included them in its appeal books for the <u>Cowell</u> appeal. Most of these documents were produced as exhibits to affidavits prepared and submitted on BATAS's behalf by its law firm, Clayton Utz. <u>See, e.g.</u>, 29 January 2002 affidavit of Graham Maher, included in BATAS <u>Cowell</u> appeal books at pages 1188-1192 (U.S. Reply Ex. 1); 31 January 2002 affidavit of Graham Maher, included in BATAS <u>Cowell</u> appeal books at pages 1253-1255 (U.S. Reply Ex. 2); 29 January 2002 affidavit of Malcolm Nicholson (U.S. Reply Ex. 3).

  CD 118 (BATAS0714) appears to be a duplicate of Exhibit GFM5 to the 31 January 2002 affidavit of Graham Maher (memorandum from Wills' legal counsel dated 10 August 1992, entitled "Records Retention - Hold Order") (U.S. Reply Ex. 4).

  CD 126 (BATAS0744) appears to be a duplicate of Exhibit GFM3 to the 29 January 2002 affidavit of Graham Maher, included in BATAS <u>Cowell</u> Appeal Book at pages 1226-1227 (Maher to Chalmers, dated 9 March 1998) (U.S. Reply Ex. 5).

  CD 127 (BATAS0745) appears to be a duplicate of Exhibit GFM4 to Maher's 29 January 2002 affidavit (Chalmers to Maher, dated 19 March 1998) (U.S. Reply Ex. 6).

  CD 168 (BATAS0913) appears as though it may possibly be a duplicate of Exhibit MNN6 to the 29 January 2002 affidavit of Malcolm Nicholson (Kinross to Cannar, 23 November 1990) (U.S. Reply Ex. 7); and/or a duplicate of Exhibit GFM1 to the 31 January 2002 affidavit of Graham Maher (memorandum from Wills company solicitor, dated 23 November 1990, entitled "Product Liability Suit – Western Australia") (U.S. Reply Ex. 8).

  CD 175 (BATAS1375) appears to be a duplicate of Tab 31, Exhibit PG5 to the 25 January 2002 affidavit of Peter Gordon, included in BATAS's <u>Cowell</u> appeal books at pages 0549-0583 ("Records Management Programme - Staff Handbook," with inside pages dated 29 September 1993) (U.S. Reply Ex. 9).

  CD 182 and CD 183 (BATAS1385 and BATAS1387, respectively) may be duplicates of a document contained in Exhibit MNN6 to the 29 January 2002 affidavit of Malcolm Nicholson, at page 1048 of BATAS's <u>Cowell</u> appeal books (Weir to all directors and senior management, 9 January 1991) (U.S. Reply Ex. 10); and/or may be duplicates of Exhibit GFM2 to the 31 January 2002 affidavit of Graham Maher (memorandum from Wills legal counsel dated 9 January 1991, entitled "Product Liability Suit – Western Australia") (U.S. Reply Ex. 11).

  # # #

      CD 214 and CD 215 (BATAS1444 and BATAS1445, respectively) appear to be duplicates of a document whose legend indicates that this Court has already determined the document is not privileged and that BATCo produced it in this case pursuant to Court order (Diz to Withington, 25 July 1996, Bates No. 32179610) (U.S. Reply Ex. 12).

      CD 237 (BATAS1473) appears to be a duplicate of a document voluntarily produced by BATCo, after BATAS voluntarily provided it for use in this case (Maher to Canner, 6 March 1998, Bates No. 750073196) (U.S. Reply Sealed Ex. 1).  (This document is being filed under seal pursuant to Order #394, based on BATCo's assertion in its briefs that documents that BATAS produces in Australian litigation need not become public.)