# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. 99-CV-02496 (GK) |
| Plaintiff, | ) | |
| v. | ) | Next scheduled court appearance: |
| PHILIP MORRIS USA INC., | ) | July 15, 2004 |
| f/k/a PHILIP MORRIS INC., et al. | ) | |
| Defendants. | ) | |

## UNITED STATES' OPPOSITION TO DEFENDANTS' AUTHENTICITY AND PRIVILEGE OBJECTIONS TO PLAINTIFF'S DESIGNATED MAY 3, 2004 TRIAL EXHIBITS

## I.    INTRODUCTION

Defendants have filed with the Court – and unloaded on the United States – more than 30,000 vague and conclusory objections to the United States' Trial Exhibits that do not meet the requirements of the Federal Rules of Evidence.[1]  The list of Defendants' objections itself comprises an entire box of paper.  As explained in detail below, many of these objections violate Order #470, because they are far afield of the two specific types of objections permitted by the Court in that Order.[2]  Defendants' objections make abundantly clear that their intent is not to prepare this case for trial, but instead to thwart the United States' trial preparation efforts by raising numerous irrelevant and tangential objections to create roadblocks to the trial of this case. Not surprisingly, Defendants' Objections lack any citation whatsoever to case law, and contain only passing reference to the Federal Rules.  While Defendants offer only passing references to Federal Rules as the sole purported legal support for their objections, the United States nonetheless offers legal authority below in order to assist the Court with a determination of Defendants' Objections, which are meritless and should be overruled.[3]

Defendants made 20 categories of authentication objections[4] and 7 categories of privilege

---

[1] Fed. R. Evid. 103(a)(1), 901, 902.

[2] See discussion of Order #470, infra Section II.B (noting that Order #470 allows only objections to the authenticity of exhibits ("authenticity objections") and privilege objections relating to privilege challenges that the Court has not yet ruled upon ("privilege objections")).

[3] Due to practical constraints and Defendants' failure to support any of their arguments with legal precedent, the United States is not in a position to anticipate and respond to all potential issues and legal arguments that Defendants failed to set forth in Defendants' Authenticity and Privilege Objections to Plaintiff's Designated May 3, 2004 Trial Exhibits ("Objections").  Therefore, the United States reserves its right to seek leave to file a surreply in the event that Defendants improperly raise arguments and identify legal authority for the first time in their Reply.

[4] Defendants identified 19 categories of authenticity objections on pages in the first section of their Objections, and later identified an additional category of objections made by only R.J. Reynolds.  Objections at 1-2, 9-10.

objections to the United States' Trial Exhibits.  Objections at 1-2, 9-10.  These categories of

objections provide only very general information about the objections (for example,

"Authenticity: Altered – Other").  Defendants' textual objections, which consist of two sections,

roughly five pages each that are mostly redundant, provide only minimal additional information

as to the ambit of each particular objection and Defendants' claimed support for making it.

Objections at 2-10.  The large number of Defendants' objections and the vague and conclusory

manner in which Defendants described them has made the United States' task of responding to

them exceedingly difficult.[5]

Nonetheless, the United States has reviewed each of the Exhibits to which Defendants

object, and provided a specific response to each of Defendants' more than 30,000 Objections.  In

order to accomplish this, the United States devised 21 categories of responses, some of which are

applicable to several different categories of objections.  Brief explanations of these 21 categorical

responses are attached as Attachment A to the United States' Opposition; these responses are also

referenced and explained in the body of the United States' Opposition.  In order to respond fully

to each of Defendants' Objections and to assist the Court and the parties, the United States

attaches as Attachment B to this Opposition a chart listing each of Defendants' Objections and

---

[5] The United States' already difficult task of responding to the 30,000 mostly improper objections was made even more difficult because Joint Defendants, prior to serving their objections, failed to notify the United States of any potential problems with the United States' Exhibits and Exhibit List.  In addition, Joint Defendants, after they had unloaded their Objections, took almost two weeks to respond to the United States' June 3, 2004 letter noting deficiencies in the objections.  See Jonathan Redgrave's June 16, 2004 letter (Attachment C) responding to James T. Nelson's June 3, 2004 letter (Attachment D).  In contrast to Defendants' uncooperative approach in responding to the United States' Trial Exhibits and assisting the United States in its effort to respond to the 30,000 Objections, the United States, after it received Joint Defendants' and Liggett's Trial Exhibits and Exhibit Lists, almost immediately (and well before the due date for the United States' objections to those exhibits) contacted Joint Defendants and Liggett to identity potential problems.  See United States' Privilege and Authenticity Objections to Joint Defendants' and Liggett's June 1, 2004 Designated Trial Exhibits and Exhibit Lists at 5-8.

each of the United States' categorical responses that apply to that particular objection.

Defendants make numerous and varying objections that they claim relate to the authentication of the United States' Trial Exhibits.  Many of Defendants' objections relate to documents that are deemed authentic pursuant to Order #51, the authenticity of which cannot be challenged.  See Ord. #51 § III.D.1.c-3.  Thus, in addition to being baseless, these objections by Defendants contravene the provisions of Order #51.[6]  The remainder of Defendants' authentication objections are similar in one important respect: every one of them fails to rebut the presumption, established by the Court in Section III.D.1.d of Order #51, that the United States' Exhibits are authentic.  The vast majority of what Defendants characterize as authenticity objections are not authenticity objections at all.  Rather, these objections are mere invitations to engage in hairsplitting that bear, at best, only a minimal relationship to a determination of whether the documents at issue are authentic.  This is amply evident by the fact that Defendants tacitly concede the authenticity of these documents, only taking issue with such irrelevant minutiae as the claimed addition of receipt stamps or other such alleged modifications that affect neither the authenticity of the documents nor their intended use at trial.  Objections at 1-4, 7-8.

With regard to the small subset of documents as to which Defendants actually raise issues as to their authenticity – labeled "genuineness" objections by Defendants – these objections are patently insufficient under the Federal Rules of Evidence and this Court's orders, and fall short of actually contesting authenticity.[7]  Instead, Defendants merely claim that they "cannot establish

---

[6] See detailed discussion infra, Section II.B.

[7] See Fed. R. Evid. 901, 902; Ord. #51.

3

the genuineness, true identity, and/or confirm the origin of the document[s]."[8]  Thus, even the

small fraction of Defendants' objections that directly addresses the issue of authenticity lacks the

fundamental core of authentication challenges, because Defendants fail to allege that the

documents to which they object are not authentic.[9]  The disingenuous nature of Defendants'

objections is evident from the fact that Defendants contest the authenticity of documents that they

have designated confidential, documents that bear Defendants' letterhead or that of Defendants'

affiliates or law firms, documents that were admitted into evidence at trial in other cases against

Defendants, and documents that bear Defendants' own Bates numbers.  See discussion infra,

Section II.D.1.  Moreover, the substantial majority of Defendants' authentication objections relate

to portions of magazines and periodicals that contain Defendants' own cigarette advertisements.

These objections are particularly not in good faith, because, as discussed below, **this category of

exhibits is self-authenticating under Fed. R. Evid. 902(6)**.  The United States establishes, in

the sections below, the authenticity of the remaining documents to which Defendants raise

objections.

    In addition to objections to the authenticity of exhibits, in Order #470, the Court allowed

the parties to raise at this time only "privilege objections that the Court has not already ruled

upon."  Ord. #470 § II.F (at 5).  In disregard of the Court's limitation, Defendants make several

categories of privilege objections that the Court has already ruled upon, including documents the

---

[8] Objections at 3.

[9] As explained in detail, infra Section II.C.2, the fact that Defendants do not allege that the documents as to which
they raise purported authentication objections are not authentic is, of itself, a factor established in the case law
weighing in favor of finding the authentication requirement satisfied.

Court compelled Defendants to produce.[10]  With regard to Defendants' privilege objections that have not already been ruled upon by the Court, the United States provides a detailed response below.

In short, Defendants' Authenticity and Privilege Objections, by and large, represent mere nitpicking in an attempt to preoccupy the Court and the United States with unnecessary side issues and steer the parties away from preparing effectively for trial.  Indeed, the very types of irrelevant characteristics that form the basis of Defendants' Objections **can also be found in Defendants' own Trial Exhibits**.[11]  For these reasons and those provided below, Defendants' Objections relating to authentication and privilege should be overruled.

## II.     AUTHENTICITY OBJECTIONS

### A.     Introduction

As Defendants' Objections lack any recitation of the standards applicable to the authentication of documents, the United States provides a brief summary.  As stated in

---

[10]  See Objections at 4-6.

[11]  See, e.g., JD Ex. 011668 (missing every other bates page); JD Ex. 020064 (partial document; article selected out of book or periodical); JD Ex. 021757 (same); JD Ex. 023832 (same); JD Ex. 021912 (same); JD Ex. 023838 (partial document; article selected out of book or periodical, containing added stamp); JD Ex. 020367 (document containing marginalia and file stamp); JD Ex. 021759 (document containing marginalia); JD Ex. 020796 (one-page advertisement without identification of a larger document from which it came); JD Ex. 021053 (same); JD Ex. 021755 (one page portion of article from periodical without full article or full periodical from whence it purportedly came); JD Ex. 48709 (two-page letter, with pages transposed); JD Ex. 023392 (document with pages cut off); JD Ex. 4278 (added facsimile number); JD Ex. 23487 (added stamp); JD Ex. 4469 (marginalia); JD Ex. 430332 (underlining); JD Ex. 43292 (same); JD Ex. 43032 (deposition exhibit stamp); see generally JD Ex. 4213; JD Ex. 4278; JD Ex. 43292; JD Ex. 43294; JD Ex. 43300; JD Ex. 80173 (containing various items comparable to those upon which Defendants' Objections are based).

Subsection (a) of Federal Rule of Evidence 901[12], the authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[13]  This standard represents a relatively low hurdle, requiring only that the proponent of the evidence "make a showing sufficient to permit a reasonable [fact-finder] to find that the evidence is what its proponent claims."[14]  The determination of whether a document has been sufficiently authenticated is made by the trial judge under Rule 104(b), and is not overturned absent a clear abuse of discretion.[15]

As one court has indicated, "the party offering the evidence, by deciding what he offers it to prove, can control what will be required to satisfy the authentication requirement."[16]  If evidence is authenticated, it is authenticated as against all parties, subject to the right of all

---

[12]As the text of Federal Evidence Rule 901 indicates, the list of suggested authentication methods provided in Rule 901(b) is not an exclusive one.  In United States v. Rembert, the D.C. Circuit acknowledged this, finding that photographs taken by an ATM surveillance camera machine were sufficiently authenticated, notwithstanding that they had not been authenticated by any method specifically listed in Rule 901(b).  United States v. Rembert, 863 F.2d 1023, 1026-28 (D.C. Cir. 1988) (indicating that preliminary language of Rule 901(b) "leav[es] room for the general application of Rule 901(a).").

