UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 99-2496 (GK) |
| v. ) | |
| ) | Next Scheduled Court Appearance: |
| PHILIP MORRIS USA INC. (formerly ) | August 12, 2004 |
| known as Philip Morris Incorporated), et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS ALTRIA GROUP, INC. AND PHILIP MORRIS USA INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF THEIR MOTION TO RECONSIDER ORDER #600**

**I.
Introduction**

In Order #600, this Court sanctioned Altria Group, Inc. and Philip Morris USA Inc. (collectively, the "Philip Morris Defendants") for the failure of certain Philip Morris USA employees to preserve email subject to preservation under Paragraph 7 of Order #1, First Case Management Order for Initial Scheduling Conference (the "Document Preservation Order"). The Philip Morris Defendants respectfully submit that the Court should reconsider and vacate Order #600 in order to prevent manifest injustice, for the following reasons:

- First, while it is true that "we do not know what has been destroyed" (Mem. Op. to Order #600 at 4), there is also no basis on which to *assume* that whatever was destroyed was relevant and probative of the Government's claims in this case. As set forth in *Zubulake v. UBS Warburg LLC,* 02 Civ. 1243 (SAS), slip op. at 21-22 (S.D.N.Y. July 20, 2004) (Exhibit "A"), a decision issued just one day before this Court issued Order #600: "A party seeking an adverse

inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." As discussed below, the Government has simply failed to meet this test.

- Second, Order #600 imposed a broad witness-exclusion sanction *not* requested by the Government and *not* addressed by the Philip Morris Defendants in their prior briefing. Specifically, the Court has excluded 11 Philip Morris USA employees from testifying at trial, even though the Government only requested and the Philip Morris Defendants only specifically addressed the exclusion of one, Peter Lipowicz. These additional excluded witnesses include three others besides Dr. Lipowicz on the Joint Defendants' trial witness list, including Philip Morris USA's Senior Vice President of Marketing, Nancy Lund. The record reflects that Ms. Lund was "not really an email user." 30(b)(6) Deposition of Michael T. Wallmeyer (Dec. 19-20, 2002) at 394.[1] But while "not really an email user," Ms. Lund is one of Philip Morris USA's chief witnesses for purposes of rebutting the Government's youth targeting allegations, which form a central part of the Government's case and underlie its $280 billion disgorgement claim. And given that this is a conspiracy case involving multiple defendants whom the Court has ruled will be jointly and severally liable for any disgorgement award, the exclusion of a witness such as Ms. Lund threatens to work an injustice with respect to not just the Philip Morris Defendants, but the defendants generally.

---

[1] The Wallmeyer deposition transcript was included as Exhibit 4 to the United States' Motion for Evidentiary and Monetary Sanctions Against Philip Morris USA and Altria Group Due to Spoliation of Evidence ("United States' Mot.").

This is a bench trial, at which the Court itself can assess and determine the credibility of witnesses such as Ms. Lund. The Philip Morris Defendants respectfully submit that rather than exclude the testimony of such witnesses in advance, a far better course for the Court to follow would be to allow them to testify and assess their credibility in the light of their overall testimony. Thus, at a minimum, the Court should vacate its witness-exclusion sanction in Order #600, particularly as it pertains to Nancy Lund.

In short, without seeking to excuse any failure to preserve email subject to the Document Preservation Order, there is nothing in the record to suggest that this failure was willful or has in any way undermined whatever ability the Government may have to prove its claims. Indeed, despite taking numerous depositions of Philip Morris USA employees after this issue was disclosed by Philip Morris USA, including a two-day 30(b)(6) deposition devoted to the topic, the Government has not even attempted to show that whatever email was lost likely would have been probative of its claims. Accordingly, Order #600 imposes sanctions that are grossly disproportional to any purported prejudice to the Government, and should be vacated to prevent manifest injustice.

