UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 99-CV-2496 (GK) |
| | ) | |
| v. | ) | Next Scheduled Court Appearance: |
| | ) | September 2, 2004 |
| PHILIP MORRIS USA INC. (f/k/a | ) | |
| PHILIP MORRIS INCORPORATED), et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS'[1] REPLY TO THE UNITED STATES' OPPOSITION TO DEFENDANTS' AUTHENTICITY AND PRIVILEGE OBJECTIONS TO PLAINTIFF'S DESIGNATED JULY 1, 2004 SUPPLEMENTAL TRIAL EXHIBITS**

## I. INTRODUCTION

The United States' Opposition to Defendants' Authenticity and Privilege Objections to Plaintiff's Designated July 1, 2004 Supplemental Trial Exhibits ("Plaintiff's Opposition" or "Pl. Opp.") is the most recent demonstration of: (1) Plaintiff's inadequate preparation of exhibits for trial; (2) Plaintiff's refusal to take responsibility for and to correct those inadequacies; and (3) Plaintiff's lack of interest in working cooperatively with Defendants to resolve outstanding problems. Plaintiff failed to satisfy the requirements of Orders #51, #470 and #508 in preparing its July 1, 2004 supplemental exhibits. Rather than work with Defendants to resolve issues concerning the objections, Plaintiff complains about the quantity of Defendants' objections and attempts to avoid responsibility by, among other things, arguing case law without applying it to the specific objections lodged. Plaintiff's Opposition is practically a verbatim recitation of

[1] All Defendants join in this reply.

United States' Opposition to Defendants' Authenticity and Privilege Objections to Plaintiff's Designated May 3, 2004 Trial Exhibits ("Plaintiff's July 1, 2004 Opposition"), filed on July 1, 2004, and it contains the same posturing and unsupported arguments. Plaintiff's Opposition also fails to consider Defendants' many and substantial efforts during the interim 40 days to assist Plaintiff in remedying its deficient exhibits to resolve the majority of Defendants' authenticity and privilege objections. The Court should sustain Defendants' objections and order Plaintiff to provide exhibits that comply with the Federal Rules of Evidence and orders of this Court and, where appropriate, accept Defendants' submission of clean, complete copies. See infra Section IV(C).

Since Plaintiff's Opposition its almost identical to Plaintiff's July 1, 2004 Opposition, Plaintiff's arguments on these issues already have been responded to and refuted by Defendants. See Appendix A, Defendants' Reply to the United States' Opposition to Defendants' Authenticity and Privilege Objections to Plaintiff's Designated May 3, 2004 Trial Exhibits ("Defendants' July 16, 2004 Reply"). To avoid simply repeating in this Reply the arguments contained therein, Defendants incorporate the responses contained in Defendants' July 16, 2004 Reply. To the extent facts differ in this instance, Defendants address those facts below.

## II. PROCEDURAL HISTORY[2]

On July 1, 2004, Plaintiff produced its supplemental exhibits and accompanying supplemental exhibit list. On July 23, 2004, Defendants served their objections to Plaintiff's July 1, 2004 supplemental exhibits. On July 23, 2004, Defendants also sought from Plaintiff information about two groups of documents related to Plaintiff's supplemental exhibit

[2] The procedural history of Plaintiff's February 17, 2004 and May 3, 2004 exhibit productions are set forth in Section II of Defendants' July 16, 2004 Reply. See Appendix A.

production: (1) documents included in Plaintiff's hard copy exhibit sets that were not included on Plaintiff's exhibit list, and (2) documents identified on Plaintiff's exhibit list for which no hard copy exhibit was provided. See Appendix B, Letter from Redgrave to Brody of 7/23/04. To assist Plaintiff, Defendants included, with their July 23, 2004 letter, lists identifying which U.S. Exhibits fell into each category. Plaintiff, however, only provided additional information for three of the 213 documents Defendants identified. See Appendix C, Letter from Brody to Redgrave of 8/3/04. Rather than providing substantive responses to Defendants' inquiries about its supplemental exhibits, Plaintiff attempted to add over 300 new supplemental exhibits. Id. Plaintiff attempted to add this large number of new supplemental exhibits despite the fact that it was thirty-four (34) days after the deadline set forth in Order No. 470.[3] Id. Plaintiff did not seek leave of Court to add new exhibits and did not even fully reveal the extent and scope of its late additions.[4] Id. On August 9, 2004, Defendants notified Plaintiff that Plaintiff should seek leave

