# APPENDIX A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 99-CV-2496 (GK) |
| | ) | |
| v. | ) | Next Scheduled Court Appearance: |
| | ) | August 12, 2004 |
| PHILIP MORRIS USA INC. (f/k/a | ) | |
| PHILIP MORRIS INCORPORATED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS'[1] REPLY TO THE UNITED STATES' OPPOSITION TO DEFENDANTS' AUTHENTICITY AND PRIVILEGE OBJECTIONS TO PLAINTIFF'S DESIGNATED MAY 3, 2004 TRIAL EXHIBITS**

## I. INTRODUCTION

The United States' Opposition to Defendants' Authenticity and Privilege Objections to Plaintiff's Designated May 3, 2004 Trial Exhibits ("Plaintiff's Opposition" or "Pl. Opp.") is an attempt to deflect the Court's attention from the deficiencies in Plaintiff's exhibits and accompanying exhibit list. After having obtained an extension of eight weeks to revise and reduce its enormous initial trial exhibit list that contained over 72,000 exhibits, Plaintiff presented a list of over 43,000 trial exhibits on May 3, 2004. Plaintiff's May 3rd trial exhibit list is replete with incomplete documents, altered documents, documents without any identification of source or author, and other problems that call into question the reliability of the documents. Plaintiff had full control over selecting documents to identify as trial exhibits and the preparation of those documents for use at trial. Yet when confronted with Defendants' properly asserted objections, Plaintiff did not and does not seek to remedy the deficiencies as Defendants invited in

[1] All Defendants join in this reply.

their objections.[2] Rather, Plaintiff skirts the real issues and asserts that all fault lies with Defendants' "numerous[,] irrelevant and tangential objections." Pl. Opp. at 1.

Plaintiff's revised exhibit list contained 43,427 exhibits. Defendants filed authenticity and/or privilege objections to 23,519 of those exhibits. Plaintiff contends that Defendants made "irrelevant" objections in an effort to "thwart the United States' trial preparation efforts." Id. Plaintiff's 39-page rambling Opposition, however, does not provide any meaningful evidence to support this accusation. Defendants' objections simply reflect the deficiencies in Plaintiff's May 3rd exhibit list. Plaintiff fell far short of the requirements set forth in Order Nos. 51, 470 and 508 when it designated exhibits and, in so doing, encumbers the trial with evidentiary objections easily avoided. The Court should sustain Defendants' objections and order Plaintiff to provide exhibits that comply with the Federal Rules of Evidence, orders of this Court, and where appropriate, accept Defendants' submission of clean, complete copies. See infra Section IV(C).

## II. PROCEDURAL HISTORY

On February 17, 2004, Plaintiff produced a 1,451-page exhibit list and 72,525 exhibits. Nine days later, Defendants requested an emergency conference with the Court to address problems with Plaintiff's exhibits and accompanying exhibit list.[3] At the emergency hearing, the Court agreed the number of Plaintiff's exhibits was "unworkable" and stressed the importance of culling down the exhibit list. The Court ordered both parties to organize their exhibits into three tiers and ordered Plaintiff to serve its revised exhibit list by May 1, 2004, almost eleven weeks after its exhibit list was originally due. See Order #508 at ¶ 1. On May 3, 2004, the first

[2] See Defendants' Authenticity and Privilege Objections to Plaintiff's Designated May 3, 2004 Trial Exhibits ("Defendants' Objections") at 2, 4, 7, 8; see also discussion infra Section IV(C).

[3] For example, as Defendants noted in the March 4, 2004 emergency hearing, Plaintiff's 72,525 exhibits included some company documents Plaintiff had separated inexplicably into multiple exhibits. For example, a 300-page document would be broken into 300 distinct 1-page exhibits. See Tr. of 3/4/04 Emergency Hearing on Plaintiff's Exhibit List at 11-12.

business day after the Order #508 deadline, Plaintiff submitted a revised exhibit list, consisting of 43,427 exhibits, that corrected some of the problems with the original list.[4] Despite Plaintiff's corrections, many of the same problems remain on Plaintiff's revised exhibit list.[5]

On June 1, 2004, Defendants served their objections. These objections were then amended by the June 21, 2004 filing of Defendants' Praecipe Regarding Their Revised Authenticity and Privilege Objections to Plaintiff's Designated May 3, 2004 Trial Exhibits, which was filed in response to Plaintiff's questions about prior admitted exhibits. On July 1, 2004, Plaintiff served its opposition to Defendants' objections.[6]

In preparing this Reply, Defendants have once again re-reviewed Plaintiff's trial exhibits and Defendants' objections thereto to resolve as many objections as possible. As a result, Defendants file herewith revised objections that reflect the withdrawal of certain objections previously submitted. See Appendix A, Defendants' Revised July 16, 2004 Authenticity and Privilege Objections to Plaintiff's Designated May 3, 2004 Trial Exhibits ("Defendants' Revised Objections").

## III. OVERVIEW OF DEFENDANTS' OBJECTIONS

While the production of documents from a party's files may be a factor to consider in determining authenticity, it is axiomatic that a finding of authentication is not appropriate if the proposed trial exhibit is not the document produced from a party's files or an exact duplicate of

---

[4] Plaintiff corrected some of these errors by, among other things, compressing into a single exhibit some documents that had been erroneously separated into multiple exhibits and removing many duplicates.

[5] As Plaintiff admits, numerous partial exhibits remain that should have been compressed into one document. See Pl. Opp., Att. A at ¶ 4 ("In combination with one or more other exhibits, this exhibit forms one complete document/exhibit."). Plaintiff, however, did not identify the "other exhibits."

[6] After requesting Defendants reconsider certain objections related to exhibits that may have been admitted in other cases and after receiving Defendants' June 21, 2004 Praecipe withdrawing certain objections, Plaintiff nonetheless opposed 62 of these withdrawn objections in its subsequently filed Opposition. See Pl. Opp and Atts. B, C and D thereto.

such document. Here, Defendants have objected to some Plaintiff's exhibits on authenticity grounds because the exhibits contain unrecognized marginalia or writing, deleted or added pages, or are otherwise incomplete such that their condition does not justify a blanket finding as to their authenticity.

Plaintiff asserts that "Defendants have filed with the Court—and unloaded on the United States—more than 30,000 vague and conclusory objections ... that do not meet the requirements of the Federal Rules of Evidence." See Pl. Opp. at 1. Plaintiff's complaints regarding the number and specificity of Defendants' authenticity objections are not well founded.

First, Fed. R. Evid. 103(a)(1) only requires that a party objecting to the admissibility of evidence state the specific ground of the objection if the specific ground is not apparent from the context. See Fed. R. Evid. 103(a)(1). "Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if, under the circumstances, that can be done." Noonan v. Caledonia Gold Min. Co., 121 U.S. 393, 400 (1887); see also Crane v. Crest Tankers, Inc., 47 F.3d 292, 294 (8th Cir. 1995) (the following objections tendered in a party's pretrial submission were sufficiently specific to be preserved for appellate review: "Defendant objects to Exhibit 17 on the grounds that it is hearsay, that it is not properly authenticated, that it constitutes an attempt to introduce expert testimony or opinion in the case ... with no foundation. ..."). The Federal Rules of Evidence ("the Rules") do not "require a pinpoint citation to a provision of the Rules or relevant precedent for every objection; what they do require is enough specificity to alert the district court and opposing counsel to the basis for the objection." United States v. David, 96 F.3d 1477, 1480 (D.C. Cir. 1996); see also United States v. Boyd, 55 F.3d

667, 671 n.3 (D.C. Cir. 1995) (finding that, although basis for the objection could have been clearer, it was sufficiently clear to be preserved for appeal).

