# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 99-2496 (GK) |
| PHILIP MORRIS USA INC., f/k/a PHILIP MORRIS INC., *et al.*, | : |
| Defendants. | : |

## MEMORANDUM OPINION

Six organizations -- Tobacco-Free Kids Action Fund, American Cancer Society, American Heart Association, American Lung Association, Americans for Nonsmokers' Rights, and National African American Tobacco Prevention Network ("Intervenors") -- have moved to intervene under Federal Rule of Civil Procedure 24 "for the very limited purpose of being heard on the issue of the permissible and appropriate remedies in this case, should the Court find the defendants liable for the unlawful activities alleged in the Amended Complaint by the plaintiff United States." Mot. to Intervene, p. 1. The Government has taken no position on the Motion.[1] Upon consideration of the Motion, Joint Defendants' Opposition, the Reply, the extensive case law cited in the pleadings, and the entire record in this case, the Court concludes that the Motion should be **granted**.

Joint Defendants vigorously oppose the granting of intervention. While they deny that the Intervenors have met any of the requirements of Rule 24(a) and (b), their main argument focuses on the lack of timeliness and lack of standing.

---

[1] Intervenors state that, by taking no position regarding the merits of the motion, the Government has conceded the validity of their arguments. That position is an overstatement, to say the least.

**I.      The Governing Law: Federal Rule of Civil Procedure 24(a) and (b)**

Fed. R. Civ P. 24(a) provides:

[u]pon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In Nuesse v. Camp, 385 F.2d 694, 701 (D.C. Cir. 1967), our Circuit explained that Rule 24(a)(2) was "obviously designed to liberalize the right to intervene in federal actions." In order to do so, the applicant must demonstrate an "(i) interest in the transaction, (ii) which the applicant may be impeded in protecting because of the action, (iii) that is not adequately represented by others," and above all that the motion to intervene is timely. Id. at 699.

Fed. R. Civ. P. 24(b) provides:

[u]pon timely application, anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

In deciding whether to use its discretion and allow permissive Rule 24(b)(2) intervention, "the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Id.

**II.     Timeliness**

Joint Defendants argue that the Motion fails, under both Fed. R. Civ. P. 24(a) and (b), to meet the threshold of timeliness. This argument simply has no merit.

It is, of course, true, as Joint Defendants note, that this case was filed in 1999, that complex and lengthy pretrial proceedings, including discovery and motions, took place over a period of five years, and that we have just completed a trial of almost nine months' duration. However, in light

of the "very limited purpose" for which Proposed Intervenors seek to be heard, and the series of events leading up to the filing of their Motion, the Court concludes that the instant Motion is not untimely.

On June 7, 2005, during closing arguments, the United States substantially shifted its position about the remedies it was requesting. Since March 21, 2005, after the Court of Appeals' February 4, 2005 decision excluding disgorgement as a permissible remedy under RICO, United States v. Philip Morris USA Inc., et al., 396 F.3d 1190 (D.C. Cir. 2005), the Government had indicated that it would seek, as an appropriate remedy under that decision, an order requiring Joint Defendants to fund a nation-wide smoking cessation program for 25 years at a cost of $130 billion. Thereafter, at closing arguments on June 7, 2005, the Government informed the Court that it was reducing its requested remedy to a $10 billion, five year, industry-funded cessation program. Because of concern about changes in the Government's position, and lack of clarity and finality about those changes, the Court required the Government to file a proposed remedy order on June 27, 2005. In its proposed remedy order, the Government again changed its position and now seeks $14 billion over 10 years for a smoking cessation program.[2] On June 29, 2005, a mere two days after the Government committed itself in writing to its final proposed remedy, Intervenors filed the present Motion.

A two-day span of time can hardly be called "untimely," no matter how that word is defined. Moreover, it is important to make it very clear that Intervenors will be held to their representation that

---

[2] The proposed remedy order fails to include a number of other provisions which the Government claimed at closing arguments that it would be requesting. See fn. 5, infra.

> they do not seek to present any additional evidence in this case, nor do they seek to test any of the evidence that has already been produced . . . they seek only the opportunity to submit a brief and reply brief . . . pursuant to the same schedule that now applies to the Government Plaintiff – i.e., a post-trial brief on August 24, 2005 and a reply brief on September 19, 2005 – and to be heard on this issue should the Court entertain further arguments on it. The Proposed Intervenors are also willing to limit the number of pages in the opening brief and reply brief, as the Court deems appropriate.

Mot. to Intervene, p. 2.

In <u>Hodgson v. United Mine Workers of America</u>, 473 F.2d 118, 129 (D.C. Cir. 1972), our Court of Appeals flatly rejected the untimeliness argument which Joint Defendants now make:

> the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness. Rather, the court should also look to the related circumstances, including the purpose for which intervention is sought, the necessity for intervention as a means of preserving the applicant's rights, and the improbability of prejudice to those already parties in the case.

In light of all these circumstances, it is clear that the Motion for Intervention, especially given the fact that its limited parameters are directly responsive to events which immediately preceded its filing, is timely under Fed. R. Civ. P. 24.

