## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 99-2496 (GK)** |
| **and** | : | |
| | : | |
| **TOBACCO-FREE KIDS ACTION FUND,** | : | |
| **AMERICAN CANCER SOCIETY,** | : | |
| **AMERICAN HEART ASSOCIATION,** | : | |
| **AMERICAN LUNG ASSOCIATION,** | : | |
| **AMERICANS FOR  NONSMOKERS' RIGHTS,** | : | |
| **and NATIONAL AFRICAN AMERICAN** | : | |
| **TOBACCO PREVENTION NETWORK,** | : | |
| | : | |
| **Intervenors,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PHILIP MORRIS USA, INC.,** | : | |
| **(f/k/a Philip Morris, Inc.),** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM OPINION</u>

Joint Defendants filed a Motion to Strike Expert Opinions That Fail to Meet Federal Rule of Evidence 702's Standards Governing the Admissibility of Expert Testimony.  Upon consideration of the Motion, Opposition, Reply, the final Opinion filed in this case on this date, and the entire record herein, the Court concludes that the Motion should be denied for the following procedural and substantive reasons:

1.     The Motion is untimely.  Joint Defendants filed their Motion <u>after</u> the close of all the evidence in the liability phase of the trial.  Order #471 required that all objections to the trial testimony of experts, including objections based on Fed. R. Evid. 702, be made within two days of

the filing of the experts' written direct examinations. The deadline contained in Order #471 was obviously not followed, and therefore the Motion is untimely.

In addition, the Government was prejudiced by the untimely filing. Because the Motion was not filed until the record was closed on the liability phase of the trial, the Government had no notice of Joint Defendants' objections to the testimony and, more importantly, no opportunity to redirect its witnesses so as to elicit testimony which might meet the substance of those objections regarding the reliability of the methodologies used by its experts.

By failing to raise their Rule 702 objections prior to the close of evidence, Joint Defendants waived their right to assert them. See Macsenti v. Becker, 237 F. 3d 1223, 1230-1234 (10th Cir. 2001).

2.      In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court described the trial judge's gatekeeping function and her responsibility "to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. The Court went on to explain that this "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 593. In making that preliminary assessment, the trial court should consider whether the theory offered has been tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and whether the theory finds general acceptance in the relevant scientific community. 509 U.S. at 593-594.

In their Motion, Joint Defendants move to exclude the testimony of Dr. Michael Eriksen because he would not provide the answer they tried to elicit from him: namely, whether the

Defendants' advertising and marketing were, or were not, <u>the</u> cause of youth smoking behavior. Instead, Dr. Eriksen insisted on giving far more nuanced testimony: namely, that Defendants' promotion of their cigarettes was "a substantial contributing factor," "a cause, but not the cause," and "one cause among many" of the initiation and continuation of youth smoking.

Dr. Eriksen made it clear that in reaching his conclusions on that subject he had relied on various Reports of the Surgeon General, on numerous scientific studies, and on published peer-reviewed articles.  Dr. Ericksen also made it clear that the materials on which he relied contained "strong scientific empirical evidence that advertising and promotion affect awareness, recognition, recall, attitudes, intentions and actual smoking behavior."  Eriksen WD, 2:20-22; Eriksen TT, 1/27/05, 11447:3-16.  Dr. Eriksen testified that the Cochrane System Review upon which he relied and which itself applied the standard set by the Surgeon General for determining causal inference concluded "that there is evidence that marketing, cigarette marketing, increases cigarette initiation among young people based on those criteria [of the Surgeon General]."[1]  Eriksen TT, 2/2/05, 11900:22-11901:9.

In this case, it is clear that Dr. Eriksen's testimony fully satisfied the <u>Daubert</u> standards for reliability and fit.

---

[1]      It should be noted that the 1994 Report of the Surgeon General specifically addressed this issue:

> A misguided debate has arisen about whether tobacco promotion "causes" young people to smoke -- misguided because single-source causation is probably too simple an explanation for any social phenomenon.

U.S. Exhibit 64,693 at iii.

3.       Joint Defendants also move to exclude the testimony of Dr. Jack Henningfield regarding the use of ammonia technology to raise pH levels in order to increase the amount of "free" nicotine through improved smoke nicotine transfer efficiency, because of his admission that the state of science on this issue is untested and unclear.   In making this argument, Joint Defendants misinterpret a key portion of the reasoning in Daubert.

As the Supreme Court recognized,

> Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science.  See, e.g., . . . Brief for American Association for the Advancement of Science et al. as Amici Curiae 7-8 ("Science is not an encyclopedic body of knowledge about the universe.  Instead, it represents a process for proposing and refining theoretical explanations about the world that are subject to further testing and refinement" (emphasis in original).  But, in order to qualify as "scientific knowledge" [under the Federal Rules], an inference or assertion, must be derived by the scientific method...In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

509 U.S. at 590.

Thus, as the factfinder listens to and evaluates the testimony of scientific experts, she needs to be assured that such testimony rests on "appropriate validation," id., and that it has evidentiary reliability because the appropriate scientific method -- or process -- was used.  The Supreme Court emphasized in Daubert that the gatekeeper's role, as opposed to that of the factfinder, is to focus "solely on principles and methodology, not on the conclusions that they generate." 509 U.S. at 595.  Thus, expert testimony is not per se inadmissible because a consensus may not yet have been established in the scientific community about its substance, or because the most desirable and definitive research study has not been conducted. Ultimately, however, it is up to the factfinder to

determine which contradictory testimony of differing scientific experts is to be credited--providing that the initial determinations of reliability and fit have been made by the gatekeeper.

Dr. Henningfield stated that his testimony, regarding cigarette company Defendants' efforts to alter the pH of cigarette smoke in order to increase the rapidity with which a smoker receives full "satisfaction" from a cigarette, rested on basic principles of biochemistry about which there was no disagreement, on particular studies which had focused on aspects of the issue, and above all on Defendants' own internal research documents produced by their own scientists which supported his theory.

Based on his own enormous experience and education in the field, as well as the particular materials upon which he relied, Dr. Henningfield's testimony had sufficient indicia of scientific validity to be presented to the factfinder for evaluation and consideration.

4.      As to Dr. Slovic's opinions concerning the affect heuristic, the Motion must be denied as moot.  As is obvious from the final Opinion issued on this date, the Court did not rely on or cite to Dr. Slovic's testimony on this subject.  While a number of Findings of Fact were made based on other testimony he gave about different aspects of risk perception, the Motion only challenged his testimony one the affect heuristic theoretical decision making framework.

For all the foregoing reasons, the Court concludes that Joint Defendants' Motion must be **denied**.


                                        /s/
                                        _____
                                        Gladys Kessler
                                        United States District Judge

August 17, 2006

**Copies via ECF to all counsel of record**