**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **Plaintiff,** : | |
| : | **Civil Action No. 99-2496 (GK)** |
| **and** : | |
| : | |
| **TOBACCO-FREE KIDS ACTION FUND,** : | |
| **AMERICAN CANCER SOCIETY,** : | |
| **AMERICAN HEART ASSOCIATION,** : | |
| **AMERICAN LUNG ASSOCIATION,** : | |
| **AMERICANS FOR NONSMOKERS' RIGHTS,**: | |
| **and NATIONAL AFRICAN AMERICAN** : | |
| **TOBACCO PREVENTION NETWORK,** : | |
| : | |
| **Intervenors,** : | |
| : | |
| **v.** : | |
| : | |
| **PHILIP MORRIS USA, INC.,** : | |
| **(f/k/a Philip Morris, Inc.),** *et al.*, : | |
| : | |
| **Defendants.** : | |

**MEMORANDUM OPINION**

Joint Defendants filed a Motion to Strike Expert Opinions that Fail to Meet Federal Rule of Evidence 702's Standards Governing the Admissibility of Expert Testimony ("Daubert Remedies Motion" or "the Motion"). Upon consideration of the Motion, Opposition, Reply, the final Opinion filed in this case on this date, and the entire record herein, the Court concludes that the Motion should be denied for the following reasons:

1.  Joint Defendants have challenged the testimony given by a number of Government expert witnesses about the remedies that should be imposed in order to prevent and restrain future violations of RICO. Under the standards enunciated by the Court of Appeals in United States v.

Philip Morris, U.S.A. Inc., et al., 396 F.3d 1196, 1198 (D.C. Cir. 2005), this Court's "jurisdiction is limited to forward-looking remedies that are aimed at future violations" of RICO. Applying this legal standard, as of course it was bound to do, this Court in its final Opinion concluded that a number of remedies proposed by the Government could not, as a matter of law, be considered. Even though testimony was taken as to those remedies, their merits were never considered. Consequently, the Motion of the Joint Defendants as to the following witnesses is denied as moot: Dr. Michael Fiore's proposed national cessation program, Dr. Jonathan Gruber's proposal to reduce youth smoking, Dr. Michael Eriksen's proposal as to counter-marketing campaigns and marketing restrictions, and Dr. Max Bazerman's proposal to provide corporate monitoring and ensure corporate compliance.

2.   What remains outstanding in the Motion is Joint Defendants' challenge to Dr. Eriksen's testimony about three different proposals: for corrective statements, for disclosure of disaggregated marketing data and scientific research, and for elimination of low tar/light descriptors. Joint Defendants argue at great length that his testimony must be struck by the Court, acting as gatekeeper, not factfinder, because it is not based on empirical evidence. Again, as in their previous Daubert Motion, Joint Defendants misinterpret, not to say misrepresent, both the spirit and the letter of Daubert, as well as the relationship of the case to Fed.R.Evid. 702. At bottom, Joint Defendants conflate the Court's functions as gatekeeper and as factfinder when, in fact, they are profoundly different.

First, the Supreme Court stated forcefully that in determining evidentiary reliability for admissibility purposes, the "inquiry envisioned by Rule 702 is, we emphasize, a flexible one." 509 U.S. at 594. Expressing its confidence that federal judges possess the capacity to undertake this

review, the Court noted that "[m]any factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test." 509 U.S. at 593. While the Court gave examples of certain "key question[s] to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact" 509 U.S. at 593, it recognized that no one of the considerations it mentioned is a sina qua non of admissibility. Rather, what is essential is "[p]ertinent evidence based on scientifically valid principles". 509 U.S. at 597.

Second, nowhere in either Daubert or Rule 702 is there any requirement, as Joint Defendants suggest in their Memorandum at 8, that "empirical proof" be presented by an expert witness for his or her testimony to be admissible.

Third, Joint Defendants rely heavily on the Advisory Committee Notes to the 2000 Amendment to Rule 702. They are indeed helpful -- but not for Joint Defendants. Contrary to what Joint Defendants represent to be their tenor, the Notes explain that "Daubert set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony," that "Daubert itself emphasized that the factors were neither exclusive nor dispositive," and that "[c]ourts both before and after Daubert have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact." Summarizing the post-Daubert caselaw, the Notes conclude that "the rejection of expert testimony is the exception rather than the rule."

Fourth, nowhere in the Advisory Notes, just as nowhere in Daubert or Rule 702, is there any requirement -- or even suggestion -- that "empirical proof" be presented by an expert witness for the testimony to admissible. Interestingly, again contrary to the clear import of Joint Defendants' papers, the Advisory Notes do not even contain the phrase "empirical" or "empirical proof." What the

Advisory Notes do remind us is that Rule 702 requires that expert testimony be based on sufficient underlying "facts or data", and that "[t]he term 'data' is intended to encompass the reliable opinions of other experts."

Fifth, Dr. Eriksen's testimony demonstrates that it is sufficiently reliable to be admitted and considered on its merits by the factfinder. Dr. Eriksen, who was Director of the Office on Smoking and Health in the CDC from 1992 to 2000, gave testimony about corrective statements and the use of brand descriptors based on the 2000 Report of the Surgeon General, his long experience in the field of researching and writing about cigarette marketing and tobacco use, and his judgment about which measures the Court should require in order to prevent and restrain future RICO violations. As to Dr. Erikson's testimony about disclosure of disaggregated marketing data, he explained exactly how the disclosure of such data would affect Joint Defendants' future conduct so as to prevent and restrain any future RICO violations. Indeed, in his concurrence in <u>United States v. Philip Morris, USA</u>, Inc., et al., Judge Williams explicitly noted that, in order to prevent and restrain future violations, the district court "can, for example,...impose transparency requirements so that future violations will be quickly and easily identified." 396 F.3d at 1203.

Finally it is obvious that Dr. Eriksen's testimony also meets the "fit" requirement of <u>Daubert</u> and Rule 702 to "assist the trier of fact to understand the evidence or to determine a fact in issue."

For all the foregoing reasons, the Court concludes that Joint Defendants' Motion must be **denied**.

August 17, 2006                                 /s/
                                                Gladys Kessler
                                                United States District Judge