# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 99-2496 (GK)** |
| **and** | : | |
| | : | |
| **TOBACCO-FREE KIDS ACTION FUND,** | : | |
| **AMERICAN CANCER SOCIETY,** | : | |
| **AMERICAN HEART ASSOCIATION,** | : | |
| **AMERICAN LUNG ASSOCIATION,** | : | |
| **AMERICANS FOR  NONSMOKERS' RIGHTS,** | : | |
| **and NATIONAL AFRICAN AMERICAN** | : | |
| **TOBACCO PREVENTION NETWORK,** | : | |
| | : | |
| **Intervenors,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PHILIP MORRIS USA, INC.,** | : | |
| **(f/k/a Philip Morris, Inc.),** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

This matter is before the Court on the Motion of Certain Defendants to Stay the Final Judgment and Remedial Order Pending Appeal.[1]  Upon consideration of the Motion, Opposition, Reply, applicable case law, the record presented over the past seven years, and for the following reasons, Defendants' Motion to Stay is **denied**.

Defendants have moved to stay, pending appeal, Order #1015, the Court's Final Judgment and Remedial Order.  As all parties know, massive amounts of time, energy, and reams of paper have

---

[1]      Defendants making this Motion are: Philip Morris USA Inc., Altria Group, R.J. Reynolds Tobacco Co., Brown & Williamson Holdings, Inc., Lorillard Tobacco Co., and British American Tobacco (Investments) Ltd.

already been devoted to this case.  The Court has no intention, at this point, of repeating the facts laid out in its 1,400-plus pages of Findings of Fact; suffice it to say, they speak for themselves.

Rule 62(c) of the Federal Rules of Civil Procedure permits the trial court "in its discretion [to] suspend . . . an injunction during the pendency of an appeal."  There is no dispute amongst the parties about the factors that must be considered in making this decision.  They are:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (citing Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)).

There is also no dispute amongst the parties that the appeal of this long-running case with its nine-month trial record and numerous rulings on evidentiary and legal issues raises questions that are "sufficiently serious, substantial, and difficult, to make [it] 'a fair ground for litigation and . . . more deliberative investigation.'"  Chamber of Commerce v. Reich, 897 F. Supp. 570, 585 (D.D.C. 1995) (quoting Wash. Metro. Area Transit Comm'n, 559 F.2d at 844).

However, it must be remembered that granting a stay pending appeal is "always an extraordinary remedy," Brotherhood of Railway and Steamship Clerks, Freight Handlers and Station Employees v. National Mediation Board, 374 F.2d 269, 275 (D.C. Cir. 1966), and that the moving party carries a heavy burden to demonstrate that the stay is warranted, Cuomo, 772 F.2d at 978.  In exercising its discretion whether to grant the stay, and in considering the factors set forth in the case law, the Court must ultimately balance all equities.  In this case, Defendants cannot demonstrate that the equities weigh in their favor.

First, as to the prospect that others will be harmed if the stay is granted, the record is very clear. The purpose of the Remedial Order is to prevent and restrain future violations of RICO.[2] Every provision of the Order is designed to prevent and restrain Defendants from repeating their past violations of the statute, which ranged from misleading the public about the reduced health risks from so-called "low-tar" cigarettes to document destruction to manipulation of cigarette design and composition to increase nicotine delivery.  See Section II.A.3. and II.B.5. of the Remedial Order. In short, smokers, potential smokers, young people exposed to Defendants' extensive and ubiquitous advertising and marketing campaigns, and those exposed (particularly the very young and elderly) to environmental tobacco smoke ("ETS") will be directly and seriously harmed if a stay is granted and the Remedial Order is not left in place to ensure that further violations of RICO do not occur.[3]

Second, in this case it is difficult, if not impossible, to separate consideration of who is likely to be harmed if the stay is granted from the public interest.  The public interest in ensuring that Defendants do not continue to engage in activities which this Court has found constituted a 50-year conspiracy to deceive the American public about the addictiveness of nicotine and the health effects of smoking, second-hand tobacco smoke, and so-called "low-tar" cigarettes, simply cannot be overstated.  Moreover, the burden on our health care system, and the concomitant burden on our national economy, of treating those suffering from smoking-related diseases, is of enormous

---

[2]     Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (2006).

