UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 99-2496 (GK) |
| and | : | |
| | : | |
| TOBACCO-FREE KIDS ACTION FUND, | : | |
| AMERICAN CANCER SOCIETY, | : | |
| AMERICAN HEART ASSOCIATION, | : | |
| AMERICAN LUNG ASSOCIATION, | : | |
| AMERICANS FOR  NONSMOKERS' RIGHTS,: | | |
| and NATIONAL AFRICAN AMERICAN | : | |
| TOBACCO PREVENTION NETWORK, | : | |
| | : | |
| Intervenors, | : | |
| | : | |
| v. | : | |
| | : | |
| PHILIP MORRIS USA, INC., | : | |
| (f/k/a Philip Morris, Inc.), *et al.*, | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM OPINION

Defendants[1] have moved for Clarification or in the Alternative for Relief Under Rules 52,

59 and 60 with respect to the Court's August 17, 2006 Order.  Upon consideration of the Motion,

the Oppositions of the Plaintiff and Intervenors, the Replies, and the lengthy record herein, the Court

concludes that the Motion should be **denied in part and granted in part**.

First, Defendants seek clarification on two issues relating to Order #1015, the Final Judgment

and Remedial Order in this case.  They seek clarification as to the meaning and applicability of the

General Injunctive Relief set forth in ¶¶ II. A. 1. and II. A. 3. of the Order.  Second, Defendants seek

---

[1]        Defendants for purposes of this Motion are: Philip Morris USA, Altria, R.J. Reynolds,
Brown & Williamson, Lorillard, and BATCo.

clarification regarding the scope of the provisions in the Order, prohibiting the use of descriptors and requiring corrective statements at retail point of sale.

**I.      Request for Clarification Regarding General Injunctive Relief**

In § II. A. 1. of the Remedial Order, the Court has permanently enjoined Defendants

> from committing any act of racketeering as defined in 18 U.S.C. § 1961(1), relating in any way to the manufacturing, marketing, promotion, health consequences, or sale of cigarettes in the United States.

In Section II. A. 3. of the Remedial Order, the Court has permanently enjoined Defendants

> from making, or causing to be made in any way, any material false, misleading, or deceptive statement or representation, or engaging in any public relations or marketing endeavor that is disseminated to the United States public and that misrepresents or suppresses information concerning cigarettes. Such material statements include, but are not limited to, any matter that: (a) involves health, safety, or other areas with which a reasonable consumer or potential consumer would be concerned; (b) a reasonable consumer or potential consumer would attach importance to in determining whether to purchase or smoke cigarettes; or (c) the Defendant, Covered Person or Entity making the representation knows or has reason to know that its recipient regards or is likely to regard as important in determining whether to purchase cigarettes or to smoke cigarettes, even if a reasonable person would not so regard it.

The RICO statute expressly authorizes the imposition of "reasonable restrictions on the future activities . . . of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, . . . ." 18 U.S.C. § 1964(a). As the Second Circuit has pointed out in <u>United States of America v. Carson</u>, 52 F.3d 1173, 1184 (2d Cir. 1995), "'a [D]istrict [C]ourt has broad discretion to enjoin possible future violations of law <u>where past violations have been shown</u>,'" quoting <u>SEC v. Manor Nursing Centers, Inc.</u>, 458 F.2d 1082, 1100 (2d Cir. 1972) (emphasis added). The prohibition against committing any racketeering activity, as

defined in 18 U.S.C. § 1961(1), has been upheld in numerous cases, including <u>Carson</u> itself, 52 F.3d at 1185 n. 10.  See also <u>S.C. Johnson & Son, Inc. v. The Clorox Co.</u>, 241 F.3d 232, 241 (2d Cir. 2001); <u>Professional Association of College Educators, TSTA/NEA v. El Paso County Community College District, et al.</u>, 730 F.2d 258, 273 (5th Cir. 1984).

Federal Rule of Civil Procedure 65(d) requires specificity in injunctions so that "those enjoined will know what conduct the Court has prohibited," <u>Mayer v. Brown & Root Constr. Co.</u>, 661 F.2d 369, 373 (5th Cir. 1981).  Section II. A. 1. of the Remedial Order not only enjoins the Defendants from committing any act of racketeering, but further specifies that the activity being enjoined must relate to the "manufacturing, marketing, promotion, health consequences, or sale of cigarettes in the United States."

