**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 99-2496(GK)** |
| | ) | |
| **PHILIP MORRIS USA, INC., (f/k/a** | ) | |
| **Philip Morris, Inc.),** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' RESPONSE TO MOTION FOR CLARIFICATION REGARDING DEFENDANTS' OBLIGATION TO DISCLOSE DISAGGREGATED MARKETING DATA

Under the guise of seeking "clarification," the Department of Justice ("DOJ") asks this Court to amend Order #1015 ("Order") in material respects that go far beyond mere clarification. Most significantly, it seeks to expand dramatically the amount of marketing data that Defendants are required to provide to DOJ. The Order requires each Defendant to "disclose all disaggregated marketing data to the Government in the same form and on the same schedule which Defendants now follow in disclosing disaggregated marketing data to the Federal Trade Commission." Order ¶16. DOJ, however, seeks to insert a *new* paragraph that would *further* require Defendants to disclose "*all marketing data* broken down by type of marketing, brand, geographical region, number of cigarettes sold, advertising in stores, and any other category of data collected and/or maintained by or on behalf of each Defendant," regardless of whether such data is required by the FTC. DE 5854-1, Proposed Order at 1–2 (emphasis added) ("Proposed Order"). It does so, moreover, even though this Court's opinion makes clear—both in the text accompanying footnote 90 and the glossary definition of "Disaggregated Marketing Data," upon

which DOJ exclusively relies—that the information that the Court has ordered Defendants to disclose is the *same* information that the "FTC requires Defendants to maintain … and to submit [to the FTC] at regular intervals … pursuant to that agency's schedule for disclosure." *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 196 (D.D.C. 2006); *see also id.* at 9 (defining "Disaggregated Marketing Data" as encompassing "marketing data [that] is required by the FTC").

Further, even though this Court squarely held that, given the sensitive nature of this information, it "will be disclosed only to the Department of Justice, the enforcing agent for this decree," 449 F. Supp. 2d at 197, DOJ now seeks permission to disclose this confidential information to unspecified "other Executive Branch agencies" for unspecified reasons or, indeed, no reason at all.  Proposed Order at 1.  DOJ's request is contrary to the plain language of the Court's Order and so should be rejected.  It is also far broader than anything remotely necessary to ensure proper enforcement of the Order.  At most, DOJ should be permitted to share such information with other Executive Branch agencies only to the extent necessary to enforce the Order, subject to confidentiality protections.[1]

As the foregoing makes clear, DOJ seeks not to "clarify" the Order, but rather to substantially amend and expand it.  But, in so doing, DOJ does not even attempt to justify its request under Rule 60(b) or any other provision of the Federal Rules of Civil Procedure.  Finally, even if DOJ's requests were timely—and they are not—they could not possibly be justified as necessary to "prevent and restrain" future RICO violations, which is the only basis upon which

---

[1] DOJ also asks this Court to amend the duration of this Order, such that it no longer would run "for a period of ten years *from the date of this Final Judgment and Remedial Order*," Order ¶16 (emphasis added), but instead, "will continue for 10 years from the date of *this Order*," Proposed Order at 1–2 (emphasis added).  This too seeks not to clarify but to amend this Court's Order and so should be rejected.  In any event, at most, the ten-year period should run from Defendants' initial production of FTC reports pursuant to the Order, which took place in October 2010.

any injunctive relief may be issued in this case.  18 U.S.C. § 1964(a); *United States v. Philip*

*Morris USA, Inc.*, 566 F.3d 1095, 1131 (D.C. Cir. 2009).

Accordingly, DOJ's Motion for Clarification Regarding Defendants' Obligation to

Disclose Disaggregated Marketing Data ("Motion") should be denied.

