UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**           :
                                        :
        **Plaintiff,**              :
                                        :    Civil Action No.
        v.                         :    99-2496 (GK)
                                        :
**PHILIP MORRIS USA, Inc.,**             :
**et al**.                               :
                                        :
        **Defendants.**             :

## MEMORANDUM OPINION

This civil action brought by the United States under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, is now before the Court on Plaintiff's Motion to Compel Defendant British American Tobacco (Investments) Limited's ("BATCo's") Compliance [Dkt. No. 5847] and Defendant BATCo's Motion for Reconsideration [Dkt. No. 5849]. Upon consideration of the respective Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Plaintiff's Motion to Compel is **granted in part and denied in part** and Defendant BATCo's Motion for Reconsideration is **granted in part and denied in part.**

### I.  BACKGROUND

On August 17, 2006, this Court issued a lengthy opinion finding that all Defendants, including BATCo, "(1) have conspired together to violate the substantive provisions of RICO, pursuant to

18 U.S.C. § 1962(d), and (2) have in fact violated those provisions of the statute, pursuant to 18 U.S.C. § 1962(c)." U.S. v. Philip Morris USA, Inc., et al., 449 F. Supp. 2d 1, 26 (D.D.C. 2006). In particular, the Court held that Defendants "knowingly and intentionally engaged in a scheme to defraud smokers and potential smokers, for purposes of financial gain, by making false and fraudulent statements, representations, and promises." Id. at 852.[1] On May 22, 2009, the Court of Appeals for the District of Columbia Circuit affirmed this Court's judgment of liability and affirmed major provisions in its remedial order.[2] U.S. v. Philip Morris USA, Inc., et al., 566 F.3d 1095, 1150 (D.C. Cir. 2009), cert. denied, 130 S. Ct. 3501 (2010).

Unlike the other Defendants, BATCo is a corporation organized under the laws of England and Wales with its principal place of business in England. Although BATCo's scientists and officials did

---

[1] The extensive factual findings of the Court may be found at Philip Morris, 449 F. Supp. 2d at 34-851.

[2] The Court of Appeals remanded the case with directions to (1) evaluate the extent to which Brown & Williams Holdings is reasonably likely to commit future violations; (2) determine which subsidiaries of the Defendants should be included in the remedial order; (3) reformulate the prohibition on the use of health messages or descriptors to exempt foreign activities that have no substantial, direct, and foreseeable domestic effects; and (4) consider the rights of innocent third parties and clarify accordingly the remedial order's provisions regarding point-of-sale displays. Philip Morris, 566 F.3d at 1150. The Court of Appeals also ordered this Court to dismiss CTI and TI from the suit, as those organizations had dissolved, id., and that has been done. The Court has already addressed the first two issues, in Orders #7 [Dkt. No. 5846] and #13 [Dkt. No. 5877].

attend certain meetings with the other Defendants in the United States, "many of BATCo's activities and statements took place outside of the United States." Philip Morris, 449 F. Supp. 2d at 43, 51-52, 82, 125, 228, 873. Accordingly, this Court held BATCo liable under RICO because "BATCo's activities and statements furthered the Enterprise's overall scheme to defraud, which had a tremendous impact on the United States." Id. at 873.

On December 28, 2010, the United States filed a Motion to Compel BATCo's Compliance ("U.S. Mot.") with the Court's Final Order #1015, dated August 17, 2006. On January 21, 2011, BATCo opposed the United States' Motion and moved for reconsideration of the Court's Final Order #1015 ("BATCo Mot."). BATCo argues that the Supreme Court's intervening decision in Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869, 177 L.Ed.2d 535 (2010), rejected the "effects" test for extraterritoriality, thereby invalidating the basis for BATCo's liability under RICO. BATCo Mot. 1. On February 7, 2011, the United States filed its reply and opposition [Dkt. No. 5861]. On February 21, 2011, BATCo filed its reply [Dkt. No. 5868].

**II.  STANDARD OF REVIEW**

The central issue presented by these two motions is whether BATCo's Motion for Reconsideration should be granted due to an intervening change of controlling law. The parties agree that

BATCo's Motion may be considered under Federal Rule of Civil Procedure 60(b)(5). U.S. Opp'n 1 n. 1, 2; BATCo Mot. 9 n. 5.

