UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>and )<br><br>TOBACCO-FREE KIDS ACTION FUND, )<br>*et al.*, )<br><br>Plaintiff-Intervenors, )<br><br>v. )<br><br>PHILIP MORRIS USA, INC., *et al.*, )<br><br>Defendants. )<br>_____ ) | Civil Action No. 99-CV-2496 (GK)<br>Next scheduled court appearance: NONE |

**PUBLIC HEALTH INTERVENORS' OPPOSITION
TO DEFENDANTS' MOTION FOR VACATUR**

Claiming that the Family Smoking Prevention and Tobacco Control Act ("Family Smoking Prevention Act" or "FDA Act")[1] – most of which has not yet been implemented – "eliminates any reasonable likelihood that Defendants will engage in future joint racketeering activity," and thus "moots the Government's claims," Defendants request that the Court vacate the entire ruling in this case. Defendants' Motion for Vacatur ("Def. Mot.") (DN 5880) at 3, 18. Rather than turn back the clock to 1999 and pretend this case never happened, however, the Court should reject Defendants' effort to escape any responsibility for their "overarching scheme to defraud" the American people. United States v. Philip Morris USA, Inc., 449 F. Supp. 2d 1, 934 (D.D.C. 2006). Defendants do not even approach their "heavy burden" to demonstrate that the new legislation will prevent the ongoing RICO violations that this Court determined, and the D.C. Circuit affirmed, are likely to continue here. Friends of the Earth, Inc. v. Laidlaw Envt'l

---

[1] Pub. L. No. 111-31, 123 Stat. 1776 (June 22, 2009).

Serv. (TOC), Inc., 528 U.S. 167, 170 (2000). To the contrary, the legislation neither alters the "inferences arising from *past conduct*" that are central to the test for likely future violations, nor eliminates Defendants' "opportunities to violate the law in the future" with respect to all of the core elements of Defendants' fraud. United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1132 (D.C. Cir. 2009) (emphasis added). Moreover, Congress made absolutely clear that the new statute should not "affect any action pending," including this one. FDA Act, § 4.

Defendants' alternative argument that dismissal is appropriate based on the primary jurisdiction of the Food and Drug Administration's ("FDA"), Def. Mot. at 19-23, fares no better. Defendants do not cite a *single* case where this doctrine has been applied to vacate a district court decision on the merits that has already been resolved on appeal, especially one involving the type of long term fraud and sustained pattern of deception that the court found in this case. Moreover, while the FDA Act increases the regulation of the tobacco industry, given the type of wrongdoing in which the Defendants have engaged it simply does not eradicate the likelihood that Defendants will continue to commit RICO violations. Thus, there is no reason to *separately* consider whether the FDA has been given the authority to or has the institutional capacity to prevent such conduct from continuing to occur in the future, or to *speculate* whether the agency will, in fact, attempt to do so or be successful in doing so.

## BACKGROUND

### A. Defendants' Misconduct And This Court's Remedial Decree

In considering Defendants' motion for vacatur, it is critical for the Court to focus on Defendants' continued insistence, as reiterated in their most recent filings, that they have not violated the law. Thus, for example, in their recent corrective statements submissions, Defendants reiterate that they continue to "vigorously disagree" with the Court's findings, and

emphasize their view that rulings in *other* cases demonstrate that the fraud at issue in this case never occurred.  DN 5881 at 4; id. at 10 (contending that this Court's findings "are inconsistent with the findings of numerous other courts").[2]

Of course, Defendants' position ignores this Court's more than 4,000 Findings of Fact ("FF"), which demonstrated that they have engaged in a massive and decades-long coordinated campaign to deceive millions of American consumers, and particularly young people, about the toxicity and addictiveness of cigarettes.  FF1-4088.  Therefore, as the Court considers Defendants' present bid to vacate the Court's ruling – including the Findings of Fact – it bears reiterating the Court's overall summary that:

> [O]ver the course of more than 50 years, Defendants lied, misrepresented, and deceived the American public, including smokers and the young people they avidly sought as "replacement smokers," about the devastating health effects of smoking and environmental tobacco smoke, they suppressed research, they destroyed documents, they manipulated the use of nicotine so as to increase and perpetuate addiction, they distorted the truth about low tar and light cigarettes so as to discourage smokers from quitting, and they abused the legal system in order to achieve their goal – *to make money with little, if any, regard for individual illness and suffering, soaring health costs, or the integrity of the legal system.*

449 F. Supp. 2d at 852 (emphasis added).

The Court found that Defendants engaged in overwhelming fraud in six specific areas, concluding that they: (1) "falsely denied, distorted and minimized the significant adverse health consequences of smoking for decades"; (2) "concealed and suppressed research data and other evidence that nicotine is addictive"; (3) "falsely denied that they can and do control the level of nicotine delivered in order to create and sustain addiction"; (4) "falsely marketed and promoted

---

[2]   See also DN 5893 at 8 (reiterating that "numerous courts have rejected the findings of wrongdoing" at issue in this case); id. at 11, n.3 (arguing that the Court must include in all corrective statements an introductory phrase that this Court's findings are "in disagreement with the findings of other courts . . . .").

