UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>and )<br>)<br>TOBACCO-FREE KIDS ACTION FUND, )<br>*et al.*, )<br>)<br>Plaintiff-Intervenors, )<br>)<br>v. )<br>)<br>PHILIP MORRIS USA, INC., *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 99-CV-2496 (GK)<br>Next scheduled court appearance: NONE |

**PUBLIC HEALTH INTERVENORS' RESPONSE TO DEFENDANTS' SUBMISSION REGARDING THE MINNESOTA DEPOSITORY**

Defendants' arguments against the continued operation of the Minnesota Depository do not demonstrate changed circumstances warranting relief, and do not undermine the conclusion that the Depository remains an important tool both to insure that the unfettered truth is available to experts and interested parties who then make it available to the public, as well as to correct discrepancies with Defendants' document websites. Accordingly, the Court should not alter this remedy.[1]

---

[1] As the Court is aware, there is presently a dispute among the parties as to the number of separate briefs this Court authorized in Order #14 (DN 5878). *See* DN 5902 (United States Motion to Strike). The Public Health Intervenors respectfully request the Court to clarify that Order # 14, together with Order # 11 (DN 5873) (on corrective statements), established the number of briefs each party may submit on each issue – and thus, as to the Minnesota Depository, that today's "replies," Order #14 at 2, will be the last submissions on this topic. Absent such clarification, Intervenors anticipate that Defendants may file a further "reply" brief on the grounds that their opening filing was an initial motion. *See* DN 5893 at 1, n.1 (claiming that Defendants are entitled to file a further "reply" on corrective statements).

1.     As Intervenors have explained, Defendants' motion is subject to the strict standards of Federal Rule of Civil Procedure 60(b). <u>See</u> Ints.' Minn. Dep. Op. Br. ("Int. Dep. Br.") (DN 5898) at 1-3. Recognizing that this poses a higher burden than a motion under Rule 54, Defendants argue that, so long as *any* aspect of this Court's final judgment was vacated on appeal, the *entire ruling* loses its finality, and this Court is therefore free to modify its conclusions for any reason. Defendants' Opening Brief ("Def. Br.") (DN5897-1) at 8-9.

This makes no legal or logical sense. As this Court explained when BATCo made a similar argument, Rule 54 "'is not applicable' where the Court of Appeals has affirmed a portion of the judgment." Mem. Op. Of Mar. 28, 2011 (DN 5901) ("BATCo Ruling") at 6 (*quoting King Instrument Corp. v. Otari Corp.,* 814 F.2d 1560, 1563 (Fed. Cir. 1987)). Indeed, were it otherwise, a case might never end, for, whenever any issue was reversed on appeal the entire case would be reopened. Thus, here, for example, under this reasoning would Defendants contend that, even though they did not appeal the Minnesota Depository remedy, they are entitled to a second bite at that apple should the Court deny their "Rule 54" reconsideration motion on that remedy now? Or would they contend that, since some minor aspects of the Court's remedial measures were vacated and remanded to this Court, Defendants are free to file a Rule 54(b) motion – which authorizes the Court to revise "any order," Fed. R. Civ. P. 54(b) – to obtain reconsideration of certain of the Court's factual findings, with further appellate review if that request is denied?

To the contrary, no such additional avenues to relief are available to Defendants at this late stage, because Defendants' motion is governed by Rule 60(b) – whereby Defendants must demonstrate that "'a significant change either in factual conditions or in law' renders continued

enforcement [of this aspect of the Court's decree] 'detrimental to the public interest.'" *Horne v. Flores*, 129 S. Ct. 2579, 2593 (2009) (citations omitted); *see also Photomedex, Inc. v. Irwin,* Civ. No. 04-24, 2010 WL 3789639, at *3 (S.D. Cal. Sept. 27, 2010) ("There is no indication, in Rule 54(b) or elsewhere, that a party may bring a Rule 54(b) motion after appeal").[2]

Defendants have not demonstrated such changed circumstances here. To the contrary, while Defendants argue that the Minnesota Depository is "rarely used," Def. Mot. at 9, they have not argued that it is used significantly less than at the time of the Court's 2006 final ruling. Thus, while Intervenors and the public health researchers who have submitted declarations for the Court's consideration (*see* DN 5899-4 to 5899-9) disagree that there is any basis to conclude that the Depository is "a mere redundancy," Def. Mot. at 1, significantly, Defendants have not demonstrated why this "redundancy" is more of an issue now than in 2006, when the Court imposed *both* a Minnesota Depository *and* a website remedy.

Similarly, although Defendants note that they were not required to "post non-standard media documents archived at the Depository," on their websites, and claim that they are doing so now, Def. Mot. at 10, they do not explain how this is a *changed circumstance – i.e.*, they do not suggest that they *could not* have posted these materials earlier, nor do they explain why they did not raise this argument as a basis for avoiding the Depository requirements before this Court issued its final ruling, on reconsideration of that ruling, or on appeal. Accordingly, this is simply not a valid basis for Rule 60(b) relief. *See, e.g., Salazar v. Dist. of Columbia*, No. 10-7031, 2011

---

[2] Defendants' reliance on *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506 (6th Cir. 2001), *see* Def. Br. at 8, is misplaced because the judgment at issue on appeal there "did not resolve the litigation as to all parties . . . ." *Id.* at 511. Here, by contrast, the Court's final ruling in 2006 resolved this case as to all claims and all parties.

