UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br><br>v.<br><br>PHILIP MORRIS USA INC.,<br>   f/k/a PHILIP MORRIS INC., et al.,<br>   Defendants. | Civil No. 99-CV-02496 (GK)<br><br>Next scheduled court appearance:<br>None |

**UNITED STATES' REPLY BRIEF ON DEFENDANTS' RULE 60(b) MOTION TO CLOSE THE MINNESOTA DEPOSITORY**

**Table of Contents**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
1.  STANDARD OF DECISION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.  THE MINNESOTA DEPOSITORY PROVIDES THE ONE INDEPENDENT CHECK ON THE ACCURACY AND COMPLETENESS OF DEFENDANTS' DOCUMENT-DISCLOSURE TRANSPARENCY OBLIGATIONS
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    a.   Recent developments indicate that Defendants are deliberately withholding documents—publicly available at the Minnesota Depository—from their document websites. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    b.   No recent checks on completeness or integrity of Defendants' document websites
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
3.  DEFENDANTS DRAMATICALLY UNDERSTATE THE MINNESOTA DEPOSITORY'S USAGE. . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**INTRODUCTION**

As demonstrated in the United States' opening brief and supporting declarations, the Minnesota Depository provides a vital check on the accuracy and completeness of Defendants' document-disclosure obligations, and provides a unique and valuable research tool in its own right. A self-initiated effort by the University of California–San Francisco, using March 2010 information from the Minnesota Depository, identified tens of thousands of documents that should have been on Defendants' document websites, but that were missing—and further information acquired over the past two days, prompted by Defendants' opening brief, suggests that Defendants may have responded to those inquiries by suppressing tens of thousands of additional documents from public access. In addition to serving as the only independent check on the accuracy and completeness of Defendants' document-disclosure obligations, the Minnesota Depository has facilitated important document research, such as revealing Defendants' coordinated efforts to subvert the World Health Organization and other public-health groups, Hirschhorn Decl. ¶¶ 9, 10(b), 12; uncovering documents not available from cited in Congressional reports, Muggli Decl. ¶ 26; and exposed Defendants' coordinated and deceptive public claims about secondhand smoke, Hurt Decl. ¶ 7. Documents found at the Minnesota Depository showed that for three years, Philip Morris and CIGNA worked together to suppress tobacco-related information (*e.g.*, that tobacco smoke can trigger asthma and middle-ear infections in children) from quarterly health newsletters sent not only to Philip Morris's own employees, but the employees of affiliated companies as well, such as Kraft and Miller Brewing. M.E. Muggli & R.D. Hurt, *A Cigarette Manufacturer and a Managed Care Company Collaborate to Censor Health Information for Employees*, 94 Am. J. Pub. Health 1307 (2004). The lead author's declaration to this Court, filed with the March 24, 2011, opening briefs, explains why such

discoveries are more likely at the Minnesota Depository than with Defendants' document websites. Muggli Decl. ¶ 25.

By contrast, Defendants' motion to close the Minnesota Depository relies primarily upon predictable assertions that its contents are superfluous and redundant. As to the defects in Defendants' document websites uncovered during the past year through the volunteer efforts of UCSF (using the Minnesota 4(b) Index as of March 2010), Defendants appear unconcerned that they themselves confirm that tens of thousands of documents were missing from their document websites; and unconcerned that the defects in their document websites were uncovered through the volunteer efforts of the California Attorney General's Office and UCSF, rather than through any efforts they make to ensure the accuracy or completeness of the documents available on their document websites. Even more problematically, information from the Depository the last two days, and from counsel for Philip Morris and Altria this afternoon, appears to reveal substantial *new* issues with the accuracy, completeness, and integrity of Defendants' document-disclosure obligations.

