UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> and ) <br> ) <br> TOBACCO-FREE KIDS ACTION FUND, ) <br> *et al.*, ) <br> ) <br> Plaintiff-Intervenors, ) <br> ) <br> v. ) <br> ) <br> PHILIP MORRIS USA, INC., *et al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. 99-CV-2496 (GK) <br><br> Next scheduled court appearance: NONE |

**PUBLIC HEALTH INTERVENORS' OPPOSITION TO DEFENDANTS' MOTION
TO CLARIFY ORDER #1015 CONCERNING ENFORCEABILITY**

Under the guise of seeking "clarification," Defendants request that the Court significantly, and unnecessarily, restrict the scope of the Remedial Order in this case by (a) excluding the Public Health Intervenors from further participation once pending remedial issues are resolved; (b) curtailing whatever legal significance the Order might otherwise have in other legal proceedings; and (c) imposing unwarranted procedural barriers to enforcement of the Court's decree. *See* Defendants' Memorandum in Support of Motion to Clarify Enforceability ("Def. Enf. Mot.") (DN 5896-1). Because nothing in the Court's Order even touches on these matters, however, there is nothing to "clarify." Rather, Defendants seek to *modify* the Court's decree, and because they do not even try to meet the strict requirements of Federal Rule of Civil Procedure 60(b), their present motion should be denied on that basis alone.

There are also no legal or practical grounds for the Court to resolve these issues at this juncture. Nonetheless, in the event the Court considers the merits of Defendants' motion at this time, their arguments for limiting Intervenors' role in this case have largely been rejected by this Court and the D.C. Circuit already, and their other arguments seeking to constrain the Court's ruling are equally without merit.

## BACKGROUND

After the trial in this case concluded, this Court granted the motion of six leading public health organizations to intervene in the suit, finding that the Public Health Intervenors not only established Article III standing and advanced a legally protectable interest that would otherwise be impaired, but also satisfied the strictures of Federal Rule of Civil Procedure 24(a), granting them participation as intervenors *of right*. Opinion Granting Intervention ("Int. Op.") at 3, 8-10 (DN 5565), *available at* 2005 WL 1830815. As the Court recognized, Intervenors' right to participate did not turn on whether they were entitled to bring their *own* RICO claims against Defendants; rather, under well-established precedents the only relevant question was whether Intervenors possessed the requisite interest. *Id.* at 8 (*citing*, *e.g., Jones v. Prince Georges Cnty., Md.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003)).

As parties, the Court did not place any limitations on Intervenors' participation. The only restriction the Court noted was Intervenors' representation that they would participate for the purpose of "being heard on the issue of the permissible and appropriate remedies in this case," as opposed to presenting evidence on Defendants' liability. *Id.* at 1, 3-4; *see also* Motion to Intervene at 1 (DN 5534). The Court also specifically noted the value of Intervenors' participation, in large part because, "[i]n a case of this magnitude, which could potentially affect

2

the health and welfare of the American public . . . it will serve the public interest for major public health organizations, such as Intervenors, who have long experience with smoking and health issues, to contribute their perspectives on what appropriate and legally permissible remedies may be imposed should liability be found." *Id.* at 10-11; *see also United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 34 (D.D.C. 2006) (noting that intervenors filed their motion "in order to assert *their interests* in the proposed relief," and that they "had a clear interest in advancing the public health and in the remedies proposed in this case") (emphasis added); *see also* DN 5564 (Intervention Order ("Int. Order")).

On appeal, Defendants continued to argue that Intervenors were not permitted to participate in this case, but the D.C. Circuit, finding that "Defendants are wrong," affirmed this Court's ruling that Intervenors possessed both the requisite interest in the litigation, and Article III standing, entitling them to intervention of right. *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1145-47 (D.C. Cir. 2009). In reaching that determination, the Court of Appeals specifically noted that it was essential to determine that the Intervenors satisfied the standing requirements of Article III *"'because an intervenor participates on equal footing with the original parties to a suit.'"* *Id.* at 1146 (emphasis added) (quoting *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)).

