## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 99-2496 (GK) |
| | ) | |
| v. | ) | |
| | ) | |
| PHILIP MORRIS USA INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CLARIFY ORDER #1015 CONCERNING ENFORCEABILITY

The core issue is whether complete strangers to this long-running litigation can demand that courts other than *this* Court direct Defendants to "comply" with what they wrongly assert has already been "ordered" by this Court's injunctions.  According to the Government and Intervenors, *any* person in the country can seek to enforce Order #1015 in *any* federal or state court in the country, all without providing any notice to this Court or any of the Defendants.  This Court should reject such an unprecedented position.  Otherwise, Order #1015 would be subject to countless different and contrary interpretations by courts across the country, making it all but impossible for Defendants to develop a reliable understanding as to what the Order does require and what it does not.  Contempt proceedings for violating this Court's order would be decided by other federal and state trial and appellate courts, and the result would be a hodgepodge of conflicting interpretations that this Court would lose all ability to reconcile.

Neither the Government nor Intervenors ever come to grips with this core issue.  Instead, they raise a host of minor issues in an attempt to obscure what this motion is really about.  Thus, while a meet-and-confer requirement would facilitate the orderly enforcement of Order #1015

and reduce the burden on this Court, this is a *housekeeping* issue, not, as the Government and Intervenors appear to believe, the essence of what is at issue here.  Likewise, although Defendants believe that Intervenors have no right to enforce the Order, the overarching relief sought by the instant motion is to prevent the chaos, inconsistent interpretations, and conflicting obligations that would inevitably result from allowing *anyone* to enforce Order #1015 in any court.

Other objections to this motion are baseless or can easily be addressed through modest amendments to the clarifying language proposed by Defendants.  These are all addressed below. For example, contrary to the suggestions of the Government and Intervenors, the clarifying language that Defendants propose would have no effect whatsoever on the ability of litigants in other cases to attempt to invoke this Court's findings as collateral estoppel.  The issue here is not collateral estoppel—the weight that other courts may give under federal law to this Court's factual findings in subsequent private litigation—but whether other courts can enforce the *injunctions* of Order #1015.  Defendants agree that collateral estoppel *must* be decided by other courts, and nothing in the instant motion even sought to preclude other parties from asserting collateral estoppel in other courts.  The appropriate preclusive effect to be afforded this Court's findings is completely distinct from the enforceability of this Court's injunctions.

**ARGUMENT**

**I.    DEFENDANTS' MOTION TO CLARIFY IS NOT SUBJECT TO THE REQUIREMENTS OF FED. R. CIV. P. 54(b) OR 60(b)**

Having recently persuaded this Court to "clarify" Defendants' disaggregated marketing data obligations by rewriting the relevant portion of Order #1015, the Government nevertheless argues that Defendants' request for clarification does not seek clarification at all because Defendants have asked the Court to add an additional paragraph to Order #1015 addressing various aspects of the injunctions' enforcement.  According to the Government and Intervenors, Defendants must meet the heightened standards of Fed. R. Civ. P. 54(b) or 60(b) to secure the clarifications they request—even though the Government did not attempt to meet either of those standards in its motion for "clarification" and this Court did not require it to do so when granting the Government its requested relief.  This assertion is, to say the least, ironic, because the Government's motion did in fact seek a modification, as this Court recognized by ordering that the injunction "shall be modified" in the respects requested by the Government.  *See* Order #20–Remand.  Thus, even if Defendants' motion *were* viewed as one for modification, the Government could not credibly maintain that this Court must apply to it a more exacting standard than the Government itself so recently secured from this Court.

In any event, unlike the Government's recent motion, Defendants' motion is in fact a classic motion for clarification—rather than modification—of this Court's injunctions because those injunctions should not be read as providing enforcement power to any person in the country and giving every state and federal court in the country power to enforce the injunctions. Furthermore, as explained below, the additional language requested by Defendants embodies legal requirements that are imposed by binding precedent and procedural rules, and that are therefore implicit in this Court's existing injunctions.  Defendants need not satisfy the

