UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 99-2496 (GK) |
| | ) |
| v. | ) |
| | ) |
| PHILIP MORRIS USA, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**Brief of the National Association of Tobacco Outlets, Inc. Regarding Retailers
Affected by the Retail Display Component of the Court's Corrective Statement Remedy**

The National Association of Tobacco Outlets, Inc. (NATO) is a nationwide retail trade association that represents approximately 20,000 tobacco stores, convenience stores, grocery stores and liquor stores that sell cigarettes and other tobacco products. In response to this Court's Order #19-Remand filed on April 11, 2011, NATO submits this brief on behalf of the association's retail members regarding their protectable First Amendment rights and significant property rights as well as the practical impact of requiring point-of-sale displays containing manufacturer corrective statements to be placed on store counters and on or near cigarette display headers.

### 1. First Amendment Rights

The First Amendment to the U.S. Constitution guarantees "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). However, the Court's original remedial order requiring retailers that have merchandising program contracts with cigarette manufacturers to place one or more freestanding signs and display headers with corrective statements on their store counters and on or near cigarette

displays violates a retailer's right not to speak. With the broad legal protections afforded free speech, similar protections must be provided to an individual who desires to exercise their right to refrain from speaking. However, by forcing retailers to place these corrective statement signs on their store counters and on or near cigarette displays for a two year time period, this Court is requiring every retailer that sells cigarettes to "speak" to all of their customers whether or not they buy cigarettes when these retailers would otherwise choose not to do so in the absence of such a court order. This, in turn, may cause customers to infer that the retailer has engaged in some wrongdoing when, in fact, the retailer was not involved in any manner.

Furthermore, this Court issued the remedial order even though not a single retailer was a party nor joined as a party to the litigation. By not being initial parties to this litigation or joined as parties after commencement of the lawsuit, retailers are innocent third parties that have not been given an opportunity to be heard in court, to present evidence, or to have their rights considered and protected. To the contrary, the Court order invades each of these rights and raises substantial doubt about whether this Court can legally compel innocent retailers to place these corrective statement signs on their store counters and on or near cigarette displays.

## 2. Property Rights

Besides infringing on the First Amendment rights of retailers, the Court order also negatively impacts the contract rights that retailers have pursuant to their retail merchandising program agreements with cigarette manufacturers. These retail merchandising program contracts provide retailers with revenue in exchange for carrying, merchandising and selling manufacturer cigarette brands. The Court order would require that the retail merchandising program contracts be suspended for one year for any retailer that fails to display the corrective statement countertop signs and header display signs. That is, even though retailers are not parties to the litigation, they

stand to lose their contract rights and the payments provided for in the retail merchandising program contracts if they desire to exercise their rights and not comply with the Court order.

### 3. Practical Impact

From a retailer's point of view, the requirement to place countertop display signs and cigarette header display signs will have significant unintended consequences. One of the most serious consequences will be compromising the security of store employees. The average length of a retail store checkout counter is five feet. Since the Court's order can be interpreted to require a retailer to have an 18" wide by 30" high countertop corrective statement sign for each manufacturer with which the retailer has a retail merchandising program contract, the retailer may need to display as many as three corrective statement signs since contracts may have been entered into with Altria Sales and Distribution, R.J. Reynolds Tobacco Company and Lorillard Tobacco Company.

By placing one, two or up to three signs on the store counter, a large portion if not all of the counter space would be taken up by the corrective statement signs. This would block the view that store employees working behind the counter have of the store and the customers inside the store. Maintaining a clear line of sight of customers in a retail store is vital so that employees can prevent shoplifting or react quickly in the event of imminent criminal activity. The placement of corrective statement signs that are one and a half feet wide and two and a half feet high on store counters effectively blocks the view that store employees have of the store and of customers increasing the security risk to an unacceptable level.

Another unintended consequence of the countertop corrective statement signs is the elimination of valuable selling space. A store countertop near the cash register is considered as one of the most valuable spaces within a retail store to display products for sale. The countertop

signs would displace existing sales displays resulting in retailers losing sales without being compensated for the loss of valuable selling space.

## Conclusion

The Court's order to require the placement of corrective statement signs on retail store counters and on or near cigarette display cases violates the First Amendment rights of retailers. In addition, the fact that retailers were not parties to the litigation nor joined at a later date prevented retailers from the opportunity to come before the Court and present arguments and evidence. This violation of retailers' rights is exacerbated by the Court's requirement that retail merchandising contracts be suspended if a retailer does not comply by displaying the corrective statement signs. Finally, the Court's order creates a security risk for retail store employees while also confiscating valuable store counter space that would otherwise be utilized for displaying products for sale. For all of these reasons, the National Association of Tobacco Outlets respectfully submits that the Court remove the retail corrective statement display requirement from the original remedial order.

Dated: May 12, 2011                                   Respectfully submitted,

/s/_____
Thomas A. Briant
(Minnesota Attorney License Number 157764)
Thomas A. Briant, P.A.
15560 Boulder Pointe Road
Eden Prairie, MN  55347
Telephone:  952-974-0075
Fax:  952-934-7442

Attorney for the National Association of Tobacco Outlets, Inc.