# APPENDIX 1
# THE PAST JURY VERDICTS CITED BY DEFENDANTS FAIL TO SHOW THAT ANY OF THE RECOMMENDED STATEMENTS ARE CONTROVERSIAL
# (Revised as of May 27, 2011, to reflect jury instructions in *Welch v. Brown & Williamson*)

Defendants cite *In re Tobacco Litig. (Med. Monitoring Cases)*, No. 00-C-600 (W. Va. Cir. Ct. (Ohio County), for the proposition that they "prevailed in a number of trials involving allegations that they concealed the health risks of smoking," Defs.' Resp. at 10.

- This was not a fraud case, but a product-liability case. During closing arguments, Defendants' lawyer told the jury that the case had nothing to do with addiction, misrepresentation, or fraud:

    > [I]n this case, ladies and gentlemen, there is no claim that any class member is addicted. There is no claim that class members cannot quit. There is no claim that class members were misled by anything these companies did or said in 1954, 1964, 1974, 1984, 1994, 2000. There is no claim that class members underappreciated the risks of smoking.

    Ex. 9, Tr. 11/12/2001 at 6422:19-6423:2, *In re Tobacco Litig. (Med. Monitoring Cases)*, No. 00-C-600 (W. Va. Cir. Ct. (Ohio County)).[1]

---

[1] Defendants cited this case as "*In re Tobacco Litig.: C. Blankenship/J. McCune*, No. 2:97-0204 (W. Va. Cir. Ct.)." Defs.' Resp. at 10. Mr. Blankenship turns out to have filed an individual case for medical monitoring under the case number that Defendants cited, 2:97-0204, in Kanawha County, West Virginia, in 1997. But his case, and hundreds of other medical-monitoring cases, were transferred to Ohio County, West Virginia, in 2000, and consolidated under No. 00-C-600. That is the case number on the "Jury Interrogatories and Verdict Form" from the case, attached as Ex. 10.
   Note that while the United States was able to track down pages 1 and 3-5 of this verdict form (as an exhibit to a 2009 court filing in *Grisham*), page 2 of the verdict form was not filed in the *Grisham* case, and Ex. 10 lacks page 2.
   Based on the transcript of the court's jury instructions, it appears that the jury considered strict liability defective design, negligent defective design, and breach of promise (referring to the 1954 Frank Statement) such that Defendants "could have made their cigarettes less hazardous had they lived up to their duty" under the Frank Statement. Ex. 9, Tr. 11/12/2001 at 6326:12-6327:22, 6329:13- 6330:13, 6331:11-12, *In re Tobacco Litig. (Med. Monitoring Cases)*, No. 00-C-600 (W. Va. Cir. Ct. (Ohio County)) (jury instructions).

Defendants also cite *Hall v. R.J. Reynolds Tobacco Co.*, No. 00-1061 (Fla. Cir. Ct. (Hillsborough County), Dec. 10, 2003), for the proposition that they "prevailed in a number of trials involving allegations that they concealed the health risks of smoking," Defs.' Resp. at 10.

- This was not a fraud case, but a failure-to-warn and defective product-design case. Ex. 11, *Hall* Verdict at 1-3.

- The failure-to-warn count in *Hall* was restricted to the time before July 1, 1969; the verdict reads, "Was there negligence on the part of the defendants for not providing adequate health warnings to Plaintiff Emmett Hall, prior to July 1, 1969, and if so, was such negligence a legal cause of damage to Plaintiff Emmett Hall?" *Id.* at 2.

To support their claim that "juries have refused to impose any liability against Defendants in at least eight cases involving alleged fraud relating to low tar cigarettes," Defs.' Resp. at 10, Defendants cite five cases (not eight). The only jury that reached a defense verdict on a special verdict form that asked in essence whether a particular Defendant engage in fraud, Ex. 12, Verdict Sheet at 5, was *Inzerilla v. Am. Tobacco Co.*, No. 011754/96 (N.Y. Sup. Ct. (Queens County), Feb. 20, 2003). Defendants' suggest that contrary jury verdicts render "controversial" the recommended corrective statement in the instant case for light and low-tar cigarettes (Topic C). Defs.' Resp. at 10.

- The fraud verdict in *Inzerilla* said nothing about "alleged fraud relating to low tar cigarettes."

- The fraud counts in *Inzerilla* were limited to the time before July 1, 1969.[2]

---

[2] "Did the plaintiff establish that before July 1, 1969, Philip Morris fraudulently concealed from Mrs. Inzerilla that smoking could cause her injuries or death?" Ex. 12, Verdict Sheet at 5, *Inzerilla*. "Did the plaintiff establish that before July 1, 1969, Philip Morris conspired with others to fraudulently conceal from Mrs. Inzerilla that smoking could cause her injuries or death?" *Id.* at 6.

