UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | 99-2496 (GK) |
| | : | |
| PHILIP MORRIS USA, Inc., | : | |
| et al. | : | |
| | : | |
| Defendants. | : | |

<u>MEMORANDUM OPINION</u>

This civil action brought by the United States under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, is now before the Court on Defendant's Motion for Vacatur [Dkt. No. 5880]. Upon consideration of the Motion, Oppositions, Reply, and the entire record herein, and for the reasons stated below, Defendants' Motion for Vacatur is **denied**.

I.   BACKGROUND

On August 17, 2006, this Court issued a lengthy opinion finding that all Defendants "(1) have conspired together to violate the substantive provisions of RICO, pursuant to 18 U.S.C. § 1962(d), and (2) have in fact violated those provisions of the statute, pursuant to 18 U.S.C. § 1962(c)." <u>U.S. v. Philip Morris USA, Inc., et al.</u>, 449 F. Supp. 2d 1, 26 (D.D.C. 2006). In particular, the Court held that Defendants "knowingly and intentionally engaged in a scheme to defraud smokers and potential

smokers, for purposes of financial gain, by making false and fraudulent statements, representations, and promises." Id. at 852.[1]

The resulting injunctive relief rested on a finding that there was a reasonable likelihood that Defendants would continue to violate RICO in the future. Philip Morris, 449 F. Supp. 2d at 908-919. After a nine-month bench trial, and based on a considerable factual record, this Court found that the "evidence in this case clearly establishes that Defendants," with the exception of several parties who have since been dismissed, "have not ceased engaging in unlawful activity." Id. at 910. Further, "[e]ven after the Complaint in this action was filed in September 1999, Defendants continued to engage in conduct that is materially indistinguishable from their previous actions, activity that continues to this day." Id.

Accordingly, the Court imposed an array of injunctive measures in order to prevent future violations of RICO. Id. at 937-945. On May 22, 2009, the Court of Appeals for the District of Columbia Circuit affirmed this Court's judgment of liability and affirmed major provisions in its remedial order. U.S. v. Philip Morris USA, Inc., et al., 566 F.3d 1095, 1150 (D.C. Cir. 2009), cert. denied, 130 S. Ct. 3501 (2010). The specifics of the remanded portions of injunctive relief continue to be litigated in this Court.

---

[1] The extensive factual findings of the Court may be found at Philip Morris, 449 F. Supp. 2d at 34-851.

On June 22, 2009, President Barack Obama signed the Family Smoking Prevention and Tobacco Control Act (the "Tobacco Control Act" or the "Act") into law. Pub. L. No. 111-31, 123 Stat. 1776 (2009). Congress found that "[t]he use of tobacco products by the Nation's children is a pediatric disease of considerable proportions that results in new generations of tobacco-dependent children and adults" and that "Federal and State public health officials, the public health community, and the public at large recognize that the tobacco industry should be subject to ongoing oversight." Pub. L. No. 111-31, §§ 2(1), (8), 123 Stat. at 1777, codified at 21 U.S.C. § 387 note. Accordingly, Congress amended the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., in order "to provide the authority to the Food and Drug Administration to regulate tobacco products." Pub. L. No. 111-31, § 3(1), 123 Stat. at 1781, codified at 21 U.S.C. § 387 note. Notably, Congress expressly provided that "[n]othing" in the Tobacco Control Act "shall be construed to . . . affect any action pending in Federal, State, or tribal court." Pub. L. No. 111-31, § 4(a), 123 Stat. at 1782, codified at 21 U.S.C. § 387 note.

After the Tobacco Control Act was passed into law, Defendants petitioned for rehearing en banc by the Court of Appeals on the ground that the Act extinguished jurisdiction for prospective relief. Defendants filed a separate "Suggestion of Mootness and Motion for Partial Vacatur" before that court, contending that the

Act rendered the case moot. In opposing those motions, the Government argued, in part, that Defendants should properly bring their arguments before this Court first. The Court of Appeals denied the motions, and the Supreme Court denied Defendants' subsequent petition for writ of certiorari. United States v. Philip Morris USA, Inc., No. 06-5267 (D.C. Cir. Sept. 22, 2009); Philip Morris USA, Inc. v. United States, 130 S.Ct. 3501 (2010).

