**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No. 99-2496 (GK)** |
| **PHILIP MORRIS USA, Inc., et al.** | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

This civil action brought by the United States under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, is now before the Court on Defendants' Motion to Clarify Order #1015 Concerning Enforceability [Dkt. No. 5896]. Upon consideration of the Motion, Oppositions, Reply, and the entire record herein, and for the reasons stated below, Defendants' Motion to Clarify is **denied.**

## I. BACKGROUND

On August 17, 2006, this Court issued a lengthy opinion finding that all Defendants "(1) have conspired together to violate the substantive provisions of RICO, pursuant to 18 U.S.C. § 1962(d), and (2) have in fact violated those provisions of the statute, pursuant to 18 U.S.C. § 1962(c)." United States v. Philip Morris USA, Inc., et al., 449 F. Supp. 2d 1, 26 (D.D.C. 2006). In particular, the Court held that Defendants "knowingly and intentionally engaged in a scheme to defraud smokers and potential

smokers, for purposes of financial gain, by making false and fraudulent statements, representations, and promises." Id. at 852.[1]

Accordingly, the Court imposed a number of injunctive measures in order to prevent future violations of RICO. Id. at 937-945. On May 22, 2009, the Court of Appeals for the District of Columbia Circuit affirmed this Court's judgment of liability and affirmed major provisions in its Remedial Order. United States v. Philip Morris USA, Inc., et al., 566 F.3d 1095, 1150 (D.C. Cir. 2009), cert. denied, 130 S. Ct. 3501 (2010). The Court of Appeals remanded the case with directions to address four discrete remedial issues.[2]

While the case has been an remand for consideration of the issues specified by the Court of Appeals, Defendants have presented a litany of other arguments for clarifying, limiting, reformulating, or entirely vacating this Court's factual findings

---

[1] The extensive factual findings of the Court may be found at Philip Morris, 449 F. Supp. 2d at 34-851.

[2] The Court of Appeals remanded the case with directions to (1) evaluate the extent to which Brown & Williams Holdings is reasonably likely to commit future violations; (2) determine which subsidiaries of the Defendants should be included in the remedial order; (3) reformulate the prohibition on the use of health messages or descriptors to exempt foreign activities that have no substantial, direct, and foreseeable domestic effects; and (4) consider the rights of innocent third parties and clarify accordingly the remedial order's provisions regarding point-of-sale displays. Philip Morris, 566 F.3d at 1150. The Court of Appeals also ordered this Court to dismiss CTR and TI from the suit, as those organizations had dissolved, id., and that was done in Order #7-Remand [Dkt. No. 5846]. The Court has already addressed the first two issues, in Orders #7-Remand and #13-Remand [Dkt. No. 5877].

and Remedial Order, Order #1015. In the Motion currently before the Court, Defendants request that language be added to Order #1015 that "(1) clarifies that this Court has exclusive jurisdiction to enforce Order #1015; (2) confirms that only the Government may seek to enforce Order #1015 absent leave of Court; and (3) requires the parties to meet and confer pursuant to LCvR 7(m) before motions to enforce Order #1015 are filed, absent exigent circumstances." Defs.' Mot. 1-2. To serve these purposes, Defendants propose that the Court add the following provision to Order #1015:

> V. Enforcement
>
> 22. This Court retains exclusive jurisdiction over this case for the purpose of issuing such further orders or directions as may be necessary or appropriate for the construction or carrying out of this Order, for the modification of any of the provisions thereof, for the enforcement of compliance therewith, and for the punishment of any violation thereof. Only Plaintiff and Defendants may seek to enforce the provisions of this Order without leave of Court to do so. Before seeking to enforce the provisions of this Order, Plaintiff and any affected Defendant shall comply with LCvR 7(m) by conferring in good faith in an attempt to narrow or resolve any issues raised without Court intervention; provided, however, Plaintiff may in its discretion seek to enforce this Order without first complying with LCvR 7(m) if it concludes that emergent circumstances require immediate enforcement action.

Id. at 2-3.

Defendants filed their Motion on March 24, 2011. On April 25, 2011, the Government ("Gov.'s Opp'n") [Dkt. No. 5926] and the

Public Health Intervenors ("PHI's Opp'n") [Dkt. No. 5927] filed separate Oppositions. On April 5, 2011, Defendants filed their Reply [Dkt. No. 5928].

