UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | )  |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) |
| | ) Civil No. 99-CV-02496 (GK) |
| v. | ) |
| | ) Next scheduled court appearance: |
| **PHILIP MORRIS USA INC.,** | ) None |
| f/k/a PHILIP MORRIS INC., et al., | ) |
| Defendants. | ) |
| | ) |

**UNITED STATES' RESPONSE TO ORDER SEEKING VIEWS ON DEFERRING CONSIDERATION OF RECOMMENDED CORRECTIVE STATEMENTS**

On November 17, 2011, the Court directed the parties to submit their views on whether the Court should defer considering the issue of corrective statements and point-of-sale placement of the corrective statements within retail stores; and if so, for how long. The United States urges the Court to continue to move forward on this remedy expeditiously. The time that the Court originally contemplated for the Defendants to make the required corrective statements has long since passed. Waiting for further events in other cases is unnecessary, as future appellate decisions will not assist the Court in resolving the issues before it here, and delay is not in the public interest. What is more, the Court has already addressed—and explicitly rejected—the arguments that Defendants are most likely to muster in favor of further waiting.

**ARGUMENT**

1. **POSTPONING DECISION ON CORRECTIVE STATEMENTS WILL NOT CONSERVE JUDICIAL RESOURCES, BUT WILL GIVE DEFENDANTS INDIRECTLY WHAT THE COURT REFUSED TO GIVE THEM DIRECTLY**

As discussed below, the legal issues raised in the ongoing challenges to the public-health warnings mandated under the Family Smoking Prevention and Tobacco Control Act of 2009 ("Tobacco Control Act"), Pub. L. No. 111-31, 123 Stat. 1776, have very little to do with the

objections to the United States' recommended statements that the Defendants have raised in this case.  As such, there is little reason to think that deferring decision on corrective statements in this case would conserve judicial resources.  It would, however, grant Defendants indirectly what the Court has already refused to give them directly: Continued relief from the Court's corrective-statement remedy, based on the enactment of the Tobacco Control Act.

      a.      **Postponing decision will not conserve judicial resources**

The pending challenge to the warning requirement of the Tobacco Control Act bears at most a glancing relationship to Defendants's challenge to the corrective statements in this case.  The lower court's preliminary-injunction decision in *RJR v. FDA* was based on its determination that the *format* of the Tobacco Control Act warnings—their size, placement, and graphic components—transforms them into compelled ideological speech subject to strict scrutiny under cases such as *Wooley v. Maynard*, 430 U.S. 705 (1977).  *R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, ___ F. Supp. 2d ___, No. 11-CV-1482(RJL), 2011 WL 5307391, at *5 (D.D.C. Nov. 7, 2011) ("*RJR v. FDA*"), *appeal filed*, No. 11-5332 (D.C. Cir. Nov. 29, 2011).  The government has appealed that decision to the D.C. Circuit.

Defendants' objections to the recommended corrective statements in this case are unrelated.  As the Court recognized, the recommended corrective statements here "are significantly different from the verbal and pictorial advertisements required by the FDA Regulations" and being challenged in the *RJR v. FDA* litigation.  Order at 1 (R. 5950; issued 11/17/2011).  Defendants make no claims that the *format* of the recommended corrective statements—their size, placement, and graphic components—transforms them into compelled ideological speech or makes them subject to strict scrutiny.

To the contrary, the objections that Defendants raise to the recommended corrective statements are fact-based and specific to this case. This is true both of Defendants' arguments that the recommended statements are "controversial," and that the recommended statements are "misleading" and therefore "not factual." Defendants make two principal arguments that the recommended statements are "controversial." The first relies on their factual claims that the Court's findings of fact (and thus the recommended corrective statements) are allegedly contrary to some other courts' collateral-estoppel decisions and eight jury verdicts. *Compare* Defs.' Resp. to Gov't's Proposed Corrective Stmts. at 10-11 (R. 5881; filed 3/3/11) (hereafter "Defs. Resp.") *and* Defs.' Reply in Supp. of Defs.' Resp. to Gov't's Proposed Corrective Stmts. at 8-9 (R. 5893; filed 3/22/11) (hereafter "Defs. Reply") *with* U.S. Reply Re. Proposed Corrective Stmts. at 13 (R. 5891; filed 3/16/11) *and* U.S. Surreply in Supp. of Proposed Corrective Stmts. at 6-9 & App. 1 (R. 5930 & 5930-01; filed 5/10/2011), *appendix superseded by* U.S. Notice of First Suppl. Filing, Ex. 2 (R. 5935-02; filed 5/27/2011).

Defendants' second principal argument that the recommended statements are "controversial" relies upon further factual claims, specific to this case, about the statements' intent or purpose. *Compare* Defs.' Resp. at 2, 4, 8, 10, 14, 24 (asserting repeatedly, though without citation, that the recommended corrective statements are "designed" or "intended" to embarrass Defendants) *and* Defs.' Reply at 2, 10 (similar) *with* U.S. Reply at 14-16 & nn.9-10 (explaining that the recommended corrective statements were chosen based upon such criteria as capturing attention, credibility, clearly communicating the Court's desired information about each topic area, increasing accurate knowledge, potential for public impact, and avoiding negative unanticipated results) *and* U.S. Surreply at 14-15 (similar).

