UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 99-CV-2496 (GK) |
| | ) | Next scheduled court appearance: NONE |
| and | ) | |
| | ) | |
| TOBACCO-FREE KIDS ACTION FUND, | ) | |
| *et al.*, | ) | |
| | ) | |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHILIP MORRIS USA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PUBLIC HEALTH INTERVENORS' RESPONSE
TO THE COURT'S NOVEMBER 17, 2011 ORDER**

The Court has directed the parties to submit their views on whether the Court should

defer a resolution of the corrective statements remedy in light of pending litigation concerning

the Family Smoking Prevention and Tobacco Control Act of 2009 ("Family Smoking Prevention

Act" or "FDA Act"), Pub. L. No. 111-31, 123 Stat. 1776 (June 22, 2009).  DN 5950.   For many

reasons the answer is no.

The Court has already correctly determined that the remedies imposed in this case remain

necessary and appropriate irrespective of the Family Smoking Prevention Act.  *See United States

v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 68 (D.D.C.  2011) (denying Defendants' motion for

vacatur).  This is particularly true with regard to the corrective statements remedy, which the

Court of Appeals explained will "prevent and restrain [Defendants] from making fraudulent

public statements on smoking and health matters in the future."  *United States v. Philip Morris*

*USA, Inc.*, 566 F.3d 1095, 1140 (D.C. Cir. 2009).  In short, while litigation over the Family

Smoking Prevention Act is likely to continue for years, corrective statements are needed *now* to

prevent and restrain Defendants from their continuing misconduct, which the Court has already

found – and the Court of Appeals affirmed – is likely to continue.  566 F.3d at 1134 (the record

"amply support[s]" the "conclusion that Defendants 'continue to make false and misleading

statements . . . .") (other citations omitted); *see also, e.g.*, *United States v. Philip Morris USA,*

*Inc.*, 449 F. Supp. 2d 1, 910 (D.D.C. 2006) ("As Defendants' senior executives took the witness

stand at trial, one after another, it became increasingly clear that these Defendants have not, as

they claim, ceased their wrongdoing or, as they argued throughout the trial, undertaken

fundamental or permanent institutional change").

## Background

Upon finding that Defendants had engaged in a deliberate, decades-long campaign to

deceive the American public, and especially youth, concerning the adverse health effects and

addictiveness of cigarettes, this Court determined that several specific remedies were necessary

to prevent and restrain these ongoing violations.  These included corrective statements, which the

Court designed to "use[ ] the same vehicles which Defendants have themselves historically used

to promulgate false smoking and health messages."  449 F. Supp. 2d at 928.  As the Court

explained, these statements are necessary to prevent and restrain "Defendants from continuing to

disseminate fraudulent public statements and marketing messages by requiring them to issue

truthful corrective communications."  *Id.* at 927.

The D.C. Circuit agreed, emphasizing that "for over fifty years, Defendants violated

RICO by making false and fraudulent statements to consumers about their products," and are

"reasonably likely to commit similar violations in the future."   566 F.3d at 1144.   In light of this

record, the Court of Appeals had no difficulty concluding that corrective statements are

appropriate "to counteract these anticipated violations." *Id.*

Shortly after the Court of Appeals' ruling Congress passed the FDA Act based on the

conclusion that tobacco products should be subject to "the type of ordinary product regulation

that applies to most other consumer products." H.R. Rep. No. 111-058, pt. 1, at 2, 4 (2009).

Among other provisions, the FDA Act mandates specific text warning labels on cigarette packs,

and directs that FDA to issue regulations for accompanying "color graphics depicting the

negative health consequences of smoking."   FDA Act, § 201(d).

In passing the statute Congress was extremely cognizant of this Court's ruling. *See id.* §§

2(47)-2(49) (findings referring to this Court's ruling that Defendants "continue to target and

market to youth"; "dramatically increased their advertising and promotional spending in ways

that encourage youth to start smoking"; and "have designed their cigarettes to precisely control

nicotine delivery levels and provide doses of nicotine sufficient to create and sustain addiction

while also concealing much of their nicotine-related research").   However, Congress made

absolutely clear that the new law *should not impact this case*, inserting a specific statutory

provision that "[n]othing in this Act . . . *shall be construed to  . . . affect any action pending in*

*Federal, State, or tribal court, or any agreement, consent decree, or contract of any kind.*" *Id.* §

4 (emphasis added).

