UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 99-2496 (GK) |
| ) | |
| v. ) | Next Court Appearance: |
| ) | October 15, 2012 |
| PHILIP MORRIS USA INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**<u>DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING THE GOVERNMENT'S
PROPOSED CORRECTIVE STATEMENTS</u>**

The D.C. Circuit directed this Court to confine corrective "statements to 'purely factual and uncontroversial information,' geared towards" preventing future consumer deception. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1144 (D.C. Cir. 2009) (per curiam) (quoting *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985)) (citation omitted). In *R.J. Reynolds Tobacco Co. v. Food & Drug Administration*, _ F.3d _, 2012 WL 3632003 (D.C. Cir. Aug. 24, 2012) ("*RJRT*"), the D.C. Circuit invalidated a Food and Drug Administration ("FDA") rule that required cigarette manufacturers to display graphic warnings on cigarette packages and advertisements, reasoning, among other things, that the warnings were *not* "purely factual and uncontroversial" statements under *Zauderer*. *Id.* at *8. *RJRT* confirms that the Government's proposed Statements A – D violate the D.C. Circuit's mandate and the First Amendment.

**I.     Overview of the *RJRT* Decision.**

In invalidating the FDA's graphic-warnings requirement, *RJRT* held that the graphic warnings could not be sustained under *Zauderer* for two reasons. First, the D.C. Circuit held that

*Zauderer* was limited to disclosure requirements "designed to correct misleading commercial speech," which the graphic warnings were not designed to do. 2012 WL 3632003, at *5. Second, it held that, even if the *Zauderer* standard were applicable to warning labels that were intended to decrease smoking rates, rather than "combat specific deceptive claims," the FDA's proposed graphic warnings did not "constitute the type of 'purely factual and uncontroversial' information or 'accurate statement[s]' to which the *Zauderer* standard may be applied." *Id.* at *7 (quoting *Zauderer*, 471 U.S. at 651) (citation omitted).

In support of the latter conclusion, the D.C. Circuit explained that, under *Zauderer*, a compelled disclosure must be both "indisputably accurate and not subject to misinterpretation by consumers." *RJRT*, 2012 WL 3632003, at *7. It then found that the graphic warnings were neither. They were not "purely factual," the court explained, because the images were "primarily intended to evoke an emotional response or, at most, shock the viewer into retaining the information in the text warning." *Id.* Indeed, the "inflammatory images and the provocatively-named [1-800-QUIT-NOW] hotline" could not possibly "be viewed as pure attempts to convey information to consumers," but, instead, were "unabashed attempts to evoke emotion (and perhaps embarrassment) and browbeat consumers into quitting." *Id.* at *8. In addition, "many of the images chosen by FDA could be misinterpreted by consumers"—"[f]or example, the image of a man smoking through a tracheotomy hole might be misinterpreted as suggesting that such a procedure is a common consequence of smoking." *Id.* at *7. Thus, while "none of the[ ] images [was] patently false, they certainly d[id] not impart purely factual, accurate, or uncontroversial information to consumers." *Id.* at *8.

Because the graphic warnings did "not fall within the narrow enclave carved out by *Zauderer*" for "'purely factual and uncontroversial'" disclosures, *RJRT*, 2012 WL 3632003, at

*8, the D.C. Circuit analyzed—and invalidated—them under the traditional standard for commercial-speech restrictions set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980).  In particular, after closely scrutinizing the empirical evidence on which the FDA relied—including studies about the effect of graphic warnings on smoking rates in other countries and an estimate that graphic warnings would reduce smoking rates in the United States by no more than 0.088%—the court concluded that the FDA "ha[d] not provided a shred of evidence . . . showing that the graphic warnings will 'directly advance' its interest in reducing the number of Americans who smoke."  *RJRT*, 2012 WL 3632003, at *10.  At most, the FDA had introduced evidence that graphic warnings may cause smokers "to think— or think more—about quitting smoking," but such "'speculation and conjecture'" about smokers' intentions were insufficient to "satisfy [the FDA's] First Amendment burden."  *Id.* (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)).[1]

## II.   *RJRT* Confirms That The Government's Proposed Corrective Statements Violate The D.C. Circuit's Mandate.

The D.C. Circuit directed this Court to confine the corrective "statements to 'purely factual and uncontroversial information,' geared towards" preventing future consumer deception.

