## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 99-2496 (GK)** |
| | ) | |
| **v.** | ) | **Next Court Appearance:** |
| | ) | **October 15, 2012** |
| **PHILIP MORRIS USA INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### DEFENDANTS' SUPPLEMENTAL REPLY BRIEF REGARDING THE GOVERNMENT'S PROPOSED CORRECTIVE STATEMENTS

This Court granted the parties leave to file supplemental briefs "addressing *pertinent developments* since briefing on [corrective statements] concluded."  Joint Mtn. for Supp. Briefing 1 (D.E. 5981) (emphasis added).  Here, the critical question is whether the Government's proposed warnings are "purely factual and uncontroversial," as the D.C. Circuit held they must be.  *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1144 (D.C. Cir. 2009) (per curiam).  Yet, the Government's supplemental brief devotes only a few sentences to the *most* pertinent development on that critical question:  the D.C. Circuit's decision invalidating the FDA's proposed graphic warnings precisely because they were *not* "purely factual and uncontroversial."  *See R.J. Reynolds Tobacco Co. v. Food & Drug Admin.*, _ F.3d _, 2012 WL 3632003, at *8 (D.C. Cir. Aug. 24, 2012) ("*RJRT*").  That decision—which lays out in detail what the "purely factual and uncontroversial" standard entails and applies it to closely analogous facts—confirms that the Government's proposed Corrective Statements A – D cannot be reconciled with the D.C. Circuit's mandate in this case or with the First Amendment.  But

instead of addressing this pertinent precedent, the Government and Intervenors use their supplemental briefs to rehash arguments fully aired in the prior corrective statements briefing.

Those arguments were unavailing the first time they were raised—and, in light of *RJRT*, are even less persuasive now.  For example, the Government repeatedly invokes the Blake Report's assurance that "the Court can feel confident that the recommended corrective statements are likely to capture attention, enhance accurate knowledge, have a positive impact on the public, and reduce the likelihood that consumers will believe potential future misrepresentations."  Blake Report ¶ 247 (D.E. 5875-1).  But the Government's interest here is not in "captur[ing] attention," "enhanc[ing] . . . knowledge," or generating some unspecified "positive impact on the public."  *Id.*  Rather, as the D.C. Circuit emphasized, this Court may *only* order corrective statements to "thwart[ ] *prospective* efforts by Defendants" to mislead consumers about the health risks and addictiveness of smoking.  *Philip Morris USA Inc.*, 566 F.3d at 1144 (emphasis added).  And, in that respect, the Blake Report makes clear that the statements proposed by Defendants are at least as effective—and, in some cases, *more* effective—than those proposed by the Government.

The Government and Intervenors also renew their well-worn argument that the proposed Corrective Statements are warranted due to ongoing misconduct by Defendants.  But these allegations—which include the preposterous assertion that Defendants should be held responsible for statements by a tobacco company unaffiliated with any of the Defendants (Intervnrs.' Supp. Br. 8-9 (D.E. 5986))—cannot withstand the slightest scrutiny.  And, even if these allegations were sound, they still would not justify requiring Defendants to make the self-vilifying, inflammatory, and inaccurate statements proposed by the Government.

I.      *RJRT* **Confirms That The Government's Proposed Corrective Statements A – D Violate The D.C. Circuit's Mandate.**

The D.C. Circuit held in *RJRT* that a compelled disclosure cannot be "purely factual and uncontroversial"—and thus consistent with the First Amendment under *Zauderer*—where it is "primarily intended to evoke an emotional response" and is "subject to misinterpretation by consumers." 2012 WL 3632003, at \*7. As Defendants have already demonstrated, the Government's proposed statements are neither "purely factual" nor "purely . . . uncontroversial" because they would compel Defendants to admit acts of past wrongdoing in terms that are inflammatory, inaccurate, and inconsistent with the findings of other courts—and would do so in an effort to generate public anger, hostility, and enmity. *See, e.g.*, Defs.' Response to Gov't Proposed Corrective Statements 6-12, 18-20 (D.E. 5881); Defs.' Supp. Br. 3-6 (D.E. 5985). Such public shaming of an unpopular speaker is incompatible with the D.C. Circuit's mandate in this case or with the settled First Amendment principles on which that mandate rests.

