# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No: 99-2496 (GK) |
|  | ) | Next scheduled court appearance: NONE |
| Plaintiff | ) |  |
| v. | ) |  |
| PHILIP MORRIS USA INC., *et al.*, | ) |  |
| Defendants. | ) |  |

## AFFIDAVIT OF KEITH BROVIAK

The undersigned, Keith Broviak, hereby declares, swears, and affirms under penalty of perjury under the laws of the District of Columbia, as follows:

1. My name is Keith Broviak.

2. For the past sixteen years, I have been the Director of Marketing at Ricker Oil Company. Prior to that, I worked for two years as a Field Representative for 7-Eleven, and before that I worked for a small petroleum retail operator in southern Illinois in both marketing and operations capacities. In total, I have worked in the retail industry for nearly thirty years.

3. Ricker's, which has approximately 50 stores, has a contractual relationship with three tobacco manufacturers: Altria; R.J. Reynolds; and Lorillard.

4. Cigarettes account for approximately 55% of Ricker's in-store sales. For 2013, Rickers had $33,874,926 in cigarette sales revenue.

5. Ricker's contracts with tobacco manufacturers all contain buy-down provisions. These provisions allow us to sell cigarettes for discounted rates, and then get reimbursed by the manufacturers.

6. Having these provisions in our contracts enables us to remain competitive. If we did not contract for buy-down reimbursements, we would be at a competitive disadvantage because our customers would be able to purchase cigarettes elsewhere at far lower prices.

7. These buy-down provisions are far more integral to the small convenience store

business model than larger, big box stores because cigarette sales typically constitute a larger percentage of small stores' total revenue than they do for large stores.

8. Ricker's contracts with tobacco manufacturers also provide for signage in the stores. Pursuant to these provisions, the companies provide us with signs promoting their brands and/or prices, and we place the signs in certain designated places in our stores.

9. The contracts also stipulate that if Ricker's complies with all of the contract's provisions, it receives a sum of money from the manufacturers. These are known as "merchandising payments."

10. The designated spaces in the store in which tobacco signs are allowed are referred to as the "sign zone."

11. The sign zone is typically above or to the side of cigarette fixtures on the back wall behind the sales counter. Some stores also have signs facing out of the front window.

12. There are many places in Ricker's stores in which tobacco signs are not allowed.

13. We do not allow signs on or near the sales counter because this space is so valuable.

14. We use counter space for some of our top-selling items. These items include lighters and energy shots as well as gum, mints, and candy. These are items with high profit margins.

15. The items we place on counters for sale are also "impulse" items. That is, many customers decide to buy these items once confronted with them in the store even though they did not plan to purchase such items before entering the store.

16. The profits generated by impulse items displayed on counters are extremely important to Ricker's overall profitability.

17. If Ricker's were required to place large 18x30 inch signs on its counters, the company would be forced to move the highly profitable items currently displayed in those locations and would lose a significant volume of sales and profits. This would adversely impact Ricker's profits.

18. The size of the signs also would pose a security risk by limiting the ability of Ricker's clerks to see all locations within and outside the store. Ricker's stores are designed to allow sales clerks to have a clear line of sight to people filling up their cars with gas, shopping in the stores and approaching the entrance to the store. This level of visibility is a common design feature for the industry and is done to enhance security and help deter crime in the stores.

19. Counters and product displays within Ricker's stores are in most cases limited to 34 to 42 inches in height from the floor to promote visibility and security within the stores.

20. Placing large 18x30 inch signs on top of our counters would create blind spots for Ricker's clerks and obscure much of the visibility of the store. This would frustrate Ricker's security plans and conflict with the current store designs. It is expected that these signs would lead to increased crime in the stores including shoplifting.

21. The proposed messages for the corrective signs contemplated by the District Court's Order would also hurt Ricker's business.

22. The required signs would give customers the false impression that Ricker's misled them, and that Ricker's was required to apologize for misleading customers.

23. Ricker's did not mislead its customers. It simply sold legal products in its stores.

24. Ricker's had no opportunity to address any claims that it misled its customers. Ricker's was not, for example, party to this litigation and did not participate in it until submitting an affidavit relating to the point of sale signage requirement in 2011.

25. Ricker's will lose the good will of many of its customers – smokers and non-smokers alike – if it is forced to display signs giving the impression that Ricker's misled its customers. The result will be lost customers and lost sales for the company.

26. I object and disagree with, and Ricker's objects and disagrees with, the messages that the Order contemplates requiring on signs in our stores.

27. As it currently stands, the court's order would: (1) decrease Ricker's revenue; (2) damage Ricker's reputation; and (3) compromise Ricker's security.

_Keith Broviak_

Keith Broviak

Subscribed, sworn to, and acknowledged before me, a Notary Public of the State of Indiana, this 02 day of June, 2014, by Keith Broviak.

My registration expires:

Notary Registration Number:

625664

JAROD A. DOWNING, Notary Public
Marion County, State of Indiana
My Commission Expires April 13, 2019