# EXHIBIT C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | Civil Action No: 99-2496 (GK) |
| ) | Next scheduled court appearance: NONE |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| PHILIP MORRIS USA INC., *et al*., ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF ROBERT RICHARDSON

The undersigned, Robert Richardson, hereby declares, swears, and affirms under penalty of perjury under the laws of the District of Columbia, as follows:

1. My name is Robert Richardson.

2. I am the Category Manager for Tobacco and E-Cigarettes at E-Z Mart convenience stores. E-Z Mart has over 300 stores.

3. Prior to serving as Category Manager for Tobacco and E-Cigarettes, I was Director of Merchandising for the tobacco category at E-Z Mart. Before that, I spent ten years as E-Z Mart's Category Manager for tobacco, cigarettes, and other tobacco products. I have worked for E-Z Mart for approximately thirteen years.

4. In my position as Category Manager for Tobacco and E-Cigarettes, I oversee all of E-Z Mart's contracts with tobacco manufacturers. E-Z Mart currently has contractual relationships with three tobacco manufacturers: Altria; R.J. Reynolds; and Lorillard.

5. E-Z Mart's contracts with these companies cover all of its store locations.

6. These contracts all contain buy-down provisions, whereby each tobacco manufacturer reimburses E-Z Mart for selling its cigarettes at discounted prices.

7. The buy-down provisions of the contracts enable us to remain competitive. If E-Z Mart were not reimbursed by tobacco manufacturers for offering discounts, we would be at a competitive disadvantage because our customers would be able to purchase cigarettes elsewhere at far lower prices.

8. E-Z Mart's contracts with tobacco companies also contain signage provisions, whereby the manufacturers provide us with signs promoting their brands and/or prices, and we place the signs in certain designated places in E-Z Mart stores.

9. EZ-Mart receives merchandising payments and buy-down payments that total $6,220,516 from Altria, $3,728,447 from RJ Reynolds, and $750,973 from Lorillard.

10. E-Z Mart's contracts generally call for the signs to be placed at or near the tobacco fixtures where cigarettes are sold; these signs are for the most part quite small (2x2 inch), although some companies' contracts also require we place larger signs (24x24 or 24x36 inch) to the side of the tobacco fixtures.

11. Tobacco manufacturers have never asked us to include provisions in the contracts requiring us to place signs at the point of sale in E-Z Mart stores.

12. It is my understanding that tobacco manufacturers have on occasion asked other stores to place signs at the point of sale, but that those stores have refused the requests.

13. If asked, E-Z Mart would refuse to allow tobacco signage at the point of sale in its stores because that is the most valuable retail space in the stores.

14. E-Z Mart places a variety of high-margin, high-impulse items on its counters at the point of sale. Examples of these items include gum, mints, and candy. Losing the ability to display these types of items at the point of sale would adversely impact E-Z Mart's profitability in a significant way.

15. There is simply no way to place an 18x30 inch sign at the point of sale in E-Z Mart's stores without having to remove the various products the company places there right now. This is prime real estate and the signage requirement contemplated by the Court would take the economic value of this retail space away from E-Z Mart.

16. The signs contemplated by the Court would give customers the impression that E-Z Mart was in collusion with tobacco manufacturers when this is not true. Indeed, E-Z Mart was not a party to this litigation.

17. In fact, E-Z Mart had little choice but to purchase cigarettes from tobacco manufacturers. If the company did not do so, it would have lost too many customers to remain competitive. There are 40 million smokers in America, and E-Z Mart's profit margins are simply too small to lose the business of those customers.

18. The signs proposed by the Court would make both smokers and non-smokers believe that E-Z Mart was that misled them. This would damage E-Z Mart's brand and make customers less likely to frequent our stores.

19. I disagree with the messages the Court Order contemplates for the signs to be placed in stores and object to displaying them. This is both my personal position and the position of E-Z Mart.

20. The proposed signs also pose a substantial security risk to E-Z Mart stores. Convenience stores in general, and E-Z Mart stores in particular, are designed to enable the store clerk to have a line of sight to all locations within the store as well as outside the store (allowing clerks to see people filling up their cars with gas, as well as people approaching the store).

21. Both the counters and floor displays in E-Z Mart stores are generally no more than 36 inches high in order to promote maximum visibility inside and outside the stores.

22. Requiring E-Z Mart to place large 18x30 inch signs on top of counters that are 36 inches in height would obscure clerks' sightlines. This would frustrate the security-related design features of E-Z Mart stores and could increase crimes inside and outside the stores – including shoplifting.

23. As it currently stands, the Court's Order would: (1) decrease E-Z Mart's revenue; (2) lose customers and customer good will for E-Z Mart; and (3) compromise E-Z Mart's store security. This seems extremely inappropriate considering retailers were not even parties to the litigation.

Robert Richardson

Subscribed, sworn to, and acknowledged before me, a Notary Public of the State of Texas, this __3__ day of June, 2014, by Robert Richardson.

My registration expires: 4-10-16

Notary Registration Number: 740749-7

Anita G Gillion
Notary Public
STATE OF TEXAS
My Comm. Exp. 4-10-2016