# EXHIBIT D

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No: 99-2496 (GK) |
|  | ) | Next scheduled court appearance: NONE |
| Plaintiff | ) |  |
| v. | ) |  |
| PHILIP MORRIS USA INC., *et al*., | ) |  |
| Defendants. | ) |  |

## AFFIDAVIT OF MATTHEW PADUANO

The undersigned, Matthew Paduano, hereby declares, swears, and affirms under penalty of perjury under the laws of the District of Columbia, as follows:

1. My name is Matthew Paduano.

2. I am the Vice President of Category Management at Nice N Easy Grocery Shoppes, and have held this position for approximately one year. Prior to that, I was the Vice President of Information at Nice N Easy, and also worked for a time as a buyer. In total, I have worked for Nice N Easy for eighteen years.

3. In my position as Vice President of Category Management, I negotiate and oversee sales contracts with tobacco manufacturers. These contracts govern all of our corporate owned 33 stores.

4. Nice N Easy currently has contractual relationships with five tobacco manufacturers: Altria, R.J. Reynolds, Commonwealth, Lorillard, and Liggett.

5. Two significant components of these contracts are "buy-downs" and signage placement provisions.

6. Buy-downs are provisions whereby tobacco manufacturers fund a discounting of cigarettes – Nice N Easy offers consumers a discount on the retail sale of cigarettes and is reimbursed by the manufacturers. In fiscal year 2013 (ending 11/24/2013), Nice N Easy had a total of $19,189,227 in cigarette sales, accounting for 23.8% of total in-store sales (excluding lottery sales).

7. In the past 12 months, Nice N Easy has been reimbursed $667,345 in total through the buy-down provisions of its contracts with tobacco manufacturers. In total, the value of Nice N Easy's contracts with tobacco manufacturers amounts to approximately $718,930.

8. Because of the prevalence of buy-down provisions in retailer-manufacturer contracts, if Nice N Easy did not have contracts with cigarette manufacturers, it would place the company at a substantial competitive disadvantage. Competitors would be able to offer discounts that Nice N Easy could not match. That would result in a loss of profits and customers for Nice N Easy.

9. I estimate that without a contractual relationship with tobacco manufacturers, each Nice N Easy store would lose approximately 10-15 percent of tobacco sales, translating into a loss of approximately $1,000 - $1,500 per week, per store.

10. The Nice N Easy contracts with manufacturers require the company to display signage – usually limited to one or two pieces of signage per store.

11. The signs called for by the Nice N Easy contracts are generally small promoting a cigarette brand and/or price.

12. The largest sign called for by any of these contracts is 2x2 feet.

13. The contracts typically call for the signs to be placed either directly above or directly next to a cigarette sales fixture.

14. The contracts do not require that Nice N Easy place signs at the point of sale.

15. The counter area at the point of sale is extremely valuable retail space and is used to display highly profitable items that are susceptible to impulse purchases.

16. Nice N Easy does not and would not agree to contracts with manufacturers requiring the company to place signs at the point of sale. This retail space is simply too valuable to lose it to tobacco-related signage.

17. If Nice N Easy were required to place an 18x30 inch sign at the point of sale, it would force the company to move all of the product displays currently in that space. This would substantially reduce sales.

18. It is the policy of Nice N Easy not to have tobacco-related signage visible from outside the store. If the company were required to place an 18x30 inch sign at the point of sale, the signs would be clearly visible from outside the stores and it would override company policy not to have such signs visible outside the store.

19. The messages on the signs contemplated by the Court's Order would be objectionable to me and to Nice N Easy. These messages would make customers of Nice N Easy

think the company misled them. Both smokers and non-smokers would get this impression. That would cause Nice N Easy to lose customers, lose customer good will, and would diminish the reputation of the company.

20. Nice N Easy was not a party to this litigation, yet the Court's Order would not only diminish our sales revenue by forcing us to either (a) not contract with tobacco manufacturers or (b) lose valuable retail space at the point of sale, but would also damage our goodwill with customers.

*[signature]*

Matthew Paduano

Subscribed, sworn to, and acknowledged before me, a Notary Public of the State of New York, this 2nd day of June, 2014, by Matthew Paduano.

*[signature]*

My registration expires:

Notary Registration Number:

CHRISTOPHER N. TOGIAS
Notary Public, State of New York
Qualified in Madison Co., No. 4852918
My Commission Expires Feb. 18, 2018