UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| and | : |
|  | : |
| TOBACCO-FREE KIDS ACTION FUND, et al., | : |
|  | : |
| Plaintiff-Intervenors: | |
|  | : |
| v. | : Civil Action No. 99-2496(GK) |
|  | : |
| PHILIP MORRIS USA INC., et al.,: | |
|  | : |
| Defendants, | : |
|  | : |
| and | : |
|  | : |
| ITG BRANDS, LLC, COMMONWEALTH BRANDS, INC., AND COMMONWEALTH-ALTADIS, INC., | : |
|  | : |
| Post-Judgment Parties Regarding Remedies. | : |

---

## MEMORANDUM OPINION

### I.    INTRODUCTION

Defendants R.J. Reynolds Tobacco Company ("RJRT") and Lorillard Tobacco Company ("Lorillard") (collectively, "Defendants")[1] seek to sell and transfer certain cigarette brands

---

[1] Of course, Lorillard and RJRT are not the only Defendant tobacco companies in this case; however, Defendants Altria Group Inc. and Philip Morris U.S.A., Inc. have indicated that they do not oppose the Motion.

and businesses to ITG Brands, LLC ("ITG"), which is not a party to this case. Under ¶ 20 of this Court's Final Judgment and Remedial Order ("Order # 1015") entered on August 17, 2006, a non-defendant may acquire cigarette brands and businesses from Defendants only if it first "submits itself to the jurisdiction of the Court" and "applies for and obtains" an Order "subjecting it to the provisions" of Order # 1015.

On April 30, 2015, Defendants and ITG filed an Unopposed Motion for an Order Authorizing Transfer of Certain Cigarette Brands and Businesses to ITG Brands LLC, Pursuant to Order # 1015, Paragraph 20 ("the Motion") [Dkt. No. 6142]. Defendants and ITG have also submitted a lengthy Proposed Order [Dkt. No. 6142-1], which sets forth how Order # 1015 will apply to ITG and its U.S. affiliates (Commonwealth Brands, Inc. and Commonwealth-Altadis, Inc.),[2] and allocates certain burdens among Defendants and the Acquiring Companies. As the Motion's title suggests, the Government and Plaintiff-Intervenors do not oppose the Motion or the terms of the Proposed Order.

On May 19, 2015, the Court held a Hearing to discuss the Motion and Proposed Order with counsel for all Parties and the

---

[2] The Court refers to ITG, Commonwealth Brands, Inc. and Commonwealth-Altadis collectively as the "Acquiring Companies" throughout.

Acquiring Companies. Motion Hearing Transcript ("Tr.") 3:1-4:22
May 19, 2015. Upon consideration of the Unopposed Motion, counsel's
representations at the Hearing, and the entire record herein, and
for the reasons stated below, the Unopposed Motion for an Order
Authorizing Transfer shall be **granted**.

## II.   BACKGROUND

### A.   ITG Brands, LLC

ITG was formed in 1986 under the name Lignum-2, Inc. It is a
Texas limited liability company with headquarters in Fort
Lauderdale, Florida. ITG's ultimate parent company, Imperial
Tobacco Group PLC, is a United Kingdom company and is the fourth-
largest tobacco company in the world. ITG is not a defendant in
this case. Neither ITG nor its U.S. affiliates have ever been
covered by Order # 1015. ITG currently owns only one cigarette
brand sold in the United States called "Rave."

If the proposed sales and transfers occur, ITG will be the
third-largest cigarette company in the United States, with brands
comprising just over seven percent of the domestic cigarette
market. Following the transaction, ITG plans to move its
headquarters from Florida to facilities currently operated by
Lorillard in Greensboro, North Carolina.

**B.    The Proposed Transaction**

The details of the proposed transaction are extremely complicated, as the facts presented in the Parties' submissions demonstrate. The essential facts are as follows. ITG will acquire several cigarette brands currently manufactured by RJRT and Lorillard, along with associated intellectual property and the inventory and assets necessary to manufacture and sell those brands. ITG will acquire at least three RJRT brands: Winston, Kool, and Salem. A fourth brand, Doral, will be transferred to ITG if the other three brands do not meet particular market-share thresholds. ITG will also acquire one Lorillard brand: Maverick. Defendants and ITG refer to all of these brands collectively as the "Acquired Brands." In addition to the Acquired Brands, ITG will acquire Lorillard's manufacturing facility in Greensboro, North Carolina and certain other assets.

In a transaction separate from but related to the transfers to ITG, RJRT and Lorillard's corporate families plan to merge. In July 2014, RJRT's indirect parent company, Reynolds American, Inc., entered into an agreement with Lorillard's parent company, Lorillard, Inc., under which Lorillard, Inc. will merge into a subsidiary of Reynolds American, Inc.

On April 7, 2015, the Parties provided the Court with the merger's details by filing a Notice of Transaction [Dkt. No. 6141].

