## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| and | : | |
| TOBACCO-FREE KIDS ACTION | : | |
| FUND, *et al.*, | : | |
| | : | |
| Intervenors-Plaintiffs, | : | Civil Action No. 99-2496 (GK) |
| | : | |
| v. | : | |
| | : | |
| PHILIP MORRIS USA INC., *et al.*, | : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| ITG BRANDS LLC, *et al.*, | : | |
| | : | |
| Post-Judgment Intervenors as to | : | |
| Remedies | : | |

## MEMORANDUM OPINION

More than 15 years ago, the United States filed this RICO action against the major cigarette manufacturers operating in 1999. In 2006, after years of discovery, pre-trial litigation, and a nine-month bench trial, this Court issued an Opinion containing over 4,000 findings of fact and concluding that the Government had proven by "overwhelming evidence" that the Defendants had maintained an illegal racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(d). See U.S. v. Philip Morris USA, Inc., 449 F. Supp. 2d 1 (D.D.C. 2006) ("Original Opinion"). Thereafter, in 2009, the Court of Appeals affirmed the greater part of the District Court's Remedial Order. U.S. v. Philip Morris USA, Inc., 566 F.3d 1095

(D.C. Cir. 2009) ("Affirmance Opinion").  In that Opinion, the Court of Appeals rejected the Defendants' challenge to the corrective-disclosures remedy, vacating only the requirement that the statements be published on retail displays. Id. at 1138-44.  Significantly, in that Opinion, the Court of Appeals ruled that the corrective statements would qualify as commercial speech and satisfy the First Amendment and would prevent Defendants from misleading consumers through fraudulent marketing in the future.  Id. at 1143-45.  The Court of Appeals  then remanded the case to the District Court to draft the required corrective disclosures.

Thereafter, the Court prepared five separate sets of bullet points and ordered the cigarette manufacturers to disseminate them in the public media.  U.S. v. Philip Morris USA, Inc., 907 F. Supp. 2d 1 (D.D.C. 2012) ("Corrective Statement Opinion I").

Four of the original Defendants -- Philip Morris USA Inc., Altria Group, Inc., R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company -- appealed, arguing that the corrective statements exceeded this Court's remedial authority under RICO and violated the First Amendment.

In 2015, the Court of Appeals ruled that a number of the arguments raised by the Defendants had been waived for failure to have raised them at an earlier appropriate time. Other arguments were denied on the basis of the law-of-the-circuit doctrine.  U.S. v. Philip Morris USA, Inc., 801 F.3d 250, 261-63 (D.C. Cir. 2015) ("Corrective Statement Opinion II").    Most importantly, the Court of Appeals upheld all of the corrective statements prepared by this Court -- except for one sentence only -- namely, the preamble to the statements themselves.

Thereafter, this Court was led to believe by the Parties that mediation might be successful; unfortunately, it was not.  The Parties were then given time to submit briefs and provide actual language to correct the one sentence that the Court of Appeals had rejected.

Despite the fact that the Court of Appeals accepted the five topics that the Court had chosen to include and had rejected <u>one sentence</u> in the preamble designed to introduce the beginning of each of those topics, Defendants submitted a 40 page opening brief in opposition to the opening briefs of the Government and the Public Health Intervenors. In that brief, Defendants rewrote much of the five statements already approved by the Court of Appeals. Thus, when all is said and done, Defendants would now have this Court return to the drawing board and start the process all over again.

That is ridiculous -- a waste of precious time, energy, and money for all concerned -- and a loss of information for the public. The Court has no intention of following that path, although it is obvious that Defendants are, once again, attempting to stall any final outcome to this long-standing litigation.

After careful reading of all the briefs, the Court concludes that the revised wording of the preambles submitted by the Government and Intervenors has remedied the concern of the Court of Appeals in its 2015 Opinion and Remand. Corrective Statement Opinion II , 801 F.3d at 261-63. The Court of Appeals ruled that the phrase "deliberately deceived the American public" in the preambles could not be used because it "disclose[d] defendants' prior deceptive *conduct*" instead of using language that "would prevent and restrain future RICO violations by '[r]equiring Defendants to reveal the previously hidden truth about their *products*.'" <u>Id.</u> (emphasis in original). The Government and Intervenors have totally withdrawn that phrase and the preambles have been shortened. The Government and Intervenors' reworking of the text, as set forth herein, is fully consistent with the Court of Appeals' ruling that nothing in the corrective statements could refer to the past fraudulent conduct of Defendants.

| Prior introductory text | United States' proposed introductory text |
|---|---|
| A Federal Court has ruled that Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA deliberately deceived the American public about [particular topic], and has ordered those companies to make this statement.<br><br>Here is the truth: | A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about [particular topic].<br><br>Here is the truth: |

## A.   Adverse Health Effects of Smoking

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about the health effects of smoking.

Here is the truth:

- Smoking kills, on average, 1,200 Americans. Every day.

- More people die every year from smoking than from murder, AIDS, suicide, drugs, car crashes, and alcohol, **combined**.

