UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> and ) <br> ) <br> TOBACCO-FREE KIDS ) <br> ACTION FUND, *et al.* ) <br> ) <br> Plaintiff-Intervenors ) <br> ) <br> v. ) <br> ) <br> PHILIP MORRIS USA INC., *et al.*, ) <br> ) <br> Defendants, ) <br> ) <br> *and* ) <br> ) <br> ITG BRANDS, LLC, *et al.*, ) <br> Post-Judgment Parties Regarding ) <br> Remedies. ) <br> ) | Civil Action No. 99-CV-2496 (PLF) <br> Next scheduled court appearance: <br> NONE |

(Proposed)
ORDER # 72a -Remand

**SECOND SUPERSEDING CONSENT ORDER IMPLEMENTING THE CORRECTIVE
STATEMENTS REMEDY FOR NEWSPAPERS AND TELEVISION**

Upon consideration of the Consent Motion for Entry of Second Superseding Consent (Dkt. 6223) Order Implementing the Corrective Statements Remedy for Newspapers and Television, and the entire record herein, the motion is GRANTED and it is hereby ORDERED that:

The corrective statements remedy under Order #1015 (Dkt. No. 5733; issued Aug. 17,

2006), published as *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1, 938-41 (D.D.C.

1

2006), *aff'd in part & vacated in part*, 566 F.3d 1095 (D.C. Cir. 2009) (*per curiam*), *cert. denied*, 561 U.S. 1025 (2010), is hereby MODIFIED as set forth below:

**PART 1: REVISED TEXT FOR CORRECTIVE STATEMENTS**

As required by the Court of Appeals in *United States v. Philip Morris USA, Inc.*, 801 F.3d 250 (D.C. Cir. 2015), and *United States v. Philip Morris USA Inc.*, 855 F.3d 321 (D.C. Cir. 2017), and the memorandum opinions accompanying Order #62-Remand and Order #67-Remand, the text of the Corrective Statements shall be as follows for Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA:

**A.  Adverse Health Effects of Smoking**

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA[1] to make this statement about the health effects of smoking.

- Smoking kills, on average, 1,200 Americans. Every day.

- More people die every year from smoking than from murder, AIDS, suicide, drugs, car crashes, and alcohol, **combined**.

- Smoking causes heart disease, emphysema, acute myeloid leukemia, and cancer of the mouth, esophagus, larynx, lung, stomach, kidney, bladder, and pancreas.

- Smoking also causes reduced fertility, low birth weight in newborns, and cancer of the cervix.

**B.  Addictiveness of Smoking and Nicotine**

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about the addictiveness of smoking and nicotine.

- Smoking is highly addictive. Nicotine is the addictive drug in tobacco.

- Cigarette companies intentionally designed cigarettes with enough nicotine to create and sustain addiction.

---

[1] For all statements, wherever the company names are listed they will appear in the sequence detailed in the substantive specifications below.

2

- It's not easy to quit.

- When you smoke, the nicotine actually changes the brain – that's why quitting is so hard.

C. **Lack of Significant Health Benefit from Smoking "Low Tar," "Light," "Ultra Light," "Mild," and "Natural" Cigarettes**

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about low tar and light cigarettes being as harmful as regular cigarettes.

- Many smokers switch to low tar and light cigarettes rather than quitting because they think low tar and light cigarettes are less harmful. They are **not**.

- "Low tar" and "light" cigarette smokers inhale essentially the same amount of tar and nicotine as they would from regular cigarettes.

- All cigarettes cause cancer, lung disease, heart attacks, and premature death – lights, low tar, ultra lights, and naturals. There is no safe cigarette.

D. **Manipulation of Cigarette Design and Composition to Ensure Optimum Nicotine Delivery**

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about designing cigarettes to enhance the delivery of nicotine.

- Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA intentionally designed cigarettes to make them more addictive.

