## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
| ) | |
| Plaintiff,     ) | Civil Action No. 99-CV-2496 (PLF) |
| ) | |
| ) | |
| v.     ) | |
| ) | |
| PHILIP MORRIS USA INC., *et al.*,     ) | |
| ) | |
| Defendants.     ) | |
| ) | |
| ) | |

## JOINT STATUS REPORT REGARDING EVIDENTIARY HEARING ON CORRECTIVE STATEMENTS AT RETAIL POINTS-OF-SALE

Pursuant to Order #86-Remand (ECF 6283; filed May 21, 2019),[1] the parties and national retailer groups[2] respectfully submit this joint status report regarding the evidentiary hearing on the corrective statements remedy at retail point-of-sale ("POS"). As the Order noted, this is "the last remaining issue on remand before the Court." This status report responds to the five requests in Order #86-Remand.

However, some of the responses are necessarily preliminary because, as detailed below, the scope of the evidentiary hearing, and hence the nature and number of witnesses whose

---

[1] The Court extended the date for submission of this joint status report to June 18, 2019, by its minute order entered on May 28, 2019.

[2] The parties are the United States and the Public Health Intervenors (collectively "Plaintiffs"); Philip Morris USA Inc., Altria Group, Inc., and R.J. Reynolds Tobacco Company (individually, as successor in interest to Brown & Williamson Tobacco Corporation, and as successor to Lorillard Tobacco Company) (collectively "Defendants"); and ITG Brands, LLC, Commonwealth Brands, Inc., and Commonwealth-Altadis, Inc. (collectively "Remedies Parties"). Defendants and Remedies Parties are collectively referred to as "manufacturers."

The non-party national retailer groups that (to the knowledge of the parties) intend to participate in the hearing are NACS (an association of gas and convenience stores) and the National Association of Tobacco Outlets ("NATO").

testimony will likely be needed, is in dispute. The parties and national retailer groups accordingly request the Court's guidance on the scope of the evidentiary hearing, as set out in their separate statements below.

Once the parties and national retailer groups have the Court's guidance on the scope of the evidentiary hearing, they anticipate working together to develop and propose a scheduling order governing their disclosures and filings leading up to the hearing. This proposed scheduling order would set out deadlines for the parties and national retailer groups to make witness disclosures, to exchange exhibits and objections, to agree upon and file stipulated facts, to attend a final prehearing conference, and for any post-hearing submissions the Court may wish to include at that juncture. This process will facilitate a more efficient evidentiary hearing.

Subject to these introductory comments, we provide the following preliminary responses to the requests in Order #86-Remand:

***Proposed agreed-upon dates for an evidentiary hearing in July, September, or October.***

The earliest date that works for all parties and national retailer groups is the week of October 28, 2019.

***How many days do the parties anticipate needing for the evidentiary hearing?***

If the evidentiary hearing includes only the issues recommended in Plaintiffs' statement below, 4-5 hearing days may suffice. If the evidentiary hearing also involves the issues recommended in the manufacturers and national retailer groups' statement below, up to 8 hearing days may be needed.

*How many people are expected to testify?*

Depending on the scope of the issues to be addressed during the hearing, 6-8 witnesses for Plaintiffs, 6-12 witnesses for manufacturers, and 4-8 witnesses for the national retailer groups are expected to testify.

*Please list all of the parties and third parties that will be represented at the hearing.*

Plaintiffs

 United States of America

 Public Health Intervenors (all represented by the same counsel)

  American Cancer Society

  American Heart Association

  American Lung Association

  Americans for Nonsmokers' Rights

  National African American Tobacco Prevention Network

  Tobacco-Free Kids Action Fund

Defendants

 Philip Morris USA Inc.

 Altria Group, Inc.

 R.J. Reynolds Tobacco Company

Remedies Parties (all represented by the same counsel)

 ITG Brands, LLC

 Commonwealth Brands, Inc.

 Commonwealth-Altadis, Inc.

