# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 99-2496 (PLF) |
| | ) | |
| v. | ) | |
| | ) | Next Scheduled Court Date: |
| PHILIP MORRIS USA INC., *et al.*, | ) | None |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MANUFACTURERS AND RETAILER GROUPS' PROPOSAL REGARDING PROCEDURAL DEADLINES IN ADVANCE OF THE EVIDENTIARY HEARING

This Court issued a Minute Order on June 24, 2019, instructing the parties "to consult and submit a joint status report … laying out the procedural details and proposed schedule for the pre-hearing procedures and the evidentiary hearing." The parties have met and conferred several times since then and have reached agreement on some issues, but unfortunately substantial differences remain.[1] Accordingly, Manufacturers[2] and the national retailer groups submit this proposal that reflects their views.

The parties' difference of opinion centers on whether the Federal Rules of Civil Procedure should apply to retained experts and whether those bearing the burden of proof (Plaintiffs[3]) should submit their substantive disclosures first. These basic procedures applicable to almost all contested matters should apply here as well. Among other things, Plaintiffs have proposed a POS remedy

---

[1] The National Association of Convenience Stores ("NACS") and the National Association of Tobacco Outlets, Inc. ("NATO") (collectively, "the national retailer groups") are not parties to this action but are participating in these proceedings as non-parties at the Court's invitation. They have participated in meet-and-confer sessions and other discussions.

[2] Manufacturers are Philip Morris USA Inc., Altria Group, Inc., R.J. Reynolds Tobacco Company, ITG Brands, LLC, Commonwealth Brands, Inc., and Commonwealth-Altadis, Inc.

[3] Plaintiffs are the United States and the Public Health Intervenors.

that is entirely new, shifting from a set of signs on counters and headers to taking 25% of all retailing and marketing space used for cigarettes. Plaintiffs have indicated that their disclosures will provide, for the first time, more specifics about the Government's thus-far vague and general proposed POS remedy. Accordingly, Manufacturers and retailer groups respectfully request the opportunity to explore and test the proposal through established litigation procedures, including expert discovery and a sequence of disclosures in which Plaintiffs first detail their proposed POS remedy and what they are going to try to prove and then receive a response, rather than requiring simultaneous disclosures that necessarily entail Manufacturers and the national retailer groups' shooting blindly in the first instance.

After extensive discussions, two principal issues continue to divide the parties: (1) compliance with Rule 26 as to retained experts, including whether reports will be provided and whether depositions will be permitted where appropriate; and (2) given that the parties have agreed to exchange descriptions or declarations laying out the anticipated testimony of all witnesses, the sequence in which the parties will make disclosures about the identity of their witnesses and the scope of those witnesses' anticipated testimony. As reflected in the proposed schedule of prehearing procedures set forth below, Manufacturers and the national retailer groups believe that the Court should follow Rule 26 with respect to retained experts and require Plaintiffs to make disclosures before Manufacturers and the national retailer groups.

Accordingly, Manufacturers and the national retailer groups propose the following schedule for pre-hearing procedures and deadlines:

- Plaintiffs disclose retained experts and submit expert reports compliant with FRCP 26(a)(2)(B); Plaintiffs disclose other witnesses and provide declarations and/or summaries of their anticipated testimony compliant with FRCP 26(a)(2)(C)[4]:
  **September 20, 2019**

- Window for depositions of Plaintiffs' retained experts (and/or other witnesses, with good cause shown):
  **September 30-October 28, 2019**

- Manufacturers and retailer groups disclose retained experts and submit expert reports compliant with FRCP 26(a)(2)(B); Manufacturers and retailer groups disclose other witnesses and provide declarations and/or summaries of their anticipated testimony compliant with FRCP 26(a)(2)(C):
  **November 1, 2019**

- Window for depositions of Manufacturers' and retailer groups' retained experts (and/or other witnesses, with good cause shown):
  **November 11-December 9, 2019**

