## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 99-CV-2496 (PLF) |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHILIP MORRIS USA INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### JOINT STATUS REPORT AS REQUIRED BY ORDER #106-REMAND

In Order #106-Remand (Dkt. 6394, issued Feb. 25, 2021) the Court instructed the parties

and the national retailer groups[1] to meet and confer before sharing their views on several

procedural issues in advance of an anticipated telephonic status conference. That status

conference is now set for March 19, 2021, at 1 p.m. In accord with Order #106-Remand and in

advance of that status conference, the parties and the national retailer groups submit this joint

status report.

### 1. Format of the Evidentiary Hearing

After noting that "the evidentiary hearing is set to begin on July 12, 2021," the Court

asked the parties and the retailer groups for "views on whether some or all aspects of the July

---

[1] The parties are the United States and the Public Health Intervenors (collectively "Plaintiffs"); Philip Morris USA Inc., Altria Group, Inc., and R.J. Reynolds Tobacco Company (individually, as successor in interest to Brown & Williamson Tobacco Corporation, and as successor to Lorillard Tobacco Company) (collectively "Defendants"); and ITG Brands, LLC, Commonwealth Brands, Inc., and Commonwealth-Altadis, Inc. (collectively "Remedies Parties"). Defendants and Remedies Parties are collectively referred to as "Manufacturers."

The non-party national retailer groups that (to the knowledge of the parties) intend to participate in the hearing are the National Association of Convenience Stores ("NACS") and the National Association of Tobacco Outlets ("NATO").

hearing can be conducted virtually, with witnesses and lawyers appearing via video from outside the courtroom, and if so, whether the parties wish to proceed with the hearing partially or fully via remote video conference." Having met and conferred on this issue, the parties and the retailer groups were unable to reach complete agreement. The parties and the retailer groups present their respective views below.

### A.  View of Manufacturers and Retailer Groups

Manufacturers and retailer groups begin from the Court's recognition that existing restrictions based on Covid-19 are incompatible with an in-person evidentiary hearing for a case of this complexity, with this many parties, lawyers, and expected witnesses. The evidentiary hearing concerns Plaintiffs' revised point-of-sale ("POS") proposal, which requires the Manufacturers to disseminate the court-ordered statements ("COS") on 25% of the cigarette merchandising space and 25% of other promotional signs inside and outside retail stores. The retailer groups have raised significant concerns about a number of burdens that the proposed POS remedy would impose upon retailers including: (1) the significant visual impact of proposed COS signs in the store environment, (2) proposed COS signs obscuring cigarette prices and inventory location tags on display racks, (3) an increase in store employee time to restock cigarette shelves and take daily inventories due to proposed COS signs blocking shelf facings and inventory tags, (4) the breakage of both proposed COS sign hinges and the display racks to which the proposed COS signs are attached, (5) the time consuming task of calculating the mandated 25% coverage area of the proposed COS signs for each individual store, (6) an increase in customer transaction times, (6) the need to train store employees how to answer customer questions about the proposed COS signs, (7) the disruption of store business by auditors taking pictures of cigarette displays, (8) the loss of cigarette and ancillary product sales,

and all of the other burdens delineated in the retail witness declarations. Visual and tactile displays regarding the proposed COS signs, the merchandising set, the flip displays, and the impact on the store environment are intended to be a significant component of the Manufacturers and retailer groups' presentation at the evidentiary hearing. Moreover, Remedies Party ITG Brands and plaintiffs have stipulated that the hearing may also involve evidence regarding company-specific factors regarding ITG Brands that could justify modifying the proposed POS remedy as to ITG Brands. All this evidence will be deprived of its appropriate context in a video hearing.

Further, individual retailers are expected to be key witnesses. These witnesses may be unfamiliar with court proceedings generally and are less likely to have regularly used video conferencing in operating their stores over the past year. Accordingly, a hearing conducted via remote video conference may present greater challenges for some retailer witnesses than for some expert witnesses and attorneys.

We believe that those factors and the need for the Court to understand fully the ways in which, and the degree to which, the proposed POS remedy imposes practical burdens on retailers, militate strongly in favor of an in-person evidentiary hearing. Simply put, this remand proceeding exists because the D.C. Circuit determined that the district court had not previously provided retailers a full and fair opportunity to share their views, as required by due process. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1142 (D.C. Cir. 2009) (per curiam). Given the specific attributes of this evidentiary hearing in this case, Manufacturers and the retailer groups believe that a hearing conducted remotely, on a virtual basis, will again shortchange retailer interests. It can hardly be otherwise if visuals and demonstrative cannot be readily presented to the court, much less if the multiple counsel for largely aligned parties and

retailer groups cannot conveniently confer with one another. An option that is deficient in key ways should not be adopted unless there is no reasonable alternative. Here, there is such an alternative.

