UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
UNITED STATES OF AMERICA,                )
                                                              )
                    Plaintiff,                         )
                                                              )
            v.                                           )            Civil Action No. 99-2496 (PLF)
                                                              )
PHILIP MORRIS USA INC., et al.,            )
                                                              )
                    Defendants.                     )
_____)

MEMORANDUM OPINION AND ORDER #108 – REMAND

            This case is before this Court on remand from the D.C. Circuit "to make due

provision for the rights of innocent parties" in relation to the retail point-of-sale ("POS") remedy

required by Judge Kessler's 2006 remedial order.  Opinion & Order #92 – Remand [Dkt.

No. 6308] at 2 (quoting United States v. Philip Morris, 566 F.3d 1095, 1150 (D.C. Cir. 2009)).

This Court determined that an evidentiary hearing would be necessary "to allow the parties to

present their legal and factual arguments and to allow third party retailers the opportunity to air

their concerns and arguments."  Order #86 – Remand [Dkt. No. 6283] at 1.  That hearing was

initially scheduled to begin on September 14, 2020, but was rescheduled to commence on

July 12, 2021 in response to a joint motion of the parties and the massive disruption caused by

the COVID-19 pandemic.  See Opinion & Order #93 – Remand [Dkt. No. 6316]; Joint Motion to

Suspend Prehearing Schedule [Dkt. No. 6319]; Order #95 – Remand [Dkt. No. 6320];

Order #100 – Remand [Dkt. No. 6332].

            For several months this Court has been investigating the practicability and

fairness of proceeding with the hearing in July of this year in light of the status and trajectory of

the COVID-19 pandemic.  Since the onset of the pandemic, the Court has been operating in a modified capacity with respect to in-person proceedings.  See Order #106 – Remand [Dkt. No. 6394] at 1-3.  While Chief Judge Howell, following an Executive Session of all judges of the Court, authorized a limited resumption of criminal jury trials effective March 15, 2021, this resumption is subject to "stringent restrictions and safety precautions," including the use of multiple courtrooms for each trial, with no more than three trials taking place on a given day. See In Re: Limited Resumption of Criminal Jury Trials in Light of Circumstances Related to the COVID-19 Pandemic, Standing Order No. 21-10 (BAH) (Mar. 5, 2021), at 2, 4.  Civil jury trials remain suspended at least through June 1, 2021.  Id. at 5-6.

While courthouse protocols permit non-jury proceedings, such as this evidentiary hearing, to take place in person, numerous restrictions apply.  The Court laid out these restrictions in Order #106 – Remand [Dkt. No. 6394] and has discussed them with counsel for the parties at two lengthy status conferences on March 19, 2021 and April 22, 2021.  As the Court explained, if the evidentiary hearing were to take place in July of 2021, no more than three or possibly four individuals could be seated at each counsel table, where they would be separated by plexiglass barriers.  See CONTINUITY OF OPERATIONS PLAN DURING THE COVID-19 PANDEMIC ("COOP") (July 15, 2020), Appendix 7 ¶ 5(b) (updated Oct. 27, 2020), https://www.dcd.uscourts.gov/coronavirus-covid-19-response-information-and-announcements. No more than fourteen individuals could be seated in the courtroom gallery, and an additional three or four individuals could possibly be seated in the jury box.  See id. ¶ 5(d).  Participants would be required to remain at their assigned places throughout the proceeding and would not be able to approach the podium or a witness, or hand exhibits to the Deputy Clerk or Judge.  See COOP, Appendix 8 ¶ 2(c)(v) (updated Mar. 4, 2021).  Witnesses would be able to testify in

2

person, but to allow time for cleaning and disinfecting between each witness, no more than one witness would testify each morning and each afternoon. Exceptions could be made for days on which a party proffers a series of witnesses whose testimony would be extremely short. Under the Court's current protocols, all participants, including witnesses testifying and attorneys questioning those witnesses, would be required to wear face coverings at all times. See COOP, Appendix 7 ¶ 4 (updated Oct. 27, 2020); COOP, Appendix 8 ¶ 2(c)(iv) (updated Mar. 4, 2021).

