UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>and<br><br>TOBACCO-FREE KIDS<br>ACTION FUND, *et al.*,<br>    Plaintiff-Intervenors,<br><br>v.<br><br>PHILIP MORRIS USA INC., *et al.*,<br>    Defendants,<br><br>*and*<br><br>ITG BRANDS, LLC, *et al.*,<br>    Post-Judgment Parties Regarding<br>    Remedies. | Civil Action No. 99-CV-2496 (PLF)<br>Next scheduled court appearance:<br>    None |

**PLAINTIFFS' PARTIAL OPPOSITION TO ITG BRANDS'
MOTION TO SEAL PORTIONS OF THE AMENDED TEMME REPORT**

Plaintiffs oppose ITG's request to seal certain information in the amended report of its marketing expert, James Temme. ITG's main argument on the point-of-sale topic before this Court is that it should receive specialized treatment in whatever remedy the Court may eventually impose. ITG's argument rests upon factors such as its selling fewer cigarettes and having less visible shelf-space at retail than its competitors. In support, Mr. Temme's amended report gives specific numbers and ratios for ITG's and its competitors' sales volume, comparative visible shelf-space, and more. ITG has asked the Court to seal the specifics — even aggregated sales-volume data that one of the self-same competitors has already publicly filed in this case. As the proponent of sealing, ITG bears a heavy burden to demonstrate that sealing is warranted. It falls far short of meeting its burden.

Plaintiffs have agreed, for present purposes only and not for later stages of the proceedings, not to challenge ITG's requests to seal certain items in Mr. Temme's Amended Report.[1] But Plaintiffs oppose ITG's bid to seal four particular items.

First, Plaintiffs oppose sealing various ratios of the number of visible ITG cigarette packs versus competitors' cigarette packs on publicly visible cigarette displays in retail stores. Any person visiting a retail store can see what brands (*e.g.*, Winston, Kool, etc.), brand-styles (*e.g.*, "Winston Black 100," "Winston Gold King"), and brand-style package designs (*e.g.*, a limited-time-only package design for Winston Black 100s that has "$0.50 off 2" printed on the top left)[2] are visible on a cigarette merchandising set; and anyone can see how many "pack facings" are visible for each package design.

ITG had its sales personnel photograph publicly visible set displays at various retail stores; counted the total number of brands, brand-styles, brand-style package designs ("SKUs" per Mr. Temme), and pack facings visible for each manufacturer in the photographs; and finally, used division to calculate ratios of ITG brand, brand-style, SKU, and pack-facing counts visible

---

[1] The Court must satisfy itself that all items ITG seeks to seal, including those that Plaintiffs are not challenging, meet the criteria for sealing; parties' agreement or acquiescence for documents to be filed under seal is not sufficient. *See, e.g., Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 147 (D.D.C. 2010) (notwithstanding consent of opposing sides, denying motion to seal because movant "failed to articulate a substantial interest in sealing portions of the record so as to overcome the strong presumption in favor of public access to judicial records"). Plaintiffs' proposed order clearly identifies which items Plaintiffs are challenging and which we are acceding to for present purposes.

[2] For this brief, Plaintiffs use Mr. Temme's shorthand of calling brand-style package designs "SKUs." "SKU" actually stands for a different concept, "stock keeping unit," and SKUs are typically 7- to 9-digit numbers. Mr. Temme was unclear at deposition whether a SKU (in the sense of a 7- to 9-digit "stock keeping unit") corresponds to one and only one package design. Temme Dep. 210:20-211:22 (Feb. 23, 2021), attached as Ex.1.

at retail, versus the counts of its competitors' visible product. For present purposes only, Plaintiffs accede to ITG's request to seal the *precise* number of stores ITG included in its pack-facing study,[3] as well as the total counts of the products that were publicly visible at those stores. But Plaintiffs strongly oppose sealing the *ratios* of ITG's visible product compared to its competitors' visible product. Mr. Temme's ultimate opinion — that the proposed remedy will likely have "a *disproportionate* negative effect on ITG Brands *compared to* the other two manufacturers," Temme Am. Rep. ¶ 17, at 4 (emphases added) — rests heavily upon *precisely* these ratios.[4]

