## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No.: 99-2496 (PF)** |
| **PHILIP MORRIS USA INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## REPLY IN SUPPORT OF MOTION TO SEAL PORTIONS OF THE
## AMENDED EXPERT REPORT OF JAMES E. TEMME

At issue in this motion is plaintiffs' opposition to one category of information identified in ITG Brands' motion to seal: the calculated ratios of ITG Brands' facings as compared to its SKUs.[1] (Opp. at 2-3.)[2]  This information is confidential business information that could harm ITG Brands if disclosed on the public record.  Both the long-standing Protective Order in this case and a balancing of the *Hubbard* factors support ITG Brands' request.  Plaintiffs' motion is also premature and overbroad to the extent it purports to relate to use of confidential information at trial, an issue which the parties have been discussing.  At present, ITG Brands seeks only to ensure that confidential information filed in the public record remains protected from public access; as it has made clear to plaintiffs it will discuss in good faith a mechanism for treatment of such information at trial.

---

[1] Plaintiffs repeatedly take shots at Mr. Temme's calculations claiming he should have used the phrase "brand style" instead of SKU.  (Oppo. at 2, 2 n.2.)  It is unclear why plaintiffs spend so much time on this issue, but it is entirely irrelevant to the issue at hand: whether the information in Mr. Temme's report should remain sealed on the public record.

[2] Plaintiffs' opposition also raises objections to sealing three other categories of information: a table showing sales volume aggregated by manufacturer; how many pack facings ITG Brands' contracts require to be on display; and the identity of which competitor brands ITG Brands identifies as a particular brand's competitors. After consideration, ITG Brands does not maintain that this information should continue to be sealed.

I. **THE MOTION SHOULD BE GRANTED BECAUSE THE PROTECTIVE ORDER PERMITS THE SEALING OF "CONFIDENTIAL" INFORMATION AND THE COURT PREVIOUSLY SEALED THE SAME INFORMATION.**

Plaintiffs focus exclusively on the *Hubbard* factors in opposing the motion to seal and ignore that (1) a Protective Order has governed the filing of Confidential Information in this case for over 20 years, and (2) this Court previously sealed the information.  On March 3, 2000, the Court entered a Protective Order Governing Confidential Information, Order #7.  Under Order #7 any party producing information may designate it as "Confidential" if it "reasonably and in good faith believes" that such information "constitutes or contains Confidential information as defined in Paragraphs 4 and 5 of this Order."  (Order #7 at ¶ 6.)  In turn, those paragraphs define "Confidential" information as "Trade Secrets and information otherwise entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure."  (*Id.* at ¶ 4.)  Paragraph 11 of Order #7 prohibits the filing of materials designated "Confidential" in the public record, except to the Court and all persons assisting the Court in this action.

ITG Brands designated the information at issue "Confidential" pursuant to the Protective Order, both in Mr. Temme's original report and in his amended report.  Accordingly, the Court granted ITG Brands' motion to seal the original report.  (1/13/21 Order, Dkt No. 6370.)  Such designation was plainly proper, under the standards set out in the Protective Order.  The ratio analysis falls squarely into "confidential research, development, or commercial information," which is protected by Rule 26(c)(1)(G), the rule referenced in the Protective Order.  The information at issue is a confidential analysis based on ITG Brands' confidential and commercially sensitive internal retail research data and sales information, which is ITG Brands' "commercial information."  Plaintiffs ignore this history and, moreover, do not contend that ITG Brands' designation of its information as "Confidential" was in any way improper.  Because the information was appropriately designated as Confidential under the Protective Order that

governs the conduct of parties in this case, and because the Protective Order thus prohibits the

filing of this information on the public record, ITG Brands' motion should be granted.

## II.    IF THEY APPLY, THE *HUBBARD* FACTORS ALSO SUPPORT SEALING OF THE "RATIOS" INFORMATION.

As noted above, the Protective Order entered by this Court governs, and the information

at issue was appropriately and properly designated as Confidential under the order, which should

end the analysis here.  However, to the extent that the *Hubbard* factors apply, they too support

sealing the information at issue.  Plaintiffs' remaining objection (*see* footnote 2, *supra*) relates to

the sealing of an analysis performed by ITG Brands using a confidential study performed by ITG

Brands' business personnel that utilized photographs of retail sets (i.e., the number of facings on

display) in 40,000 stores.  (Ex. 1, Temme Dep. Tr. at 136:9-14, 184:3-8, 185:10-11.) Mr. Temme

used the data from this study and compared it to the sales data for different SKUs for ITG

Brands, RJR, and PM USA to determine the average facings per SKU (or "ratios" as Plaintiffs

refer to the analysis).  (Ex. 1, Temme Dep. Tr. at 200:13-202:18.)  Although Plaintiffs'

opposition does not clearly identify the information to which it objects, the Proposed Order

identifies the information as "Figures within ¶ 19, at 14; ¶ 49, at 14; ¶ 63 (line 4), at 19; in tables

following ¶ 48 at bottom of page 13, the figures in columns designated as 'averages' or 'ratios';

in table before ¶ 63 at top of page 19, the figures in columns 5, 6, and 7."

