UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PHILIP MORRIS USA INC., *et al.*,<br><br>    Defendants. | Civil Action No. 99-CV-2496 (PLF)<br><br>Next scheduled court appearance: |

### OPPOSITION TO PUBLIC HEALTH INTERVENORS' MOTION TO CLARIFY AND AMEND ORDER #1015

Defendants Philip Morris USA Inc. and Altria Group, Inc. (collectively "Defendants") respectfully urge this Court to deny the Public Health Intervenors' Motion to Clarify and Amend Order #1015 (Dkt. No. 6445; filed Aug. 19, 2021).

Fewer than fourteen days before the expiration of the fifteen-year-old "Internet Document Website" obligation under Order #1015, the Public Health Intervenors have rushed into Court to demand, for the first time, that Defendants (1) expand the Internet Document Website, www.pmdocs.com, to include documents produced in an entirely unrelated litigation involving e-cigarettes, *In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, No. 19-md-02913-WHO (N.D. Cal.) ("Juul MDL"), and (2) maintain that website for at least a year beyond the September 1, 2021 expiration date. The Motion is baseless.

As an initial matter, the Public Health Intervenors' excuse for raising this issue at the eleventh hour—that they supposedly only recently learned that the Juul MDL involved a RICO claim and that Defendants produced documents in that litigation—is demonstrably untrue. The Public Health Intervenors maintain that they did not know of the Juul-related RICO claim until

April of this year. But at least one of the Public Health Intervenors issued a press release a year earlier lauding the filing of those RICO claims against Defendants. Not only that, but those lawsuits have been a matter of public record—in the court docket, the media, and Defendants' SEC disclosures—for more than two years. The Public Health Intervenors also claim that they only recently learned that Defendants had produced documents in the Juul MDL. That too cannot be true. Public filings in that litigation have described Defendants' document productions since January 2020.

The Motion also fails on the merits. The Public Health Intervenors ask this Court to "clarify" that the Internet Document Website requirement extends to a case involving products that were not even invented, and allegations of conduct that had not even occurred, when this case was tried and the injunction issued. But injunctions must be narrowly construed and narrowly tailored to the violations the Court found. Here, those findings pertained to an extensive evidentiary record about conventional cigarettes. E-vapor products did not exist at that time. Nothing in Order #1015 suggests that it extends to products other than conventional cigarettes. The Public Health Intervenors themselves have acknowledged the limits of Order #1015. When litigating the content and format of the corrective statements remedy, they agreed that the requirements do not extend to "smokeless tobacco, e-cigarettes, and other tobacco-derived nicotine products." Order #81-Remand 1.E (Dkt. No. 6260; filed May 1, 2018). These and other actions by the Public Health Intervenors belie any notion that Order #1015 sweeps as broadly as they now claim.

The Public Health Intervenors alternatively argue that Defendants' document productions in the Juul MDL constitute a "significant change in circumstances" that warrant "modification" of Defendants' Internet Document Website obligations. But there are no changes in

circumstances involving this case. What the Public Health Intervenors really seek is a *new* injunction without satisfying the standards to obtain one. The D.C. Circuit has made clear that "[c]ourts may not, under the guise of a modification, impose entirely new injunctive relief," *Salazar by Salazar v. District of Columbia*, 896 F.3d 489, 498 (D.C. Cir. 2018), and the Court should not do so here, particularly now after the expiration date of the Internet Document Website requirements has passed.

The Public Health Intervenors' Motion should be denied.

## BACKGROUND

**I.     The Internet Document Website Obligations Under Order #1015**

In August 2006, following trial on RICO claims based on Defendants' representations in the marketing of conventional cigarettes, the Court entered Order #1015 (Dkt. No. 5733; filed Aug. 17, 2006). Among other things, the Order, as modified, required Defendants to maintain "Internet Document Websites" until September 1, 2021. *See* Order #1015, ¶¶ 8–10; Order #1021 (Dkt. 5765; filed Sept. 20, 2006) (amending Order #1015 to require Defendants to maintain the Internet Document Websites for fifteen years, until September 1, 2021, consistent with the Court's opinion).