[13] Fed. R. Evid. 901(a); accord United States v. Rembert, 863 F.2d 1023, 1026 (D.C. Cir. 1988).

[14] United States v. Blackwell, 694 F.2d 1325, 1330 (D.C. Cir. 1982); accord Dwyer v. IRS, Nos. 2-92-0328, 2-92-00575, 1992 WL 547720 at *2 (Bankr. S.D. Ohio Dec. 4, 1992) ("The burden of proof for authentication is slight. . . .'[A]ll that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be.'") (quoting McQueeney v. Wilmington Trust Co., 779 F.2d 916 (3d Cir. 1985)).

[15] See Blackwell, 694 F.2d at 1330; United States v. Patrick, 959 F.2d 991, 1004 (D.C. Cir. 1992), abrogation on other grounds recognized by United States v. Webb, 255 F.3d 890, 894 (D.C. Cir. 2001); see also United States v. Stephens, 202 F. Supp.2d 1361, 1367 (N.D. Ga. 2002) (quoting the statement in the Advisory Committee Notes to Rule 901, which "indicate that '[a]uthentication and identification . . . fall[] in the category of relevancy dependent upon fulfillment of a condition of fact and [are] governed by the procedure set forth in Rule 104(b) . . . .'").

[16] See, e.g., Research Systems Corp. v. IPSOS Publicite, IPSOS USA, IPSOS, et al., 276 F.3d 914, 923 (7th Cir. 2002) (rejecting claim that offering party was required to establish authorship of document to authenticate it, because the proponent of the document "only claimed that it 'was a document in [the file of an employee of the offering party] and that he had it available to him when the changes to [the product at issue] were made'"); 31 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 7104 at 3 (West 2000).

parties to present evidence to dispute its authenticity to the fact-finder.[17]

**B.      Orders In This Case**

This Court has entered several orders relating to the authentication of documents.  Order #51 provides that several classes of documents are "deemed authentic," i.e., "judged to be authentic through their contents or the actions of the parties to this case."  Ord. #51 § III.D.1.c-2.a (at 36-37).  The authenticity of these documents cannot be challenged.  Ord. #51 § III.D.3 (at 37).  These documents are comprised of:

(i)      Any documents as to which the United States or a Defendant asserts or has asserted a privilege from disclosure in this case or any other.

(ii)     Any documents that were admitted into evidence in this case or any other case where the United States or any Defendants in this case were a party.[18]

Ord. #51 § III.D.2.a (at 36-37).  Defendants have objected to several of the United States' Trial Exhibits that are deemed authentic per the provisions of Order #51, and are thus not subject to challenge relating to their authenticity, including documents falling into subsections i and ii of Order #51, Section III.D.3, quoted above.  Instances where Defendants have objected to documents deemed authentic are identified by the United States' categorical response #11 to Defendants' Objections.  These objections by Defendants are improper under Order #51, and should be overruled by the Court.

Order #51 also provides that all documents not deemed authentic are "presumed

---

[17] See Orr v. Bank of America, 285 F.3d 764, 775-76 (9th Cir. 2002) ("Once a prima facie case of genuineness against that party is established, the court should regard the materials as sufficiently authenticated against all parties, subject, of course, to the right of any party to offer evidence to the ultimate fact-finder disputing authenticity."); see also Wright & Gold, supra note 16, § 7104 at 31.

[18] Defendants have raised authenticity challenges to documents deemed authentic under this subsection, in contravention of the provisions of Order #51 indicating that the authenticity of these documents may not be challenged.  The United States so indicates in its Response 11, described in detail below.

authentic."  Ord. #51 § III.D.1.d (at 36).  The authenticity of documents presumed authentic may

be challenged by the parties under the provisions set forth in Order #470, which provides: "No

later than thirty (30) days after the service of each side's initial Exhibits and Exhibit Lists, an

opposing party shall file and serve its objections to the authenticity of any Exhibit listed . . . ."

Ord. #470, § II.F (at 5).

Defendants have provided no evidence to rebut the presumption, set forth by the Court in

Order #51, that the United States' Exhibits are authentic.  Indeed, their many and varied claims

that the United States somehow modified these documents actually presume *a priori* that the

documents **are** authentic.  Other than the small category of Defendants' "Genuineness" objections

– the patent insufficiency of which is detailed below – Defendants' objections are not

authentication objections at all, but merely hairsplitting claims that the United States modified,

combined or separated these authentic documents in some way.  What Defendants fail to inform

the Court of is that these alleged modifications do not affect the authentication of the subject

documents, and are, by and large, minimal modifications that are wholly irrelevant to the

intended use of these exhibits at trial.[19]  Thus, many of Defendants' purported authentication

objections are unrelated to authentication, and therefore are inconsistent with Order #470.[20]  In

short, Defendants provide the Court with no valid reason to find that any of the United States'

Trial Exhibits they have challenged are not properly authenticated.

---

[19] As one example, Defendants devote entire categories of objections to such items as "receipt stamp," "fax lines" and "underlining," Objections at 1, but it should be obvious to both the Court and Defendants that the United States does not intend to prove its case by way of the presence of these irrelevant markings on some of its exhibits.

[20] See discussion, infra Section II.D.2.

## C.     Global Legal Authority on Authentication

In addition to the fact that Defendants challenges fail to adequately rebut the presumption

that the challenged Trial Exhibits are authentic, there is ample independent case law to support a

finding that the United States' Trial Exhibits meet the standards for authentication.  Defendants

have failed to cite any case law supporting their vague and conclusory claims relating to

authentication.  While practical constraints prevent the United States from separately addressing

the authentication methods applicable to each of the more than 20,000 Trial Exhibits challenged

by Defendants, the United States provides a brief and non-exhaustive summary of case authority

supporting a finding by this Court that the United States' Trial Exhibits are sufficiently

authenticated under the Federal Rules of Evidence.

### 1.     Fed. R. Evid. 901(b)(1)

Rule 901(b)(1) provides that evidence may be authenticated through "[t]estimony of [a]

witness with knowledge," and defines the subject-matter of testimony as "[t]estimony that a

matter is what it is claimed to be."[21]  In Orr v. Bank of America, the Ninth Circuit quoted with

approval Wright & Gold's statement that "'[a] document can be authenticated under Rule

901(b)(1) by a witness who wrote it, signed it, used it, or saw others do so.'"[22]  Documents have

also been authenticated under this provision by their recipient,[23] and at least one court has held

---

[21] Fed. R. Evid. 901(b)(1).

[22] 285 F.3d 764, 774 & n.8 (9th Cir. 2002) (quoting 31 Wright & Gold, Federal Practice & Procedure: Evidence § 7106 at 43 (2000)).

[23] In Decalonne v. G.I. Consultants, Inc., the court held, with regard to an affidavit from the purported recipient of a letter, "[c]learly [the affiant] would have knowledge of whether [the exhibit] was actually the letter he received." 197 F. Supp.2d 1126, 1139 (N.D. Ind. 2002).  The court held that this, combined with the fact that the exhibit was printed on the letterhead of the purported author, was sufficient to authenticate the exhibit.  See id. at 1139-40.

that documents may be authenticated despite the absence of evidence regarding who authored or

sent them.[24]   Documents have been authenticated under this provision by individuals based on

their job titles and corresponding work experience[25] or based on their familiarity with the

marketing of a specific product.[26]   One court held that an employee's testimony that she had

personal knowledge that an attendance report was an accurate report kept by the subject company

---

[24] See United States v. Batts, 947 F.2d 946, 1991 WL 230023, *2 (6th Cir. Nov. 7, 1991) (finding, in authentication of Western Union money order documents under Rule 901(b)(1), that the Rule "does not require evidence of who wrote or sent the documents") (unpublished disposition).

[25] In McNair v. Monsanto Co., the court held that several affiants were competent under Rule 901(b)(1) based on their job titles and employment history, which the court surmised gave them personal knowledge of the matters as to which they were asserting:

> [T]he Court is satisfied that each affiant is competent to testify as to the matters asserted and their assertions are based on personal knowledge.  Each affiant avers that the statements contained [in their affidavits] are based on personal knowledge.  Casal, as the Vice President of North Ag of Monsanto Company and the person responsible for overseeing Monsanto's agricultural business including development, testing, and marketing, is competent to testify as to where it's [sic] employees are located.  Rhylander, as an employee of Monsanto for twenty–six (26) years and Director of Marketing for the Southern Region is competent to testify as to Monstanto's alleged requirements for consumers to purchase cottonseed containing Monsanto's technology.  Similarly, declarant Shackelford has worked for Defendant Delta and Pine Land Company for for eight (8) years and is Vice President of Corporate Services and is competent to testify as to the matters asserted.  Although the affiants do not submit the documents they may have relied upon as a basis for their knowledge, the Court finds that the evidence in this case, including deposition testimony, speaks for itself . . . .

279 F. Supp.2d 1290, 1299-1300 (M.D. Ga. 2003).

[26]  In a case that may resemble our use of marketing materials, Research Systems Corp. v. IPSOS Publicite, IPSOS USA, IPSOS, et al., the court held the following regarding the authentication of a marketing report and a related excerpt thereof by a witness under Rule 901(b)(1):

> [The first exhibit] was a portion of a report on the results of an advertising test performed by . . . a competitor of [the plaintiff], using [a specific product].  [The second exhibit] consisted of some materials that would have been included in the test that is mentioned in the . . . report [indicating the first exhibit]. . . .  [The witness] testified that he had been responsible for the marketing and sale of the . . . product.  Therefore, the district court was not unreasonable in concluding that [the witness] was qualified to testify, as he did, that [the exhibit] was 'a true and accurate copy of an excerpt from [the first exhibit],' . . . and that [the second exhibit] consisted of materials that would have been included in a [test of the product].  The district court did not abuse its discretion in admitting [these exhibits].