## II.
## Factual Background

On November 25, 2003, the Government filed its Motion for Evidentiary and Monetary Sanctions Against Philip Morris USA and Altria Group Due to Spoliation of Evidence. In that motion, the Government requested certain adverse inferences against Philip Morris USA, to prevent Altria and Philip Morris USA from offering evidence of Philip Morris USA's compliance with the Master Settlement Agreement as a defense to the Government's claims, costs, a monetary sanction of $2,995,000, and to preclude Altria and Philip Morris USA from calling Peter Lipowicz as a fact or expert witness at trial. After briefing on the motion, the Court

entered Order #600 on July 21, 2004, in which it imposed the following sanctions on Altria and Philip Morris USA:

- Precluded them "from calling as fact or expert witnesses at trial any individual who has failed to comply with Philip Morris' own internal document retention program, including Peter Lipowicz and the ten other individuals identified by Philip Morris." Order #600 at 1.

- Required them "to pay a monetary sanction of $2,750,000 into the Court Registry no later than September 1, 2004." *Id.*

- Required them to "reimburse the United States, no later than September 1, 2004, in the amount of $5,027.48." *Id.* at 2.

The Philip Morris Defendants now move the Court to reconsider Order #600 on the grounds that the sanctions thus imposed should be vacated to prevent manifest injustice. As part of this motion, the Philip Morris Defendants commend for the Court's consideration the legal principles and analysis contained in *Zubulake v. UBS Warburg LLC,* 02 Civ. 1243 (SAS), slip op. (S.D.N.Y. July 20, 2004) (Exhibit "A").

### III.
### Argument

"A motion for reconsideration 'should be granted only if the Court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Philip Morris USA, Inc.,* 220 F.R.D. 109, 112 (D.D.C. 2004 (quoting *Pearson v. Thompson,* 141 F. Supp. 2d 105, 107 (D.D.C. 2001) (additional citations and internal quotation marks omitted). As set forth below, Order #600 should be vacated to prevent manifest injustice. First, Order #600 should be vacated in its entirety because the Government has failed to make the showing required to obtain any sanctions

whatsoever. Second, the Court should vacate its witness-exclusion sanction in Order #600, particularly as it pertains to Nancy Lund, because it is highly prejudicial to the Philip Morris Defendants and the defendants generally, and grossly disproportional to any alleged harm caused to the Government.

> **A.    Order #600 Should Be Vacated In Its Entirety Because The Government Has Failed To Make The Showing Required To Obtain Any Sanctions Whatsoever**

The Court has found some employees of Philip Morris USA failed to print and retain email subject to the Document Preservation Order in compliance with the company's document retention policy before such email was deleted during the periodic system deletions undertaken to ensure that Philip Morris' email system could continue to operate. Indeed, Philip Morris USA voluntarily disclosed that some email which had been so deleted was likely subject to the Document Preservation Order. *See* Letter dated June 19, 2002 from Thomas J. Frederick to Hon. Gladys Kessler.[2] But however regrettable these facts might be, the Government has failed to establish an evidentiary basis for the imposition of sanctions against the Philip Morris Defendants.

This can best be seen by reviewing *Zubulake v. UBS Warburg LLC,* 02 Civ. 1243 (SAS), slip op. (S.D.N.Y. July 20, 2004) (Exhibit "A"). In setting forth the legal principles that should govern the imposition of sanctions for the spoliation of evidence, the *Zubulake* court stated:

> The spoliation of evidence germane "to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

---

[2]    Included as Exhibit 1 to United States' Mot.

>In this circuit, a "culpable state of mind" for purposes of a spoliation inference includes ordinary negligence. When evidence is destroyed in bad faith (*i.e.*, intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions.
>
>In the context of a request for an adverse inference instruction, the concept of "relevance" encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant. "This corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." This is equally true in cases of gross negligence or recklessness; only in the case of *willful* spoliation does the degree of culpability give rise to a presumption of the relevance of the documents destroyed.

*Zubulake*, slip op. at 22-23 (emphasis in original; footnotes omitted).