[3] Plaintiff's attempted untimely addition of over 300 exhibits is perplexing. When Joint Defendants requested an extension of the deadline for filing the supplemental trial exhibit lists, Plaintiff opposed the motion to extend the deadline, rejecting Joint Defendants' argument that simultaneously preparing the Final Proposed Findings of Fact and the supplemental exhibit lists was grounds for an extension:

> The task of preparing supplemental exhibit lists and exhibits should proceed toward completion simultaneously with the Final Proposed Findings of Fact--when a document not on Defendants' June 1, 2004 exhibit list is cited, it should be immediately added to the supplementary exhibit list for exchange on July 1, 2004.

(United States' Memorandum in Opposition to Defendants' Motion for an Extension of Time for the Parties to Serve Supplementary Exhibit Lists and Exhibits at 2.) It is remarkable that Plaintiff now attempts to add 115 new exhibits cited in its Final Proposed Findings of Fact, the precise error of omission that Defendants' motion addressed but Plaintiff opposed.

[4] The exhibit list Plaintiff provided with its August 3, 2004 letter included over 300 new supplemental exhibits. Plaintiff's letter, however, addressed only those new exhibits cited in the United States' Final Proposed Findings of Fact ("FPFOF") omitted from Plaintiff's July 1, 2004 supplemental trial exhibit submission. Of the more than 300 exhibits Plaintiff attempted to add, only 115 exhibits fall into the FPFOF category. The origins of the remaining newly added exhibits were not addressed in Plaintiff's August 3, 2004 letter. The newly added exhibits Plaintiff did not mention, but nonetheless included on an attached exhibit list, were well known exhibits from Plaintiff's original February 17, 2004 exhibit list that were not included on Plaintiff's subsequent final May 3, 2004 exhibit list or July 1, 2004 supplemental exhibit list. Defendants discovered these "new" exhibits only upon performing their own analysis of the attachment to Plaintiff's August 3, 2004 letter and comparing the listings to Plaintiff's May 3 and July 1 trial exhibit submissions.

of Court to add the over 300 new exhibits designated thirty-four (34) days after the Court-ordered deadline. Defendants also reiterated their inquiry about the remaining 210 documents identified in their July 23, 2004 letter. See Appendix D, Letter from Redgrave to Brody of 8/9/04. On the same date, Plaintiff served its opposition to Defendants' objections to the supplemental exhibits. Plaintiff still has not specifically addressed Defendants' inquiry about the 210 documents.

In preparing this Reply, Defendants have once again reviewed Plaintiff's supplemental trial exhibits and Defendants' objections thereto to resolve as many objections as possible. As a result, Defendants file herewith revised objections that reflect the withdrawal of certain objections previously submitted. In addition, Defendants (i) file authenticity and privilege objections on several "new" entries to Plaintiff's supplemental exhibit list where Plaintiff previously provided the hard copy exhibit but did not originally list the document on its supplemental list, and (ii) withdraw the "missing exhibit objection" and file authenticity and privilege objections to the few previously missing trial exhibits that have now been provided by Plaintiff. See Appendix E, Defendants' Revised August 23, 2004 Authenticity and Privilege Objections to Plaintiff's Designated July 1, 2004 Supplemental Trial Exhibits ("Defendants' Revised Objections").

## III. OVERVIEW OF DEFENDANTS' OBJECTIONS

While the production of documents from a party's files may be a factor to consider in determining authenticity, it is axiomatic that a finding of authentication is not appropriate if the proposed trial exhibit is not the document produced from a party's files or an exact duplicate of such document. Here, Defendants have objected to some Plaintiff's exhibits on authenticity grounds because the exhibits contain unrecognized marginalia or writing, deleted or added pages, or are otherwise incomplete such that the proposed exhibits are not authentic.

Plaintiff complains Defendants have raised "robotic" objections" to 724 of Plaintiff's 3,408 supplemental trial exhibits that are "insufficient to meet the requirements of the Federal Rules of Evidence," and that have been "interjected only in an effort by Defendants to occupy the Court with irrelevant matters as the Court and the parties prepare for trial." (Pl.'s Opp'n at 1-3.) Plaintiff's assertions regarding the number and specificity of Defendants' authenticity objections are not well founded.