Nothing in Order #470 requires anything more than that required by Fed. R. Evid. 103(a)(1). Order #470 simply states "an opposing party shall file and serve its objections to the authenticity of any Exhibit listed and any privilege objections the Court has not yet ruled upon." See Order #470.II.F. In a recent order related to an upcoming hearing in the In re Vitamins Antitrust Litig., Magistrate Judge Facciola provided an example of what was required to state an objection to an exhibit: (1) identification of the exhibit, and (2) a one-word basis for the objection and a citation to the appropriate Rule of Evidence. See In re Vitamins Antitrust Litig., No. MISCNO99-197 TFH/JMF, 2004 WL 1250462, at *2 (D.D.C. May 25, 2004). Defendants' authenticity objections—made on a document-by-document basis—identify Plaintiff's exhibits, the authenticity objection and a separate basis for the authenticity objection (e.g., altered, illegible, incomplete, etc., with additional explanations where appropriate). Defendants have thus not only plainly satisfied the requirements of Fed. R. Evid. 103(a)(1), they have exceeded them.

Furthermore, although the Manual for Complex Litigation encourages the pre-trial resolution of technical objections to evidence because of the potential time-savings, it also recognizes that the admissibility of evidence can turn on other facts that may (or may not) be resolved prior to trial by stipulation. See Manual for Complex Litigation § 11.642 (4th ed. 2004). Through their authenticity objections, Defendants legitimately objected to Plaintiff's exhibits that contain marginalia, have added or deleted pages, or are otherwise incomplete, such that a finding of authenticity is not justified because the exhibits are not as they were produced from a Defendant's files and/or there is at this time no evidence the exhibits are what they purport to be.

As encouraged by the Manual for Complex Litigation and Noonan, Defendants are entitled to raise these objections and have provided Plaintiff sufficient information regarding the bases for the objections. It is now up to Plaintiff to cure the technical defects identified in its exhibits before trial starts.[7]

Second, any analysis of the sufficiency of the specific grounds for objection identified by Defendants must take into consideration the number of Plaintiff's exhibits (43,427) and the limited time within which Order #470 permitted Defendants to set forth their objections (30 days). See Comment p. 5; see Order #470.II.F; Order #508. Although 43,427 exhibits is an improvement to Plaintiff's initial 72,525 exhibits, such an enormous number of exhibits still fails to provide a realistic indication as to which documents Plaintiff actually will introduce at trial. As Defendants have previously stated, "the sheer number of exhibits, combined with the other exigencies of the case, will lead to the unfortunate result that thousands of objections will be raised as to exhibits that never get offered at trial ...." Defendants' Reply in Support of Their Emergency Request for Conference with Court at 2 n.4 (filed March 1, 2004). The number of objections raised by Defendants is the result of the number of exhibits on Plaintiff's list and the form in which Plaintiff provided them.

Defendants originally lodged objections to 23,519 of Plaintiff's 43,427 exhibits. That number has now been reduced. See Appendix A. Moreover, Defendants' remaining objections can be grouped such that there are essentially only eight basic types of authenticity and/or

---

[7] Plaintiff wholly ignores the context in which objections are made in this case. Nearly all of Plaintiff's case citations are to authenticity and foundation objections made at trial where the Court and the parties knew the matter the exhibit was intended to prove. Here, Defendants are compelled to object without that knowledge. The submission of partial documents, altered documents, and compilations are objectionable without specifying materiality because evidentiary use at trial is unknown.

privilege objections, many of which require little or no action by the Court to resolve. These groups of authenticity and/or privilege objections are as follows.

1. Defendants asserted objections on exhibits comprised of documents that have or appear to have been altered from the original document as produced by a Defendant.[8] The altered documents include incomplete and illegible documents, documents with marginalia of unknown origin and documents with various other alterations. These 3,985 objections (approximately 18% of the total objections) are addressed in Section IV. Defendants assert these objections may be easily resolved by the substitution of clean, complete copies in accordance with Order #51. Defendants have already proposed this resolution to Plaintiff. See infra Section IV(C).

2. Defendants noted a "compelled release" objection to protect their rights of appeal and to protect against claims of waiver on exhibits on which claims of privilege and/or protection have been overruled and ordered released in this case.[9] These 896 "compelled release" objections (approximately 4% of the total objections) are addressed in Section V. These objections require no action by the Court if Plaintiff substitutes documents stamped with the appropriate legend as produced by Defendants in accordance with Order Nos. 344 and 409. See infra Section V.

---

[8] These objections include: Altered - Marginalia; Altered - Interlineations and/or Underlining; Altered - Receipt Stamp; Altered - Fax Lines; Altered - Added Coversheets Or Other Pages; Altered - Cut-Off Page(s); Altered - Incomplete Document Obtained From Third Party Source; Altered - Other; Illegible; Incomplete or Missing Document - Missing Page(s); Incomplete or Missing Document - Partial Document; Incomplete or Missing Document - Other.

[9] See Defs' Objections and Defs' Revised Objections stating "Deny Privileged: Compelled Release."

3. Defendants asserted objections on privileged documents that have been challenged in this case but that are currently pending before the Special Master and the Court.[10] These 911 objections (approximately 4% of the total objections) are addressed in Section VI. This objection is a reservation of the right to file authenticity objections to the copy offered by Plaintiff should the Court order the release of any of the designated documents. Thus, these "objections" require no action by the Court.

4. Defendants asserted objections on exhibits for which a hard copy exhibit was not provided. These 252 objections are addressed in Section VII. This objection is also a reservation of the right to file authenticity and/or privilege objections at such time as Plaintiff provides the missing exhibits.

5. Defendants asserted objections on exhibits for which privilege claims have been sustained by this Court. These six objections are addressed in Section VIII.[11] Clearly, the claims of privilege already having been sustained by the Court need not be readdressed.

6. Defendants asserted objections on exhibits consisting of advertisements that Plaintiff submitted *without* a clean, complete copy of the publication in which the advertisement was published or other authenticating evidence sufficient to verify the advertisement was actually published in the identified publication.[12] As addressed in Section IX, these 15,615 objections (approximately 70% of the total objections) may be resolved without

---

[10] See Defs' Objections and Defs' Revised Objections stating "Deny Privileged: Privilege Claim Pending Resolution of Challenge."

[11] Defendants also asserted objections to the designation of three exhibits subject to privilege and/or protection claims, the challenge on which was withdrawn by Plaintiff. See infra Section VIII.

[12] See Defs' Objections and Defs' Revised Objections stating "Deny Authenticity: Advertisement - Incomplete Publication."

reviewing each exhibit individually. Moreover, Plaintiff's compliance with Order #51.III.D.4.c will obviate the need for any action by the Court to resolve these objections.

7. Defendants asserted objections on exhibits where Defendants cannot establish the genuineness, true identity, and/or confirm the origin of the document.[13] These 408 objections (just under 2% of the total objections) are addressed in Section X and will require a determination of authenticity by the Court.

8. Defendants asserted objections on exhibits comprised of combinations of several distinct documents (sometimes from different entities including third parties).[14] These 362 objections (approximately 1.5% of the total objections) are addressed in Section XI and will require a determination of authenticity by the Court.

## IV. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF ALTERED, ILLEGIBLE AND INCOMPLETE EXHIBITS

As a requirement for the admission of evidence, the proponent must authenticate evidence such that the trier of fact can find that the matter in question is what the proponent purports it to be. Fed. R. Evid. 901(a). Pursuant to Order #51, documents may be either "deemed" or "presumed" authentic.[15] Documents deemed authentic may not be objected to on authenticity grounds.[16] Order #51 also makes clear that for a document to be treated as either

[13] See Defs' Objections and Defs' Revised Objections stating "Deny Authenticity: Genuineness - Disputed Document."

[14] See Defs' Objections and Defs' Revised Objections stating "Deny Authenticity: Multiple Documents ...."

[15] See Order #51.III.D.2.

[16] Classes of documents deemed authentic under Order #51 are: "(i) Any documents as to which the United States or a Defendant asserts or has asserted a privilege from disclosure in this case or any other; (ii) Any documents that were admitted into evidence in this case or any other case where the United States or any Defendants in this case were a party; (iii) Official transcripts of Congressional hearings; and (iv) Final Official Reports issued by the Surgeon General of the United States." Order #51.III.D.2.a.

"deemed" or "presumed" authentic, the complete copy of the document must be provided. Order #51.III.D.4.c.