### III.   Standing

#### A.   "Protectable Interest"

The Intervenors consist of three membership organizations (Tobacco-Free Kids Action Fund, Americans for Nonsmokers' Rights, and National African American Tobacco Prevention Network) and three non-membership organizations (American Cancer Society, American Heart Association, and American Lung Association). Under the law of this Circuit, Intervenors must demonstrate under both Rule 24(a) and/or (b) that they have a sufficient "protectable interest" in the proceedings and that they can demonstrate Article III standing. <u>Southern Christian Leadership Conference v. Kelley</u>, 747 F.2d 777, 779 (D.C. Cir. 1984) (holding that the "interest" required by Rule 24(a) is that

"required by Article III of the Constitution . . . [with respect to] the question of standing"). See also Mova Pharmaceutical Corporation v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998).

Joint Defendants focus their standing argument on Intervenors' lack of "injury-in-fact." In Friends of the Earth v. Laidlaw Environmental Service (TOC), Inc., 528 U.S. 167, 180-81 (2000), the Supreme Court reaffirmed its holding in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1997), and explained:

> to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[3]

Based upon a review of their declarations, the Court concludes that Intervenors have alleged concrete and particularized harm which is neither conjectural nor hypothetical and which is actual and imminent.

As to the three membership organizations, they assert associational standing on behalf of their members under the standards enunciated in Hunt v. Wash. State Apple Adver. Comm'n., 432 U.S. 333, 343 (1977). The declarations of Cynthia Howlett, Sherri Watson Hyde, and William Corr spell out the specific threat to the health and safety of themselves and their children which they allege to be caused by the Joint Defendants' false and misleading statements and deceptive marketing practices relating to smoking and nicotine. Their declarations explain the Declarants' belief that the Joint Defendants' conduct increases their risk for addiction to tobacco and, therefore,

---

[3] Joint Defendants do not challenge either causation or redressability; therefore, there is no need to discuss those issues.

for illness and death, and that such conduct will also hinder those already addicted from overcoming their addiction.

In a case which is remarkably similar to the present one, <u>Public Citizen v. Federal Trade Commission</u>, 869 F.2d 1541 (D.C. Cir. 1989), our Circuit ruled that the membership organizations seeking to intervene had established sufficient injury-in-fact by asserting their belief that they were at an increased risk of being induced to smoke or being exposed to the smoking of others by virtue of the FTC regulation they were challenging.  The plaintiffs in <u>Public Citizen</u> were objecting to a Government regulation lacking warnings about the danger to them and to their children from smokeless tobacco, i.e., snuff and chewing tobacco.  The court noted that members with children "would have standing to sue in their role as parents" and that "even beyond the injuries to children that can pass indirectly to parents, a parent has his or her own direct, legally cognizable interest in preserving the highest level of health for his or her child." <u>Id</u>. at 1550.  Thus, it is clear that parents suffer a concrete and particularized injury necessary to support standing even when it is their children's health which is placed at risk, as well as their own.[4]  As Declarants have noted, the harm that they allege is occurring now and, in terms of routine and ongoing exposure to misleading advertisements, is imminent.

Joint Defendants argue that the injuries complained of by Intervenors are foreclosed under <u>Lujan</u>, 504 U.S. at 564, because they are too speculative.  However, <u>Lujan</u> is distinguishable.  In that case, plaintiff was denied standing because he could allege "only an injury at some indefinite

---

[4] Both American Cancer Society and American Heart Association were found to have standing in <u>Public Citizen</u>.

future time" and "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." Id. at 564 n. 2. Neither reason for denying standing is present in this case.

Moreover, in Mountain States Legal Foundation v. Glickman, 92 F.3d 1228, 1235 (D.C. Cir. 1996), the Court of Appeals concluded that plaintiffs had Article III standing even though they were alleging that their injury consisted of risk of a future wild fire caused by the decision of the U.S. Forest Service to limit the amount of timber that could be removed from a particular area. Rejecting the argument that this risk of a future wildfire was too "speculative" under Lujan, the Court of Appeals noted that "[t]he more drastic the injury" at stake, "the lesser the increment in probability necessary to establish standing." Id. at 1234. In this case, given the nature of the injury to health which is at stake, the allegations of severe nicotine addiction resulting from smoking, and the allegations of disease and death resulting from such addiction, Intervenors have met their obligation to demonstrate that they will be suffering sufficient injuries from Joint Defendants' alleged unlawful activities to meet the requirements for Article III standing. See also Louisiana Environmental Action Network v. EPA, 172 F.3d 65, 68 (D.C. Cir. 1999).