[3]     Defendants argue that if the stay is not granted various suppliers, distributors, creditors, employees, farmers, and retailers will suffer harm.  That argument is unpersuasive.  First, it is totally speculative.  Second, some of these individuals will in fact benefit from the Remedial Order because of the additional business that will be generated from compliance with it.  Third, if the stay is denied, there is no question that far more people will be protected than would be adversely affected by compliance with the Order's provisions.

significance.  Granting a stay can only adversely impact that burden -- it certainly would not alleviate it.

Third, Defendants argue that they will suffer irreparable harm if the stay is not granted. While all Defendants submit declarations setting forth the many millions of dollars which they claim compliance with the Remedial Order will cost them, those expenses clearly do not constitute what the law identifies as "irreparable" harm.  For example, Defendants do not contend that compliance with the Order will result in the complete destruction of their business, which is the legal standard applied by our Court of Appeals in determining whether economic loss constitutes irreparable harm. See Wis. Gas Co. v. FERC, 758 F.2d 669, 673-74 (D.C. Cir. 1985), cert. denied, 476 U.S. 1114 (1986); Wash. Metro. Area Transit Comm'n, 559 F.2d at 843 n. 3.

Moreover, as the Government points out, given the billions of dollars that Defendants spend on marketing and promotion (as spelled out in the Findings of Fact), their complaints about the costs of compliance with the Remedial Order ring hollow.[4]

What the Defendants are really concerned about is compliance with that provision of the Order prohibiting use of any brand descriptor conveying an express or implied health message such as "low tar."  See Section II.A.4. of the Remedial Order.  Defendants fear two related consequences: that they will lose market share (which they maintain is difficult to recoup once lost) and that their lost market share will be absorbed by cigarette manufacturers that are not covered by the Remedial Order or by the Master Settlement Agreement.  While this concern is, of course, purely speculative (especially in light of the Defendants' position throughout this litigation about the strength and

---

[4]      It should be noted that any costs incurred for complying with the Remedial Order would pale in comparison with the amount of illegally obtained profits that would have to be paid should the Government prevail on its disgorgement argument before the appellate courts.

-4-

significance of brand loyalty), Defendants may well be correct about such an unintended consequence of the Order.

There is one simple response to their concern:  loss of market share, if it results from imposing an appropriate remedy to prevent and restrain past violations of the law, may well be the price Defendants have to pay for violations of RICO.  In other words, any violator of the RICO statute is subject to the remedies that Congress has provided.  While the fact that Defendants' lost market share may inure to the benefit of those not covered by the Remedial Order, or even the MSA, is not an ideal situation, the fact is that those manufacturers were not found guilty of violating RICO and weren't sued by the State Attorneys Generals in the litigation which produced the MSA.[5]

Fourth, as to the likelihood that Defendants will prevail on the merits of the appeal, that factor carries little weight.   Given the multitude and complexity of legal issues that this Court has had to decide in the past seven years, it is simply impossible to assess how our Court of Appeals, and very possibly the Supreme Court, will decide them and in what procedural posture this case will find itself at the end of the long litigation trail.

In conclusion, after balancing the four well settled factors set forth in <u>Cuomo</u> and <u>Wash. Metropolitan Area Transit Commission</u>, the Court concludes that the public interest will be best served by denial of the stay pending appeal, that there is a very substantial likelihood that many individuals (particularly impressionable youth, and the vulnerable very young and very old exposed

---

[5]      Defendants also argue that they will suffer irreparable harm because Section II.B.5. of the Order, requiring them to make certain corrective statements, and Section II.A.3., enjoining them from affirmatively making false, misleading, or deceptive statements on those topics about which they have made such statements in the past, violate their First Amendment rights.  For the reasons set forth in the Conclusions of Law, the Court has concluded there is no merit to this contention.  <u>See</u> pp. 1632-34 of Amended Final Opinion.

to ETS) will be harmed if the stay is granted, and that those considerations far outweigh Defendants' purely economic concerns about losing what may, at most, be unrecoverable market share if the stay is denied.  For all these reasons the Motion to Stay is **denied** as to the Final Judgment and Remedial Order Pending Appeal, except that it is **denied without prejudice** as to Section II.C.10.c. of the Order.[6]


/s/
Gladys Kessler
United States District Judge


September 28, 2006

---

[6]        Defendants' declarations assert certain technical objections to this portion of the Order.  These concerns were not addressed in detail by either Defendants or the Government in their Memoranda of Law.  Consequently, if, after consultation amongst the parties, Defendants are unable to reach an accommodation with the Government on this complex matter, it may be raised again by Defendants.