Section II. A. 3. of the Remedial Order covers the making of any "material false, misleading or deceptive statement or representation, . . . ."  That Section then sets forth that such material statements which are enjoined include any material that "(a) involves health, safety, or other areas with which a reasonable consumer or potential consumer of cigarettes would be concerned"; (b) statements that a reasonable consumer would attach importance to; or (c) that the defendant knows that the recipient would regard as important.

As the Fifth Circuit said in <u>Professional Association of College Educators</u>, 730 F.2d at 273, "it is difficult to understand how the defendants could have legitimate difficulty understanding what they are forbidden to do, or to imagine how the injunction could have more specificity without attempting to catalog every conceivable means by which they might be violating or seeking to violate the injunction."

Finally, it must be noted that in determining whether injunctions do provide specific notice of prohibited conduct to those affected, the courts have emphasized that such injunctions will be evaluated "'in the light of the circumstances surrounding (the injunction's) entry: the relief sought by the moving party, the evidence produced at the hearing on the injunction, and the mischief that the injunction seeks to prevent.'" Common Cause v. Nuclear Regulatory Comm., 674 F.2d 921, 927 (D.C. Cir. 1982), quoting United States v. Christie Industries, Inc., 465 F.2d 1000, 1007 (3d Cir. 1972).

In this case, in light of the extensive Findings of Fact and the lengthy Conclusions of Law, the actual nine month trial record, and the complexity of the scheme to defraud outlined in those Findings of Fact, Defendants have more than sufficient notice of the illegal conduct that is prohibited under the Sections of the Remedial Order relating to General Injunctive Relief.

Given the entire context of this case, "Rule 65(d) does not require the [D]istrict [C]ourt to 'predict exactly what [the Defendants] will think of next.'" S.C. Johnson & Son, Inc., 241 F.3d at 240, quoting Sterling Drug v. Bayer AG, 14 F.3d 733, 748 (2d Cir. 1994). Indeed, it would be impossible to foresee what the ingenuity and creativity of Defendants' cadres of sophisticated lawyers could "think of next." For all these reasons, the Defendants' request for clarification regarding the General Injunction provisions at II. A. 1. and II. A. 3. is **denied**.

## II. Request for Clarification Regarding Application of the Remedial Order to International Activities

Defendants request that the Court clarify that the provisions in the Remedial Order prohibiting the use of express or implied health messages or descriptors in Section II. A. 4. apply only to statements made by the Defendants in the United States and to cigarettes sold by them in the

United States; Defendants also request that the Court clarify that the provisions in Section II. B.(7)(b) of the Remedial Order, requiring corrective statements at counter top displays and header displays used at retail points of sale, also apply only to conduct within the United States.

Initially, it must be noted that the issue of the extraterritoriality of statutes is a particularly complex one. Surprisingly, and uncharacteristically, counsel for the parties have provided minimal briefing on this difficult subject.[2] In Small v. United States, 544 U.S. 385 (2005) and F. Hoffman-La Roche Ltd v. Empagran S.A., 542 U.S. 155, 164-65 (2004), the Supreme Court enunciated the basic principle to be considered in determining the extraterritorial scope of any statutory phrase. Because "Congress generally legislates with domestic concerns in mind," 544 U.S. at 388, the Court has adopted "the legal presumption that Congress ordinarily intends its statutes to have domestic, not extraterritorial application." 544 U.S. at 388-89. See also Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 531 (D.C. Cir. 1993).

As to whether RICO,[3] in particular, applies extraterritorially, the courts have expressed differing views. For example, compare Jose v. M/V Fir Grove, 801 F. Supp. 349, 354-58 (D. Ore. 1991) with United States v. Noriega, 746 F. Supp. 1506, 1516-17 (S.D. Fla. 1990). All courts agree, however, that the key consideration is Congress's intent. Moreover, it appears that our Circuit has not yet been presented with this issue. See AGS Int'l Servs. S.A. v. Newmont USA Ltd., 346 F. Supp.2d 64, 66 (D.D.C. 2004) (declining to consider the extraterritoriality of RICO because the Court lacked personal jurisdiction over defendants); BCCI Holdings (Lux.) S.A. v. Khalil, 20 F.

---

[2] Defendants' Memorandum devotes barely two full pages to the issue, and the Government devotes less than three pages.

[3] There is extensive case law examining the extraterritorial impact of our anti-trust laws and securities fraud laws.

Supp.2d 1, 5-6 (D.D.C. 1997) (declining to decide the extraterritoriality of RICO because the case required only domestic application of the statute).