**ARGUMENT**

**I.     THE COURT SHOULD REJECT DOJ'S REQUEST TO AMEND ITS ORDER TO REQUIRE DEFENDANTS TO DISCLOSE ADDITIONAL MARKETING DATA**

This Court's opinion clearly explains the purpose for requiring Defendants to disclose

their disaggregated marketing data to DOJ.  As the Court noted, prior to its ruling in this case,

"[t]he FTC [already] require[d] Defendants to maintain disaggregated marketing data and to

submit it at regular intervals, under strict confidentiality, pursuant to that agency's schedule for

disclosure."  449 F. Supp. 2d at 196.  The Court sought to require disclosure of this same data to

DOJ in order to prevent and restrain future RICO violations because DOJ, not the FTC, is the

agency charged with enforcing RICO and DOJ only has access to the data the FTC publishes in

aggregated form.

The Court explained:

> The FTC requires Defendants to maintain disaggregated marketing data and to submit it at regular intervals, under strict confidentiality, pursuant to that agency's schedule for disclosure. Such data reveals with specificity exactly what Defendants' marketing dollars are being spent on. Such information has never been available to the public because the FTC only publishes the data in aggregated form.  In order to ensure transparency of Defendants' marketing efforts, particularly those directed towards youth, and what effect such efforts are having, the Court *will order Defendants to provide their disaggregated marketing data to the Government according to the same schedule on which they provide it to the FTC.*  Disclosure of this data will prevent and restrain Defendants from continuing to make false denials about their youth marketing efforts and will enable the Government to monitor such activities.

*Id.* at 197 (emphasis added).   In accordance with the opinion, the Order provides, in relevant

part:

16.  Each Defendant shall be required to disclose all disaggregated marketing data to the Government in the *same form and on the same schedule* which Defendants now follow in disclosing disaggregated marketing data to the Federal Trade Commission.  Defendants must disclose such data to the Government for a period of ten years from the date of this Final Judgment and Remedial Order.

17.  Disaggregated Marketing Data shall be maintained in the databases and formats maintained by Defendants, and all reports generated from such Disaggregated Marketing Data shall be made available to the Government.

Order ¶¶16–17 (emphasis added).

Paragraphs 16 and 17 of the Order are clear and unambiguous.  Paragraph 16 requires that "[e]ach Defendant shall be required to disclose all disaggregated marketing data to the Government in the *same form and on the same schedule* which Defendants now follow in disclosing disaggregated marketing data to the Federal Trade Commission."  *Id.* ¶16 (emphasis added).  And DOJ concedes that Defendants "have provided, pursuant to the provisions of the Order[,] . . . the disaggregated marketing data they are also required to submit to the Federal Trade Commission."  Motion at 2.[2]  Paragraph 17 then directs that "Disaggregated Marketing Data shall be maintained in the databases and formats maintained by Defendants, and all reports generated from such Disaggregated Marketing Data shall be made available to the Government."  Order ¶17.  By its plain terms, this paragraph refers to the data compilations from various sources that each Defendant provides to the FTC, and requires Defendants to provide DOJ with any reports generated from those specific data compilations.

DOJ's construction, in contrast, would effectively read paragraph 16 out of the Order.  In particular, DOJ asserts that paragraph 17 imposes a broad disclosure obligation that is wholly separate and independent of the obligation in paragraph 16, pursuant to which Defendants must

---

[2] As BATCo has previously explained, it is a foreign company that does not market cigarettes in the United States and, consequently, the FTC does not require it to submit marketing data.  *See* BATCo's November 24, 2010 Status Report at 1 n.1.

WAI-2997446v3

provide DOJ with "*all marketing data* broken down by type of marketing, brand, geographical region, number of cigarettes sold, advertising in stores, and any other category of data collected and/or maintained by or on behalf of each Defendant," regardless of whether such data is required by the FTC.  Proposed Order at 1–2 (emphasis added).  If this were correct, then paragraph 16 would be superfluous, since the massive amount of new data that DOJ asserts is required under paragraph 17 would completely subsume the specific data that Defendants are required to provide under paragraph 16.