Rule 60(b)(5) provides, in relevant part, that a district court may grant relief from a final order if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5) (2011). The Supreme Court has held that "it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show 'a significant change either in factual conditions or in law.'" Agostini v. Felton, 521 U.S. 203, 215, 117 S. Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384, 112 S. Ct. 748, 116 L.Ed.2d 867 (1992)). The Court went on to explain that "[a] court may recognize subsequent changes in either statutory or decisional law." Agostini, 531 U.S. at 215 (citing Railway Employees v. Wright, 364 U.S. 642, 652-653, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961) (consent decree should be vacated under Rule 60(b) in light of amendments to the Railway Labor Act); Rufo, 502 U.S. at 393 (vacating denial of Rule 60(b)(5) motion and remanding so District Court could consider whether consent decree should be modified in light of Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)); Pasadena City Bd. of Ed. v. Spangler, 427 U.S. 424, 437-438, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976) (injunction should have been vacated in light of Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971))); see

4

also Potter v. District of Columbia, 558 F.3d 542, 554 (D.C. Cir. 2009).[3]

In its Motion, BATCo erroneously relies on Rule 54(b), although it suggests that Rule 60(b)(5) could serve as an alternative procedural vehicle. Rule 54(b) states, in relevant part, that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). In order to meet the requirements of Rule 54(b), BATCo contends that "this Court's July 29, 2010 [O]rder entering the D.C. Circuit's mandate as the judgment of this Court is not a final judgment, because

---

[3] BATCo argues that its Motion may also be considered under Rule 60(b)(6). Rule 60(b)(6) permits a district court to grant relief from a final order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Supreme Court has held that only exceptional or extraordinary circumstances can justify relief under Rule 60(b)(6). Ackermann v. United States, 340 U.S. 193, 199-202, 71 S. Ct. 209, 95 L.Ed. 207 (1950). Our Court of Appeals has further cautioned that the Rule "should be only sparingly used." Twelve John Does v. District of Columbia, 841 F.2d 1133, 1140 (D.C. Cir. 1988) (quoting Good Luck Nursing Home, Inc. v. Harris, 636 F.2d 572, 577 (D.C. Cir. 1980)). Most importantly, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." Agostini, 521 U.S. at 239; see also Acree v. Republic of Iraq, No. 08-5375, 2009 WL 1953503, at *1 (D.C. Cir. Feb. 17, 2009). For these reasons, the Court concludes that Rule 60(b)(6) does not apply in this instance.

there has been no final resolution of all the claims and requests for relief as to all the parties."[4] BATCo Mot. 8-9 n. 5.

BATCo is simply wrong about the scope of Rule 54(b). The Federal Circuit has held that "Rule 54(b), which concerns the power of the trial court <u>before</u> appeal, is not applicable" where the Court of Appeals has affirmed a portion of the judgment. <u>King Instrument Corp. v. Otari Corp.</u>, 814 F.2d 1560, 1563 (Fed. Cir. 1987) (emphasis in original); <u>Nat'l Australia Bank v. U.S.</u>, 74 Fed. Cl. 435, 438 (Fed. Cl. 2006); <u>Home Savings of America, F.S.B. v. U.S.</u>, 69 Fed. Cl. 187, 190 (Fed. Cl. 2005); <u>see also</u> <u>Jones v. District of Columbia</u>, 646 F. Supp. 2d 42, 46-47 (D.D.C. 2009) (<u>res judicata</u> applies to claims upon which judgment is affirmed by the Court of Appeals, even when judgment is reversed as to other claims).

Therefore, in light of <u>King Instrument Corp.</u>, Rule 54(b) has no applicability to this case, since appeals have been exhausted and the judgment of liability has been affirmed by the Court of Appeals. <u>See</u> <u>King Instrument Corp.</u>, 814 F.2d at 1563; <u>Jones</u>, 646 F. Supp. 2d at 46-47.

Consequently, the Court concludes that Rule 60(b)(5), not Rule 54(b), properly governs BATCo's Motion for Reconsideration.

---

[4] The order BATCo refers to is not, in fact, an order of this Court. Rather, it is the Mandate of the Court of Appeals, entered by the Clerk of that court. <u>See</u> Mandate of USCA, July 29, 2010 [Dkt. No. 5817].

**III. ANALYSIS**

    **A.   Intervening Change of Law Under Rule 60(b)(5)**

The dispositive issue presented in both Motions is whether RICO continues to have extraterritorial reach after the Supreme Court's decision in Morrison, 130 S. Ct. 2869. BATCo contends that "Morrison changed the law concerning the use of the 'effects' test to measure extraterritoriality and invalidated the legal basis for both the D.C. Circuit's and this Court's rulings with respect to BATCo's RICO liability." BATCo Mot. 9. The Government argues that Morrison applied only to Section 10(b) of the Securities Exchange Act and not to RICO, because "Morrison did not turn principally on the presumption against extraterritoriality." U.S. Mot. 8.