low tar/light cigarettes as less harmful than full-flavored cigarettes in order to keep people

smoking and sustain corporate revenues"; (5) "publicly denied what they internally

acknowledged: that [second-hand smoke] is hazardous to nonsmokers"; and (6) "spent billions

of dollars every year on their marketing activities in order to encourage young people to try and

then continue purchasing their cigarette products in order to provide the replacement smokers

they need to survive."  FF509-1763; FF2023-3862.  To address this large-scale fraudulent

conduct the Court imposed four categories of remedial measures – (a) enjoining Defendants

from further RICO violations (which Defendants continue to disparage as an "obey the law"

injunction, Def. Mot. at 4); (2) mandating certain corrective communications; (3) requiring

transparency-enhancing remedies including document disclosures; and (4) prohibiting

descriptors that convey a misleading health message.  Final Judgment and Remedial Order

("Order # 1015").

 The fact that the defendants continue to deny every having engaged in any wrongdoing

and continue to contest the court's findings provides a strong argument by itself of the need for

the court's continued jurisdiction and remedial measures.

### B. <u>Defendants' Prior Pleas Of Constraint and Reform</u>

 This is not the first time Defendants have argued that there is no need for this case to

continue, or for any remedial measures to be imposed.  Defendants have always maintained that

the State Master Settlement Agreement ("MSA") does all that they now claim the FDA Act

accomplishes, asserting, as early as 2000, and as recently as 2009, that "because the MSA

'*already proscribes future violations*' and 'imposes a legal barrier to the repetition of'"

Defendants' misconduct, this Court's intervention and remedial decree are unwarranted.  <u>Philip</u>

<u>Morris USA, Inc.</u>, 566 F.3d at 1132 (<u>quoting</u> Defs.' Br. at 40).  However, the evidence in this

case demonstrated that the MSA did *not* prevent the defendants from continuing to engage in

illegal conduct, and, thus, this Court and the D.C. Circuit rejected these arguments.  566 F.3d at

1133; see also, e.g., United States v. Philip Morris USA, Inc., 316 F. Supp. 2d 6, 10-12 (D.D.C.

2004) (denying defendants' motion for summary judgment based on existence of the MSA).

Defendants have also always insisted that, irrespective of their conduct in past years, they

have reformed their ways, and because, for example, "they have 'admitted for years' that

'smoking causes lung cancer' and other serious diseases," there is no basis for expecting "'future

RICO violations.'"  566 F.3d at 1134 (quoting Def. Br. at 53-56).  Again, this Court, and the

Court of Appeals have rejected these self-serving arguments, finding that, on the contrary, the

record "amply support[s]" the "conclusion that Defendants 'continue to make( ) false and

misleading statements . . . ."  Id. (quoting 449 F. Supp. 2d at 507-08); see also, e.g. 449 F. Supp.

2d at 910 ("As Defendants' senior executives took the witness stand at trial, one after another, *it*

*became increasingly clear that these Defendants have not, as they claim, ceased their*

*wrongdoing or, as they argued throughout the trial, undertaken fundamental or permanent*

*institutional change*") (emphasis added).[3]

Nor is this the first time Defendants have asserted that the Court should defer to another

federal statute rather than bring RICO to bear on Defendants' unlawful behavior.  To the

contrary, Defendants have previously argued, as they do here, that other federal statutes

precluded this Court from addressing and remedying their fraudulent conduct, and these

arguments have all been rejected.  See, e.g United States v. Philip Morris USA, Inc., 263 F.

Supp. 2d 72 (D.D.C. 2003) (rejecting the argument that the Federal Trade Commission Act

---

[3]   See also id. at 910 (finding that Defendants, e.g., "continue to fraudulently deny the
adverse health effects of secondhand smoke which they recognized internally" and
"continue to fraudulently deny that they manipulate the nicotine delivery of their cigarettes
in order to create and sustain addiction").

("FTCA"), 15 U.S.C. §§ 41-58, and the Federal Cigarette Labeling and Advertising Act

("Labeling Act"), 15 U.S.C. §§ 1331-40, preclude relief); 449 F. Supp. 2d at 925, n.88 (rejecting

argument that a remedy would "'improperly invade the primary jurisdiction of the FTC'")

(quoting Defendants' proposed FF); id. at 928, n.89 (rejecting argument that corrective

statements conflict with the Labeling Act); see also 566 F.3d at 1124-25 (rejecting argument that

actions by the FTC preclude liability); id. at 1140-41 (rejecting argument that the Labeling Act

precludes an onsert remedy).[4]

In short, Defendants have repeatedly argued that various laws and the MSA made this

case unnecessary, even as they secretly continued their wrongdoing.