WL 403448, *9 (D.C. Cir. Feb. 8, 2011) ("Rule 60(b)(6) relief is not a 'substitute for appeal'" (other citations omitted)).

Finally, Defendants acknowledge that the availability of the Minnesota Depository and its staff have been critical to resolve "discrepancies" between documents Defendants produce there and those posted on their document websites, and they also recognize that they have been forced to post records on websites that *were not previously available*, precisely because third parties were able to use resources at the Minnesota Depository to track and raise such concerns.  Def. Mot. at 11-12.  Curiously, Defendants seek to use the recent efforts by the California Attorney General's office to address those discrepancies as a basis for *closing* the Depository, claiming that, in light of these efforts "any past discrepancies between the Depository and the websites will soon be fully remediated."  Def. Mot. at 11.

Of course, this begs the question of whether there will be *additional* discrepancies in the future, either as to prior productions or ongoing document productions required under the Court's Remedial Order, that might never come to light should the Depository be closed.  Indeed, Defendants do not explain why these many documents have not been on the websites until now; why it was necessary for a third party to raise these issues in order for Defendants to seek to resolve them; or why there is a reason to be confident that similar discrepancy problems will not arise in the future.[3]

---

[3] Nor do Defendants discuss what will happen to the documents held at the Minnesota Depository that Defendants have no intention of putting on their websites.  Muggli Decl. ¶ 28 (discussing non-public documents at the Depository); Brief of the United States (DN 5899), Ex. 1 (email from the honorable John H. Guthmann to Howard Crystal explaining the "Secure Privileged Facility" within the Minnesota Depository as to which the public does not presently have access).

Accordingly, Defendants have not met their burden to demonstrate a "significant change" in circumstances warranting relief from this remedy. *Flores*, 129 S. Ct. at 2593.

2. Defendants also fail to address the critical importance of the Depository to researchers, as outlined in the declaration by Monique E. Muggli. *See* Int. Dep. Br., Attach. 1. For example, Ms. Muggli explained that "specific search techniques available *only* at the Minnesota Depository allow for more comprehensive research and research findings." *Id*. ¶ 18 (emphasis added); *id.* ¶ 25 (by "reviewing boxes of documents, page by page, at the Minnesota Depository, I have made serendipitous and important findings that I would have not found on the tobacco document websites."). She also explained that "[a] crucial aspect of the Minnesota Depository is that it includes searchable electronic indices that list every single document that the tobacco companies" produce, *id.* ¶ 21, and she detailed how she has learned of issues, such as the use of code names, utilizing materials at the Depositories using methods that are not readily available on the websites. *Id.* ¶ 23. She also outlined the oversight role at the Minnesota Depository that is not available on Defendants' websites. *Id.* ¶ 29. Since Defendants' document websites do not and cannot substitute for these vital functions, the Court should not disturb this remedy for these reasons as well.

3. Finally, Defendants make the curious assertion that jurisdiction over the portion of the Court's remedial order concerning the Minnesota Depository should "rest with the Minnesota District Court." Def. Mot. at 13. Putting aside whatever relevance this Court's ruling and remedies may have in other courts, Order # 1015 was issued by *this* Court to prevent and restrain Defendants' further violations of RICO. Should Defendants violate that Order – for example, by closing the Depository or failing to continue to send records there – there can be no serious

dispute that the proper forum to resolve Defendants' violation of this Court's Order would be in *this* Court.

On the other hand, the history of the Depository – which has now been open for thirteen years – indicates that there is unlikely to be much, if any, need for Court involvement once the Court resolves this threshold issue of whether it will relieve Defendants of this remedial measure. Although there was some litigation in early years to resolve several disputed issues concerning Depository operations, *see, e.g.*, *State of Minnesota ex. rel. Humphrey v. Philip Morris, Inc.*, 606 N.W.2d 676 (C.A. Minn. 2000), further Court intervention has not been necessary, and there is no reason to expect that this situation will change in the future. To the contrary, as detailed in the United States' brief and accompanying declarations, an independent firm, Smart Legal Assistance, has managed the Depository since it opened, and has in place many systems to resolve any discrepancies that arise as materials are sent there.  *See* DN 5899 at 23; *see also id.* Ex. 3 (Minnesota Depository General Procedures).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to modify the Court's Remedial Order concerning the Minnesota Depository should be denied.

                                                       Respectfully submitted,

                                                       /s/ *Howard M. Crystal*
                                                       Howard M. Crystal
                                                       (D.C. Bar No. 446189)
                                                       Katherine A. Meyer
                                                       (D.C. Bar No. 244301)

                                                       MEYER GLITZENSTEIN & CRYSTAL
                                                       1601 Connecticut Avenue, Suite 700
                                                       Washington, DC 20009
                                                       202-588-5206
                                                       hcrystal@meyerglitz.com

April 5, 2011                                        Attorneys for the Public Health Intervenors