## DISCUSSION

**1.    STANDARD OF DECISION**

Defendants assert that the Court erred by directing them to file their motion to close the Minnesota Depository under Fed. R. Civ. P. 60(b), which applies to final judgments. Defendants contend that, because the D.C. Circuit remanded *other* remedial issues to this Court (after an appeal that did not dispute this or any of the Court's other transparency remedies), *no* portion of the Court's judgment remains final—including its provisions for the Minnesota Depository. Defs.' Mem. in Supp. of Mot. to Modify Order #15 to Remove the Minn. Depository Reqm'ts at 2 n.1, 8 (hereafter "Defs.' Br.") (R. 5897, Ex. 1; filed 3/24/2011). Accordingly, Defendants contend that their motion

to close the Minnesota Depository should be considered under the second sentence of Fed. R. Civ. P. 54(b). This rule provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b).

The Court recently rejected a similar argument in the context of BATCo's motion for reconsideration. Mem.-Op. #16 at 5-6 (R. 5901; issued 3/28/2011). Even if Rule 54(b) did apply, the Court "should be loathe" "to revisit prior decisions . . . in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). Accordingly, even if Rule 54(b) were applicable here, the Court "should not grant a motion for reconsideration unless the moving party shows new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000) (motion to reconsider interlocutory decision denying motion to dismiss). This is the standard that this Court has consistently applied in this case. *United States v. Philip Morris USA*, 220 F.R.D. 109, 112 (D.D.C. 2004) (Kessler, J.) ("A motion for reconsideration should be granted only if the Court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal quotation marks and citations omitted) (motion to reconsider interlocutory contempt and sanctions decision); Mem.-Op. #399 at 3 (R. 2462; issued 9/2/2003) (same) (motion to reconsider interlocutory decision denying partial motion to dismiss); *see also*, *e.g.*, *In re Guantanamo Bay Detainee Litig.*, 706 F. Supp. 2d 120, 122 (D.D.C. 2010) (Hogan, J.) ("Although a federal district court has the discretion to reconsider interlocutory orders,

the Supreme Court has admonished that 'courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.' In particular, a court should grant a motion for reconsideration of an interlocutory order 'only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order.' ") (internal quotation marks omitted; quoting *Christianson*, 486 U.S. at 817, and *In re Vitamins Antitrust Litig.*, No. Misc. 99-197(TFL), 2000 WL 34230081, at *1 (D.D.C. July 28, 2000)).[1]

Defendants make no claim that there has been any change in the law; no claim that the Court committed a clear error in ordering the Minnesota Depository remedy in 2006; and no claim capable of withstanding scrutiny that circumstances have changed in any meaningful way.

**2. THE MINNESOTA DEPOSITORY PROVIDES THE ONE INDEPENDENT CHECK ON THE ACCURACY AND COMPLETENESS OF DEFENDANTS' DOCUMENT-DISCLOSURE TRANSPARENCY OBLIGATIONS**

The United States' and the Defendants' opening briefs on March 24 both had some discussion of the recent self-initiated efforts by a public university library in California to compare the documents listed on the Minnesota 4(b) Index (as of March 2010) against the documents

---

[1] This is the same standard that this Court applies to motions to reconsider filed under Rule 59(e). *See, e.g., Shaw v. Marriott Int'l, Inc.*, 587 F. Supp. 2d 223, 224 (D.D.C. 2008) (Kessler, J.); *Nat'l Sec. Archive v. CIA*, 584 F. Supp. 2d 144, 146 (D.D.C. 2008) (Kessler, J); *Pearson v. Thompson*, 141 F. Supp. 2d 105, 107-08 (D.D.C. 2001) (Kessler, J.).
  Some judges of this District have stated that they apply different standards to reconsider interlocutory orders under Rule 54(b) than final judgments under Rule 59(e). *See, e.g., Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004) (Urbina, J.) (stating that "courts have more flexibility in applying Rule 54(b)" than Rules 59(e) and 60(b)); *id.* at 257 & n.7 (observing that "courts apply a wide variety of tests to determine reconsideration under Rule 54(b)" and surveying cases); *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (Lamberth, J.) (stating that the court will modify an interlocutory order under Rule 54(b) "as justice requires," such as when the court has "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.") (internal quotation marks and citations omitted)).

available on Defendants' document websites.  Defendants' short discussion does more to obscure than explain the significance of the problems that were found.