Indeed, Intervenors not only fully participated in all remedies issues on appeal, *e.g. id.* at 1140 (upholding corrective statements remedy based on what "*Intervenors* here argue") (emphasis added), they also filed their own Petition for Certiorari (and opposed Defendants' Petitions) on remedies – and at that stage Defendants no longer even *contested* Intervenors' participation. *E.g.* Op. Brief, Nos. 09-978 and 09-994 (S. Ct.). Similarly, on remand Intervenors

have fully participated in briefing on a host of remedial issues – including, *e.g.*, the corrective statements that will be required; the continued operation of the Minnesota Depository; and whether the Court's entire ruling should be vacated in light of new legislation. *See, e.g.*, DN 5883; 5898; 5908.

To date, no party has sought enforcement of the Court's Remedial Order. Nonetheless, with no new facts and no factual basis, and claiming that "nothing short of chaos" will ensue unless the Court acts now, Def. Enf. Mot. at 7, by this motion Defendants seek to effectively terminate Intervenors' party status, and otherwise restrict the prospects for enforcement of the Court's ruling.

## ARGUMENT

A.  **Defendants' Motion Should Be Denied Because They Have Not Attempted To Meet Their Heavy Burden Under Fed. R. Civ. Pro. 60(b) To Justify Modification Of Order #1015.**

This Court issued a final Remedial Order in this case in 2006. Although the D.C. Circuit later remanded certain discrete components of the Court's Order for further consideration, none of the enforceability matters at issue in Defendants' present motion were among them. Indeed, Defendants raised *none* of these matters either in any post-judgment motion before this Court or on appeal. Accordingly, it has been Intervenors' position from the outset that Defendants may not pursue the modifications sought here without satisfying the strict requirements of Federal Rule of Civil Procedure 60(b), *see* Pub. Hlth. Int. Status Report (DN 5843) at 3 (Nov. 24, 2010).

In other recent motions, Defendants have asserted that, in light of the D.C. Circuit's limited remand, this Court is free under Federal Rule of Civil Procedure 54(b) to reconsider any aspects of its earlier rulings. *E.g.* BATCo Motion for Reconsideration (DN 5849) at 8;

Defendants' Motion To Close Minn. Depository (DN 5897-1) at 2 n.1.  This Court has already rejected this argument, however, explaining that Rule 54 "'is not applicable' where" – as here – "'the Court of Appeals has affirmed a portion of the judgment."  Mem. Op. Of Mar. 28, 2011 (DN 5901) at 6 (quoting *King Instrument Corp. v. Otari Corp.,* 814 F.2d 1560, 1563 (Fed. Cir. 1987)).

Accordingly, as a threshold matter, this motion should *only* be considered under Rule 60(b).  Indeed, Defendants use of the term "clarification" is a misnomer, as there are no terms in the Court's Order to clarify.  Rather, Defendants plainly seek to *modify* the Order, which they may only do under Rule 60(b).  *In re Walter*, 282 F.3d 434, 439 (6th Cir. 2002) ("constru[ing] [plaintiff's] Motion to Clarify as one seeking relief from judgment pursuant to Rule 60(b)" and applying 60(b) standard); *Napoli v. Town of New Windsor*, 600 F.3d 168, 170 (2d Cir. 2010) (applying 60(b) standard to plaintiff's "motion for clarification" of "several issues that the district court had not addressed in its previous order").

As the D.C. Circuit recently reiterated, to obtain relief from a judgment under Rule 60(b)(6) – *i.e.*, for "any other reason that justifies relief" – a movant must demonstrate "extraordinary circumstances" warranting such relief. *Salazar v. Dist. of Columbia*, No. 07-7031, 2011 WL 403448, at *4 (D.C. Cir. Feb. 8, 2011).  As the Court of Appeals has emphasized, Rule 60(b)(6) "'should be only *sparingly used*' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Id.* at *8 (quoting *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007)) (emphasis added).  Rule 60(b)(5) – allowing relief from a judgment which is no longer equitable – is subject to a similarly strict standard, authorizing relief only "if a '*significant change* either in factual conditions or in the

law' renders continued enforcement '*detrimental to the public interest*.'"  *Horne v. Flores*, 129 S. Ct. 2579, 2593 (2009) (quoting *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 384 (1991)) (emphasis added).