requirements of Fed. R. Civ. P. 54(b) or 60(b) to obtain clarification that, in framing its injunctions, this Court intended to adhere to these controlling legal authorities. *See, e.g.*, *Int'l Rectifier Corp. v. Samsung Electronics Co. Ltd.*, 361 F.3d 1355, 1359-62 (Fed. Cir. 2004) (granting motion to clarify regarding scope and application of injunction without applying Rules 54 or 60); *Pimentel v. Dreyfus*, No. C11–119 MJP, 2011 WL 1085886, at *3-4 (W.D. Wash. Mar. 22, 2011) (same); *Knighten v. Palisades Collections, LLC*, No. 09-CIV-20051, 2011 WL 835783 (S.D. Fla. Mar. 4, 2011) (same); *Potter v. District of Columbia*, 382 F. Supp. 2d 35, 42 (D.D.C. 2005) (same).[1]

## II.   THIS COURT SHOULD CLARIFY THAT IT RETAINS EXCLUSIVE JURISDICTION TO ENFORCE ORDER #1015

Given the Government's opposition papers, which seem to accept the fact that strangers can enforce Order #1015, it is essential that this Court clarify that it retains exclusive jurisdiction to enforce its injunctions.  That clarification is compelled by a long line of authority establishing that only the court that issues an injunction has the authority to enforce it.  *See, e.g.*, *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 236 (1998); Defs.' Br. 3.  If that were not the case, then Defendants would inevitably be subject to divergent and irreconcilable legal obligations imposed by courts that lack a meaningful understanding of this complex litigation.  The unavoidable result would be confusion, inefficiency, and a needless waste of judicial resources.

Neither the Government nor Intervenors directly confronts this issue.  Instead, they seek to obfuscate the real issue before the Court.

For example, Intervenors erroneously argue that Defendants are seeking to "foreclose all other federal and state courts from exercising their own independent authority to determine

---

[1]  Rule 60(b) is inapposite for the additional reason that the D.C. Circuit vacated this Court's final judgment on appeal.  Accordingly, there is currently no judgment in place from which Defendants must seek "relief" under the provisions of Rule 60(b).

which aspects of this Court's Order can be taken into account in any pending or future lawsuits in other jurisdictions."  Intervenors' Br. 13.  This is patently wrong.  Private litigants have filed two types of motions related to Order #1015 in other courts: enforcement motions and collateral estoppel motions.  Defendants' motion for clarification seeks only to make clear that enforcement motions, not collateral estoppel motions, must come before this Court.  ***Defendants agree that plaintiffs are free to, and in fact must, file collateral estoppel motions in other courts.***  Defendants have already addressed such motions in courts across the country on their merits and will continue to do so in the future.

In contrast, the *enforcement* motions filed by various plaintiffs in the so-called *Engle* progeny cases pending in Florida courts are an entirely different matter.  Several plaintiffs have argued that this Court's injunctions limit Defendants' right to mount a defense in those cases because defending themselves on the merits would somehow contravene the requirements imposed by this Court's injunctions.  *See, e.g.*, Plaintiffs' Amended Memorandum and Response in Support of Motion for Request for Judicial Notice and Enforcement of Injunction, *In re Engle Progeny Cases Tobacco Litigation: Claudette Campbell, et al.*, No. 09-CA-000493 (Cir. Ct., 13th Judicial Cir., Hillsborough Co., Fla.) ("This Court should *enforce the Injunction* issued by Judge Kessler . . .") (emphasis added) (attached as Exhibit A to Defs.' Br.).  In connection with these motions, the *Engle* plaintiffs expressly disavow reliance on the doctrine of collateral estoppel.  *See, e.g.*, Sept. 2, 2010 Hr'g Tr., *In Re: Engle Progeny Cases Tobacco Litig.*, No. 09-CA-000493, at 177 (Fla. 13th Cir. Ct.) (attached as Exhibit A) ("MR. ACOSTA: . . . Now, I'm not asking you to use collateral estoppel or issue preclusion or anything like that, because we're not.  The plaintiff still has the burden of proof on all the claims, and they can defend as long as they defend in a non-misleading way."); *id.* at 181 (" MR. ACOSTA: . . .  I do want to speak just

for a second about collateral estoppel, because I don't want this to be misconstrued.  We are not

suggesting that the plaintiff does not have the burden of proving their bad conduct.  If it was

collateral estoppel, then we would not have to prove their bad conduct; we would just use the

findings.  We're not doing that.  I just want to make that clear.  And we are not seeking to

prevent them from defending the case with truthful information.  So I don't want this to be

misconstrued as plaintiffs suggesting that collateral estoppel applies in order for you to invoke

the injunction, because I'm not.  Collateral estoppel really has nothing to do with it.").[2]