Defendants discuss the jury's returning a defense verdict on a RICO count in the *Blue Cross/Blue Shield* case. Ex. 13, Verdict Form at 5, *Blue Cross and Blue Shield of N.J. v. Philip Morris*, No. 98-CV-3287 (E.D.N.Y. June 4, 2001). Defendants state that the *Blue Cross/Blue Shield* jury verdict absolved Defendants of "alleged fraud relating to low tar cigarettes," Defs.' Resp. at 10, and that it "rejected fraud allegations against Defendants," Defs.' Reply at 9.

- The same jury simultaneously found defendants liable for $17 million in damages on two counts of deceptive business practices. *Id.* at 3-4. (The verdicts on those two counts were eventually overturned on appeal, but for reasons other than lack of evidence.)

- The trial court rejected Defendants' post-trial motion for judgment notwithstanding the verdict on the deception counts: "The evidence demonstrated that defendants misrepresented material facts regarding a variety of subjects relating to the safety of their products—causation, addiction, the full scope of the risk, the nature of the constituents of tobacco, the quality of their own knowledge of tobacco products, and efforts to eliminate hazards." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 178 F. Supp. 2d 198, 267 (E.D.N.Y. 2001), *rev'd on other grounds*, 344 F.3d 211 (2d Cir. 2003), *and sub nom. Empire Healthchoice, Inc. v. Philip Morris USA Inc.*, 393 F.3d 312 (2d Cir. 2004) (*per curiam*).[3] "The trial record showed that defendants knew that low tar cigarettes did not deliver any significant health benefits. Evidence also supported the conclusion that defendants were highly informed and deliberately exploited this deceptive phenomenon." *Id.* at 267.

- The Second Circuit held that a health insurer whose costs were increased by fraud on its insureds could not recover under the state deceptive-business practices law. The Second

---

[3] The trial ran for 44 days, not the 75 days Defendants claim. *Id.* at 208.

Circuit stated that "Appellants' deceptive practices involved serious harm to the public. [Plaintiff] Empire presented evidence that by using deceptive practices, Appellants induced consumers to smoke and discouraged them from quitting smoking, thus significantly increasing their risk of illness and even death." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA, Inc.*, 344 F.3d 211, 218 (2d Cir. 2003).[4]

Other jury verdicts Defendants cite were all general verdicts.

- Determining that a jury found for a defendant on a specific issue—such as Defendants' claim that past juries have found that they did not engage in concealment or fraud—is permitted from a general verdict only if careful examination of the record of the prior proceedings excludes the possibility that the jury could rationally have grounded its verdict on some other issue instead. *Dowling v. United States*, 493 U.S. 342, 350 (1990); *Ashe v. Swenson*, 397 U.S. 436, 444 (1970). As discussed in the body of the United States' memorandum, Defendants did not submit records from the prior proceedings that they ask this Court to rely upon. These cases' general verdict forms (and such other materials that the United States has been able to find) show that the verdicts were as likely to have been based on juries' not finding reliance or causation proven as to the specific named plaintiff, as on any finding that Defendants had not engaged in fraud.

---

[4] The Second Circuit observed that Defendants made no claim that they had not made misrepresentations after 1980, and noted that:
> The district court found that there were "more than sufficient examples of post-1980 misconduct to support [the] verdict." . . . [E]ven after 1980, Appellants represented to the public that it had not been established that smoking causes disease, that smoking was not addictive, and that they did not have internal research suggesting otherwise. The district court found that "these communications were part of a general policy for the 1980s and beyond."

344 F.3d at 222 n.7 (citations omitted). None of the factual findings cited here were disturbed on appeal.

- An example is the March 1999 general verdict in the *Iron Workers* case. Ex. 14, Jury Interrogatories, *Iron Workers Local v. Philip Morris*, No. 97-CV-1422 (N.D. Ohio Mar. 18, 1999); Ex. 15, Jury Verdict as to Iron Workers Local No. 17, *Iron Workers Local v. Philip Morris*, No. 97-CV-1422 (N.D. Ohio Mar. 18, 1999). The verdict form combined multiple issues, requiring the jury to find reasonable and detrimental reliance on the part of the specific plaintiff insurance funds or their beneficiaries in order to find mail or wire fraud. Ex. 14 at 1, 4 (jury interrogatories); Ex. 16, Tr. 3/16/1999, at 4509:12-17 (jury instructions, requiring finding of detrimental reliance to find mail fraud or wire fraud).

- In closing arguments in *Iron Workers*, Defendants told the jury that reliance was "fundamental," and spent much of their closing arguing that reliance was not present.[5]

- The Court in the instant case did not need to find reliance in order to find Defendants liable for fraud. 449 F. Supp. 2d at 900 n.72.

- The Supreme Court has abrogated the former Sixth Circuit precedents on which the *Iron Workers* court based its jury instructions, *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 186 F.R.D. 453, 455-56 (N.D. Ohio 1999); those now-abrogated precedents required reliance to be pleaded and proven for RICO predicate acts of mail and wire-fraud. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). As a result, the "fundamental" issue of reliance before the jury in *Iron Workers* was neither part of this

---

[5] Ex. 17, Tr. 3/16/1999, at 4734:8-9 (reliance "a fundamental question"); 4735:5-4736:21 (criticizing plaintiffs for failing to present testimony from "real Ohio working men and women" that they relied on Defendants' statements in making decisions); 4736:22-4737:15 (criticizing plaintiffs' expert Dr. Jeffrey Harris for failing to "show a respect for [real people's] individual autonomy and the decisions they make"); 4744:1-4748:22 (summarizing historic and public-opinion research about public awareness of health risks of smoking; concluding, "they can't prove reliance").