On September 15, 2010, this Court held the first of several scheduling conferences intended to establish a briefing schedule for resolving the four discrete remedial issues remanded by the Court of Appeals.[2] On March 3, 2011, Defendants filed a Motion for Vacatur, contending that the Tobacco Control Act in whole or in significant part extinguished this Court's jurisdiction or, in the alternative, that this Court should decline to move forward with any injunctive remedy in deference to the FDA's new regulatory authority. On April 4, 2011, the Government ("Gov.'s Opp'n") [Dkt.

---

[2] The Court of Appeals remanded the case with directions to (1) evaluate the extent to which Brown & Williams Holdings is reasonably likely to commit future violations; (2) determine which subsidiaries of the Defendants should be included in the remedial order; (3) reformulate the prohibition on the use of health messages or descriptors to exempt foreign activities that have no substantial, direct, and foreseeable domestic effects; and (4) consider the rights of innocent third parties and clarify accordingly the remedial order's provisions regarding point-of-sale displays. Philip Morris, 566 F.3d at 1150. The Court of Appeals also ordered this Court to dismiss CTR and TI from the suit, as those organizations had dissolved, id., and that was done in Order #7-Remand [Dkt. No. 5846]. The Court has already addressed the first two issues, in Orders #7-Remand and #13-Remand [Dkt. No. 5877].

No. 5907] and the Public Health Intervenors ("PHI's Opp'n") [Dkt. No. 5908] filed separate Oppositions. On April 15, 2011, Defendants filed their Reply [Dkt. No. 5920].

## II. STANDARD OF REVIEW

Defendants contest this Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3), which instructs that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Although Defendants do not cite Rule 12(b)(1), Defendants' Rule 12(h)(3) motion must be treated as a challenge to subject matter jurisdiction under Rule 12(b)(1), which "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 1240, 163 L.Ed.2d 1097 (2006); Harbury v. Hayden, 444 F. Supp. 2d 19, 26 (D.D.C. 2006) ("When faced with what a party characterizes as a Rule 12(h)(3) motion, a court should treat the motion as a traditional Rule 12(b)(1) motion for lack of subject matter jurisdiction.") (citing Haase v. Sessions, 835 F.2d 902, 905-06 (D.C. Cir. 1987)).

In general, under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. See Shuler v. U.S., 531 F.3d 930, 932 (D.C. Cir. 2008). In reviewing a motion to dismiss for lack of

subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur v. CIA, 273 F. Supp. 2d 119, 122 (D.D.C. 2003)(citations and quotations omitted). The Court may rest its decision on its own resolution of disputed facts. Id.

## III. ANALYSIS

Defendants argue that the Tobacco Control Act provides two separate grounds for vacating some or all of the Court's factual findings and remedial order. First, Defendants contend that the Act removes this Court's jurisdiction because it renders the Defendants unlikely to commit further RICO violations. Defs.' Mot. 14-18. Second, Defendants argue that, even if this Court does continue to have jurisdiction over the Government's claims, it should decline to order injunctive relief pursuant to the doctrine of primary jurisdiction. Id. at 19-22.

### A. Jurisdiction Under RICO

Defendants argue that, "[i]n light of the extensive federal regulatory requirements imposed by the Act, there is no 'realistic threat' or reasonable likelihood that the RICO violations on which this Court premised its forward-looking injunctive relief will reoccur in the future." Id. at 18. The Government responds that the Defendants' "request for vacatur turns entirely on the

6

unsubstantiated factual assertion" that the Act renders Defendants unlikely to engage in further joint racketeering activity. Gov.'s Opp'n 10.