**II. STANDARD OF REVIEW**

The parties disagree, as an initial matter, as to what standard of review should govern Defendants' Motion. Intervenors argue that Defendants' Motion should be reviewed under Federal Rule of Civil Procedure 60(b), because "Defendants plainly seek to modify the Order." PHI's Opp'n 5 (emphasis in original). Defendants respond that no rule governs their Motion because "Defendants' motion is in fact a classic motion for clarification." Defs.' Mot. 3.

Defendants are correct that there is no Federal Rule of Civil Procedure specifically governing "motions for clarification." The question, however, is whether Defendants' Motion is properly construed as a motion seeking relief from a judgment or order under Rule 60(b). U.S. v. Hart, 933 F.2d 80, 84 (1st Cir. 1991) ("prolific case law across the circuits maintains that a title given to a motion . . . does not control its meaning."); Catz v. Chalker, 566 F.2d 839, 841 (9th Cir. 2009).

On the one hand, Intervenors observe that a number of courts have interpreted a "motion for clarification" as a Rule 60(b) motion. See PHI's Opp'n 5; Napoli v. Town of New Windsor, 600 F.3d 160, 170 (2d Cir. 2010); In re Walter, 282 F.3d 434, 439 (6th Cir.

2002); see also Vaughn v. Laurel Cnty. Jail, 85 F.3d 630, 1996 WL 254660, at *1 (6th Cir. May 14, 1996) (motion for clarification reviewed under Rule 60(b) because "[a]ny post-judgment motion that asks for relief other than correction of a purely clerical error and which is filed more than ten days after entry of judgment is treated as a Rule 60(b) motion.").

On the other hand, Defendants point to other cases in which courts have ruled on a motion for clarification without resort to Rule 60(b) standards. See Defs.' Reply 4; Int'l Rectifier Corp. v. Samsung Electronic Co. Ltd., 361 F.3d 1355, 1359-62 (Fed. Cir. 2004); Pimentel v. Dreyfus, No. C11-119 MJP, 2011 WL 1085886, at *3-4 (W.D. Wash. Mar. 22, 2011); Knighten v. Palisades Collections, LLC, No. 09-CIV-20051, 2011 WL 835783, at *3 (S.D. Fla. Mar. 4, 2011); Potter v. District of Columbia, 382 F. Supp. 2d 35, 42 (D.D.C. 2005).

The Court concludes that, viewed in the context of this case as a whole, Defendants' Motion is best understood as a motion seeking relief from a judgment or order under Rule 60(b), rather than as a motion for clarification as that terminology is generally used. "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." Resolution Trust Corp. v. KPMG Peat Marwick, et al., No. 92-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993) (finding that "Peat Marwick does not seek a motion for clarification but

rather asks the court to alter its previous ruling and make findings of fact.”). It is significant that Defendants fail to identify anywhere in their Motion which provisions of Order #1015 are “ambiguous” or “vague.” Rather, what Defendants seek is to add new language to Order #1015 containing new declarations of law.

Further, unlike the motions for clarification in the cases cited by Defendants, their Motion does not ask the Court to construe the scope of its Order by applying it in a concrete context or particular factual situation. See Int’l Rectifier, 361 F.3d at 1359-62 (holding that the district court abused its discretion by refusing to grant a “motion to clarify, vacate, or modify” its injunction when that court had impermissibly expanded its scope to cover certain extraterritorial activity); Knighten, 2011 WL 835783, at *3 (granting motion to clarify whether the court’s summary judgment order entitled plaintiff to statutory damages and attorney’s fees); Potter, 382 F. Supp. 2d at 42 (granting a motion to clarify whether the “rather vague prohibitions” of a preliminary injunction applied to defendant’s specific conduct);[3] see also Regal Knitwear Co. v. Nat’l Labor Relations Bd., 324 U.S. 9, 15, 65 S.Ct. 478, 481-82, 89 L.Ed. 661 (1945) (“we think courts would not be apt to withhold a

[3] Defendants’ citation to Pimentel v. Dreyfus, supra, is unpersuasive, since the court simply granted the plaintiff’s uncontested motion for clarification. 2011 WL 1085886, at *3.

clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court.”).