Similarly, Defendants' attacks on the recommended corrective statements as "misleading" (and therefore, according to Defendants, "not factual") are of necessity fact-bound. The recommended corrective statements largely echo or paraphrase the Court's findings of fact, so many of Defendants' challenges to their factual accuracy amount to attacks on the Court's factual findings. For example, the Court found that "Defendants falsely denied that they manipulated cigarette design and composition so as to assure nicotine delivery levels which create and sustain addiction." *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1, 858, (D.D.C. 2006) (capitalization altered from section title), *aff'd in relevant part*, 566 F.3d 1095 (D.C. Cir. 2009) (*per curiam*), *cert. denied*, 561 U.S. ___, 130 S. Ct. 3501 (2010); *see also id.* at 923 (finding that Defendants "manipulate cigarettes to provide sufficient nicotine delivery to create and sustain addiction"). The United States' recommended statement about addiction includes the sentence, "We manipulated cigarettes to make them more addictive." Even though the sentence does not mention nicotine, Defendants object that it "is misleading because it suggests that Defendants spike cigarettes with additional nicotine," which they contend in turn makes the sentence "not ' "factual." ' " Defs.' Resp. at 18 (citation omitted). Resolving such fact-bound objections can plainly proceed without waiting for the resolution of the *RJR v. FDA* litigation.

        **b.**      **Postponing decision in this case would give Defendants relief that the Court has already refused to give them**

Defendants have been trying to escape this Court's corrective-statement remedy since the Court first ordered it in August 2006. As the Court's Final Order required, Defendants submitted proposed corrective statements in October 2006; but they retracted their earlier proposals in late 2010, and argued that, if the Court were to impose any corrective statements at

all to prevent them from engaging in future fraud and deception, such statements should be limited to the text-only portions of the public-health warnings prescribed under the Tobacco Control Act for every cigarette manufacturer and distributor in the country. Certain Defs.' Status Rep. at 13 (R. 5841; filed 11/24/2010).[1] Defendants did not address the fact that, in findings upheld on appeal, this Court found them to have engaged in a decades-long pattern of misleading the public about the dangers of tobacco, and that, absent intervention by the Court, they were reasonably likely to continue doing so.

      To the same effect, when Defendants sought vacatur a few months later, they argued at length that even if the Tobacco Control Act did not remove the Court's jurisdiction over the entire case, and did not oblige the Court entirely to defer to the FDA's primary jurisdiction, the Tobacco Control Act did require the Court to vacate three specific portions of its injunction, one of which was the corrective-statement remedy. Defs.' Mot. for Vacatur at 23, 27-30 (R. 5880; filed 3/3/2011); Defs.' Reply in Supp. at 16-18 (R. 5920; filed 4/15/2011). The Court found that this argument was "essentially a reworking of Defendants' subject matter jurisdiction and primary jurisdiction arguments," and failed for the same reasons. *United States v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 68, 81 (D.D.C. 2011) (hereafter "*US v. PM* Vacatur Decision"), *notice of appeal filed*, No. 11-5145 (D.C. Cir. June 3, 2011). In particular, the Court observed that "[t]he text of the statute states, '[n]othing' in the Tobacco Control Act 'shall be construed to . . . affect any action pending in Federal, State, or tribal court.' Pub. L. No. 111-31, § 4(a), 123 Stat. at 1782, *codified at* 21 U.S.C. § 387 note. There can be no doubt that Congress was well aware of this case when drafting that language, given that the statute cites to this case three times

---

[1] BATCo was the only defendant that did not join the entire status report.

in its early sections. Congress, therefore, assumed and intended that this Court would retain control over remedial decisions." *Id.* at 80 (citations and footnote omitted). The same principle applies here; just as Congress expected that this Court's control over its remedial decisions would not be affected by the Tobacco Control Act, so it would expect that this Court's implementation of those remedial decisions would not be affected by court challenges to the Tobacco Control Act's warnings.

One of Defendants' arguments for this Court to vacate its entire injunction was the fact of FDA's still-pending rule-making proceeding "regarding proposed graphic warnings on cigarette packages and advertising." *Id.* at 81. This Court found Defendants' arguments to relinquish jurisdiction to the FDA "particularly unconvincing" because Defendants were "simultaneously and vigorously challenging, both in a separate law suit and in administrative proceedings, many of the provisions of the Tobacco Control Act—including provisions [such as the provisions for cigarette-pack and advertising warnings] which they claim render them unlikely to commit future violations of RICO." *Id.* at 76.

In other words, the tobacco companies' ongoing challenges to the Tobacco Control Act's warnings *reinforced* this Court's conclusion that those warnings did not diminish the Court's jurisdiction and authority to issue injunctive relief, specifically including corrective statements. This view remains correct. The Court should not postpone its corrective-statement remedy due to those same ongoing challenges. To decide otherwise has the potential to give the tobacco companies several more years of relief from corrective statements, based on reasoning that the Court has already considered and rejected.