At the same time they are insisting to this Court that the FDA Act obviates the need for

corrective statements remedies, Defendants and other tobacco companies have brought several

challenges to the statute.   *See Commonwealth Brands, Inc. v. United States*, 678 F. Supp. 2d

512, 521 (W. D. Ky. 2010); *R.J. Reynolds Tobacco Co. v. FDA*, No. 11-1482, 2011 WL 5307391

(Nov. 7, 2011).  In *Commonwealth Brands*, the district court upheld the vast majority of the

statute, but found that the prohibition on color and graphics in advertising, and the ban "on

claims implying that a tobacco product is safer because of FDA regulation," are unconstitutional

infringements on the tobacco companies' First Amendment rights.  678 F. Supp. 2d at 541.   In

*R.J. Reynolds*, the Court preliminarily enjoined FDA's graphic warning regulations, finding that

the strictest level of First Amendment scrutiny applied.  2011 WL 5307391.  The former case is

pending on appeal, and the latter one has yet to be decided on the merits, although the

government has appealed the preliminary injunction ruling.

In the present case, earlier this year the government made specific recommendations to

implement the corrective statements remedy, and both the government and the Public Health

Intervenors have filed briefs explaining why the particular proposed language is appropriate and

necessary to prevent and restrain further RICO violations.  *See*, DN 5875; 5883; 5890; 5891;

5930.[1]  These briefs have also responded to Defendants' arguments that the Court should not

require any corrective statements in light of the textual warnings mandated by the FDA Act.  *See,*

*e.g.,* DN 5890 at 17.

Defendants separately filed a motion to vacate the Court's opinion, including the Court's

remedies, in light of the FDA Act, claiming that implementation of the statute makes it

impossible for the Court to continue to conclude that future RICO violations are likely.  DN

---

[1]       The Public Health Intervenors joined in recommending almost all of the
statements provided by the United States, but have proposed an alternative statement for second-
hand smoke, *see* DN 5883 at 19-21, and have suggested a single statement covering all five
topics for newspapers.  *Id.* at 7-9.

5880.   In June, 2011, the Court denied the motion.  787 F. Supp. 2d 68 ("Vacatur Ruling").

Relying on the extensive findings of misconduct that underlie the Court's ruling; Defendants'

prior pleas of reform based on, *inter alia*, the Master Settlement Agreement ("MSA"); and the

fact that at the same time Defendants are seeking vacatur based on the FDA Act, they are also

challenging the FDA Act in separate proceedings, the Court concluded that there is no reason "to

suggest that this Court should revisit, let alone vacate, over four thousand factual findings, as

well as the injunctive provisions contained in the Remedial Order # 1015."  *Id.* at 77.  The Court

similarly rejected Defendants' argument that the Court should defer to the primary jurisdiction of

the FDA.  *Id.* at 77-82.

## Discussion

### A.   Defendants' Misleading Statements Continue Years After This Court's Ruling.

This Court's ruling that Defendants have engaged in massive RICO violations was issued

more than five years ago.  In considering the corrective statements remedy, the Court explained

that although some of Defendants' public positions on smoking and health had changed over

time:

> evidence in the record supports a finding that notwithstanding Defendants' self-serving
> claims that they have been more forthcoming on smoking and health issues, and
> notwithstanding a general prohibition in the MSA precluding [Defendants] from making
> 'any material misrepresentation of fact regarding the health consequences of using any
> Tobacco Product," Defendants *continue to make affirmative statements on smoking and
> health issues that are fraudulent*.

449 F. Supp. 2d at 926 (emphasis added).  More than five years later, it is evident from a cursory

review of Defendants' own websites that they *continue* to spread misleading information on these

topics.