---

[1] In *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509 (6th Cir. 2012), a divided panel of the Sixth Circuit rejected a facial challenge—brought by several defendants in this case as well as other parties—to the provision of the Family Smoking Prevention and Tobacco Control Act requiring the FDA to promulgate a graphic-warnings rule.  *Id.* at 569.  In light of the facial nature of the challenge, the Sixth Circuit required the plaintiffs "to establish that . . . pictures can *never* be factually accurate, only written statements can be."  *Id.* at 559 (emphasis added).  In concluding that the plaintiffs had not met that burden, the Sixth Circuit had no occasion to address the constitutionality of the particular warnings that were selected by the FDA and subsequently invalidated by the D.C. Circuit.  *Id.* at 552-54.  *But see id.* at 530 (Clay, J., dissenting) (concluding that the graphic-warnings provision of the Family Smoking Prevention and Tobacco Control Act is unconstitutional under *Zauderer*).  In any event, to the extent the Sixth Circuit's reasoning conflicts with the D.C. Circuit's holding in *RJRT*, it is the D.C. Circuit's decision that governs this Court's disposition here.

*Philip Morris USA Inc.*, 566 F.3d at 1144 (citation omitted).  The Government's proposed Corrective Statements A – D violate this standard for the same reasons as the emotionally charged graphic warnings struck down in *RJRT*.

First, the Government's proposed Corrective Statements A – D are not confined to conveying purely factual and uncontroversial health information to consumers.  Rather, like the graphic warnings, they are intended "to evoke an emotional response" from the public and "embarrassment" in Defendants—*i.e.*, to generate popular disapproval of, and anger toward, the tobacco industry based on past conduct.  *RJRT*, 2012 WL 3632003, at *7, *8.  In particular, proposed Statements A – D all contain language that, under any reasonable interpretation, would require Defendants to make unprecedented statements of self-condemnation confessing that they deceived the American public about the health risks and addictiveness of smoking.  Such statements include that Defendants are being "requir[ed] . . . to tell the truth about cigarette smoking" (unmistakably implying that Defendants previously withheld the truth), that they lied to Congress when testifying "under oath that [they] believed nicotine is not addictive," that they "falsely marketed low tar and light cigarettes as less harmful than regular cigarettes to keep people smoking and sustain [their] profits," and that they falsely "denied that [they] controlled the level of nicotine delivered in cigarettes."  The purpose of these compelled statements is clear from the Government's prior briefing, where it defended its proposed statements as more effective than those proposed by Defendants precisely because they elicited feelings of condemnation, revulsion, and anger in viewers.  *See* Gov't Reply 20 (D.E. 5891) (reproducing statement from focus-group participant who stated that "I was one of those people that switched to light.  I don't smoke now, for the last year and a half but *it ticks me off that they did lie*") (emphasis added).

4

Indeed, while the Government may claim that at least some of its proposed statements do not literally compel Defendants to utter the words, "we lied," there can be no question that the proposed statements are subject to that interpretation. In fact, the expert report of Dr. Kelly Blake—which the Government submitted in support of its proposed statements—confirms as much. The report—and the focus-group transcripts appended to the Government's prior briefing—contain numerous quotations from focus-group participants who explicitly stated that this was precisely how they interpreted the statements. *See, e.g.*, Blake Report ¶ 132 (D.E. 5875-1) ("'I like the part of [the Government's proposed Statement C] how they're admitting they were falsely advertising that the cigarettes were light'").

Second, in addition to being naked appeals to emotion, the Government's proposed Corrective Statements A – D are not factual because they are "subject to misinterpretation by consumers." *RJRT*, 2012 WL 3632003, at *7. For example, Statement B would require Defendants to admit that they "manipulated cigarettes to make them more addictive," which plainly is open to the misinterpretation that Defendants spiked their cigarettes with additional nicotine to increase their addictiveness. Similarly, Statement D asserts that ammonia (among other ingredients) is added to cigarettes, which is subject to the misinterpretation that all of Defendants' cigarettes are presently made with ammonia as an added ingredient, which is not correct. Other similar examples abound. *See* Defs.' Response to Gov't Proposed Corrective Statements (D.E. 5881) app. (detailing other potential inaccuracies in the Government's proposed Statements A – D).

In short, *RJRT* confirms that the Government's proposed Statements A – D are not "purely factual and uncontroversial" under *Zauderer* because they use inflammatory and misleading language that is designed to evoke an emotional response from consumers and

5

generate anger toward tobacco companies, rather than to impart accurate smoking-related information that would prevent future deception. These proposed statements therefore cannot be reconciled with the D.C. Circuit's mandate in this case.