The Government asserts that *RJRT* "in no way calls into question the corrective statements submitted by the United States" because the D.C. Circuit "expressly distinguished this litigation when it discussed defendants' history of deception." Gov't Supp. Br. 3-4 (D.E. 5987) (citing *RJRT*, 2012 WL 3632003, at \*7 & n.10). But that utterly ignores the fact that the "purely factual and uncontroversial" standard required by the D.C. Circuit's mandate in this case is precisely the same standard explained and applied in *RJRT* to closely analogous facts. It thus makes no difference that, as the Government asserts, *RJRT* observed that the corrective statements here were not directly at issue in *RJRT* but were " the subject of" this "entirely separate . . . line of litigation." 2012 WL 3632003, at \*7 n.10 (citing *Philip Morris USA Inc.*, 566 F.3d 1095). In both cases, the legal standard is the same.

The Government nonetheless contends that the D.C. Circuit's decision in *United States v. Philip Morris USA Inc.*, 686 F.3d 832 (D.C. Cir. 2012) ("Vacatur Opinion"), is "far more important to the pending corrective-statement issues before this Court" than the *RJRT* decision. Gov't Supp. Br. 4.  But the Vacatur Opinion merely concluded that the FDA's regulatory authority over the tobacco industry has not mooted this case and that this Court therefore retains jurisdiction to "prevent and restrain" future RICO violations by Defendants.  686 F.3d at 837. The decision is silent about the First Amendment issues here and does not provide any guidance on the remedies that this Court can order to prevent future RICO violations.  On those issues, the D.C. Circuit's earlier holding—that this Court must confine corrective "statements to 'purely factual and uncontroversial information,' geared towards" preventing future consumer deception—remains controlling.  *Philip Morris USA Inc.*, 566 F.3d at 1144.  And as noted, *RJRT* sets out in detail the meaning of the "purely factual and uncontroversial" standard.[1]

The Government is equally unsuccessful in its effort to fit its proposed statements into the "narrow enclave carved out by *Zauderer*" for "purely factual and uncontroversial disclosures." *RJRT*, 2012 WL 3632003, at \*8.  For example, the Government contends that Defendants' arguments that its proposed statements "are 'designed' to shame and humiliate them are flatly contradicted by the evidence before the Court."  Gov't Supp. Br. 6.  But the evidence makes clear that the Government selected its proposed statements *precisely* because they portray

---

[1] Intervenors' reliance on *United States v. Philip Morris USA Inc.*, 686 F.3d 839 (D.C. Cir. 2012) ("Market-Data Opinion"), is equally misplaced.  *See* Intervnrs.' Supp. Br. 4.  In that opinion, the D.C. Circuit concluded that it lacked jurisdiction to review this Court's Order #20-Remand regarding the scope of Defendants' disaggregated marketing-data disclosure obligations because that order did "not 'grant[ ], continu[e], modify[ ], refus[e] or dissolve[ ] injunctions, or refus[e] to dissolve or modify injunctions.'"  686 F.3d at 846 (alterations in original) (quoting 28 U.S.C. § 1292(a)(1)).  Like the Vacatur Opinion, the Market-Data Opinion is silent on the First Amendment and other corrective-statement issues.

Defendants as liars and generate a strong emotional reaction in viewers.  *See, e.g.*, *id.* Ex. 1 at 1 (regarding proposed Statement A: "They are selling venom"); *id.* at 3 (regarding proposed Statement B: "[I]t's saying that they lied"); *id.* at 8 (regarding proposed Statement C: "[T]hey are admitting to have lied"); *id.* at 14 (regarding proposed statement D: "They lied"); Blake Report ¶ 130 ("This [the statement] has been done under order by the District Court, done by the cigarette company itself and in it they are saying 'we falsely market these cigarettes.'  Just with that they are telling us, it's all a scam.") (brackets in original); Gov't Reply 20 (D.E. 5891) ("it ticks me off that they did lie") (quoting Baltimore Focus Group 3).  It is for that very reason that the D.C. Circuit rejected the FDA's graphic warnings in *RJRT*.  *See* 2012 WL 3632003, at *7-*8.