-4-

Because Lorillard and RJRT were already Defendants in this case, they were not required to seek the Court's approval of the merger.

The merger transaction will result in RJRT taking on four Lorillard brands: Newport, Old Gold, Kent, and True. Tr. 5:12-18. Transfer of the Greensboro facility from Lorillard to ITG will occur immediately before Lorillard, Inc. merges with the designated Reynolds American, Inc. subsidiary.

Preliminary approval of the proposed transfers, sales, and related merger has been given by the Federal Trade Commission ("FTC"). The approval will allow two companies, Altria and RJRT to control more than 80% of the $100 billion U.S. tobacco market. Altria has an estimated 47% share of that market and RJRT will control 34% of the market following its merger with Lorillard, Inc. See Brent Kendall and Tripp Mickle, Reynolds-Lorillard Tobacco Merger Gets FTC Clearance, The Wall Street Journal, May 26, 2015, http://www.wsj.com/articles/reynolds-lorillard-tobacco-merger-gets-ftc-clearance-1432679612.

C. **The Court's Review**

Order # 1015 limits Defendants' ability to sell or transfer elements of their tobacco businesses. Order # 1015 ¶ 20. Paragraph 20 provides:[3]

---

[3] The Court here omits language relating to sales and transfers to acquirors and transferees who will use the sold or transferred items exclusively outside of the United States.

No Defendant shall sell or otherwise transfer or permit the sale or transfer of any of its cigarette brands, brand names, cigarette product formulas or cigarette businesses . . . to any person or entity unless (1) such person or entity is already a Defendant subject to this Final Judgment and Remedial Order, or (2) prior to the sale or acquisition, such person or entity (a) submits to the jurisdiction of this Court; and (b) applies for and obtains an Order from this Court subjecting such person or entity to the provisions of this Final Judgment and Remedial Order as of the date of the sale or transfer. No such Order will be entered, and no sale or transfer of any Defendant's cigarette brands, brand names, cigarette product formulas or cigarette businesses . . . shall be allowed, unless this Court first determines that such person or entity has the capacity to comply with the obligations contained in this Final Judgment and Remedial Order. The sale or transfer by a Defendant of any of its cigarette brands, brand names, cigarette product formulas or cigarette businesses shall not relieve that Defendant from its joint and several liability under this Final Judgment and Remedial Order.

In order to comply with the strictures of Order # 1015, Defendants and the Acquiring Companies have jointly submitted a Memorandum of Points and Authorities [Dkt. No. 6143], which confirms ITG and its U.S. affiliates' submission to the Court's jurisdiction and sets forth ITG's capacity to comply with Order # 1015. Defendants and the Acquiring Companies have also filed a Proposed Order that would subject the Acquiring Companies to this Court's jurisdiction, as well as modify and apply the terms of Order # 1015 to the Acquiring Companies as of the date of the sales and transfers.

-6-

### III. ANALYSIS

Upon receipt of the Unopposed Motion, the Court convened a hearing to discuss and fully understand the substance of the Proposed Order. On May 19, 2015, a hearing on the record was held with all Parties represented. Counsel for Defendants, the Acquiring Parties,[4] the Government, and Plaintiff-Intervenors assured the Court in the strongest terms that this Order would not in any possible way diminish the effectiveness of the injunctive relief originally entered in Order # 1015. E.g., Tr. 24:5-14 ("The Court: The defendants have said very clearly today that the motion will in no way limit or exclude any other protection contained in Order [#] 1015. Does the government agree with that statement? Mr. Crane-Hirsch: Yes, Your Honor. . . . [T]here are some minor rewordings to adjust for a transition of ownership. The major elements of the permanent injunction are absolutely in place, and the only changes are intended to just adjust logistic issues that arise as a natural part of the transaction.").

The Court asked ITG's counsel whether "the new arrangement in any way [would], if this motion [were] granted[,] eliminate any requirement that is contained in [Order #] 1015[.]" Tr. 16:1-5. To

_____

[4] Counsel for ITG also appeared on behalf of Commonwealth Brands, Inc. and Commonwealth-Altadis, Inc., but did not represent Imperial Tobacco Group, the three companies' U.K.-based parent company. Motion Hearing Transcript ("Tr.") 3:21-25, May 19, 2015.

which counsel responded, "No. It will not, and, in fact, it will extend -- other than publication of the corrective statements, it will extend the provisions of [Order #] 1015 in most instances not only to the [A]cquired [B]rands . . . but to ITG['s] Rave brand and Commonwealth Brands' existing[] USA Gold and other brands." Tr. 16: 6-12.

ITG's counsel explained that in crafting the Proposed Order "the ultimate goal  . . . was to . . . set up a structure that allowed [this] Court" to have jurisdiction over "the entire U.S. tobacco business" of ITG and its U.S. affiliates.[5] Tr. 12:4-10. "A second and important goal was . . . to make sure that not only [would] the . . . 'thou shall not' provisions of [Order # 1015] apply to [ITG's] tobacco business in the United States . . . but also that [there] would not be a diminution in the kind of exposure to corrective statements that consumers would get." Tr. 12:11-17.