- Smoking causes heart disease, emphysema, acute myeloid leukemia, and cancer of the mouth, esophagus, larynx, lung, stomach, kidney, bladder, and pancreas.

- Smoking also causes reduced fertility, low birth weight in newborns, and cancer of the cervix.

## B.   Addictiveness of Smoking and Nicotine

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about the addictiveness of smoking and nicotine.

Here is the truth:

- Smoking is highly addictive. Nicotine is the addictive drug in tobacco.

- Cigarette companies intentionally designed cigarettes with enough nicotine to create and sustain addiction.

- It's not easy to quit.

- When you smoke, the nicotine actually changes the brain -- that's why quitting is so hard.

**C.   Lack of Significant Health Benefit from Smoking "Low Tar," "Light," "Ultra Light," "Mild," and "Natural" Cigarettes**

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about selling and advertising low tar and light cigarettes as less harmful than regular cigarettes.

Here is the truth:

- Many smokers switch to low tar and light cigarettes rather than quitting because they think low tar and light cigarettes are less harmful. They are **not.**

- "Low tar" and "light" cigarette smokers inhale essentially the same amount of tar and nicotine as they would from regular cigarettes.

- **All** cigarettes cause cancer, lung disease, heart attacks, and premature death -- lights, low tar, ultra lights, and naturals. There is no safe cigarette.

**D.   Manipulation of Cigarette Design and Composition to Ensure Optimum Nicotine Delivery**

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about designing cigarettes to enhance the delivery of nicotine.

Here's the truth:

- Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA intentionally designed cigarettes to make them more addictive.

- Cigarette companies control the impact and delivery of nicotine in many ways, including designing filters and selecting cigarette paper to maximize the ingestion of nicotine, adding ammonia to make the cigarette taste less harsh, and controlling the physical and chemical make-up of the tobacco blend.

- When you smoke, the nicotine actually changes the brain -- that's why quitting is so hard.

**E.      Adverse Health Effects of Exposure to Second Hand Smoke**

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about the health effects of secondhand smoke.

Here is the truth:

- Secondhand smoke kills over 38,000 Americans each year.

- Secondhand smoke causes lung cancer and coronary heart disease in adults who do **not** smoke.

- Children exposed to secondhand smoke are at an increased risk for sudden infant death syndrome (SIDS), acute respiratory infections, ear problems, severe asthma, and reduced lung function.

- There is no safe level of exposure to secondhand smoke.

The Court has reached this conclusion for the following reasons:

First, and most importantly, the Government and Intervenors have removed the phrase in the preambles to each of the five topics contained in this Court's ruling that Defendants "deliberately deceived the American public." Not only did that change comply with the ruling of the Court of Appeals, it also shortened the introductory preambles so as to make reading them a little easier for the public.

The newly crafted preambles do not in any way send a message to the public that Defendants deceived them in the past, nor that Defendants are being punished for their previous conduct. Because the preambles are now shorter and explain what each statement is about, why they are being made, and who is making them, there is simply no support for Defendants' argument that even the new sanitized preambles will convey to members of the public that they have been deceived in the past.

Second, the Government and Intervenors have retained the wording "Here is the Truth," which Defendants complained about, so as to make clear to the public that the following commentary in each of the five topics is, in fact, the truth. Again, retention of that phrase is consistent with the Court of Appeals' ruling that "[r]equiring defendants to reveal the previously hidden truth about their products will prevent and restrain them from disseminating false and misleading statements, thereby violating RICO, in the future." Affirmance Opinion, 566 F.3d at 1140.

Third, the Government and Intervenors have, out of an abundance of caution, removed the word "falsely" from statement C's introduction which refers to the lack of significant health benefits from smoking "Low Tar," "Light," "Ultra Light," "Mild," and "Natural" cigarettes.

Fourth, as the Court of Appeals noted, many of the objections and arguments made by Defendants have already been waived for failure to have raised them earlier, and, therefore, cannot be raised again now, or were denied under the law-of-the-circuit doctrine. Corrective Statement Opinion II, 801 F.3d at 252, 257.

Fifth, the Government and Intervenors changed the term "filtered" cigarettes in the second bullet point to refer to "low tar" cigarettes because "filtered" was confusing and not totally accurate.

As to the Defendants' own proposals, there are many serious problems. First example -- the Defendants watered down the preambles so that the first words a member of the public would read are that a Federal Court has "determined" that you should know the following, thereby omitting the clear, straightforward introduction that "a Federal Court Ordered [Defendants] to make this statement," followed by a separate line saying "Here is the Truth." In addition, the tobacco companies completely removed their names from the corrective statements.

-7-

Second example -- Defendants complain that the statements attribute the Court's order to them. However, in 2006, all Defendants except Altria and Philip Morris USA actually proposed mandatory attribution language. Given the fact that the Court accepted the request, R.J. Reynolds and Lorillard are obviously estopped at this late date from objecting to the use of their names.