- Cigarette companies control the impact and delivery of nicotine in many ways, including designing filters and selecting cigarette paper to maximize the ingestion of nicotine, adding ammonia to make the cigarette taste less harsh, and controlling the physical and chemical make-up of the tobacco blend.

- When you smoke, the nicotine actually changes the brain – that's why quitting is so hard.

E. **Adverse Health Effects of Exposure to Secondhand Smoke**

A Federal Court has ordered Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA to make this statement about the health effects of secondhand smoke.

- Secondhand smoke kills over 38,000 Americans each year.

3

- Secondhand smoke causes lung cancer and coronary heart disease in adults who do not smoke.

- Children exposed to secondhand smoke are at an increased risk for sudden infant death syndrome (SIDS), acute respiratory infections, ear problems, severe asthma, and reduced lung function.

- There is no safe level of exposure to secondhand smoke.

**PART 2: REVISED IMPLEMENTATION SPECIFICATIONS FOR CORRECTIVE STATEMENTS FOR NEWSPAPERS AND TELEVISION**

I. **Definitions**

A. "Benchmark timeslot" for a particular month means the timeslot that received the fewest average impressions (18-99+) among CBS, ABC, and NBC, Monday through Thursday, between 7:00 p.m. and 9:59 p.m., during the most recent three-month period that ended a full month before the month in question.

B. "Corrective Statements" or "Statements" mean the text of the statements set forth in Part 1 above.

C. "Defendants" means Altria, R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Philip Morris USA. To the extent any obligations under this Second Superseding Consent Order Implementing the Corrective Statements Remedy for Newspapers and Television pertaining to Lorillard Tobacco Company have been transferred to R.J. Reynolds Tobacco Company, as contemplated by the Notice of Transaction Involving Defs. R.J. Reynolds Tobacco Company and Lorillard Tobacco Company (Dkt. No. 6141; filed Apr. 7, 2015), such obligations shall apply to R.J. Reynolds Tobacco Company. The obligations of the Remedies Parties as a result of that transaction and Order #56-Remand (Dkt. No. 6151; issued June 8, 2015), are set out in Order #56-Remand and Order #64-Remand (Dkt. No. 6195; issued April 19, 2016).

D. "Defendant" means the individual company that is making the Corrective Statement.

E. "Exhibit," unless the context indicates otherwise, will refer to exhibits filed with the Consent Motion (filed October 2, 2017) for Entry of Second Superseding Consent Order Implementing Corrective Statements Remedy for Newspapers and Television.

F. "Remedies Parties" refers to ITG Brands, LLC ("ITG Brands"), Commonwealth Brands, Inc. ("Commonwealth"), and Commonwealth-Altadis, Inc. ("Commonwealth-Altadis").

G. "No Sunday exception rule" refers to the concept that for any newspaper that does not publish on the Sunday for which Corrective Statements are required, the Corrective Statement will instead appear in that newspaper in the first section of the Friday edition immediately preceding that Sunday.

H. "Preamble Text" refers to the portion of the text of each Corrective Statement that begins with the words "A Federal Court" and precedes the bulleted text.

I. "Remedial Order" refers to Order #1015 in *United States v. Philip Morris USA Inc. et al.*

J. "Spanish version" of the Statements refers to the text of the Statements translated into Spanish, as set forth in **Exhibits 1** and **2**.

K. "Trigger Date" for publication in newspaper and on television means the date on which publication in newspapers and on television will begin. Provided that this Second Superseding Consent Order Implementing Corrective Statements Remedy for Newspapers and Television is entered on or before October 13, 2017, Defendants will purchase the placement of the Corrective Statements in newspapers and on television to begin on November 26, 2017. To the extent the Court enters this Order *after* October 13, 2017, the "Trigger Date" will be the first

Sunday 56 days after the date of the Court's entry of the Order. For clarity, nothing in this Order alters the definition of Trigger Date or the implementation deadlines for websites or package onserts as set forth in Order #64-Remand.