Third-party National Retailer Groups (separately represented)

> NACS

> National Association of Tobacco Outlets

**_Please list the docket numbers for all of the filings that the Court need consider in resolving this issue._**

The parties recommend that the Court review Plaintiffs' 2018 proposal, then Defendants' response, followed by the national retailer groups' responses and then separately the materials relating specifically to ITG Brands. This sequence would be:

- Docket No. 6276: Plaintiffs' 2018 Supplemental Brief on Retail Point of Sale Remedy, at 1-41 and 48-50 (all but ITG Brands section), with declaration and exhibits;

- Docket No. 6278: Defendants' Reply in Support of Their Supplemental Brief Regarding Point-of-Sale Display Requirements, with declarations;

- Docket No. 6279: NACS' Supplemental Reply Brief Concerning Order #1015's Point-of-Sale Display Requirements, with exhibits;

- Docket No. 6277: Brief of NATO in Response to Plaintiffs' 2018 Supplemental Brief on Retail Point-of-Sale Remedy, with declaration;

- Docket No. 6273: 2018 ITG opening memorandum on POS remedy, with exhibit;

- Docket No. 6276: Plaintiffs' 2018 Supplemental Brief on Retail Point of Sale Remedy, at 42-48 (ITG Brands section), with cited paragraphs of declaration;

- Docket No. 6280: Reply in Support of Post Judgment Party Regarding Remedies ITG Brands, LLC's Submission Concerning Point-of-Sale Display Remedies, with exhibits.

The parties are reviewing the earlier docket entries for factual materials that may be of assistance to the Court and will continue seeking agreement on a list of such materials to be presented to the Court at the June 24 Status Conference.

**THE PARTIES' DISPUTES REGARDING THE ISSUES THAT NEED TO BE RESOLVED**

The scope of the evidentiary hearing, the issues the Court plans to resolve after the hearing, and the conclusiveness and finality of the Court's intended post-hearing order will all likely affect the number of witnesses, the hearing length, and the parties' and national retailer groups' preparation time. The parties and the national retailer groups agree that the threshold question of which issues will be part of the evidentiary hearing is of the utmost importance. But they disagree both about the identity of those issues, and also about how the Court should determine what those issues are.

Plaintiffs' view: The D.C. Circuit vacated the point-of-sale media channel for the corrective statement remedy and remanded with instructions for the district court to "evaluate" the remedy and "make due provision for" the rights of *retailers—*not manufacturers. *United States v. Philip Morris USA Inc.* ("2009 Opinion"), 566 F.3d 1095, 1142 (D.C. Cir. 2009) (*per curiam*) (brackets omitted). Plaintiffs thus consider this Court's overarching task on remand to be to seek to "craft[] a new version reflecting the rights of third parties," *id.* (not the rights of manufacturers); or, were the Court to determine this could not be done, to deny this part of the remedial order. In Plaintiffs' view, the objective of the hearing should be a specific and detailed order that will conclusively resolve the point-of-sale issue while making due provision for the rights of retailers. Plaintiffs accordingly propose that the hearing address the following issues:

1. How Plaintiffs' proposed fixed-percentage approach to point-of-sale corrective statements should be

   a. Defined
   b. Administered, and
   c. Monitored.

2. Whether the remedy as reduced to such an order would

   a.  Make "due provision" for retailers' rights and interests, namely,

         i.  Economic effects on retailers
       ii.  Intangible harms to retailers
     iii.  Effects on retailers' contract and property rights
     iv.  Retailers' First Amendment rights, and
      v.  Retailers' due-process rights.

   b.  Avoid ordering each manufacturer separately to require the same retail store to display substantively identical, but separate, signs.

The manufacturers and national retailer groups have identified additional matters on which they believe the Court should receive evidence and rule upon—many of them seemingly before the Court determines whether to go on to receive evidence on the topics Plaintiffs have identified. In Plaintiffs' view, these additional topics exceed the scope of the remand.