- Plaintiffs disclose any retained rebuttal experts and submit any rebuttal expert reports compliant with FRCP 26(a)(2)(B); Plaintiffs disclose other rebuttal witnesses and provide declarations and/or summaries of their anticipated testimony compliant with FRCP 26(a)(2)(C):
  **December 13, 2019**

- Window for depositions of Plaintiffs' retained rebuttal experts (and/or other rebuttal witnesses, with good cause shown):
  **December 18, 2019-January 17, 2020**

- Participants simultaneously file witness/exhibit lists and proposed facts for stipulation:
  **January 24, 2020**

- Participants file objections to witnesses/exhibits and proposed stipulated facts:
  **February 7, 2020**

- Participants file simultaneous pre-hearing briefs of up to 25 pages
  (ITG Brands may file a separate 5 page brief on ITG-specific issues):
  **February 19, 2020**

- Participants file simultaneous reply briefs of up to 25 pages
  (Plaintiffs may file a separate 5 page reply on ITG-specific issues):
  **March 4, 2020**

- Evidentiary hearing:
  **March 2020**

---

[4] The parties have agreed to exchange summaries of anticipated testimony for fact witnesses and lay experts.

Manufacturers and the national retailer groups' proposal is consistent with the Federal Rules of Civil Procedure and will conserve judicial resources by ensuring that the parties are well-positioned to conduct the hearing in an efficient manner. It also recognizes the reality of the situation with which this Court and the parties are faced—a transformed proposal from the Government that has not been litigated before and that is almost entirely devoid of essential detail. The Government's initial POS proposal—which was adopted by this Court in 2006—would have required retailers that participate in Defendants' merchandising programs to display corrective-statement signage on countertop locations and on fixture headers for each Defendant. The D.C. Circuit vacated that remedy in 2009, and, in so doing, invited this Court on remand to "abandon[] this part of the remedial order or [] craft[] a new version reflecting the rights of third parties." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1142 (D.C. Cir. 2009) (per curiam). The D.C. Circuit also held that no POS remedy could require "duplicative displays." *Id.* After more than a decade and three rounds of briefing on remand, in 2018 Plaintiffs fundamentally changed their proposal to require retailers to devote 25% of all of the advertising and shelf space they devote to Manufacturers' cigarette brands—both inside and outside their stores—to display of court-ordered corrective statements. Thus far, Plaintiffs have provided virtually no details about the implementation of their new POS proposal. Details are apparently forthcoming as part of Plaintiffs' initial disclosure.

Manufacturers and the national retailer groups understand Plaintiffs to bear significant burdens in the upcoming evidentiary hearing. Plaintiffs bear the burden of providing a complete, detailed proposal for how their transformed POS remedy would work in practice. As explained in the Manufacturers' and national retailer groups' opening filings last week on the scope of the evidentiary hearing (Dkt. 6293-6295), Plaintiffs also bear the burden of proving that the proposed

POS remedy will effectively "prevent and restrain" Manufacturers from committing future RICO violations, 18 U.S.C. § 1964(a). And Plaintiffs bear the burden of persuading this Court, through presentation of evidence, that the proposed POS remedy "mak[es] due provision for the rights of innocent" retailers. *Id.*

The parties' disagreement on the scope of the evidentiary hearing and their respective burdens at that hearing inform their views on pre-hearing procedures. Because Manufacturers and the national retailer groups understand Plaintiffs to bear the burdens of proof and persuasion, they place significant import on advance disclosure and discovery of Plaintiffs' expert witnesses. In the view of Manufacturers and the national retailer groups, the evidentiary hearing on the propriety of imposing the proposed POS remedy must include the essential features of a trial. This mini-trial is necessary now because Plaintiffs failed to present sufficient evidence at the remedial stage of the prior trial, leading the D.C. Circuit to vacate the original POS remedy, and because Plaintiffs have elected to try to cure the fatal defects of their original remedy by replacing it with a new proposal. Now that Plaintiffs propose a different POS remedy, they must meet the evidentiary burdens that they previously failed to discharge. (Plaintiffs apparently see things very differently. In their telling, the evidentiary hearing is merely a patch for what they see as relatively minor shortcomings of the prior proceedings on the POS remedy; they and the Court need merely hear the national retailer groups out and then will be free to proceed with imposing the newly revised POS remedy.)