Given the considerations above, and given the rapid advances being made in the distribution of Covid-19 vaccines, Manufacturers and the retailer groups believe that the evidentiary hearing should be rescheduled for later this year. It is unlikely that all counsel and witnesses who wish to be vaccinated can do so in time to facilitate their full engagement in preparations for and participation in a mid-July evidentiary hearing. But even a modest continuance of three months, until mid-October, would massively increase the likelihood that all counsel and witnesses who wish to be vaccinated could do so in time to travel, to prepare witnesses, to hold strategy sessions, to collaborate with trial graphics professionals, and to work closely in court—all necessary to present a full and robust defense and to ensure that retailer groups are afforded the opportunity to have their concerns about the proposed POS remedy fully heard by the Court. Attorneys for Manufacturers and the retailer groups are available for the hearing the weeks of October 18 and October 25.

Plaintiffs argue that there is no guarantee that the Covid-19 pandemic will have abated sufficiently by October to allow an in-person hearing at that juncture. Their solution is to forge ahead with a fully virtual hearing in July. Plaintiffs do not make any specific claim of harm or prejudice from a modest delay to accommodate significant public health concerns—particularly in light of the fact that the issue of a POS display based upon the COS has already been pending before this Court since the Court of Appeals' remand with instructions to consider harm to retailers in 2009. Even without any guarantee with respect to Covid-19, given present circumstances and expectations, it is eminently reasonable to continue the evidentiary hearing for

approximately three months in an effort to ensure that the hearing is fair, efficient, ensures due process for the retailers, and meets its purpose for all involved.

**B.  View of Plaintiffs**

The D.C. Circuit observed long ago that "[w]henever possible courts should avoid duplicated or *drawn-out* proceedings. The efficient administration of justice demands it. As Judge Devitt remarked in *U.S. v. Brennan*: 'Justice delayed is justice denied.'" *Rohr Indus., Inc. v. Wash. Metro. Area Transit Auth.*, 720 F.2d 1319, 1327 (D.C. Cir. 1983) (considering a case with a six year delay and potential resolution years further away) (emphasis in original; cleaned up; citations omitted). This case has been pending since 1999. The court ordered the dissemination of corrective statements at retail points of sale in 2006. *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 939-41 (D.D.C. 2006). The purpose of these statements is to prevent and restrain false and misleading assurances by requiring the manufacturers to communicate truthful information about their products to consumers. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1140 (D.C. Cir. 2009) (per curiam). The longer the remedy is delayed, the longer justice is denied. *Rohr*, 720 F.2d at 1327. It is long past the time that this issue should have been resolved.

The reality of the global pandemic makes it unwise to depend on the optimism with which Manufacturers and the retailer groups assess the future. The Court may recall a general hope that America was seeing a decline in the pandemic after the Spring 2020 surge, only to see infections reach previously-unheard of levels in Winter 2020-21. Medical professionals are still cautioning against the hope that the pandemic will be resolved soon: On March 3, 2021, Center for Disease Control Director Rochelle Walensky stated, "I think the next two or three months could go in one of two directions . . . . If things open up, if we're not really cautious, we could

5

end up with a post-spring break surge the way we saw a post-Christmas surge. We could see

much more disease. We could see much more death." Jason Breslow, "'Now Is Not The Time To

Stop Wearing A Mask,' Says CDC Director Rochelle Walensky," Mar. 3, 2021,

https://www.npr.org/2021/03/03/973286247/now-is-not-the-time-to-stop-wearing-a-mask-says-

cdc-director-rochelle-walensky, last visited March 11, 2021.