The Court explained at the April 22, 2021 status conference that to account for the restrictions on the number of individuals in the courtroom, two adjunct courtrooms might be made available from which participants could observe the hearing. The individuals in these adjunct courtrooms would be able to see and hear the proceedings in the main courtroom but would not be able to participate in them. The courthouse could also provide secure intercom devices to facilitate communication between participants during the hearing, including between participants in the main courtroom and in the adjunct courtrooms. Due to supply limitations, however, the parties would only be guaranteed a total of ten such devices for the hearing.

The Court also explained that the courthouse cannot require all individuals who enter the building to have received a COVID-19 vaccine. Currently, the courthouse does not require entrants to be tested for COVID-19. All entrants must submit to a temperature check at a kiosk. See COOP, Appendix 7 ¶ 6 (updated Oct. 27, 2020). Any individual experiencing symptoms of COVID-19, or who has had known contact with a person who has the COVID-19 virus, is asked not to enter the courthouse. See In Re: Modified Restrictions on Access to the Courthouse During the COVID-19 Pandemic, Standing Order No. 21-20 (BAH) (Apr. 2, 2021), at 4. As the number of proceedings in the courthouse increases between now and July, however, there is no guarantee that the courthouse will be able to continue implementing these measures.

In light of these restrictions and the ongoing public health risks, the Court invited written submissions concerning the format and timing of the evidentiary hearing.  See Order #106 – Remand [Dkt. No. 6394] at 3, 6.  In subsequent discussions with counsel for the parties, the Court explored whether the evidentiary hearing could be held either entirely virtually or in a hybrid fashion, with some individuals participating in person and others participating over videoconference.  The Court gave serious consideration to the government and Public Health Intervenors' suggestion of holding the hearing either fully or partially via videoconference in July of 2021.  Ultimately, the Court was persuaded that a fully in-person hearing is necessary, both because the Manufacturers and Retailers intend to present physical demonstratives that will be important to their case concerning the impact of the POS proposal, and because the Manufacturers and Retailers believe the individual retailer witnesses can more effectively convey their views to the Court in an in-person proceeding than over videoconference.  See Joint Status Report as Required by Order #106 – Remand ("March 12, 2021 Status Report") [Dkt. No. 6398] at 2-3.  As the Manufacturers and Retailers point out, "this remand proceeding exists because the D.C. Circuit determined that the district court had not previously provided retailers a full and fair opportunity to share their views," and conducting this proceeding remotely risks "again shortchang[ing] retailer interests."  Id. at 3.

The Court also gave serious consideration to the Manufacturers and Retailers' proposal of postponing the hearing by several months to October of 2021, at which time they hope certain restrictions on in-court proceedings might be lifted.  See March 12, 2021 Status Report at 2.  The Court researched this possibility and consulted with courthouse leadership and those responsible for developing and implementing courthouse protocols in response to the pandemic.  The Court also reviewed public health guidance from the Centers for Disease Control

4

and Prevention and the District of Columbia government.  Based on these inquiries, the Court

reached the conclusion that the pandemic-related protocols to which the Manufacturers and

Retailers object, including the limits on the number and mobility of individuals in the courtroom,

would not meaningfully change between July and October of 2021.

   The Court is therefore faced with the question of whether to conduct the hearing

live and in person in July of 2021, or to postpone the hearing by ten to twelve months so that it

may be conducted subject to fewer restrictions.  Each side has expressed mutually incompatible

preferences.  In support of their request to proceed in July of 2021, the government and Public

Health Intervenors point out that Judge Kessler ruled in their favor some fifteen years ago and

that this ruling was affirmed by the D.C. Circuit.  See March 12, 2021 Status Report at 5.  They

note that corrective statements have been disseminated in other forms and that they have waited

many years for tobacco warnings to be conveyed to consumers at points of sale, as required by

Judge Kessler's 2006 remedial order.  The Public Health Intervenors underscored at the

April 22, 2021 status conference that the POS remedy is considered a particularly important

channel for conveying corrective statements to children and teens.  The government and Public

Health Intervenors' primary argument is that they will be prejudiced by a delay because this

Court and the D.C. Circuit already ruled in their favor on the merits, and because the public has a

right to see the corrective statements at point of sale.  See March 12, 2021 Status Report at 5.

   The Manufacturers and Retailers strongly oppose holding the hearing under

current restrictions, explaining that physical and "tactile" exhibits will be central to their case.