Plaintiffs also oppose sealing three other items. First is a table showing the total volume of cigarettes shipped to retailers in 2019, aggregated by manufacturer; "core brand" volume, aggregated by manufacturer; and the ratio of the first of these to the second of these, for each manufacturer. (Table at 14 (top of page.)) Second are recitations of how many ITG pack facings its form contracts require to be on display — in other words, the "Plan Requirements (Contractual Facings)" for ITG's "FMC Gold" and "FMC Platinum" contract levels, per the pertinent column title and row names in the table at 19. (Figures within column 1 of table at 19; and figures within the body of ¶¶ 62, at 18, and 63 (line 2), at 19). Third are the names of an ITG

---

[3] ITG did not designate as confidential Mr. Temme's deposition testimony characterizing the study as including 40,000 stores (twice) and 40,700 stores (once). Temme Dep. 136:9-14, 184:3-8, 185:10-11, attached as Ex. 1.

[4] At issue are the ratios of facings to SKUs and average facings and SKUs per store, and comparisons of ITG's ratios on these metrics versus its competitors. The figures appear within the body of ¶ 19, at 5; tables following ¶ 48, at 13 (bottom of page) [Plaintiffs have acceded to all but the columns with "Average" or "Ratio" in the column name]; and within the body of ¶ 49, at 14.

cigarette brand and its "direct competitors," with which ("[n]ot surprisingly," according to Mr. Temme) the ITG brand has "very high" interaction. (Parenthetical phrase in ¶ 83, at 23).

Courts in this circuit look to the six factors identified in *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980): (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. The proponent of a motion to seal bears the burden of persuasion and "must demonstrate that these six factors, in totality, overcome the strong presumption in favor of public access to judicial proceedings." *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 140 (D.D.C. 2012). ITG provides no particularized analysis of the information it asks to be sealed. Such an analysis demonstrates that the information should not be sealed.

**Need for public access.** The first *Hubbard* factor is "the always strong presumption in favor of public access to judicial proceedings." *Hubbard*, 650 F.2d at 317. ITG asks the Court to reverse the burden of persuasion, asserting, without citation, that "[t]here is no need to *[sic]* public access to highly sensitive business information revealed in these documents." This is backwards: it "is not the party seeking unsealing's burden to proffer a need for public access; the burden is instead the [proponent's] to demonstrate the *absence* of a need for public access because the law presumes that the public is entitled to access the contents of judicial proceedings." *Vanda Pharm., Inc. v. FDA*, ___ F. Supp. 3d ___, No. 19-cv-301, 2021 WL 1820264, at *5 (D.D.C. May 6, 2021) (quoting *ISS Marine Servs.*, 905 F. Supp. 2d at 140-41 (D.D.C. 2012)) (cleaned up). That presumption is particularly strong here because ITG plainly

4

intends Mr. Temme's opinions, as laid out in the Temme Amended Report, to influence the Court's decision; Mr. Temme is an "expect to call" witness for the Manufacturers and Retailers, and his Amended Report discloses the opinions he will offer at the hearing. Mfgrs.' & Retailers' Witness List at 7 (Dkt. No. 6408; filed 4/5/2021).[5] Mr. Temme confirmed at deposition that the information from ITG's pack-facing study is central to the opinions he will offer the Court.[6] As a result, "[t]he public interest in these documents is heightened because they allow the public to understand the rulings as well as the contours of the disputes between the parties." *Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017). Even if the Court ultimately were not to refer to the information in its decision, this factor would still weigh in favor disclosure because the "public also has a transparency interest in knowing what record evidence the Court saw fit to exclude from its explanation of the reasons underlying its ultimate decision." *Vanda Pharm.*, ___ F. Supp. 3d at ___, 2021 WL 1820264, at *6. The fact that the government is a party also increases the public interest. *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996).