The *Hubbard* factors support ordering that this limited information remain sealed and not

available to the public on the Court's docket.  Although there is a "strong presumption in favor

of public access to judicial proceedings," the Court has discretion to allow a party to file

documents under seal using six factors: (1) the need for public access to the documents at issue;

(2) the extent of previous public access to the documents; (3) the fact that someone has objected

to disclosure, and the identity of that person; (4) the strength of any property and privacy

interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980); *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016).

### A. The Public Access Factor Weighs In Favor Of Sealing.

The first *Hubbard* factor is the need for public access to the information at issue. Plaintiffs' argument for the public's need for access to the documents is that Mr. Temme will testify at trial and his facings to SKUs ratios are "central" to his opinions. (Opp. at 3, 5.)  This misses the mark and is premature in any event.  Mr. Temme will testify at the evidentiary hearing and ITG Brands has stated that it is willing to discuss with plaintiffs about what information may be presented in the open courtroom.  Indeed, in the joint status report currently due today, ITG Brands and defendants are proposing a process and date for resolving questions related to the use of confidential information at trial.  However, use at trial is not the issue before the Court today.  Rather, ITG Brands is seeking to redact limited information in a public written filing that is accessible to its competitors today and permanently on the public docket.

Plaintiffs also repeatedly refer to the Court's future decision on the point of sale remedy as a reason this information needs to be publicly available.  (Opp. at 5-6 ("it is clear that ITG intends the Amended Report to influence the Court's decision on its request to have the remedy modified as to it alone").)  This argument is non-sensical.  The Court is not entering a decision in this case based on the current record.  As plaintiffs are well aware, the Court will conduct an evidentiary hearing sometime in the summer of 2022, and the experts will appear at that hearing via written direct examinations and for cross examination, with confidential information treated as the parties and the Court determine is appropriate. To suggest the limited redactions in the Amended Report should be unsealed now and made public on the Court's docket because they

may be cited in a final decision to be issued in 2022 after trial is misleading at best.

Moreover, even if it is ultimately cited in the decision, the ratios information in Mr. Temme's is unlike that at issue in *Hyatt v. Lee*, cited by Plaintiffs.  The *Hyatt* case involved many thousands of sealed pages in the record, including memorandum opinions drafted by the Court, and the Court held that information was necessary to "allow the public to understand the rulings as well as the contours of the disputes between the parties."  251 F. Supp. 3d 181, 184 (D.D.C. 2017).  Conversely, here, ITG Brands proposes redacting a handful of figures in one filing on the docket, with no determination yet about how those figures will be treated at trial and no guarantee that they will even be mentioned in the Court's final decision, much less "pivotal" to the public's understanding of it.  Given that there is no decision yet on which the Court could rely on any information in Mr. Temme's report, and the parties have not yet addressed issues related to use of confidential information at trial, this factor weighs in favor of sealing.

### B.  There Has Been No Previous Public Access To The Information At Issue.

Plaintiffs claim that this factor is "neutral" because the public has access to the cigarette display racks that ITG photographed to determine the ratios, even if the public does not have access to the calculated ratios.  This argument is unpersuasive.  As explained above, the ratios at issue were calculated using an internal study of 40,000 stores and analyzing that data in conjunction with sales information to derive generally applicable average ratios.  The fact that someone in the public could go review a retail rack at a dozen, or even one hundred stores, does not equate to the public having data on 40,000 stores, let alone the calculated ratios.  Nor does the public have access to ITG Brands' and the other manufacturers' SKU numbers and sales numbers to perform the ratio analysis in any event.  Plaintiffs' repeated references to the photographs is likewise a red herring.  ITG Brands is not asking the Court to seal photographs of

retail sets from the public record.  To the contrary, ITG Brands has used these photographs, compiled data from them, and then aggregated that information with other internal ITG Brands' data including SKUs per store.  This analysis is not publicly available.  Thus, these numbers are not easily calculated by hand and the suggestion that the information could be easily determined independently is misleading at best.  This factor weighs in favor of sealing the ratio analysis.