When the Court entered Order #1015, PM USA was already maintaining a website (www.pmdocs.com) for documents produced in conventional cigarette litigation, as required by the Master Settlement Agreement. *See United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 930 (D.D.C. 2006) (discussing the www.pmdocs.com website). Order #1015 thus required PM USA to maintain the information then-appearing on that website, and to add:

> (1) all documents produced to the Government in this case; (2) all documents produced on or after the date of this Final Judgment and Remedial Order in any court or administrative action in the United States concerning smoking and health, marketing, addiction, low-tar or low-nicotine cigarettes, or less hazardous

>cigarette research; and (3) all transcripts of depositions and letters of request testimony (with corresponding exhibits if not already on the website) given by any of their current or former employees, officers, directors, corporate designees, attorneys or agents, in this action or in any court or administrative action in the United States concerning smoking and health, marketing, addiction, low-tar or low-nicotine cigarettes, or less hazardous cigarette research; such transcripts shall be in machine-readable text if received or available from a court reporter. Philip Morris shall provide on its website all such documents produced by, pertaining to, or concerning Altria.

Order #1015 ¶ 10.a. The Order also required certain bibliographic information for the documents, including cigarette-related information such as the "Old Brand," the "Primary Brand," and the "Mentioned Brand" associated with the documents. *Id.* ¶ 10.c.

As the Public Health Intervenors recognize, the www.pmdocs.com website now has been in existence "for decades." Public Health Intervenors' Emergency Mot. at 2 (Dkt. No. 6446; filed Aug. 19, 2021). They make no argument—and never have in the last fifteen years—that Defendants failed to comply with Order #1015's Internet Document Website requirement during that time. Nor could they. Defendants have posted more than 4.7 million documents, amounting to approximately 22.6 million pages, in over 700 litigation matters involving conventional cigarettes. Decl. of Kimberly D. Harlowe, ¶ 2 (Ex. 1) ("Harlowe Decl."). No one has ever suggested that any defendant violated Order #1015 by failing to post documents from litigation involving products other than conventional cigarettes.

**II.     The Juul MDL**

On December 20, 2018, Altria announced that it had made a minority investment in Juul Labs, Inc., under which Altria obtained a 35% economic interest in Juul and Juul remained fully

independent.[1]  Intervenor Campaign for Tobacco-Free Kids immediately and publicly took note of the transaction.[2]

The first Juul-related class action alleging RICO claims against Altria and PM USA was filed shortly thereafter in April 2019.[3]  It garnered widespread media attention.[4]  The complaint and the others that followed were publicly available, not only on court websites but also through freely accessible media and public health group websites.[5]  As the number of Juul cases grew, the Judicial Panel on Multidistrict Litigation established a multidistrict litigation in the Northern District of California.[6]  The media continuously covered developments in that nationwide

---

[1] www.sec.gov/Archives/edgar/data/764180/000119312518353970/d660871dex991.htm.

[2] Statement of Matthew L. Myers, President, Campaign for Tobacco-Free Kids, *Altria-Juul Deal Is Alarming Development for Public Health and Shows Need for Stronger FDA Regulation* (Dec. 20, 2018), www.tobaccofreekids.org/press-releases/2018_12_20_altria_juul.

[3] *See Nessmith v. JUUL Labs, Inc.*, No. 8:19-cv-00884 (M.D. Fla. Apr. 15, 2019).

[4] *See, e.g.*, Corrado Rizzi, *Class Action Lawsuit Claims Juul Labs, Altria Group, Philip Morris "Prey" on Youth to Replace Cigarette Smokers*, ClassAction.org (Apr. 15, 2019), www.classaction.org/news/class-action-lawsuit-claims-juul-labs-altria-group-philip-morris-prey-on-youth-to-replace-cigarette-smokers; E.J. Dickson, *Juul Faces Class-Action Lawsuit for Allegedly Marketing Vapes to Teens*, Rolling Stone (May 6, 2019), www.rollingstone.com/culture/culture-news/juul-faces-class-action-lawsuit-for-allegedly-marketing-vapes-to-teens-831675; Bloomberg, *Juul and Philip Morris Are Sued Under RICO Act, Accused of Targeting Kids*, L.A. Times (Aug. 19, 2019), www.latimes.com/business/story/2019-08-19/juul-philip-morris-sued-rico-act; Janan Hanna, *Juul Facing Lawsuit Over Vaping Device*, Houston Chronicle (Aug. 20, 2019), www.pressreader.com/usa/houston-chronicle/20190820/282114933224776; Ryan Blethen, *King County Sues E-Cigarette Company Juul, Claiming It Targeted Young People*, Seattle Times (Oct. 17, 2019), www.seattletimes.com/seattlenews/health/king-county-sues-e-cigarette-company-juul-claiming-it-targeted-young-people.