276 F.3d 914, 924 (7th Cir. 2002).

was sufficient to authenticate under 901(b)(1), without elaboration as to how she had this personal knowledge.[27]  To the extent that the United States' Trial Exhibits to which Defendants object have been authenticated by Defendants' own witnesses in depositions, and may be authenticated in testimony at trial from witnesses – expert or otherwise, Rule 901(b)(1) provides further support for rejecting Defendants' Objections.

        2.       Fed. R. Evid. 901(b)(4)

Rule 901(b)(4) provides that documents may be authenticated by their distinctive characteristics and the circumstances surrounding them.[28]  The D.C. Circuit has noted that "[t]he contents of a document 'conjoined with the circumstances surrounding [its] discovery' can provide an adequate basis for a ruling admitting it into evidence."[29]  Most or all of the United States' Trial Exhibits that Defendants challenge possess characteristics and circumstances of creation or production that courts have held constitute either evidence indicating authenticity or evidence independently sufficient to authenticate documents.  These include: (1) that documents were possessed by a party and produced by a party in discovery – including production by former parties and related non-parties; (2) that documents were created by a party and subsequently

---

[27] In <u>Vandeveer v. Fort James Corp.</u>, 192 F. Supp.2d 918, 922, 927 (E.D. Wisc. 2002), the court held the following regarding authentication of a defendant company's attendance report by an employee under Rule 901(b)(1): "[the witness] has testified that she has personal knowledge that the [attendance] report is an actual and accurate report kept by [the defendant].  No more is required."  The opinion does not elaborate on whether the witness was the author of, or a contributor to, the attendance report or how she had personal knowledge of it.

[28] Fed. R. Evid. 901(b)(4).

[29] <u>United States v. Patrick</u>, 959 F.2d 991, 1004 (D.C. Cir. 1992), <u>abrogation on other grounds recognized by</u> <u>United States v. Webb</u>, 255 F.3d 890, 894 (D.C. Cir. 2001) (referring to the common, as opposed to the legal, meaning of discovery, in the course of finding a television receipt in criminal defendant's house sufficiently authenticated due to fact that it corresponded with television set also found at address named in receipt and in defendant's presence) (quoting <u>United States v. Sutton</u>, 426 F.2d 1202, 1207 (D.C. Cir. 1969)).

produced by that party in discovery; (3) that documents are on the opposing party's (i.e.,

Defendants') letterhead, either alone or in combination with production by that party in

discovery; and (4) that the party challenging authentication (i.e., Defendants) does not allege the

documents are not authentic.[30]

The D.C. Circuit has held that "'proof of private custody, together with other

circumstances, is frequently strong circumstantial evidence of authenticity.'"[31]  Several courts

have held that the fact that a document was prepared or authored by a party and submitted by that

party in response to discovery requests satisfies the authenticity requirement.[32]

---

[30] Other characteristics indicating that a document is authentic include the following: Postal markings, use of letterhead paper, the unusual form of a document, or use of unusual stationery.  See United States v. Jacobs, 61 F.3d 901, 1995 WL 434827, *2 (4th Cir. Jul. 25, 1995) ("A letter's physical appearance, postmark, return address, and contents may in combination establish authenticity."); see also Wright & Gold, supra note 16, § 7109 at 81.  Also, a writing's contents may indicate origin if the writing refers to things or facts not commonly known.  See United States v. Reilly, 33 F.3d 1396, 1406-07 (3d Cir. 1994) (finding, in course of holding logs of outgoing radiotelegrams and telephone calls sufficiently authenticated, that "[a] letter or telegram may be authenticated by its contents with or without the aid of physical characteristics if the letter is shown to contain information that persons other than the purported sender are not likely to possess. . . .  Although we do not know precisely how many people had the information contained in the proffered evidence, we suspect, as noted above, that the number is small.  Therefore, the nature of the information in the documents further supports their authenticity.") (internal quotations omitted); Wright & Gold, supra note 16, § 7109 at 81.  Documents can also be authenticated through other "points in common;" corroborating external evidence of other contemporaneous occurrences that indicates the authenticity of the document.  See generally United States v. Whitworth, 856 F.2d 1268, 1283 (9th Cir. 1988) (holding authentication of offer of proof satisfied by contemporaneous established "points in common," including dates of postmarks on letters, which were consistent with the documents being what they were offered to prove, without specifically mentioning Rule 901(b)(4)).

[31] United States v. Bruner, 657 F.2d 1278, 1284 (D.C. Cir. 1981) (regarding authentication of prescriptions in a criminal drug case) (quoting McCormick on Evidence § 224 (2d ed. 1972)).

[32] See Martin v. National Bank of Alaska, 828 F. Supp. 1427, 1430 n.8 (D. Ak. 1993) ("Since the documents were prepared by [the defendant] and produced by [the defendant] during discovery, there is sufficient circumstantial evidence to support their authentication."); Snyder v. Whittaker Corp., 839 F.2d 1085, 1089 (5th Cir. 1988) ("[The defendant's] witnesses acknowledged that [the claimed author of the documents sought to be admitted] was a senior employee of the design department, and [the defendant] produced the . . . notes during discovery.  The district court did not err in accepting these facts as adequate authentication, particularly since [the defendant] has never claimed that the notes were not [the purported author's].").  But see generally Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1332-33 (10th Cir. 1984) (finding that any possible inadequacies in authentication of letter from Vice President of one of defendant companies that said defendant company produced in discovery to the party seeking its admission into evidence were cured by testimonial evidence).  Similarly, Wright & Gold's Federal Practice & Procedure notes that "it is sometimes assumed that when a party produces a document in connection with pretrial

In addition, several cases have found that the mere fact that documents were submitted by one party in discovery and offered as evidence by another party either satisfies the authentication requirement or is an indication of authenticity.[33]  Similarly, courts have held that the fact that a document was found in the opposing party's possession is either sufficient proof of authenticity or probative of authenticity.[34]  Therefore, even as to the United States' Exhibits not authored by a

_____

discovery, the very act of production may be taken as an admission as to authenticity where that document purports to be created by the person who produced it."  Wright & Gold, supra note 16, § 7109 at 86.

[33] John Paul Mitchell Sys. v. Quality King Distr., Inc., 106 F. Supp.2d 462, 472 (S.D.N.Y. 2000) (finding, in the course of admitting documents produced by the defendant's corporate custodian pursuant to subpoena, that "the act of production implicitly authenticated the documents.  'Just as [the defendant] could have identified the records by oral testimony, his very act of production was implicit authentication.'") (quoting United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982)); Laborers' Pension Fund v. Certified Midwest Constr., Inc., No. 98 C 543, 1998 WL 792470, at *5 (N.D. Ill. Nov. 9, 1998) ("Courts have found that production of documents by a defendant from its own files is sufficient to justify a finding of authentication.") (citing numerous cases); Butcher v. Bailey, 753 F.2d 465, 469 (6th Cir. 1985) (finding production of documents in response to order to produce personal records sufficiently authenticates documents as personal records of submitting party); Orr v. Bank of America, 285 F.3d 764, 777 n.20 (9th Cir. 2002) (finding document not authenticated by production in discovery in another case, because producing party not identified and neither purported author nor government organization that employed him were parties to case before court, but citing cases indicating that documents can be authenticated by having been produced by party and offered as evidence by party-opponent) (citing Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996); Snyder v. Whittaker Corp., 839 F.2d 1085, 1089 (5th Cir. 1988)); United States v. Doe, 465 U.S. 605, 614 n.13 (1984) (noting, in the context of a Fifth Amendment (self-incrimination) inquiry triggered by a subpoena ordering a criminal defendant to produce documents: "Respondent . . . pointed out that if the Government obtained the documents from another source, it would have to authenticate them before they would be admissible at trial.  See Fed.R.Evid. 901.  **By producing the documents, respondent would relieve the Government of the need for authentication.**") (emphasis added); see also Brown & Williamson Tobacco Co. v. Jacobson, 644 F. Supp. 1240, 1253 (N.D. Ill. 1986), rev'd in part on other grounds, 827 F.2d 1119 (7th Cir. 1987) (holding, in a slander suit Brown & Williamson brought against members of media, that the fact that a document relating to "sweeps week" was "produced by defendants from their files and dealt with a subject familiar to [defendants'] employees and the broadcast period" for the alleged slanderous statements "was sufficient" to authenticate it); McKenna v. Pacific Rail Serv., 817 F. Supp. 498, 514 (D.N.J. 1993) (stating, in the course of admitting warning letters, notes of accidents and letters of discharge under Rule 901(b)(4), that "[g]iven the circumstances in this case–i.e., production of the . . . documents in discovery and prior access to the documents by all parties–it was proper for the Court to admit these documents which were 'regular in form and nature and came out of the personnel file.'") (citation omitted); FTC v. Hughes, 710 F. Supp. 1520, 1522 (N.D. Tx. 1989) (finding that fact that "the documents were submitted by [opposing party] in response to [introducing party's] discovery requests" indicated that documents were authentic).

[34] See FTC v. Hughes, 710 F. Supp. 1520, 1522 (N.D. Tx. 1989) ("The fact that documents were found in defendant's possession is enough to authenticate them.") (citing several cases); Burgess v. Premier Corp., 727 F.2d 826, 835 (9th Cir. 1984) ("[T]he district court could properly have found that all of the exhibits were adequately authenticated by the fact of being found in [the defendant's] warehouse."); United States v. Munoz, 16 F.3d 1116, 1121 (11th Cir. 1994) ("His [referring to the party contesting authenticity] keeping these documents is a strong

Defendant, the fact of their production by one or more Defendants in this case is highly probative

evidence indicating that it is authentic.

Numerous courts have held that the fact that documents sought to be authenticated are on

the opposing party's letterhead either satisfies the authentication requirement or is indicative of

authenticity.[35]   Courts also often find that the fact that a document bears a letterhead, combined

with other intrinsic or extrinsic circumstances consistent with authenticity, is sufficient to satisfy

---

indication of their authenticity."); Air Land Forwarders, Inc. v. United States, 38 Fed. Cl. 547, 554 (Fed. Cl. 1997)
("[T]he documents are in defendant's possession thus providing further evidence of authenticity."); see also United
States v. One 56-Foot Motor Yacht Named the Tahuna, 702 F.2d 1276, 1279-80, 1284-85 (9th Cir. 1983) (finding
diary authenticated under 901(b)(4) because it was brought by purported author to police station in response to
police request, contained references to likely alias of the author, contained purported author's address and personal
belongings, purported author never disclaimed ownership, and entries in the diary contained information only known
to the purported author and a few others); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 1990 WL 145550, at *1
(E.D. Pa.1990) ("Defendant has raised many objections as to the authenticity of the exhibits sought to be introduced
by the plaintiff in this matter. The vast majority of these exhibits in question are unquestionably documents produced
by the defendant during discovery from defendant's files. The documents can fairly be characterized as internal firm
documents. There is no question that the documents were given by the defendant to the plaintiff in discovery or taken
by the plaintiff when she left the defendant's employment. The documents were testified to by the plaintiff's witnesses
and by the defendant's witnesses who explained how the documents were prepared and as to their intended use. . . .
[The trial court was] satisfied the documents were authenticated. . . .  Accordingly, I find the defendant's objections
as to authenticity without merit.").