Applying these principles, the *Zubulake* court imposed sanctions on the defendant for spoliation of evidence, but under factual circumstances dramatically different than those here. First, the plaintiff in *Zubulake* made substantial efforts to demonstrate that email lost in that case was actually probative of her claims. *See Zubulake,* slip op. at 10-11, 13-20. Second, the court in *Zubulake* found "that UBS acted willfully in destroying potentially relevant information, which resulted either in the absence of such information or its tardy production . . . . Because UBS's spoliation was willful, the lost information is presumed to be relevant." *Zubulake,* slip op. at 38-39.

Unlike *Zubulake*, the Government in this case has made no effort whatsoever to prove that any email deleted by Philip Morris USA would have been probative of its claims, and there is no reason whatsoever to *assume* that it would have been. The simple fact that nobody knows what email was lost is not, by itself, sufficient to justify the imposition of sanctions -- particularly sanctions as severe as those contained in Order #600.

Nor did the Government attempt to show, or the Court find, that the failure of some Philip Morris USA employees to print and retain email was willful, and there is no evidence to support such a finding. Indeed, what happened involved at most *negligence*: certain Philip Morris USA failed to print and retain email in their computers, which resulted in the loss of that email when periodic system deletions were performed to clean up the system. None of the employees in question took any affirmative act to destroy email; it was their failure to print and retain that resulted in its loss.

The *Zubulake* court held that in cases of negligence, or even gross negligence or recklessness, there can be no presumption made that "the destroyed evidence would have been favorable to the movant," thus justifying the imposition of sanctions. *Zubulake*, slip op. at 22-23 (footnote omitted). "[O]nly in the case of *willful* spoliation does the degree of culpability give rise to a presumption of the relevance of the documents destroyed." *Id.* at 23 (emphasis in original; footnote omitted).

Again, the facts pertaining to Philip Morris USA's lost email, however regrettable, simply do not support a finding of willfulness. Further, while the *Zubulake* decision is not controlling law for this Court, the Philip Morris Defendants respectfully submit that its thorough reasoning, and the direct relevance of the legal principles it enunciates to the facts presented here, makes it persuasive authority that should guide this Court's decision.[3] Accordingly, the Philip Morris Defendants respectfully submit that the Court should reconsider and vacate Order #600 in its entirety.

---

[3] The law governing the imposition of sanctions for the destruction of email is in a state of flux and development. Judge Shira A. Scheindlin, who authored the attached decision and prior decisions in *Zubulake* addressing the topic, is a member of the Advisory Committee on the Federal Rules of Civil Procedure working to develop new rules provisions to govern the issue. Her ruling in *Zubulake* is generally in accord with the Committee's recent recommendations for proposed amendments to the Federal Rules of Civil Procedure on the law of spoliation of electronic evidence. *See generally* Report of the Civil Rules Advisory Committee (May 17, 2004)

7

**B.     At A Minimum, Order #600's Witness-Exclusion Sanction Should Be Vacated To Permit Nancy Lund And Others To Testify At Trial**

Among the sanctions the Government requested in its motion was the exclusion of "Peter J. Lipowicz, Ph.D. as a fact or expert witness at trial."  United States' Mot., Proposed Order. Among the sanctions the Court imposed in Order #600 was the exclusion as a fact or expert witness at trial of "any individual who has failed to comply with Philip Morris' own internal document retention program, including Peter Lipowicz and the ten other individuals identified by Philip Morris."  Order #600 at 1.

This witness-exclusion sanction, which goes far beyond what the Government even requested, should be vacated.  As explained above, not only was the individual conduct involved negligent at most,[4] such that no sanction whatsoever should be imposed affecting such individuals,[5] but the Philip Morris Defendants never had an opportunity to address this possible sanction in the briefing leading up to Order #600.  Where a defendant is "given neither notice nor opportunity to be heard" to address severe sanctions that "even [plaintiff] did not request," a district court abuses its discretion by "fail[ing] to display . . . prudence and discretion." *Hathcock v. Navistar Int'l Transp. Corp.,* 53 F.3d 36, 41-42 (4th Cir. 1995).  Thus, the fact alone that this sanction was not previously contemplated or addressed by the parties before it was imposed requires that it be vacated.