A more comprehensive overview of the applicable standards governing objections is set forth in Defendants' July 16, 2004 Reply at Section III. See Appendix A. The number of Plaintiff's supplemental exhibits that are subject to objection by Defendants arises from the magnitude of Plaintiff's exhibit list and Plaintiff's poor preparation of its exhibits. Moreover, Defendants' objections can be grouped such that there are essentially only six basic types of authenticity and/or privilege objections, many of which require little or no action by the Court to resolve. These groups of authenticity and/or privilege objections are as follows.

1. Defendants asserted objections to exhibits that have or appear to have been altered from the original document as produced by a Defendant.[5] The altered documents include incomplete and illegible documents, documents with marginalia of unknown origin and documents with various other alterations. These 287 objections (approximately 40% of the total objections) are addressed in Section IV. Defendants assert these objections may be easily resolved by the substitution of clean, complete copies in accordance with Order #51.[6]

---

[5] These objections include: Altered - Marginalia; Altered - Interlineations and/or Underlining; Altered - Receipt Stamp; Altered - Fax Lines; Altered - Added Coversheets Or Other Pages; Altered - Cut-Off Page(s); Altered - Incomplete Document Obtained From Third Party Source; Altered - Other; Illegible; Incomplete or Missing Document - Missing Page(s); Incomplete or Missing Document - Partial Document; Incomplete or Missing Document - Other.

[6] On August 9, 2004, in accordance with Defendants July 16, 2004 Reply, Defendants hand-delivered to Plaintiff clean, complete copies of numerous trial exhibits listed on Plaintiff's May 3 trial exhibit list on which altered,

(continued…)

2. Defendants noted a "compelled release" objection to facilitate appellate issues concerning certain exhibits, to assist in asserting privilege objections, and to defend against waiver arguments for exhibits on which claims of privilege and/or protection have been overruled and ordered released in this case.[7] These 113 "compelled release" objections (just under 16% of the total objections) are addressed in Section V. These objections require no action by the Court if Plaintiff substitutes replacement exhibits, as necessary, stamped with the appropriate legend as produced by Defendants in accordance with Orders #344 and #409. See infra Section V.

3. Defendants asserted a "missing exhibit" objection to exhibits for which a hard copy exhibit was not provided in accordance with Order #470. These 125 objections (just over 17% of the total objections) are addressed in Section VI. This objection is simply a reservation of the right to file authenticity and/or privilege objections at such time as Plaintiff provides actual copies of those missing exhibits.

4. Defendants asserted objections to exhibits consisting of advertisements that Plaintiff submitted *without* a clean, complete copy of the publication in which the advertisement was published or other authenticating evidence sufficient to verify the advertisement was actually published in the identified publication.[8] As addressed in Section VII, these 105 objections (just under 15% of the total objections) may be resolved without reviewing each exhibit individually. Moreover, Plaintiff's compliance with Order #51.III.D.4.c will obviate the

---

illegible, and/or missing and partial document objections were lodged. See Appendix D, Letter from Redgrave to Brody of 8/09/04. Plaintiff has not acknowledged this delivery, nor has Plaintiff agreed to accept the replacement copies. There should be no question Plaintiff should be required to use the replacement exhibits.

[7] See Defs.' Objections and Defs.' Revised Objections stating "Deny Privileged: Compelled Release."

[8] See Defs.' Objections and Defs.' Revised Objections stating "Deny Authenticity: Advertisement - Incomplete Publication."

need for any action by the Court to resolve these objections.

5. Defendants asserted objections to exhibits for which Defendants cannot establish the genuineness, true identity, and/or cannot confirm the origin of the document.[9] These 44 objections (approximately 6% of the total objections) are addressed in Section VIII and will require a determination of authenticity by the Court.

6. Defendants asserted objections to exhibits comprised of combinations of several distinct documents (sometimes from different entities including third parties).[10] These 45 objections (approximately 6% of the total objections) are addressed in Section IX and will require a determination of authenticity by the Court.

## IV. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF ALTERED, ILLEGIBLE AND INCOMPLETE EXHIBITS

As a requirement for the admission of evidence, the proponent must authenticate evidence such that the trier of fact can find that the matter in question is what the proponent purports it to be. Fed. R. Evid. 901(a). Pursuant to Order #51, documents may be either "deemed" or "presumed" authentic.[11] Documents deemed authentic may not be objected to on authenticity grounds.[12] Order #51 also makes clear that for a document to be treated as either "deemed" or "presumed" authentic, the most complete copy of the document must be provided. Order #51.III.D.4.c.