As noted above, approximately 18% of the exhibits on which objections were asserted were objected to because the copies designated by Plaintiff were altered in some fashion from the copies produced by Defendants, Plaintiff, or others. The problems are of three varieties: (1) the exhibit has extraneous markings or additions (including facsimile lines, marginalia, added pages, etc.); (2) portions of the exhibit are not legible; or (3) the exhibit is incomplete, missing pages, or has text cut-off. These deficiencies negate reliability but can be resolved by Plaintiff's compliance with Order #51.III.D.4.c.

**A. Defendants Object To Designation Of Documents Altered After Production**

Plaintiff alleges that the extraneous markings on the documents are either inconsequential, even where the change is to the text of the document,[17] or are attributable to company employees.[18] It is unclear how an alteration to the text of a document could be either inconsequential or irrelevant. The alteration of the text of a document certainly negates the document being what it purports to be without further proof.

Plaintiff's contention that the extraneous markings are attributable to company employees or are inconsequential is simply incorrect. First, as noted in Defendants' Objections, this objection was lodged where the designated exhibit was, or appears to have been, altered from the

---

[17] See Pl. Opp., Att. A at ¶ 17, providing "Any additions or alterations, including to the text on the exhibit, do not affect the authenticity, relevance, or substance of the exhibit."

[18] See Pl. Opp. at 29.

original document.[19] Markings on the face of the document made by company employees are not "alterations" within the meaning of Defendants' objections.[20]

Second, Plaintiff's alterations are not inconsequential. The markings that Plaintiff alleges are "inconsequential" may have substantial impact both in this case and in subsequent cases. Listing trial exhibits that have been altered from the original may have damaging consequences in this case because Defendants do not know what Plaintiff intends to use the exhibit to prove. Thus, Defendants are unable to conclude whether the alterations are likely to mislead the trier of fact or present the exhibits in an unfair light and, as such, cannot forgo their objections. For example, Plaintiff contends that facsimile lines added to a document after production are merely superfluous.[21] This is an absurd contention in a case in which Plaintiff alleges Defendants' "ongoing conduct" is a paramount issue. Plaintiff may very well try to use the facsimile line on the exhibit to support an allegation of ongoing conduct, i.e., to improperly infer further distribution of the document or distribution at a later date. Similarly, Defendants have no way of knowing if Plaintiff will use one of the exhibits with interlineations or asterisks in the margins added after production of the document to try to create an intent or an importance not attributable to the original.

---

[19] Defs' Objections at 2.

[20] Plaintiff's exhibits were reviewed and objections were revised withdrawing the "altered" objection where extraneous markings existed on the original because an objection was made in error. These revisions are reflected in Defendants' Revised Objections. See Appendix A.

[21] Plaintiff's citation in support of its contention that facsimiles are duplicates, Tiberi v. CIGNA Ins. Co., 40 F.3d 110, 111 (5th Cir. 1994), is not authority on the point for which it is offered. In Tiberi, the Fifth Circuit found the lower court erred in refusing to accept attorney affidavits affixed to a pleading because such affidavits were faxed from out-of-state attorneys to local counsel when the parties were under severe time constraints. Tiberi merely stands for the proposition that a court cannot reject attachments to pleadings simply because the attachments are on facsimile paper. Defendants are not contending here that there is something inherently wrong with submitting documents on facsimile paper. What Defendants are maintaining is quite different. The added fax lines on Plaintiff's exhibits bear different dates from the original documents and thus negate the indicia of reliability of the originals. Any reliability problems created by these mysterious facsimile lines are then compounded by the fact that Defendants are currently in the dark regarding the purposes for which these exhibits are being offered. Under these circumstances, authenticity must be denied.

There are only two reasonable interpretations of why the documents have been altered since Defendants produced them. The first interpretation, which is not likely to have occurred, is Plaintiff nefariously intended to attribute its own markings to Defendants' company employees. The second, and more logical, interpretation is Plaintiff marked documents throughout the course of its preparation of this case and now cannot remember which marginalia and markings existed on the documents as produced and which marginalia and markings were placed on the documents by Plaintiff's own attorneys and staff. It is perhaps for this reason Plaintiff incorrectly believes the exhibits are "complete as presented to the Defendants" and devoid of the deficiency Defendants identify.[22] Understandably, however, neither scenario provides the trier of fact nor Defendants with any assurance of reliability.[23]

Listing and using documents altered from the original may also have substantial effect in subsequent cases. As already noted, certain documents in this case are *deemed* authentic such that no party may object to their authenticity. One category of documents deemed authentic is "documents that were admitted into evidence in this case or any other case where the United States or any Defendant in this case were a party." Order #51.III.D.2.a.ii. If any subsequent court were to issue an order with language similar to the language contained in Order #51, Defendants would be unable to object to the authenticity of documents admitted in this case even where documents had been altered inadvertently, as described above. Clearly, such a situation would unduly prejudice Defendants.

---

[22] Pl. Opp., Att. A at ¶ 2.

[23] In some instances, the origin of the extraneous markings is clear. See, e.g., U.S. Exhibits 24620, 24990, and 25225. In other instances, the origin of the markings is not clear. This is why Defendants proposed an easy solution that comports with Fed. R. Evid. 106, Fed. R. Evid. 901, and Order #51 to resolve the authenticity objections on these documents. See Section IV(C).

### B. Defendants Object To Plaintiff's Designation Of Illegible And Incomplete Exhibits

Plaintiff makes much ado about Defendants' objections to illegible, incomplete, or partial documents and contends that such objections are not proper authenticity objections.[24] Plaintiff's contention is in conflict with both Fed. R. Evid. 106 and the plain language of Order #51. Defendants recognize that Fed. R. Evid. 106 provides a remedy for an adverse party to require the introduction of the full document or statement.[25] In this case, however, completeness is related to a document being deemed or presumed authentic. Order #51.III.D.4.c states:

> Nothing in these procedures shall be construed as not requiring a party to provide the most complete copy of a document to be deemed or presumed authentic.

(Emphasis added). Subsection 4 of Order #51 is titled "Other Provisions Relating to Authenticity." The provision, on its terms, both directly relates completeness to authenticity and makes completeness a precondition to Order #51.III.D provisions regarding presumed and deemed authentic documents. Incomplete documents are neither presumed nor deemed authentic and are subject to the authenticity requirements of Fed. R. Evid. 901. Thus, it is proper for Defendants to object to incomplete and illegible documents on authenticity grounds.

---

[24] Pl. Opp. at 32-33.

[25] Fed. R. Evid. 106 provides, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Id. The advisory committee notes explain that Fed. R. Evid. 106 is based on two considerations. The first consideration is that a misleading impression may be created by taking matters out of context. The second consideration is "the inadequacy of repair work when delayed to a point later in the trial." Defendants cannot know whether or not a "misleading impression" would be created by matters being taken out of context because Defendants do not know the uses for which the exhibits are being offered. To be sure, one can imagine hypothetical uses that do not require an entire document. One can similarly conjure up uses that would require the missing pages to avoid creating a misleading impression. Since Defendants do not know the reason the exhibits are going to be offered, Defendants must object to the introduction of a partial or illegible document or risk waiving their authenticity objections. Defendants thus denied the authenticity of exhibits with these deficiencies.

### C. Defendants' Proposed Solution For Remedying Objections To Altered, Illegible, Or Incomplete Company Bates-Numbered Documents

Despite the number of Plaintiff's exhibits that are altered, illegible, or incomplete, Defendants believe their objections can be resolved by substituting clean and complete copies. Even though it is Plaintiff's responsibility to substitute, Defendants—with trial rapidly approaching and little time remaining to again re-review exhibits for completeness—will supply Plaintiff with a set of unaltered, legible and complete copies of the exhibits produced by Defendants bearing Defendants' Bates numbers that are listed in Appendix B so Plaintiff may replace the objectionable exhibits.[26] Defendants will provide the clean, complete copies by August 9, 2004.[27] Defendants maintain their objections[28] to these incomplete, illegible, and altered documents until such time as Plaintiff substitutes the exhibits voluntarily or as a result of Court order.

Defendants continue to maintain their objections[29] to documents not listed on Appendix B until such time as Plaintiff provides complete copies of these documents pursuant to Order #51.III.D.4.c.