As to the three non-membership organizations, American Cancer Society, American Heart Association, and American Lung Association, they allege "injury-in-fact" in order to protect their own organization and institutional interests under the standards enunciated in Havens Realty Corporation v. Coleman, 455 U.S. 363, 379 (1982). There can be no question, based upon the declarations submitted and the long history of these organizations in the public health arena, that they devote much of their time and resources to convincing young people not to smoke and to educating the public about the dangers of addiction and the difficulties of quitting smoking. As John Kirkland, President and Chief Executive Officer of American Lung Association, explained, the

organization "has long been active in research, education and public policy advocacy on the adverse effects of tobacco products."  Kirkland Declaration, ¶¶ 5, 9.  See also Smith Declaration, ¶¶ 2, 4-7; Nelson Declaration, ¶¶ 2-7.  These are precisely the "discrete programmatic concerns [that] are being directly and adversely effected by the challenged action," which the Court of Appeals ruled would demonstrate the requisite institutional injury to satisfy Article III standing requirements in Common Cause v. Federal Election Commission, 108 F.3d 413, 417 (D.C. Cir. 1997).

Joint Defendants also argue that Intervenors cannot meet Article III standing requirements because only the Government can sue for equitable relief under RICO and Intervenors have no such private right of action to do so.  The answer to Joint Defendants' argument is directly provided in Jones v. Prince Georges County, Maryland, 348 F.3d 1014, 1018 (D.C. Cir. 2003), holding that "under Rule 24(a)(2), the question is not whether the applicable law assigns the proposed intervenor a cause of action.  Rather, the question is whether the individual may intervene in an already pending cause of action. . . .  As the Rule's plain text indicates, intervenors of right need only possess an 'interest' in the litigation – not a 'cause of action' or 'permission to sue.'"  See also Trbovich v. United Mine Workers of America, 404 U.S. 528, 530-37 (1972).

For all these reasons, the Court concludes that Intervenors have satisfied the "protectable interest" requirement of Rule 24(a).

**B.     Impairment of "Protectable Interests"**

The next question under Rule 24(a) is whether the protectable interests of the Intervenors will be impeded or impaired if they are not allowed to intervene.  As spelled out earlier, the

Government has substantially altered the scope of the remedies it seeks in this case – in particular, the duration and funding of a national smoking cessation program.[5]

The Government no longer shares the views of Intervenors as to how extensive the appropriate remedies should be in this case in order to prevent and restrain future violations of RICO, should the Court find liability. The burden on Intervenors to show inadequacy of representation "is not onerous," Diamond v. D.C., 792 F.2d 179, 192 (D.C. Cir. 1986), and the interests they assert "need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." Nuesse, 385 F.2d at 703. In sum, it is perfectly apparent that disposition of this case will impair and impede the ability to protect Intervenors' interests and that the federal Government no longer adequately represents those interests.

**IV.   Prejudice to Joint Defendants**

Prejudice to any party is a significant factor which must be evaluated in consideration of any motion to intervene. Joint Defendants argue that they will be prejudiced in this case by the granting of this Motion. The Court does not agree. As already noted, the only purpose of this intervention is to make additional and different legal arguments to the Court based upon evidence already admitted in a completed record. Joint Defendants will have a full opportunity, in their opposition

---

[5] In addition to reducing the size of its smoking cessation remedy, the Government made other changes between closing argument and submission of its proposed remedies order. For example, its proposed order omits several marketing restrictions recommended by its own remedy experts, including restricting Joint Defendants' advertising and promotions to factual black and white communications, prohibiting youth-appealing or misleading imagery at retail outlets, requiring that cigarettes at retail outlets be kept behind the counter and out of sight, and requiring that cigarettes be sold in cartons rather than in single packs. In its closing argument on June 7, 2005, the Government endorsed each of these recommendations.

to the Government's post-trial brief, to counter any such legal arguments. The only concrete evidence of prejudice that Joint Defendants can even point to is that, because the post-trial brief will be filed three weeks after the parties file their final Proposed Findings of Fact, they will be deprived of an opportunity to identify and propose facts necessary to respond to whatever remedies the Intervenors will claim to be legally permissible, appropriate, and necessary. While the Court doubts that this will be the case, if Joint Defendants conclude that they need to submit additional Proposed Findings of Fact responsive to any legal argument made by Intervenors in their trial brief, they may file a motion to do so.

## V.     Permissive Intervention

Under Rule 24(b), in order to grant permissive intervention, there must be "a question of law or fact in common" between the applicant's claim or defense and the main action." Virtually all the questions of law and fact are identical at this point in the litigation between the Intervenors' remedies claims and the Joint Defendants'.

Having already determined that there will be neither undue delay nor prejudice in granting the intervention, and that Intervenors have standing, the Court concludes that the requirements of Rule 24(b) have been satisfied and that permissive intervention may be granted.

## V.     Conclusion

As explained herein, the six organizations seeking to intervene have satisfied all of the requirements of Fed. R. Civ. P. 24(a) and (b). Consequently, their Motion to Intervene will be **granted**. There is an additional reason which supports the granting of intervention. In a case of this magnitude, which could potentially affect the health and welfare of the American public, as well as the American economy (given our enormous annual expenditures on health care), it will serve the

public interest for major public health organizations, such as Intervenors, who have long experience with smoking and health issues, to contribute their perspectives on what appropriate and legally permissible remedies may be imposed should liability be found.


July 22, 2005                                              /s/
                                                           Gladys Kessler
                                                           United States District Judge