As with any inquiry into Congressional intent, we always begin with an examination of the statute. In this instance, that examination yields no useful results since "RICO itself is silent as to its extraterritorial application," Poulos v. Caesars World, Inc., 379 F.3d 654, 663 (9th Cir. 2004); North South Fin. Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d Cir. 1996), Doe I v. State of Israel, 400 F. Supp.2d 86, 115 (D.D.C. 2005). Because of the absence of dispositive Supreme Court case law on the subject of RICO's extraterritoriality, the courts examining this issue have, in large part, been guided by the two alternative tests used to determine the extraterritorial application of anti-trust and securities fraud cases. Those two alternative tests are referred to as the "conduct test" and "effects test." North South Fin. Corp. v. Al-Turki, 100 F.3d at 1052; Poulos v. Caesars World, Inc., 379 F.3d at 663.

Under the "conduct test," RICO has an extraterritorial effect "if a defendant's conduct in the United States was more than merely preparatory to the fraud, and particular acts or culpable failures to act within the United States directly caused losses to foreign investors abroad." Alfadda v. Fenn, 935 F.2d 475, 478 (2d Cir. 1991). That test is not relevant or helpful given that the facts presented in this case did not relate in any way to losses of foreign investors.

Under the "effects test," RICO has extraterritorial effect where illegal activity abroad causes a "substantial effect" within the United States. Id. As to the effects test, there is no question that, as the Findings of Fact detail at great length (particularly in the sections on international organizations, committees, and groups (Section III. I.), environmental tobacco smoke (Section V. G. 6 and 7), destruction of documents and suppression of scientific research (Section V. H.)), the

fraud perpetrated by Defendants involved extensive activity that occurred outside our national borders. For example, Defendants participated in an extraordinary number of international organizations and committees throughout the world, used scientists in countries as far apart as Switzerland, Japan, Finland, Germany, Sweden, Thailand, Argentina, and Brazil, engaged in document destruction in Australia, concealed and destroyed research documents in England, and supported extensive smoking and health research in both Germany and England.

All these activities, despite being carried out beyond our shores, were part of the Defendants' scheme to defraud the American public about the adverse health effects of smoking and environmental tobacco smoke. The activities which took place abroad were all devoted to advancing and furthering the efforts of the Defendants to mislead and deceive American smokers and potential smokers about the lower health risks of "low tar," "lite," "ultra lite," "mild" and "natural" cigarettes, as well as the dangers of smoking, nicotine addiction, and environmental tobacco smoke.

In such circumstances, and taking into account the need to respect principles of international comity,[4] the Court concludes that there is no reason to believe that Congress intended to exclude from a remedial injunctive order (in this case, Section II. A. 4 of the Remedial Order) activities by Defendants, over whom the Court has personal jurisdiction, to the extent they fall within the Order's prohibitions because they adversely affect the health and welfare of American smokers, potential smokers and passive smokers exposed to environmental tobacco smoke, merely because they occur outside the physical boundaries of the United States.

---

[4] Although Defendants warn of conflicts with the laws of other countries, they have not cited to even one country whose statutes, case law, or regulatory policies would be violated by operation of Section II. A. 4 of the Remedial Order.

In sum, the Court concludes that the provisions in the Remedial Order prohibiting the use of express or implied health messages or descriptors in Section II. A. 4. do apply to actions of the Defendants taken outside the United States. To rule otherwise would not only frustrate the salutary anti-fraud principles embodied in RICO, but would also allow the Defendants to spread fraudulent and misleading health messages and descriptors about their products throughout the world, even though they are prohibited from doing so in the United States. This Court sees no justification, either legal or ethical, for concluding that Congress intended to allow Defendants to continue to tell the rest of the world that "low tar/light" cigarettes are less harmful to health when they are prohibited from making such fraudulent representations to the American public.[5]

March 16, 2007
　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　Gladys Kessler
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[5] Defendants have also asked the Court to clarify whether the provisions in Section II. B.(7)(b) of the Remedial Order apply extraterritorially to require corrective statements at counter top and header displays used at retail points of sale. Extensive, detailed factual evidence was presented during the course of this trial regarding advertisements and marketing at retail points of sales in the United States. Based on that evidence, the Court fashioned the specific provisions for corrective statements contained in Section II. B.(7)(b) of the Remedial Order. No such factual evidence was presented regarding retail marketing outside the United States. Consequently, the remedy fashioned in Section II. B.(7)(b) was not based on any evidence pertaining to foreign marketing of cigarettes. Therefore, it would be inappropriate to give Section II. B.(7)(b) extraterritorial effect.