Thus, DOJ's assertion that Defendants' straightforward reading of the Order renders "Paragraph 17 as largely a nullity," Motion at 5, is exactly backwards:  Whereas Defendants' construction gives meaning to both paragraphs 16 and 17, DOJ's position would effectively read paragraph 16 out of the Order by allowing DOJ to request disaggregated marketing data unconnected to Defendants' FTC submissions, contrary to the established rule that "all words and provisions" in a court order should be "given effect," and that any construction that would render "words or phrases meaningless, redundant, or superfluous" should be avoided.  *Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 45 (1st Cir. 2006); *see also Dist. of Columbia v. Wash. Terminal Co.*, 1918 U.S. App. LEXIS 2458, at *7–8 (D.C. Cir. Apr. 1, 1918) (holding that "every word" in a court order "should be given effect").  Indeed, DOJ does not even attempt to explain what function, if any, paragraph 16's obligation to disclose the FTC data serves if, as DOJ would have it, paragraph 17 already imposes—or should be "modified' to impose, Proposed Order at 1—the global obligation to disclose *all* marketing data and reports.

DOJ's construction, moreover, is also impossible to square with the Order's durational limit.  Paragraph 16 requires Defendants to disclose the FTC data to DOJ "for a period of ten years from the date of this [Order]," which is August 17, 2006.  Order ¶16.  Paragraph 17, in

WAI-2997446v3

contrast, contains no durational limit. *See id.* ¶17.  Thus, if DOJ's proposed construction were correct, paragraph 16's disclosure obligation would expire in 2016, whereas the far more onerous separate obligation that DOJ asserts is embodied in paragraph 17 would extend in perpetuity. This obviously makes no sense.  This absurdity, however, is of DOJ's own making since, properly understood, paragraph 17's disclosure obligation is directly tied to paragraph 16, requiring Defendants to disclose any reports generated from the specific data that they must disclose under paragraph 16.

Indeed, DOJ's proposed construction both fails to recognize the detailed nature of the data that the U.S. cigarette manufacturer Defendants provide to the FTC and betrays a misunderstanding of how that data is compiled.  The FTC routinely requests a broad array of detailed data from U.S. cigarette manufacturers.  For example, the FTC's February 18, 2010 Orders to File Special Report to Philip Morris USA, R. J. Reynolds Tobacco Company, and Lorillard Tobacco Company required the companies to provide more than 50 data fields of information, including detailed advertising and marketing expense information.  *See* Decl. of Brian Tharp ("Tharp Decl.") ¶¶3–5 & Ex. A (attached as Ex. 1); Decl. of R. Michael Leonard ("Leonard Decl.") ¶¶3–5 & Ex. A (attached as Ex. 2); Decl. of Vincent M. Losito ("Losito Decl.") ¶¶3–4 & Ex. A (attached as Ex. 3).  These companies, however, do not maintain a database of this specific information, but instead derive the data required by the FTC from multiple sources, including the companies' books and records (*e.g.,* journal entries and other accounting databases), which contain hundreds of categories of information.  *See* Tharp Decl. ¶¶7–12; Leonard Decl. ¶¶7–11; Losito Decl. ¶6.  Clearly, DOJ cannot reasonably suggest that, for this reason, it should be entitled to any report generated from these sources, of which the advertising and marketing data compiled and provided to the FTC is but a small subset.

Moreover, the business purpose for compiling the disaggregated marketing data in the manner requested by the FTC is to satisfy the FTC's requests.  *See* Tharp Decl. ¶¶10, 12; Leonard Decl. ¶¶10–11; Losito Decl. ¶¶5.  While the companies create detailed schedules of information that are collated into the data fields requested by the FTC, there are no reports *derived* by the companies from the compilation of data they provide to the FTC.  *See* Tharp Decl. ¶10; Leonard Decl. ¶10; Losito Decl. ¶6.