Fortunately, Morrison's language is clear. "When a statute gives no clear indication of an extraterritorial application, it has none." Morrison, 130 S. Ct. at 2878. "Rather than guess anew in each case, we apply the presumption in all cases, preserving a stable background against which Congress can legislate." Id. at 2881 (emphasis added). That language demonstrates that the Supreme Court intended the presumption against extraterritoriality to apply to all statutes, not simply the Exchange Act. This conclusion is further confirmed by the structure of Justice Scalia's majority opinion. In Section IIIA, that opinion sets out the Supreme Court's general rule on extraterritoriality, to be applied "in all cases," and then in Section IIIB specifically applies that general rule to

the Exchange Act. See id. at 2875-2888. The Government's argument ignores the plain language of Morrison and ignores its presumption against territoriality and accompanying rejection of the "effects" test. Therefore, the Court concludes that the ruling in Morrison must be applied to RICO.[5] Id. at 2880-81.

Two courts--the Court of Appeals for the Second Circuit and the District Court for the Southern District of New York--have each considered RICO's extraterritorial reach in light of Morrison. Both have held that the RICO statute does not contain evidence of Congressional intent to apply extraterritorially, and therefore does not overcome Morrison's presumption. Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 32-33 (2d Cir. 2010);[6] Cedeno v.

---

[5] Indeed, it would make particularly little sense to confine Morrison proscription against the "effects" test to the Exchange Act, as RICO's "effects" test was explicitly borrowed from the Exchange Act context. See, e.g., N. S. Fin. Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d Cir. 1996) ("Although there is little caselaw in this Circuit regarding the extraterritorial application of RICO . . . guidance is furnished by precedents concerning subject matter jurisdiction for international securities transactions and antitrust matters."); Philip Morris, 449 F. Supp. 2d at 873 (citing Al-Turki).

[6] The Second Circuit did note, "we have no occasion to address--and express no opinion on--the extraterritorial application of RICO when enforced by the government pursuant to Sections 1962, 1963 or 1964(a) and (b)." Norex, 631 F.3d at 33. The United States argues that in cases of civil and criminal enforcement by the Government there is a presumption of extraterritorial application under U.S. v. Bowman, 260 U.S. 94, 27 S. Ct. 655, 51 L.Ed. 956 (1922). See U.S. Mot. 19-27. As Defendants point out, however, Bowman only applied the relevant criminal statute to extraterritorial conduct because the statute was based on "the right of the government to defend itself against
(continued...)

Intech Group, Inc., 733 F. Supp. 2d 471, 473-74 (S.D.N.Y. 2010). Indeed, this Court has already ruled that "'RICO itself is silent as to its extraterritorial application.'" U.S. v. Philip Morris USA, Inc., et al., 477 F. Supp. 2d 191, 197 (D.D.C. 2007) (quoting Poulos v. Caesars World, Inc., 379 F.3d 654, 663 (9th Cir. 2004)).

The Government argues that because some of the predicate acts which may give rise to a "racketeering activity" prohibited by RICO are extraterritorial in nature Congress must have assumed that RICO would have extraterritorial scope in general. U.S. Mot. 20-23. The question under Morrison, however, is whether Congress intended RICO to criminalize extraterritorial activity. As Judge Rakoff explained in rejecting the same argument in Cedeno,

> it is plain on the face of the statute that the statute is focused on how a pattern of racketeering affects an enterprise: it is these that the statute labels the "Prohibited activities," 18 U.S.C. § 1962. But nowhere does the statute evidence a concern with foreign enterprises, let alone a concern sufficiently clear to overcome the presumption against extraterritoriality . . . . RICO is not a recidivist statute designed to punish

---

[6](...continued)
obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents." Bowman, 260 U.S. at 98 (emphasis added). Bowman distinguished this category from crimes against individuals, which "must, of course, be committed within the territorial jurisdiction of the government." Id.; see also U.S. v. Gatlin, 216 F.3d 207, 2011 n. 5 (2d Cir. 2000) (explaining that the "Bowman rule" does not apply to crimes against private individuals). As the Defendants' criminal enterprise does not implicate "the right of the government to defend itself," Bowman poses no obstacle to the proper application of Morrison here. Bowman, 260 U.S. at 98.