**C.      The Family Smoking Prevention Act**

Finding that tobacco products should be subject to "the type of ordinary product regulation

that applies to most other consumer products," Congress enacted the FDA Act in 2009, and

granted the FDA the authority "to regulate tobacco products."  H.R. Rep. No. 111-058, pt. 1, at

2, 4 (2009).  The Act generally authorizes the FDA, inter alia, to require that certain information

be disclosed to the agency and consumers, and to regulate certain activities that may be

detrimental to public health.  One provision cited by Defendants here – the Modified Risk

Tobacco Product provision  ("MRTP") – requires Defendants to undergo FDA review before

selling, or in any manner implying that, one tobacco product is healthier than any other.  See

---

[4] In previously rejecting this argument, this Court noted that the relevant question was not, as Defendants suggest, whether this case would "undermine" the agency's "ability to administer its own statutes," but, rather – particularly because "RICO is a broad statute that often overlaps with more specifically targeted laws and regulations" – whether "the statutes actually *conflict* with one another," concluding that "[s]o long as they do not, both must be given effect."  263 F. Supp. 2d at 77 (emphasis added); see also id. ("Because the FTC has no authority to enforce RICO, the logical consequence of the Defendants' position" that the FTC Act precludes RICO liability "would be that . . . *the RICO statute would be nullified*") (emphasis added).

Family Smoking Prevention Act, § 911.  The Act also requires cigarette companies to include on cigarette packages and advertisements one of nine public health warnings accompanied with color graphics on a rotational basis.  Id. § 201(a).

In crafting the statute, Congress was well aware of this Court's ruling.  Thus it is clear that Congress intended these new statutory provisions to work in tandem with this Court's Remedial Order, not replace it.  Indeed, citing directly to the Court's final opinion, the statute itself explains that *this Court* "found that the major United States cigarette companies continue to target and market to youth," that they "dramatically increased their advertising and promotional spending in ways that encourage youth to start smoking" after the MSA, and that they "have designed their cigarettes to precisely control nicotine delivery levels and provide doses of nicotine sufficient to create and sustain addiction while also concealing much of their nicotine-related research."  Id. §§ 2(47)-2(49).  Yet, significantly, Congress in no manner indicated that the FDA Act was intended to or did in fact supercede, or in any manner moot this Court's ruling.  To the contrary, Congress was absolutely explicit that "[n]othing in this Act . . . *shall be construed to  . . . affect any action pending in Federal, State, or tribal court, or any agreement, consent decree, or contract of any kind*."  Id. § 4 (emphasis added).

Moreover, the FDA Act was enacted *after* this Court had issued its Remedial Order and the Court's ruling had been almost entirely affirmed by the D.C. Circuit.   At that time Defendants filed a suggestion of mootness and for partial vacatur in that Court (see Suggestion of Mootness and Partial Vacatur, 2009 WL 2429510 (July 31, 2009)), claiming that, "even if the MSA's generalized provisions do not eliminate whatever likelihood exists that future marketing of 'low tar' and 'light' cigarettes would violate the federal fraud and RICO statutes . . . *the [FDA] Act certainly does, because it completely and unambiguously bans such marketing*."

Reply in Support of Suggestion of Mootness and Partial Vacatur, at 8 (July 31, 2009). Nevertheless, the D.C. Circuit denied the motion. United States v Philip Morris USA, Inc., No. 06-5267 (D.C. Cir. Sept. 22, 2009).[5]

In addition, even while contending that the statute eliminates the need for this Court's Remedial Order, certain of the Defendants and others have also filed a *separate* lawsuit challenging the FDA Act, including the very provisions they rely on here, on the grounds that it violates their First Amendment rights. See Commonwealth Brands, Inc. v. United States, 678 F. Supp. 2d 512, 521 (W. D. Ky. 2010). The district court upheld the vast majority of the statute, but found that the prohibition on color and graphics in advertising, and the ban "on claims implying that a tobacco product is safer because of FDA regulation," are unconstitutional infringements on the tobacco companies' First Amendment rights. See id. at 525. Both sides have appealed the district court's ruling. On appeal, the tobacco companies are continuing to challenge many components of the new statute, including the ban on implied health claims, asserting that it "[v]iolates [t]he First Amendment." Principal Br. Of Plaintiffs-Appellants/Cross-Appellees at *28-32 (May 28, 2010), Discount Tobacco City & Lottery v. United States, Nos. 10-5234 & 10-5235 (6th Cir. docketed Mar. 9, 2010).[6]

---

[5] Defendants also made these arguments in petitions for rehearing, e.g. Def. Pet. For Reh'g, 2009 WL 2429508, *5 (July 31, 2009), and in Petitions for Certiorari, all of which were denied. See United States v Philip Morris USA, Inc., No. 06-5267 (D.C. Cir. Sept. 22, 2009) (denying rehearing); Philip Morris USA Inc. v. United States, 130 S. Ct. 3501 (2010).

[6] The FDA Act is still in the early stages of implementation. For example, the public health warnings will not begin until the Fall of 2012, FDA Act, §201(b); the FDA has not formally begun any rulemakings under the MTRP provision, id., § 911(l)(1); and many other regulatory efforts have yet to be completed. See e.g., id. § 906(d)(4)(A)(I) (requiring regulations regarding the sale and distribution of tobacco products to youth via the internet, mail order, or other non-face-to-face exchanges); § 915(a-b) (requiring regulations concerning tobacco product constituents, ingredients, and additives); see also Timeline: Family Smoking Prevention and Tobacco Control Act, available at, http://www.fda.gov/TobaccoProducts/GuidanceComplianceRegulatoryInformation/ucm237395.htm.