      **a.**    **Recent developments indicate that Defendants are deliberately withholding documents—publicly available at the Minnesota Depository—from their document websites**

Close examination of Defendants' March 24 brief and supporting declarations—corroborated by developments the past two days—reveals a startling new problem: Documents that are listed on the Minnesota 4(b) Index (and that the Minnesota Depository confirms today are publicly accessible at the Minnesota Depository today) are deliberately *not* on Defendants' documents websites, because Defendants assert that they are not subject to public disclosure.

The United States' opening brief and the description of the Minnesota Depository's general procedures, provided by Cindie Smart, explain the function of the Minnesota 4(b) Index: It is "the depository's main, in house, research tool," and provides "document location information along with brief descriptions of all documents that are relevant, not privileged, and produced to the depository." Cindie Smart, "Minnesota Tobacco Document Depository–General Procedures," ¶ 6 at 2 (hereafter "Smart, 'Minnesota Depository General Procedures' ") (U.S. Opening Br., R. 5899, Ex. 3; filed 3/24/2011).  As Carol Smith, manager of the Minnesota Depository, recently confirmed, the 4(b) Index is not supposed to include any documents that the tobacco companies claim are confidential or subject to privilege.  Ex. 1 to present brief (4/5/2011 email, Smith to Crane-Hirsch).  Minnesota Depository staff carefully compare the contents of each box as it arrives at the Depository against the 4(b) Index, to make sure that there is a one-to-one match.  Smart, "Minnesota Depository General Procedures," ¶ 6 at 3.  Thus, "[t]he 4(b) database should mirror the bates index and box contents." *Id.*

5

The self-initiated work by UCSF, in its attempt to ascertain the accuracy and completeness of the Defendants' online collections, "compared the 4(b) Indices with the Defendant's online document lists and identified discrepancies involving well over 100,000 documents." Klausner Decl. ¶ 13. In response to written inquiries sent by the California Attorney General's Office, R.J. Reynolds acknowledged that the work initiated by UCSF "identified 32,164 documents that we plan to post" to their document websites. *Id.* ¶ 17 (quoting 1/5/2011 ltr., Leonard to Finberg at 2). Philip Morris and Altria asserted in February 2011 that 76,525 of the documents inquired about were on its website — some 66,764 more inquired-about documents than the 9,761 documents it had said in December 2010 were on its website. *Id.* ¶ 15. (Lorillard had a smaller number of discrepancies. *Id.* ¶ 14.)

Defendants thus acknowledge that the work that UCSF took on identified tens of thousands of documents that should have been on their document websites, but were not. Defendants had the wherewithal to undertake precisely the same kind of cross-checks themselves at any time—but they did not do so. That Defendants' document websites were missing tens of thousands of documents (and may still be missing tens of thousands more, as discussed below) was *not* discovered by any effort of Defendants to police the integrity or completeness of their own Court-ordered document-disclosures. Instead, these omissions were discovered *only* because a public institution voluntarily took on a huge amount of work to check up on the completeness of Defendants' document websites —and because the Minnesota Depository's 4(b) Index was available for that check to be made. Klausner Decl. ¶¶ 15, 17. (In addition, as noted above, much of the value of the Minnesota 4(b) Index is due to the efforts of Depository staff to cross-check the contents of every hard-copy box against the index. *Id.* ¶ 16; Smart, "Minnesota Depository General Procedures," ¶ 6 at 3.)

Developments over the past two days demonstrate that Defendants themselves are in substantial confusion about both the contents of the Minnesota Depository and what this Court's order requires them to post on their document websites. As discussed above, the Minnesota 4(b) Index is the primary research tool at the Minnesota Depository; staff at the Minnesota Depository carefully cross-check the contents of every incoming box against the electronic data that Defendants submit in their 4(b) Index updates. Just four months ago, in response to discovery demands in another case, Philip Morris described the 4(b) Index as "a searchable index to all of the documents produced into the Minnesota Depository to date," and stated that "[t]he '4B indices' identify for each document the box number; Bates (document) number; title; author(s); recipient(s); person(s) copied; document type; date shipped to the Minnesota Depository; and, in many cases, at least one document request to which the document is responsive." Philip Morris USA Inc.'s Resp. to Request for Prod'n, Set One, *In re Tobacco Cases II*, at 3 & n.4, JCCP No. 4042 (Cal. Superior Ct. filed 12/6/2010) (Ex. 2 to present brief). In the same litigation, Lorillard similarly stated that, "the Minnesota Depository has an electronically searchable index (the 4B Index') containing the following information for each document produced to the Minnesota Depository by Lorillard: box number; Bates (document) number; title; author; recipient; copyee; document type; date shipped to the Minnesota Depository; and identification of one or more discovery requests to which the document is responsive." Lorillard Resp. to Request for Prod'n, Set One, *In re Tobacco Cases II*, at 4, JCCP No. 4042 (Cal. Superior Ct. filed 12/6/2010) (Ex. 3 to present brief). Neither company made any claims that the 4(b) Index commingles publicly accessible documents and documents that are confidential or subject to claims of privilege.