Defendants do not even attempt to satisfy either prong of Rule 60(b) here.  Nor could they.  Indeed, there are no concrete facts necessitating that the Court address any of these issues at this time, as the Court is still finalizing the contours of its injunctive relief.  In short, Defendants have not and cannot demonstrate either "extraordinary circumstances" or a "significant change either in factual conditions or in the law . . . [that are] detrimental to the public interest" regarding the enforceability of the Court's Remedial Order sufficient to warrant any of the relief requested.

Under these circumstances, the Court need go no further to deny Defendants' request for "clarification," since Defendants have not satisfied, nor even seriously attempted to satisfy, their Rule 60(b) burden of proof.  *See, e.g.*, *U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1275 (3d Cir. 1979) (explaining that those seeking modifications under Rule 60(b) must "convincingly demonstrate the purported change . . . [or otherwise] fail[] to meet the heavy burden of proof that is required to merit the extraordinary relief that may be granted under Rule 60(b) only upon a showing of exceptional circumstances"); *Boehner v. Heise*, Civ. No. 03-5453, 2009 WL 1360975, at *5 (S.D.N.Y. May 14, 2009) ("As with all motions under Rule 60(b), the evidence in support of a 60(b)(6) motion must be highly convincing.").[1]

---

[1] Certainly, Defendants may not be permitted to try to make this showing in the first instance in their *Reply* brief.  *E.g. Forman v. Korean Air Lines Co., Ltd.,* 84 F.3d 446, 448 (D.C. Cir. 1996) ("we will not entertain arguments or claims raised for the first time in a reply brief").

**B.     Defendants' Attempt To Strip Intervenors Of Their Remedial Enforcement Rights Is Premature, Legally Baseless, And Contradicts Prior Rulings Of This Court And The D.C. Circuit.**

Defendants request that the Court insert language into the Remedial Order specifying that only the United States and the Defendants may "enforce the provisions of this Order without leave of Court to do so." DN 5896-1 at 2. Defendants' purported justification for this language – which would strip Intervenors of their remedial enforcement rights in this case – is that any other outcome "would result in a haphazard and unmanageable enforcement regime," *id.* at 5, opening "the gates to any and all private parties" to enforce the Court's Order, thus resulting in "an endless stream of disputes, as disparate parties seek to advance ever more creative and restrictive interpretations of the Order's provisions." *Id.* at 7.

As a threshold matter, Intervenors are obviously not in the same legal or practical position here as "any and all private parties" who, Defendants claim, will bring an "endless stream of disputes" to the Courthouse door unless the Court enters their proposed modification. *Id.* at 7. Intervenors are *parties* to this case, and in the event any other, non-party seeks to be heard, they would first have to meet Rule 24 requirements to demonstrate, *inter alia,* that *both* the United States *and* the existing Intervenors are not adequately representing their interests. Fed. R. Civ. P. 24. Accordingly, Defendants' hyperbole that absent the modification they seek the floodgates will be open for anyone and everyone to enforce the Court's decree is far off the mark.

Even as to Intervenors, there is no basis, as a matter of judicial efficiency and economy, for the Court to entertain Defendants' premature and abstract attempt to restrict their enforceability rights at this time. Defendants point to no particular provision of Court Order #1015 that Intervenors seek to enforce – or any example where the Intervenors have acted

7

inappropriately – and, as this Court well knows, not all aspects of the Remedial Order have yet even been finalized.

Moreover, the only circumstance in which Intervenors presumably might seek enforcement would be if a Defendant failed to comply with a court-imposed remedy *and* the Government declined to bring an enforcement action to remedy the violation. Such as situation may, or may not, ever arise – and certainly has not arisen to date – and therefore it makes little sense for the Court to issue what effectively amounts to an advisory opinion on this issue. *See, e.g.*, *Hall v. Beals*, 396 U.S. 45, 47 (1969) (explaining that Article III courts are "to avoid advisory opinions on abstract propositions of law").