Contrary to the Government's flippant suggestion (Gov't Br. 12), the issue here is not

whether Defendants will have to expend the resources necessary to file an opposition brief, but

whether other federal and state courts should have the power and responsibility to interpret what

"would be a violation" of this Court's Order #1015 and then, having done so, to enforce that

interpretation against Defendants.  Such enforcement requests go to the heart of this Court's

inherent authority "to protect its proceedings and vindicate its authority."  *Kokkonen v. Guardian*

*Life*, 511 U.S. 375, 380 (1994).  Indeed, it makes no sense, as the Government argues, for this

Court's inherent power to extend to "modifying" its existing injunctions (Gov't Br. 10-11 n.6),

but not to ensuring that other courts do not co-opt management of this case by entering orders

according to their own idiosyncratic—and potentially misinformed—understandings of what this

litigation was about or what Order #1015 requires.  As the Ninth Circuit has clearly explained,

"it would make no sense for the district court to retain jurisdiction to interpret and apply its own

---

[2]  Intervenors' discussion of the Florida Supreme Court's opinion in *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (2006), is puzzling.  The jury findings at issue there were rendered during the initial phase of a class action trial.  In later decertifying the class and authorizing former class members to bring individual damages claims, the court held that the Phase I findings would be given "res judicata effect" with respect to these individual claims.  *Id*. at 1254.  Even if true, Intervenors' contention that certain of these findings overlap with those of this Court would not legitimize the attempts of various *Engle* plaintiffs to *enforce* Order #1015, instead of attempting to invoke any collateral estoppel effect that those findings might have in *Engle* litigation.

judgment to the future conduct contemplated by the judgment, yet have a state court constructing what the federal court meant in the judgment." *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1013 (9th Cir. 1999).

The Government's brand-new attempt to impose theoretical obstacles to this aspect of Defendants' clarification request is equally unavailing.  Although the Government has consistently opposed a provision clarifying that this Court has exclusive jurisdiction to enforce Order #1015, it has done so, until now, solely on the ground that such a provision was unnecessary.  *See* Joint Status Report 6 ("The United States has stated it saw no need for the Court to make such a statement [of exclusivity]") [D.E. 5853]; *see also* United States Status Report 7-8 [D.E. 5844].  Not once—in its briefing to this Court or in meet and confers with Defendants—has the Government raised the type of concerns that it does now—namely, that the language proposed by Defendants could impair the Government's right under certain statutes to seek the assistance of other courts to collect unpaid costs owed in this matter or to ensure compliance with Paragraph 20 of Order #1015 in connection with any covered transaction.  *See* Gov't's Br. 12-15.

Even though Defendants' proposed language, as previously drafted, does not even arguably implicate this issue, in order to obviate any conceivable uncertainty in this regard, Defendants are willing to amend the relevant portion of their proposed additional language to Order #1015 as follows (*see also* attached Amended Proposed Order):

> This Court retains exclusive jurisdiction over this case for the purpose of issuing such further orders or directions as may be necessary or appropriate . . . for the enforcement of compliance therewith **(provided that nothing herein shall impair any express rights Plaintiff may have under federal or state law in connection with enforcing any orders**

**issued by this Court for the collection of costs or enforcing Paragraph 20 of Order #1015**), and for the punishment of any violation thereof.[3]

## III.   THIS COURT SHOULD CLARIFY THAT THE GOVERNMENT POSSESSES THE EXCLUSIVE AUTHORITY TO OBTAIN THE ENFORCEMENT OF ORDER #1015 AGAINST DEFENDANTS

This Court should also clarify that the Government is the only party that possesses the authority to request enforcement of this Court's injunctions against Defendants. *Cf. Philip Morris USA Inc.*, 449 F. Supp. 2d at 932 (referring to the Government as "the enforcing agent for this decree"). RICO provides that the Government is the only party that has the right to seek injunctive relief under Section 1964, *see* 18 U.S.C. § 1964(b); the Government is therefore the only party that can seek to enforce an injunction issued pursuant to that provision. Certainly, strangers to this litigation should have no enforcement rights with respect to an injunction that federal statute allows only the Government to seek.