Court's decision, nor would it properly be put before a jury if *Iron Workers* were re-tried now.[6]

- As the *Grisham* court noted, in rejecting Defendants' claims that the jury verdicts in *Iron Workers* and *Blue Cross/Blue Shield* "resulted in opposite outcomes from the DOJ case," "based on the nature of the jury instructions [in *Iron Workers*], it is unclear whether the jury decided that the defendants did or did not engage in fraudulent activities." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1034-35 (C.D. Cal. 2009).

- Other general verdicts Defendants ask the Court to rely upon are similar. In *Tune*, the jury issued a general verdict that combined questions about fraudulent conspiracy with questions about legal causation of injury to the specific plaintiff in that case: "Did Philip Morris Incorporated with other cigarette companies participate in a conspiracy and based upon the conspiracy fraudulently misrepresent material facts regarding the effect of cigarettes upon health, which was a legal cause of loss, injury or damage to Plaintiff Robert Tune?" Ex. 18, Q. 3(a), Verdict, *Tune v. Philip Morris Inc.*, No. 97-4678CI (Fla. Cir. Ct. (Pinellas County) May 24, 2002); *see also id.* Q 3(b) (same, with "fraudulently conceal" in place of "fraudulently misrepresent"). The United States' recommended corrective statements in this case make no mention of the Defendants' racketeering conspiracy; and even if they did, the *Tune* verdict merely found that Philip Morris did not conspire to defraud in a way that caused legal harm to the specific plaintiff in *Tune*.

---

[6] The March 1999 *Iron Workers* verdict shows no indication that the jury rejected "alleged fraud relating to low tar cigarettes," Defs.' Resp. at 10. Moreover, it came years before NCI Monograph 13 and (as this Court found) Defendants' subsequent fraudulent conduct concerning it. *See* page 6 of U.S. Sur-Reply Br.

- In *Welch v. Brown & Williamson Tobacco Corp.*, the jury issued nearly identical general verdicts, one for each defendant. The verdict for Philip Morris, for example, decided: "On the claim of Plaintiff Linda Welch for compensatory damages against defendant Philip Morris USA Inc., as submitted in Instruction Numbers 6, 9, 12, 15 or 18 we, the undersigned jurors, find in favor of: Phillip *[sic]* Morris USA Inc." Ex. 19, ¶ 1, Verdict A, *Welch v. Brown & Williamson Tobacco Corp.*, No. 00-CV-209292 (Mo. Cir. Ct. (16th Cir.–Jackson County) June 17, 2003). The jury instructions allowed the jury to return a verdict for the plaintiff on the fraud counts only if it found five elements: (1) the defendant intentionally failed to disclose that cigarette smoking causes lung cancer or is addictive; (2) the defendant knew that cigarette smoking causes lung cancer or is addictive; (3) the defendant was in a superior position to plaintiff regarding the information that cigarette smoking causes lung cancer or is addictive and that information was not reasonably available to the plaintiff; (4) the defendant's failure to disclose that cigarette smoking causes lung cancer or is addictive was material to the use by plaintiff of cigarettes; and (5) as a direct result of defendant's non-disclosure plaintiff developed lung cancer. Ex. 3 to U.S. Notice of Suppl. Filings re Surreply (R. 5935; filed 5/27/2011), Instruction Nos. 12, 13, 14, *Welch v. Brown & Williamson Tobacco Corp.*, No. 00-CV-209292 (Mo. Cir. Ct. (16th Cir.–Jackson County) June 16, 2003). Therefore, the *Welch* jury could have found Defendants liable for fraud only if it found that the third, fourth, and fifth elements, each specific to the particular plaintiff in *Welch*, were satisfied—that information about causation and addiction was not reasonably available to Linda Welch; that Defendants' fraud was material to Linda Welch's using cigarettes; and that Linda Welch's lung cancer was "a direct result" of Defendants' fraud.

7

Accordingly, the general defense verdicts in *Welch* neither absolve Defendants of "alleged fraud relating to low tar cigarettes," Defs.' Resp. at 10, nor show that the jury "rejected fraud allegations against Defendants," Defs.' Reply at 9.

- The same kind of general verdict was used in *Lucier v. Philip Morris Inc.* On each fraud count, the verdict form read, for example, "As to the Claim of Fraud by Intentional Misrepresentation, we find for the Plaintiffs LAURENCE LUCIER and LAURIE LUCIER and against the following Defendants: Answer: Defendant R. J. Reynolds: No." Ex. 20, Special Verdict at 2, *Lucier v. Philip Morris Inc.*, No. 02AS01909 (Cal. Super. Ct. (Sacramento County), Feb. 7, 2003).