As the D.C. Circuit explained in a prior phase of this litigation, this Court's "jurisdiction is limited to forward-looking remedies that are aimed at future violations." United States v. Philip Morris USA Inc., 396 F.3d 1190, 1198 (D.C. Cir. 2005). This Court has already held that:

> To obtain injunctive relief in this Circuit, a plaintiff must show that the defendant's past unlawful conduct indicates a "'reasonable likelihood of further violation(s) in the future.'" SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1, 15 (D.D.C. 1998) (Kollar-Kotelly, J.) (quoting SEC v. Savoy Ind., Inc., 587 F.2d 1149, 1168 (D.C. Cir. 1978)); SEC v. Bilzerian, 29 F.3d 689, 695 (D.C. Cir. 1994).
>
> To determine whether there is a "reasonable likelihood" of future violations, the following factors must be considered: "(1) whether a defendant's violation was isolated or part of a pattern, (2) whether the violation was flagrant and deliberate or merely technical in nature, and (3) whether the defendant's business will present opportunities to violate the law in the future." [SEC v. First City Fin. Corp., 890 F.2d 1215, 1228 (D.C. Cir. 1989)] (citing Savoy Indus., 587 F.2d at 1168); Bilzerian, 29 F.3d at 695. None of these three factors is determinative; rather, "the district court should determine the propensity for future violations based on the totality of circumstances." First City, 890 F.2d at 1228 (citing SEC v. Youmans, 729 F.2d 413, 415 (6th Cir. 1984)).

<u>United States v. Philip Morris, Inc.</u>, 116 F. Supp. 2d 131, 148 (D.D.C. 2000). "In addition, the requisite 'reasonable likelihood' of future violations may be established by inferences drawn from past conduct alone." <u>Philip Morris</u>, 449 F. Supp. 2d at 908.

After a nine-month bench trial, this Court made extensive factual findings, which provided a firm basis for exercising its authority under RICO. Most notably, the Court found:

> Defendants' RICO violations were not "isolated." On the contrary, the Findings of Fact describes more than 100 predicate acts spanning more than a half-century. Second, Defendants' RICO violations were not "technical in nature." As discussed above, Defendants' numerous misstatements and acts of concealment and deception were made intentionally and deliberately, rather than accidentally or negligently, as part of a multi-faceted, sophisticated scheme to defraud. Third, as this Court has already found, Defendants' business of manufacturing, selling and marketing tobacco products "present[s] opportunities to violate the law in the future." <u>Philip Morris</u>, 116 F. Supp. 2d at 149 (alteration in original). As the Government points out, as long as Defendants are in the business of selling and marketing tobacco products, they will have countless "opportunities" and temptations to take similar unlawful actions in order to maximize their revenues, just as they have done for the past five decades.
> ....
> The evidence in this case clearly establishes that Defendants have not ceased engaging in unlawful activity. Even after the Complaint in this action was filed in September 1999, Defendants continued to engage in conduct that is materially indistinguishable from their previous actions, activity that continues to this day. For example, most Defendants continue to fraudulently deny the adverse

8

health effects of secondhand smoke which they recognize internally; all Defendants continue to market "low tar" cigarettes to consumers seeking to reduce their health risks or quit; all Defendants continue to fraudulently deny that they manipulate the nicotine delivery of their cigarettes in order to create and sustain addiction; some Defendants continue to deny that they market to youth in publications with significant youth readership and with imagery that targets youth; and some Defendants continue to suppress and conceal information which might undermine their public or litigation positions. <u>See generally</u> Findings of Fact Section V. Significantly, their conduct continues to further the objectives of the overarching scheme to defraud, which began by at least 1953. Their continuing conduct misleads consumers in order to maximize Defendants' revenues by recruiting new smokers (the majority of whom are under the age of 18), preventing current smokers from quitting, and thereby sustaining the industry.

....

There is a reasonable likelihood that Defendants' RICO violations will continue in most of the areas in which they have committed violations in the past. Defendants' practices have not materially changed in most of the Enterprise's activities, including: denial that ETS causes disease, denial that Defendants market to youth, denial of the addictiveness of nicotine, denial of manipulation of the design and content of cigarettes, suppression of information and research, and claims that light and low tar cigarettes are less hazardous than full-flavor cigarettes.

....