Instead, as discussed below, Defendants request that the Court modify Order #1015 by announcing a series of abstract and far-reaching legal determinations in order to preempt potential future litigation. Defendants do not seek clarification of any language in the Court’s Order. Rather, they ask the Court to issue advisory determinations on complex issues affecting the jurisdiction of federal and state courts based on legal arguments raised neither at the remedial phase of the litigation nor in any concrete context. See United States. v. W. Elec. Co., Inc., 46 F.3d 1198, 1202 (D.C. Cir. 1995) (Modifications at the request of the enjoined party relieving it of the decree’s constraints “come within Rule 60(b)(5). . . .”); Napoli, 600 F.3d at 170 (motion for clarification “on several issues that the district court had not addressed in its previous order” construed under Rule 60).[4] Because

---

[4] Defendants argue that because the Court recently granted a Motion for Clarification by the Government, the Government cannot “credibly maintain that this Court must apply to it a more exacting standard than the Government itself so recently secured from this Court.” Def.’s Reply 3; see United States v. Philip Morris USA Inc., __ F. Supp. 2d __, no. 99-2496, 2011 WL 1479917 (D.D.C. April 19, 2011). The differences between the Government’s Motion and the Defendants’ Motion merely highlight why Defendants’ Motion is properly considered under Rule 60(b).

Unlike Defendants’ “Motion for Clarification,” the Government’s Motion sought to resolve a disagreement between the parties “about the meaning of certain language contained” in Order #1015. Id. at *1. Specifically, parties disagreed over “(1) what (continued...)

Defendants do not seek clarification of any vague or ambiguous portion of Order #1015 but do seek the addition of language which could substantially restrict enforcement of the Order, the Court will consider Defendants' Motion under Rule 60.[5]

Defendants' Motion may be considered under two provisions of Rule 60(b).[6] Rule 60(b)(5) provides, in relevant part, that a district court may grant relief from a final order if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5) (2011). The Supreme Court has held that "it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show 'a significant change either in factual conditions or in law.'" Agostini v. Felton, 521 U.S. 203, 215, 117 S. Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384, 112 S. Ct. 748,

[4](...continued)
categories of data Defendants are required to provide; and (2) whether the Department of Justice may share the data with other Government agencies." Id. Hence, the Government's Motion concerned the scope of particular language in Order #1015 in the specific context of Defendants' compliance with the Order's disclosure requirements. See W. Elec. Co., Inc., 46 F.3d at 1202.

[5] The Court has previously determined that "Rule 54(b) has no applicability to this case, since appeals have been exhausted and the judgment of liability has been affirmed by the Court of Appeals." United States v. Philip Morris USA, Inc., —F. Supp. 2d—, no. 99-2496, 2011 WL 1252662, at *3 (D.D.C. Mar. 28, 2011).

[6] Intervenors agree that either Rule 60(b)(5) or 60(b)(6) may apply. PHI's Opp'n 5-6.

116 L.Ed.2d 867 (1992)); see also Potter v. District of Columbia, 558 F.3d 542, 554 (D.C. Cir. 2009).[7]

Rule 60(b)(6) permits a district court to grant relief from a final order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6)(2011). The Supreme Court has held that only extraordinary circumstances can justify relief under this section. Ackermann v. United States, 340 U.S. 193, 199-202, 71 S. Ct. 209, 95 L.Ed. 207 (1950); Agostini v. Felton, 521 U.S. 203, 239, 117 S.Ct. 1997, 2018, 138 L.Ed.2d 391 (1997). Our Court of Appeals has recently emphasized that the Rule "'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" Salazar v. District of Columbia, 633 F.3d 1110, 1120 (D.C. Cir. 2011) (quoting Kramer v. Gates, 481 F.3d 788, 792 (D.C. Cir. 2007)).

**III. ANALYSIS**

As noted above, Defendants propose inserting a paragraph entitled "Enforcement" into Order #1015. This paragraph would, in fact, include language addressing three separate issues: (1) whether this Court has exclusive jurisdiction to enforce Order #1015; (2) whether only the Government may seek to enforce Order #1015; and (3) whether the parties must meet and confer before the

[7] This Potter decision affirmed a different ruling by the same district court cited above, supra at p. 5. See Potter v. District of Columbia, Nos. 01-1189 (JR), 05-1792 (JR), 2007 WL 2892685 (D.D.C. Sept. 28, 2007), aff'd, 558 F.3d 542.