2.  **POSTPONING DECISION ON THE CORRECTIVE STATEMENTS WOULD BE CONTRARY TO THE PUBLIC INTEREST, AS THIS COURT HAS PREVIOUSLY FOUND**

Additional considerations counsel in favor of the Court's moving forward with the corrective-statement remedy, rather than postponing decision. The Court has previously recognized that the public interest supports moving forward rather than deferring action. In rejecting Defendants' 2006 motion to stay the Court's injunction pending appeal, the Court stated that "[e]very provision of the Order is designed to prevent and restrain Defendants from repeating their past violations of the statute." *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 988, 990 (D.D.C. 2006). Delaying implementation of the remedial order, the Court held, would "directly and seriously harm[]" "smokers, potential smokers, [and] young people exposed to Defendants' extensive and ubiquitous advertising and marketing campaigns." *Id.*[2]

As to this remedy in particular, the Court found in its Final Decision that a corrective-statement remedy was "necessary to prevent and restrain [Defendants] from making fraudulent public statements on smoking and health matters in the future," and would "prevent Defendants from continuing to disseminate fraudulent public statements and marketing messages." 449 F. Supp. 2d at 926, 927. After the United States and Intervenors encouraged basic consumer

---

[2] While Defendants have not asked the Court to defer action in this case pending the eventual outcome of the *RJR v. FDA* litigation, any such motion would fail. Deferring proceedings in one case until the resolution of another would require the Court both to find "a pressing need," *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936), and also to make "a balanced finding that such need overrides the injury to the parties being stayed," *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971). If there is even a "fair possibility" that postponing action "will work damage to some one else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *Am. Ctr. for Civil Justice v. Ambush*, 794 F. Supp. 2d 123, 129-30 (D.D.C. 2011) (quoting and applying same standard); *Feld Entm't Inc. v. A.S.P.C.A.*, 523 F. Supp. 2d 1, 3 (D.D.C. 2007) (same). Defendants could not pass this test were they to seek a stay until *RJR v. FDA* was resolved.

market-research studies on the various proposed corrective statements, the Court stated that it was "extremely concerned" about the prospect of additional delays before implementing the corrective-statement remedy.  Order #1025 at 2 (R. 5784; issued 10/19/2006).  On appeal, the D.C. Circuit upheld the corrective-statement remedy, finding that "[r]equiring Defendants to reveal the previously hidden truth about their products will prevent and restrain them from disseminating false and misleading statements, thereby violating RICO, in the future." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1140 (D.C. Cir. 2009) (*per curiam*), *cert. denied*, 561 U.S. ___, 130 S. Ct. 3501 (2010).

The urgency for this Court's corrective-statement remedy remains.  In the meantime, there is no likelihood that the constitutional challenges to the Tobacco Control Act warnings will be resolved soon.  On November 7, 2011, the district court in *RJR v. FDA* issued a preliminary injunction staying implementation of the Tobacco Control Act's warnings (image and textual alike) until 15 months after that court's eventual final disposition.  While FDA has appealed from that preliminary-injunction decision, cross-motions for summary judgment remain pending before the district court, and the prospect of appeal looms over the district court's eventual final judgment.  Even on the recently-filed preliminary-injunction appeal, a panel decision from the D.C. Circuit could well be followed by motions for rehearing or *en banc* rehearing, and then by *cert*. petitions to the United States Supreme Court.

When denying Defendants' vacatur motion in this case nearly six months ago, the Court observed that "[i]t has been well over eleven years since this case was filed and nearly five years since this Court found that Defendants 'knowingly and intentionally engaged in a scheme to defraud smokers and potential smokers, for purposes of financial gain, by making false and

fraudulent statements, representations, and promises.'" *US v. PM* Vacatur Decision, 787 F. Supp. 2d at 82 (internal citation omitted). It is now more than twelve years since this case was filed, and over five years since the Court found Defendants liable and ordered a corrective-statement remedy. The corrective-statement remedy should be implemented now.[3]

## CONCLUSION

For the reasons stated above, the United States respectfully urges the Court not to defer its consideration of this important remedy.

Dated: December 20, 2011
       Washington, D.C.

Respectfully submitted,

TONY WEST
Assistant Attorney General

MAAME EWUSI-MENSAH FRIMPONG
Acting Deputy Assistant Attorney General

MICHAEL BLUME, Director
KENNETH JOST, Deputy Director
Consumer Protection Branch

___/s/_____
DANIEL K. CRANE-HIRSCH
Trial Attorney
Consumer Protection Branch, Civil Division
United States Department of Justice
PO Box 386
Washington, DC  20004-0386
Telephone: 202-616-8242
Facsimile: 202-514-8742
E-mail address: daniel.crane-hirsch@usdoj.gov

---

[3] For the same reasons, the United States encourages the Court to address the pending issues before it concerning point-of-sale placements of corrective statements, by ordering Defendants to include header and countertop displays of the corrective statements among the requirements they impose upon retailers participating in their retail programs.