For example, in explaining that Defendants' deceptions are continuing, in 2006 the Court noted that Philip Morris's ("PM") website statement "on addiction omits the material information that nicotine delivered by cigarettes is a drug and that it is addictive." *Id.* at 926. This omissions continues, for, as of December, 2011, Philip Morris's website page on "Smoking and Health Issues" *still* does not inform the public that nicotine is in fact both a drug and addictive. Rather, it simply states (under the "addiction" heading) that "PM USA agrees with the overwhelming medical and scientific consensus that cigarette smoking is addictive. It can be very difficult to quit smoking, but this should not deter smokers who want to quit from trying to do so." *See* Attachment 1 (printed from http://www.philipmorrisusa.com/en/cms/Products /Cigarettes/Health_Issues/default.aspx?src=home on December 19, 2011).

In addition, in finding that Defendants "have not ceased engaging in unlawful activity," in 2006 the Court noted by example that Defendants "continue to fraudulently deny the adverse health effects of secondhand smoke which they recognize internally . . . ." 449 F. Supp. 2d at 910. As to PM in particular, the Court noted that PM and others "say that they don't take a position [on this issue] and that the public should follow the recommendations of the public health authorities." *Id.* at 801. Five years later, Defendants' deceptions on this topic also continue.

Thus, on its website, PM states only that "*Public health officials have concluded* that secondhand smoke from cigarettes causes disease," Attachment 1 (emphasis added), the clear implication being that PM *disagrees* with this conclusion, despite the fact that, as the Court concluded, the company internally acknowledges precisely these adverse health effects. 449 F. Supp. at 708 ("research funded by Defendants themselves provided evidence confirming the

6

public health authorities' warnings that nonsmokers exposure to cigarette smoke was a health hazard"). The same is true for Lorillard. *See* Attachment 2 (printed from http://www.lorillard.com/responsibility/smoking-and-health/ on December 19, 2011) (similarly referring to conclusions of the Surgeon General on secondhand smoke); Attachment 3 (printed from http://www.rjrt.com/prinbeliefs.aspx on December 19, 2011) (R.J. Reynolds website stating only that "[a]dults who smoke should avoid exposing *minors* to secondhand smoke," without confirming the health impacts on minors and others exposed) (emphasis added).

The Court also made extensive findings that Defendants recognize that "low-tar" and "light" cigarettes are not safer than other cigarette brands, but that Defendants nonetheless promoted these brands "as less harmful alternatives to full-flavor cigarettes." *E.g.* 449 F. Supp. 2d at 560 (FF 2628). As the Public Health Intervenors have previously explained, in response to the ban on such cigarette descriptors, Defendants have switched to color-coded brands, which they have informed consumers are the "same" as the "light" brands they previously purchased. *See* DN 5890 at 18 (discussing Philip Morris advertising that explains "Your Marlboro Lights package is changing, but your cigarette stays the same. In the future, ask for Marlboro in the gold pack") (quoted in Duff Wilson, "F.D.A. Seeks Explanation of Marlboro Marketing," N.Y. Times, June 17, 2010).

Five years later, on its website R.J. Reynolds informs consumers that "[t]he risk for serious diseases is *significantly affected by the type of tobacco product* and the frequency, duration and manner of use," *see* Attachment 3 – thus continuing to suggest that smokers may be able to *reduce* their risks by choosing a particular "type" of cigarette.

Given this and other ongoing conduct by Defendants – coupled with the fact that, as became amply clear in the briefing on corrective statements earlier this year, Defendants *continue* to maintain that they have not engaged in any wrongdoing, *see*, *e.g.* DN 5881 at 19 (claiming that Defendants do not manipulate nicotine levels)  – it could not be clearer that the corrective statements remedy is necessary to prevent and restrain Defendants' activities.  The statements will require Defendants to disseminate factually accurate information on the specific topics on which they have been misleading the public for decades, such as the role of nicotine in addiction, the adverse health effects of secondhand smoke, and the fact that no cigarettes are safer than others.  Defendants continuing statements on these topics only further reinforce that these statements should be required *now*.

**B.**     **The Pending Litigation Over The FDA Act Does Not Bear On The Fact That Corrective Statements Are Necessary Now To Prevent And Restrain Defendants' Misconduct.**

Nothing about the pending litigation over the FDA Act and its implementing regulations changes the urgency of implementing this remedy as soon as possible.  First and foremost, as it did in denying vacatur, the Court should give full effect to Congress's  instruction that "[n]othing in this Act . . . shall be construed to  . . . affect any action pending in Federal, State, or tribal court, or any agreement, consent decree, or contract of any kind."  FDA Act, § 4 (emphasis added).  The obvious way to ensure that the FDA Act will not "affect" this action is not to allow the Defendants' litigation over the statute to delay the imposition of remedies in this case. *Cf. Haglund v. Philip Morris, Inc.*, 2009 WL 3839004 (Mass.Super. Oct. 20, 2009) (finding state law claims not impacted by FDA Act in light of FDA Act language that the Act should not be interpreted to affect such claims).