### III. *RJRT* Confirms That The Government's Proposed Corrective Statements Violate The First Amendment.

For similar reasons, the Government's proposed Corrective Statements A – D also violate the First Amendment. Like the graphic warnings, the Government's proposed Corrective Statements A – D must, at a minimum, satisfy the requirements of *Central Hudson* because they do "not fall within the narrow enclave carved out by *Zauderer*" for "'purely factual and uncontroversial'" disclosures. *RJRT*, 2012 WL 3632003, at *8.[2] The Government therefore bears the burden of proving that its proposed statements (1) will "directly advance" its interests "to a material degree," *id.* at *11 (internal quotation marks omitted), and (2) are narrowly tailored to further those interests, *Cent. Hudson*, 447 U.S. at 565. Here, the D.C. Circuit has defined the Government's interest in requiring corrective statements as follows:

> [R]equiring Defendants to issue corrective statements will "prevent and restrain them from making fraudulent public statements on smoking and health matters in the future." Defendants will be impaired in making false and misleading assurances about, for instance, smoking-related diseases or the addictiveness of nicotine—as the district court found they continue to do—if they must at the same time communicate the opposite, truthful message about these matters to consumers. Requiring Defendants to reveal the previously hidden truth about their products will prevent and restrain them from disseminating false and misleading statements, thereby violating RICO in the future.

---

[2] Defendants maintain their position that the Government's proposed corrective statements should be subject to strict scrutiny because they would compel Defendants to publicly shame themselves by admitting allegations of past wrongdoing that they vigorously contested and that have been rejected by many other courts. Where the Government compels an unpopular group to undertake public self-denigration in an effort to generate popular hostility and anger toward that group, the Government's conduct should be subject to the most exacting constitutional scrutiny. *See* Defs.' Response to Gov't Proposed Corrective Statements at 21 n.7.

*Philip Morris USA Inc.*, 566 F.3d at 1140 (citations omitted).

The Government, however, cannot possibly demonstrate that its proposed Corrective Statements A – D will directly and materially advance this interest or that they are narrowly tailored to that purpose. Rather, just as the FDA failed in *RJRT* to establish that its proposed graphic warnings would be more effective at "advanc[ing] its interest in reducing smoking rates" than current textual warnings, 2012 WL 3632003, at *11, here, the Blake Report—the Government's only evidence—demonstrates that the Government has failed to establish that its proposed statements would be more effective at advancing its interest in preventing future consumer deception than the alternative statements proposed by Defendants or the existing Surgeon General's warnings (which were used as the control by Dr. Blake).

Most significantly, as to each of the various statements tested, Dr. Blake asked participants the following question: "After seeing this statement, if you were later to hear an opposite claim, would you believe it?" Blake Report ¶ 161 fig. V7. This is the only question Dr. Blake asked that even approximates a test for whether any of the proposed statements would further the Government's interest in preventing Defendants from making future false statements by "at the same time [requiring them to] communicate the opposite, truthful message about these matters to consumers." *Philip Morris USA Inc.*, 566 F.3d at 1140. And on this question, Dr. Blake concedes that *all* of the tested statements performed well, including *all* of the statements proposed by Defendants. Blake Report ¶ 182. Indeed, on this measure, Defendants' proposed statements performed as well as or *better* than the Government's:

- Topic A (the negative health effects of smoking): The corrective statements proposed by PM USA and Reynolds, as well as the Surgeon General's warning, all performed better than the corrective statement proposed by the Government—in fact, the Government's proposal performed *the worst* of all the statements tested. Blake Report app. C1, tbl. 4A.

- <u>Topic B (the addictiveness of smoking)</u>: The corrective statement proposed by PM USA and the Surgeon General's warning were again more effective than the corrective statement proposed by the Government.  Blake Report app. C2, tbl. 4B.

- <u>Topic C ("low tar" and "light" cigarettes)</u>: PM USA's proposal performed nearly as well as the Government's proposal, Blake Report app. C3, tbl. 4C.

- <u>Topic D (manipulation of cigarette design)</u>: PM USA's proposed statement performed better than the Government's proposal.  Blake Report app. C4, tbl. 4D.

Because the results were not improved by inclusion of the Government's proposed inflammatory language, that language cannot be said to materially advance the Government's asserted interest.

Nor can the Government salvage the inflammatory prefatory language of its proposals as necessary to "grab [readers'] attention" and improve their understanding of the information being conveyed.  Gov't Reply 15; *see also* Gov't Surreply 15-19 (D.E. 5930).  The Government's interest here is not in grabbing readers' attention or educating the public.  Rather, it is in preventing future false statements by requiring Defendants to make truthful ones now.  The Government made a similar argument in *RJRT*, where it contended that the graphic warnings were constitutional because they increased the "'likelihood that consumers will understand and appreciate the substance of the warnings.'"  2012 WL 3632003, at *7.  The D.C. Circuit rejected that argument because, even if it were true, the graphic warnings did not further the Government's interest in reducing smoking rates.  *Id.* at *10.  Thus, the fact that compelled speech might capture readers' attention does not authorize the Government to mandate disclosures that condemn, vilify, and shame a particular industry.