        The Government also attempts to defend the factual accuracy of the assertion in proposed Corrective Statement B that "[w]e manipulated cigarettes to make them more addictive."  Gov't Supp. Br. 4 n.1.  As Defendants have previously demonstrated, this language inaccurately implies that Defendants spike nicotine levels to make cigarettes more addictive—when, in fact, this Court *never* made a finding that Defendants introduce exogenous nicotine into their cigarettes. Defs.' Response to Gov't Proposed Corrective Statements 18-19.  The Government responds that focus-group participants did not interpret the proposed statement to mean that Defendants spike their cigarettes—but the focus-group participant on whom the Government relies simply repeated the Government's proposed language.  *See* Gov't Supp. Br. 5 n.1 ("'they actually did, they manipulated the cigarettes to make them more addictive'").  The participant's statement thus does not shed any light on the public's interpretation of "manipulate"—and certainly does not establish that the Government's proposed statement is not at least "subject to [the] misinterpretation" that Defendants spike their cigarettes.  *RJRT*, 2012 WL 3632003, at *7.

For that reason, among many others, the self-denigrating and counterfactual emotional appeals in proposed Corrective Statements A – D are impossible to reconcile with the D.C. Circuit's mandate in this case.

## II.     *RJRT* Confirms That The Government's Proposed Corrective Statements A – D Violate The First Amendment.

For similar reasons, proposed Corrective Statements A – D also violate the First Amendment because the Government has failed to demonstrate that its proposed statements "directly advance" its antideception interest "to a material degree" and are narrowly tailored to further that interest.  *RJRT*, 2012 WL 3632003, at *8; *see also Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 565 (1980).  As Defendants have already established, the Government's proposed statements will not advance its interest in preventing future consumer deception "to a material[ly]" greater "degree" than the statements proposed by Defendants.  *See* Defs.' Supp. Br. 6-9.  Nor are the Government's proposed statements narrowly tailored; Defendants' proposed statements would be at least as effective at preventing future consumer deception without imposing a comparable burden on Defendants' First Amendment rights.  *Id.*

The Government's invocation of the Blake Report to defend the constitutionality of its proposed statements is unavailing.  Dr. Blake seeks to assure the Court that it "can feel confident that the recommended corrective statements are likely to capture attention, enhance accurate knowledge, have a positive impact on the public, and reduce the likelihood that consumers will believe potential future misrepresentations."  Blake Report ¶ 247.  But the D.C. Circuit has held that only one of those governmental interests—the statements' alleged ability to "prevent and restrain [Defendants] from disseminating false and misleading statements" on smoking and health—could be a constitutionally sufficient basis for compelling Defendants to issue corrective statements.  *Philip Morris USA Inc.*, 566 F.3d at 1140.  Defendants cannot be denied their

"choice to speak" and their "choice of what not to say" (*Pac. Gas & Elec. Co. v. Pub. Utils. Comm.*, 475 U.S. 1, 16 (1986) (plurality opinion)) simply because the compelled speech would "capture attention," "enhance . . . knowledge," or "positive[ly] impact . . . the public" in some undefined respect. That is precisely why *RJRT* rejected a similar argument by the FDA. *See RJRT*, 2012 WL 3632003, at *7, *12 (rejecting the FDA's purported interest in more "'effectively'" informing consumers and its attempt to "shock the viewer").