Thus, Acquiring Companies will be subject to the terms of Order # 1015 except for provisions specifically identified by ITG's counsel. Paragraph 16 of the Proposed Order will exempt the Acquiring Companies from paying the Government's litigation costs arising from this case. Tr. 16:25-17:4.

---

[5] Imperial Tobacco Group, the U.K.-based parent company of ITG and its U.S. affiliates, will not become a party to Order # 1015. Tr. 11:12-14.

-8-

Additionally, Provisions of Order # 1015 limiting the transfer of cigarette brands will not apply to the Acquiring Companies' existing brands (i.e., brands that ITG and its affiliates already own and are not acquiring from Defendants). Tr. 17:7-15; Proposed Order ¶ 20. However, ITG would be bound by Order # 1015 if, at some point in the future, it took steps to sell or transfer to a non-party the Winston, Salem, Kool, Doral, or Maverick brands that it plans to acquire from Defendants. Tr. 18:9-16.

Finally, the Proposed Order makes minor changes to Order # 1015's document disclosure and disaggregated marketing data and production requirements as applied to the Acquiring Parties. Tr. 18:18-20:9. These last changes reflect the fact that ITG and its U.S. affiliates were not named as defendants in this case.

Counsel for the Government and Plaintiff-Intervenors described the many phone calls, e-mails, exchanges of proposed language, meetings, 40 to 50 multi-party conference calls, etc. that all Parties worked on in order to maintain the full scope of Order # 1015. Tr. 22:2-24:4. The Court inquired about the effect of ¶ 7 of the Proposed Order, because of its concern as to whether it limited the Acquiring Companies' duty to publish the corrective statements. Counsel explained that the paragraph "was intended to exempt existing brands that were not owned by Defendants and not

-9-

currently subject to Order # 1015 from the corrective statement obligations." Tr. 14:7-12.

Counsel were asked directly whether the Proposed Order would diminish the number of television spots broadcasting the corrective statements. The Court was strongly assured by all parties that that would not be the result of the Proposed Order. Tr. 7:11-21, 24:15-26:4. RJRT will run the television spots it is required to run to correct its own previous deception and will take on the burden of running the spots necessary to correct Lorillard's previous deception. Tr. 7:11-21 ("R.J. Reynolds Tobacco will be taking over Defendant Lorillard Tobacco's obligations under Order [#] 1015. And of particular note its obligations with respect to the corrective statements in newspapers and on TVs, the total number of ads will remain the same regardless of the transaction. We'll be doing Lorillard's TV ads, Lorillard's newspaper ads. . . . So the total number of corrective statements will be the same with the transaction or without the transaction."). Thus, the merger, sales, and transfers will have no effect on the number of television commercials to which the public will be exposed.

Additionally, the Court was concerned that language in the Proposed Order, which modifies the corrective statements as applied to the Acquired Brands, would diminish the corrective

statements' effectiveness. See Proposed Order ¶ 9. However, the Government explained that it had consulted with experts in the area of health communications, who concluded that the language would not adversely affect the interest or comprehension of the public. Tr. 26:14-28:3, 29:9-14 ("[W]e absolutely did consult with marketing experts on this wording, and they are pleased that it is as likely to achieve the desired results as the wording for all of the other statements on all of the other cigarette brands.").

Finally, the Parties agree that the Acquiring Parties will have the capacity to comply with Order # 1015. Tr. 15:19-21, 24:1-4. The Court has no reason to disagree with that assessment.

## IV. CONCLUSION

Based upon the clear and comprehensive assurances by all counsel, as well as the Court's own detailed scrutiny of the Parties' submissions, the Court concludes that Order # 1015 will continue to apply as originally intended and the public interest will not be harmed by granting the Unopposed Motion. Therefore, for the forgoing reasons, the Unopposed Motion for an Order Authorizing Transfer of Certain Cigarette Brands and Businesses to ITG Brands LLC, Pursuant to Order #1015, Paragraph 20 [Dkt. No.

6142] shall be **granted**. An Order shall accompany this Memorandum

Opinion.[6]

June 8, 2015                                    *Gladys Kessler*
                                    Gladys Kessler
                                    United States District Judge


**Copies to**: attorneys on record via ECF

---

[6] After preliminary approval by the FTC on May 26, 2015, the Court
ordered the Parties to submit "Statements as to whether the FTC's
action in any way affects the information and assurances given to
the Court at its May 19, 2015 hearing" [Dkt. No. 6146].   The
Parties filed their Joint Response on June 4, 2015, assuring the
Court that the "FTC action does not in any way affect the
information and assurances given to the Court at the May 19
hearing" [Dkt. No. 6149].