Altria and Philip Morris, thought not estopped in 2006, remained silent when ordered to submit their views on attribution in Order #1025 at 2. Since they never articulated views on the subject, they have waived any objections they now have.

Defendants also argue that the statements proposed by the Government and Intervenors do not meet the First Amendment standard. In its 2012 decision, this Court examined the issue of First Amendment standards for commercial speech, and concluded that Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626, 651 (1985), articulated the correct standard to apply. The Court of Appeals never questioned this ruling. Consequently, this Court sees no reason whatsoever to reexamine that decision.

In order to buttress their argument, Defendants rely upon American Meat Inst. v. U.S. Dept. of Agriculture, 760 F.3d 18, 26 (D.C. Cir. 2014) (en banc). However, that case was discussing disclosures aimed at "informing consumers about a particular product trait," by "making . . . 'purely factual and uncontroversial information' accessible to the recipients." Id. (emphasis added). The Court of Appeals' most recent decision in this case makes it clear that under RICO "disseminating corrective *statements on the proposed topics* would prevent and restrain future RICO violations by '[r]equiring Defendants to reveal the previously hidden truth about their *products*.'" Affirmance Opinion, 801 F.3d at 261 (quoting 566 F.3d at 1140). In this case, the five topics contained in the statements are aimed at preventing and restraining the Defendants from continuing their fraudulent

and deceptive activities. Id. In other words, American Meat Inst. is totally distinguishable from this case.

Defendants also raise the issue that no implementation order may be issued at this time. They argue that the Court should reject the Government's proposal and adopt their proposed language to the Implementation Consent Order which was reached June 2, 2014. The Government and Intervenors request that certain "minor changes" be made in the Consent Order implementing the corrective statement remedies under Order #1015 and Order #34-Remand. While it is true that it is well established that after hearing from parties, a court may alter a consent order in conformance with the terms of a consent decree and changed circumstances, see e.g., United States v. W. Elec. Co., 894 F.2d 430, 434 (D.C. Cir. 1990), it is also true that "[a] court may not enter a consent decree that imposes obligations on a party that did not consent to the decree," Local No. 93, Intern. Ass'n. of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501, 529 (1986). It is also true that a court may modify an existing order when it "is based on an earlier judgment that has been reversed[.]" Fed. R. Civ. P. 60(b)(5) (emphasis added). Such modifications must be "suitably tailored" to the changes requested by the Court of Appeals' decision and "must preserve the essence of the parties' bargain[.]" Pigford v. Veneman, 292 F.3d 918, 927 (D.C. Cir. 2002).

In this case, the parties did negotiate for well over a year to reach the proposed Consent Order on implementation of that Order. The Parties made it clear to the Court that the proposed Order reflected compromises and negotiated trade-offs by all parties. Indeed, the Intervenors' brief, at page 13, agrees that the Consent Order "reflected a 'complex' agreement hammered out through many months of negotiation and compromises on all sides[.]" Intervenors' Br. at 13 [Dkt. No. 6172].

The Government is now proposing a series of modifications to the Consent Order. At least one (and perhaps more) of the Government's requested modifications are of significant importance to the Defendants. The one that Defendant seem most upset about appears to be the Government's request to change the "Trigger Date." The Consent Order provides that the Defendants will begin publishing corrective statements within a specific named time period after a "Trigger Date." The Consent Order defines "Trigger Date" as "the date on which appeals are exhausted in the appeal noticed from Order #34-Remand . . . and in any timely appeals noticed from this Consent Order." Order #51-Remand, § I(L). In other words, the Defendants were relieved from publishing any of the corrective statements until the very last available appeal (including even a possible appeal to the Supreme Court). In its brief, the Government now requests that the Court modify the Consent Order's "Trigger Date" to mean "the date of this Order" (i.e., whatever Order this Court issues in response to the Parties' briefing).

Obviously, this would be an extremely important change in the underlying Consent Order. Moreover, the Consent Order clearly states that the term of the agreement "cannot be modified or amended without written consent by all parties." Order #51-Remand, § VI(10). According to the Defendants, "[t]he Government has nevertheless proposed modifications to the Consent Order that are inconsistent with the parties' agreement and not required by the D.C. Circuit's decision." Defs.' Br. at 33 [Dkt. No. 6175]. Given the language of the Consent Order, the Court concludes that the Defendants' objection to the request of the Government and Intervenors to make what they consider to be minor changes in the Consent Order is inconsistent with the language cited above from the Consent Order.

Oddly enough, despite their position on the Trigger Date, Defendants themselves also ask for certain changes to the Consent Order. Defs.' Br. at 30-33. The Court cannot help but note that what is sauce for the goose is sauce for the gander. Consequently, again relying on the clear language of the Consent Order, and this Court's own knowledge from the Parties about the difficulties they had in negotiating that document, the Court concludes that neither Party at this time may make any unilateral changes in the Consent Decree.

For all these reasons and, in accordance with the Remand of the Court of Appeals, this Court adopts the corrective statements submitted by the Government and contained on pages 4-6 herein.

February 8, 2016

Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**

-11-