## II.    Corrective Statements In Newspapers

1. The Defendants will purchase a full newspaper page in the first section of the Sunday edition of the following newspapers, on the schedule listed in Paragraph 6 below:

Atlanta Journal-Constitution; Boston Globe; Charlotte Observer; Chicago Sun-Times; Chicago Tribune; Dallas Morning News; Houston Chronicle; Los Angeles Times; Miami Herald; New York Daily News; New York Times; Philadelphia Inquirer; Richmond Times-Dispatch; San Francisco Chronicle; Tampa Bay Times (formerly St. Petersburg Times); USA Today; Wall Street Journal; Washington Post; the newspapers published by Eastern Group Publications; San Francisco La Oferta Review (NAHP); Chicago Lawndale News (NAHP); La Voz De Houston; New Jersey Star-Ledger; Detroit Free Press; Commercial Appeal (Memphis, TN); Baltimore Sun; New Orleans Times-Picayune; Clarion-Ledger (Jackson, MS); Birmingham News; News Journal (Wilmington, DE); Charleston Post & Courier; Arizona Informant; Little Rock Sun Community Newspaper; Denver Weekly News; Inner City News (CT); Gary Crusader; Louisville Defender; Insight News (MN); St. Louis American; Omaha Star; Call & Post (OH); the newspapers published by KGL Media Group, Inc. d/b/a Sesh Communications; Black Chronicle (OK); Skanner (Portland, OR, and Seattle); and Milwaukee Courier.

2. In the event any newspaper listed in this Section is no longer in print or online, Defendants will notify Plaintiffs. The parties will jointly select an alternative newspaper in approximately the same market.

3. Each newspaper placement will contain one of the five Corrective Statements in its entirety. Altria, R.J. Reynolds Tobacco Company, Lorillard, and Philip Morris USA will each be listed first on one date. As to the remaining date, R.J. Reynolds Tobacco Company will be listed first. This listing of the companies will satisfy the requirement to identify the Defendant making the Corrective Statement.

4. Each Corrective Statement will be substantially similar to and meet the specifications depicted in **Exhibit 3**. The font family shall be Univers LT Std. For a newspaper of 11.55 inches wide by 21 inches tall, the preamble shall be Univers Light, 40 point font size, and 68 point leading, and have approximately 155 points of white space below, as shown in the **Exhibit 3** mock ups. The bullet list shall be Roman, 30 point with .50 stroke, 40 point leading, and have between 48 and 58 points of white space after each bulleted phrase, with additional emphasized words in Univers Black font, as shown in the **Exhibit 3** mock ups. The bulleted text shall be indented one 1-inch tab-stop, with the bullets positioned 0.25 inches to the left of the indented text. Corrective Statements in newspaper pages of other sizes shall be adjusted proportionately. The Corrective Statements will use black text on a white background. To the extent a newspaper requires it, the word "advertisement" shall appear in Univers Light, 10 point font size, at the top center of the page. The text of each Corrective Statement will be centered vertically on the page, leaving equal white space above the first line of the preamble and after the last line of the bulleted text.

5. The Corrective Statements published in Spanish-language newspapers will be the same, but will use the Spanish version of the Corrective Statements in **Exhibit 1**.

6. Defendants will purchase the placement of the Corrective Statements to occur on the following schedule, applying the No Sunday exception rule:

7

a. The publication of the Adverse Health Effects of Smoking Statement (Statement A) in the Sunday editions of the Trigger Date.

b. The publication of the Addictiveness of Smoking and Nicotine Statement (Statement B) in the Sunday editions of the 2nd Sunday following the Trigger Date.

c. The publication of the Lack of Significant Health Benefit from Lights Statement (Statement C) in the Sunday editions of the 6th Sunday following the Trigger Date.

d. The publication of the Manipulation of Cigarette Design Statement (Statement D) in the Sunday editions of the 10th Sunday following the Trigger Date.

e. The publication of the Secondhand Smoke Statement (Statement E) in the Sunday editions of the 14th Sunday following the Trigger Date.