It appears that the manufacturers and national retail groups wish the Court to order briefing, hold oral argument, or both, on whether the Court should receive evidence and oral argument on these topics at an evidentiary hearing. While all agree that clarity will help guide preparation for and presentation at the hearing, Plaintiffs expect that the Court knows what issues led it to determine that an evidentiary hearing is needed, and will be able to set those issues out in an order following the June 24 hearing without briefing and argument.

In Plaintiffs' view, most of the proposed additional topics have either been decided or are forfeited; the remainder have been briefed and need not postpone or prolong the Court's evidentiary hearing.

*Prevent-and-restrain efficacy.* The manufacturers' and national retail groups' first proposed additional topic is the prevent-and-restrain efficacy of a point-of-sale media channel. This has been decided and is subject to law-of-the-case doctrine; "a court involved in later phases of a lawsuit should not re-open questions decided." *United States v. Philip Morris USA Inc.*, 855 F.3d 321, 327 (D.C. Cir. 2017) (internal quotation marks omitted). The 2009 decision held that

"requiring Defendants to issue corrective statements will 'prevent and restrain them from making fraudulent public statements on smoking and health matters in the future.'" 2009 Opinion, 566 F.3d at 1140 (quoting this Court's decision with approval).

The manufacturers and national retailer groups contend that Defendants preserved this precise issue—the prevent-and-restrain efficacy of a point-of-sale media channel—specifically by presenting it on appeal, citing their 2008 brief at 132-33. (See Exhibit 1 to this joint status report.) But the passage they quote was from their section "E," titled, "Lack of Fair Notice" (and *not* their section "C," titled, "Countertop and Header Displays"). They wrote:

### E. Lack of Fair Notice

The district court's remedies should be reversed because they were imposed without adequate notice and opportunity to respond as required by due process and, consequently, the record is devoid of evidence that these remedies would be effective in preventing and restraining future RICO violations. *See Microsoft*, 253 F.3d at 101-03 (noting the "cardinal principle of our system of justice that factual disputes must be heard in open court and resolved through trial-like evidentiary proceedings"); …

Defs.' 2008 Br. at 132-33 (Ex. 1 to this joint status report). The D.C. Circuit explicitly considered and rejected this "fair notice" argument, saying among other things, "This case bears no resemblance to *United States v. Microsoft Corp.*, 253 F.3d 34 (2001), as Defendants attempt to suggest." 2009 Opinion, 566 F.3d at 1139. Defendants protested the alleged lack of proof of prevent-and-restrain efficacy only with respect to their alleged failure to receive adequate notice, and the relief they sought was reversal of the full corrective-statement remedy. The D.C. Circuit rejected the argument; did not provide the relief requested; and most certainly did *not* sua sponte vacate and remand with instructions for this Court to take evidence on prevent-and-restrain efficacy before requiring court-ordered statements for the point-of-sale media channel—or for

any other media channel. Defendants did not request, and emphatically did not win, a remand for this Court to take evidence on point-of-sale, or any other kind of, prevent-and-restrain efficacy.

The manufacturers and national retail groups complain that Plaintiffs' 2018 point-of-sale proposal modified the form of the remedy so as to make "due provision" for the retailers' previously expressed concerns. Stating this as an objection seems sufficient to refute it. The proposed remedy incorporates the same topics and language the D.C. Circuit has previously upheld under RICO's "prevent and restrain" authority. There is no mandate for this Court to re-open the D.C. Circuit's decisions; and even if there were, the manufacturers present nothing to suggest that the precise form of presentation has any bearing on prevent-and-restrain efficacy.

*Superfluity; manufacturers' economic and related harms.* The next two proposed additional arguments are subject to forfeiture. They could and should have been raised as part of Defendants' appeal from this Court's 2006 order. They were not, and are thus forfeited; "[t]he rule in this circuit is that litigants must raise their claims on their initial appeal and not in subsequent hearings following a remand." *Owens v. Republic of Sudan*, ___ F.3d ___, No. 14-5105, 2019 WL 2180333, at *2 (D.C. Cir. May 21, 2019) (internal quotation marks omitted). On appeal from the 2006 order, Defendants devoted five sections of their principal brief to arguments against corrective statements. Defs.' Br. at 127-35 (for convenience, the relevant pages are attached as Exhibit 1). In subsequent appeals, the D.C. Circuit has ruled at least twice that any other corrective-statement challenges that could have been brought in that appeal are waived. *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 853 (D.C. Cir. 2016) (holding that if number of TV spots required by 2006 order was clear, then challenge on remand from the 2009 Opinion was untimely); *United States v. Philip Morris USA, Inc.* ("2015 Opinion"), 801 F.3d 250, 258-59 (D.C. Cir. 2015) (holding that various challenges to corrective-statement topics