These disagreements on the purpose and scope of the evidentiary hearing translate directly into disagreements about pre-hearing procedure. Plaintiffs, believing the evidentiary hearing to be a minor speedbump on their path to the new POS remedy, have repeatedly asserted that "full Rule 26 expert discovery" is inappropriate. Their alternative proposal creates an unnecessary exception to the established rules and procedures, contradicting those established practices that

have well served courts and litigants alike. While Manufacturers and the national retailer groups' proposed procedures are consistent with the Federal Rules of Civil Procedure and the fundamental goal of preparing for a streamlined, efficient presentation of evidence to this Court, Plaintiffs have proposed what they see as an expeditious pre-hearing process that will, by design, both unfairly tilt the playing field in Plaintiffs' favor and leave many wrinkles to be ironed out during the evidentiary hearing itself, on the Court's time. For example, Plaintiffs wish the parties to agree, *ex ante*, to forgo all depositions, even before knowing the precise details of Plaintiffs' new proposed POS remedy, what kinds of expert witnesses Plaintiffs plan to retain, what those retained experts' opinions will be, and what analytical tools or methodologies they will utilize to support those opinions. Manufacturers and the national retailer groups have no interest in conducting unnecessary depositions (and have proposed a schedule sufficiently tight to confirm their disinterest in dilatory tactics). But, Manufacturers and the national retailer groups do not believe that avoiding expert depositions in the interests of time will serve the parties or the Court well, when the result will be longer witness examinations during the evidentiary hearing and less streamlined presentations of the information essential to the Court's deliberations.

There is further disagreement about the sequence of disclosures. Because Plaintiffs bear the burden of proof, Manufacturers and the national retailer groups believe Plaintiffs should identify their witnesses and the scope of each witness's anticipated testimony first, with time then allotted for Manufacturers and the national retailer groups to identify rebuttal witnesses. In Plaintiffs' view, simultaneous disclosure of witnesses, including retained experts, is warranted. This is both unfair and incredibly inefficient. As noted above, Plaintiffs have yet to flesh out many details of their new proposed POS remedy in full. They now want Manufacturers and the national retailer groups to identify and summarize the anticipated testimony of their witnesses up front,

critiquing what they think the proposed POS remedy might be before Plaintiffs even provide a complete POS proposal. The notion is nonsensical and unworkable. In the parties' prior Joint Status Report (Dkt. 6286), Plaintiffs only vaguely identified the topics on which they hope to elicit testimony: namely how the newly proposed POS remedy would be "administered" and "monitored," and what "economic effects on" and "intangible harms to" retailers the remedy might have. (*Id.* at 5-6.) Plaintiffs have also indicated that they anticipate a graphic design expert. What opinions each of these topics entails and how Manufacturers and the national retailer groups might want to go about responding to those opinions is not self-evident. Plaintiffs have also indicated they anticipate calling 6-8 witnesses. (*Id.* at 3.) Without knowing the nature of the testimony Plaintiffs propose presenting to carry their burdens of proof, Manufacturers and the national retailers groups cannot meaningfully select, prepare, or disclose their own witnesses. Rather, under Plaintiffs' proposal, Manufacturers and the national retailer groups would have to go through two rounds of disclosure: the first a shot in the dark based on guesswork (in the process giving the Plaintiffs a roadmap to their thinking), and then a second wholesale revision in response to the proof Plaintiffs will present at the hearing. This is a waste of time, effort, and resources, as only the second will be a real, focused, useful disclosure that anticipates evidence to be presented at the evidentiary hearing in response to Plaintiffs' evidence. Simply put, Plaintiffs should be required to say what their POS proposal is before the Manufacturers and the national retailer groups are required to identify what evidence they will present in response to the proposal.