   For that matter, a return to "normalcy" is further away than we all hope, and may not be

the same as operating in a world without restrictions. When estimating that "the U.S. will likely

reach a 'significant degree of normality' *by the end of the year*," Dr. Anthony Fauci warned that

mask wearing "could remain an important part of everyday life for some time. 'You know, I

think it is possible that that's the case' that people will be wearing masks in 2022 . . . ." Carolyn

Crist, "Fauci: Americans May Need to Wear Masks Through 2022," Feb. 23, 2021,

https://www.webmd.com/lung/news/20210223/fauc--says-americans-may-need-to-wear-masks-

through-2022, last visited March 11, 2021 (emphasis added). This is even the more so due to the

expansion of mutant variants of COVID that makes any prediction of the future uncertain. *See,*

*e.g.*, Julie Steenhuysen & Kate Kelland, "When will it end?: How a changing virus is reshaping

scientists' views on COVID-19," Mar. 3, 2021, https://www.reuters.com/article/us-health-

coronavirus-variants-insight-idUKKBN2AV1T1, last visited March 11, 2021 (due to variants

from South Africa and Brazil, scientists "now believe that SARS-CoV-2 will not only remain

with us as an endemic virus, continuing to circulate in communities, but will likely cause a

significant burden of illness and death for years to come."); Anthony King, "Vaccines Versus the

Mutants," Feb 8, 2021, https://www.the-scientist.com/news-opinion/vaccines-versus-the-

mutants-68430, last visited March 11, 2021 ("The optimistic mood around COVID-19 vaccine

6

rollouts has been clouded by new variants of the virus, which could trample the efficacy of vaccines or escape them entirely.").

None of this is to say that we are not hopeful that events will show these predictions to be wrong. What is clear, however, is that there is no guarantee that a three month delay in the hearing (on top of the previous delays caused by the pandemic) will make it any easier to conduct a hearing in person than will be the case in July 2021. Nor, for that matter, is there any guarantee that this Court, various counsel, and thirty-one identified witnesses who have long built the July date into their plans will all be available for a single future sitting. Beyond suggesting a delay to "mid-October," and stating their lawyers' (but not their 25 witnesses') availability during certain weeks of October (in a draft provided to Plaintiffs on the afternoon of this document's filing), the Manufacturers and retailer group have not even proposed a specific date that would be acceptable to all of their counsel and witnesses. In that regard, it is of note that NACS previously objected that retailers could not attend an October hearing due to the NACS annual convention, which appears to be scheduled for this October as well, *see* https://www.nacsshow.com/?_ga=2.228203293.1835252964.1615389958-1671581732.1615389958, and immediately thereafter will be the holiday shopping season, when the retailers, presumably, will be busy.

In light of the above, Plaintiffs believe the proper course is to adhere to the timeline the Court put in place last July and to conduct the July 2021 hearing virtually. Virtual proceedings, hearings, and trials, have become the norm during the last year and there is no legitimate claim to a right to present evidence through live testimony. To the contrary, the Court has "extraordinarily broad discretion to determine the manner in which t[o] conduct trials,*"* particularly where the trial is to the bench without a jury. *United States v. Microsoft Corp.*, 253 F.3d 34, 100 (D.C. Cir.

2001) (rejecting challenge to court's use of summary witnesses); *see also id.* at 101 (trial court

has "wide latitude to receive evidence as it sees fit.")

Indeed, within this case the parties have already successfully conducted eight depositions

virtually, consistent with the Court's instruction to proceed with depositions even if they could

not be in person, to prevent further delay to the hearing schedule.[2] Order #100-Remand at 2

(Dkt. 6332; issued 7/17/2020). There is no reason the Court and the parties cannot conduct this

hearing virtually, especially if written testimony is used in place of expert witness direct

testimony, as we discuss below.

The Manufacturers and retailer groups raise three objections to proceeding virtually,

(1) that they need to present evidence through "visual and tactile displays," (2) that a virtual

hearing will impede their ability to communicate with one another, and (3) that retailer witnesses

may be unfamiliar with virtual technology. None of these points justifies rejecting the option of a

virtual hearing.

First, it is unclear why "visual and tactile displays" cannot be displayed virtually. Video

presentation is visual, and the witnesses can be given physical copies of exhibits which they can

tactilely manipulate (as occurred ahead of the eight virtual depositions). To the extent retailers

wish to manipulate demonstratives for the Court, they can also do that over video.

---

[2] Between sixteen and twenty-one attorneys attended the virtual depositions—far more
than is usually feasible for in-person depositions. Over the course of eight depositions, the only
technical issue of note was one counsel for Defendant Philip Morris USA's losing video during
one deposition. Plaintiffs responded to that issue by suggesting either having counsel for ITG
conduct its examination that day and returning on another date to finish Philip Morris's
examination or finishing Philip Morris's examination telephonically. After a break, Philip Morris
chose to finish the deposition telephonically, and the deposition went forward without further
incident.