See March 12, 2021 Status Report at 2-3.  At the April 22, 2021 status conference, counsel for

the Retailers explained that they wish to be able to manipulate these exhibits in the presence of

the Court and to explain to the Court, for example, where flip signs would go in retail displays,

how the signs would impact taking inventory, where the signs might break, and the practical

impact of these signs on store employees.  Current procedures would restrict counsel and

witnesses from moving about the courtroom to interact with their exhibits and demonstratives.

The Manufacturers and Retailers also expressed concern about the more than twenty witnesses

they expect to call, who will need to travel through multiple states and airports, including

possibly states where COVID-19 infection rates are higher than in the District of Columbia.[1]

Finally, in their written submission and at the April 22, 2021 status conference, the

Manufacturers and Retailers underscored that the limitations on the number of lawyers in the

courtroom seriously impacts the meaningful participation of "the multiple counsel for largely

aligned parties and retailer groups" who will not be able to "conveniently confer with one

another" under current protocols.  March 12, 2021 Joint Status Report at 3-4.

Reluctantly, the Court has concluded that the goals of the evidentiary hearing

would be better served by a delay of ten to twelve months, which would allow the Court to

conduct a more robust proceeding subject to fewer pandemic-related restrictions.  While such a

delay would, to a certain extent, be unfair to the government and the Public Health Intervenors,

who have waited years to see a POS remedy implemented, moving forward under the current

restrictions would be even more unfair to the Manufacturers and Retailers.  The Court's decision

is grounded in its recognition that the purpose of this hearing is "to make due provision for the

rights of innocent third parties" in relation to the POS remedy.  United States v. Philip

---

[1]     In addition to the twenty-three witnesses that they expect to call, the
Manufacturers and Retailers have identified at least three witnesses that they may call if the need
arises.  See Manufacturers' and Retailers' Witness List for Evidentiary Hearing on Display of
Corrective Statements at Point of Sale [Dkt. No. 6408].  The plaintiffs have identified seven
witnesses that they expect to call.  See Plaintiffs' Witness List [Dkt. No. 6407].  This hearing is
therefore likely to involve at least thirty witnesses and possibly more, as neither side's witness
list includes witnesses that may be called for rebuttal testimony.

Morris, 566 F.3d 1095, 1150 (D.C. Cir. 2009).  The best way to account for the interests of the several parties in this case, while still accomplishing this goal, is to delay the hearing by ten to twelve months.

       The Court will therefore cancel the hearing scheduled for July of this year and vacate all remaining pre-hearing deadlines.  Given the parties' representations at the March 19, 2021 and April 22, 2021 status conferences and their recent filings related to witness lists, it now appears likely that this hearing may require more than two weeks.  See Plaintiffs' Objections to Manufacturers' and Retailers' Witness List [Dkt. No. 6414] at 1-3.  The Court will therefore set aside a four-week period, with the expectation that the hearing can be accomplished in two to three weeks.  During that four-week period, the Court will sit for four days per week, presumably Monday through Thursday.  The parties are directed to identify mutually agreeable dates for the hearing between May 23, 2022 and the end of July 2022.  If the parties find it helpful, they may identify days or weeks within that period that are not consecutive.  The parties shall inform the Court of their proposed dates by joint status report on or before May 21, 2021.

       The Court has also discussed with the parties the prospect of using the written reports of opinion witnesses as the direct testimony of those witnesses.  The Court has decided that the direct testimony of all opinion witnesses will be submitted in writing, and that the proponent of each witness may decide whether the written report of that witness will serve as her or his direct testimony, or whether to separately draft written direct testimony for that witness.

       In light of the foregoing, it is hereby

       ORDERED that the hearing scheduled to begin on July 12, 2021 is CANCELLED; it is

FURTHER ORDERED that the May 14, 2021 deadline for filing pre-hearing briefs, the June 4, 2021 deadline for filing reply briefs, and the May 12, 2021 suggested deadline for filing joint appendices are VACATED; it is

FURTHER ORDERED that the parties shall meet and confer to identify several mutually suitable date ranges on which to reschedule the hearing, subject to the specifications set forth in this Order, and shall notify the Court of those dates by joint status report on or before May 21, 2021; and it is

FURTHER ORDERED that all opinion witnesses shall provide their direct testimony in writing, and that the proponent of each witness shall decide whether the written report of that witness or some other writing shall serve as the direct testimony of that witness.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  April 30, 2021