    The public interest in access is at its zenith here, where ITG expects to call Mr. Temme and to tender his Amended Report into evidence, and where it is clear that ITG intends the

---

[5] ITG has also identified Mr. Temme's Amended Report as an "expect to offer" exhibit. Mfgrs.' & Retailers' Exhibit List at 5 (*vide* Exhibit 87) (Dkt. No. 6405; filed 4/5/2021); Plaintiffs have objected to the admissibility of this and other exhibit reports.

[6] Mr. Temme asked ITG, more than once, for data about SKUs and pack facings at stores because he considered that information important, and he relied on the pack-facing study data ITG gave him. Temme Dep. 143:16-144:4, 184:9-185:4, attached as Ex. 1. While Mr. Temme considered much of the information ITG gave him, he focused on "what I found to be more tangible" pack-facing and SKU data "that I could rely on." *Id*. at 108:21-109:4. Indeed, in contrast to other potentially less reliable information that "really didn't impact my analysis[,] [m]y analysis was more data driven relative to the number of facings and SKUs that were available." *Id*. at 110:16-22.

Amended Report to influence the Court's decision on its request to have the remedy modified as to it alone.

**Public availability of the information.** Under the second *Hubbard* factor, if the relevant information is already publicly available, there is less justification to seal it; if not, this factor is neutral. *Vanda Pharm.*, ___ F. Supp. 3d at ___, 2021 WL 1820264, at *7 (citing *Grynberg v. BP P.L.C.*, 205 F. Supp. 3d 1, 3 (D.D.C. 2016)). The public does not have access to the ratios of publicly-visible cigarette display information that ITG calculated (although as noted above, the public does have access to the cigarette display racks that ITG photographed to determine these ratios). The second *Hubbard* factor is thus neutral as to the ratios from ITG's pack-facing study. But the public already has access to the sales volume data and the ITG contract minimum pack-facing display requirements that ITG asks to have sealed. At page 22, ¶ 79, ITG itself publicly presents the sales-volume data in the second of the three columns ITG asks the Court to seal in the table at the top of page 14. Furthermore, the brand-specific sales-volume data in the first column that ITG asks to have sealed at the top of page 14 (which are also used to calculate the third column) are already available on the Court's public docket, in even more granular form. Philip Morris USA's POS_MR_KM_002895 provides sales broken down by brand, state, and retail channel for both 2019 and 2020. The document has been filed with the Court and unsealed on motion of Philip Morris USA. (*See* Motion to Unseal, Dkt. No. 6386, filed 2/22/2021; Order granting motion, Dkt. No. 6388; issued 2/23/2021.) ITG can have no legitimate business interest in concealing already publicly-available sales-volume information.

Similarly, ITG has publicly stipulated to the authenticity of the publicly-filed form retailer contracts that set forth its contractual minimum pack-facing display requirements. *See* Jt. Stipulations of Fact, Stip. No. 36 (Dkt. No. 6411 at 6); *id.*, Ex. L (Dkt. No. 6411-1, at 144) ("ITG

Brands Choice Growth Merchandising Plan Description 2020: Factory Made Cigarettes," ¶ 4) (identifying minimum display requirements for FMC Gold and FMC Platinum contract levels).[7] ITG has no legitimate business interest to conceal this publicly-available information either.

**Identity of party objecting and strength of objection.** The third *Hubbard* factor has two aspects. The first aspect is the identity of the party objecting. ITG is the only entity that seeks sealing; no third party objects to public disclosure, and there is no plausible claim that sealing is otherwise necessary to protect third-party interests. Accordingly, this branch of the third *Hubbard* factor does not weigh heavily in favor of sealing. "[L]itigants to this proceeding have a lesser claim to privacy than third parties." *Hyatt*, 251 F. Supp. 3d at 185 (quoting *McConnell v. Fed. Election Comm'n*, 251 F.Supp.2d 919, 932 (D.D.C. 2003)); *see also Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 120 (D.C. Cir. 2021).