### C.  ITG Brands Has Consistently and Strongly Objected To Disclosure.

The third *Hubbard* factor assesses the identity of the objector and the strength with which a party asserts its interests.  ITG Brands is the only entity objecting to disclosure and thus this factor weighs in favor of disclosure.  Although plaintiffs claim that ITG Brands "makes only half-hearted sealing efforts," plaintiffs ignore the history of this issue.  The Court previously sealed the information at issue, demonstrating that the Court found ITG's arguments more than "half-hearted."  More importantly, as explained above, plaintiffs ignore that a Protective Order establishes the procedures for sealing information designated "Confidential" in this case.  While plaintiffs may not like that procedure, it has been in place for over two decades in this litigation, ITG Brands followed that procedure, and the Court granted its request to seal.  Moreover, ITG Brands has engaged in a lengthy colloquy with plaintiffs about its request to seal and has, before and in connection with this reply, consented to make public a number of items, but has continually made plain its strong belief that the ratios analysis, which is based on confidential and sensitive business information, is confidential.

### D.  ITG Brands Maintains Strong Property And Privacy Interests In The Information At Issue.

The fourth *Hubbard* factor requires that ITG Brands explain the commercially sensitive information contained in the redactions and explain the potential harm.  The *Hubbard* court explained that "the tradition of access" to court documents is subject to a "time-honored

6

exception[]" in that "courts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing." *Hubbard*, 650 F.3d at 315 (internal quotations omitted). Indeed, "[p]rotecting an entity's 'competitive standing' through retained confidentiality in business information has been recognized as an appropriate justification for restriction of public or press access." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 316 F. Supp. 3d 455, 463-464 (D.D.C. 2018) (quoting *New York v. Microsoft Corp.*, 2002 WL 1315804, at *1 (D.D.C. May 8, 2002)); *see also, e.g.*, *Metlife v. Fin. Stability Oversight Council*, 865 F.3d 661, 671 (D.C. Cir. 2017) ("For documents containing sensitive business information and trade secrets, [the fourth and fifth *Hubbard*] factors often weigh in favor of sealing and, as *Hubbard* itself noted, courts commonly permit redaction of that kind of information."); *United States v. Aetna Inc.*, 2016 WL 8739257, at *2 (D.D.C. Dec. 4, 2016) (finding the fourth Hubbard factor "weighs strongly in favor of sealing . . . information" that "includes highly sensitive and confidential business information which Humana has not disclosed publicly"). As explained above and in the motion, there is no question that the information at issue is commercially sensitive. The ratios are based on internal business analyses compiled by ITG Brands using confidential data. As explained by Mr. Temme:

Q. Did you try to seek any of that information for the broader market?

A. This was all the information that ITG had available in terms of the number of facings. They knew that -- in some ways, Mr. Dietert, this is kind of a break-through capability for them. They previously only knew based on the MSAI data what was shipped to the stores, what SKUs were shipped. This insight on these 40,000 stores represents a significant new piece of information for them. So I don't know how much it is available in the broader market. I don't know if Philip Morris and Reynolds have a comparable alternative. I doubt -- MSAI data does not contain that level of information.

Q. Does this level of information, will it help ITG better utilize or more effectively utilize its space on cigarette merchandising sets?

A. I believe it would be very valuable information in helping them strategically

plan.

(Ex. 1, Temme Dep. Tr. at 201:11-202:7.)

The cases cited by plaintiffs to support their argument on this factor are distinguishable. First, the *In re McCormick* court granted a motion to unseal class certification papers because, *inter alia*, the opponent sought to keep "nonsubstantive references to or general discussions of those [confidential] documents are not similarly protected." 316 F. Supp. 3d at 467. Here, ITG Brands seeks to keep specific, confidential numbers sealed from the public record. This is not an instance where ITG Brands offers a general comment about the information. Rather, the actual confidential numbers and analysis would be available to its competitors. Second, defendants in *Grynberg v. BP P.L.C.*, failed to "explain[] what material in the disputed exhibits falls within that category" of "business information that might harm a litigant's competitive standing." 205 F. Supp. 3d 1, 4 (D.D.C. 2016). Defendants in that case sought sealing of 10 documents without explaining what information truly required protection. *Id.* Conversely here, ITG Brands has narrowed its redactions to a handful of current, internal numbers that would be highly relevant to its competitors – both those involved in this case and those that are not. Third, *United States v. Thomas* is inapt. That case provides brief analysis of this factor and involved a completely different set of facts – defendant opposed the public filing of a consent judgment entered into with the United States government. 840 F. Supp. 2d 1, 4 (D.D.C. 2011). Indeed a case quoted by Plaintiffs demonstrates how the case is inapposite: "Why is the fact that some other document contains references to a license sufficient to conceal the referring document? Not explained." (Opp. at 9 (quoting *Baxter Int'l, Inc. v. Abbott Labs*, 297 F.3d 544, 547 (7th Cir. 2002).)