[5] *See, e.g.*, https://tobacco.ucsf.edu/sites/g/files/tkssra4661/f/wysiwyg/Juul%20lawsuit%20-%20Florida%20April%202019.pdf (class action complaint); Rizzi, *supra* note 4 (providing link to class action complaint); Daphne Zhang, *Ariz. Schools Accus E-Cig Cos. of Deceptive Marketing*, Law360 (Aug. 24, 2020), www.law360.com/articles/1303672/ariz-schools-accuse-e-cig-cos-of-deceptive-marketing (providing link to action filed by Arizona school district).

[6] *See, e.g.*, Emily Field, *JPML Sends Juul Marketing Suits to California*, Law360 (Oct. 2, 2019), www.law360.com/articles/1205263; Mike Curley, *Juul MDL Complaints Consolidate National E-Cigarette Cases*, Law360 (Mar. 11, 2020), www.law360.com/articles/1251860/juul-mdl-complaints-consolidate-national-e-cigarette-cases (providing link to consolidated class action

litigation. For example, multiple outlets discussed the MDL Court's October 23, 2020 order, which partially granted Defendants' first round of motions to dismiss but allowed the plaintiffs to amend their RICO claims.[7] The media also reported on Defendants' motion to dismiss the plaintiffs' Second Amended Class Action Complaint, which largely focused on amending the RICO claims.[8]

The status of discovery in the Juul MDL, moreover, was reflected in numerous filings on the publicly accessible docket. In the January 9, 2020 case management conference statement, Altria confirmed that it had made its first document production in the preceding month.[9] In the August 19, 2020 statement, Altria described additional document productions and negotiations about document search terms.[10] The September 16, 2020 statement reflected that Altria had

---

complaint); Nicholas Iovino, *Nicotine Giants Fight RICO Claims in Sprawling E-Cigarette Class Action*, Courthouse News Service (Sep. 21, 2020), www.courthousenews.com/nicotine-giants-fight-rico-claims-in-sprawling-e-cigarette-class-action; Edvard Pettersson, *Juul's Defense of Marketing E-Cigarettes to Youth Targets Use of Organized Crime Law*, Insurance Journal (Sept. 23, 2020), www.insurancejournal.com/news/national/2020/09/23/583810.htm.

[7] *See* Order on Substantive Mots. to Dismiss, *In re JUUL Labs, Inc., Mktg. Sales Practices & Prods. Liab. Litig.*, No. 3:19-md-2913-WHO (N.D. Cal. Oct. 23, 2020) (Dkt. No. 1084); *see, e.g.*, Jef Feeley & Edvard Pettersson, *Juul Beats Racketeering Claims in Marketing Suits, For Now*, Bloomberg (Oct. 23, 2020), www.bloomberg.com/news/articles/2020-10-23/juul-beats-racketeering-claims-in-youth-marketing-suits-for-now; Jack Queen, *Juul, Altria Can't Slip Bulk of Claims in Vaping MDL*, Law360 (Oct. 26, 2020), www.law360.com/articles/1322680/juul-altria-can-t-slip-bulk-of-claims-in-vaping-mdl; Brendan Pierson, *Judge Declines to Dismiss or Stay Most Claims in Juul MDL*, Reuters Legal (Oct. 26, 2020), www.reuters.com/article/products-juul/judge-declines-to-dismiss-or-stay-most-claims-in-juul-mdl-idUSL1N2HH2SM.