[35]   See, e.g., SEC v. Poirer, 140 F. Supp.2d 1033, 1046 (D. Az. 2001) ("Defendants object to [the exhibit], arguing
that it has not been properly authenticated under Rule 56, however, the document is printed on [company] letterhead
and in accordance with Rules of Evidence 901 and 902, the Court will not strike this exhibit").  Another example is
Dwyer v. IRS, Nos. 2-92-0328, 2-92-00575, 1992 WL 547720 at *2 (Bankr. S.D. Ohio Dec. 4, 1992), in which the
court held that "a writing on letterhead paper is sufficient to authenticate the writing under Fed.R.Evid. 901(b)(4) 'if
the letterhead would not normally be available to anyone other than the sender, corresponds to letterheads in general
use, and the typing and form of the letter corresponds to usual practice in the purported sender's office.'" (quoting
Weinstein & Berger, Weinstein's Evidence, ¶ 901(b)(4)[02] at 901-51 to 901-54 (1992)).  The court held:

> The exhibits were on letterhead paper of the IRS, and addressed the matter in question.  Moreover,
> the content of the Exhibits, when considered with the circumstances surrounding their receipt by
> the Plaintiffs, is of such a nature that it is unlikely that the Exhibits were prepared by an individual
> or entity other than the IRS.  The appearance and the contents of the Exhibits is an adequate basis
> for a ruling admitting them into evidence.

Id.

the authentication requirement.[36]  Several cases have held that documents were sufficiently

authenticated by virtue of their being printed on a party's letterhead and submitted by that party

in discovery.[37]  In addition, the fact that a document was on the letterhead of, and provided in

---

[36] In Decalonne v. G.I. Consultants, Inc., the court, after noting that "the Tenth Circuit held that the fact that a document was printed on the letterhead of the person from whom it was purported to be sent was circumstantial evidence of authenticity," held that the fact that the exhibit was on the letterhead of its purported author, combined with the affidavit of the exhibit's purported recipient, constituted sufficient authentication.  197 F. Supp.2d 1126, 1139-40 (citing Denison v. Swaco Geolograph, 941 F.2d 1416 (10th Cir. 1991)).  In Air Land Forwarders, Inc. v. United States, the court found that contents of specific military damage claims "affirm their authenticity," because they "refer to the damaged property at issue, were contemporaneously created, signed by an estimator, written on letterhead, and addressed to the service member."  Air Land Forwarders, Inc. v. United States, 38 Fed. Cl. 547, 554 (Fed. Cl. 1997).  In FTC v. Hughes, 710 F. Supp. 1520, 1522 (N.D. Tx. 1989), the court found, in the course of holding documents authenticated, that "all the documents bear the defendant's company logo and pre-printed address, which are also indicative of authenticity."  Similarly, the court in United States v. Sinclair, after noting that "[t]he Third Circuit requires that a prima facie case of the author's identity be established for a writing to be admissible," found "several circumstancial indicia of the defendant's authorship of [a] letter" sufficient to satisfy 901(b)(4), including letterhead containing the defendant's name and a post office box near him, the date of the letter and other contemporaneous corroborating circumstances, notwithstanding that "[n]o one testified that he saw defendant write the letter nor did the Government attempt to establish that the signature on the copies was the defendant's."  433 F. Supp. 1180, 1195-96 (D. Del. 1977).  In California Ass'n of Bioanalysts v. Rank, 577 F. Supp. 1342, 1356 n.23 (C.D. Cal. 1983), the court held that reports of what is now the Department of Health and Human Services ("DHHS") were authenticated under Rule 901(b)(4), finding that reports "on USDHEW [the precursor to DHHS] letterhead, are signed by officials of that agency, are addressed to . . . the then director of DHS, and were received by DHS" had "sufficient distinctive characteristics" to permit their authentication.  Id. (citing Greenbaum v. United States, 80 F.2d 113, 125 (9th Cir. 1935)).  The court added that "the content of the reports, when considered with the circumstances surrounding their receipt by DHS, is of such a nature that it is unlikely that the reports were prepared by an individual or entity other than USDHEW. . . . Plaintiff's [sic] made no showing that [one exhibit] was not an official publication or that [the other exhibits] were not what defendants claimed them to be.  As a consequence, authenticating testimony was not required for any of these exhibits."  Id.  In New Orleans Saints v. Griesedieck, 612 F. Supp. 59, 62 (E.D.La. 1985), the court held that an interoffice memorandum printed on company letterhead was sufficiently authenticated under Rule 901.  In United States v. Hoag, 823 F.2d 1123 (7th Cir. 1987), abrogated on other grounds, United States v. Staniforth, 971 F.2d 1355 (7th Cir. 1992), a real-estate case involving  prosecution for false statements, the court held letters authenticated under 901(b)(4), because (1) the letters were on the defendant's company letterhead; (2) each letter pertained to contemporaneous real estate transactions in question; (3) "it was the company's policy to transmit these letters to the lending institutions for inclusion in the package of documents the lenders were required to submit under HUD"; (4) the defendant was the sales agent involved in the correspondence; (5) letters such as these were recently approved by him; and (6) the initials of the company's executive secretary appeared on each letter.  Id. at 1127.  In Ashley v. KMart Corp., No. Civ.A.3:96-CV-0954P, 2000 WL 1478655, at * 2 (N.D. Tx. Oct. 5, 2000), the court held that documents from the EEOC and Texas Employment Commission were authenticated under 901(b)(4) because the "appear to be from the EEOC and the TEC [indicating Texas Employment Commission], with their letterhead and conclusions regarding Plaintiff's claim" and because the non-introducing party did not raise specific objections as to why the court should question their authenticity.

[37] See McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 562 (5th Cir. 1998); Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1423 (5th Cir. 1991) (finding document on defendant's party's letterhead provided during discovery by former defendant had "sufficient circumstantial evidence to support its authenticity"); FTC v. Hughes,

discovery by, a "co-participant in the [subject] joint venture and formerly a defendant," was held sufficient to authenticate the document in federal court.[38]  Thus, even documents submitted by participants in an enterprise who are not named defendants can be authenticated on the basis of the presence of their letterhead and submission in discovery by the participant in the enterprise.

Several courts have also found – especially with regard to discovery submissions – that the fact that the party challenging authentication does not allege that the documents sought to be authenticated are not authentic – also referred to as "genuine" – but merely argues that the authentication requirements have not been met, weighs in favor of a finding of authentication.[39]

---

710 F. Supp. 1520, 1522-23 (N.D.Tex. 1989) (holding that documents on defendant's letterhead provided during discovery authentic under Rule 901(b)(4)); John Paul Mitchell Sys. v. Quality King Distr., Inc., 106 F. Supp.2d 462, 472-73 (S.D.N.Y. 2000) (purported shipping records and invoices found authentic based on act of production by corporate representative and documents themselves, which bore corporate letterhead and content indicating they were shipping records or invoices, but somewhat similar evidence obtained from paid informant held not authenticated); FTC v. Hughes, 710 F. Supp. 1520, 1523 (N.D. Tx. 1989) (finding documents on company letterhead and submitted in discovery – one bearing a signature that matched the signature on that party's summary judgment affidavit – were sufficiently authenticated).

[38] Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1423 (10th Cir. 1991).  In addition, in Kendrick v. Sullivan, the D.C. Circuit Court, in a case by a private party against the U.S. Secretary of the Department of Health and Human Services, denied a motion to strike documents submitted in support of a motion for summary judgment, largely on the grounds that they "were produced from the defendants' own files, or the files of [related] grantees." Kendrick v. Sullivan,766 F. Supp. 1180, 1192 (D.D.C. 1991).  While the Court held that these documents were authenticated under 901(a), 901(b)(7), 902 or by affidavit, the Court's order, which specifically denied the motion to strike "as to the . . . documents produced by the defendant and various [related] grantees" and reserved ruling on the documents not produced from the party, indicates the significance to the court that the documents were produced in discovery.  Id. at 1193-94.

[39] See Davis v. First Healthcare Corp., 507 S.E.2d 563, 566 (Ga. App. 1998) ("Federal courts faced with this issue typically find production of a document by a party, along with other circumstantial evidence, is prima facie proof of authentication, **particularly when the party who produced the document never claims it is not authentic or genuine**.") (emphasis added) (citing McQueeney v. Wilmington Trust Co., 779 F.2d 916, 929 (3d Cir. 1985); McConathy, 131 F.3d at 562; Snyder v. Whittaker Corp., 839 F.2d 1085, 1089 (5th Cir. 1988); Denison, 941 F.2d at 1423; Hughes, 710 F. Supp. at 1522)); see also Snyder, 839 F.2d at 1089 (finding, in the course of admitting documents produced in discovery and written by a senior employee of the defendant corporation, that "[t]he district court did not err in accepting these facts as adequate authentication, **particularly since [the defendant] has never claimed that the notes were not [the purported author's].**") (emphasis added); Alexander Dawson, Inc. v. NLRB, 586 F.2d 1300, 1302-03 (9th Cir. 1978) (finding job applications of unknown author were **authenticated by their similarity to authenticated job applications, referred to as "authentication by similarity of underlying form,"** and fact that party contesting authentication did not attempt to prove – or provide any evidence indicating – that applications were fraudulently prepared; 901(b)(4) not specifically referenced) (emphasis added); McNair v.

In this case, it is thus also an indication of authenticity that **Defendants' Objections fail to allege that any of the United States' Trial Exhibits is not authentic.**[40]

       3.     <u>Fed. R. Evid. 901(b)(8)</u>

Numerous documents created more than twenty years prior to the trial date may also be authenticated as ancient documents pursuant to Rule 901(b)(8), which provides that:

> Evidence that a document or data compilation, in any form, (A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered.