---

pp. 52-58.  In any event, the developing nature of the law cautions against the imposition of severe sanctions for the loss of email such as those contained in Order #600.

[4]     Certainly, the Government has submitted no evidence to establish that the individuals in question engaged in grossly negligent or reckless, much less willful, conduct.  Again, all that they did *individually* was fail to print and retain email as required by Philip Morris USA's document retention policy, which was later lost as part of periodic system deletions; they did not themselves *destroy* documents.  Thus, their individual conduct can be characterized, at most, as nothing more than negligent.

[5]     The Memorandum Opinion to Order #600 states:  "Philip Morris identified eleven corporate managers and/or officers who failed to comply with the 'print and retain' policy.  Each individual is being sanctioned in the amount of $250,000."  Order #600 at 7 n.1.  Because there is no basis for individual sanctions, and Order #600 imposes the obligation to pay the monetary sanction of $2,750,000 on the Philip Morris Defendants, the Philip Morris Defendants respectfully request that this footnote be deleted from the Memorandum Opinion to Order #600, regardless of the ruling on this motion.

The witness-exclusion sanction is also unjustified because this is a bench trial. As one appellate court noted in a case where witnesses were excluded from testifying, "the better course in this bench trial would have been to hear the testimony." *Easley v. Anheuser-Busch, Inc.*, 758 F.2d 251, 257-58 (8th Cir. 1985).[6] The court sitting as trier of fact is uniquely suited to assess the credibility of a witness and the relevance of the witness' testimony in light of all the surrounding evidence -- including, here, whatever impact a witness' failure to print and retain email as required by company policy might have on that witness' credibility (or whether that fact is even relevant at all).[7] Indeed, a witness-exclusion sanction presents a risk of reversible error that is better avoided by permitting the testimony. *See, e.g., Builders Steel Co. v. Comm'r of Internal Revenue*, 179 F.2d 377, 379 (8th Cir. 1950).

That risk is substantial here. Of the 11 individuals who would be expressly excluded from testifying at trial under Order #600, four are on Joint Defendants' trial witness list: Hector Alonso, Peter Lipowicz, Nancy Lund, and Ellen Merlo. *See* Joint Defendants' Amended Trial Witness List (Exhibit B). The unfairness of this sanction is particularly clear with respect to Nancy Lund, who is Philip Morris USA's Senior Vice President of Marketing. Ms. Lund is one of Philip Morris USA's chief witnesses for purposes of rebutting the Government's youth targeting allegations (*see* Joint Defendants' Amended Trial Witness List at 23), which form a

---

[6] *See also Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 905 (3d Cir. 1977) (noting with respect to the exclusion of a witness that "[i]t would have been entirely appropriate for the district court to impose reasonable sanctions on Meyers . . . but we believe a less drastic sanction [than exclusion], especially since it was a bench trial, should have been adopted"), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).

[7] *See, e.g.*, *In re Unisys Savings Plan Litig.*, 173 F.3d 145, 164 n.6 (3d Cir. 1999) (Becker, C.J., dissenting) (finding it "preferable [in a bench trial] for the trial judge to listen to the witness and keep his or her mind open to the possibility that the entirety of the witness's trial testimony could change his or her view of the witness's credibility."); *Smith v. Haden*, 872 F. Supp. 1040, 1047 (D.D.C. 1994) (rejecting motion to strike where "[t]he Court is competent to [determine the helpfulness of expert's testimony] even if a jury might not be. While the Court disagrees with Mr. Gill's opinion . . . the Court finds that the testimony was helpful"); *Joshi v. Professional Health Servs., Inc.*, Nos. 83-1073 to 83-1075, 1987 WL 13367, at *1 (D.D.C. June 24, 1987) (court permitted plaintiff to testify at trial, despite request for discovery sanctions, and later "specifically commented on the plaintiff's discovery abuse and false testimony").