---

[9] See Defs.' Objections and Defs.' Revised Objections stating "Deny Authenticity: Genuineness - Disputed Document."

[10] See Defs.' Objections and Defs.' Revised Objections stating "Deny Authenticity: Multiple Documents . . . ."

[11] See Order #51.III.D.2.

[12] Classes of documents deemed authentic under Order #51 are: "(i) Any documents as to which the United States or a Defendant asserts or has asserted a privilege from disclosure in this case or any other; (ii) Any documents that were admitted into evidence in this case or any other case where the United States or any Defendants in this case were a party; (iii) Official transcripts of Congressional hearings; and (iv) Final Official Reports issued by the Surgeon General of the United States." Order #51.III.D.2.a.

As noted above, approximately 40% of the exhibits to which objections were asserted were objected to because the copies designated by Plaintiff were altered in some fashion from the documents as produced. There are three categories of such alterations: (1) the exhibit has extraneous markings or additions (including facsimile lines, marginalia, added pages, etc.); (2) portions of the exhibit are not legible; or (3) the exhibit is incomplete, missing pages, or has text cut-off. These deficiencies negate reliability, but they can be resolved by Plaintiff's compliance with Order #51.III.D.4.c.

**A. Defendants Object To Designation of Documents Altered After Production**

Plaintiff alleges that the extraneous markings on the documents are either inconsequential, even where the change is to the text of the document,[13] or are attributable to company employees.[14] It is unclear how an alteration to the text of a document could be either inconsequential or irrelevant. Without further proof, an altered exhibit certainly is not what the document purports to be. Moreover, Plaintiff's assertion that any alterations are immaterial[15] is incorrect since Defendants do not yet know the purpose for which Plaintiff intends to offer each exhibit. Plaintiff's contention that the extraneous markings are attributable to company employees cannot be supported. As noted in Defendants' Objections, this objection was lodged where the designated exhibit was, or appears to have been, altered from the original document.[16] Markings on the face of the document made by company employees are not "alterations" within

---

[13] Pl.'s Opp'n, Attach. A at ¶ 17, providing "Any additions or alterations, including to the text on the exhibit, do not affect the authenticity, relevance, or substance of the exhibit."

[14] Pl.'s Opp'n at 30.

[15] See Pl.'s Opp'n at 30.

[16] Defs' Objections at 2.

the meaning of Defendants' objections.[17] A more comprehensive analysis of Defendants' objections to altered documents is set forth in Defendants' July 16, 2004 Reply at Section IV(A). See Appendix A.

**B. Defendants Object To Plaintiff's Designation of Illegible And Incomplete Exhibits**

Plaintiff makes much ado about Defendants' objections to illegible, incomplete, or partial documents and contends that such objections are not proper authenticity objections.[18] Plaintiff's contention is in conflict with both Fed. R. Evid. 106 and the plain language of Order #51. In this case, completeness is required for a document to be deemed or presumed authentic. A more comprehensive analysis of Defendants' objections to illegible and incomplete documents is set forth in Defendants' July 16, 2004 Reply at Section IV(B). See Appendix A.

**C. Defendants' Proposed Solution For Remedying Objections To Altered, Illegible, Or Incomplete Company Bates-Numbered Documents**

Despite the number of Plaintiff's exhibits that are altered, illegible, or incomplete, Defendants believe their objections can be resolved if Plaintiff substitutes the clean and complete copies to be provided by Defendants. Even though it is Plaintiff's responsibility to substitute, Defendants—with trial rapidly approaching and little time remaining to again re-review exhibits for completeness—will supply Plaintiff with a set of unaltered, legible and complete copies of the exhibits produced by Defendants bearing Defendants' Bates numbers that are listed in

---

[17] Plaintiff's exhibits were reviewed and objections were revised withdrawing any "altered" objection asserted in error where extraneous markings existed on the original document. These revisions are reflected in Defendants' Revised Objections. See Appendix E.

[18] Pl.'s Opp'n at 32-33.

Appendix F so that Plaintiff can replace the objectionable exhibits.[19] Defendants will provide the clean, complete copies by September 2, 2004. Defendants maintain their objections[20] to these incomplete, illegible, and altered documents until such time as Plaintiff substitutes the exhibits either voluntarily or as a result of Court order.