---

[26] Indeed, Defendants recently suggested to Plaintiff that the parties extend the filing date of this Reply so the parties could meet and confer to resolve the objections in this manner. Plaintiff refused to discuss resolution, insisting that Defendants file this Reply.

[27] Defendants also offer clean, complete copies of five exhibits as to which missing exhibit objections were erroneously asserted: U.S. Exhibits 25878, 26262, 31468, 31472 and 31530. Further review revealed that these exhibits were not missing in their entirety, but were partial documents missing attachments thereto. In addition, Defendants offer clean, complete copies of two exhibits as to which multiple document objections were asserted: U.S. Exhibits 65481 and 65463. Further review revealed that these exhibits were not multiple documents, but either altered or partial documents missing attachments thereto.

[28] The objections maintained are: Altered - Marginalia; Altered - Interlineations and/or Underlining; Altered - Receipt Stamp; Altered - Fax Lines; Altered - Added Coversheets Or Other Pages; Altered - Cut-Off Page(s); Altered - Incomplete Document Obtained From Third Party Source; Altered - Other; Illegible; Incomplete or Missing Document - Missing Page(s); Incomplete or Missing Document - Partial Document; Incomplete or Missing Document - Other.

[29] The objections maintained are: Altered - Marginalia; Altered - Interlineations and/or Underlining; Altered - Receipt Stamp; Altered - Fax Lines; Altered - Added Coversheets Or Other Pages; Altered - Cut-Off Page(s); Altered - Incomplete Document Obtained From Third Party Source; Altered - Other; Illegible; Incomplete or

## V. DEFENDANTS' COMPELLED RELEASE OBJECTIONS

Defendants note a "compelled release" objection to 896 exhibits. This objection, identified as "Privileged: Compelled Release," is noted to facilitate appellate review issues concerning these privileged documents and to assist in asserting privilege objections and defend against waiver arguments in other cases. This objection does not require resolution by the Court, nor does the objection infringe upon Plaintiff's ability to use these exhibits at trial.

As protection against claims of waiver, the parties are allowed to legend documents, the release of which has been compelled, so such documents may be easily identified to assist in asserting privilege objections and respond to anticipated waiver arguments in other cases. See Order #344. When Defendants produced, in October and December 2003, copies of privileged Bliley and BATCo Minnesota Depository Documents and certain designated duplicates as ordered by the Court in Order #409, Defendants stamped the documents with the compelled release legend authorized by Order #344. Instead of using copies of the documents Defendants were ordered to produce that were stamped with the appropriate legend, however, Plaintiff designated unstamped copies.[30] Nonetheless, since Plaintiff opposes Defendants' compelled release objection only to the extent the documents *were* produced without the appropriate

(continued...)

Missing Document - Missing Page(s); Incomplete or Missing Document - Partial Document; Incomplete or Missing Document - Other.

[30] Plaintiff's exhibits consisting of documents ordered released by the Court because Defendants' claims of privilege and/or protection were overruled in a specific privilege challenge in this case do bear the appropriate compelled release legend. Plaintiff's exhibits consisting of documents ordered released by the Court pursuant to Order #409 (i.e., Bliley and BATCo Minnesota Depository documents and certain designated duplicates), however, do not bear the appropriate compelled release legend even though the documents were produced by Defendants with the legend.

legend,[31] and these documents were produced with the Order #344 legend, there is no logical basis for Plaintiff's objection, and Plaintiff should substitute the unstamped copies with those produced bearing the Order #344 compelled release legend. Should Plaintiff refuse to replace the copies of those documents with copies bearing the appropriate legends, Defendants reserve the right to provide substitute copies stamped with the appropriate compelled release legend.

## VI. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF EXHIBITS WITH PRIVILEGE CLAIMS STILL PENDING

Defendants assert the objection "Privileged: Privilege Claim Pending Resolution of Challenge" when Plaintiff has listed as exhibits privileged documents that have been challenged in this case but that are still pending resolution before the Special Master. Defendants maintain their claims of privilege and/or protection over these 911 documents. Defendants reserve the right to raise authenticity objections on exhibits containing privileged document ordered released, should the Court subsequently overrule the privilege claims, to allow Defendants to examine the documents to insure the designated copy has not been altered and is complete. Since these objections are merely reservations of the right to file authenticity objections in the future based upon the copy of the document offered, these "objections" require no resolution by the Court.

## VII. DEFENDANTS RESERVE ALL OBJECTIONS TO MISSING EXHIBITS

Defendants reserve all objections to exhibits identified on Plaintiff's May 3, 2004 exhibit list for which Plaintiff failed to provide a hard copy of the document pursuant to the terms of Order Nos. 470 and 508. The list of 252 missing exhibits to which all objections are reserved is

---

[31] Plaintiff's only opposition to Defendants' compelled release objection is: "This 'compelled release document' is introduced as it was provided to the United States by Defendants; to the extent it does not contain the legend that Defendants contend it should contain, that is because Defendants did not so legend the document (and the United States is not required to add the legend to the documents)." See Pl. Opp., Att. A at ¶ 8.

attached at Appendix C. As this "objection" is the reservation of rights to file authenticity objections in the future, no Court resolution is necessary at this time.

## VIII. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF EXHIBITS ON WHICH DEFENDANTS' PRIVILEGE CLAIMS HAVE BEEN SUSTAINED BY THIS COURT

Defendants have asserted the objection "Privileged: Privilege Claim Sustained by the Court" on Plaintiff's designation of six exhibits for which Defendants' claims of privilege and/or protection have been upheld. Each of the six exhibits has been subject to privilege challenge in this case. In each instance, the privilege has been sustained. Even though no hard copy exhibits were provided by Plaintiff with its trial exhibits because the documents have not been released, Plaintiff listed these documents on its exhibit list and now seeks "proof" the claims have been upheld. (Pl. Opp., Att. A at ¶ 20.) The orders of the Court sustaining the claims of privilege are set forth below.

| US Trial Exh. # | Applicable Defendant | Bates Number | R&R / Order Sustaining Privilege Claims |
|---|---|---|---|
| 81465 | PM | 2505115140/5145 | 2505115140/5145 was challenged in Plaintiff's Eleventh Challenge that is still pending resolution. However, the Philip Morris Defendants' claims of privilege and work product protection were upheld for duplicate, 2505270631/0636, in R&R #117 / Order #371. |
| 81946 | TI | TI00902058/2059 | R&R #131 / Order #453 |
| 81947 | TI | TI00921112 | R&R #131 / Order #453 |
| 81948 | TI | TI00953127/3130 | R&R #131 / Order #453 |
| 81954 | TI | TI11141164/1165 | R&R #131 / Order #453 |
| 81956 | TI | TI14321038 | R&R #131 / Order #453 |

The claims of privilege, already having been sustained by the Court, need not be readdressed. Plaintiff is precluded from using these exhibits at trial.[32]

## IX. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF ADVERTISEMENTS WITHOUT A CLEAN, COMPLETE COPY OF THE PUBLICATION IN WHICH THE ADVERTISEMENT WAS PUBLISHED

Among Plaintiff's exhibits are approximately 15,000 Tier 3 exhibits Plaintiff purports are cigarette advertisements placed by various Defendants in magazines over a period spanning more than fifty years. There are also 876 magazine advertisements that are listed as Tier 1 and Tier 2 exhibits. The cover pages of the magazines in which the advertisements allegedly ran are included with most advertisements designated as exhibits. Although Plaintiff does not state how it intends to use these exhibits at trial, Defendants assume Plaintiff is going to attempt to show that Defendants were advertising cigarettes to youth based on the age distribution of the readership of the magazines in which the advertisements purportedly ran.[33]

Plaintiff correctly notes that, as a general matter, newspapers and periodicals are self-authenticating documents under the Federal Rules of Evidence. However, Plaintiff has not included the periodicals in which the cigarette brand advertisements appeared. Instead, Plaintiff has included only the cover page and the advertisement (and occasionally an adjacent page of the magazine), which of course is not the way these advertisements were received by the readers of the magazines. The only way the advertisements can properly be judged is in the context of the overall content of the magazine, including the editorial content—i.e., the types of articles

---

[32] In addition to being precluded from designating as trial exhibits the six documents on which privilege claims have been sustained, Plaintiff is precluded from using U.S. Exhibits 81765, 81767, and 81768, since it withdrew its privilege challenges to these documents on May 14, 2003, during the meet-and-confer process, Tr. of 05/14/03 Meet and Confer at 105, 112; see also 7/16/03 Letter from Kenneth E. Sealls to Jonathan M/ Redgrave, (attached at Appendix D, and did not reinitiate challenge before the Order #264 imposed challenge deadline. Order #264 at 3.