DOJ's only argument in support of its contorted interpretation of the Order is that footnote 90 of the Court's opinion and the definition of "Disaggregated Marketing Data" in the glossary "mean[] that Defendants are obliged to provide access to more than just what they provide to the FTC."  Motion at 4.  Nothing, however, could be further from the truth.  In fact, footnote 90 and the glossary definition confirm beyond all doubt that this Court's Order encompasses only the same information that Defendants are required to provide to the FTC.  Thus, while DOJ quotes a snippet from footnote 90, it fails to acknowledge the very sentence to which footnote 90 is appended.  That sentence provides, in full:  "The FTC requires Defendants to maintain disaggregated marketing data [FN 90] and to submit it at regular intervals, under strict confidentiality, pursuant to that agency's schedule for disclosure."  449 F. Supp. 2d at 196.  Footnote 90 therefore describes the "disaggregated marketing data" that Defendants are required "to submit . . . at regular intervals, under strict confidentiality" *to the FTC*, not, as DOJ would have it, some additional or different data.  Likewise, while citing the glossary definition of "Disaggregated Marketing Data," DOJ ignores the critical sentence in that definition, which expressly states that such data is the "breakdown of marketing data [that] *is required by the FTC*."  *Id.* at 9 (emphasis added).

WAI-2997446v3

In short, this Court's opinion, *including* footnote 90 and the glossary definition of "Disaggregated Marketing Data," makes crystal clear what this Court's Order already clearly and unambiguously provides: "Each Defendant shall be required to disclose all disaggregated marketing data to the Government in the *same form and on the same schedule which Defendants now follow in disclosing disaggregated marketing data to the Federal Trade Commission*." Order ¶16 (emphasis added). Paragraph 17 then merely requires Defendants to provide that data in usable form, and also to provide all reports generated from that data, if any. DOJ, therefore, is not asking this Court to "clarify" its Order, but to amend it.

DOJ does not cite a single provision of the Federal Rules of Civil Procedure that entitles it to seek such an amendment. DOJ has not even attempted to explain, for example, how the relief it seeks could be justified under Rule 60(b) of the Federal Rules of Civil Procedure, which authorizes the modification of a judgment due to mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud; or where the judgment is void or prospective enforcement is no longer equitable. *See Horne v. Flores,* 129 S. Ct. 2579, 2593 (2009) (Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order" based on "a significant change either in factual conditions or in law") (internal quotation marks omitted). DOJ's requested relief does not satisfy any of these procedural requirements. Nor has DOJ attempted to demonstrate that its requested relief is appropriate under any other provision of the Federal Rules.

Finally, even if DOJ's request were timely—and it is not—it still should be denied. DOJ seeks to impose a significant new burden on Defendants. It is not clear whether DOJ seeks to require that Defendants actually produce "all marketing data" on an annual basis. *See* Proposed Order at 2. But what is clear is that DOJ seeks what is tantamount to an open-ended roving

subpoena, pursuant to which DOJ may demand that Defendants produce such data, at any time and for any reason, good or bad, or no reason at all. Needless to say, this roving subpoena would impose enormous burdens on Defendants. More importantly, it cannot possibly be justified as necessary to "prevent and restrain Defendants from continuing to make false denials about their youth marketing"—which, after all, is the only purpose for which this Court ordered the disclosure of disaggregated marketing data in the first place. 449 F. Supp. 2d at 197.