9

> someone for committing a pattern of multiple criminal acts. Rather it prohibits the use of such a pattern to impact an enterprise . . . . Thus, the focus of RICO is on the enterprise as the recipient of, or cover for, a pattern of criminal activity.

733 F. Supp. 2d at 473-74. In short, whether or not a criminal enterprise committed a predicate act with extraterritorial scope--and, in any case, no such extraterritorial predicate act is implicated here--there is no evidence that Congress intended to criminalize foreign racketeering activities under RICO.

The Government next argues that even if RICO does not have extraterritorial reach, BATCo's RICO liability may be premised on its domestic conduct. U.S. Mot. 8-19. The Government points to communications between BATCo and United States companies and organizations, visits made to the United States by BATCo scientists and officials, and BATCo's involvement with an experimental farm in North Carolina. Id. at 15-16.

The problem with the Government's argument is that BATCo's domestic conduct was not the basis for its RICO liability in this case. At trial the Government never argued that BATCo's domestic activity provided an adequate basis for RICO liability. Accordingly, this Court found,

> While it is true that many of BATCo's activities and statements took place outside of the United States, they nevertheless had substantial direct effects on the United States. First, many of BATCo's statements and policies at issue in this case concerned U.S. subsidiary/affiliate Brown & Williamson and

> potential litigation in the United States. Second, and most importantly, BATCo's activities and statements furthered the Enterprise's overall scheme to defraud, which had a tremendous impact on the United States, as demonstrated in the Findings of Fact.

Philip Morris, 449 F. Supp. 2d at 873. Moreover, the Court of Appeals affirmed on the same rationale, namely "that BATCo's participation had substantial, direct, and foreseeable effects in the United States." Philip Morris, 566 F.3d at 1131.

Further, isolated domestic conduct does not permit RICO to apply to what is essentially foreign activity. As the Supreme Court stated, "it is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States" and "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case." Morrison, 130 S. Ct. at 2884; see also Norex, 631 F.3d at 33 ("slim contacts with the United States . . . are insufficient to support extraterritorial application of the RICO statute"); Cedeno, 733 F. Supp. 2d at 473 (rejecting the argument that alleging predicate acts of money laundering involving transfers in and out of the United States overcomes the prohibition against extraterritorial application).

In conclusion, the Supreme Court, in crystal clear language, rejected the "effects" test for extraterritorial application. Morrison, 130 S. Ct. at 2881. In rejecting that test, the Supreme

11

Court invalidated the sole basis for BATCo's liability.[7] Philip Morris, 449 F. Supp. 2d at 873; Philip Morris, 566 F.3d at 1131. Therefore, applying the Court's Final Order #1015 against BATCo "prospectively is no longer equitable." Fed. R. Civ. P. (60)(b)(5).

### B.   Application of Rule 60(b)(5)

Our Court of Appeals has made clear that "an order of judgment may be modified under [the relevant] portion of Rule 60(b)(5) only to the extent that it has 'prospective application.'" Twelve John Does, 841 F.2d at 1138. The "standard we apply in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is 'executory' and involves 'the supervision of changing conduct or conditions.'" Id. at 1139.

There is no question that the injunctive relief contained in Order #1015 is "executory" and/or involves "the supervision of changing conduct or conditions." Id. at 1139. However, Order #1015 also requires Defendants to "pay the appropriate costs of the prevailing party, which is the Government." Order #1015, at ¶ 21. Our Court of Appeals has ruled that money damages do not have "prospective application." Twelve John Does, 841 F.2d at 1138. Although the requirement to pay costs does not constitute "money damages," neither does it involve "the supervision of changing

---

[7] The Government has raised a number of arguments as to why Morrison does not control. Parties can be assured that the Court considered them in detail, but firmly believes that Morrison dictates the outcome in this case.

conduct or conditions." Id. at 1139. There is therefore no basis in Rule 60(b)(5) to modify ¶ 21 of Order #1015. Accordingly, BATCo is no longer subject to the provisions of Order #1015 with the exception of ¶ 21. BATCo must contribute to the payment of the Government's costs.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel is **granted in part[8] and denied in part** and Defendant BATCo's Motion for Reconsideration is **granted in part and denied in part**.[9]

An Order will issue with this opinion.

March 28, 2011

/s/
Gladys Kessler
United States District Judge

**Copies to:** counsel of record via ECF

---

[8] The Court is referring to the requirement that BATCo contribute to payment of the Government's costs.

[9] See supra note 8.