## ARGUMENT

### Introduction

Before turning to Defendants' arguments for vacatur, the Public Health Intervenors are compelled to point out that the present motion is part of Defendants' full-scale assault on this Court's ruling, attacking it on multiple, simultaneous fronts. They claim that the Court should vacate one of the Order's central transparency remedies, the Minnesota Depository, and they seek to weaken others. DN 5897-1; see also, e.g., DN 5882 (on marketing data). They claim the Court should dispense with all corrective statements, e.g, DN 5881 – and, barring that, at minimum, dispense with corrective statements at both point-of-sale displays and in package onserts (DN 5906), the two places where smokers (and prospective smokers) are *most likely to read them*. See DN 5903 at a 2-3. They further insist that the Court should constrain the manner in which any of the remaining remedies in this case are enforced by claiming that the public health groups who were granted intervention of right in this case precisely because the government was not adequately representing their interests should nevertheless be precluded from bringing *any* action to enforce this Court's injunctions, no matter how egregious Defendants' violations of those injunctions may be. DN 5896-1. And now, in the present motion, they argue, as they have before, that a new legal legislative development – one clearly not intended to supercede this Court's findings or ruling – obviates the need for this *entire case*, urging the Court to not only relieve them of *any* affirmative remedial obligations before any have been undertaken, but also to *vacate* the Court's fact findings that were reached after many years of litigations and an exhaustive trial. Def. Mot. at 31.

Defendants' throw-it-all-and-see-if-something-will-stick approach should not be permitted to succeed. *None* of Defendants' myriad arguments against the Court's Opinion and

Remedial Order undermine the Court's overwhelming findings of misconduct in this case, or the compelling need for the remedies the Court has imposed to prevent and restrain continued violations. Indeed, it bears remembering that, in light of their massive misconduct and unwillingness to modify their behavior, the Court recognized that *more* far-reaching remedies, such as smoker cessation and public education programs would have "unquestionably serve[d] the public interest." 449 F. Supp. 2d at 933. Particularly given that the Court was constrained, in light of the interlocutory ruling by the D.C. Circuit, not to impose these additional remedies, it would certainly ill-serve RICO's purposes to prevent and restrain future violations to significantly *weaken* – or, as suggested by Defendants, dispense with entirely – those remedies that the Court *was* authorized to impose, and thereby allow Defendants to continue the very kinds of misconduct the Court has sought to prevent and restrain. See also United States v Philip Morris USA, Inc., 449 F. Supp. 2d 988, 991 n.4 (D.D.C. 2006) (noting that the burden of "complying with the Remedial Order would pale in comparison with the amount of illegally obtained profits that would have to be paid" were a disgorgement remedy to be permitted in this case).

In any event, as regards their present motion, Defendants do not come close to meeting their "heavy burden" to demonstrate that some or all of the Court's remedial measures are no longer necessary in light of the FDA Act. Laidlaw, 528 U.S. at 170. There is also no alternative basis on which the Court should dispense with its findings and remedial measures and defer to the "primary jurisdiction" of the FDA. Accordingly, Defendants' motion should be denied.

**A.    This Case Is Not Moot.**

In urging the Court to dismiss this entire case as moot, Defendants conveniently ignore the test this Court faithfully applied to determine whether Defendants are likely to continue to

perpetuate their frauds.  449 F. Supp. 2d at 908-915.  Thus, to conclude that there was a

"reasonable likelihood of further violations in the future," the Court considered whether (a)

Defendants violations were "'isolated or part of a pattern'"; (b) Defendants' misconduct was

"'flagrant and deliberate or merely technical in nature'"; and (c) their "'business will present

opportunities to violate the law in the future.'"  Id. at 909 (quoting SEC v. First City Fin. Corp.,

890 F.2d 1215, 1228 (D.C. Cir. 1989)(other citations omitted).  The Court also recognized that

the likelihood of future violations could be "established by inferences drawn from *past conduct*

*alone*."  449 F. Supp. 2d at 909 (emphasis added); 566 F.3d at 1132 (emphasizing that "the first

two factors of the First City test focus entirely on inferences arising from past conduct").

In finding, "based on the totality of circumstances," that "Defendants' conduct

overwhelmingly satisfied each of the (D.C. Circuit's) three First City factors," id. at 909

(quoting First City, 890 F.2d at 1228), the Court emphasized that "Defendants' numerous

misstatements and acts of concealment and deception were made intentionally and deliberately

. . . as part of a multi-faceted, sophisticated scheme to defraud" the public, and that *"as long as*

*Defendants are in the business of selling and marketing tobacco products, they will have*

*countless opportunities and temptations to take similar unlawful actions . . . ."*  449 F. Supp. 2d

at 909 (emphasis added); see also 566 F.3d at 1132 (concluding that "future violations remain

likely"); see also id. at 1134 (noting that the district court found that "Defendants' essential

position on the relationship of smoking and health remains virtually unchanged from the

fraudulent positions it first took in the 1950s" (citations omitted)); id. at 1137 ("a proclivity for

unlawful conduct has been shown")(citations omitted).