But in Philip Morris's and Lorillard's declarations before this Court, both companies made precisely this claim:

> The PM USA 4B index is an index of publicly available documents produced by PM USA and ALG to the Depository. *The 4B index also lists privileged and confidential documents* maintained at the Depository in a secure room that is not open to the public. As it turns out, a significant number of the documents identified by the CAAG as being listed on PM USA's 4B index but not available on the PM USA's public website were either actually available on the website, *or not required to be posted due to the document's privilege or confidentiality designation*. *See* December 22, 2010 letter to Ms. Jeanne Finberg noting that nearly 80% of documents identified by the CAAG as being listed on PM USA's 4B index but not on PM USA's public website were actually on the website or not required to be (Ex. A).

Klein Decl. 6 (emphases added).

> The Lorillard 4B index is an index of documents produced by Lorillard to the Depository. As it turns out, a significant number of the documents identified by the CAAG as being listed in the Depository were not, in fact, in the Depository and were *exempt from disclosure to the Depository or to Lorillard's public document website due to the document's confidentiality designation*. *See* December 2, 2010 letter to Ms. Jeanne Finberg noting that approximately 85% of documents identified by the CAAG were not required to be posted to the website. (Exhibit A).

Talbert Decl. 5 (emphasis added).

The notion that the 4(b) Index commingles documents that are publicly accessible and documents that are not would substantially undermine its status as the Depository's "main, in house, research tool." Smart, "Minnesota Depository General Procedures," ¶ 6 at 2. Because this notion was so contrary to the experience of Kim Klausner—the director of the relevant library at the University of California—she contacted the Minnesota Depository to ask if they could look at eight documents that Philip Morris had told the California Attorney General's Office were not subject to public disclosure because they were designated as confidential. Klausner Suppl Decl. ¶ 10 (Ex. 4 to present brief). The Depository reported that all eight documents remain listed on the 4(b) Index

8

as of today, and that they are all physically in their appropriate boxes at the Minnesota Depository. *Id.* ¶ 11. To make absolutely sure that there was no confusion, at Ms. Klausner's request, the Depository confirmed that the eight documents that Philip Morris said do not need to be on its public document website due to confidentiality remain "available to the public as indicated on the 4(b)." *Id.* ¶ 13.

It therefore appears possible that Defendants may have mis-informed this Court about the status of the publicly-available documents at either or both the Minnesota Depository and their websites. It seems, at minimum, that eight of the documents Philip Morris has stated need not be on its document website, due to confidentiality reasons, are in fact publicly available at the Minnesota Depository. This wholly undermines Defendants' statement to this Court:

> The various Defendants have effectively resolved these discrepancies. Once all Defendants complete this reconciliation process, *all publicly available documents at the Depository will be publicly available on Defendants' document websites.*

Defs.' Br. at 7 (footnote omitted; emphasis added). Defendants said nothing to alert the Court that there are *any* publicly available documents at the Minnesota Depository that they are deliberately withholding from their public document websites on grounds of confidentiality. As of today, we now know that 100% of a sample of eight documents that Defendants asserted need not be posted to their document websites, due to confidentiality, are in fact publicly available at the Minnesota Depository.

More generally, these developments make clear that a substantial amount of work will need to be undertaken to understand Philip Morris's (and Lorillard's similar) claims before this Court that the Minnesota 4(b) Index commingles publicly accessible documents and documents that are designated as confidential or subject to privilege claims, without any indication of which is which.