Nonetheless, even if the Court were to consider Defendants' requested modification at this time, we urge that it be rejected as nothing more than a thinly veiled attempt to recast issues already squarely decided by *both* this Court and the D.C. Circuit. As noted, *see supra* at 2-3, both Courts found that the Public Health Intervenors easily satisfied all of the requirements to participate in this proceeding as parties *as of right* pursuant to Rule 24(a), including all of the requirements of Article III standing. 449 F. Supp. 2d at 34; 566 F.3d at 1145-47. Thus, contrary to Defendants' assertion that "Intervenors are in no different position and have no greater right to enforce Order #1015 than these or any other private litigants," Def. Enf. Mot. at 7, Intervenors plainly *are* in a different position with respect to enforcing the remedies in this case, because, as the D.C. Circuit has already recognized, "[i]n this Circuit . . . an intervenor *participates on equal footing with the original parties to a suit*." 566 F.3d at 1146 (emphasis added).

Indeed, relitigating an issue they already expressly lost before both this Court and the D.C. Circuit, Defendants claim that "limiting the scope of Intervenors' participation in this case

8

is *necessary* because intervenors lack standing in their own right to obtain and enforce the injunctive remedies imposed by this Court." Def. Enf. Mem. at 9 (emphasis added).  But both this Court and the D.C. Circuit have already rejected that argument.  DN 5565 at 8 (finding that "[I]ntervenors of right need only possess an interest in the litigation – *not a cause of action* or permission to sue") (emphasis added; quotation marks omitted); 566 F.3d at 1145 ("Defendants offer no evidence Congress intended to prevent private organizations from intervening in section 1964(a) actions").  Indeed, Defendants do not even *mention* the controlling case law on which the D.C. Circuit, and this Court, relied in concluding that, contrary to Defendants' claim that Intervenors may not participate in this case, a party with the requisite interests and standing is entitled to intervene to pursue remedies for a legal claim that may only be brought by the government.  *E.g. Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 532 (1972) (permitting intervention in a challenge to a union election even though the statute gave the Secretary of Labor the "exclusive" right to initiate suit); *Jones*, 348 F.3d at 1018.

     Nor is Intervenors' continued participation regarding the implementation – and proper enforcement – of the Court's remedial decree "contrary to the representations they made when seeking to intervene," as Defendants claim.  Def. Enf. Mot. at 8.  The critical limitation inherent in Intervenors' request to become parties to this case was that they did not seek to participate in the determination of whether Defendants were *liable* for violations of RICO, but rather sought only to participate in the remedial phase of the case, "should the Court find defendants liable for the unlawful activities alleged . . . ."  Int. Order (DN 5564) at 1.  Intervenors did not represent – nor did the Court indicate – that intervention would be limited to *requesting* remedies, and that

9

Intervenors would not remain on "equal footing with the original parties" once the remedies were finalized. 566 F.3d at 1146.

To the contrary, because this Court granted intervention as of right, the Public Health Intervenors *are* on "equal footing" with the Government with respect to enforcing the Court's judgment. *Id.* In short, because Intervenors plainly have "legal rights at stake in th[e] litigation," having been "allowed to intervene" the Intervenors have "standing to seek enforcement of the decree against parties clearly bound by it." *Reynolds v. McInnes*, 380 F.3d 1303, 1307 (11th Cir. 2004) (affirming district court ruling allowing intervenor to seek enforcement of a consent decree) (quotation marks omitted).[2]

Moreover, as noted, in granting intervention as of right the Court recognized that the Public Health Intervenors' participation "*will serve the public interest . . .* [because of their] long experience with smoking and health issues, [and by] *contribut[ing] their perspectives on what appropriate and legally permissible remedies may be imposed* should liability be found." DN 5565 at 10-11 (emphases added). These public interest perspectives, which necessarily differ in some respects from the Government's perspectives, will be just as beneficial in the implementation phase of the Court's remedies as they were in crafting those remedies in the first instance.