Intervenors pretend that the issue here is whether this Court properly allowed them to intervene in this case. But that is not the issue here at all. First and foremost, the motion does not single out Intervenors but seeks clarification that only the Government can seek enforcement of the injunction and that others—most especially complete strangers to the litigation—cannot. Indeed, the Government itself does not defend the proposition that complete strangers to the

---

[3]  The Government's purported concern that Defendants "suggest no mechanism by which the Court would sanction" plaintiffs' lawyers and judges for requesting, or carrying out, the enforcement of this Court's injunctions is nonsensical. Gov't's Br. 12. Such a mechanism is no more necessary in this case than in every other case in which a court retains exclusive jurisdiction to modify or enforce its injunctive relief. The law is clear, moreover, that a federal court may enjoin actions in rival state-court litigation that threaten to interfere with the administration of the court's injunctions. *See, e.g.*, *Syngenta Corp. Protection, Inc. v. Henson*, 537 U.S. 28, 34 n.* (2002) ("One in petitioners' position may apply to the court that approved a settlement for an injunction requiring dismissal of a rival action."); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478 n.3 (1998) ("[U]nder the relitigation exception to the Anti–Injunction Act . . .  a federal court may enjoin state-court proceedings 'where necessary . . . to protect or effectuate its judgments.'") (internal citations omitted); *Thomas v. Powell*, 247 F.3d 260, 261 (D.C. Cir. 2001) (same).

injunction should be permitted to seek to enforce its provisions. *See* Gov't's' Br. 9-10. This is hardly surprising: under such an unrestrained, free-wheeling regime, the Government would need to monitor, and perhaps intervene in, cases throughout the country where nonparties to this litigation are seeking enforcement of this Court's injunctions based on theories with which the Government disagrees. *Cf. United States v. ASCAP*, 341 F.2d 1003, 1008 (2d Cir. 1965) ("The United States . . . requires continuing control over the suit to determine, for instance, when modification of the decree might be a preferable alternative to attempting to enforce it through one or more contempt proceedings."). Clarifying that nonparties cannot obtain enforcement of this Court's injunctions would foreclose this unnecessary and wasteful litigation.

Second, with respect to Intervenors, the mere fact that they were granted the right to intervene does not mean that they assume all the statutory rights of the Government. *See, e.g.*, *United States v. AT&T Co.*, 642 F.2d 1285, 1294 (D.C. Cir. 1980). Because Intervenors could not have obtained the injunctive relief imposed by this Court directly, they have no right to seek to enforce that relief.[4] If there were any doubt on this issue, it would be removed by this Court's repeated statements that Intervenors were permitted to participate in this case "for the very limited purpose" of advocating for additional remedies. *See* Mem. Op. 1 (Intervenors "have moved to intervene under Federal Rule of Civil Procedure 24 'for the very limited purpose of being heard on the issue of the permissible and appropriate remedies in this case, should the Court find the defendants liable for the unlawful activities alleged in the Amended Complaint by

---

[4] Tellingly, the lone case Intervenors cite in which an intervenor was granted the right to enforce an order involved a consent decree—not an injunction obtained pursuant to RICO. *See* Intervenors' Br. 10 (citing *Reynolds v. McInnes*, 380 F.3d 1303, 1307 (11th Cir. 2004)). Furthermore, Intervenors' attempt to distinguish *ASCAP* is unconvincing. The court's decision in that case did not turn on whether the entity seeking to enforce the order had intervened; the relevant point was that, like here, judgment was entered for a single party—the United States. *See United States v. ASCAP*, 341 F.2d 1003, 1008 (2d Cir. 1965); *cf. Philip Morris USA Inc.*, 449 F. Supp. 2d at 937 (entering judgment "for the Plaintiff, the United States of America").

the plaintiff United States.'") [D.E. 5565]; *id.* at 9 ("[T]he only purpose of this intervention is to make additional and different legal arguments to the Court based upon evidence already admitted in a completed record.").  It is with respect to this limited issue *only* that Intervenors are on "equal footing" with the other parties to the litigation.  Moreover, insofar as Intervenors are concerned that there may be situations in which "Defendant[s] failed to comply with a court-imposed remedy *and* the Government declined to bring an enforcement action" (Intervenors' Br. 8) (emphasis in original), that should be a matter within the Government's discretion.  Congress clearly intended that the Government would exercise its discretion with respect to RICO injunctions when it gave the power to seek such injunctions only to the Government.