Similarly, Defendants continue to engage in many practices which target youth, and deny that they do so. Despite the provisions of the MSA, Defendants continue to track youth behavior and preferences and market to youth using imagery which appeals to the needs and desires of adolescents. Defendants are well aware that over eighty percent of adult

> smokers began smoking before the age of 18, and therefore know that securing the youth market is critical to their survival. There is therefore no reason, especially given their long history of denial and deceit, to trust their assurances that they will not continue committing RICO violations denying their marketing to youth.

Philip Morris, 449 F. Supp. 2d at 909-912.

Defendants' claim that, due to the passage of the Tobacco Control Act, and subsequent regulation of the tobacco industry by the FDA, there is no longer a reasonable likelihood of future RICO violations is simply unconvincing in light of these factual findings. Defendants offer no facts which would warrant revisiting the findings of this Court--findings that were affirmed by the Court of Appeals. See Philip Morris, 566 F.3d at 1132-33, 1137-38; Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190, 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000) ("a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."); United States v. Concentrated Phosphate Exp. Assoc., 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."). Three further considerations make Defendants' argument particularly untenable.

10

First, regulation under the FDA Act and any injunctions issued by this Court target different conduct. Congress passed the Tobacco Control Act "to ensure that the Food and Drug Administration has the authority to address issues of particular concern to public health officials." Pub. L. No. 111-31, § 3(2), 123 Stat. at 1777, codified at 21 U.S.C. § 387 note. By contrast, any remedial orders issued by this Court must be carefully drawn "to prevent and restrain violations of" RICO. 18 U.S.C. § 1964(a). FDA rulemaking is not designed to prevent future racketeering activity covered by RICO.

Second, Defendants have already attempted to make a similar argument--and failed to prevail. Defendants previously argued, in an earlier phase of this case, that the signing of the Master Settlement Agreement ("MSA"), which resulted from a tort suit between cigarette manufacturers and 46 states and the District of Columbia, removed the reasonable likelihood of future RICO violations. Thereafter, this Court found that "Defendants have not fully complied with the letter or spirit of the MSA." Philip Morris, 449 F. Supp. 2d at 913. In addressing the same argument, the Court of Appeals stated that "future violations remain likely notwithstanding the MSA" and affirmed this Court's finding that "Defendants began to evade and at times even violate the MSA's prohibitions almost immediately after signing the agreement." Philip Morris, 566 F.3d at 1132-33. The Court cannot accept the

Defendants' contention that the Tobacco Control Act will produce their conformity to the law even though RICO and the MSA could not.

Third, Defendants' contention that no reasonable likelihood of future RICO violations exists due to the FDA's regulation is particularly unconvincing when Defendants are simultaneously and vigorously challenging, both in a separate law suit and in administrative proceedings, many of the provisions of the Tobacco Control Act--including provisions which they claim render them unlikely to commit future violations of RICO. In <u>Commonwealth Brands, Inc. v. United States</u>, tobacco companies, including some of the Defendants in this case, argued "that various provisions of [the Act] . . . violate their free speech rights under the First Amendment; their rights to Due Process under the Fifth Amendment; and effect an unconstitutional Taking under the Fifth Amendment." 678 F. Supp. 2d 512, 521 (W.D. Ky. 2010). Although the district court in that case upheld the majority of the statute, both sides have appealed the ruling to the Court of Appeals for the Sixth Circuit. <u>See</u> <u>Disc. Tobacco City & Lottery v. United States</u>, Nos. 10-5234 & 10-5235 (6th Cir.). It is difficult to understand how Defendants can argue that the Tobacco Control Act will produce their future compliance with RICO when they do not believe that a great portion of the Act should apply to them at all. And, if in fact Defendants should prevail in their challenges to the Tobacco

Control Act, it will be all the more necessary for them to be restrained by this Court from any future violations of RICO.

Defendants offer three cases that they believe serve as examples of "federal legislation eliminat[ing] any reasonable likelihood that the conduct at issue will be repeated in the future." Defs.' Mot. 15. None are convincing analogues.