Government seeks to enforce Order #1015. Each issue will be addressed in turn.

**A. Jurisdiction to Enforce Order #1015**

Defendants first propose that Order #1015 be modified to provide that:

> This Court retains exclusive jurisdiction over this case for the purpose of issuing such further orders or directions as may be necessary or appropriate for the construction or carrying out of this Order, for the modification of any of the provisions thereof, for the enforcement of compliance therewith, and for the punishment of any violation thereof.

Defs.' Mot. 2. Defendants argue that such a pronouncement is necessary because plaintiffs in In re Engle Progeny Cases Tobacco Litig.: Claudette Campbell, et al., No. 09-CA-000493 (Cir Ct., 13th Judicial Cir., Hillsborough Co., Fla.), who have sued some of the same companies who are in this case, have argued that these Defendants should be precluded from advancing certain arguments on the ground that those arguments "would somehow contravene the requirements imposed by this Court's injunctions." Defs.' Reply 5. Defendants reason that, since "the law is clear that only the court that issues an injunction may enforce it," this Court should add to Order #1015 the language quoted above prohibiting any other court from enforcing its injunction. Defs.' Mot. 3.[8]

---

[8] If judges included broad statements of well-accepted legal principles in every Order they signed, the Federal Supplement would (continued...)

Defendants' argument is unpersuasive for two reasons. First, Defendants offer no authority to support the broad contention that a court either could or should enjoin other courts from relying upon its rulings. Defendants merely provide case law that stands for the well established principles that (1) a court always retains jurisdiction to modify its own injunction; and (2) a contempt motion for violation of an injunction is properly brought before the court that issued that injunction. See, e.g., W. Elec. Co., 46 F.3d at 1202 (courts have jurisdiction to modify their own injunctions); Baker v. Gen. Motors Corp., 522 U.S. 222, 236, 118 S.Ct. 657, 665, 139 L.Ed.2d 580 (1998) ("Sanctions of violations of an injunction . . . are generally administered by the court that issued the injunction.").

Second, and perhaps more importantly, Defendants seek a blanket ruling as to the effect of this Court's Order #1015 outside of any specific context. If, as Defendants contend, the law is clear that other courts may not in any way enforce this Court's injunction, they are free to make that argument at an appropriate time, before the appropriate court, in a specific factual context. This Court will not issue an abstract advisory opinion as to the enforceability of Order #1015, especially without the benefit of any factual or procedural context. See, e.g., Hall v. Beals, 396

[8] (...continued)
be far lengthier than it already is.

U.S. 45, 48, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969) (courts should "avoid advisory opinions on abstract propositions of law."); Chamber of Commerce v. EPA, ___ F.3d ___, No. 09-1237, 2011 WL 1601753, at *4 (D.C. Cir. Apr. 29, 2011) ("federal courts are without authority 'to render advisory opinions. . . .'") (quoting Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)).[9] In sum, Defendants have failed to demonstrate any change in fact or law, or any other extraordinary circumstance that would justify modifying Order #1015 to include this Court's opinion on the jurisdiction of other courts to consider the effect of Order #1015 on their individual cases.[10] Id.

**B. Standing to Enforce Order #1015**

Defendants next request that the Court amend Order #1015 to specify "that only the Government has standing to request enforcement of the injunctive remedies imposed by Order #1015." Defs.' Mot. 5. Defendants claim that the absence of such a provision "will ensure nothing short of chaos." Id. at 7. Defendants caution that "the Court will inevitably . . . become involved in an endless stream of disputes" and that "literally

---

[9] It is worth noting that the relief sought now was not requested in response to the United States' post-trial proposed final order, nor was it raised on appeal. Salazar, 633 F.3d at 1120, supra at p. 10.

[10] Defendants wish to preclude the plaintiffs in the Engle litigation from seeking certain relief they believe that Order #1015 provides. This Court has no authority--or desire--to insert itself in any way into the Engle litigation.

thousands of Engle plaintiffs . . . would be free to seek to enforce Order #1015." Id.