More generally, the Court should not delay the imposition of this remedy for all the reasons the Court rejected Defendants' bid for vacatur. Thus, since the Court has already concluded that continuing violations remain likely *despite* the FDA Act, the ongoing litigation over the Act should not serve as a basis to delay imposing the Court's remedies. *See* 787 F. Supp. 2d at 74-75 (explaining that in seeking vacatur because of the FDA Act "Defendants offer no facts which would warrant revisiting the findings of this Court – findings that were affirmed by the Court of Appeals" – that "Defendants have not ceased engaging in unlawful activity" and that their "RICO violations will continue in most of the areas in which they have committed violations in the past") (other citations omitted),

The critical point, which the Court also recognized in rejecting vacatur, is that "regulation under the FDA Act and any injunctions issued by this Court *target different conduct*." *Id.* at 75 (emphasis added). While the FDA Act is designed "to promote cessation to reduce disease risk and the social costs associated with tobacco-related diseases," FDA Act, § 3(a9), this Court's remedies are designed to "'prevent and restrain violations of' RICO." 787 F. Supp. 2d at 76 (quoting 18 U.S.C. § 1964(a)). Therefore, because the FDA Act does not bear on Defendants' ongoing conduct, the Defendants' legal challenges to the statute certainly should not be a basis for delaying the implementation of this Court's much needed corrective statements remedy. *See also* Defs. Corrective Statements Response Brief (DN 5881) at 15 (recognizing that the FDA Act's purpose is "to promote cessation to reduce disease risk and the social costs associated with tobacco-related diseases").

Indeed, of critical importance is the fact that unlike the public health warnings to be issued under the FDA Act, this Court's corrective statements should require Defendants to

9

inform the public *about their past misbehavior* – a feature that will be essential to counterbalance the decades of deception and misinformation that the Defendants have perpetuated at the expense of millions of consumers, and particularly youth.  As Plaintiffs have detailed, providing this truly "corrective" information to consumers – and especially young people – will be vital to the effectiveness of the corrective communications at preventing and restraining *further* misconduct.  *See* 449 F. Supp. 2d at 927; 566 F.3d at 1140 ("as the district court observed and the interveners argue here, requiring Defendants to issue corrective statements will prevent and restrain them from making fraudulent public statements on smoking and health matters in the future") (other citations omitted).   This will not be an element of the communications required under the FDA Act, regardless of the outcome of the pending litigation.

Finally, the mere fact that First Amendment arguments are being raised against both this Court's corrective statement remedy and the FDA Act certainly does not counsel in favor of delaying resolution of corrective statements until such matters have been completely resolved (including on appeal) in the other case pending in this Circuit.  Should any future decisions regarding that case – such as, for example, a ruling in the Court of Appeals – become relevant to any issues remaining before this Court, they can be taken into account at that time, just as the ultimate resolution of the issues this Court is considering regarding the corrective statement remedy may inform the resolution of the challenge to the FDA Act (which has not yet even been heard on summary judgment).   Accordingly, the mere fact that both cases involve the First Amendment issues is not a reason to delay the corrective statements remedy in this case.

## <u>Conclusion</u>

For the foregoing reasons, the Court should not delay resolution of the corrective statements remedy in light of the ongoing litigation under the FDA Act and its implementing regulations or for any other reason.  Rather, to prevent and restrain further misconduct, the Court should order Defendants to issue corrective statements without delay.

Respectfully submitted,

/s/ *Howard M. Crystal*
Howard M. Crystal
(D.C. Bar No. 446189)
Katherine A. Meyer
(D.C. Bar No. 244301)

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Avenue, Suite 700
Washington, DC 20009
202-588-5206
hcrystal@meyerglitz.com

December 20, 2011                Attorneys for the Public Health Intervenors

11