In any event, the Blake Report makes clear that the self-denigrating introductory phrases in the Government's proposed Corrective Statements A – D are, at best, only marginally more effective at attracting viewers' attention and promoting comprehension than other alternatives.

8

For example, introductory language attributing the statements to the Surgeon General and National Cancer Institute scored nearly as well on the attention and trustworthiness metrics as the inflammatory language proposed by the Government in its Statements A – D.  Blake Report ¶¶ 217-18.  And, as the Supreme Court recently made clear, "the government does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2741 n.9 (2011).

In short, as in *RJRT*, the Government's own study here establishes that the proposals will *not* "'directly' advance its interest" in preventing future consumer deception "to a material[ly]" greater "degree" than the statements proposed by Defendants, 2012 WL 3632003, at *11, which would convey factual and noncontroversial information about the health effects of smoking without the inflammatory language proposed by the Government.  The Government's study also makes clear that its proposals are not narrowly tailored because there are numerous alternatives that would further the Government's interests as well as or better than its proposals without imposing the same burdens on Defendants' commercial speech and core political speech.  The Government's Statements A – D therefore violate the First Amendment.[3]

## IV.   Evidentiary Hearing.

Finally, for the reasons stated here and in prior briefing, Defendants believe that the Court should reject the Government's proposed statements as a matter of law—they are not "purely factual and uncontroversial" under *RJRT* and *Zauderer*, and even assuming *arguendo*

---

[3] Indeed, even under the more relaxed *Zauderer* standard, "unjustified or unduly burdensome disclosure requirements" cannot survive First Amendment scrutiny because they impose far greater burdens on Defendants' speech than necessary to further the Government's anti-fraud interest.  471 U.S. at 651.  Thus, the Government's proposals cannot survive *any* standard of First Amendment scrutiny.

that the Blake Report is accurate, the Government has not even remotely carried its burden under *Central Hudson*. Defendants respectfully submit, however, that this Court cannot rule in the Government's favor without first permitting limited discovery and an evidentiary hearing. The Government's proposals rest entirely on the Blake Report—it submitted no other evidence or analysis in support of proposed Corrective Statements A – D. Therefore, those proposals cannot be adopted unless, at a minimum, Defendants are permitted to conduct limited discovery regarding the report, including a deposition of Dr. Blake, and then present evidence at an evidentiary hearing regarding the report's validity and reliability. Indeed, the D.C. Circuit's decision in *RJRT* makes clear that the Court should closely scrutinize the report's evidence and opinions, and reject every effort by the Government to rely on "'speculation and conjecture'" to justify its proposed speech restrictions. 2012 WL 3632003, at *10; *see also id.* at *9 ("The requirement that a restriction directly advance the asserted interest is 'critical,' because without it, the government 'could [interfere with] commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.'") (alteration in original).

## CONCLUSION

The Court should reject the Government's proposed Corrective Statements A – D as a matter of law, and direct the parties to mediate and reach agreement on "purely factual and uncontroversial" statements addressing the health risks and addictiveness of smoking. Alternatively, it should permit limited discovery regarding the expert report submitted by the Government in support of its proposed statements, including a deposition of Dr. Blake, and hold an evidentiary hearing on the validity and reliability of Dr. Blake's report.

Dated:  September 24, 2012        Respectfully submitted,

/s/ Miguel A. Estrada
Miguel A. Estrada (D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  (202) 955-8257
Fax:  (202) 530-9016

Beth A. Wilkinson (D.C. Bar No. 462561)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, N.W.
Washington, D.C.  20006-1047
Telephone:  (202) 223-7300
Fax:  (202) 223-7420

Thomas J. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601-9703
Telephone:  (312) 558-6700
Fax:  (202) 558-5700

*Attorneys for Defendants*
*Altria Group, Inc. and Philip Morris USA Inc.*

/s/ Miguel A. Estrada *for*
Noel J. Francisco (D.C. Bar No. 464752)
Robert F. McDermott (D.C. Bar No. 261164)
Peter J. Biersteker (D.C. Bar No. 358108)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

R. Michael Leonard
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
One West Fourth Street
Winston-Salem, NC  27101
Telephone:  (336) 721-3721
Fax:  (336) 733-8389

*Attorneys for Defendant*
*R.J. Reynolds Tobacco Company, individually and as successor by merger to Brown & Williamson Tobacco Corporation*

/s/ Miguel A. Estrada *for*
Michael B. Minton
THOMPSON COBURN LLP
One US Bank Plaza, Suite 3500
St. Louis, Missouri  63101-1693
Telephone:  (314) 552-6000
Fax:  (314) 552-7597

*Attorneys for Defendant*
*Lorillard Tobacco Company*