On the only relevant metric—the statements' ability to "reduce the likelihood that consumers will believe potential future misrepresentations"—the Blake Report demonstrates that Defendants' proposed statements performed as well as or better than the Government's statements. *See* Defs.' Supp. Br. 7-8 (demonstrating that Defendants' statements performed as well or better on the question, "After seeing this statement, if you were later to hear an opposite claim, would you believe it?"). It is therefore clear that a statement need not be designed to shame Defendants or inflame viewers to prevent consumers from believing inaccurate information.[2] Indeed, the Government effectively concedes as much through its proposed Corrective Statement E (Environmental Tobacco Smoke), which demonstrates that the Government is fully capable of attaining its antifraud goals without including pejorative and self-denigrating language. The Government offers no reason why it could not likewise further its goals here through comparable statements on topics A – D.

---

[2] For example, PM USA's proposed statement on Topic B (addictiveness) stated that "Cigarette smoking is addictive. The nicotine in cigarette smoke is addictive. It can be difficult to quit smoking, but this should not deter smokers who want to quit from trying to do so." Blake Report ¶ 165, fig. V12. That clear, simple, and factually accurate statement performed twelve percentage points better on the future-beliefs metric than the Government's proposed inflammatory and self-vilifying statement. Blake Report app. C2, tbl. 4B; *see also* Blake Report ¶ 165 (reproducing proposed corrective statements tested by Dr. Blake).

None of the other evidence that the Government invokes from the Blake Report is relevant to the proposed statements' constitutionality.  For example, the Government cites evidence of its proposed statements' effects on "smoking urges and quit intentions."  Gov't Supp. Br. 8.  But the D.C. Circuit made clear that corrective statements must be "geared towards thwarting prospective efforts by Defendants" to defraud the public, *Philip Morris USA Inc.*, 566 F.3d at 1144—not toward thwarting continued cigarette use.  Indeed, the D.C. Circuit rejected a proposed smoking "cessation" remedy because RICO does not authorize courts "to prevent Defendants from marketing and selling their products."  *Id.* at 1149.  In any event, in *RJRT*, the D.C. Circuit made clear that "intentions" alone are insufficient to advance the Government's interest in decreasing smoking rates.  *RJRT*, 2012 WL 3632003, at *10.  So too, here, the Blake Report does not establish that the proposed statements' effects on "smoking urges and quit intentions" led participants *actually* to smoke or *actually* to stay quit.

Much of the Blake Report therefore has no bearing on the constitutionality of the Government's proposed statements, and the relevant portions of the report affirmatively undermine the statements' constitutionality by demonstrating the existence of less burdensome alternatives to the Government's proposed statements.  The Court should therefore reject the Government's proposed statements on the current record.

## III.    Intervenors' Allegations Of Ongoing Misconduct Are Irrelevant And Unfounded.

Intervenors allege that the Government's proposed corrective statements are appropriate because Defendants "continue to mislead consumers and the public concerning, *inter alia*, the health effects and addictiveness of smoking."  Intervnrs.' Supp. Br. 2.  But even if Intervenors' allegations were true—which they emphatically are not—those ongoing RICO violations would not shed any light on the question here:  Are the Government's proposed statements "purely factual and uncontroversial"?  As *RJRT* confirms, they plainly are not.

In any event, Intervenors' allegations that Defendants continue to mislead the public about the health effects and addictiveness of smoking are baseless.  For example, Intervenors inexplicably point to a statement by the Chairman and Chief Executive Officer of Philip Morris *International* regarding the ability of smokers to quit smoking.  Intervnrs.' Supp. Br. 9.  But Philip Morris International is not a Defendant in this case—and, as the article cited by Intervenors makes clear, it is an entirely separate corporate entity from Defendants Philip Morris USA and Altria, and was at the time of the statement in question.  *Id.*

Intervenors also repeat their assertion that Altria ran inaccurate advertisements claiming that "its companies 'communicated openly about the health risk of tobacco,'" "when, in fact, the website for Philip Morris USA does not relay full information to consumers" because it does not state that the company agrees that secondhand smoke causes disease.  Intervnrs.' Supp. Br. 9.  But there is nothing inaccurate or deceptive about the statement on PM USA's website that "[p]ublic health officials have concluded that secondhand smoke from cigarettes causes disease," *id.*, particularly where, as here, the website explicitly states that "Philip Morris USA believes that the public should be guided by the[se] conclusions" and provides links to the Surgeon General's Reports on the topic.  In fact, the language challenged by Intervenors is nearly identical to the Government's proposed corrective statement on secondhand smoke, which states that the "Surgeon General has concluded that [e]xposure to environmental tobacco smoke has been proven to cause premature death and disease."  Intervenors therefore effectively take the position that the Government's proposed Statement E is misleading, which is obviously absurd.