7. Defendants will also run the Corrective Statements in the online versions of each newspaper in which they are placed. Each such Corrective Statement will be substantially similar to and meet the specifications depicted in **Exhibit 4**. Defendants will purchase the online space in a size of at least 300 x 250 pixels (if horizontal) or 300 x 600 pixels (if vertical). Defendants will purchase the space with preference for the highest available location on the home page that can accommodate such size, and if no such space is available, the next most visited location on the website. Defendants will purchase the online space for a duration that will be equivalent to a day run, based on the highest typical daily number of home page impressions for the online publication year, and, if that information is not available, then the average daily number of home page impressions for the online publication year. Defendants will use best efforts to have the online placement appear on the same weekend (Friday through Sunday) the print Corrective Statement appears. The online placement will stop appearing when the total number of impressions are achieved.

8. Each online Corrective Statement will appear as an animation in Flash or JavaScript, with two screens (the first screen for the preamble; the second screen for the bulleted text). Upon the initial view, the first screen will appear for 15 seconds (or as close as reasonably practicable), followed by the second screen, which will appear for 15 seconds (or as close as reasonably practicable). The screens will not rotate beyond any animation time limit established by the website, except to the extent re-initiated by a viewer (who may play or stop the animation at the viewer's discretion). If the website establishes any animation time limit, the loop will end on the second screen. Defendants will submit animated GIFs with two screens capturing the entire Corrective Statement to websites that do not support Flash or JavaScript, as a default for viewing by users who cannot view animated Corrective Statements in Flash, JavaScript, or other animated formats. The format of the online Corrective Statements is subject to the approval of the website owners, and adjustments to the online format may from time to time be necessary to meet the website owner requirements.

9. For online-placements, the font family shall be Arial Regular. For a placement 300 x 250 pixels, the preamble in frame 1 shall be 21 pixels Arial Regular and have between 25 and 31 pixels leading (as reflected in the **Exhibit 4** mock ups). In frame 2, the bullet list shall be 13 pixels Arial Regular with 13 pixels leading, with 10.5 pixels of white space after each bulleted phrase, with additional emphasized words in Arial Bold font, as shown in **Exhibit 4**. The Corrective Statements will use black text on a white background. The copy for frame 1 and frame 2 shall be centered vertically in the frame leaving equal white space above the first line and below the last line of text. Corrective Statements in online placements of other sizes shall be adjusted proportionately.

10. For online-placements, Paragraph 3 above will govern the order in which the Defendants are identified.

**III.   Corrective Statements on Television**

1. Each Defendant will place the Corrective Statements ("spots") on its choice of the three major television networks – CBS, ABC, or NBC. During each month, Defendants may also place up to one-third of the spots on programs on other channels and networks that, during the most recent three-month period that ended a full month before the month in question, had an overall audience (18-99+) at least as large as the benchmark timeslot, so long as Defendants use their best efforts to ensure that each such selected program has more African American viewers than the benchmark timeslot. The TV spots will run a total of five times per week, subject to the availability of network time and upon approval of the network(s) on which the spots will air.

2. The five TV spots to be run each week will be run by each Defendant at its choice between 7:00 p.m. and 10:00 p.m. in the time zone in which the spot airs, between Monday and Thursday, for one year.

3. The spots will run for 52 weeks. In the event that lack of availability of network time precludes Defendants from purchasing all spots within the one-year period, Defendants will continue to purchase spots until they have run each Corrective Statement at least 50 times and have run a total of 260 spots.

4. On a bi-weekly basis during the time period in which the TV spots will run, Defendants will notify Plaintiffs at least one week in advance of the programs, channels/networks, and timeslots of their placements for the forthcoming two weeks. If any of those placements will be made on a program allowed under the second sentence of paragraph 1 in this Section, Defendants will also provide all viewership data, including referencing the source

of the data, from which they determined the program meets all the requirements of the benchmark timeslot and allowed in calculating its overall and African American audience sizes (18-99+).