as ordered in 2006 were waived because they could have been but were not raised in Defendants' appeal from the 2006 order).

In particular, the manufacturers (and apparently the retailers) propose submitting evidence and argument about whether requiring manufacturers to disseminate corrective statements thorough the point-of-sale media channel is superfluous, in light of the other media channels that this Court ordered in 2006 and that the manufacturers began implementing on remand in late 2017. They also propose evidence and argument on whether the *manufacturers'* (not the retailers') economic and other rights militate against this media channel. These additional topics could have been raised on appeal from the 2006 order; they were not, and are forfeited. *Owens*, 2019 WL 2180333, at *2; *see also* 2015 Opinion, 801 F.3d at 258-59, 263 (holding that contentions are waived if they could have been but were not raised on a prior appeal, and in particular, that the manufacturers waived any argument that the *other* corrective-statement media channels were superfluous because they did not argue superfluity on appeal from the 2006 order).

*Manufacturers' First Amendment rights.* The manufacturers and national retailer groups contend that there have been substantial changes in First Amendment law since the D.C. Circuit held, in this case, that a corrective-statement remedy in this case complies with the First Amendment. This has been fully briefed. *See, e.g.*, Pls. 2018 Br. at 36-41 (ECF 6276). There is no need to postpone or expand the scope of the evidentiary hearing to address these arguments.

*ITG company-specific arguments*. Finally, ITG Brands raises various company-specific arguments against having *any* point-of-sale requirements applied to it. ITG Brands evidently takes the reference in Order #56-Remand to "applicability" to mean that this Court intended to let billions of dollars of annual cigarette sales, some 7% of the nation's cigarette market, change

hands—but to leave as an open question, for decision some other day, whether those products would be subject to any point-of-sale remedy at all. Plaintiffs consider that Order 56-Remand's reference to "applicability" merely authorized company-specific arguments about *how* the remedy should be applied to ITG Brands. Plaintiffs' Issue 1.a. encompasses discussions about *how* the remedy should be applied to ITG Brands. The separate question of *whether* ITG Brands should be subject to the point-of-sale media channel *at all* has been briefed and is ready for adjudication, without awaiting the evidentiary hearing. *See* ECF 6273 *passim* (2018 ITG opening brief); ECF 6276 at 42-48 (2018 Plaintiffs' brief); ECF 6280 at 2-5 (2018 ITG reply brief).

The breadth of the manufacturers' effort to expand the Court's evidentiary hearing is exhibited by their suggestion that the Court should receive evidence on, and rule upon, the extent to which they have been in compliance with the final injunction.[3] The function of the corrective statement remedy is to prevent and restrain further deception without the need for additional proceedings to prove further bad conduct by the manufacturers. If the manufacturers truly believe that their post-judgment conduct entitles them to relief from the Court's order, then they should file a proper motion seeking such relief, rather than attempt to graft it onto the Court's upcoming proceedings to consider the interests of *retailers*, as mandated by the Court of Appeals' remand. Put simply, the Court does not need a hearing on the *manufacturers'* post-trial conduct in order to craft a point-of-sale remedy that makes due provision for *retailers'* rights.

---

[3] The manufacturers' view that they are and have been in compliance is, for present purposes, a fact for them to prove with evidence if they wish. Plaintiffs' not (yet) undertaking to prove contempt of court by clear and convincing evidence no more establishes the manufacturers' compliance with the RICO injunction than alleged "'silence and delay' over the years" before filing this lawsuit waived the United States' claims about Defendants' violating RICO. *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 68 (D.D.C. 2004).