Manufacturers and the national retailer groups, for their part, do not seek to use any traditional mechanisms of fact discovery (though Manufacturers have complied or will comply with the Government's informal requests for updated templates of their retail merchandising contracts and have all agreed to answer some specific questions, *i.e.*, informal interrogatories, that

the Government has posed). But, to the extent Plaintiffs intend to rely on testimony from retained experts, those experts' opinions should be disclosed through expert reports that meet the requirements of Rule 26(a)(2)(B) and, where warranted, probed through depositions pursuant to Rule 26(b). Manufacturers and the national retailer groups have offered to reciprocate with their retained experts and have agreed that the parties should provide, simultaneously with their disclosures of retained experts, ample disclosures for fact witnesses and lay experts, at the same level of detail as declarations previously filed with POS briefs and in keeping with the disclosures required by Rule 26(a)(2)(C). Manufacturers and the national retailer groups do not seek this discovery for the purpose of delay. To the contrary, the deadlines proposed above, which have been previously proposed to and rejected by Plaintiffs, set a tight, demanding schedule that leads to an evidentiary hearing before the end of March 2020.

In addition to rejecting expert discovery under Rule 26 out of hand, Plaintiffs have objected to the proposal for pre-hearing briefs. Manufacturers and the national retailer groups believe that such briefs, filed after the completion of all discovery and the exchange of witness and exhibit lists, can help identify and narrow the precise issues remaining in dispute.

Though attempts to meet and confer with Plaintiffs on these issues have not yielded an agreed proposal from all parties, counsel for Manufacturers and the national retailer groups remain open to further discussion with guidance from or participation of the Court, if the Court deems that appropriate.

Dated: July 24, 2019                     Respectfully submitted,

                                         /s/
                                         Miguel A. Estrada (D.C. Bar No. 456289)
                                         Amir C. Tayrani (D.C. Bar No. 490994)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, DC 20036-5306
                                         Telephone: (202) 955-8257
                                         Fax: (202) 530-9016

                                         George C. Lombardi
                                         WINSTON & STRAWN LLP
                                         35 West Wacker Drive
                                         Chicago, IL 60601
                                         Telephone: (312) 558-5969
                                         Fax: (312) 558-5700

                                         *Attorneys for Defendants Altria Group, Inc. and
                                         Philip Morris USA Inc.*

                                         /s/
                                         Peter J. Biersteker (D.C. Bar No. 358108)
                                         Michael A. Carvin (D.C. Bar No. 366784)
                                         JONES DAY
                                         51 Louisiana Avenue, N.W.
                                         Washington, DC 20001-2113
                                         Telephone: (202) 879-3939
                                         Fax: (202) 626-1700

                                         Jeffrey A. Mandell (D.C. Bar No. 999791)
                                         STAFFORD ROSENBAUM LLP
                                         222 West Washington Avenue
                                         Madison, WI 53703
                                         Telephone: (608) 256-0226
                                         Fax: (608) 259-2600

                                         *Attorneys for Defendant R. J. Reynolds Tobacco
                                         Company (individually and as successor to
                                         Lorillard Tobacco Company)*

                                         /s/
                                         Robert J. Brookhiser, Jr. (D.C. Bar No. 202168)
                                         Elizabeth B. McCallum (D.C. Bar No. 451361)

BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
Telephone: (202) 861-1500
Fax: (202) 861-1783

*Attorneys for Post-Judgment Parties Regarding
Remedies ITG Brands, LLC, Commonwealth
Brands, Inc. and Commonwealth-Altadis, Inc.*

/s/
_____

Michael J. Baratz (D.C. Bar No. 480607)
Douglas S. Kantor (D.C. Bar No. 455895)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
(202) 429-3000

*Attorneys for National Association of Convenience
Stores*

/s/
_____

Thomas A. Briant
(Minnesota Bar No. 157764)
Thomas A. Briant, P.A.
17595 Kenwood Trail
Minneapolis, MN 55044
(952) 683-9270

*Attorney for National Association of Tobacco
Outlets, Inc.*