Second, as to the complaint that a virtual hearing will impede the Manufacturers and retailer groups from communicating with each other, communications during in-person hearings are already restricted. Counsel attending a hearing in person are generally limited to passing notes to other attorneys at the proceeding, and communicating via email with colleagues or support personnel who are not. By contrast, a virtual proceeding provides more and more robust opportunities for communication during breaks and among attorneys who are not questioning witnesses: counsel can engage in group chats, participate in breakout rooms, and if they wish, arrange conference calls. Were we physically present in the courtroom, counsel would not be able to communicate any more readily. The Manufacturers and retailer groups may if they wish gather in a single location in person, and communicate just as if they were together in the courtroom, but without the limitations of being in the same room as opposing counsel and the Court. In any event, whatever limitations on communications arise will equally impact counsel for Plaintiffs.

Third, a year of virtual school, court, and work have demonstrated people can readily adapt to virtual presentations.[3] The retailer witnesses are business owners, executives, and trade-association officers, and there is no statement from any witness that they cannot participate virtually, and no reason to expect that they will be unable to do so. The Manufacturers and retailer groups certainly have adequate resources to ensure that proper training can be provided to these witnesses in advance of the hearing.

---

[3] Since 1996, courts have been authorized to "permit testimony in open court by contemporaneous transmission from a different location" — to be sure, "[f]or good cause in compelling circumstances and with appropriate safeguards." Fed. R. Civ. P. 43(a). The second year of lockdown during a pandemic certainly provides "good cause in compelling circumstances," and there is no suggestion that there will be any difficulty in imposing "appropriate safeguards" (such as making it clear that off-screen coaching or prompting of witnesses is not allowed).

The remainder of Manufacturers' and retailer groups' position appears to be a preview of their substantive argument, rather than any point relevant to when and how that argument is to be presented. On the substance of the case, Plaintiffs disagree with the Manufacturers and retailer groups, but we will address the merits through substantive briefs and at the hearing.

## 2.  Expert Witness Testimony

The Court also solicited "the parties' views on whether their expert witnesses' written reports may serve as the direct testimony of those witnesses, which would reduce the time required to conduct the hearing." Here, too, the parties and the retailer groups have divergent views, presented separately below.

### A.  View of Manufacturers and Retailer Groups

Manufacturers and the retailer groups share the Court's desire for an efficient presentation of the evidence. Our response to the Court's proposal is two-fold.

First, Manufacturers and retailer groups strongly prefer that for each expert the parties have the choice of submitting written direct testimony or conducting live, in-court direct testimony. For many of the reasons identified above, we feel that it is important that the Court hear directly from the experts the reasons underlying their opinion, including for purposes of assessing credibility and for the experts to use in-court demonstrative exhibits to better explain their complex testimony in a manner that cannot be achieved simply in written form. Manufacturers and retailer groups further believe it important that fact witnesses be permitted to testify live rather than by declaration, and do not understand the Court's suggestion of written direct testimony to encompass any retailer or manufacturer fact witnesses.

If the Court ultimately orders that the parties will not be permitted to conduct live direct testimony of their expert witnesses, Manufacturers and retailer groups ask that they be permitted

to submit a written direct testimony in conventional question-and-answer format. We note that the expert reports were not drafted with use as written direct testimony in mind. They are not appropriately formatted or focused for such use. They are long and unwieldy, which is why the Court has already asked the parties to prepare summaries for each of the experts. Nor is there anything in them that responds to or addresses points made by Plaintiffs in their rebuttal, if any, or in depositions. If direct testimony is to be presented in written form for some or all experts, which is not Manufacturers and the retailer groups' preference, Manufacturers and the retailer groups respectfully suggest that those written directs would serve everyone's needs best if they were drafted specifically for this purpose. Such written directs could potentially displace the new summaries of each expert witness that the Court has requested.

**B. View of Plaintiffs**

Plaintiffs believe that written testimony in lieu of live direct testimony from expert witnesses will expedite a virtual hearing, will relieve many of the Manufacturers' and retailer groups' concerns about communication and technical difficulties, and is the appropriate vehicle for proceeding in July. Because the written directs will be presented in advance of the witness taking the stand, the parties will be able to consider them in advance, reducing the need for cross-counsel communication in court. In addition, because of the time savings from this method of presenting testimony, there will be ample time in the hearing schedule to deal with any issues if technical problems do arise. Moreover, witnesses can be more easily rescheduled to overcome any such issues if need be. Finally, we agree that fact witnesses should present direct testimony live, albeit remotely. Submitting expert direct testimony in writing will have the same impact on both sides, as each has six expert witnesses. Allowing fact witnesses to testify live will

advantage the Manufacturers and retailer groups, which have 19 fact witnesses, as opposed to Plaintiffs' one.