The other aspect of this *Hubbard* factor is the "strength with which a party asserts its interests." *Hubbard*, 650 F.2d at 319. Here, ITG asserts its interests in only the most perfunctory manner. It has eschewed proffering a declaration from a company official, or even an outside attorney, to explain the harms that would flow from releasing the information; providing any other evidence; or even articulating how disclosure would cause it harm. Because ITG makes only half-hearted sealing efforts, this aspect of the third *Hubbard* factor cuts against it.

**Strength of the interest asserted.** The fourth *Hubbard* factor requires particulars, not a conclusory say-so. Parties seeking sealing "must specifically identify the commercially sensitive information contained in the redactions and explain why its disclosure would harm their

---

[7] *See also* Temme Am. Report 18 n.24 (in parenthetical referencing facing requirements) (no sealing requested); Eldridge Decl. ¶ 49, at 12 (Dkt. No. 6360; filed 1/11/2021) (describing plan requirements) (not designated as confidential); Temme Dep. 144:5-10; 148:8-12; 152:3-17, attached as Ex. 1 (no designated as confidential).

competitive standing." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 316 F. Supp. 3d 455, 465 (D.D.C. 2018). "Broad," "vague," "conclusory," "cursory," or "amorphous" claims of prejudice do not overcome the presumption of public access. *Grynberg v. BP P.L.C.*, 205 F. Supp. 3d 1, 4 (D.D.C. 2016) ("vague"); *United States v. Thomas*, 840 F. Supp. 2d 1, 4 (D.D.C. 2011) ("conclusory"); *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 149-50 (D.D.C. 2010) ("cursory" and "amorphous"). A party failed to justify sealing where the discussion of his interest was contained in a single paragraph that "does not quantify, provide evidence for, or otherwise support his characterization of his interests as 'substantial.'" *Zapp*, 746 F. Supp. 2d at 149–51 (D.D.C. 2010). "It is insufficient for [a party] to simply make broad reference to 'confidential and sensitive information' even if the Challenged Documents comprise voluminous materials." *Vanda Pharm.*, ___ F. Supp. 3d at ___, 2021 WL 1820264, at *8 (cleaned up).[8]

ITG does not even try to muster specific rationalizations. Nor could it. ITG cannot meet its burden to demonstrate that it would suffer competitive loss if its competitors discovered (1) the comparative ratios of different cigarette brands on publicly visible retail set displays; (2) sales-volume information that Philip Morris USA has already publicly filed in granular form;

---

[8] *Accord*, *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013) ("Broad, general, and conclusory findings are insufficient to justify closure."); *DePuy Synthes Prod., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1372–73 (Fed. Cir. 2021) (rejecting bare assertion that disclosure would harm its "proprietary and competitive business interests"); *Syntel Sterling Best Shores Mauritus Ltd. v. Trizetto Grp.*, No. 15 CIV. 211 (LGS), 2021 WL 1541385, at *2 (S.D.N.Y. Apr. 20, 2021) (holding that "vague and unspecified business concerns, like 'confidential and related business interactions' that 'could be used by corporate competitors in a detrimental manner,' are broad, general, and conclusory allegations insufficient to justify sealing.") (cleaned up); *Primus Grp., Inc. v. Inst. for Env't Health, Inc.*, 395 F. Supp. 3d 1243, 1271 (N.D. Cal. 2019) (rejecting as conclusory bare assertion that party "data a trade secret and public disclosure would hurt its competitive standing").

(3) the minimum pack-facing display requirements under its contracts; and (4) a specific example of an ITG cigarette brand that (unsurprisingly, according to Mr. Temme) has very high interaction with its direct competitors. The perfunctory, conclusory assertions ITG offers are insufficient to overcome the presumption of public availability. For this reason alone, its motion should be denied. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 306–07 (6th Cir. 2016); *Baxter Int'l, Inc. v. Abbott Labs*, 297 F.3d 544, 547 (7th Cir. 2002). As in *Baxter*, ITG does nothing more than "serve up a bald assertion that confidentiality promotes [its] business interests." 297 F.3d at 547. ITG does no more than repeatedly cant the terms "confidential," "business information," and "competitors" in various configurations. Judge Easterbrook's rejection of such "argument" in *Baxter* applies equally here:

> Beyond asserting that the document must be kept confidential because we say so (the "agreement is, by its terms, confidential"), this contends only that disclosure "could ... harm Abbott's competitive position." How? Not explained. Why is this sort of harm (whatever it may be) a legal justification for secrecy in litigation? Not explained. Why is the fact that some other document contains *references* to a license sufficient to conceal the referring document? Not explained.