In sum, the fourth *Hubbard* factor weighs strongly in favor of keeping this confidential business information under seal.

**E.  ITG Brands Will Be Prejudiced If The Information Is Unsealed.**

"The fifth Hubbard factor considers whether disclosure of the documents will lead to prejudice in ***future litigation*** to the party seeking the seal." *Friedman v. Sebelius*, 672 F. Supp.2d 54, 60 (D.D.C. 2009) (emphasis added).  As explained in the motion to seal, the disclosure of this information could have an effect on future litigation as it would disclose to ITG Brands' competitors confidential, internal business information.  Plaintiffs criticize ITG Brands for not identifying specific litigation and claim that "it is difficult to fathom" how disclosure could prejudice ITG Brands in other litigation.  (Opp. at 9-10.)  As an initial matter, Plaintiffs cite no authority requiring ITG Brands to specifically identify current, on-going litigation that could be impacted.  To the contrary, this factor specifically addresses future litigation.  Accordingly, ITG Brands noted in its motion that disclosure of this information could impact it in future litigation.  While ITG Brands, RJR, and PM USA are aligned in this current matter, there are other cases – and could be future cases – where that is not the case.  In addition, disclosing this information would give access to confidential business information to ITG Brands' other competitors which are not involved in this lawsuit, but could be adversaries to ITG Brands in other matters.  This factor falls squarely in favor of sealing.

**F.  The Purposes For Which The Information Was Introduced During
The Judicial Proceedings.**

The final *Hubbard* factor considers "the purposes for which the documents were introduced during the judicial proceedings." *Hardaway*, 843 F.3d at 980; *Hubbard*, 650 F.2d at 321. "The more relevant [the information] is to the central claims of the litigation, the stronger the presumption of [public access to the information] becomes." *United States v. Harris*, 204 F.Supp.3d 10, 17-18 (2016).  Although Plaintiffs claim that the ratio information is "central to the chief argument [ITG Brands] wants to put before the Court," (Opp. at 10), Plaintiffs ignore

the panoply of arguments set forth in Mr. Temme's report and Mr. Eldridge's declaration, of which the ratios are only one part.   Further, as explained above, Mr. Temme's expert report – as opposed to his testimony at trial – is unlikely to play a key role in the Court's decision on the POS remedy.  Indeed, prior to a decision being rendered there will at a minimum be written direct testimony of expert witnesses and oral cross-examination, all subject to ongoing discussions regarding treatment of confidential information in the open courtroom.  ITG Brands has made clear that at this time it is only seeking to seal this information in its written format on the public docket.

## CONCLUSION

Plaintiffs request the Court unseal sensitive, confidential business information on the public record.  Pursuant to the Protective Order this information should not be filed on the public record because it is properly designated as "Confidential" information under the standards and using the procedure ordered by this Court.  Moreover, an analysis of the six *Hubbard* factors weighs in favor of sealing this narrow information, which amounts to a handful of redactions across a thirty page document.  For the foregoing reasons, ITG Brands respectfully requests the Court grant its motion and permit the sealing of this limited information.

Dated: May 21, 2021

Respectfully submitted,

BAKER & HOSTETLER LLP

*/s/ Elizabeth B. McCallum*

By:    Elizabeth B. McCallum
       emccallum@bakerlaw.com
       Robert J. Brookhiser, Jr.
       rbrookhiser@bakerlaw.com

       Washington Square, Suite 1100
       1050 Connecticut Avenue, NW
       Washington, DC  20036-5304
       Telephone:   202.861.1500

Facsimile:   202.861.1783

*Attorneys for Remedies Party ITG*
*Brands, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May 2021, I filed a copy of the foregoing, which

will electronically serve all counsel of record who have entered an appearance in the case.

By:        */s/ Elizabeth B. McCallum*
           Elizabeth B. McCallum
           emccallum@bakerlaw.com
           Robert J. Brookhiser, Jr.
           rbrookhiser@bakerlaw.com

           Washington Square, Suite 1100
           1050 Connecticut Avenue, NW
           Washington, DC  20036-5304
           Telephone:   202.861.1500
           Facsimile:    202.861.1783

           *Attorneys for ITG Brands, LLC,*
           *Commonwealth Brands, Inc., and*
           *Commonwealth-Altadis, Inc.*