[8] *See, e.g.*, Emily Field, *Juul, Altria Look to Trim Claims in Vaping MDL*, Law360 (Jan. 5, 2021), www.law360.com/articles/1341626/juul-altria-look-to-trim-claims-in-vaping-mdl; *see also* Second Am. Class Action Compl., *In re JUUL Labs, Inc., Mktg. Sales Practices & Prods. Liab. Litig.*, No. 3:19-md-2913-WHO (N.D. Cal. Nov. 13, 2020) (Dkt. No. 1135); Altria Defs.' Mot. to Dismiss Pls.' UCL & RICO Claims, *In re JUUL Labs, Inc., Mktg. Sales Practices & Prods. Liab. Litig.*, No. 3:19-md-2913-WHO (N.D. Cal. Jan. 4, 2021) (Dkt. No. 1223).

[9] Joint Case Mgmt. Conference Statement & Proposed Agenda at 3, *In re JUUL Labs, Inc., Mktg. Sales Practices & Prods. Liab. Litig.*, No. 3:19-md-2913-WHO (N.D. Cal. Jan. 9, 2020) (Dkt. No. 350).

[10] Joint Case Mgmt. Conference Statement & Proposed Agenda at 11, *In re JUUL Labs, Inc.,*

produced approximately 520,000 documents.[11]  And the December 16, 2020 statement described Altria's production of 737,000 documents and the upcoming depositions of Altria witnesses in January 2021.[12]

The widespread attention given to the Juul MDL leaves little room to doubt that the Public Health Intervenors knew about the litigation and Defendants' document productions. Indeed, on April 3, 2020, Intervenor Campaign for Tobacco-Free Kids issued a statement applauding the City of Denver's decision to file a RICO lawsuit against Juul and Altria for "luring kids."[13]  That case was quickly transferred to the Juul MDL.  The Public Health Intervenors have also cited Altria's publicly available SEC documents—which describe the Juul litigation—in other papers filed with this Court.[14]

### III. This Dispute

On August 19, 2021—nearly two and a half years after Defendants were first named in a Juul-related litigation and fewer than 14 days before the September 1, 2021 expiration of the

---

*Mktg. Sales Practices & Prods. Liab. Litig.*, No. 3:19-md-2913-WHO (N.D. Cal. Aug. 19, 2020) (Dkt. No. 904).

[11] Joint Case Mgmt. Conference Statement & Proposed Agenda at 6, *In re JUUL Labs, Inc., Mktg. Sales Practices & Prods. Liab. Litig.*, No. 3:19-md-2913-WHO (N.D. Cal. Sep. 16, 2020) (Dkt. No. 975).

[12] Joint Case Mgmt. Conference Statement & Proposed Agenda, Exhibit D at 5-6, *In re JUUL Labs, Inc., Mktg. Sales Practices & Prods. Liab. Litig.*, No. 3:19-md-2913-WHO (N.D. Cal. Dec. 16, 2020) (Dkt. No. 1191).

[13] Statement of Matthew L. Myers, President, Campaign for Tobacco-Free Kids, *Tobacco-Free Kids Applauds Denver Lawsuit Against Juul, Altria for Luring Kids; Time for City and State to End the Sale of Flavored E-Cigarettes* (Apr. 3, 2020), www.tobaccofreekids.org/press-releases/2020_04_03_denver-sues-juul-altria.

[14] For example, the Public Health Intervenors cited Altria's 2019 Annual Report in their recent Motion for Clarification.  *See* Pls.' Mot. for Clarification Regarding the Application of Order #1015, As Amended, to Heatsticks Cigarettes at 3 n.2 (Dkt. No. 6325; filed June 26, 2020).  That Annual Report discussed the Juul-related class actions and individual cases naming Altria and PM USA, specifically noting that "[t]he theories of recovery include violation of RICO," among others.  *See* 2019 Annual Report at 93, https://s25.q4cdn.com/409251670/files/doc_financials/2019/ar/2019-Annual-Report.pdf.

Internet Document Website obligations—the Public Health Intervenors filed this Motion.[15] They ask this Court, for the first time, to impose new Internet Document Website obligations and require Defendants to post documents produced in the Juul MDL for at least another year and possibly longer.