Fed. R. Evid. 901(b)(8). Several courts have held the requirement that the documents be twenty years old is satisfied by the date on the documents or other characteristics, either alone or in combination with other evidence.[41]

---

Monsanto Co., 279 F. Supp.2d 1290, 1299 (M.D. Ga. 2003) ("The Court is satisfied that the exhibits submitted by Defendants are what they purport to be. More important, Plaintiffs have not presented evidence sufficient to raise a question as to the authenticity, reliability or relevance of the submissions. The Court notes that Plaintiffs do not specifically contend that [the] exhibits. . . are anything but what they purport to be. Plaintiffs do not respond to Defendants' assertion that [the] exhibits . . . are copies of the original documents produced to Plaintiffs' counsel . . . for inspection at Monsanto's facilities . . . ."); <u>Ashley v. KMart Corp.</u>, No. Civ.A.3:96-CV-0954P, 2000 WL 1478655, at * 2 (N.D. Tex. Oct. 5, 2000); <u>Spears v. Delphi Auto. Sys. Corp.</u>, No. IP 00-1653-C-T/K., 2002 WL 1880756, at *6-*7 (S.D. Ind. Aug. 15, 2002);<u>California Ass'n of Bioanalysts v. Rank</u>, 577 F. Supp. 1342, 1356 n.23 (C.D. Cal. 1983).

[40] Objections, <u>passim</u>. In addition, Defendants' objections to genuineness are carefully worded to avoid any claim that the documents are not authentic. Defendants' merely contend that "Defendants cannot establish the genuineness, true identity, and/or confirm the origin of the document." Objections at 3. As previously noted, **Defendants' contention does nothing to rebut the presumption of authenticity accorded these exhibits under Order #51**.

[41] In <u>United States v. Atlas Lederer Co.</u>, 282 F. Supp.2d 687, 697-98 & n.11 (S.D. Ohio 2001), the court held the age of the document requirement satisfied primarily, if not solely, by the dates of several documents held authenticated under 901(b)(8). In <u>Kath v. Burlington Northern Railroad Co.</u>, 441 N.W.2d 569, 575 (Minn. Ct. App. 1989), the Minnesota Court of Appeals held that an undated document satisfied the requirements of authentication as an ancient document under the Minnesota evidence rule mirroring Federal Rule 901(b)(8) by virtue of its being found in a file with ancient documents and its similarity in appearance to the ancient documents in the file. In <u>Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.</u>, 222 F. Supp.2d 423, 574-75 (S.D.N.Y. 2002), the court, in the course of finding documents authenticated per Rule 901(b)(8), noted that "[t]he dates of the documents, along with their appearance and the testimony of [an employee familiar with the documents of the company at issue], establish that the documents are more than 20 years old. . . ."

The requirement that the documents be "in a place where it, if authentic, would likely be,"[42] can be satisfied with intrinsic or extrinsic evidence, the main question being whether the conduct of the parties connected with the document is consistent with its authenticity.[43]  This requirement relates only to the issue of whether there are indications that a documents is fake or was altered or tampered with in some way; the proponent is **not** required to show that the content or statements in the document are accurate or reliable.[44]  As for the requirement that the condition of the document create no suspicion as to its authenticity, where records of an entity are found on the premises of that entity or with other records of that entity, this requirement is likely met.[45]

Given that the trial of this case will begin on September 13, 2004, the requirement that the documents be 20 years old will likely be satisfied by the start of trial as to all documents as to which it is apparent that they were created on or before September 13, 1984.  Depending on the

---

[42] Fed. R. Evid. 901(b)(8)

[43] Wright & Gold, supra note 16, § 7113 at 136.

[44] As noted by the Third, Sixth and Seventh Circuits, "'[a]lthough the rule requires that the document be free of suspicion, that suspicion does not go to the content of the document but rather to whether the document is what it purports to be. . . .'"  In Threadgill v. Armstrong World Indus., Inc., 928 F.2d 1366, 1368, 1375-76 (3d Cir. 1991), the court reviewed a ruling on authentication from an asbestos case regarding well-known documents consisting mainly of "correspondence among a former president" of an asbestos company and a former in-house counsel for another asbestos company, among others, which indicated asbestos manufacturers' knowledge of the health hazards of asbestos and alleged knowing concealment of these dangers.  See id. at 1368-69.  The court found the documents authenticated under Rule 901(b)(8) and reversed the lower court's ruling to the contrary, noting:

> There is nothing in the [other court's] rulings which suggests a basis for believing that the . . . documents had been altered or that they had somehow been manufactured in anticipation of litigation. . . . .  "In view of this clear and unsuspicious history of custody . . . the papers are authentic under the standard of 901(b)(8).  Defendants cannot put forward so much as a hint that these documents have been tampered with in any way.  Nor in [our] perusal of the transcripts of the argument on similar motions in other . . . litigation have [we] found any serious suggestion that the documents are fake or that they have been altered."

Id. (quoting unpublished slip opinion).

[45] Wright & Gold, supra note 16, § 7113 at 140.

length of the trial, documents produced months or years thereafter may become 20 years old (and therefore qualify as ancient documents) during the trial.  The second and third requirements of this subsection may be satisfied with evidence that the exhibits at issue were produced by Defendants, either in this case or another, the fact that they appear or have appeared on Defendants' web sites, or other comparable and readily apparent evidence.

This subsection does not require that the author of the document be a Defendant or its employee.  Therefore, this subsection may apply to those documents submitted by Defendants in discovery that are not authored by the Defendant that submitted them, as well as those that are submitted by Defendants, but not authored by any Defendant.

        4.        <u>Fed. R. Evid. 902(5) & (6)</u>

Rule 902 provides that certain documents, primarily periodicals and official public documents, are self-authenticating.[46]  A document is self-authenticating if the document itself establishes that it is what its proponent claims.[47]  Thus, the introductory text of Rule 902 states that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to" self-authenticating documents.[48]  The judge determines whether evidence is self-authenticating under the Rule 104(a) standard.[49]  In <u>Kendrick v. Sullivan</u>, the D.C. District Court held unspecified documents self-authenticating under Rule 902.  766 F. Supp. 1180, 1193 (D.D.C. 1991).

---

[46] <u>See</u> Fed. R. Evid. 902.

[47] Wright & Gold, <u>supra</u> note 16, § 7133 at 180.

[48] Fed. R. Evid. 902.

[49] Wright & Gold, <u>supra</u> note 16, ¶ 7134 at 186.

Subsection 902(5) applies to books, pamphlets and all other publications purportedly generated by public authority, and includes foreign and domestic official publications.[50]  No particular level of public authority is required.  The subsection does not include privately-issued documents, but does include documents manufactured and/or distributed by a private entity that are issued at the behest of a public entity.[51]  The publication must indicate on its face that it is of official origin.[52]

Courts have held that documents such as publications on Government websites and Reports of the United States Department of Health and Human Services are self-authenticating.[53] This provision provides support for this Court to overrule Defendants' authenticity objections relating to official publications of the United States, as well as those of state and local governments.

Federal Rule of Evidence 902(6) provides that newspapers and periodicals are self-

---

[50] Wright & Gold, supra note 16, § 7139 at 238-39.

[51] Wright & Gold, supra note 16, § 7139 at 238.

[52] Wright & Gold, supra note 16, § 7139 at 241.

[53] In Sannes v. Jeff Wyler Chevrolet, Inc., No. C-1-97-930, 1999 WL 33313134, at *3 n.3 (S.D. Ohio Mar. 31, 1999), the court held that "FTC press releases, printed from the FTC's government world wide web page, are self-authenticating official publications under Rule 905(5) of the Federal Rules of Evidence."  In Hispanic Broadcasting Corp. v. Educational Media Found., No. CV027134CAS (AJWX), 2003 WL 22867633, at *5 & n.5 (C.D. Cal. Oct. 30, 2003), the court held that "exhibits which consist of records from government websites, such as the FCC website, are self-authenticating" under 902(5).  In California Ass'n of Bioanalysts v. Rank, 577 F. Supp. 1342, 1356 n.23 (C.D. Cal. 1983), the court held that several reports of the Department of Health and Human Services ("DHHS") were self-authenticating under Rule 902(5).  The court stated: "As a result of the facsimile of the official seal of the USDHHS on its cover page, suggesting that it was printed by authority of that agency, [the exhibit] is self-authenticating under Rule 902(5) of the Federal Rules of Evidence, as well as under Rule 44(a)(1) of the Federal Rules of Civil Procedure."  Id. (citing Stewart v. United States, 211 F. 41, 45 (9th Cir. 1914); United States v. Aluminum Co. of America, 1 F.R.D. 71, 75 (S.D.N.Y. 1939)); see also Castaic Lake Water Agency v. Whittaker Corp., 272 F. Supp.2d 1053, 1060 n.6 (C.D. Cal. 2003) (finding draft EPA reports that had been circulated self-authenticating under 902(5)); Conjour v. Whitehall Township, 850 F. Supp. 309, 312 & n.1 (E.D. Pa. 1994) (finding local ordinances and regulations self-authenticating under 902(5)).

authenticating.[54]  This provision applies to all newspapers, magazines and other periodicals, and

requires only that the document at issue "be an issue in a series of issues," and not a book,

circular or the like.[55]  The fact that the document is an issue in a series must be evident from the

face of the document.[56]

In <u>Liberty Lobby, Inc. v. Anderson</u>, the D.C. District Court held that "newspapers and

periodicals [] are self-authenticating under evidence Rule 902(6)."  562 F. Supp. 201, 204

(D.D.C. 1983), *rev'd on other grounds*, 746 F.3d 1563 (D.C. Cir. 1984)*, and decision vacated on

other grounds by*, 477 U.S. 242 (1986).[57]  Courts in other Circuits have held specifically that

magazine articles, press releases and newspaper advertisements are self-authenticating under

Rule 902(6).[58]

While Defendants raise objections to several newspapers and periodicals and portions

thereof, including the exhibits that comprise the United States' collection of Defendants'

advertisements, Defendants' Objections ignore two salient facts that undercut their objections: (1)

these exhibits are presumed by the Court's extant orders to be authentic; and (2) these exhibits are

---

[54] Fed. R. Evid. 902(6).

[55] Wright & Gold, <u>supra</u> note 16, § 7140 at 243.