9

central part of the Government's case and underlie its $280 billion disgorgement claim. Given that this is a conspiracy case in which the Court has held that the defendants are jointly and severally liable for any disgorgement award, the exclusion of a witness such as Ms. Lund -- without any showing or basis on which to assume that any email she might have failed to preserve was probative of the Government's claims -- is grossly disproportional to any possible harm caused to the Government. Whatever sanctions might otherwise be justified for the Philip Morris Defendants, nothing could justify the prejudicial impact that the exclusion of a witness such as Ms. Lund might have on other defendants by undermining the overall defense case.

At the same time, the record is devoid of anything to suggest that Ms. Lund conducted substantial work using email, much less failed to print and retain email that was later lost but would have been probative of the Government's claims if preserved. While the Government had abundant opportunities to develop evidence in this regard, here is the entirety of what it established with respect to Ms. Lund's individual email practices:

> Q. Why was Nancy Lund's included in that group then?
>
> A. Because, according to Frank Thomas, Nancy Lund's assistant was the individual who handled most of her email, that Nancy Lund was not really a computer user.

30(b)(6) Deposition of Michael T. Wallmeyer (Dec. 19-20, 2002) at 136-137.

> Q. Who is Mike Pfeil?
>
> A. My recollection is he is vice president of public and community relations, public and community relations, I think.
>
> Q. Do you know whether he uses email in the course of his work?
>
> A. I assume that he does.
>
> Q. Is your assumption the same for the remaining persons that we haven't discussed of the 11 on the list?

>       A.      Yes, with the possible exception of Nancy Lund, whom I understand is not really an email user.

*Id.* at 394.

The choice of sanctions should be guided by the "concept of proportionality" between offense and sanction. *Shea v. Donohoe Construction Co.,* 795 F.2d 1071, 1077 (D.C. Cir. 1986). In a bench trial involving a $280 billion disgorgement claim, multiple defendants, allegations of a decades-long conspiracy, and a requirement that the Government establish a reasonable likelihood future RICO violations before it can obtain any relief whatsoever, the exclusion as trial witnesses of employees for the lead defendant -- Philip Morris USA -- cannot be justified. This is particularly true where those employees were, at most, negligent for failing to print and retain their email as required by company policy, and the Government made no effort whatsoever to show that any such email which was later lost would have been probative of its claims in this case. *A fortiori*, this conclusion applies to the exclusion of Nancy Lund, a chief witness on critical issues in this case whom, the record shows, is "not really an email user." 30(b)(6) Deposition of Michael T. Wallmeyer (Dec. 19-20, 2002) at 394.

In sum, "[t]he central requirement of Rule 37 is that 'any sanction be 'just[.]' ' " *Bonds v. District of Columbia,* 93 F.3d 801, 808 (D.C. Cir. 1996) (quoting *Insurance Corp. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707 (1982)). As set forth above, the Philip Morris Defendants respectfully disagree that any sanction is warranted under the facts presented. But the witness-exclusion sanction contained in Order #600 in particular cannot be characterized as "just," especially with respect to Nancy Lund. Instead, it would give the Government a windfall benefit to which it is entirely unentitled. Accordingly, Order #600's witness-exclusion sanction should be vacated to avoid a manifest injustice.

## IV.
## Conclusion

For the foregoing reasons, the Philip Morris Defendants respectfully request that the Court reconsider and vacate Order #600 in order to prevent manifest injustice.

DATED:  August 4, 2004                    Respectfully submitted,

/s/ Matthew A. Campbell *for*
Timothy M. Broas (D.C. Bar No. 391145)
WINSTON & STRAWN LLP
1400 L Street, N.W.
Washington, D.C. 20005-3502
Telephone: (202) 371-5700
Fax:  (202) 371-5950

Dan K. Webb
Thomas J. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-6700
Fax:  (312) 558-5700

Theodore V. Wells, Jr. (D.C. Bar No. 468934)
James L. Brochin (D.C. Bar No. 455456)
PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Fax:  (212) 757-3990

Attorneys for Defendants
Altria Group Inc. (f/k/a Philip Morris Companies Inc.) and Philip Morris USA Inc. (f/k/a Philip Morris Incorporated)