Defendants also continue to maintain their objections[21] to documents not listed on Appendix F, i.e., those exhibits that are not Defendant documents which are illegible, altered or incomplete for which Defendants cannot provide a clean and complete copy, until such time as Plaintiff provides complete copies of these documents pursuant to Order #51.III.D.4.c.

## V. DEFENDANTS' COMPELLED RELEASE OBJECTIONS

Defendants note a "compelled release" objection to 113 exhibits. This objection, identified as "Privileged: Compelled Release," is two-fold. First, it is noted to facilitate appellate review concerning these privileged documents and to assist in asserting privilege objections and defend against waiver arguments in other cases. This part of the compelled release objection does not require resolution by the Court, nor does the objection infringe upon

[19] On August 9, 2004, Defendants provided clean, complete copies of identified Plaintiff's May 3, 2004 trial exhibits on which Defendants lodged altered, illegible or incomplete objections. While Defendants assumed Plaintiff's burden to efficiently resolve these objections without the need for controversy, Plaintiff has failed to acknowledge this effort or to agree to resolve these objections by using the substituted exhibits. Instead, Plaintiff, in its opposition to Defendants' objections to the supplemental exhibits, continues to excoriate Defendants for needless objections "interjected only in an effort by Defendants to occupy the Court with irrelevant matters." It is difficult to comprehend Plaintiff's characterization of Defendants' actions when Plaintiff accepts none of its obligations under Orders #51 and #470 and fails to agree to work with Defendants to resolve issues that need not be addressed by the Court.

[20] The objections maintained are: Altered - Marginalia; Altered - Interlineations and/or Underlining; Altered - Receipt Stamp; Altered - Fax Lines; Altered - Added Coversheets Or Other Pages; Altered - Cut-Off Page(s); Altered - Incomplete Document Obtained From Third Party Source; Altered - Other; Illegible; Incomplete or Missing Document - Missing Page(s); Incomplete or Missing Document - Partial Document; Incomplete or Missing Document - Other.

[21] The objections maintained are: Altered - Marginalia; Altered - Interlineations and/or Underlining; Altered - Receipt Stamp; Altered - Fax Lines; Altered - Added Coversheets Or Other Pages; Altered - Cut-Off Page(s); Altered - Incomplete Document Obtained From Third Party Source; Altered - Other; Illegible; Incomplete or Missing Document - Missing Page(s); Incomplete or Missing Document - Partial Document; Incomplete or Missing Document - Other.

Plaintiff's ability to use these exhibits at trial. Second, the compelled release objection is asserted where Plaintiff has not used those copies of the documents, that Defendants were ordered to produce, that were stamped with the appropriate legend. Should Plaintiff refuse to replace the copies of those documents with copies bearing the appropriate legends, Defendants reserve the right to provide substitute copies stamped with the appropriate compelled release legend. A more comprehensive analysis of Defendants' compelled release objection is set forth in Defendants' July 16, 2004 Reply at Section V. See Appendix A.

## VI. DEFENDANTS RESERVE ALL OBJECTIONS TO MISSING EXHIBITS

Defendants reserve all objections to exhibits identified on Plaintiff's July 1, 2004 supplemental exhibit list for which Plaintiff failed to provide a hard copy of the document pursuant to the terms of Orders #470 and #508. The list of 125 missing exhibits to which all objections are reserved is attached at Appendix G. As this "objection" is the reservation of rights to file authenticity objections in the future, no Court resolution is necessary at this time.

## VII. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF ADVERTISEMENTS WITHOUT A CLEAN, COMPLETE COPY OF THE PUBLICATION IN WHICH THE ADVERTISEMENT WAS PUBLISHED[22]

Among Plaintiff's exhibits are approximately 105 Tier 1 exhibits Plaintiff purports are cigarette advertisements placed by various Defendants in magazines over a period spanning more than fifty years. The cover pages of the magazines in which the advertisements allegedly ran are included with most advertisements designated as exhibits. Although Plaintiff does not state how it intends to use these exhibits at trial, Defendants assume Plaintiff is going to attempt to show that Defendants were advertising cigarettes to youth based on the age distribution of the readership of the magazines in which the advertisements purportedly ran.

[22] This objection is asserted on 105 U.S. Exhibits. See Appendix H.