[33] Defendants expect that the advertisements designated as Tier 3 exhibits will form the basis of a summary exhibit that Plaintiff will use to assert that Defendant tobacco companies have advertised in periodicals claimed to be "youth" oriented.

featured in the magazine—as well as the other advertising carried in those same magazines. Defendants believe the Court will see that the editorial content of such magazines was written for and aimed at adult readers, and that the other advertising in such magazines was generally aimed at adults. Without such context, the exhibits listed by Plaintiff are misleading and objectionable based on an authenticity objection or a Fed. R. Evid. 106 completeness objection.[34] Ultimately, the advertisements submitted by Plaintiff cannot properly be judged in isolation. By failing to provide the entire magazine, Plaintiff both relies on evidence not properly authenticated and improperly shifts to Defendants the burden of identifying source material to assess the reliability of summary exhibits. Accordingly, it is Defendants' view that any such advertisement introduced at trial or used to form the basis of a summary exhibit introduced at trial should include the entire periodical in which it ran. Defendants agree that if the entire periodical is presented, the periodical will be self-authenticating.[35]

## X. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF EXHIBITS OF UNKNOWN ORIGIN

Defendants asserted an "Authenticity: Genuineness - Disputed Document" objection on exhibits on which Defendants could not establish the genuineness, true identity, and/or confirm the origin of the document.[36] To be admitted, evidence must be sufficiently authenticated or

[34] Order #51 similarly requires parties to provide "the most complete copy of a document." Order #51.III.D.4.c. Failure to comply with subsection (4)(c) defeats the presumption of authenticity in this case and, therefore, requires proper authentication pursuant to Fed. R. Evid. 901. Defendants believe that, as applied to these advertisements both Rules 902(6) and 106 require the introduction of the entire publication.

[35] Plaintiff also contends that these advertisements combined only with the magazine covers for the issues in which they ran should be deemed authentic because "many portions of these magazines and periodicals containing Defendants' cigarette advertisements include as part of the United States' Trial Exhibits, a printed page with a small legend contain[ing] the magazine title, issue and page of the advertisement itself." (Pl. Opp. at 27.) Plaintiff does not define "many" (and that term really has little meaning when discussing 15,500 exhibits), but a randomly sampled group of one hundred advertisements (exhibit numbers 13250 - 13349) revealed that none of the advertisements had any legend placed on them identifying the magazine title, issue *and* page of advertisement. In fact, although some advertisements had marginal printing such as title or date (some of which was illegible), at least 50% of that random sample had no marginal printing at all.

[36] This objection is asserted on 408 U.S. Exhibits. See Appendix E.

identified such that a finding can be supported that the matter in question is what its proponent claims. Fed. R. Evid. 901(a). Professor Wigmore called the need for authentication "an inherent logical necessity." 7 Wigmore, Evidence In Trials At Common Law § 2129 (1978). Evidence cannot be relevant if it is not authentic.[37] The requirement of authentication is essentially a requirement that evidence meet a threshold level of reliability. It is for this reason that authentication issues arise where documents offered as evidence appear to have alterations or other indicia of unreliability.[38]

Materials that have no identified origin or source have perhaps the greatest indicia of unreliability. In Stahl v. Novartis Pharm. Corp., the Fifth Circuit found the plaintiff had "presented insufficient indicia as to the authenticity" of materials where such materials included summaries of journal articles from an unidentified computer database. 283 F.3d 254, 271 n.10 (5th Cir. 2002).[39] The only materials the court found had been sufficiently authenticated in Stahl were photocopies of journal articles where the "title and date of the journal" were identified in the photocopy. Id.

The importance of identifying the source of a document for authentication is also indicated by other provisions of the Federal Rules of Evidence. Rule 902, for example, identifies types of documents for which proponents need not offer extrinsic evidence to authenticate because those documents are deemed self-authenticating. These documents are considered to be

---

[37] "Authentication and identification represent a special aspect of relevancy." Fed. R. Evid. 901 advisory committee's note (citing inter alia Michael and Adler, Real Proof, 5 V and. L. Rev. 344, 362 (1952)).

[38] See, e.g., United States v. Alexander, 326 F.2d 736, 738-39 (4th Cir. 1964) (refusing to admit copies of checks where certain information on the check was not reproduced onto the copy), United States v. Skillman, 922 F.2d 1370, 1375 (9th Cir. 1991) (finding the lower court did not err when it determined there was no genuine issue of authenticity raised for an exhibit with two handwriting notations in the margin *where such handwriting was entirely incomprehensible*).

[39] See also Foster v. Allied Signal Inc., 293 F.3d 1187, 1191 n.1 (10th Cir. 2002) (finding a telephone log could not be authenticated where sufficient information about the source of the document had not been presented).

self-authenticating because "practical considerations reduce the possibility of unauthenticity to a very small dimension."[40] Documents purporting to be newspapers and periodicals are considered self-authenticating under Fed. R. Evid. 902(6) because the manner of their publication provides sufficient indicia of reliability, namely source and identity.[41]

Examples of some of the deficiencies in Plaintiff's exhibits related to genuineness are set forth below.

### A. Unknown Source Exhibits

Appendices E and F list Plaintiff's exhibits that have no indicia of source, author or purpose. In the absence of indicia of source within the four corners of the documents, reliable attribution of source and/or author is at best uncertain, if not impossible.

For example, some of Plaintiff's exhibits are mere number tabulations.[42] The entity performing the tabulation and the criteria selecting the numbers tabulated are unknown. Many of the tabulations contain only unidentified numbers. Some have footnotes that reference the source of the data, e.g., "based upon data from National Health Interview Surveys." The footnotes, however, add neither reliable indicia of source or author, nor identify the criteria for selecting the data to be compiled or for any underlying survey. Documents consisting wholly of

---

[40] Fed. R. Evid. 902, advisory committee's note.

[41] "'Self-authenticating' means that documents that on their face appear to have the features described in the rule automatically meet the foundational requirement of 'authentication' explained under the Practice Comment to Rule 901 and are thus provisionally accepted as what they appear to be—that is, that they are issued or kept by their purported source—unless evidence shows that they are not in fact what they appear to be." Fed. R. Evid. 902(6) practice comment.

[42] See, e.g., U.S. Exhibits 74086, 74085, 74084, 74083, 74087, 74095, 74094, 74093, 74092, 74091, 74090, 74089, 74088, 74038, 74042, 74044, 74045, 74046, 74048, 74053, 74054, 73645, 73302, 73417, 73418, 74036, 74037, 73692 and 73113.

computer code that are offered as exhibits[43] suffer from the same problems. Not only do these documents lack author and source information, but also the computer code reveals no reasonable or reliable information identifying the purpose of or the possible use for the documents. Without the source and author of the documents or knowing the use and scope of the survey or the computer programs, the documents lack indicia of reliability. Authenticity is denied.

### B. Newspaper And Publications Exhibits

The Newspaper and Publication Exhibits listed in Appendices E and G are not self-authenticating under Fed. R. Evid. 902(6) because the substantive pages have no indication they are related to the newspaper or publication title page included with the article offered. For many of the Newspaper and Publication Exhibits, Plaintiff asserts that any alterations, even to the text, do not affect the authenticity, relevance or substance of the exhibit.[44] Yet, this notion vitiates the very purpose of Fed. R. Evid. 902(6) where publication is meant to ensure reliability and strikes at the heart of authenticity, as the hallmark of authenticity is the ability to confirm that an item is what it is purported to be.[45]

For newspaper exhibits, articles relating to smoking or health appear on pages that do not identify the source or date of the article, or any information to link these "non-titled" pages to the title pages containing the publication information. On other publications in the Newspaper and Publication Exhibits, the only indicia of publication is handwritten marginalia allegedly identifying the source made by an unknown author. A handwritten note by an unknown author is not reliable indicia of publication.