Indeed, what DOJ seeks here is not only contrary to Order #1015's plain language, but it would effectively grant DOJ part of the monitoring remedy that this Court previously denied. In its Proposed Final Judgment and Order submitted on June 27, 2005, DOJ sought the appointment of an Independent Investigations Officer ("IO") who would have had, *inter alia*, "complete and unfettered access to, and the right . . . to inspect and/or copy any and all" books and records of any Defendant, "the same subpoena power as a party to an action in the District Court," and the power to "monitor advertising, other marketing practices and marketing transactions and statements of the Defendants . . . ." DOJ Proposed Final Order ¶¶ VI.C.1.d-f. The Court properly rejected "such a far-reaching and intrusive remedy," *United States v. Philip Morris Inc.*, 449 F. Supp. 1, 936 (D.D.C. 2006), a decision in which it was affirmed by the Court of Appeals, *United States v. Philip Morris Inc.*, 566 F.3d 1095, 1149-50 (D.C. Cir. 2009). If read broadly, DOJ's proposed amendment would provide DOJ with unfettered access to any document or report that includes marketing information, including the company's books and records, among numerous other databases and reports. It should likewise be rejected.

For all of these reasons, DOJ's request to amend this Court's order to expand the data that Defendants are required to disclose beyond (i) "disaggregated marketing data … in the same form and on the same schedule which Defendants now follow in disclosing disaggregated

WAI-2997446v3

marketing data to the Federal Trade Commission," and (ii) "all reports generated from such Disaggregated Marketing Data," Order ¶¶16–17, should be denied.

## II.    THIS COURT SHOULD ALSO REJECT DOJ'S REQUEST TO AMEND ITS ORDER TO ALLOW DISCLOSURE TO OTHER EXECUTIVE AGENCIES

DOJ also seeks to amend this Court's ruling to allow DOJ to disseminate this highly confidential marketing data to other unspecified government agencies for unspecified reasons. This Court previously held that, given the sensitive nature of this information, it "will be disclosed only to the Department of Justice, the enforcing agent of this decree."  449 F. Supp. 2d at 197.  DOJ's request to amend the Order to permit it share such information with any other executive agency for any reason is thus contrary to the Order and should be rejected.  In any event, it is also overbroad.  At most, DOJ should be permitted to disclose Defendants' disaggregated marketing data to other Executive Branch agencies only to the extent necessary to enforce Order #1015.  Further, any individuals with access to such information should be required to execute a Confidentiality Agreement pursuant to Order #36.  Such an information-sharing procedure would allow DOJ to share Defendants' disaggregated marketing information for purposes of enforcement while also recognizing Defendants' interests in protecting the confidentiality of their disaggregated marketing information.

## CONCLUSION

For the foregoing reasons, DOJ's Motion should be denied.

- 10 -

Dated:  March 3, 2011      Respectfully submitted,

           /s/ _____

Robert F. McDermott (D.C. Bar No. 261164)
Peter J. Biersteker (D.C. Bar No. 358108)
Noel J. Francisco (D.C. Bar No. 464752)
Geoffrey K. Beach (D.C. Bar No. 439763)
JONES DAY
51 Louisiana Avenue, N. W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700

R. Michael Leonard
WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 721-3721
Fax: (336) 733-8389

Attorneys for Defendant
R.J. Reynolds Tobacco Company,
individually and as successor by
merger to Brown & Williamson
Tobacco Corporation


           /s/ _____

Beth A. Wilkinson (D.C. Bar No. 462561)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006-1047
Telephone:  (202) 223-7300
Fax:  (202) 223-7420

Miguel A. Estrada (D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  (202) 955-8257
Fax:  (202) 530-9016

Thomas J. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive

WAI-2997446v3

Chicago, Illinois 60601-9703
Telephone: (312) 558-6700
Fax:  (202) 558-5700

Attorneys for Defendants
Altria Group Inc. and Philip Morris USA Inc.


/s/ _____
Michael B. Minton
THOMPSON COBURN LLP
One US Bank Plaza, Suite 3500
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6000
Fax: (314) 552-7597

Attorneys for Defendant
Lorillard Tobacco Company


/s/ _____
David L. Wallace
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza, 34th Floor
New York, New York 10112-0219
Telephone: (212) 408-5100
Fax: (212) 541-5369

Attorneys for Defendant
British American Tobacco (Investments) Limited
(f/k/a British-American Tobacco Company Limited)

WAI-2997446v3