Particularly in light of these extremely fact-based conclusions – all of which were

affirmed on appeal – Defendants have a particularly heavy burden to demonstrate that the FDA

Act moots this lawsuit.  The new statute does not call into question the Court's findings about

Defendants' "past conduct."  566 F.3d at 1132.  To the contrary, Congress expressly recognized

and relied on this Court's findings of past misconduct.  Family Smoking and Prevention Act, §§

2(47)-2(49).  Indeed, since the likelihood of future violations "is frequently established by

inferences drawn from past conduct," 566 F.3d at 1132 (quoting United States v. Philip Morris

USA, Inc., 316 F. Supp. 2d 6, 10, n.3 (D.D.C. 2004), the Court need not even parse the new

statute in order to reject Defendants' present arguments.  See, e.g., Wilk v. Am. Med. Ass'n, 895

F.2d 352, 367-68 (7th Cir. 1990) (upholding district court injunction, despite settlement

agreements that arguably "eliminate[d] any threat" of future violations, in light of "the

systematic and long-term nature" of those violations).

Moreover, there is no evidence that Congress intended the FDA Act to substitute for this

Court's injunctive decree.  Rather, Congress – well aware of this case – expressly provided that

nothing in the new statute "shall" "be construed to  . . . affect *any action pending* in Federal,

State, or tribal court, or any agreement, consent decree, or contract of any kind."  FDA Act, § 4

(emphasis added).

Defendants assert that this clause "does not preserve the Court's jurisdiction," Def. Mot.

at 18, n.4, but, particularly given Congress's reliance on this Court's findings, FDA Act § 2(47)-

2(49), it could not be more clear that, rather than passing the FDA Act to supplant this lawsuit,

Congress intended to insure that this Court's remedial decree would remain unaffected by the

new law.  To find otherwise would fail to give effect to the plain language of this provision.  See

e.g., BedRock Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) ("The preeminent canon of

statutory interpretation requires us to presume that (the) legislature says in a statute what it

means and means in a statute what it says there")(citations omitted); see also, e.g., TRW Inc. v.

Andrews, 534 U.S. 19, 31 (2001) (We are "reluctant to treat statutory terms as surplusage in any setting") (internal quotation omitted); cf. U.S. Smokeless Tobacco Mfg. Co., LLC v. City of New York, 703 F. Supp. 2d 329, 340, 344 (S.D.N.Y. 2010) (rejecting the argument that the FDA Act preempts a New York City ordinance, explaining that "[t]he fact that the preservation clause focuses on how provisions of the Act should be 'construed' suggests that the purpose of the clause is to establish a presumption against [] preemption"); Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 n.1 (9th Cir. 2009) (product liability action not preempted by FDA Act).

Moreover, any question as to whether it could be appropriate to substitute the FDA Act for any aspect of this Court's remedial decree is entirely premature, for at least two reasons. *First*, as noted, some of the Defendants and others are challenging the statute in another pending lawsuit. Defendants acknowledge this fact, Def. Mot. at 9, n.3, but ignore the illogic of considering whether the new statute has any implications on this case before these pending challenges are definitively resolved. Defendants' suggestion that the other lawsuit does not concern the descriptor ban, id., is also not accurate, for the tobacco companies in that case contend that the FDA Act's prohibition on tobacco companies' communications concerning the health risks of their products violates their First Amendment rights. See Principal Br. Of Plaintiffs-Appellants/Cross-Appellees at *28-32 (May 28, 2010), Discount Tobacco City & Lottery v. United States, Nos. 10-5234 & 10-5235 (6th Cir. docketed Mar. 9, 2010) ("The MRTPR Violates The First Amendment").

*Second*, the FDA Act has only begun to be implemented, and the provisions upon which Defendants principally rely are not yet in effect. See, e.g., FDA Act, §201(b) (public health warnings to go on packs in September 2012); see also Required Warnings for Cigarette Packages

and Advertisements (Proposed Rule), 75 Fed. Reg. 69,524, 69,541 (2010).[7]  For that reason as well, it is premature for the Court to conclude whether the FDA Act will preclude further RICO violations.

In any event, in order to demonstrate that a new statutory scheme should substitute for this Court's specific remedial provisions under RICO, 18 U.S.C. § 1964(a), Defendants would have to show, clearly and specifically, how the new statute will end Defendants' further fraud and deception, even though the MSA and other federal laws have not done so.  See also, e.g., United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"); Laidlaw, 528 U.S. at 170 (rejecting mootness argument even where the allegedly polluting power plant had shut down).  This would be a difficult burden, made harder by the Defendants' past history of ignoring or circumventing prior legislative efforts to rein in their behavior, and Defendants do not even try to meet this burden here.

Indeed, Defendants do not explain how the new statute will specifically prevent Defendants' fraud, including, inter alia, from continuing to "spen[d] billions of dollars every year . . . to encourage young people to try and then continue purchasing their cigarette products in order to provide the replacement smokers they need to survive."  FF 3301.  Unless Defendants can demonstrate that the FDA Act will prevent RICO violations this Court found likely to continue, the Act simply does not implicate this Court's Remedial Order.

Defendants put forward three examples they claim demonstrate how the FDA Act precludes further RICO violations, asserting that (a) the FDA Act's Modified Risk Tobacco

---

[7]  Indeed, the Defendants have challenged the public health warnings as well, and it is possible the Defendants will do so again once the FDA issues its Final Regulation concerning the warnings later this year.