9

(Once again, neither of these companies hinted at any such problem in their recent discovery responses in the *In re Tobacco II* litigation in California. *See* Exs. __ & ___.) Defendants have asserted that tens of thousands of the documents that UCSF found were listed on the 4(b) Index but not available on the Defendants' document websites were actually confidential or privileged; Ms. Klausner, the manager of the UCSF Legacy Tobacco Documents Library, indicates that she will now need to assign staff to investigate these tens of thousands of discrepancies; of the eight documents in this category that she has specifically asked about, 100% to date turn out actually to be publicly available at the Depository. Klausner Suppl. Decl. ¶ 14.[2]

> b. <u>No recent checks on completeness or integrity of Defendants' document websites</u>

Beyond the startling implications of these recent declarations, the work that UCSF did was based on data that was current as of March 2010. *Id.* ¶ 13. Since March 1, 2010, Defendants have added a further 1,158 boxes to the Minnesota Depository. Ex. 1 to present brief (4/5/2011 email, Smith to Crane-Hirsch). Using the Depository's general conversion rate of 2,400 pages per box, *see* 3/24/2011 email, the Hon. John Guthmann to Crystal (U.S. Opening Br., R. 5899, Ex. 1; filed 3/24/2011), this yields nearly 280,000 new pages.

---

[2] In other emails today, counsel for Philip Morris reiterated Philip Morris's belief that the 4(b) Index includes both publicly-accessible documents *and* documents designated as confidential or subject to privilege. Ex. 5 (to present brief), 4/5/2011 email, Levy to Smart. Counsel for Philip Morris went on to summarize various information that Philip Morris provides for sample documents on its website. *Id.* The Minnesota Depository's response advised that the Minnesota 4(b) Index is wholly separate from the tobacco companies' document websites; and emphasized that, "[a]s we advised in that earlier email, the MTDD 4(b) database indices do not include confidential/privileged documents." Ex. 6 (to present brief), 4/5/2011 email, Smith to Levy. The email continued, "confidential/privileged document descriptions are available via 'Minnesota Privilege Logs' and the 'Comprehensive Privilege Logs' both of which are subsets of the MTDD 4(b) database." *Id.*

None of this provides any explanation about why the eight documents that Ms. Klausner asked about—identified by Philip Morris as not subject to posting on its website, due to confidentiality—are listed in the publicly accessible 4(b) Index, and are available to the public. Klausner Supp. Decl. ¶ 14. (Nor, for that matter, does any of this explain the markedly different explanations of the 4(b) Index that Philip Morris and Lorillard have provided in this litigation versus the *In re Tobacco Cases II* litigation.)

There is little basis for confidence that all of these new materials are available on Defendants' document websites. Defendants' March 24, 2010, brief and supporting declarations make no claim that they themselves use any quality-control procedures to confirm that they post copies to their websites of all documents that they send to the Minnesota Depository. Instead, Defendants predicate their motion to close the Minnesota Depository based upon their asserted "practice" of posting the same documents to their websites that they send to the Minnesota Depository. Talbert Decl. ¶ 6 ("Lorillard's practice is to post to the public document website the electronic version of the same set of documents that is printed and produced to the Minnesota Depository"); Leonard Decl. ¶ 8 (under R.J. Reynolds' "practice," "all non-confidential, non-privileged documents produced by RJRT from the files of RJRT in applicable litigation are loaded onto RJRT's public website and hard copies of these documents are sent to the Minnesota Depository"); Klein Decl. ¶ 5 ("another reason that has been cited to support maintaining the Depository is that it provides a 'check' to ensure that Defendants are posting to their document websites all documents they produce in smoking and health litigation. Whether or not this rationale has ever been true, it can no longer serve as justification for maintaining the Depository. PM USA's public document website *is* PM USA's production vehicle for non-privileged, non-confidential documents.") (emphases added).