---

[2] It also bears noting in this regard that courts have *inherent* authority to address violations of their Orders in whatever manner such violations come to their attention. With regard to criminal contempt in particular, the relevant statute provides that in the event the government elects not to pursue the matter, the Court is directed to appoint a non-governmental attorney to pursue it. *See* 42 U.S.C. 42(a)(2) ("The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt").

The cases relied on by Defendants, *see* Def. Enf. Mot. at 5-7, are not to the contrary. Indeed, they are easily distinguishable because, unlike here, they involved enforcement efforts by *non-parties* that lacked standing. *Id*. Thus, for example, the case upon which Defendants most heavily rely, *United States v. ASCAP*, simply rejected a *non-party's* attempt to enforce a Government consent decree on the grounds that the movant "lacks standing to move in this government antitrust action," "is *not a party to the action* and, indeed, *could not have intervened as of right*." 341 F.2d 1003, 1007 (2d Cir. 1965) (emphasis added). None of those conditions are present here. *See also* Def. Enf. Mot. at 5, n.1 (citing additional cases involving non-parties). In short, Defendants point to *no* authority for the Court to unravel either its prior intervention ruling or the D.C. Circuit's ruling affirming Intervenors' "equal footing" with the Government, meaning that the remedial rights conferred by Intervenors' party status include the full suite of enforcement, appeal, and other rights available to the United States.[3]

Accordingly, Defendants' motion to modify the Remedial Order to limit enforcement to the United States should be denied.[4]

---

[3] Indeed, it is well-recognized that even *non-parties* substantially affected by a court decree may seek enforcement. *E.g.*, *Beckett v. Airline Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993) (holding that "'intended third party beneficiaries of a consent decree have standing to enforce the decree.'" (quoting *Hook v. State of Ariz., Dep't of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 1992))); *Berger v. Heckler*, 771 F.2d 1556, 1565 (2d Cir. 1985) (finding that non-parties may intervene "to enforce a consent decree where otherwise authorized by the federal rules of civil procedure"); *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002) (ruling that a non-party may enforce a consent decree); *Floyd v. Ortiz*, 300 F.3d 1223, 1226 (10th Cir. 2002) (holding that "intended third-party beneficiaries of consent decrees have standing to enforce those decrees").

[4] Defendants' effort at drawing a line between seeking remedies, which they do not dispute Intervenors may do, and enforcing them, which they claim Intervenors may *not* do, also makes little practical sense. Among the Court's remedial powers is the power to modify a remedy and improve its effectiveness should an existing remedy prove inadequate. *E.g. Sys. Fed.*

**C.     There Is No Legal Or Practical Basis For The Court To Proclaim Exclusive Enforcement Jurisdiction Over Order #1015.**

Defendants also ask the Court to insert a provision in Order #1015 to "clarify that this Court has 'exclusive jurisdiction' to enforce the injunctions contained" in the Order.  Def. Enf. Mot. at 3.  In particular, Defendants seek a modification to preclude plaintiffs in *other* lawsuits from asking Judges in those cases to issue rulings based on the Court's findings in this case.  *Id.* at 4.

However, while Defendants cite a litany of "retention-of-jurisdiction" cases in support of this argument, *see id.*, they do so in the service of a very different rationale than is embodied in the precedent on which they rely.  Thus, in *all* of the cases cited by Defendants, the critical question was which court had jurisdiction to *modify* the injunctive relief at issue, or, alternatively, to impose sanctions or hold contempt proceedings *directly flowing from noncompliance with the injunction* ordered by a Court.  *See id.* at 3, *citing, e.g.*, *United States v. W. Elec. Co.*, 46 F.3d 1198, 1202 & n.4 (D.C. Cir. 1995).