## IV.   THIS COURT SHOULD CLARIFY THAT THE PARTIES ARE REQUIRED TO MEET AND CONFER BEFORE SEEKING ENFORCEMENT OF THIS COURT'S INJUNCTIONS

A secondary purpose of the instant motion is to seek clarification as to whether the parties should be required to meet and confer before seeking intervention by this Court to enforce Order #1015.  Because Order #1015 contains a series of open-ended injunctions on a range of topics, it is inevitable that confusion will arise among the parties regarding the precise requirements imposed by this Court.  Rather than cause "delay" (Intervenors' Br. 9), requiring that the parties meet and confer in advance of seeking this Court's involvement will reduce the number of disputes that this Court will need to resolve and help to define and clarify those disputes that this Court is called upon to settle.  *See Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999).

Although this meet-and-confer requirement is mandated by the Court's Local Rules, *see* LCvR 7(m), the Government and Intervenors strenuously resist Defendants' clarification request. *See* Gov't's Br. 4-9; Intervenors' Br. 14-17.  And the Government does so even though the language proposed by Defendants includes an express exception, *exercisable at the*

*Government's discretion*, for exigent circumstances.  Although the Government and Intervenors go to great lengths to distinguish the cases cited by Defendants concerning LCvR7(m)'s applicability, they acknowledge—as they must—that there is no case law directly on point, which only underscores the need for clarification from the Court.

The Government also objects on the ground that a meet-and-confer requirement could interfere with its hypothetical need to initiate criminal contempt proceedings under 42 U.S.C. § 42(a).  *See* Gov't's Br. 4-5.  Although such a situation would seem clearly to be captured by Defendants' proposed exigency exception, Defendants are willing to suggest additional language to make explicit that the exigent circumstances under which the Government has no obligation to meet and confer shall "include any criminal contempt proceedings."[5]

---

[5]  The Government also cites this Court's findings about enforcement delays caused by the consultation requirements contained in the MSA.  *See* Gov't's Br. 8.  But any such delays are more fairly explained by the differing paces under which various state attorneys general pursued their investigations, not foot-dragging on the part of Defendants.  Indeed, States that have sought to enforce the MSA more quickly have had no trouble doing so.  *See, e.g.*, *Com. ex rel. Fisher v. Philip Morris, Inc., et al.*, 4 A.3d 749, 574 & n.3 (Pa. Cmwlth. 2010) (describing lawsuits initiated shortly after allegedly prohibited advertisement appeared in magazine).

## CONCLUSION

For these reasons, and for the reasons set forth in Defendants' opening brief, Defendants respectfully request that this Court clarify Order #1015 as set forth in Defendants' amended proposed order.

Dated:  May 5, 2011                    Respectfully submitted,


/s/ Beth A. Wilkinson
Beth A. Wilkinson (D.C. Bar No. 462561)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006-1047
Telephone:  (202) 223-7300
Fax:  (202) 223-7420

Miguel A. Estrada (D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  (202) 955-8257
Fax:  (202) 530-9016

Thomas J. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-6700
Fax:  (202) 558-5700

*Attorneys for Defendants*
*Altria Group Inc. and Philip Morris USA Inc.*

/s/ Beth A. Wilkinson *for*
Robert F. McDermott (D.C. Bar No. 261164)
Peter J. Biersteker (D.C. Bar No. 358108)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700

*Attorneys for Defendant*
*R.J. Reynolds Tobacco Company,*
*individually and as successor to*
*Brown & Williamson  Tobacco Corporation*

/s/ Beth A. Wilkinson *for*
Michael B. Minton
THOMPSON COBURN LLP
One US Bank Plaza, Suite 3500
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6000
Fax: (314) 552-7597

*Attorneys for Defendant*
*Lorillard Tobacco Company*