Bethany Med. Ctr. v. Harder, 693 F. Supp. 968 (D. Kan. 1988), upon which Defendants rely, is readily distinguishable for two reasons. First, in that case, the District Court for the District of Kansas found that there was no "reasonable expectation" of unlawful activity "in the future" because "Plaintiff's bare assertion that the agency is likely to violate its rights in the future, without more, is insufficient." Id. at 975. This Court, by contrast, did find a reasonable likelihood of future RICO violations by Defendants based on an extensive factual showing by the Government. See Philip Morris, 449 F. Supp. 2d at 909-912. Second, the defendant in Bethany Med. Ctr. was an administrative agency, and it "is presumed that administrative agencies will act within the law." Id. at 976. Defendants in this case enjoy no such presumption.

Defendants next cite to Green v. Mansour, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Defs.' Mot. 15. In that case, plaintiffs challenged the Michigan Department of Social Services' method of calculating benefits under the federal Aid to Families

With Dependent Children program. Green, 474 U.S. at 67. While the case was pending, Congress amended the relevant statutory provisions and the Department of Social Services conformed its policy to the new federal law. Id. The Supreme Court held that the Eleventh Amendment precluded federal courts from issuing a declaratory judgment against a state agency where no continuing violation of federal law was claimed. Id. at 73-74. Because the plaintiffs were arguing that the defendant's former policy violated a law no longer in effect, there could not be "any threat of state officials violating the repealed law in the future." Id. at 73. Additionally, the defendant was a state agency and the case turned on the strictures of the Eleventh Amendment. Id. None of those circumstances are relevant to the case before this Court.

Finally, Bullfrog Films, Inc. v. Wick similarly involved a government regulation superceded by Congressional action, and is similarly irrelevant. 959 F.2d 778, 779-780 (9th Cir. 1992). What is more, the parties in that case agreed that the case was moot. Id. at 780. None of these cases suggest that the fact that a government agency has been granted the authority to regulate in a given substantive area replaces a court's jurisdiction to issue an injunction, based on extensive factual findings, to prevent and restrain violations of RICO that a defendant is reasonably likely to commit in the future.

In sum, this Court has already made ample findings supporting its proper exercise of jurisdiction. These findings have been upheld by the Court of Appeals. Defendants have put forth no convincing evidence to suggest that this Court should revisit, let alone vacate, over four thousand factual findings, as well as the injunctive provisions contained in Remedial Order #1015. <u>Friends of the Earth</u>, 528 U.S. at 190 ("a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.") Based on the factual findings affirmed by the Court of Appeals, this Court continues to have jurisdiction over this matter.

**B.    Primary Jurisdiction Doctrine**

Defendants argue in the alternative that, even if the Court does have jurisdiction, it should decline to exercise it. Defs.' Mot. 19-23. Defendants contend that "any court-ordered relief would interfere with the implementation of the agency's expert regulatory judgment and potentially generate conflicting federal regulatory requirements." <u>Id.</u> at 19. Therefore, Defendants state, the Court should invoke the doctrine of primary jurisdiction and "dissolve its injunctions and decline to exercise any jurisdiction it might possess over this case." <u>Id.</u> at 23.

The primary jurisdiction doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever

15

enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." United States v. W. Pac. R.R. Co., 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

"In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." W. Pac. R.R. Co., 352 U.S. at 64. These purposes include "the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions" and "the expert and specialized knowledge of the agencies involved." Id. Critically, "[w]hether there should be judicial forbearance hinges . . . on the authority Congress delegated to the agency in the legislative scheme." Golden Hill Paugusett Tribe of Indians v. Weicker, 39 F.3d 51, 59 (2d Cir. 1994); see also W. Pac. R.R. Co., 352 U.S. at 64 (the doctrine is appropriately applied to "issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."); Atchison, T. & S. F. Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800, 820-21, 93 S.Ct. 2367, 2381-82, 37 L.Ed.2d 350 (1973).

Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," W. Pac. R.R. Co., 352 U.S. at 64, courts

traditionally consider four factors in deciding whether to invoke the doctrine. Schiller v. Tower Semiconductor Ltd., 449 F.3d 286, 295 (2d Cir. 2006); Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1086-87 (9th Cir. 2006); Oasis Petroleum Corp. v. United States Dep't of Energy, 718 F.2d 1558, 1564 (Temp. Emer. Ct. App. 1983) (identifying the factors in various cases, including Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976)); Himmelman v. MCI Commc'ns Corp., 104 F. Supp. 2d 1, 4 (D.D.C. 2000); AT&T v. MCI, 919 F. Supp. 13, 16 (D.D.C. 1993). These factors are: "(1) whether the question at issue is within the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." Himmelman, 104 F. Supp. 2d 1, 4 (D.D.C. 2000);  Ellis v. Tribune Television Co., 443 F.3d 71, 82-83 (2d Cir. 2006).

It is telling that none of the parties cite to any of these factors in their briefs. See Defs.' Mot. 19-23; Gov.'s Opp'n 22-29; PHI's Opp'n 20-21; Defs.' Reply 11-13. The reason for this omission is simple: this case does not present the appropriate circumstances for invocation of the primary jurisdiction doctrine. Nonetheless, the Court will consider in turn each of the factors.

###### 1.    Relevant Expertise

The first factor requires a court to assess "whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise." Ellis, 443 F.3d at 82-83; Himmelman, 104 F. Supp. 2d at 4. Defendants state simply that "the FDA possesses unique regulatory expertise about smoking-and-health issues." Defs.' Mot. 19. The problem with Defendants' claim is that they fail to recognize the distinction between this Court's responsibility to fashion a remedy "to prevent and restrain violations of" RICO under 18 U.S.C. § 1964(a), and the FDA's authority "to set national standards controlling the manufacture of tobacco products and the identity, public disclosure, and amount of ingredients used in such products." Pub. L. No. 111-31, § 3(3), 123 Stat. at 1782, codified at 21 U.S.C. § 387 note.

Courts have consistently declined to invoke the primary jurisdiction when adjudicating RICO or fraud claims, as such claims "do not require agency expertise for their treatment because such claims are within the conventional expertise of judges." Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d 882, 889 (6th Cir. 1990); Nader, 426 U.S. at 305-06 ("The standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts . . . ."); Bendzak v. Midland Nat. Life Ins. Co., 440 F. Supp. 2d 970, 977 (S.D. Iowa 2006)

(plaintiff's RICO claims "are within the conventional expertise of judges, and none of them require the special expertise of a state insurance commission.") (internal quotations omitted); <u>Shaw v. Rolex Watch U.S.A., Inc.</u>, 776 F. Supp. 128, 132 (S.D.N.Y. 1991) ("The standards of fraudulent misrepresentation and omission to be applied in this RICO action are within the conventional competence of this Court."). Because any injunctive relief entered by this Court must be drawn narrowly so as to prevent and restrain future RICO violations only, there is no need to defer to the expertise of an administrative agency. <u>W. Pac. R.R. Co.</u>, 352 U.S. at 64.

In this light, the cases cited by Defendants are readily distinguishable. All of the cases cited in Defendants' briefs concerned circumstances in which an agency and a court had to make the same determination under the same statute or regulation-- obviously, not the case here. <u>See, e.g.,</u> <u>Ellis</u>, 443 F.3d at 92 (the district court should have invoked the primary jurisdiction doctrine where the question was whether the defendant was in violation of an agency rule and the agency was considering an application for waiver at the time of the suit); <u>Allnet Commc'n Serv. v. Nat'l Exchange Carrier Assoc., Inc.</u>, 965 F.2d 1118, 1120 (D.C. Cir. 1992) (primary jurisdiction doctrine applied where an FCC staff letter and FCC order potentially conflicted as to whether certain tariffs were valid); <u>Israel v. Baxter Labs., Inc.</u>, 466 F.2d 272, 280-82 (D.C. Cir. 1971) (court invoked primary jurisdiction

doctrine where parties agreed that the FDA should address drug's safety and efficacy).[3] None of these cases dealt with a situation in which a court, having made a ruling as to liability under one statute, was asked to vacate relief because such relief could implicate an agency's area of concern under a separate statute.[4]

In short, Defendants have invoked no authority for the proposition that the primary jurisdiction doctrine requires a court to vacate an injunction resulting from RICO violations because an administrative agency has expertise in the defendant's industry. To the contrary, this Court has ample expertise to fashion a remedy that will comply with RICO. See Nader, 426 U.S. at 305-06; Dana Corp., 900 F.2d at 889.