Although the parties engage in an extensive discussion of whether the Intervenors would have standing in this case to enforce Order #1015, there is no reason to resolve what is at this time a totally speculative issue. Hall, 396 U.S. at 48. While Defendants trot out the usual "parade of horribles," they have pointed to no discernible threat that their predictions will prove accurate. Moreover, Defendants offer no reason why the Court could not resolve this issue in a concrete context if and when it ever comes to pass that the Government declines to enforce Order #1015 and Intervenors or others attempt to bring their own enforcement action. Again, Defendants have offered no change in fact or law nor any extraordinary reason to amend Order #1015 to address a purely speculative problem prematurely. Salazar, 633 F.3d at 1120.[11]

**C. Meet-and-Confer Requirement**

Finally, Defendants urge the Court to add a provision to Order #1015 stating:

> Before seeking to enforce the provisions of this Order, Plaintiff and any affected Defendants shall comply with LcvR 7(m) by

[11] Defendants seem greatly exercised over the "chaos" that will follow if its exclusivity language is not adopted, and raise the specter of "thousands of Engle plaintiffs" swamping either this Court or the Florida court with demands to enforce Order #1015. This rather apocalyptic scenario is just a bit far-fetched. Suffice it to say that both this Court and the Florida court will be able to manage the issues when and if they arise.

> conferring in good faith in an attempt to narrow or resolve any issues raised without Court intervention; provided, however, Plaintiff may in its discretion seek to enforce this order without complying with LcvR 7(m) if it concludes that emergent circumstances require immediate enforcement action.

Defs.' Mot. 2-3.

Defendants have failed to demonstrate that there is any benefit to be gained by adding such language to Order #1015. Indeed, Defendants previously obtained just such a provision in their Master Settlement Agreement ("MSA"), resolving the lawsuit by fifty-two jurisdictions, including forty-six states and the District of Columbia, against a number of cigarette manufacturers, including several of these Defendants. See Philip Morris, 449 F. Supp. 2d at 844. In considering the effect of that provision, this Court has already found that the mandatory consultation and discussion rule "leads to time-consuming enforcement efforts" and is one of several structural issues making the MSA "a far less powerful enforcement mechanism than Defendants claim." Id. at 914-15. This Court sees no reason to either overturn or revisit this factual finding.

Defendants have offered no reason why the Court should now, nearly five years after issuance of Order #1015, introduce such an impediment to enforcement of its Remedial Order.

Defendants argue that any motion to enforce the injunction would be subject to LCvR 7(m)'s meet-and-confer requirement. It is

far from clear that LCvR 7(m) covers post-judgment litigation.[12] But, in any event, as with Defendants' other arguments, their meet-and-confer argument under LCvR 7(m) may be litigated if and when the Government attempts to enforce the Order without prior consultation.[13] Defendants' concern is simply premature. Defendants' desire for the addition of meet-and-confer language is not an extraordinary circumstance nor one that would render the prospective application of Order #1015 inequitable unless it is amended pursuant to Rule 60(b)(5)-(6). Salazar, 633 F.3d at 1120.

Finally, Defendants argue that "requiring the parties to meet and confer before the filing of a motion to enforce Order #1015 is just common sense." Id. at 12. "Common sense" is often in the eye of the beholder. Moreover, it is simply not the relevant standard for obtaining an amendment to Order #1015, pursuant to Rule 60(b). Defendants have offered no change in fact or law nor any extraordinary circumstance that would warrant imposition of a blanket meet-and-confer requirement.

---

[12] It must be pointed out that the great majority of cases cited by Defendants concern consent decrees in which the Government agreed to meet-and-confer before seeking enforcement of court orders. Defs.' Mot, at 12-13. Of course, what defendants in other cases may have been able to bargain for in a consent decree is entirely irrelevant to whether the Government in this case has a legal obligation to meet-and-confer prior to enforcement of an injunction entered in a hotly contested proceeding.

[13] The Government, for its part, has made it very clear that it will go out of its way to voluntarily confer with Defendants before seeking enforcement from the courts. Gov.'s Opp'n 8.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Clarification is **denied.**

An Order will issue with this opinion.

/s/
June 22, 2011 Gladys Kessler
United States District Judge

**Copies to:** counsel of record via ECF