Finally, Intervenors again fault Defendants for "communicat[ing] to retailers and consumers that the cigarettes labeled as 'light' and 'low tar' remain available in repackaged form."  Intervnrs.' Supp. Br. 10.  Nothing in this Court's opinion, however, prohibits Defendants

from using coloring on their cigarette packages to distinguish products based on taste.  Indeed,

Intervenors' position seems to be that Defendants must affirmatively mislead the public by using

identical packaging for different products.  That position is particularly untenable because, when

repackaging Marlboro Lights as Marlboro Golds, PM USA made clear to consumers through a

package insert that "[n]othing about this cigarette or packaging, including color, should be

interpreted to mean that any cigarette is safer than any other cigarette."  In addition, the FDA has

closely monitored Defendants' use of colors in their marketing of cigarettes.[3]  If Defendants ever

engaged in a marketing practice that was intended to mislead the American public, there is little

doubt that the FDA would respond swiftly and harshly.

**IV.    At A Minimum, Defendants Are Entitled To Limited Discovery And An Evidentiary Hearing.**

Finally, the Government's supplemental brief further reveals the extent to which its

position is based entirely on Dr. Blake's expert report.  Thus, although this Court can reject the

Government's position as a matter of law, it cannot accept that position without, at a bare

minimum, according Defendants limited discovery, including a deposition of Dr. Blake, as well

as an evidentiary hearing at which Defendants would have an opportunity to cross-examine Dr.

Blake and introduce evidence to counter her opinions.

<u>**CONCLUSION**</u>

The Court should reject the Government's proposed Corrective Statements A – D.

Alternatively, it should permit limited discovery and hold an evidentiary hearing.

---

[3] *See* Letter from Lawrence R. Deyton, Director, Center for Tobacco Products, to Denise F. Keane, Exec. Vice President & Gen. Counsel, Altria Group, Inc. (June 17, 2010), *at* http://www.fda.gov/TobaccoProducts/GuidanceComplianceRegulatoryInformation/ ucm216154.htm (requesting additional information about PM USA's use of colors in marketing).

Dated:  October 4, 2012                     Respectfully submitted,



/s/ Miguel A. Estrada
Miguel A. Estrada (D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  (202) 955-8257
Fax:  (202) 530-9016

Beth A. Wilkinson (D.C. Bar No. 462561)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, N.W.
Washington, D.C.  20006-1047
Telephone:  (202) 223-7300
Fax:  (202) 223-7420

Thomas J. Frederick
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601-9703
Telephone:  (312) 558-6700
Fax:  (202) 558-5700

*Attorneys for Defendants*
*Altria Group, Inc. and Philip Morris USA Inc.*


/s/ Miguel A. Estrada *for*
Noel J. Francisco (D.C. Bar No. 464752)
Robert F. McDermott (D.C. Bar No. 261164)
Peter J. Biersteker (D.C. Bar No. 358108)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

R. Michael Leonard
WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
One West Fourth Street
Winston-Salem, NC  27101
Telephone:  (336) 721-3721
Fax:  (336) 733-8389

*Attorneys for Defendant*
*R.J. Reynolds Tobacco Company,*
*individually and as successor by*
*merger to Brown & Williamson*
*Tobacco Corporation*


/s/ Miguel A. Estrada *for*
Michael B. Minton
THOMPSON COBURN LLP
One US Bank Plaza, Suite 3500
St. Louis, Missouri  63101-1693
Telephone:  (314) 552-6000
Fax:  (314) 552-7597

*Attorneys for Defendant*
*Lorillard Tobacco Company*