5. The TV spots will be those in **Exhibit 5**, other than as required to alter the sequence of company names in the copy and in the "paid for by" footer. The following statements (A, C, D, and E) will be placed in 45-second spots: "Adverse Health Effects of Smoking," "Lack of Significant Health Benefit from Lights," "Manipulation of Cigarette Design" and "Secondhand Smoke." The following Statement (B) will be placed in a 30-second spot: "Addictiveness of Smoking and Nicotine."

6. The TV spots will contain the words "Under court order, paid for by Altria, R.J. Reynolds Tobacco, Lorillard, and Philip Morris USA." In both the text of the Corrective Statement and the "paid for" footer, Altria, R.J. Reynolds Tobacco Company, Lorillard, and Philip Morris USA will each be listed first on at least one spot per week. For the final spot each week, R.J. Reynolds Tobacco Company will be listed first.

7. Defendants shall commence airing the TV spots the week immediately following the Trigger Date.

### IV. Additional Provisions

1. This Second Superseding Consent Order Implementing the Corrective Statements Remedy for Newspapers and Television modifies certain provisions of Order #1015, but does not modify the deadline for Defendants' and (where applicable under Order #56-Remand, the Remedies Parties') document depository obligations, which will continue until September 1,

2021. *See* Order #1021 (Dkt. No. 5765; issued Sept. 20, 2006). Where the terms of this Order differ from Order #1015 with respect to the publication of the Corrective Statements in newspapers and on television, this Order will govern. This Order does not address publication of the Corrective Statements on websites or package onserts; those issues have been addressed in Order #64-Remand and nothing in this Order changes those provisions. Any subsequent agreement on publication of Corrective Statements on package onserts or websites will be addressed in a further (proposed) Consent Order that the parties intend to submit subsequently. Exhibit 2 to the parties' Consent Motion for Entry of this Order provides the Spanish-language text for the Remedies Parties that the parties expect will be incorporated in the further (proposed) Consent Order that the parties intend to submit subsequently. Apart from this exhibit's being incorporated by reference in the definition of "Spanish Version," this Order does not address the obligations of the Remedies Parties with respect to Corrective Statements; those issues have been addressed in Order #56-Remand and Order #64-Remand and (apart from the definition of "Spanish Version") nothing in this Order changes those provisions. Any subsequent agreement on the obligations of the Remedies Parties with respect to Corrective Statements will be addressed in the further (proposed) Consent Order that the parties intend to submit subsequently. This Order does not resolve the outstanding issue of Corrective Statements in retail point-of-sale displays.

2. The Corrective Statement formats specified above are intended to be comprehensive. No Defendant shall alter, modify, or add to the specified elements of these formats, and no additional text, images, voice-over or other elements may be included.

3. Defendants shall be responsible for the placement of all Corrective Statements in the media described herein; and for the production of the Corrective Statements in all media

described herein other than TV spots. Specific implementations for newspapers and television were filed as Exhibits to the Consent Motion for Entry of this order.

4. The parties agree that, if the parties' (Proposed) Second Superseding Consent Order Implementing the Corrective Statements Remedy for Newspapers and Television is approved by the district court without modification, then Defendants and the Remedies Parties will not challenge on appeal this Second Superseding Consent Order for Newspapers and Television, and the specific implementation executions for newspapers and television will commence on the schedule specified herein. However, should the district court modify any term or requirement in the parties' (Proposed) Second Superseding Consent Order Implementing the Corrective Statements Remedy for Newspapers and Television, no party waives or abandons any appeal or appellate rights or argument, and the parties reserve the right to seek different requirements than those stated herein.

5. Defendants and the Remedies Parties' agreement to these terms and to these executions of the language of the Corrective Statements shall not be deemed or construed as an admission of the Defendants or the Remedies Parties, collectively or individually.