After the Court has heard the evidence and the parties' and retailers' arguments, the manufacturers and national retail groups seemingly urge the Court to send the parties, and perhaps the retailers, to mediation. Any efficient determination of whether "due provision" for the retailers' rights can be made will be inextricably bound up with determining the form of the remedy. If the Court is able to reach a decision, it must necessarily be an entire and final one. Plaintiffs will urge that the Court's post-hearing order include a specific and detailed point-of-sale corrective-statement remedy. Years of post-remand experience in this case demonstrate that sending the parties to mediation to develop specifications to implement corrective-statement remedies is inevitably protracted, inefficient, and simply delays the day that appeals to the D.C. Circuit may begin. Mediation is not necessary. Plaintiffs believe that the Court, after receiving evidence, argument, and post-hearing submissions, will be able to fashion a final post-hearing order that will conclusively resolve the point-of-sale issues and leave nothing for mediation.

Manufacturers' and national retailer groups' view: The manufacturers and national retailer groups agree that this Court should hear evidence on the issues (and related sub-issues) identified by Plaintiffs.[4] The manufacturers and national retailer groups also believe that the D.C.

---

[4] In the view of the manufacturers and national retailer groups, Plaintiffs' Issues 1.a-1.c encompass, but are not necessarily limited to, a number of more specific sub-issues that the manufacturers and national retailer groups have articulated. Those include: whether Plaintiffs have addressed aspects of their proposed POS remedy that are thus far incomplete, ambiguous, or amorphous such that the proposed remedy meets the requirements of Rule 65(d); the pervasiveness of the proposed all-advertising-and-merchandising-space approach of Plaintiffs' proposed POS remedy in different types of retail settings; the impracticality of Plaintiffs' proposed POS remedy, as understood with respect to manufacturers' ability to implement and administer the remedy, retailers' ability to implement and administer the remedy, and manufacturers' and retailers' ability to monitor compliance; and whether, if the concept of Plaintiffs' proposed POS remedy is legally appropriate, there is sufficient rationale and evidentiary support for requiring 25 percent of all advertising and merchandising space be

Circuit's vacatur and remand of the POS remedy, and Plaintiffs' decision to propose an entirely new point of sale remedy in the last round of briefing, necessitate that this Court consider and rule upon the following additional matters:

1. Whether the proposed POS remedy would be an appropriate means to prevent and restrain future RICO violations, as required under 18 U.S.C. § 1964(a) for this Court to impose the remedy;

2. Whether the manufacturers' dissemination of corrective statements in other media channels under Order #72-Remand (newspapers and TV) and Order #81-Remand (websites and onserts) renders a POS remedy duplicative, unnecessary, or inappropriate;

3. Whether the POS remedy would impermissibly infringe on the manufacturers' economic rights and free-speech rights, or impose improper intangible harms (such as loss of customer goodwill); and

4. Whether in light of Order #56-Remand joining ITG Brands to this litigation as a Remedies Party and its status as a Remedies Party, ITG Brands[5] should be included in the POS media channel corrective statement remedy and if so to what extent.

The manufacturers and national retailer groups respectfully request an opportunity to present their views more completely through briefing and oral argument before the Court makes a final decision on the scope of the evidentiary hearing. The dispute over the proper scope of the evidentiary hearing is too complicated for this Court to decide it on the basis of this Joint Status Report and the status conference; this dispute requires exploration of the record and careful legal argument. This Joint Status Report is not the proper vehicle. Indeed, the parties worked diligently to narrow the gaps between their positions on these issues and to present them clearly

---

devoted to POS signage and imposing other as-yet-undefined requirements of Plaintiffs' proposed POS remedy. In addition, the manufacturers and national retailer groups believe that Plaintiffs' Issue 2.b should be rephrased as "Whether the remedy would avoid duplication as directed by the D.C. Circuit."