With regard to Manufacturers' and retailers groups' concern that their expert reports do not address points made during their witnesses' depositions or in response to Plaintiffs' rebuttal witnesses, we note that the Court's schedule does not contemplate sur-rebuttal reports or declarations. Opinions and facts not disclosed in the expert reports and witness declarations Manufacturers and retailer groups previously tendered should not be tendered or accepted at the hearing, either in live direct testimony or in written form.

Regarding the form of the testimony, the Court has proposed that Plaintiffs and Defendants submit fifteen page summaries of the direct testimony of each expert they are calling for testimony (one summary for each witness called by any Plaintiff and one summary for each witness called by any Defendant). We agree to this fifteen page submission, but also propose that the direct testimony would include each expert's written reports (including the upcoming rebuttal reports from Plaintiffs' experts). This resolves the concern that the Manufacturers and retailer groups raise about the format of the testimony, but also does not burden the Court with hundreds of pages of filings beyond those it has already received. We suggest that a party may be permitted to choose its format for the fifteen pages, whether as questions and answers, as Manufacturers and retailer groups propose, or in a narrative form. At the hearing, each expert's in-court testimony would begin with an oral motion to have the expert recognized as an expert in the appropriate fields, then a submission into evidence of any exhibits referenced in the written direct testimony that were not previously admitted, and then proceed to cross-examination.

### 3. Joint Appendix, Voluminous Materials, and Exhibits

The Court proposed that the parties and the retailer groups present a joint appendix and provided extensive guidance on what that document would contain and how it would be presented. The Court also requested that the parties and the retailer groups "consider whether it is necessary for them to file on the public docket all of the underlying facts, data, and documents relied upon by their expert witnesses, and why it is not sufficient to provide these materials to the other parties." On these issues and a couple of other "loose ends" regarding exhibits, the parties and the retailer groups found common ground.

First, the parties and the retailer groups agree to work together to produce a joint appendix that meets the Court's specifications. Order #106-Remand does not specify a deadline for submission of the joint appendix; the parties and the retailer groups jointly propose that the joint appendix be filed no later than two business days before the deadline for opening pretrial briefs.

Second, the parties and the retailer groups agree that materials considered by experts need not be filed on the docket. To date, parties have exchanged such materials informally and filed copies on DVDs with the Court, not because they understood these materials to be necessary components of the public docket, but because we understood such filing to be requested by the Court under Order #93-Remand.

Third, the parties and the retailer groups jointly identify a couple of loose ends regarding exhibits and seek the Court's guidance on these smaller issues:

    **a.** The parties and the retailer groups jointly understand the exhibit lists to be disclosed on April 5, 2021 to include all exhibits that each side anticipates could be used as part of its case-in-chief. The parties and the retailer groups do not understand these lists to include exhibits that might be used for impeachment and/or rebuttal purposes. The parties and the retailer groups do not believe that impeachment and rebuttal exhibits need to be disclosed in advance of the hearing.

**b.**  The parties and the retailer groups respectfully request a deadline for exchange of branded exhibits no earlier than 3 business days before the beginning of the evidentiary hearing. As with exhibit lists, the parties and the retailer groups believe this requirement should not apply to impeachment and rebuttal exhibits.

**c.  Demonstrative Exhibits**.

### 1.  View of Manufacturers and Retailer Groups

Manufacturers and the retailer groups respectfully request a deadline to disclose additional demonstratives. Manufacturers and the retailer groups understand the demonstrative disclosure requirement set forth in Op. & Order #93-Remand at 3 (Dkt. 6316; issued 2/20/2020) to apply only to the preliminary demonstratives of fact witnesses who were not required to submit an expert report. Accordingly, Manufacturers and the retailer groups have not yet submitted expert demonstratives and believe that the parties should be permitted to submit expert demonstratives and additional fact witnesses demonstratives closer to the date of the hearing considering the depositions, rebuttal expert reports, and other developments that have occurred or will occur between the parties' initial disclosure deadlines and the evidentiary hearing. Manufacturers and the retailer groups propose that final demonstratives be disclosed 48 hours before the first day of their anticipated use.