*Id*.

**Possibility of prejudice in other litigation.** The fifth *Hubbard* factor looks to whether disclosure would lead to prejudice in some other litigation. *Vanda Pharm.*, ___ F. Supp. 3d at ___, 2021 WL 1820264, at *9. "For this factor to weigh in favor of continued sealing, the party opposing disclosure 'must have identified how the ... disclosure' of the relevant material 'causes ... legal prejudice.'" *United States v. All Assets Held at Bank Julius Baer & Co.*, ___ F. Supp. 3d ___, No. 04-CV-798 (PLF/GMH), 2020 WL 7773423, at *7–8 (D.D.C. Dec. 30, 2020) (Harvey, M.J.) (quoting *Zapp*, 746 F. Supp. 2d at 150). ITG makes a conclusory assertion that public disclosure of the relevant information would harm it in litigation, but it is difficult to fathom

9

how; and in any event, ITG has identified no litigation or other proceeding in which it might be prejudiced by unsealing of the information in the Amended Report.

**Purposes for which the documents were introduced.** Under the sixth and final *Hubbard* factor, when a litigant submits documents "with the intention that the court will rely on them," there is generally "a strong presumption of public access." *Id.*, ___ F. Supp. 3d at ___, 2020 WL 7773423, at *8; *Hyatt v. Lee*, 251 F. Supp. 3d at 186 (finding that the sixth factor weighed in favor of publicly disclosing, among other things, "the motions of the parties[ ] and the records and expert reports relied upon by the parties and presented to the Court in support of their motions for summary judgment"). Where litigants submit exhibits "in order to convince the Court" of their legal arguments, "they cannot easily claim that the exhibits must remain sealed." *Grynberg*, 205 F. Supp. 3d at 3.

Plaintiffs disagree with ITG's conclusory assertion that "the information being sealed is not of high relevance to the issue before the Court." Mot. to Seal at 3. ITG's principal argument on remand is that it should receive individualized treatment. Mr. Temme is its expert witness for this proposition. His ultimate opinion, that the proposed remedy would disproportionately affect ITG, is largely based upon the ratios from ITG's study of publicly-visible pack facings. The information that ITG wants sealed is central to the chief argument it wants to put before the Court. This makes it highly relevant. *See* Fed. R. Evid. 401 ("Test for Relevant Evidence").

**Conclusion.** ITG cannot meet its burden of showing that the information discussed above should be sealed despite the presumption of public access, and the Court should deny ITG's request to seal the information outlined above. The proposed order that accompanies this motion lists all of the information ITG requests to seal, and it clearly indicates which items Plaintiffs have acceded to and which Plaintiffs are here challenging.

Dated:  May 14, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

ARUN RAO
Deputy Assistant Attorney General
Civil Division

GUSTAV W. EYLER, Director
LISA K. HSIAO, Assistant Director
Consumer Protection Branch

  /s/
DANIEL K. CRANE-HIRSCH
Trial Attorney
ADAM E. LYONS
Senior Litigation Counsel
Civil Division
United States Department of Justice
PO Box 386
Washington, DC 20044-0386
Telephone: 202-616-8242 (Crane-Hirsch)
Facsimile: 202-514-8742
daniel.crane-hirsch@usdoj.gov

*Attorneys for Plaintiff United States of America*

  /s/
Scott P. Lewis (pro hac vice)
slewis@andersonkreiger.com
Melissa C. Allison (admitted pro hac vice)
mallison@andersonkreiger.com
Christina S. Marshall (D.C. Bar # MA0022)
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Attorneys for the Public Health Plaintiff-Intervenors*

11