## ARGUMENT

**I.      Order #1015 Does Not Apply to E-Vapor Products Like Juul**

Order #1015 applies to conventional cigarettes only. The power to impose injunctive relief under RICO is limited and must be applied "narrowly." *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 256–57 (D.C. Cir. 2015). Although a court may "prevent and restrain future RICO violations" on matters that were subject to the trial, RICO cannot be used to restrain "all future unseemly business practices." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1139–40 (D.C. Cir. 2009). Injunctive relief must be "tailored to 'the violation found.'" *Id.* at 1117; *see also Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 929 (D.C. Cir. 1996) (a court-ordered remedy must be "specifically tailored to address the violations the court has identified"). Any ambiguities or omissions in an injunction must be "resolve[d] . . . in favor of the enjoined party." *United States ex rel. Yelverton v. Fed. Ins. Co.*, 831 F.3d 585, 587 (D.C. Cir. 2016) (internal quotation marks omitted).

Here, the Court's ultimate findings of RICO violations all pertained to conventional cigarettes, not to e-vapor or other tobacco products. *See* Order #1015, ¶ 3 (Dkt. No. 5733; filed Aug. 17, 2006); *see also Philip Morris*, 566 F.3d at 1106. E-vapor products did not even exist in 2006 when Order #1015 was entered. Therefore, Order #1015 cannot be interpreted broadly to

---

[15] The Public Health Intervenors raised the issue with counsel for Defendants for the first time on August 16, 2021.

extend to matters involving e-vapor products, as the Public Health Intervenors now request. *See Philip Morris*, 566 F.3d at 1117; *Women Prisoners of D.C. Dep't of Corr.*, 93 F.3d at 929.[16]

Although the Public Health Intervenors concede that the Juul MDL does not involve conventional cigarettes (*see* Brief at 4), they claim their request is "narrowly tailored" because they do not seek documents from "any other proceeding" and do not ask "to extend the document disclosure obligations of any other defendant." *Id.* at 16–17. This acknowledgment only reinforces the fallacy in their request. How broadly the Public Health Intervenors cast their net beyond conventional cigarettes is irrelevant; the net cannot be cast beyond conventional cigarettes at all.

The text of Order #1015 confirms its applicability to conventional cigarettes only. The Order enjoins Defendants "from committing any act of racketeering . . . relating in any way to the manufacturing, marketing, promotion, health consequences or sale *of cigarettes* in the United States." Order #1015, ¶ II.A.1 (emphasis added). It contains no reference to e-cigarettes or e-vapor products.[17] The Internet Document Website obligation itself focuses on litigation involving cigarettes. It requires Defendants to include certain bibliographic information about the document productions, including "Old Brand," "Primary Brand," and "Mentioned Brand." *See* Order #1015, ¶ 10.c. Those fields track the bibliographic information required by the Master

---

[16] During trial, the Court considered allegations related to a non-combustible product, Accord, and rejected arguments that Defendants had engaged in wrongdoing with respect to that product. *See Philip Morris*, 449 F. Supp. 2d at 429–30.

[17] The Public Health Intervenors have acknowledged that "Order #1015 permanently enjoins defendants from engaging in fraud and racketeering, prohibits them from making health claims, obligates them to disclose documents and data, and requires them to make corrective statements—*all in relation to 'cigarettes*.'" Pls.' Mot. for Clarification Regarding the Application of Order #1015, As Amended, to Heatsticks Cigarettes at 2 (Dkt. No. 6325; filed June 26, 2020).

Settlement Agreement, and together make sense only in the context of litigation involving conventional cigarettes.

The Public Health Intervenors ignore these principles and instead leap on the statement in Order #1015 requiring all litigation documents "concerning . . . addiction" to be posted. Brief at 6. In their view, the documents from the Juul MDL are covered because that litigation is a court action "concerning smoking and health, marketing [or] addiction." *Id*. But the Public Health Intervenors' focus on the word "addiction" in isolation—and without regard to the context of the litigation giving rise to the Order—has no logical stopping point. Are cigars covered? Is pipe tobacco covered? What about products some might claim to be addictive but are not nicotine-based, for example, wine from Altria's former subsidiary, Ste. Michelle Wine Estates? Does the reference to "marketing" require the posting of all documents in any litigation relating to marketing, even if the litigation has nothing to do with cigarettes? Of course not. Every provision of the injunction must be narrowly construed in accordance with the findings that the Court made. The Public Health Intervenors acknowledged this fundamental point in a different context. *See* Pls.' Reply in Supp. of Mot. for Clarification Regarding the Application of Order #1015, As Amended, to Heatsticks Cigarettes at 2 (Dkt. No. 6339; filed Sept. 17, 2020) ("Order #1015 . . . is to be understood in the context of the case, and should be read in the context of the district court's 4,088 findings of fact." (internal quotation marks and citation omitted)).