[56] Wright & Gold, <u>supra</u> note 16, § 7140 at 243.

[57] The court also noted that, while in some situations courts require documents to be submitted in full, the submitting party was not required to do so in that case, as many of the sources were "obviously of great length."  <u>Liberty Lobby</u>, 562 F. Supp. at 204.

[58] <u>See</u> <u>Snyder v. Whittaker Corp.</u>, 839 F.2d 1085, 1089 (5th Cir. 1988) (finding magazine article self authenticating under Rule 902(6) under rubric of "printed articles from periodicals"); <u>Plitt Theatres, Inc. v. American Nat'l Bank & Trust Co.</u>, 697 F. Supp. 1031, 1032 n.1 (N.D. Ill. 1988) (finding copies of newspaper advertisements self authenticating under Rule 902(6)); <u>Arachnid v. Valley Recreation Prods., Inc.</u>, No. 98 C 50282, 2001 WL 1664052, at *4 (N.D. Ill. Dec. 27, 2001) (finding magazine articles and press-releases self-authenticating under Rule 902(6)).

self-authenticating under Rule 902(6).  A more detailed response, specifically tailored to these objections by Defendants, is provided below.

6.      Fed. R. Civ. P. 10(c)

Federal Rule of Civil Procedure 10(c), made applicable by Federal Rule of Evidence 901(b)(1),[59] also provides for the authentication of documents.  Under Rule 10(c), by attaching documents as exhibits to pleadings, the party who files the pleading may concede the authenticity of the attached document to the extent that pleading assumes the authenticity of the document.[60] Defendants have raised authenticity objections with regard to several documents that they relied upon in support of their arguments to the court in filings, including pleadings, discovery responses and exhibits to filings.  Rule 10(c) provides that Defendants, in so doing, conceded the authenticity of these documents.  Instances in which Defendants challenge the authenticity of exhibits the authenticity of which they have conceded in this manner are identified by the United States' categorical response #14 to Defendants' Objections.  The Court should disregard Defendants' objections relating to these documents, which Defendants themselves – either explicitly or implicitly – have conceded are authentic.

Moreover, while Defendants' objections based on purported modifications to, or combinations of, documents are not authentication objections per se, even the limited legal authority related to the types of objections raised by Defendants supports the authentication of

---

[59] Federal Rule of Evidence 901(b)(10) provides that evidence may be authenticated by "[a]ny method of authentication or identification provided by Act of Congress or by other rules prescribed by the Supreme Court pursuant to statutory authority."  Fed. R. Evid. 901(b)(10).

[60] See Fed. R. Civ. P. 10(c); Wright & Gold, supra note 16, § 7115 at 154.

the United States' Trial Exhibits to which Defendants object.[61]

**D.     Specific Responses to Particular Objections**

1.     Defendants' Authentication Objection ("Authenticity: Genuineness")

It is extremely telling that, even as to the small category of documents as to which

---

[61] Due to the fact that Defendants' objections are largely unrelated to authentication, the following legal authority addressing objections similar to Defendants' Objections does not specifically concern authentication.  However, the legal authority below pertains to documents that were admitted into evidence despite objections such as those made by Defendants.  Thus, due to the fact that authentication is a prerequisite to admissibility, these cases support the United States' position that Defendants' objections do not rebut or refute the authenticity of the exhibits Defendants challenge.  With regard to Defendants' objections relating to marginalia, see, e.g., United States v. Skillman, 922 F.2d 1370, 1375 (9th Cir. 1990) (in criminal prosecution, trial court did not err in admitting photocopy of document, the original of which was found in defendant's garage; photocopy was admissible as duplicate under Rule 1003 even though photocopy had two handwritten additions that defendant alleged were not on the original since "[t]his extraneous handwriting was entirely incomprehensible to the district court").  With regard to Defendants' objections alleging missing pages, see United States v. Fleming, 818 F. Supp. 845, 85 (D.C. Pa. 1993) ("The defendant further challenges the admission of Government Exhibit One, which consists of a copy of page one of a two-page original appraisal form, on the basis that the second page was not produced. Defendant offers no reason to suspect that the copy of page one is not identical to page one of the original. . . .  In this case . . . there is no issue of gaps or omissions on the copy admitted, nor are the material terms for which the exhibit was offered missing from the admitted page. In fact, the defendant has not suggested that the Government inserted or otherwise altered the key terms appearing on the admitted exhibit. Moreover, the defendant has neither suggested why the second page is necessary for an understanding of the information contained on the first page, nor otherwise shown why, under the circumstances, it was unfair to admit the first page without a copy of the second. Therefore, the copy of what was originally page one of a two-page document was properly admitted as a duplicate of the first page. Fed.R.Evid. 1003.").  Similarly, with regard to Defendants' allegations of missing portions of documents, see FDIC v. Rodenberg, 571 F. Supp. 455, 458 (D.C. Md. 1983) (rejecting opponent's allegation that photocopies of documents were not admissible as "duplicates" because the missing margins of one document and the illegible portions of another made them inaccurate copies, holding: "The decision as to whether the offered documents constitute accurate duplicates and can be accepted in evidence is 'addressed to the sound discretion of the trial court and in any case considerations of trustworthiness and fairness are paramount.' . . .  Applying these standards, the Court finds that the submitted documents are accurate copies of the originals. Despite the missing margins and deleted portions, the terms of the continuing guaranty are clear . . . .").  Objections similar to those made by Defendants relating to combinations of documents were rejected by other courts.  United States v. Denton, 556 F.2d 811, 816 (6th Cir. 1977) (trial court did not abuse its discretion in admitting in evidence as summaries, under Rule 1006, composite tape recordings of representative telephone conversations intercepted pursuant to court order and made from duplicate tapes of original tape recordings); United States v. Scully, 546 F.2d 255 (9th Cir. 1976) (it was not improper for trial court to allow Government to produce single master tape of all wiretapped conversations it intended to use, and to introduce such master into evidence along with originals, where master tape had quality equal to originals, defendants had opportunity to examine originals, and procedure saved considerable time by eliminating need to switch tape reels continually).  Objections relating to facsimiles, which bear some similarity to those by Defendants in this case, were rejected in other cases. See Tiberi v. CIGNA Ins. Co., 40 F.3d 110, 111 (5th Cir. 1994) (finding that trial court abused its discretion in refusing to admit duplicates in the form of facsimiles  under Rule 1003; United States v. Woodard, 39 M.J. 1022, 1026 (1994) (facsimile copy of document was admissible as a "duplicate" under Military Rule of Evidence 1001(4)).

Defendants actually contest authenticity, they fail to allege that any of these documents are not authentic.  Defendants merely object on the basis that "Defendants cannot establish the genuineness, true identity, and/or confirm the origin of the document."  Objections at 3.  Moreover, while Defendants intimate that these objections are somehow based on a "discrepancy," Defendants objections identify no discrepancy whatsoever.[62]  As the United States indicated in Section II.C.2 above, the fact that Defendants do not allege that these documents are **not** authentic weighs in favor of a finding that these documents **are** sufficiently authenticated.  Thus, far from rebutting the presumption of authenticity accorded these documents, **Defendants' claims are themselves evidence indicating that these exhibits are authentic.**  The ridiculous nature of Defendants' position is compounded by the fact that many of these documents were designated confidential by Defendants themselves,[63] are on the letterhead of Defendants[64] or their affiliates[65] or law firms,[66] were trial exhibits in other cases involving Defendants (and thus, as noted <u>infra</u> Section II.B, Order #51 precludes challenges to their authenticity),[67] bear Defendants'

---

[62] <u>See</u> Objections at 3.

[63] <u>See</u>, <u>e.g.</u>, U.S. Ex. 33,401 (Philip Morris confidential); U.S. Ex. 34,120 (Liggett confidential); U.S. Ex. 62,663 (Tobacco Institute confidential).

[64] <u>See</u>, <u>e.g.</u>, U.S. Ex. 21,206 (Philip Morris letterhead); U.S. Ex. 34,212 (same); U.S. Ex. 21,879 (R.J. Reynolds letterhead); U.S. Ex. 28,922 (same); U.S. Ex. 32,098 (BATCo letterhead); U.S. Ex. 25,971 (Lorillard letterhead); U.S. Ex. 34,542 (Lorillard letterhead); U.S. Ex. 21,476 (Liggett letterhead); U.S. Ex. 25,986 (same); U.S. Ex. 34,582 (CTR letterhead).

[65] <u>See</u>, <u>e.g.</u>, U.S. Ex. 33,407 (Leo Burnett letterhead); U.S. Ex. 65,276 (R.J. Reynolds Tobacco Holdings, Inc. letterhead).

[66] <u>See</u>, <u>e.g.</u>, U.S. Ex. 26,077 (Shook Hardy & Bacon); U.S. Ex. 36,197 (same); U.S. Ex. 36,198 (same); U.S. Ex. 36,199 (same); U.S. Ex. 34,075 (Webster & Sheffield); U.S. Ex. 36,201 (Jacob, Mediger & Finnegan); U.S. Ex. 36,203 (same); U.S. Ex. 36,204 (same).

[67] <u>See</u>, <u>e.g.</u>, U.S. Ex. 21,204; U.S. Ex. 21,476; U.S. Ex. 56,988; U.S. Ex. 62,657.  The United States utilizes categorical response 11 to indicate that the document challenged is deemed authentic and may not be challenged, due to its introduction into evidence at trial in another case involving the United States or one or more Defendant, or

own bates numbers,[68] or bear other clear connections to Defendants that are inconsistent with their challenges to authenticity.[69]  Other categorical responses provided by the United States in response to Defendants' genuineness objections indicate that the exhibit is deemed authentic and its authenticity may not be challenged (Response #11), that the document was created and/or produced by a Defendant or a related company, which is evidence of authenticity under Rule 901(b)(4) – discussed infra (Responses #12 & #13), that the exhibit is among Defendants' experts' reliance materials (Response #12), that any alleged modifications to the document do not affect its authenticity (Response #17), and/or that Defendants have offered no evidence to rebut the presumption of authenticity and failed to provide for the United States' ability to introduce additional authentication information, if necessary, at trial – including through fact or expert witness testimony per Rule 901(b)(1) (Responses #7 & #16).

In short, Defendants' genuineness objections are both an illustration of the untenable nature of Defendants' position and independent evidence indicating that the very documents Defendants challenge are authentic.