Plaintiff correctly notes that, as a general matter, newspapers and periodicals are self-authenticating documents under the Federal Rules of Evidence. However, Plaintiff has not included the periodicals in which the cigarette brand advertisements appeared.

The only way the advertisements can properly be judged is in the context of the overall content of the magazine, including the editorial content—i.e., the types of articles featured in the magazine—as well as the other advertising carried in those same magazines. Defendants agree that if the entire periodical is presented, the periodical will be self-authenticating. Without such context, the exhibits listed by Plaintiff are misleading and objectionable based on an authenticity objection or a Fed. R. Evid. 106 completeness objection.[23] The advertisements cannot properly be judged in the isolation by which Plaintiff seeks to submit them. By failing to provide the entire magazine, Plaintiff both relies on evidence not properly authenticated and improperly shifts the burden to identify source material to assess the reliability of the summary exhibit to Joint Defendants.[24] This burden should not be shifted. Plaintiff should be ordered to produce the entire periodical. Defendants' comprehensive analysis regarding objections to advertisements is set forth in Defendants' July 16, 2004 Reply at Section IX. See Appendix A.

## VIII. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF EXHIBITS OF UNKNOWN ORIGIN

Defendants asserted an "Authenticity: Genuineness - Disputed Document" objection for

[23] Order #51 similarly requires parties to provide "the most complete copy of a document." Order #51.III.D.4.c. Failure to comply with subsection (4)(c) defeats the presumption of authenticity in this case and, therefore, requires proper authentication pursuant to Fed. R. Evid. 901. Defendants believe that, as applied to these advertisements, both Rules 902(6) and 106 require the introduction of the entire publication.

[24] The mere fact that a cover page is included with some of these advertisements does nothing to contextualize or permit the authentication of the random advertisement attached to that cover page. Moreover, some of Plaintiff's exhibits consist of mismatched cover pages and advertisements. U.S. Exhibit 88721, for example, consists of the front cover page of an issue of Life Magazine and the back cover page, a Camel advertisement, to an unknown magazine. This advertisement is not the back cover of that issue of Life Magazine. U.S. Exhibit 87192 similarly consists of pages from different issues of Newsweek.

exhibits on which Defendants could not establish the genuineness, true identity, and/or confirm the origin of the document. To be admitted, evidence must be sufficiently authenticated or identified such that a finding can be supported that the matter in question is what its proponent claims. Fed. R. Evid. 901(a). Professor Wigmore called the need for authentication "an inherent logical necessity." 7 Wigmore, Evidence In Trials At Common Law § 2129 (1978). Evidence cannot be relevant if it is not authentic.[25] The requirement of authentication is essentially a requirement that evidence meet a threshold level of reliability. It is for this reason that authentication issues arise where documents offered as evidence bear indicia of unreliability.[26]

Materials that have no identified origin or source have perhaps the greatest indicia of unreliability. In Stahl v. Novartis Pharm. Corp., the Fifth Circuit found the plaintiff had "presented insufficient indicia as to the authenticity" of materials where such materials included summaries of journal articles from an unidentified computer database. 283 F.3d 254, 271 n.10 (5th Cir. 2002).[27] The only materials the court found had been sufficiently authenticated in Stahl were photocopies of journal articles where the "title and date of the journal" were identified in the photocopy. Id.

The importance of identifying the source of a document for authentication is also indicated by other provisions of the Federal Rules of Evidence. For example, Fed. R. Evid. 902, identifies types of documents for which proponents need not offer extrinsic evidence to

---

[25] "Authentication and identification represent a special aspect of relevancy." Fed. R. Evid. 901 advisory committee's note (citing inter alia Michael and Adler, Real Proof, 5 Vand. L. Rev. 344, 362 (1952)).

[26] See, e.g., United States v. Skillman, 922 F.2d 1370, 1375 (9th Cir. 1991) (finding the lower court did not err when it determined there was no genuine issue of authenticity raised for an exhibit with two handwriting notations in the margin *where such handwriting was entirely incomprehensible*); United States v. Alexander, 326 F.2d 736, 738-39 (4th Cir. 1964) (refusing to admit copies of checks where certain information on the check was not reproduced onto the copy).