---

[43] See, e.g., U.S. Exhibits 73415, 73699, 73693, 73694, 73695, 73696, 73697, 73698 and 73691.

[44] See Pl. Opp., Att. A at ¶ 17.

[45] Even should Plaintiff substitute these non-authentic U.S. Exhibits with exhibits containing the proper indicia of reliability, the statements contained in the newspaper or periodical are not self-authenticating. See New England Mut. Life Ins. Co. v. Anderson, 888 F.2d 646 (10th Cir. 1989).

Additionally, other exhibits in this group include collections of pages from various publications. In some cases, some pages sufficiently identify the periodical from which they derive. Other pages, however, are devoid of any legible publication data. Thus, there is no reliable way to determine the source of the pages that lack legible indicia of source or to associate them with pages that do have publication data.[46]

Although these Newspaper and Publication Exhibits may "appear" to be published material because of their format, their reliability is uncertain because they lack indicia reliably identifying the source and/or lack indicia connecting them to a "self authenticating" source. The self-authenticating provisions of the Federal Rules of Evidence apply to newspapers and other publications because the publication vests them with indicia of reliability. In the identified Plaintiff's exhibits, there is no indicia on the page with the substantive tobacco or smoking-related article to identify its source or reliably link it to any publication information. Accordingly, authenticity is denied.

### C. Misleading Documents

Plaintiff's Exhibits listed in Appendices E and H ("Misleading Document Exhibits") possess features that are misleading and lack sufficient information for proper authentication. The Misleading Documents Exhibits have only illusions of authenticity. Upon examination, they reveal defects which cast substantial doubt as to the source of the document and/or raise questions regarding possible modifications. Accordingly, their authenticity must be denied. The Misleading Document Exhibits lack indicia of reliability for a variety of reasons. Some of these reasons include:

- Exhibits are not marked with Defendants' Bates numbers;

---

[46] Additionally, certain Plaintiff's exhibits, e.g., U.S. Exhibit 73328, appear to be chapters from publications, but lack publication information on the chapter to identify the source or verify publication.

- Exhibits contain Defendants' Bates numbered pages compiled with non-Bates numbered pages;
- Exhibits contain identically numbered pages with different text;
- Exhibits are modified versions of Defendant's documents;
- Exhibits combine cover memoranda or faxes with improper attachments, and/or
- Exhibits do not exist in Defendants' files as proffered with the Bates numbers provided.[47]

Plaintiff argues that Defendants have not offered any evidence to rebut the presumption of authenticity of these documents. In accordance with the provisions of Order #51.III.D.4 and Order #470, Defendants have denied the authenticity of these Misleading Document Exhibits in their objections filed June 1, 2004, listing the specific reason(s) authenticity was denied, e.g., Deny Authenticity: Altered - Marginalia. Where incomplete copies of documents are offered, the presumption of authenticity is nullified. See Order #51.III.D.4.c. Plaintiff's Opposition

[47] U.S. Exhibit 76084, for example, is not in publication print format. Moreover, it contains numbered and unnumbered pages with different text on pages that bear the same page number. U.S. Exhibits 61242 and 46368 have no Defendants' Bates numbers and are modified versions of a known Philip Morris document; however, the author and purpose of the modification is unknown. U.S. Exhibit 25641 has a first page that is a Bates numbered Philip Morris facsimile cover sheet that references an attachment; however, the pages attached in U.S. Exhibit 25641 have no Bates numbers and are not copies of the original attachment. U.S. Exhibits 60689, 73100 and 58736 appear to be summaries of other documents. These Exhibits bear no Defendant Bates numbers and the author and source of the summaries are unknown. U.S. Exhibit 72998 bears a legend of "Philip Morris U.S.A. Youth Smoking Presentation," but has no Philip Morris Bates number and Philip Morris has not found a copy of the document. U.S. Exhibit 77978 is labeled a "draft" Philip Morris memorandum, however, it has no Defendants' Bates number and a final version of a similar document in Philip Morris files predates the unnumbered draft. U.S. Exhibits 76138 and 76137 appear to be Philip Morris letters but they do not bear its Bates numbers and no file copies have been located. U.S. Exhibit 74079 has no Defendant Bates number. The face of the Exhibit indicates it is a presentation by Phil Graham, but Defendants have no way of confirming this. U.S. Exhibit 80791 is a CD-ROM ("CD") on which the file titles do not match their content. U.S. Exhibits 61312, 61365 and 73054 identified as "Farone Reliance" material, contain data not found in the original Philip Morris documents. U.S. Exhibit 73054 is purportedly a document admitted in another case where one or more Defendants were parties. However, the U.S. Exhibit as designated is not the exhibit admitted in the prior action. Furthermore, the Exhibit is a mixture of items and the source, purpose, and date for specific portions is unknown. The author of this collage of items is unknown. U.S. Exhibits 80780, 80781 and 80782 are purported to be CDs containing information to be designated as trial exhibits. However, despite Defendants' use of a number of computer programs, attempts to access information on the CDs has yielded no information. Accordingly, it is impossible to determine the contents of the CD and authenticate source and/or author and/or contents. In fact, it is reasonable to conclude that the CD does not contain any intelligible information. In other cases, the CDs appear to contain information that may have originated from Defendants but due to the size of the files and the change in format, it is impracticable to verify the source. See, e.g., U.S. Exhibits 80756, 80759, 80764, and 80767.

offered no evidence to establish authenticity. Moreover, where the source and/or purported use are unknown, the objection to genuineness remains until reliability is proven.

Plaintiff also opposes Defendants' objections to the Misleading Documents Exhibits asserting that they are Defendants' own documents. See Plaintiff's Opposition, e.g., U.S. Exhibits 72998, 25641, 76138, 76137, 76326 and 76370. As explained above and more specifically in footnote 47, these Plaintiff exhibits contain pages that have no Defendant Bates numbers, are comprised of mismatched documents offered as related documents and contain a host of other problems that cannot be verified because Defendants do not have copies. These differences demand proper authentication by the proffering party.

**D. Misappropriated Documents**

Plaintiff's exhibits listed in Appendices E and I are a collection of documents with no Bates numbers and no exact duplicate in Philip Morris' files, and which either by specific mention of name and/or topic, are tied to a terminated Philip Morris employee, Michael Watkins ("Watkins Documents").[48] Because these documents were apparently misappropriated from Philip Morris and possibly include materials modified when outside of its custody and control, the authenticity is denied until proof can be offered to establish reliability or their use is

---

[48] U.S. Exhibits 77634, 77644, 77643, 77645, 77642, 77640, 77639, 77638, 77637, 77631, 77629 and 77667 appear to be Philip Morris documents containing communications between its employees. The common features of this material are they have no Philip Morris Bates number, and they name or relate to Mr. Watkins. Since Philip Morris does not have a copy of these documents, it is reasonable to assume Mr. Watkins took the only copies. Moreover, in instances where Philip Morris has similar documents, the Watkins' copies have modifications not found on the company copies. For example, U.S. Exhibit 77641 bears some similarity to a known Philip Morris e-mail but the text, exact time and recipient information does not match.

U.S. Exhibits 77654, 77657, 77655, 77663, 77656 and 77635 are apparent presentations. However, these documents do not match company Bates numbered documents. The documents variously contain material not found in authentic known documents, are missing information found in known copies and/or have altered dates as compared to company documents. Further, some contain unverified handwritten marginalia that suggest a distribution that cannot be verified.

U.S. Exhibits 77904, 77651 and 77652 appear to be portions of presentations on a subject matter with which Mr. Watkins was involved. These U.S. Exhibits have no Bates numbers and no copies or partial copies have been identified in Philip Morris files.

identified to establish they are what they are purported to be. While some of the Watkins Documents may resemble Philip Morris documents, they do not bear sufficient indicia of reliability to establish authenticity.[49] Accordingly, Philip Morris denies the authenticity of these exhibits.