Product ("MRTP") provisions obviate the need for the Court's descriptor ban; (b) the Act's
nicotine provisions will preclude future nicotine manipulations; and (c) the Act's public-health
warnings somehow will prevent Defendants from further deceptions concerning the nature of
addiction.  Def. Mot. at 16.  None of these examples are availing.

*First*, with respect to the descriptor ban, this Court made overwhelming findings that
Defendants "have known for decades that there is no clear health benefit from smoking low
tar/low nicotine cigarettes," but nonetheless "extensively – and successfully – marketed and
promoted their low tar/light cigarettes as less harmful alternatives," thereby "dramatically
increas[ing] their sales of low tar/light cigarettes. . . ." FF 2627-29.   To address this extensive
fraud, the Court enjoined Defendants from "conveying any express or implied health message or
health descriptor" in *any* material, including *any* words "which reasonably could be expected to"
lead someone to conclude that any cigarette is less hazardous than any other cigarette, or from
otherwise representing "directly, indirectly, or by implication," that "low-tar, light, ultra light,
mild, natural, or low-nicotine cigarettes may result in a lower risk of disease or are less
hazardous to health than other brands of cigarettes."  Order # 1015, ¶ II(A)(4).

Defendants' contention that any injunction against implied health claims is unnecessary
in light of the FDA Act's MTRP provisions, Def. Mot. at 16 (citing FDA Act, § 911(a), (b),
(g)(1)), is off the mark.  Indeed, as Intervenors have previously noted, <u>see</u>  Int. Reply on
Corrective Statements (DN 5890) at 18-19, Defendants have responded to this Court's injunction
by switching to "Marlboro Gold" and other colored packs to convey the same implicit health
message.[8]

---

[8]   <u>See id</u>. (explaining how "notes [were] placed on the last packs of Marlboro
Lights reading, 'Your Marlboro Lights package is changing, *but your cigarette stays the
same*,' and explaining, '[i]n the future, ask for Marlboro in the gold pack") (quoting  Duff
Wilson, <u>F.D.A. SeeksExplanation of Marlboro Marketing</u>, N.Y. Times, June 17, 2010)
(emphasis added).

Defendants have claimed that this marketing technique simply "allow[s] the trade or consumers to distinguish products from each other or to distinguish cigarettes based on taste," and that neither the FDA Act nor this Court's decree prohibit these new marketing endeavors. Def. Reply on Corrective Statements (DN 5893) at 10 ("[n]either the Act nor this Court's opinion prohibits Defendants from using coloring on their cigarette packaging").  However, this Court made myriad findings that, in fact, smokers do not buy "light" cigarettes for "taste," but rather because they wrongly believe that doing so will have health benefits, and that, in fact, "consumers prefer the taste of *regular* cigarettes."  FF 2239 (emphasis added); see also, e.g., 449 F. Supp. 2d at 912 ("Defendants are well aware from their own research that a majority of smokers believe that low-tar cigarettes are healthier, . . . and are willing to *sacrifice taste* for what they believe to be less harmful cigarettes")(emphasis added).

Given that Defendants dispute that the FDA Act covers this conduct, and that there is a pending legal challenges to these portions of the FDA Act, it can hardly make sense for the Court to grant Defendants' motion to vacate the Court descriptor ban.  In short, because it remains to be seen whether, or how, the new legislation will apply to this and other continuing deceptive marketing ploys by Defendants, this Court should not eliminate its carefully designed remedy to address such deceptions – particularly while Defendants are simultaneously arguing that the new legislation both eliminates the need for this Court's supervision *and* fails to outlaw such ongoing deceptive practices.

*Second*, Defendants' contention that the FDA Act's nicotine provisions will preclude future manipulations of nicotine, and thus obviate the need to enjoin misrepresentations on this issue, is impossible to reconcile with their continuing refusal to acknowledge that they engage in this misconduct.   Thus, while the Court found that "Defendants have designed their cigarettes to

precisely control nicotine delivery levels and provide doses of nicotine sufficient to create and sustain addiction," FF 1366, Defendants *continue* to maintain that, to the contrary, their "manufacturing processes reduce the level of nicotine and *only* in that sense is nicotine manipulated."  Def. Corrective Statements Resp. (DN 5881) at 19 (emphasis in original).  Again, the Court certainly cannot conclude that Defendants are going to cease this misconduct when, to this day, they refuse to even acknowledge that they ever have engaged in it.

Moreover, no legislation can make it impossible for Defendants to falsely deny that they manipulate their cigarette design to deliver optimal levels of nicotine, if they are prepared to continue to the type of behavior the Court found.  Further, for the FDA to regulate nicotine it would have to go through a full rule-making, and no such rule-making has begun, nor is there a timetable for such a rulemaking.  FDA Act, § 904(e) (requiring FDA to establish a list of harmful and potentially harmful constituents to health in each tobacco product by brand and by quantity).

*Third*, Defendants contend that the FDA Act's requirement for public-health warnings on packs and advertisements will somehow prevent Defendants from further deceptions concerning, *inter alia*, the addictiveness of smoking, its adverse health effects, and the dangers of exposure to second-hand smoke.  Def. Mot. at 16.  This makes no sense.  The public health warning requirement does not prohibit misstatements, but, rather, simply seeks to further a public health objective by providing consumers with factual information.  Moreover, although the MSA already required Defendants not "to make 'any material misrepresentations of fact regarding the health consequences of using any tobacco product," FF 2393 (quoting MSA, § III(R)), the Court already determined that Defendants do not adhere to such obligations.