Defendants ask the Court to conclude that their document websites are now complete and accurate, based upon their responses, question-begging as they may be, to a single university's inquiries. But those inquiries were based on the Minnesota 4(b) Index as it stood more than a year ago, in March 2010, and Defendants make no claim that they have updated any checks for accuracy or completeness. *See, e.g.*, Klein Decl. ¶ 6 (stating that "Philip Morris has now resolved all discrepancies *identified by the CAAG [using March 2010 data]* and is unaware of any document in

11

the Depository that is not posted to its public website [subject to certain exceptions].") (emphasis added); Leonard Decl. ¶ 16 ("to my knowledge, all discrepancies *identified by the CAAG [using March 2010 data]* have either been resolved or will be resolved by April 11, 2011") (emphasis added). Defendants make no claim that they have independently confirmed that the contents of their document websites are now consistent with the Minnesota 4(b) Index as of any date more recent than March 2010.

Defendants thus ask the Court to presume that, based on their responses to the California Attorney General's Office, based in turn upon the 4(b) Index as it stood in March 2010, their document websites are not only currently up to date—but moreover, that for the remainder of the document websites' 15-year terms, the Court should trust Defendants to police the accuracy and completeness of their document websites, without any mechanisms to facilitate independent verification, either by the United States or by other institutions that use Defendants' document-disclosure obligations to advance the public's knowledge and understanding of Defendants' conduct. The United States respectfully submits that Defendants have provided little reason for the Court to take this step—and certainly not "new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Scis.*, 199 F.3d at 511.

3. **DEFENDANTS DRAMATICALLY UNDERSTATE THE MINNESOTA DEPOSITORY'S USAGE**

Defendants contort themselves to claim that the Minnesota Depository has only a handful of what Defendants grace with the term "public" "visitors" per year. Defs.' Br. at 9. The United States' opening brief anticipated that Defendants would make such an argument, and explained in advance why it would be mistaken. U.S. Opening Br. at 20-23 (R. 5899; filed 3/24/2011).

It appears that, in Defendants' eyes, a researcher who attends the Depository for the second time does not count. Thus, a researcher who uses the Depository on a daily basis for months on a single research project (Muggli Decl. ¶ 10) counts as "one" in Defendants' count. So do researchers who use the Depository for multiple research projects and clients. *See, e.g.*, LeGressley Decl. ¶¶ 3-5 (describing Minnesota Depository research on behalf of clients in seven countries); Muggli Decl. ¶ 9 (describing Minnesota Depository research on behalf of 13 organizations in 6 countries); Hirschhorn Decl. ¶ 11 (describing Minnesota Depository role in World Health Organization country-specific research and report-preparation for individual member countries). Defendants' count moreover leaves out telephone and email inquiries, without any explanation.

Even more puzzling, although all parties have usage data going back to early 2005—a year before this Court issued its Final Order—Defendants provide data only from 2008 to the present. Even that information, presented in full, would reveal that from May 2008, when the Depository would have closed but for Defendants' agreement to continue operating it during the pendency of appeals in this case, up through March 15, 2011, the Depository has received over 356 unique requests for documents, data files, or other information, with 270 of these from members of the public and 86 from Defendants' representatives. *See* Minnesota Depository Usage figures, Dec. 2007 to Mar. 15, 2011 (U.S. Opening Brief, Ex. 14).

Defendants can make no credible claim that circumstances have changed so radically that as to constitute "extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. at 817 (internal quotation marks and citation omitted).

## **CONCLUSION**

For the reasons above, and in our opening brief, the United States respectfully urges the Court to deny Defendants' motion to close the Minnesota Depository years before the Court's Final Order (as modified by Order #1021) prescribes.


Dated: April 5, 2011  
       Washington, D.C.

Respectfully submitted,

TONY WEST  
Assistant Attorney General

MAAME EWUSI-MENSAH FRIMPONG  
Acting Deputy Assistant Attorney General

EUGENE M. THIROLF, Director  
Office of Consumer Litigation

\_\_\_/s/_____  
DANIEL K. CRANE-HIRSCH  
Trial Attorney  
Office of Consumer Litigation, Civil Division  
United States Department of Justice  
PO Box 386  
Washington, DC 20004-0386  
Telephone: 202-616-8242  
Facsimile: 202-514-8742  
E-mail address: daniel.crane-hirsch@usdoj.gov