That is not what is sought in the other lawsuits over which Defendants claim concern here.  Indeed, in Defendants' own proffered exhibit the plaintiffs in the *Engle Progeny* suit specifically state that they "*do not seek to have this Court hold the Defendants in contempt for violating the Injunction,*" but, rather, simply seek to preclude Defendants "from making or causing to be made improper argument or introduced improper testimony or evidence which

---

*No. 91 Ry. Emps. Dep't v. Wright*, 364 U.S. 642, 647 (1961) ("[M]odification of the terms of an injunctive decree [is appropriate] if the circumstances . . . at the time of its issuance have changed, or new ones have since arisen").  Thus, under Defendants' approach, Intervenors could respond to a violation by seeking an *alternative* remedy, but could not seek to enforce the remedy already in place.

12

would be in violation of the Injunction." Def. Enf. Mot., Ex. A at 7. Nothing in the cases cited by Defendants address this kind of issue preclusion.[5]

Thus, there is no authority for Defendants' extraordinary request that this Court somehow foreclose all other federal and state courts from exercising their own independent authority to determine which aspects of this Court's Order can be taken into account in any pending or future lawsuits in other jurisdictions. Moreover, even as to Defendants' central concern with the *Engle* Progeny cases, Defendants fail to mention that many aspects of this Court's ruling have already been independently adjudicated by the Florida Supreme Court, which has not only concurred with this Court's findings in many respects, but has also allowed such findings to be used as affirmative and indisputable evidence in related ongoing litigation. *Engle v. Liggett Group, Inc.*, 945 So.2d 1246, 1276-77 (Fla. 2006) (approving various jury findings against Defendants that can be used as evidence in *Engle Progeny* cases, including that "smoking cigarettes causes" many long-term illnesses, "that nicotine in cigarettes is addictive," "that the defendants placed cigarettes on the market that were defective and unreasonably dangerous," "that the defendants concealed or omitted material information not otherwise known or available knowing that the

---

[5] In the allegedly seminal case cited by Defendants, there was *no* indication that the court intended to proclaim exclusive jurisdiction in order to foreclose *other* courts from relying on its findings; rather, the retention-of-jurisdiction clause merely stated that:

> Jurisdiction is retained by this Court for the purpose of enabling any of the parties to this Modification of Final Judgment, or, after the reorganization specified in section I, a BOC to apply to this Court at any time for such further orders or directions as may be necessary or appropriate for the construction or carrying out of this Modification of Final Judgment, for the modification of any of the provisions hereof, for the enforcement of compliance herewith, and for the punishment of any violation hereof.

*W. Elec. Co.* 552 F. Supp. 131, 231 (D.D.C. 1982).

material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both," "that the defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment," and "that all of the defendants were negligent").

In sum, there are various scenarios in which a court might rely on findings made or issues resolved in another court – including in this case – without *enforcing* or *modifying* the provisions of the other court's ruling. *E.g.*, *Gray ex rel. Rudd v. Beverly Enterprises-Miss., Inc.*, 390 F.3d 400, 408 n.7 (5th Cir. 2004) (explaining that "the fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice" and relying upon the earlier adjudication for that purpose). Therefore, it would be entirely inappropriate for this Court to preemptively rule that no circumstances exist where other courts could, under the rules of their respective jurisdictions, take judicial notice of or otherwise rely upon portions of this Court's ruling in some manner.[6]

### D. There Is No Basis For Imposing A Meet And Confer Requirement Before Seeking Enforcement Of Violations Of Order #1015.

Defendants' request that the Court impose a meet and confer requirement before the United States or the Public Health Intervenors may seek to remedy violations of the Court's Remedial Order should also be rejected. Imposing such a requirement before an enforcement

---

[6] To be sure, a court may determine not to take judicial notice of another courts' findings of facts – a judicial determination that can turn on whether the fact is "subject to reasonable dispute." *See, e.g.*, Fed. R. Evid. 201 (Judicial Notice of Adjudicative Facts). However, the determination of whether and how another court's rulings and underlying findings of fact can be incorporated and utilized in a particular lawsuit must be determined on a case-by-case basis by the presiding judge of *that* court under that jurisdiction's evidentiary rules.

motion to address violations of the Court's Order (absent ill-defined "emergent circumstances," Def. Enf. Mot. at 3), would serve no purpose other than delaying action to halt such violations from continuing.