---

[3] Defendants also cite to Atchison, 412 U.S. at 820-21, at some length. See Defs.' Mot. 20-21. Atchison is wholly off-point. In that case, the district court reversed and remanded an order of the Interstate Commerce Commission, which found certain charges by carriers reasonable, because "the Commission had not adequately justified its failure to follow" a longstanding rule. Id. at 805. The district court also enjoined the carriers' charges while the Commission reconsidered the matter. Id. at 817-18. The Supreme Court affirmed the remand to the Commission, but struck down the injunction because "[c]arriers may put into effect any rate that the Commission has not declared unreasonable" and the district court should not have "estimate[d] . . . the probability of ultimate success on the merits by the party challenging the agency action." Id. at 819, 821. This case involves no such direct interaction with an agency, nor does it involve an assessment of the reasonableness of an activity regulated by an agency.

[4] As the Public Health Intervenors observe, Defendants "do not cite a single case where this doctrine has been applied to vacate a district court decision on the merits that has already been resolved on appeal, especially one involving the type of long term fraud and sustained pattern of deception that the court found in this case." PHI Opp'n 2 (emphasis in original).

## 2.   Agency Discretion

The second factor in assessing primary jurisdiction concerns "whether the question at issue is particularly within the agency's discretion." Ellis, 443 F.3d at 83; Himmelman, 104 F. Supp. 2d at 4. Defendants observe simply that the "FDA has already begun to exercise [its] regulatory discretion with regard to numerous aspects of tobacco manufacture, marketing, and distribution." Defs.' Mot. 22.

Congress explicitly and unequivocally declined to place the discretion to craft a remedy in this case in the hands of the FDA. The text of the statute states, "[n]othing" in the Tobacco Control Act "shall be construed to . . . affect any action pending in Federal, State, or tribal court." Pub. L. No. 111-31, § 4(a), 123 Stat. at 1782, codified at 21 U.S.C. § 387 note. There can be no doubt that Congress was well aware of this case when drafting that language, given that the statute cites to this case three times in its early sections. See Pub. L. No. 111-31, §§ 2(47)-(49), 123 Stat. at 1781, codified at 21 U.S.C. § 387 note.[5] Congress,

---

[5] Specifically, under "Findings," the statute reads:

> (47) In August 2006 a United States district court judge found that the major United States cigarette companies continue to target and market to youth. USA v. Philip Morris, USA, Inc., et al. (Civil Action No. 99-2496 (GK), August 17, 2006).
>
> (48) In August 2006 a United States district
> (continued...)

21

therefore, assumed and intended that this Court would retain control over remedial decisions. <u>Golden Hill Pauqusett Tribe of Indians</u>, 39 F.3d at 59; <u>W. Pac. R.R. Co.</u>, 352 U.S. at 64.

Congress has made it plain: the remedies for Defendants' violation of RICO are not "issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." <u>W. Pac. R.R. Co.</u>, 352 U.S. at 64.

### 3.   Danger of Inconsistent Rulings

Among the central purposes of the primary jurisdiction doctrine is to encourage "the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions." <u>W. Pac. R.R. Co.</u>, 352 U.S. at 64. As

---

[5](...continued)
court judge found that the major United States cigarette companies dramatically increased their advertising and promotional spending in ways that encourage youth to start smoking subsequent to the signing of the Master Settlement Agreement in 1998. USA v. Philip Morris, USA, Inc., et al. (Civil Action No. 99-2496 (GK), August 17, 2006).

(49) In August 2006 a United States district court judge found that the major United States cigarette companies have designed their cigarettes to precisely control nicotine delivery levels and provide doses of nicotine sufficient to create and sustain addiction while also concealing much of their nicotine-related research. USA v. Philip Morris, USA, Inc., et al. (Civil Action No. 99-2496 (GK), August 17, 2006).