6. Nothing in this Order precludes Plaintiffs from seeking further relief of any kind based on violations of the Remedial Order injunction not related to the requirements of this agreement, or from presenting any argument not based on this agreement in defense of the Court-ordered Corrective Statements or Remedial Order.

7. The United States' agreement to these terms does not constitute, and shall not be used as evidence of, permission or authorization to advertise cigarettes on websites or social media notwithstanding the Broadcast Ban, 15 U.S.C. § 1335.

8. This Second Superseding Consent Order Implementing the Corrective Statements Remedy for Newspapers and Television is the complete agreement of the parties as to the implementation of the corrective statement remedy in newspapers and on television and supersedes any prior negotiations, agreements, or understandings of the parties with respect to those media only. The terms of this Order cannot be modified or amended without written consent by all parties.

DATED: October 5, 2017

PAUL L. FRIEDMAN
United States District Judge

We consent to entry of the above superseding consent order:

Dated: October 2, 2017

JILL FURMAN, Deputy Director
ANDREW CLARK, Assistant Director
Consumer Protection Branch

\_\_\_/s/\_\_\_
DANIEL K. CRANE-HIRSCH
Trial Attorney
Civil Division
United States Department of Justice
PO Box 386
Washington, DC 20044-0386
Telephone: 202-616-8242 (Crane-Hirsch)
Facsimile: 202-514-8742
E-mail address:
daniel.crane-hirsch@usdoj.gov

*Attorneys for Plaintiff United States of America*

/s/
Katherine A. Meyer (D.C. Bar 244301)
MEYER GLITZENSTEIN & EUBANKS LLC
4115 Wisconsin Ave., N.W. Suite 210
Washington, DC 20016
202-588-5206
kmeyer@meyerglitz.com

*Attorney for the Public Health Plaintiff-Intervenors*


/s/
Anand Agneshwar
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022-4690
Telephone: (212) 715-1107
Fax: (212) 715-1399

Miguel A. Estrada (D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8257
Fax: (202) 530-9016

*Attorneys for Defendants
Altria Group, Inc. and Philip Morris USA Inc.*

                              /s/
                      Peter J. Biersteker (D.C. Bar No. 358108)
                      JONES DAY
                      51 Louisiana Avenue, N.W.
                      Washington, D.C. 20001-2113
                      Telephone: (202) 879-3939
                      Fax: (202) 626-1700

                      Geoffrey K. Beach
                      R. Michael Leonard
                      WOMBLE CARLYLE SANDRIDGE &
                      RICE, PLLC
                      One West Fourth Street
                      Winston-Salem, NC 27101
                      Telephone: (336) 721-3721
                      Fax: (336) 733-8389

                      Jeffrey A. Mandell (D.C. Bar No. 999791)
                      STAFFORD ROSENBAUM LLP
                      222 West Washington Avenue
                      Madison, WI 53703
                      Telephone: (608) 256-0226
                      Fax: (608) 259-2600

                      *Attorneys for Defendant*
                      *R.J. Reynolds Tobacco Company*
                      *(individually and as successor by merger to*
                      *Brown & Williamson Tobacco Corporation*
                      *and as successor to Lorillard Tobacco*
                      *Company)*

/s/

Robert J. Brookhiser, Jr. (D.C. Bar No. 202168)
Elizabeth B. McCallum (D.C. Bar No. 451361)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Telephone: (202) 861-1500
Fax: (202) 861-1783

*Attorneys for Post-Judgment Parties Regarding Remedies ITG Brands, LLC; Commonwealth Brands, Inc. and Commonwealth-Altadis, Inc.*

**Exhibits to Consent Motion (filed October 2, 2017) for Entry of Joint Second Superseding Consent Order Implementing Corrective Statements for Newspapers and Television**

1. Spanish version of Corrective Statements (for Defendants)

2. Spanish version of Corrective Statements (for Remedies Parties)

3. Newspaper print exemplars

4. Online exemplars (for newspaper websites)

5. Television spots in MP4 format