[5] Order #56-Remand provides Remedies Parties Commonwealth Brands, Inc. and Commonwealth-Altadis, Inc. could be subjected to a POS remedy only to the extent that they sell the Winston, Kool, Salem, or Maverick brands.

here, but time ran short, necessitating these separate presentations of views from Plaintiffs, on the one hand, and manufacturers and national retailer groups, on the other, without sufficient opportunity for either side to consider and respond to all aspects of the other's position. To facilitate a full airing of views, the Court should set a briefing schedule for additional submissions regarding the issues to be resolved at the evidentiary hearing.[6] The manufacturers and national retailer groups set forth below a preliminary explanation for their position that the evidentiary hearing should encompass additional issues beyond those specified by Plaintiffs.

The D.C. Circuit vacated the POS remedy in 2009; it then instructed this Court to proceed on remand "either by abandoning this part of the remedial order or by crafting a new version reflecting the rights of third parties." 566 F.3d at 1142. The D.C. Circuit expressly anticipated that there might be no POS remedy: it could have required that the remedy be reformed and reinstated. It did not do so. Instead, the D.C. Circuit vacated the POS requirement while leaving open the *possibility* that POS could be reformulated in a lawful manner, without suggesting that reinstatement of the remedy was likely, much less certain. As a result, before granting Plaintiffs' proposal to impose a new POS remedy on remand, this Court must not only ensure the proposal "mak[es] due provision for the rights of innocent persons," 18 U.S.C. § 1964(a), but also be satisfied Plaintiffs have demonstrated that the proposal falls within its statutory jurisdiction under Section 1964(a), which "provides the District Courts jurisdiction only

---

[6] For example, Plaintiffs argue that mediation regarding implementation details will be unnecessary if the Court decides to re-impose the POS remedy. Given the lack of detail in Plaintiffs' most recent (and completely transformed) POS proposal—which does not specify, for example, the font and color of the POS signs, the size of the signs or their arrangement on POS fixtures and displays, or whether the signs need to be rotated—any hearing sufficient to enable this Court to issue a final and complete POS order addressing all implementation details would likely exceed the 4-5 days proposed by Plaintiffs.

for forward-looking remedies that prevent and restrain violations of [RICO]." *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1192 (D.C. Cir. 2005). In addition, the Court must determine whether any new POS remedy is consistent with general equitable principles governing its authority to issue injunctive relief and, in particular, whether the POS remedy is appropriate despite the widespread dissemination of the court-ordered corrective statements in other formats. And finally, the Court must ensure that any POS remedy does not require duplicative signage. After remand, the parties exchanged a number of briefs over several years. It was only in the final round of briefing that Plaintiffs completely changed course and proposed their current scheme, which differs in kind from the remedy as original ordered by the district court, considered by the Court of Appeals, or ever previously at issue between the parties.

Plaintiffs assert that the propriety of the POS remedy under Section 1964(a) and with respect to manufacturers' First Amendment rights is beyond dispute, either because it is settled law of the case or because Defendants forfeited the issue. Neither rationale is correct.

*Law of the case*

Law-of-the-case doctrine does not apply here. *First*, it is inconsistent with the procedural history in which the D.C. Circuit vacated the POS remedy and expressly anticipated it may not be re-imposed. The D.C. Circuit's decision that "requiring Defendants to issue corrective statements will 'prevent and restrain them from making fraudulent public statements on smoking and health matters in the future,'" 566 F.3d at 1140, does not justify imposition of Plaintiffs' new proposed POS remedy after manufacturers have extensively disseminated the court-ordered corrective statements over the past two years through national newspaper publications, primetime television spots, publication on the homepage on their websites, and distribution on hundreds of millions of package onserts thus far (as well as thirteen uncontested years of

14

compliance with the Court's injunction directly preventing and restraining fraudulent statements of the type purportedly addressed by the proposed POS remedy).

*Second*, the POS remedy is distinct in numerous ways from the other media channels through which the court-ordered corrective statements were disseminated; Plaintiffs cannot ignore the distinctions and bootstrap the vacated POS remedy into the D.C. Circuit's approval of those other media channels.