### 2.  View of Plaintiffs

The court ordered that demonstratives for all witnesses be disclosed on the same date as all other witness-related disclosures. The Court specified that witnesses rendering an opinion who are not required to provide an expert report (*i.e.,* everyone other than retained experts, Fed. R. Civ. P. 26(a)(2)(B)(iii)) must provide substantial witness disclosures that "shall include all exhibits and demonstratives expected to be introduced or used in conjunction with the witness's testimony[,]" among other things. Op. & Order #93-Remand at 3 (Dkt. 6316). The Court characterized itself as "order[ing] more fulsome disclosures" for such non-expert-report witnesses "than what is required by the Federal Rules" — not as ordering more fulsome disclosures for them than for retained experts. *Id.* ("it seems appropriate that all witness[es] rendering an opinion at the evidentiary hearing be treated similarly, whether a retained expert, a non-retained or in-house expert, or a lay witness giving an opinion.").

Plaintiffs provided retained-expert demonstratives as part of our disclosures on October 7, 2020. On January 11, 2021, the manufacturers and retailer groups provided reports from six retained experts and declarations from nineteen other witnesses, all or almost all supported by exhibits — and all of which could be used as demonstratives. The manufacturers and retailer groups would be unfairly advantaged if allowed to make up in July for strategic decisions not to disclose retained-expert demonstratives with their other witness-related disclosures in January.

14

If the Court reconsiders its order and opts to permit additional demonstratives (either just for each side's six retained experts, or also for Plaintiffs' one other witness and the manufacturers' and retailers' nineteen other witnesses), Plaintiffs respectfully urge that the new disclosure deadline should be at least 48 hours before the first day of their anticipated use.

Dated: March 12, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

MICHAEL D. GRANSTON
Deputy Assistant Attorney General
Civil Division

GUSTAV W. EYLER, Director
LISA K. HSIAO, Assistant Director
Consumer Protection Branch

/s/

DANIEL K. CRANE-HIRSCH
Trial Attorney
ADAM E. LYONS
Senior Litigation Counsel
Civil Division
United States Department of Justice
PO Box 386
Washington, DC 20044-0386
Telephone: 202-616-8242 (Crane-Hirsch)
Facsimile: 202-514-8742
daniel.crane-hirsch@usdoj.gov

*Attorneys for Plaintiff United States of America*

/s/

Scott P. Lewis (pro hac vice)
slewis@andersonkreiger.com
Melissa C. Allison (admitted pro hac vice)
mallison@andersonkreiger.com

Christina S. Marshall (D.C. Bar # MA0022)
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Attorneys for the Public Health Plaintiff-*
*Intervenors*


/s/
_____
Miguel A. Estrada (D.C. Bar No. 456289)
Amir C. Tayrani (D.C. Bar No. 490994)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8257
Fax: (202) 530-9016
mestrada@gibsondunn.com
atayrani@gibsondunn.com

George C. Lombardi
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5969
Fax: (312) 558-5700
glombard@winston.com

*Attorneys for Defendants Altria Group, Inc.*
*and Philip Morris USA Inc.*


/s/
_____
Michael A. Carvin (D.C. Bar No. 366784)
Mark A. Belasic (pro hac vice)
Jon G. Heintz (pro hac vice)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700
macarvin@jonesday.com

16

mabelasic@jonesday.com
jheintz@jonesday.com

Jeffrey A. Mandell (D.C. Bar No. 999791)
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Madison, Wisconsin 53703
Telephone: (608) 256-0226
Fax: (608) 259-2600
jmandell@staffordlaw.com

*Attorneys for Defendant R.J. Reynolds
Tobacco Company (individually, as
successor in interest to Brown & Williamson
Tobacco Corporation, and as successor to
Lorillard Tobacco Company)*

/s/

Robert J. Brookhiser, Jr. (D.C. Bar No.
202168)
Elizabeth B. McCallum (D.C. Bar No.
451361)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
Telephone: (202) 861-1500
Fax: (202) 861-1783

*Attorneys for Post-Judgment Parties
Regarding Remedies ITG Brands, LLC,
Commonwealth Brands, Inc. and
Commonwealth-Altadis, Inc.*

/s/

Michael J. Baratz (D.C. Bar No. 480607)
Douglas S. Kantor (D.C. Bar No. 455895)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
(202) 429-3000

*Attorneys for National Association of
Convenience Stores*

17

/s/
_____

Thomas A. Briant
(Minnesota Bar No. 157764)
Thomas A. Briant, P.A.
17595 Kenwood Trail
Minneapolis, MN 55044
(952) 683-9270

*Attorney for National Association of Tobacco Outlets, Inc.*