In fact, the Public Health Intervenors themselves have rejected the spurious argument they make here. When the scope of the injunction arose in the context of the application of corrective statements on websites, the Public Health Intervenors conceded that those requirements did ***not*** apply to "products other than cigarettes, including but not limited to . . . e-cigarettes." Order #81-Remand 1.E (Dkt. No. 6260; filed May 1, 2018).

Nor have the Public Health Intervenors—or the federal government for that matter—ever suggested that the Order covers e-cigarettes or e-vapor products, despite widespread publicity and long-standing litigation surrounding those products.  The Public Health Intervenors have actively participated in this litigation, including disputes over the scope of Order #1015, and have not shied away from raising issues with Defendants or this Court.  They have never suggested that Defendants were remiss in their obligations because they did not populate the Internet Document Website with documents related to addiction that have nothing to do with conventional cigarettes.  Indeed, the fact that the Public Health Intervenors have known of e-cigarette-related litigation for years but said nothing regarding Order #1015's Internet Document Website obligations speaks to the weakness of their argument here.[18]  Their newfound and last-minute interpretation of Order #1015 is divorced from any reasonable interpretation of the injunction and should be rejected.

**II.     There Is No Basis to Modify Order #1015**

    **A.     The Public Health Intervenors Seek New Injunctive Relief in the Guise of Modification, But Have Not Satisfied the Standards to Obtain It**

For similar reasons, the Court should reject the Public Health Intervenors' request to "modify" Order #1015.  If the underlying RICO violations that the Court sought to enjoin do not reach the allegations in the Public Health Intervenors' Motion, the injunction cannot be modified based on those allegations.  *See Salazar*, 896 F.3d at 498 (a plaintiff may ask a court to "tighten a decree" but only if the modification is consistent with the injunction's "intended result" (citation

---

[18] The Juul MDL is not the first e-vapor litigation involving Defendants or the Remedies Parties. *See, e.g.*, *Whitney v. ITG Brands LLC*, No. 8:15-cv-02018 (C.D. Cal.) (class action complaint filed Sept. 1, 2015); *Harris v. R.J. Reynolds Vapor Co.*, No. 15-cv-4075 (N. D. Cal.) (class action complaint filed Sept. 8, 2015).

omitted)).  "[U]nder the guise of modification," *id.*, the Public Health Intervenors are really asking for a new injunction without presenting any support for the request.

To obtain a new injunction under RICO, the Public Health Intervenors must establish ***with evidence*** that, absent relief, there is a reasonable likelihood of a future violation by Defendants.  *See Philip Morris*, 449 F. Supp. 2d at 908–09; Wright & Miller, 11A Fed. Prac. & Proc. § 2949 (3d ed.) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for [an] [ ] injunction." (citing cases)); *see also Make the Road N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 23 (D.D.C. 2019), *rev'd on other grounds*, 962 F.3d 612 (D.C. Cir. 2020) (same).  Even if the subject matter the Public Health Intervenors seek to bring under the injunction was related to the underlying case—and it is not—they have presented no evidence at all; they rely entirely on unproven allegations that Defendants are committing RICO violations with respect to Juul.  *See, e.g.*, Brief at 8 ("The discovery on *claims* in the Juul MDL Litigation that PM and Altria are once again committing RICO violations . . . are a significant change in factual circumstances." (emphasis added)); *id.* at 9–14 (discussing the allegations in the Juul MDL Complaint).  That is far from enough.