        2.        Defendants' Other Objections Disguised As Authentication Objections

        a.        *Defendants' Own Cigarette Advertisements in Magazines/ Periodicals ("Authenticity: Advertisement – Incomplete Publication")*

Defendants have objected to the United States' collection of Defendants' magazine

---

otherwise.

[68] See, e.g., U.S. Ex. 27,845; U.S. Ex. 28,883; U.S. Ex. 28,923; U.S. Ex. 30,919; U.S. Ex. 33,292; U.S. Ex. 34,054; U.S. Ex. 34,055; U.S. Ex. 34,063; U.S. Ex. 34,104; U.S. Ex. 34,105; U.S. Ex. 34,755; U.S. Ex. 53,745.

[69] See, e.g., U.S. Ex. 34,059 (memorandum by attorney for Tobacco Institute/Council for Tobacco Research); U.S. Ex. 34,064 (minutes of special meeting of membership of Tobacco Institute); U.S. Ex. 34,098 (same); 34,581 (portion of published report of Council for Tobacco Research).

advertisements they placed in numerous magazines from 1954 to the present, as listed on the

United States Exhibit List in Tier 3.  Defendants have recorded approximately 15,500 objections

to their advertisements as "authenticity: advertisement - incomplete publication."[70]  Defendants

specifically object to their own cigarette advertisements on the basis that the United States'

provision of "only the publication cover page and advertisement [and adjacent pages] does not

adequately establish the advertisement was in fact published or that it was published in the

identified publication."[71]  Even though Defendants acknowledge in their Objections that printed

materials such as magazines and newspapers are self-authenticating under Rule 902(6) of the

Federal Rules of Evidence, Defendants argue without legal support that, because the United

States did not provide complete copies of each and every one of the magazines in which

Defendants placed their cigarette advertisements, none of these 15,500 exhibits should be

considered authentic.

Again, Defendants fail to assert, much less prove, that any of these exhibits are not

authentic.  Given that these advertisements were created by and paid for by Defendants to be

placed in these magazines, Defendants' objections to their authenticity are not made in good

faith.  As the Court expressly stated in its Memorandum Opinion accompanying Order #487 –

which denied, in part, Defendants' Emergency Motion to Prohibit Plaintiff's Untimely Addition

of 650 New Racketeering Acts to the Case – with regard to the portions of magazines and

periodicals that include Defendants' cigarette advertisements that the United States has disclosed

---

[70] Defendants also include in this category a small number of additional exhibits that consist of Defendants' own public statements, which Defendants placed in advertisements in newspapers and magazines.  Because the bases for authentication of these exhibits are the same, the arguments in this section apply to these additional exhibits as well.

[71] Objections at 4.

as exhibits:

> [A]ll of th[is] evidence consists of publicity, advertisements and media usage
> prepared by the Defendants themselves.  Given that Defendants prepared, paid for,
> and directed these advertising campaigns, all of which were carried in the national
> media, it is hard to believe, as a practical matter, that the Defendants would be
> challenging the accuracy of any substantial amount of the information itself.

Ord. #487, Mem. Op. at 7.  See Fenje v. Feld, 301 F. Supp.2d 781, 789 (N.D. Ill. 2003) (holding

that, even if a party fails to authenticate a document properly or to lay a proper foundation, the

opposing party is not acting in good faith in raising such an objection if the party nevertheless

knows that the document is authentic); Erickson v. Baxter Healthcare, Inc., 151 F. Supp.2d 952,

971 (N.D.Ill. 2001) (finding "appalling" a party's meritless objection to self-authenticating

newspapers and periodicals); In re Interstate Steel Setters, Inc., 65 B.R. 312, 316 (Bankr. N.D.Ill.

1986) (sanctioning attorney for claiming that he did not really know if certain documents were

authentic and pressing that position until the documents were admitted).[72]

Many of the portions of these magazines and periodicals containing Defendants' cigarette

advertisements include as a part of the United States' Trial Exhibits, a printed page with a small

legend containing the magazine title, issue and page of the advertisement itself.  In addition, so

---

[72] Defendants have also opposed the United States' experts' reliance upon their cigarette magazine advertisements.
See Defendants' Reply in Support of their Motion in Limine to Exclude Certain Testimony and Exhibits of Plaintiffs'
Experts Drs. Biglan, Chaloupka, Dolan, Eriksen and Krugman, filed June 25, 2004.  Here, Defendants, incredibly,
object to the magazine placement information the United States obtained on its own – and disclosed to Defendants –
by copying thousands of magazine covers, advertisements, and adjacent pages of the advertisements.  In both their
motion in limine and these objections, Defendants, improperly, are trying to prevent the experts from discussing
Defendants' cigarette advertisements and prevent the Court from reviewing these advertisements.  These bad faith
positions that Defendants are taking throughout this litigation with regard to their magazine advertisements
demonstrate the lengths that Defendants will go to avoid having the Court review the evidence of their placement of
cigarette advertisements in youth magazines.

that there would be no doubt as to the identity of any of Defendants' advertisements,[73] the United

States produced to Defendants all of Defendants' advertisements along with copies of the covers

of the magazine issues in which they are found and has, where applicable, produced the page of

the magazine printed adjacent to the advertisement itself.  These advertisements fit squarely

within the self-authentication exception set forth in Rule 902(6).  Defendants suggest as a remedy

to their objection that the United States provide a complete copy of the entire content of each and

every magazine or periodical from which the United States produced the exhibits containing

Defendants' cigarette advertisements.  There is no such requirement to do so under Rule 902(6),

and Defendants have identified none.  Indeed, assuming that magazines are on average at least

100 pages long, and that the 15,500 advertisements at issue come from approximately 5,000

different magazines, Defendants are demanding the addition to the record of at least 500,000

pages of unnecessary material that would not prove or disprove any fact material to this case.[74]

While Defendants do not include in their objections to the exhibits the actual reasons they

would ask the Court to order such a voluminous addition to the record, Defendants have since

provided the Court with their reasoning, demonstrating that it has nothing to do with a proper

authentication objection to the United States' Trial Exhibits.  In their Consolidated Reply Brief in

Support of Joint Defendants' Motions in Limine to Exclude Certain Testimony and Exhibits of

Plaintiffs' Experts Drs. Biglan, Chaloupka, Dolan, Eriksen and Krugman, Defendants assert:

"Defendants' authenticity objections reflected their concern with Plaintiff's improper attempt to

---

[73] The United States disclosed to Defendants color copies of **all** of their cigarette magazine advertisements even though the United States was not required to do so under the Federal Rules of Evidence.  The United States placed a majority of their advertisements in Tier III as summary exhibits.  Under Fed. R. Evid. 1006, the documents that underlie summary exhibits need only be "made available" to the opposing party.

[74] Fed. R. Evid. 401.

28

introduce the magazine ads in a vacuum, without the entire magazine to provide highly relevant context necessary to show the actual 'intended' audience of such magazines and their advertisements."  Reply at 7 n. 9.  Defendants thus are asking that the Court order the United States to produce complete copies of the magazines, not for authentication purposes, but so that Defendants may use some of the additional pages of these magazines and periodicals to attempt to show their content.  The United States is not required under any rule or order to supplement Defendants' evidence in this manner.  Defendants' objections to the authenticity of the magazines and periodicals containing their own cigarette advertisements are not in good faith, especially when Defendants are well aware, and they identify no legitimate argument or legal basis to the contrary, that the portions of these magazines and periodicals containing their advertisements are authentic.  For these reasons, Defendants objections to these portions of magazines and periodicals containing Defendants' own advertisements and other public statements should be overruled.  See Fed. R. Evid. 901, 902.

> b.     *Authenticity: Altered*

Defendants provided millions of pages of documents to the United States in discovery. Many of the documents that Defendants now object to as containing "alterations" were documents that Defendants provided to the United States containing the very "alterations" of which Defendants now complain.  The United States designated the vast majority of its Trial Exhibits from Defendants' productions and productions from third parties.  As to the over 3,400 exhibits to which Defendants object because the documents purportedly contain alterations, Defendants do not provide any evidence that the alterations do not result in any measure from the writings of their own company employees.  Defendants' objections seem calculated only to

29

preclude this Court from considering important documents based on Defendants' bald and qualified representations that these claimed alterations did not appear on the document provided by Defendants.

A random sampling, taken from Defendants' objections relating to marginalia, suggests that this allegation is not true.[75]  Moreover, Defendants' objections relating to marginalia are made on a massive scale without any attempt to separate out marginalia that contains illegible or irrelevant material from marginalia, if any, that is substantive.  Defendants object to the authenticity of documents that contain any writing or additional markings whatsoever, no matter how insignificant or lacking in substance.  Examples include documents with fax transmissions lines; a star on the margin; brackets; an identifying number, such as an exhibit number;[76] or trial exhibit number.[77]  In other instances, they object to marginalia that contains information already contained in the document itself.[78]

In most cases, the marginalia is limited in substance.  For instance, one exhibit merely bears a printed legend indicating that it relates to "Batco Document for Legal Services"[79] Another bears the legend "BAT Co Ltd. Minnesota Tobacco Litigation."[80]  Even illegible

---

[75] See, e.g., U.S. Ex. 39,856; U.S. Ex. 20,285.

[76] See, e.g., U.S. Ex. 36,308 (numbers alone).

[77] See, e.g., U.S. Ex. 35,748 (numbers and lines in margin).

[78] For example, Defendants object in instances where the author or the date of the document is handwritten.  See, e.g., U.S. Ex. 73,250; U.S. Ex. 73,252; U.S. Ex. 73,277.  In some instances, Defendants objected to a document that contained only a handwritten room number.  See, e.g., U.S. Ex. 73,423; U.S. Ex. 73,218.

[79] U.S. Ex. 29,354.

[80] U.S. Ex. 20,581.

marginalia is in some instances the sole basis for Defendants' authentication objection.[81]   In sum, Defendants have elected to register objections in summary fashion with no distinctions as to the nature or source of the marginalia.  Defendants' Objections relating to other subsets of their alteration objections merely allege the presence of such superfluous items as fax lines, coversheets, "interlineations and/or underlining," receipt stamps and the like.[82]   In addition, the remaining subsets of Defendants' objections relating to alterations, which pertain to such things as alleged cut-off pages and incomplete documents, are similar to those previously mentioned in one important respect: they fail to allege the non-authenticity of the underlying documents, and provide absolutely no evidence to rebut the presumption that these documents are authentic.