[27] See also Foster v. Alliedsignal Inc., 293 F.3d 1187, 1191 n.1 (10th Cir. 2002) (finding a telephone log could not be authenticated where sufficient information about the source of the document had not been presented).

authenticate because those documents are deemed self-authenticating. These documents are considered to be self-authenticating because "practical considerations reduce the possibility of unauthenticity to a very small dimension."[28] Documents purporting to be newspapers and periodicals are considered self-authenticating under Fed. R. Evid. 902(6) because the manner of their publication provides sufficient indicia of reliability, namely source and identity.[29]

Examples of some of the deficiencies in Plaintiff's exhibits related to genuineness are set forth below.

### A. Unknown Source Exhibits

Some of Plaintiff's exhibits have no indicia of source, author or purpose. In the absence of indicia of source within the four corners of the documents, reliable attribution of source and/or author is at best uncertain, if not impossible. For example, U.S. Exhibits 87344 and 87345 are documents that appear to be computer printouts entitled "Subscription Database Single Line Report (Sorted by State and City)." The documents have no indicia of source, author or purpose. Similarly, U.S. Exhibits 88048 and 88049, which are documents entitled "Annual measures of smoking-attributable health effects 1954-2050 Youth Addicted Population," suffer from the same deficiencies, as does that portion of U.S. Exhibit 88759 consisting of a chart entitled "List of Smoking and Health Cases in which One or More Defendant Was a Party."[30] Without source

[28] Fed. R. Evid. 902, advisory committee's note.

[29] "'Self-authenticating' means that documents that on their face appear to have the features described in the rule automatically meet the foundational requirement of 'authentication' explained under the Practice Comment to Rule 901 and are thus provisionally accepted as what they appear to be -- that is, that they are issued or kept by their purported source -- unless evidence shows that they are not in fact what they appear to be." Fed. R. Evid. 902(6) practice comment.

[30] U.S. Exhibits 87368 and 88738 appear to be correspondence prepared by persons or entities other than Defendants. Neither exhibit bears a Bates number, and thus, Defendants lack sufficient information for proper authentication.

or author, the documents lack indicia of reliability. Authenticity is denied.

**B. Newspaper And Publications Exhibits**

Certain of Plaintiff's newspaper and publication exhibits are not self-authenticating under Fed. R. Evid. 902(6). Newspaper exhibits, such as U.S. Exhibit 86875, contain substantive pages with no indication that they are related to the newspaper title page included with the article offered. Articles relating to smoking or health appear on pages that do not identify the source or date of the article, or any information to link these "non-titled" pages to the title pages containing the publication information.

Other publication exhibits, such as U.S. Exhibit 85941, do not contain any indication that the article was ever published or is even a final draft. U.S. Exhibit 88093, which appears to be a publication, bears indicia that strongly suggest that it is not a published article. Although it appears to be published because of its format, the document contains neither page numbers nor a legend that identifies the issue of the journal in which it purportedly appeared. In addition, it does not contain an "Accepted" date, which is commonly found on articles published in the scientific and medical literature. Furthermore, it states both "© xxxx American Chemical Society" and "Published on Web 00/00/0000." Thus, the exhibit does not meet the requirements of Fed. R. Evid. 902(6).

Although these newspaper and publication exhibits may appear to be published material because of their format, their reliability is uncertain because they lack indicia reliably identifying the source and/or lack indicia connecting them to a "self authenticating" source. The self-authenticating provisions of the Federal Rules of Evidence apply to newspapers and other publications because the publication vests them with indicia of reliability. On newspaper and publication exhibits on which "genuineness" objections have been lodged, there is <u>no</u> indicia on the page with the substantive tobacco or smoking-related article to identify its source or reliably

link it to any publication information. Accordingly, authenticity is denied.

### C. Summary Exhibits

A genuineness objection has been lodged on Plaintiff's summary exhibits, such as U.S. Exhibits 88669 and 88670, where the cited sources do not contain the information Plaintiff has included in the summary exhibit it created. For example, U.S. Exhibit 88670 entitled "Defendants' Gross Revenues: Philip Morris USA Inc. (f/k/a Philip Morris Inc.)" purports to have collected its information from Philip Morris Incorporated Annual Reports for 1954-1984, Philip Morris Companies, Inc. Annual Reports for 1985-2001, and Altria Group, Inc. Annual Report for 2002. Some of the information on the summary, however, is not found in these reports. For example, Plaintiff identified the total Philip Morris USA revenue in 1980 as $7.33 billion. The cited source for this information, the 1980 Annual Report of Philip Morris Incorporated, identified the total Philip Morris USA revenue in 1980 as $3.27 billion. Accordingly, authenticity is denied on these summary exhibits.