Further, as portions of these documents may contain misappropriated Philip Morris trade secret material, should the Court admit these materials, Philip Morris reserves the right to seek trade secret protection, as appropriate.

### E. Website Printouts

Plaintiff's exhibits listed in Appendices E and J contain indicia suggesting they relate to or were obtained from a website. None of these documents have Bates numbers and Defendants have not located copies in their files. Further, searches on the Internet for these documents and the web address information available or provided, failed to locate the designated Plaintiff exhibit.

For example, U.S. Exhibits 72781 and 64697 have no date but do have what appear to be handwritten website addresses on the face of the documents. U.S. Exhibits 73376, 76377 and 63565 have printed website addresses on the face of the documents. Use of the handwritten or printed web address information, however, does not lead to a website containing the text of the exhibit. As U.S. Exhibits 72781 and 64697 are titled "Current Marketing Statement from Philip Morris Website," the absence of a date on the exhibit and the fact that it is not reflective of current website text is misleading. Last, U.S. Exhibits 73266, 78266 and 65080 have no date or web address on the face of the document, and thus, the source cannot be identified.

[49] U.S. Exhibits 77901 and 77900 are figures with no Bates number or indicia of author or source. The subject matter is generally on topics known to be associated with Watkins' projects.

Plaintiff claims that some of these documents are Defendants' documents. The lack of Defendant Bates numbers, inability to find the documents on the alleged websites, failure to identify the source and/or author of the documents, however, shows lack of reliability, and authenticity is thus denied.

## XI. DEFENDANTS OBJECT TO PLAINTIFF'S DESIGNATION OF EXHIBITS COMPILING UNRELATED DOCUMENTS

Defendants have lodged Fed. R. Evid. 901(a) authenticity objections to Plaintiff's trial exhibits that consist of compilations of documents produced by one or more than one Defendant or other entity into a single exhibit where the producing Defendant(s) did not maintain or produce these multiple documents as a compilation or where the documents that constitute the compilation are not reasonably related to the same subject matter. Defendants maintain the objection to these 362 exhibits to the extent that Plaintiff purports at trial that the multiple documents that comprise the exhibit were or are a compilation of documents created or maintained by the producing Defendant or Defendants. Because Plaintiff has not disclosed the intended use of the exhibits at trial and Defendants thus cannot determine the matter in question that Plaintiff may claim, Defendants continue this objection on Plaintiff's trial exhibits listed in Appendix K.

Defendants withdraw their multiple documents authenticity objections to several Plaintiff's trial exhibits. See Defendants' Revised Objections at Appendix A. To the extent that such exhibits are also subject to objections on the grounds that one or more of the documents in the multiple document exhibit are incomplete or altered, Defendants maintain those objections subject to the provisions of Section IV(C), supra.

## XII. R.J. REYNOLDS TOBACCO COMPANY'S OBJECTION TO CERTAIN DOCUMENTS ON THE BASIS OF ERRONEOUS DOCUMENT DATES

Plaintiff asserts that Reynolds produced documents "with false date information" and Reynolds improperly "altered" the dates of documents. (Pl. Opp. at 34.) Plaintiff's assertions are wrong and misrepresent Reynolds' narrow and specific objection. Reynolds' objection directly, and without contending any fault on the part of Plaintiff, pointed out that the date on the face of six specifically identified Plaintiff's trial exhibits was wrong and objected to authenticity to the extent that Plaintiff intends to introduce the documents as evidence to support a finding that relies upon the documents having been created on the date set forth on their face.[50] Defs' Objections at 9-10. Reynolds readily admits that the objection is distinctive, but the objection arises as an artifact of production from electronically stored files, not, as Plaintiff contends, from any improper conduct.

Each of the exhibits at issue is an attachment to an e-mail. Reynolds produced several thousands of e-mails and attachments that were downloaded from stored electronic files of e-mails and attachments.[51] Reynolds, in the process of reviewing Plaintiff's trial exhibits, discovered that six exhibits selected by Plaintiff from Reynolds' computer-file-based e-mail and attachment production bore erroneous dates either because the person who created the electronic file used an "autodate"[52] feature or entered the wrong date (a typographical error).[53]

---

[50] The six exhibits are U.S. Exhibits 22140, 22188, 54418, 54438, 54455, and 54462. Reynolds also objected to U.S. Exhibit 25472 but subsequently determined that 25472 was removed from Plaintiff's May 3, 2004 trial exhibit list.

[51] Although Reynolds produced thousands of e-mails and attachments from hard copy formats, it also conducted searches of electronically stored e-mails and attachments. In order to complete the production, responsive e-mails and attachments were copied from the tapes and downloaded for production to CDs in searchable .pdf format (an image format). The production was made on a rolling basis beginning in December 2001.

[52] Many software programs, e.g., word processing and spreadsheet programs, provide options that automatically insert the current date when various actions are taken with the electronic file. Typically, opening the file triggers changing the date to the current date (the date the action is taken). A user can select "autodating," sometimes unwittingly, by choosing a format for a document footer that includes date, time, and file name or by using a form

The following Plaintiff's Exhibits are e-mail attachments produced by Reynolds from electronic files that included an autodate feature in the date field or the footer of the attachment:

> U.S. Exhibit 22140, U.S. Exhibit 22188, U.S. Exhibit 54455, and
> U.S. Exhibit 54462.

Each of the underlying e-mail attachments was forwarded within Reynolds by a transmittal e-mail, which was produced by Reynolds and preceded the attachment in Reynolds' production but was not included in Plaintiff's exhibit.[54] The transmittal e-mail establishes the date on which the attachment was transmitted within Reynolds and accordingly the latest date on which the author of the attachment created the transmitted attachment.[55] These exhibits are described further below.

> U.S. Exhibit 22140 (RJR0000000008001178/70019 0551) - The e-mail attachment is a memorandum that bears the date January 25, 2002 in both the date line for the memorandum and the footer. The transmittal e-mail string, attached as Appendix L,[56] (0000000008001178/70019 0550) is dated February 19, 1996

(continued...)

for certain document types, e.g., a memorandum or correspondence, that includes a date field. When files containing an autodate feature were being processed for production by Reynolds, the change of date was triggered and the .pdf image reflected the date when the document was prepared for production, not the date on which the author created the document. Because the .pdf image is not the electronic file, the autodate feature does not operate when the .pdf image is printed or copied.

[53] With the exception of one of the exhibits, Reynolds was unaware of the erroneous dates until the review of Plaintiff's trial exhibits. Plaintiff contends that Reynolds "utterly failed to inform the United States of [Reynolds'] provision of documents with false date information." (Pl. Opp. at 34.) The statement is incorrect. In Defendants' Memorandum In Opposition To Plaintiff's Motion To Compel Production Of The Direct Mail Marketing Databases Of R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Co., Lorillard Tobacco Co., And Liggett Group, Inc. (served February 3, 2004), the date issue with respect to the e-mail attachment duplicated in U.S. Exhibit 22140 was discussed (pp. 23-24 n.32). Plaintiff accordingly was well aware of this issue months before the submission of its revised trial exhibit list on May 3, 2004.

[54] Reynolds produced e-mails as e-mail sets, i.e., an e-mail and attachments (if any) constituted an e-mail set. Each page (or image) of an e-mail set bore an identical RJR XXXXXX number. The RJR number served to unify e-mail sets in the production. A second Bates number with a five digit 70XXX followed by a unique four digit page number also was applied to each page.

[55] The date on which the attachment was transmitted is the best, reasonably available date to establish the latest date on which the attachment was created in the form transmitted. The transmittal date does not establish the precise date, prior to the transmittal e-mail, on which the attachment was created.

[56] The attached exhibits that contain the transmittal e-mails also include the attachment with the U.S. Exhibit number for ease of reference.

and further reflects that the author of the attachment first forwarded the attachment via e-mail on September 19, 1995. Thus the attachment was created by the author on or before September 19, 1995. The text of the attached memorandum further supports the earlier date in that the memorandum refers to a future action to be taken in March 1996 ("In addition we plan to start quarterly age verification of all incremental names starting in March of 96."). The transmittal e-mail bears both the same RJR number as the attachment and the immediately preceding Bates page number and further refers to the attachment file name (AGEVERF.DOC) that appears on the attachment.