Defendants' more general assertions that the FDA Act provides the FDA with broad authority, and includes enforcement mechanisms that will somehow prevent "future joint racketeering activity," fares no better.  Def. Mot. at 16-17.  The record in this case demonstrates the willingness and ability of the Defendants to flout regulations intended to prevent deceptive behavior.  Further, the Act does not give the FDA the authority to enforce RICO and insure that, despite Defendants' ongoing "proclivity for unlawful conduct," 566 F.3d at 1137 (citations omitted), and their ongoing "desire to continue joint activities," id. at 1133, their  scheme of deceptions will not, as the Court already found, continue.  See 263 F. Supp. 2d at 77 (rejecting a similar argument based on the FTC Act "[b]ecause the FTC has no authority to enforce RICO").  Particularly given that, as noted, Defendants neither acknowledge that they have done anything wrong, see supra at 2-3, nor – with the exception of the specific ban on selling cigarettes with "lights" labels on the packs – explain how the FDA Act is going to change their conduct as regards the systemic deceptions at issue in this case, Defendants' arguments must fail.[9]

---

[9]   Defendants' argument concerning the corrective statements remedy, Def. Mot. at 27-31, also fails, since the corrective statements ordered by this Court, and the public-health warnings provided by the FDA Act, serve distinct purposes and goals.  The Court imposed a corrective-statement remedy to prevent and restrain these specific Defendants from continued fraud.  449 F. Supp. 2d at 927 (explaining that this remedy "is narrowly tailored to prevent Defendants from continuing to disseminate fraudulent public statements and marketing messages"); see also 566 F.3d at 1140 ("Defendants will be impaired in making false and misleading assurance, as the district court found they continue to do, if they must at the same time communicate the opposite, truthful message about [the same] matters to consumers").  The FDA Act labels, on the other hand, are not designed to effect Defendants' future behavior, but, rather, are aimed at consumers, with the goal of improving public health by dissuading smokers and prospective smokers from using Defendants' deadly products.  See FDA Act, § 3(9) (explaining Act's purpose "to promote cessation to reduce disease risk and the social costs associated with tobacco-related diseases"); Def. Corr. Statements Resp. (DN 5881) at 15 (arguing that the FDA Act "vests" in the FDA "th[e] public health function" of "encouraging consumers to quit smoking or to stay quit").  Finally, as regards Defendants' concern with Court-imposed onserts "partially conceal[ing] the statutory warnings," Def. Mot. at 30, Intervenors have already recommended that the Court "ensure that they in no way interfere with the new graphic warning labels," DN 5883 at 15, and, in any event, this concern can certainly be addressed without the Court lifting its corrective statements remedy.

Neither of the two cases Defendants cite in support of their mootness argument, Def. Mot. at 15, suggest a different outcome.  In <u>Bethany Med. Ctr. v. Harder</u>, the district court, before issuing a final ruling, determined that new legislation had removed any "reasonable expectation" that the challenged activity would recur "in the future."  693 F. Supp. 968, 975 (D. Kan. 1988).  That is hardly the case here.  The Ninth Circuit's ruling in <u>Bullfrog Films, Inc. v. Wick</u>, is even less relevant, for there the parties <u>agreed</u> that intervening legislation had mooted plaintiffs' claims.  959 F.2d 778, 780 (9th Cir. 1992) (Appellants "agree[ ] the appeal has become moot").  Here, where it is evident that Defendants – whose "corporate leadership continued to consist of veteran employees with long-standing ties to the companies," 566 F.3d at 1109, <u>see also</u> FF 4078-82 – are in fact likely to continue their RICO violations irrespective of the FDA Act, there is no basis for finding any aspect of the Court's ruling to be moot.[10]

In sum, there is no basis for concluding that the new legislation moots the need for the Court's ruling or remedies in this case.  Because "the record demonstrates the tobacco companies retain both the ability and the desire to continue joint activities," 566 F.3d at 1133, an affirmative injunction – backed with the Court's inherent contempt powers – together with, <u>inter</u>

---

[10] Defendants' further argument that the Court should also vacate all of its *factual* findings on mootness grounds is even more remarkable.  Even assuming *arguendo* that the Court were to conclude that prospective application of the Remedial Decree here were no longer necessary in light of the FDA Act, Defendants could not possibly be entitled to such an "extraordinary remedy" as vacatur of the Court's 4088 Findings of Fact.  <u>U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship</u>, 513 U.S. 18, 26, 29 (1994).  Indeed, in relieving BATCo from almost all of Order # 1015, the Court has already explained that post-judgment motions based on subsequent changes in law can *only* impact the "prospective application" of the Court's ruling.  Mem. Op. of Mar. 28, 2011 (DN 5901) at 12 (<u>quoting Twelve John Does v. Dist. of Columbia</u>, 841 F.2d 1133, 1138 (D.C. Cir. 1988).  In any event, such vacatur is also not appropriate where, as here, the movant is a cause of the intervening event, <u>see</u> Patrick Basham, <u>Put Out This Tobacco Bill</u>, N.Y. Times, Aug. 3, 2007 (explaining that "Philip Morris, the world's largest tobacco company, is also firmly behind" the FDA Act).  <u>See, e.g.</u>, <u>U.S. Bancorp</u>, 513 U.S. at 24 (holding that a party responsible for a decision's becoming moot is not generally entitled to the benefit of vacatur).

alia, corrective statements and document disclosure requirements, is necessary to "prevent and restrain" further RICO violations by Defendants.  18 U.S.C. § 1964.