The prospect of such a delay is of particular concern in this case, where delaying enforcement would only further endanger public health, and especially youth. *E.g.* Sept. 28, 1006 Mem. Op. (DN 5767) (rejecting requested stay on remedies due to the "substantial likelihood that many individuals (particularly impressionable youth, and the vulnerable very young and very old exposed to ETS) will be harmed" if the injunction is delayed). This is especially true given that the Court has also already found that Defendants are likely to continue to violate RICO. 449 F. Supp. 2d at 909; *see also* 566 F.3d at 1137 (affirming that "a proclivity for unlawful conduct has been shown").

In any event, Defendants are plainly wrong in asserting that the Local Rule (LCvR 7(m)), which concerns non-dispositive motions, requires a meet and confer process for such a post-judgment enforcement motion. Defendants cite no case that stands squarely for that proposition. Def. Enf. Mot. at 11. Indeed, a number of courts have concluded the opposite – *i.e.*, that because a post-judgement enforcement motion is "dispositive," a party is *not* required to meet and confer before filing a post-judgment enforcement motion. *E.g.*, *Access for the Disabled, Inc. v. Hialeah Fee Commons, Ltd.*, Civ. 08-21890, _ F. Supp. 2d _, 2011 WL 484307, at *3 (S.D. Fla. Feb. 07, 2011) ("Although it is true plaintiffs did not 'meet and confer' prior to filing its motion [to enforce the injunction], the plaintiffs' motion is a motion for injunctive relief, which is exempted from the conference requirement"); *Engineered Data Prods., Inc. v. Art Style Printing, Inc.*, 71 F. Supp. 2d 1073, 1077-78 (D. Colo. 1999) (finding that "the motion to enforce settlement was of

the nature of a dispositive motion"); *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1084 & n.4 (D. Haw. 2001) (determining that a motion to enforce a settlement agreement was an "exceptional dispositive motion"); *Intersections, Inc. v. Loomis*, Civ. No. 09-957, _ F. Supp. 2d _, 2010 WL 4623877, at *2 (E.D. Va. Nov. 03, 2010) ("A motion to enforce a settlement agreement is a motion that would, if granted, fully resolve the action, and it is thus considered a dispositive motion.").

Defendants' reference to government consent decrees with meet-and-confer requirements is irrelevant. Def. Enf. Mot. at 12. In those cases the government agreed to such a process as part of a *negotiated* resolution of the issues. Here, by contrast, the Court's Remedial Order was issued after many years of contentious litigation in which the Defendants objected to all remedies and insisted that they *never* engaged in the decades-long pattern of unlawful fraud and deception that the Court discerned; indeed Defendants persist in these denials to this day. *E.g.* Def. Corrective Statements Resp. (DN 5881) at 19 (continuing to deny the Court's nicotine manipulation findings, claiming that Defendants' "manufacturing processes reduce the level of nicotine and *only* in that sense is nicotine manipulated")(emphasis added).

Thus, the fact that in other cases the United States agreed to provisions requiring a meet-and-confer process before seeking enforcement – provisions which were part of the *quid pro quo* for mutual benefits conferred on the parties – is no justification for imposing that requirement here. Rather, to insure swift and effective enforcement of this Court's remedies, the Court's and the parties' resources would be much better expended by allowing violations to be brought to the Court's attention promptly – at which time Defendants would of course be free to ameliorate the

situation by either ceasing the illegal conduct or offering to settle the matter in any way they so choose.

## CONCLUSION

For the foregoing reasons, Defendants' motion to "clarify" Order #1015 concerning enforceability should be denied.

Respectfully submitted,

/s/ *Howard M. Crystal*
Howard M. Crystal
(D.C. Bar No. 446189)
Katherine A. Meyer
(D.C. Bar No. 244301)

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Avenue, Suite 700
Washington, DC 20009
202-588-5206
hcrystal@meyerglitz.com

April 25, 2011          Attorneys for the Public Health Intervenors