Pub. L. No. 111-31, §§ 2(47)-(49), 123 Stat. at 1781, <u>codified at</u> 21 U.S.C. § 387 note.

explained above, this Court only has jurisdiction to prevent and restrain future RICO violations by the Defendants, and the FDA has no authority under the Tobacco Control Act to address RICO remedies. Because this case concerns no provision of or rule promulgated under the Tobacco Control Act, it presents no risk of conflict with the FDA's resolution of any issue delegated to it under that Act. See Ellis, 443 F.3d at 88 ("Courts should be especially solicitous in deferring to agencies that are simultaneously contemplating the same issues.") (emphasis added).

Nonetheless, Defendants claim that "the Court's general and specific injunctions would inevitably give rise to requirements on a number of smoking-related issues that are inconsistent with the regulatory requirements established by the FDA." Defs.' Mot. 19. This fear is both premature and speculative.

Defendants point to (1) an FDA request for comments regarding proposed graphic warnings on cigarette packages and advertising, 75 Fed. Reg. 69,524; (2) an FDA request for comments regarding regulations that would restrict the location and content of outdoor cigarette advertising, id. at 13,241; and (3) a letter from the Director for the Center for Tobacco Products requesting information from the tobacco industry to assist the FDA in studying the impact of menthol cigarettes on public health. Defs.' Mot 22. Notably, none of these agency actions conflict with any injunction issued by this Court.

In a separate section of their brief, Defendants make a similar argument that the Court should vacate its injunctions (1) relating to the marketing of "light" and "low tar" cigarettes, (2) prohibiting Defendants from making false statements, and (3) requiring Defendants to make corrective statements. Defs.' Mot. 23-31. Although included under a separate heading, this argument is essentially a reworking of Defendants' subject matter jurisdiction and primary jurisdiction arguments. The crux of this section of their Motion is that these injunctions encroach on the FDA's zone of authority and "would inevitably impair the implementation of the FDA's expert regulatory judgments." Id. at 27. Once again, Defendants point to no regulation in conflict with any order of this Court.

In the event that the FDA issues regulations that do conflict with an order of this Court, the Government may always file a motion to amend the injunction. Similarly, should Defendants find that they are subject to conflicting requirements from this Court and the FDA, they have ample recourse through a Rule 60(b) motion. In relation to the primary jurisdiction doctrine, however, Defendants have made no showing that any factual finding as to their RICO violations could come into conflict with an FDA decision, nor have they demonstrated a "substantial danger of inconsistent rulings" between this Court's remedial order and the

rules they speculate the FDA will promulgate. Ellis, 443 F.3d at 83.

### 4. Prior Application to the Agency

Needless to say, Defendants have made no prior application to the FDA regarding restraining future violations of RICO. See id. at 89 ("if prior application to the agency is absent, this factor may weigh against the referral of the matter to the agency on the basis of primary jurisdiction."). The presence of this factor only serves to highlight the inapplicability of the primary jurisdiction doctrine in this context. While the FDA may currently be considering a number of issues relating to the Defendants' marketing and production of tobacco products, Defendants have made no suggestion that the FDA is contemplating the issue before this Court, namely how to prevent and restrain future violations of RICO.

It is worth noting, in summation, that the Court's discretion to dismiss a case under the primary jurisdiction doctrine "is appropriately exercised only where 'the parties would not be unfairly disadvantaged . . . .'" Himmelman, 104 F. Supp. at 8 (quoting Reiter v. Cooper, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)). It has been well over eleven years since this case was filed and nearly five years since this Court found that Defendants "knowingly and intentionally engaged in a scheme to defraud smokers and potential smokers, for purposes of financial

gain, by making false and fraudulent statements, representations, and promises." <u>Philip Morris</u>, 449 F. Supp. 2d at 852. Defendants now ask this Court to "dissolve its injunctions and decline to exercise any jurisdiction it might possess over this case." Defs.' Mot. 23. For all the reasons noted, this is not a case in which "the judicial process [should be] suspended pending referral of such issues to the administrative body for its views." <u>W. Pac. R.R. Co.</u>, 352 U.S. at 64.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Vacatur is **denied.**

An Order will issue with this opinion.

June 1, 2011
/s/
Gladys Kessler
United States District Judge

**Copies to:** counsel of record via ECF