*Third*, after nearly a decade of advocating a POS remedy largely congruent with the one previously vacated, Plaintiffs reversed course in the most recent briefing and proposed a radically different approach that neither this Court nor the Court of Appeals has considered so far. The novelty of Plaintiffs' eleventh-hour proposal is itself incompatible with their argument that the POS remedy has been clearly condoned by the D.C. Circuit so that any analysis of its fundamental legal soundness is foreclosed. Plaintiffs cannot both reinvent their proposed POS remedy in an attempt to evade the fundamental legal infirmities that have plagued it since inception and also claim that their newly designed version is fully protected by D.C. Circuit decisions that predated any hint of the radical revisions Plaintiffs announced only last August, years after any of the appellate decisions they now cite as having blessed their proposal.

*Forfeiture*

Nor can Plaintiffs avail themselves of a forfeiture argument, for several reasons. *First*, Defendants' 2008 appellate briefing is incompatible with the allegation of forfeiture. In that briefing, Defendants pointed out that "the record is devoid of evidence that" displaying court-ordered messages at retail POS "would be effective in preventing and restraining future RICO violations." (2008 brief at 132-33) While the D.C. Circuit affirmed the propriety of requiring dissemination of the court-ordered corrective statements in other media channels, it had no

occasion to decide that issue with respect to retail POS, because it vacated the POS remedy on other grounds.

*Second*, many of the facts relevant to determining whether the POS remedy Plaintiffs now propose will "prevent and restrain" future RICO violations involve developments subsequent to the D.C. Circuit's 2009 decision. This includes the current proposal itself, which was not formulated until more than nine years after that decision. It also includes the fact that at this point there have been hundreds of millions of corrective statements disseminated to consumers, including through package onserts on products at retail, and thirteen undisputed years of compliance with the Court's injunction directly preventing and restraining fraudulent statements of the type purportedly addressed by the proposed POS remedy. There is no way Defendants could have addressed these material facts in the briefing that preceded the D.C. Circuit's 2009 decision. For that reason, it cannot be that the manufacturers and national retailer groups have forfeited the opportunity to raise these material facts and arguments that arise from them.

*Third*, there have been significant developments in First Amendment law since 2009, both in D.C. Circuit decisions and in opinions from the Supreme Court. Plaintiffs assert this issue has been fully briefed, but that is inaccurate. The manufacturers and national retailer groups addressed this issue only to the extent possible based on Plaintiffs' under-developed proposal to reinvent the POS remedy. As Plaintiffs flesh out that proposal (which they must do in advance of the evidentiary hearing), the details will raise additional facets of the manufacturers' and national retailer groups' First Amendment objections. It is nonsensical for Plaintiffs to argue that their own failure to present a fully developed POS proposal results in the manufacturers and national retailer groups having forfeited these arguments.

16

*Fourth*, the process of determining whether Plaintiffs' new POS proposal "mak[es] due provision for the rights of innocent persons," 18 U.S.C. § 1964(a), is necessarily one of balancing, and it is not possible to weigh the imposition upon retailers without assessing the countervailing benefit the remedy will purportedly deliver. Given this, even if Defendants had forfeited this issue (and, to be clear, they did not), the issue would necessarily need to be addressed by this Court to fulfill the D.C. Circuit's mandate governing consideration of imposing a new POS remedy on remand.

> *ITG-specific issues*

There are also specific issues regarding Remedies Party ITG Brands that post-date the D.C. Circuit's decision on POS remedies and that must be addressed at the evidentiary hearing. ITG Brands did not join this litigation as a Remedies Party until June 9, 2015, years after the D.C. Circuit opinion, as a precursor to buying four brands (Winston, Salem, Kool, Maverick) from R.J. Reynolds Tobacco Company. *See* Order #56-Remand. The order joining ITG Brands permitted it different treatment from the Defendants in some respects, and provided that it could be exempted from future remedies orders if "company-specific factors warrant different treatment." Order #56-Remand at 14 (¶18). With respect to the POS remedy, the order provided that ITG Brands would be "subject to any order concerning the point-of-sale corrective statement displays currently pending before the court" but that "nothing in this Order waives, prejudices, or diminishes ITG Brands's right to be heard as to the applicability of any point-of-sale remedy." Order #56-Remand at 12 (¶10) (emphasis added).