Nor do the Public Health Intervenors address the significant burdens that a modification would impose on Defendants.  *See United States v. Philip Morris USA Inc.*, 436 F. Supp. 3d 1, 13 (D.D.C. 2019) (noting that, in deciding whether to grant injunctive relief, "courts must always undertake a balancing of equities").  Posting the Juul MDL documents to www.pmdocs.com is not just a matter of uploading an existing tranche of previously produced documents.  *See* Harlowe Decl. ¶¶ 5–10.  In the Juul MDL, and in light of the unique circumstances of that proceeding, Altria provided hundreds of thousands of documents that it had produced to the Federal Trade Commission ("FTC") without undertaking a standard confidentiality review and

without providing the metadata coding that the Internet Document Websites require.  *Id.* ¶ 7.[19]  Defendants estimate that it would cost more than $2.6 million and would take seven months to complete the full confidentiality review and metadata coding of the FTC/Juul MDL productions that would be required to post these documents to the www.pmdocs.com website.  *Id.* ¶ 10.  The Public Health Intervenors have not—and cannot—show that the imposition of these burdens would be justified.

### B. The Public Health Intervenors Cite No "Significant Change in Circumstances" to Justify Modification of Order #1015

Under Rule 60(b)(5), a court may modify an injunction when there has been a "significant change" in the factual or legal circumstances of a case.  *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992).  The Public Health Intervenors cannot meet this standard either.

Again, the fact that the Public Health Intervenors are trying to import the *allegations* made in a different case into this one should end the inquiry.  *See* Brief at 4, 10.  But beyond that, there has been no change in factual circumstances.  The Juul MDL has been pending since 2019, and Defendants started producing documents shortly thereafter.  As early as April 16, 2019, the day after the first Juul-related class action against Altria was filed, one prominent member of the public health community expressly called attention to the RICO claims in that complaint, commenting that the documents produced in that case should be disclosed pursuant to Order #1015.[20]  The Public Health Intervenors' own public statements and citations to Altria's

---

[19] Altria understood the FTC's document request to be exempt from public disclosures, and accordingly, the FTC and Altria agreed that the entire production to FTC would be treated as confidential.  Harlowe Decl. ¶ 7.  In exchange for Altria's agreement to promptly produce the FTC documents, the MDL plaintiffs agreed to apply bulk confidentiality designations and to accept the existing metadata coding.  *Id.* ¶ 8.

[20] Stanton A. Glantz, *Class Action Lawsuit Filed Against Juul and Altria/Philip Morris Builds on*

SEC filings likewise show that they were aware of the RICO claims against Defendants no later than April 2020.[21]

Given this history, where the Public Health Intervenors could have contacted Defendants or raised concerns about the Internet Document Website obligations with the Court long before this Motion, they cannot now claim that developments in the Juul litigation constitute the sort of "change" in circumstances sufficient to modify Order #1015.  *See, e.g.*, *Laffey v. Nw. Airlines, Inc.*, No. 2111-70, 1978 WL 44, at *3 (D.D.C. Apr. 19, 1978) (denying request to modify an injunction, in part, because "Defendant never challenged [the terms of the injunction] as an inappropriate remedy and cannot litigate that issue now").  That is even more true now that the Internet Document Website obligation has expired.

After fifteen years, the Internet Document Website obligations have run their course and fulfilled their intended result.  There is no reason to modify them.

## CONCLUSION

For the foregoing reasons, the Court should deny the Public Health Intervenor's Motion to Clarify and Amend Order #1015.

---

*Past Litigation Against Big Tobacco*, U.C. San Francisco Ctr. for Tobacco Control Research & Educ. (Apr. 16, 2019), https://tobacco.ucsf.edu/class-action-lawsuit-filed-against-juul-and-altriaphilip-morris-builds-past-litigation-against-big-tobacco.

[21] The Public Health Intervenors also would have been aware of the Juul litigation by reviewing the limited Juul-related documents Defendants did post on the Internet Document Website.  In a handful of smoking and health cases involving conventional cigarettes, Defendants produced Juul-related documents and/or produced a company witness who testified about the services Altria and its subsidiaries provided to Juul.  Harlowe Decl. ¶ 12.  As contemplated under Order #1015, Defendants made those documents publicly available on www.pmdocs.com.

Dated: September 2, 2021                    Respectfully submitted,

*/s/ Anand Agneshwar*
Anand Agneshwar
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone:  (212) 836-8000
Fax:  (212) 836-8689

*Attorneys for Defendants*
*Altria Group, Inc. and Philip Morris USA Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I filed a copy of the foregoing, which will electronically serve all counsel of record who have entered an appearance in this case.

Dated:  September 2, 2021                              */s/ Anand Agneshwar*
                                                                          Anand Agneshwar