Such boilerplate objections serve only to inundate the United States and the Court with a multitude of superfluous objections that waste the Court's and the United States' time.   This is particularly the case, given that, in numerous examples, it is apparent from the context of Defendants' documents themselves that the author of the purported alteration is either definitely or likely an employee of Defendants.[83]

It is abundantly clear that this Court is empowered to disregard the alterations contained in the documents to which Defendants object in the unlikely event that Defendants can demonstrate both that the document they produced to the United States did not contain the marginalia to which they now object and that the marginalia at issue is in any way substantively

---

[81] See, e.g., U.S. Ex. 23,252.

[82] Objections at 1-2.

[83] For example, in the context of Defendants' objections relating to marginalia, a Philip Morris Chairman's Statement contains edits in the margins in traditional editorial format.   See U.S. Ex. 21,630; see also document entitled "New Product Concepts," U.S. Ex. 22,169 (similar).

31

related to what the United States intends to prove by introducing the document.  However,

Defendants' request that the Court disregard entirely these exhibits on the basis of Defendants'

demonstrably suspect and invalid rote objections is premature, overly broad, and patently unfair,

particularly where, as here, the documents are overwhelmingly authored by Defendants and

Defendants fail to even allege that the documents were somehow fabricated or are otherwise

inauthentic.  In short, Defendants' objections in this regard should be overruled.

### c.      *Authenticity: Illegible*

As the United States already has noted, Defendants have not properly challenged the

authenticity of documents as to which they contend that all or a portion of the document cannot

be read.  Further, based upon the United States' review of each of the exhibits to which this

objection is lodged, it is apparent that the exhibits are as they originally were supplied by

Defendants or others or the parts of the exhibit that are partly or wholly illegible are not germane

to the purpose for which the exhibit is offered.

### d.      *Authenticity: Incomplete or Missing Document*

With respect to this category of "authenticity" objections, Defendants assert that they

"must examine a complete copy of each exhibit Plaintiff intends to use to determine whether the

exhibit is genuine or complete and whether it has been added to or altered."[84]  Of course, that is

exactly what the United States has provided to Defendants; the exhibits are the "complete copy

[that the United States] intends to use [at trial]."  In any event, as with numerous other exhibits as

to which Defendants lodge their "authenticity" objections, many of these exhibits are documents

provided by Defendants and, therefore, there is no plausible basis for Defendants to object to

---

[84] Objections at 3.

their authenticity.  In a great many instances, the exhibits are those very documents exactly as they were produced by Defendants.  In other instances, the United States inadvertently separated a document as originally obtained into multiple exhibits; in its specific responses to Defendants, the United States so notes those instances and, should the Court deem it appropriate, is prepared to consolidate those multiple exhibits into one exhibit.

<em>e.      Authenticity: Multiple Documents</em>

In other instances, the United States grouped together into one exhibit a number of documents (whether provided sequentially by Defendants or third parties or assembled by the United States from multiple sources and locations, an effort often necessitated by Defendants' own sloppy, piecemeal, or incomplete production of their documents) because they logically, and properly, should be so grouped.

Defendants' sole basis for objecting to these exhibits is their unsupported accusation that the United States, by including several documents or portions of documents in one exhibit, is "misrepresenting the meaning of each individual document and misleadingly attributing a common relationship among the multiple documents."  Objections at 3-4.  Defendants have no basis for this assertion and, more importantly, **Defendants' assertion has nothing to do with whether the documents in each exhibit are authentic.**  Moreover, Defendants' sole stated concern – irrelevant to authenticity – is itself negated in light of the fact that, in each instance where the United States combined documents or parts of a document into a single exhibit, the United States has specifically so noted in its responses to Defendants' Objections.  Defendants' Objections relating to alleged multiple documents are thus baseless and should be overruled.

33

       *f.*      *Authenticity Objections Relating to R.J. Reynolds's Improper*
              *Production to the United States of Documents Bearing Improper*
              *Dates*

Obviously, very little need be said in response to this objection.  Defendant R.J. Reynolds

objects to the United States' offering exhibits **exactly as they were provided to the United**

**States by Defendant R.J. Reynolds**, solely on the basis that R.J. Reynolds produced them to the

United States with incorrect date information.[85]  This objection boggles the mind.  How possibly

can R.J. Reynolds object to documents offered exactly as it provided them?  Also highly

significant is the fact that, in the months and/or years between R.J. Reynolds's production of

these documents to the United States with false date information and the filing of Defendants'

Objections, Defendants utterly failed to inform the United States' of R.J. Reynolds's provision of

documents with false date information.

Incredibly, R.J. Reynolds does not even now offer to provide corrected copies of its

documents that it contends somehow are erroneous.  To the extent that R.J. Reynolds alleges any

prejudice from its error, it now must suffer that prejudice in silence and without objection.  To

the extent that R.J. Reynolds or any other Defendant gains any advantage from R.J. Reynolds's

provision of false information to the United States, the Court should treat the document as if it

was in its original state, disregarding R.J. Reynolds's alteration thereto.

In addition to overruling R.J. Reynolds's objections with regard to these documents, the

Court should order R.J. Reynolds to provide copies of these documents to the United States that

contain accurate date information, and grant the United States leave to introduce such documents

as Trial Exhibits.  Moreover, the United States reserves its rights to seek further relief as a result

---

[85] Objections at 9-10.

of R.J. Reynolds's inappropriate conduct.

## III.   PRIVILEGE OBJECTIONS

### A.   Summary

Defendants have provided approximately 2,000 objections to United States' exhibits based on what Defendants claim to be "privilege objections." Order #470 allows the parties to file objections regarding any "privilege objections the Court has not yet ruled upon." Order #470 at 5. The majority of Defendants' objections fall outside the instructions of the Court as to what types of privilege objections are appropriate at this time, and none of Defendants' objections require action at this time by the Court.

### B.   Specific Categories of Objections

#### 1.   Compelled Release

More than half of Defendants' objections apply to what they refer to as "compelled release" documents. Defendants admit that these are not proper privilege claims under Order #470 when they explain that this objection applies to exhibits "where the claims of privilege and/or protection have been overruled and ordered released in this case." Defendants' Objections at 5. Obviously, there are no privilege objections still pending regarding this category of exhibits and Defendants' so-called privilege objections should be disregarded.

Defendants further argue with regard to their "compelled release" objections that they apply to any of the United States' exhibits ordered released in this case and "without the appropriate legend as ordered by Order #344," that each document be designated, "Privileged" or "Privileged: Compelled Release." Defendants' Objections at 5. Defendants appear to have misread Order #344, which amends Order #51 to read:

35

6.    *A party may*, after entry of an order compelling production of a document over the party's objection, where the objection is based on asserted claims of privilege or work product protection, and prior to production, affix to any such document(s) in a manner that will not interfere with its legibility the legend 'PRODUCED AS COMPELLED BY COURT ORDER # ___ IN U.S. V. PHILIP MORRIS ET AL., (Civil No. 99-CV-2496 (GK)).'  The appearance of a legend pursuant to this provision shall not constitute grounds for objecting to the authenticity of any document(s) so marked, nor shall it in any way otherwise affect the admissibility of any such document(s) in this case.

Order #344 at 1-2 (emphasis added).  It could not be more clear that Order #344 provides *the producing party* with the *option* to add a legend to the document at the time that the document is produced.  There is no obligation to add the legend to any document, and there is no instruction to the receiving party to add a legend to the produced document.  Such an instruction would defy common sense.  Thus, even were the Court to entertain Defendants' "compelled release" objections at this time, the objections must fail.  If Defendants chose not to avail themselves of the Court's instructions under Order #344, the United States is free to use those documents as produced and is under no obligation to do Defendants' work for them.

## 2.    Privilege Claim Pending Resolution of Challenge

Defendants also object to approximately 900 exhibits listed on the United States' exhibit list because the documents "have been challenged in this case but [] are currently pending before the Special Master and the Court for resolution."  Objections at 5.  Defendants assert that they "maintain their claims of privilege and/or protection on these documents."  The United States does not oppose Defendants' maintaining their claims of privilege and/or protection on documents pending review.  The United States has not produced these documents – indeed, they are not within the United States' possession – but has merely listed them on its exhibit list so that the United States would be able to present them to the Court should Defendants' privilege and/or

36

protection claims be denied by the Court and the documents be ordered produced in this case.

The United States requests that these exhibits remain on the United States' exhibit list, pending

resolution by the Court of privilege and/or protection claims.

3.    <u>Other Privilege Objections</u>

Defendants have provided objections to a small number of additional exhibits on the

grounds of attorney-client privilege, work product protection, defense privilege, privilege claim

sustained by the Court, and privileged (U.K.): legal-professional privilege.  Defendants claim that

these objections are based on privileges and/or protections that have been asserted by Defendants

and for which no challenge to overcome the privilege in this case has been made or for which

Defendants' claims have been upheld by the Court.  Defendants have not provided the United

States with the necessary information so that it can respond with detail as to any of these

objections at this time.

Specifically, Defendants have failed to supply any information whatsoever as to where or

when Defendants asserted any claim of privilege or protection over these documents, nor have

they referenced a single Court order that sustained privilege or protection assertions for any of

these documents.  The United States is fully prepared to abide by the Court's orders in this case.

However, given the large amount of work that is ongoing in this matter to prepare for trial on

September 13, 2004, it would be unreasonable to require the United States to hunt through the

voluminous record of privilege challenges in this case to either confirm or deny Defendants' as-

yet unsubstantiated assertions.  Should Defendants supplement these objections in any material

way, then the United States reserves all rights to respond.

37

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court overrule

Defendants' Authenticity and Privilege Objections to Plaintiff's Designated May 3, 2004 Trial

Exhibits, and enter the attached proposed order.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

_____
SHARON Y. EUBANKS (D.C. Bar No. 420147)
Director, Tobacco Litigation Team

_____
STEPHEN D. BRODY (D.C. Bar No. 459263)
Deputy Director, Tobacco Litigation Team

_____
RENÉE BROOKER (D.C. Bar No. 430159)
Assistant Director, Tobacco Litigation Team

Dawn Henry
David Klontz
James Nelson
Trial Attorneys, Tobacco Litigation Team

United States Department of Justice
Post Office Box 14524
Ben Franklin Station
Washington, DC  20044-4524
(202) 616-4185
Attorneys for Plaintiff
United States of America

Date: July 1, 2004

38