## IX. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF EXHIBITS COMPILING UNRELATED DOCUMENTS

Defendants have lodged Fed. R. Evid. 901(a) authenticity objections to Plaintiff's trial exhibits that consist of compilations of documents produced by one or more than one Defendant or other entity into a single exhibit where the producing Defendant(s) did not maintain or produce these multiple documents as a compilation or where the documents that constitute the compilation are not reasonably related to the same subject matter. Defendants maintain the objection to these 45 exhibits to the extent that Plaintiff purports at trial that the multiple documents that comprise the exhibit were or are a compilation of documents created or maintained by the producing Defendant or Defendants. Because Plaintiff has not disclosed the intended use of the exhibits at trial, Defendants cannot determine the matter in question that

Plaintiff may claim and, thus, Defendants continue this objection on Plaintiff's trial exhibits listed in Appendix I.

## X. CONCLUSION

For the reasons stated above, Defendants respectfully request the Court sustain Defendants' objections and order Plaintiff to provide exhibits that comply with the Federal Rules of Evidence and orders of this Court, and order Plaintiff to replace its exhibits with those clean, complete copies of the exhibits provided by Defendants bearing Defendants' Bates numbers that are listed in Appendix F.

Dated: August 23, 2004

Respectfully submitted,

/s/ Jonathan M. Redgrave

Robert F. McDermott, Jr. (D.C. Bar No. 261164)
Peter J. Biersteker (D.C. Bar No. 358108)
Jonathan M. Redgrave (D.C. Bar No. 474288)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Robert C. Weber
Paul G. Crist
David B. Alden
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Attorneys for Defendant
R.J. Reynolds Tobacco Company

/s/ Jonathan M. Redgrave *for*
Timothy M. Broas (D.C. Bar No. 391145)
WINSTON & STRAWN LLP
1400 L Street, N.W.
Washington, D.C. 20005-3502
Telephone: (202) 371-5700

Dan K. Webb
Thomas J. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-6700

Theodore V. Wells, Jr. (D.C. Bar No. 468934)
James L. Brochin (D.C. Bar No. 455456)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000

Attorneys for Defendants
Philip Morris USA Inc.
(f/k/a Philip Morris Incorporated) and
Altria Group, Inc.
(f/k/a/ Philip Morris Companies Inc.)

/s/ Jonathan M. Redgrave *for*
Kenneth N. Bass (D.C. Bar No. 386070)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, D.C. 200005
Telephone: (202) 879-5000

David M. Bernick
Stephen R. Patton
KIRKLAND & ELLIS LLP
200 East Randolph Drive, Suite 5900
Chicago, Illinois 60601
Telephone: (312) 861-2000

Attorneys for Defendant
Brown & Williamson Tobacco Corporation

/s/ Jonathan M. Redgrave *for*
J. William Newbold
Michael B. Minton
Richard P. Cassetta (D.C. Bar No. 457781)
THOMPSON COBURN LLP
One US Bank Plaza, Suite 3500
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6000

OF COUNSEL:

Gene E. Voigts
Richard L. Gray
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550

Attorneys for Defendant
Lorillard Tobacco Company

/s/ Jonathan M. Redgrave *for*
David L. Wallace
Jessica L. Zellner
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza, 34th Floor
New York, New York 10112-0219
Telephone: (212) 408-5100

Attorneys for Defendant
British American Tobacco (Investments)
Limited (f/k/a British-American Tobacco
Company Limited)

/s/ Jonathan M. Redgrave *for*
J. William Newbold
Michael B. Minton
Richard P. Cassetta (D.C. Bar No. 457781)
Jason A. Wheeler
THOMPSON COBURN LLP
One US Bank Plaza, Suite 3500
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6000

Steven Klugman
Steven S. Michaels
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000

Attorneys for Defendant
The Council for Tobacco Research-U.S.A., Inc.

/s/ Jonathan M. Redgrave *for*
James A. Goold
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-6000

Attorneys for Defendant
The Tobacco Institute, Inc.

/s/ Jonathan M. Redgrave *for*
Leonard A. Feiwus
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, New York 10019-6799
Telephone: (212) 506-1700

Attorneys for Defendant
Liggett Group Inc.