U.S. Exhibit 22188 (RJR0000000530000925/70025 0386-0387) - The e-mail attachment is a report that bears January 25, 2002 in the footer. The transmittal e-mail, attached as Appendix M, (RJR0000000530000925/70025 0382) is dated March 6, 1998 and refers to several attached documents, one of which is EW2.DOC, which corresponds to the U.S. Exhibit (see page 70025 0387 ("ew-2ct.doc"). Thus the attachment was created by the author on or before March 6, 1998. The transmittal e-mail bears the same RJR number as the attachment and the Bates page number of the transmittal precedes the page number of attachment by four pages, reflecting three preceding attachments referenced in the transmittal e-mail.

U.S. Exhibit 54455 (RJR0000000515043860/70018 6080) - The e-mail attachment is a bullet point outline that bears January 17, 2002 in the footer. The transmittal e-mail, attached as Appendix N, (RJR0000000515043860/70018 6075) is dated September 10, 1996 and refers to attachments at ECL1_.doc that corresponds to the to the U.S. Exhibit ("ECL1.SEP(5)"). Thus the document was created by the author on or before September 10, 1996. The transmittal e-mail bears the same RJR number as the attachment and the Bates page number of the transmittal precedes the page number of the attachment reflecting that there were 4 other pages (ECL._(1)-(4)) that were also attached to the transmittal e-mail. The intervening pages (70018 6076-6079), which were produced to Plaintiff, are also included in Appendix N for reference.

U.S. Exhibit 54462 (RJR0000000515045522/70018 6252-6267) - The e-mail attachment is a series of outlines that bear January 17, 2002 in the footer on each page. The transmittal e-mail[57] (RJR0000000515045522/70018 6251), attached as Appendix O, is dated October 24, 1996 and refers to attachment CSN2.DOC that corresponds to the U.S. Exhibit (CSN2.OCT(1)-(16)). Thus the document was created by the author on or before October 24, 1996. The transmittal e-mail bears the same RJR number as the attachment and the Bates page number of the transmittal immediately precedes the first Bates page number of the attachment.[58]

---

[57] Plaintiff also designated the transmittal e-mail as a Plaintiff's trial exhibit (U.S. Exhibit 54461).

[58] Plaintiff combined exhibits 54462, 54463, 54464, 54465 and 54466 identified on its February 17, 2004 exhibit list into 54462 on its May 3 exhibit list, which is reflected in the multiple exhibit objections in Appendix K.

Each of these Plaintiff's trial exhibits bears a date on its face that is inaccurate due to the use of autodate features, and the transmittal e-mail date establishes the latest date in which the document was created in the form created and transmitted by its author.[59] Defendants continue to assert the objections as to these Plaintiff's trial exhibits to the extent Plaintiff at trial offers the exhibit to support a finding that the document is dated after the transmittal e-mail date.

Plaintiff's trial exhibits 54418 and 54438 are both memoranda attached to e-mails that bear dates that reflect that the authors of the memoranda entered the wrong year, or that the wrong year was entered as a result of computer based error—in both cases the year of the date in the date line and in the footer is "2020" and is obviously incorrect. U.S. Exhibit 54418 (RJR1531047180/70001 1732-1734) bears December 16, 2020 in the dateline and the footer of the memorandum. The transmittal e-mail (RJR1531047180/70001 1731) (attached at Appendix P), was sent on November 11, 1999 and bears the same RJR number as the attachment and the Bates page number immediately preceding the Bates page number of the attachment. Thus the memorandum was created on or before November 19, 1999. U.S. Exhibit 54438 (RJR0000000001070635/70013 5561-5563) bears December 29, 2020 in the dateline and the footer of the memorandum. The transmittal e-mail (RJR0000000001070635/70013 5560) (attached at Appendix Q), was sent on August 10, 1998, and bears the same RJR number as the attachment and the Bates page number immediately preceding the Bates page number of the attachment. Thus the memorandum was created on or before August 10, 1998. Defendants continue the objections as to these Plaintiff's trial exhibits to the extent Plaintiff at trial offers the exhibit to support a finding that the document is dated after the transmittal e-mail date.

---

[59] Each of the attachments on its face is dated in January 2002, the time period in which Reynolds prepared for production and produced documents from electronically stored e-mails.

Plaintiff further requests the Court to order Reynolds "to provide copies of these documents to the United States that contain accurate date information." Pl. Opp. at 34; see also Plaintiff's Proposed Order. Reynolds cannot recreate the e-mail attachments with "accurate date information" on the face of the attachments because to do so would require alteration of the information generated by the underlying electronic file. The information provided herein, however, establishes the latest date on which the attachment was created in the form transmitted and therefore meets the intent of Plaintiff's request. In addition, Reynolds does not object on the grounds of authenticity or privilege to the introduction of the transmittal e-mails that it has provided in the attached Appendices.

## XIII. CONCLUSION

For the reasons stated above, Defendants respectfully request the Court sustain Defendants' objections and order Plaintiff to provide exhibits that comply with the Federal Rules of Evidence and orders of this Court, and order Plaintiff to replace its exhibits with those clean, complete copies of the exhibits provided by Defendants bearing Defendants' Bates numbers that are listed in Appendix B.

Dated: July 16, 2004

Respectfully submitted,

/s/ Jonathan M. Redgrave

Robert F. McDermott, Jr. (D.C. Bar No. 261164)
Peter J. Biersteker (D.C. Bar No. 358108)
Jonathan M. Redgrave (D.C. Bar No. 474288)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Robert C. Weber
Paul G. Crist
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Attorneys for Defendant
R.J. Reynolds Tobacco Company

/s/ Jonathan M. Redgrave *for*

Timothy M. Broas (D.C. Bar No. 391145)
WINSTON & STRAWN LLP
1400 L Street, N.W.
Washington, D.C. 20005-3502
Telephone: (202) 371-5700

Dan K. Webb
Thomas J. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-6700

Theodore V. Wells, Jr. (D.C. Bar No. 468934)
James L. Brochin (D.C. Bar No. 455456)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000

Attorneys for Defendants
Philip Morris USA Inc.
(f/k/a Philip Morris Incorporated) and
Altria Group Inc.
(f/k/a/ Philip Morris Companies Inc.)

/s/ Jonathan M. Redgrave *for*

Kenneth N. Bass (D.C. Bar No. 386070)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, D.C. 200005
Telephone: (202) 879-5000

David M. Bernick
Stephen R. Patton
KIRKLAND & ELLIS LLP
200 East Randolph Drive, Suite 5900
Chicago, Illinois 60601
Telephone: (312) 861-2000

Attorneys for Defendant
Brown & Williamson Tobacco Corporation
(individually, and as successor in interest to
The American Tobacco Company)

/s/ Jonathan M. Redgrave *for*

J. William Newbold
Michael B. Minton
Richard P. Cassetta (D.C. Bar No. 457781)
THOMPSON COBURN LLP
One US Bank Plaza, Suite 3500
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6000

OF COUNSEL:

Gene E. Voigts
Richard L. Gray
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550

Attorneys for Defendant
Lorillard Tobacco Company

/s/ Jonathan M. Redgrave *for*
David L. Wallace
Jessica L. Zellner
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza, 34th Floor
New York, New York 10112-0219
Telephone: (212) 408-5100

Attorneys for Defendant
British American Tobacco (Investments) Limited (f/k/a British-American Tobacco Company Limited)

/s/ Jonathan M. Redgrave *for*
J. William Newbold
Michael B. Minton
Richard P. Cassetta (D.C. Bar No. 457781)
THOMPSON COBURN LLP
One US Bank Plaza, Suite 3500
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6000

Steven Klugman
Steven S. Michaels
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000

Attorneys for Defendant
The Council for Tobacco Research-U.S.A., Inc.

/s/ Jonathan M. Redgrave *for*
James A. Goold
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-6000

Attorneys for Defendant
The Tobacco Institute, Inc.

/s/ Jonathan M. Redgrave *for*
Leonard A. Feiwus
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, New York 10019-6799
Telephone: (212) 506-1700

Attorneys for Defendant
Liggett Group Inc.