**B.**     **There Is No Separate Basis For Invoking Primary Jurisdiction Here.**

Defendants' argument concerning primary jurisdiction simply repackages Defendants' mootness arguments, and should be rejected for much the same reasons.  As a threshold matter, however, it is far too late for this Court to "forego judicial action" in this case "to permit the regulatory process to run its course."  Def. Mot. at 19.  This case has already reached a final judgment, after an extensive trial and the resolution of exhaustive appeals.

The Court need go no further with "primary jurisdiction" because *none* of the cases on which Defendants rely involve the Court deferring to a federal agency *after the case has been decided*.  Nor would such a result make any sense, since the purpose of deferring to an agency's primary jurisdiction is because the agency "is best suited to make the initial decision on the issues in dispute."  Allnet Commc'n Serv., Inc. v. Nat'l Exch. Carrier Ass'n, 965 F.2d 1118, __ (D.C. Cir. 1992) (emphasis added).  Here, where the Court has already *resolved* the issues in dispute, there is nothing to send to the agency to resolve.  See also United States v. Bessemer and Lake Erie Railroad Co., 717 F.2d 593, 599 (D.C. Cir. 1983) ("The doctrine of primary jurisdiction, despite what the term may imply, does not speak to the jurisdictional power of the federal courts. It simply structures the proceedings as a matter of judicial discretion, so as to engender an orderly and sensible coordination of the work of agencies and courts") (citations omitted).

Defendants' purported concern with "conflicting federal regulatory requirements," Def. Mot. at 19, is misplaced.  Defendants made the same arguments with respect to the FTCA, and the Court correctly rejected them.  See supra at 5-6.  As there, Defendants fail to point to a

*single* requirement in this Court's decree that presently conflicts with requirements under the

FDA Act.  To the contrary, Defendants' mootness arguments are largely based on the entirely

contrary – and inaccurate – argument that this Court's decree is no longer necessary because it is

*the same* as the FDA Act.

Defendants' concern with whether this Court has "the institutional capacity to develop

and implement a nationwide policy regarding the tobacco industry," Def. Mot. at 22, is also of

no moment, because that is not what the Court's specific and tailored Remedial Decree do here.

Rather, after resolving Defendants' RICO liability, the Court chose measures – such as

corrective statements and transparency orders – that would "prevent and restrain" further RICO

violations.  18 U.S.C. § 1964(a).[11]

Thus, this Court's injunctive measures, "narrowly tailored to prevent and restrain

[Defendants'] future fraudulent conduct," 449 F. Supp. 2d at 925, have nothing at all to do with

the "unique regulatory expertise" of the FDA.  Def. Mot. at 19.  Indeed, for this precise reason

courts have routinely rejected arguments that primary jurisdiction has any application to claims

under RICO.  See, e.g., Bendzak v. Midland Nat. Life Ins. Co., 440 F. Supp. 2d 970, 977 (S.D.

Iowa 2006) ("violations of RICO" are "within the conventional expertise of judges, and [do not]

require the special expertise of" a specialized agency).[12]

---

[11]  See  United States v. Philip Morris USA, Inc., 396 F.3d 1190, 1203 (D.C. Cir. 2005)
(Williams, J., concurring) (explaining that transparency requirements prevent future
violations by insuring that they "will be quickly and easily identified"); 566 F.3d at 1140
("Requiring Defendants to reveal the previously hidden truth about their products will
prevent and restrain them from disseminating false and misleading statements, thereby
violating RICO, in the future").

[12]  See also Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d 882, 889 (6th
Cir. 1990) ("claims based on fraud and deceit do not require agency expertise for their
treatment"); Shaw v. Rolex Watch U.S.A., Inc., 776 F. Supp. 128, 132 (S.D.N.Y. 1991)
("Referral of the issues underlying this RICO action cannot be justified by the interest in
promoting uniformity and accuracy of decision-making within an agency's area of
expertise," for "[t]he standards of fraudulent misrepresentation and omission to be applied

For all these reasons Defendants' primary jurisdiction argument must also fail.

## CONCLUSION

For the foregoing reasons, the Public Health Intervenors respectfully request that the

Court deny Defendants' Motion for Vacatur.

Respectfully submitted,

/s/ *Howard M. Crystal*
Howard M. Crystal
(D.C. Bar No. 446189)
Katherine A. Meyer
(D.C. Bar No. 244301)

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Avenue, Suite 700
Washington, DC 20009
202-588-5206
hcrystal@meyerglitz.com

April 4, 2011                                                  Attorneys for the Public Health Intervenors

---

in this RICO action are within the conventional competence of this Court") (citing Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 303 (1976)).