> *Post-hearing issues*

Plaintiffs' outright rejection of implementation mediation is premature. There will almost undoubtedly be questions about how to implement any POS remedy that this Court might order

in the myriad different retailer circumstances to which it might apply—particularly given the almost complete lack of detail in Plaintiffs' new proposal. The parties (and the national retailer groups) should work to resolve those questions informally. The notion that this Court would issue an order so complete as to leave "nothing [further] to be decided" regarding the dizzying array of complex implementation issues is unlikely to be borne out.

All of this puts the cart ahead of the horse. The manufacturers and national retailer groups propose focusing immediately on the tasks at hand—defining the scope of the evidentiary hearing and determining what pre-hearing processes will maximize the efficiency and efficacy of that hearing. Issues of procedure for after the hearing can and should be determined later.

Dated: June 18, 2019

Respectfully submitted,

GUSTAV W. EYLER, Director
ANDREW CLARK, Assistant Director
Consumer Protection Branch

_____/s/_____
DANIEL K. CRANE-HIRSCH
Trial Attorney
Civil Division
United States Department of Justice
PO Box 386
Washington, DC 20044-0386
Telephone: 202-616-8242 (Crane-Hirsch)
Facsimile: 202-514-8742
daniel.crane-hirsch@usdoj.gov

*Attorneys for Plaintiff United States of America*

_____/s/_____
Katherine A. Meyer (D.C. Bar 244301)
MEYER GLITZENSTEIN & EUBANKS LLC
4115 Wisconsin Ave., N.W. Suite 210
Washington, DC 20016

202-588-5206
kmeyer@meyerglitz.com

Scott P. Lewis
slewis@andersonkreiger.com
Christina S. Marshall
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660
Pro Hac Vice to be filed

*Attorneys for the Public Health Plaintiff-*
*Intervenors*

_____/s/_____
Miguel A. Estrada (D.C. Bar No. 456289)
Amir C. Tayrani (D.C. Bar No. 490994)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8257
Fax: (202) 530-9016
mestrada@gibsondunn.com
atayrani@gibsondunn.com

George C. Lombardi *(pro hac vice pending)*
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5969
Fax: (312) 558-5700
glombard@winston.com

*Attorneys for Defendants Altria Group, Inc.*
*and Philip Morris USA Inc.*

_____/s/_____
Peter J. Biersteker (D.C. Bar No. 358108)
Michael A. Carvin (D.C. Bar No. 366784)
JONES DAY

19

51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700
pbiersteker@jonesday.com
macarvin@jonesday.com

Jeffrey A. Mandell (D.C. Bar No. 999791)
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Madison, Wisconsin 53703
Telephone: (608) 256-0226
Fax: (608) 259-2600
jmandell@staffordlaw.com

*Attorneys for Defendant R.J. Reynolds
Tobacco Company (individually, as
successor in interest to Brown & Williamson
Tobacco Corporation, and as successor to
Lorillard Tobacco Company)*


_____/s/_____
Robert J. Brookhiser, Jr. (D.C. Bar No.
202168)
Elizabeth B. McCallum (D.C. Bar No.
451361)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
Telephone: (202) 861-1500
Fax: (202) 861-1783

*Attorneys for Post-Judgment Parties
Regarding Remedies ITG Brands, LLC,
Commonwealth Brands, Inc. and
Commonwealth-Altadis, Inc.*


_____/s/_____
Michael J. Baratz (D.C. Bar No. 480607)
Douglas S. Kantor (D.C. Bar No. 455895)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795

(202) 429-3000

*Attorneys for NACS*

_____/s/_____

Thomas A. Briant
(Minnesota Bar No. 157764)
Thomas A. Briant, P.A.
17595 Kenwood Trail
Minneapolis, MN 55044
952-974-0075

*Attorney for National Association of Tobacco Outlets, Inc.*