# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

PHILIP MORRIS USA, Inc., *et al.*,

        Defendants.

Civil Action No.: 99-cv-2496-PLF

Next Scheduled Court Date:
January 24, 2022

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MANUFACTURERS' AND RETAILERS' MOTION IN LIMINE TO EXCLUDE THE OPINION OF MR. GREG BRANCALEONE

Manufacturers and Retailers submit this Memorandum of Points and Authorities in

support of their Motion to Exclude the Opinion of Mr. Greg Brancaleone.

## INTRODUCTION

The Government has retained a design professional, Mr. Greg Brancaleone, to craft a

design for the proposed corrective-statement signs,[2] including their size, color, font, design,

placement, etc. Mr. Brancaleone produced a 98-page style guide, titled "Guidelines for Court-

Ordered Corrective Statements At Retail Points of Sale." Dkt. No. 6401-2. He also submitted a

121-page expert report (Dkt. No. 6341-5) (Ex. 1), a 47-page expert rebuttal report (Dkt. No. 6401-

5), and an 8-page supplemental report (Dkt. Nos. 6455-1, 6456-1). The Government intends to

---

[2] This brief uses the terms "corrective statements" or "corrective-statement signs" to maintain consistency with Mr. Brancaleone's report, but such use does not mean that the proposed remedy is consistent with the Court's earlier rulings in this case. To be sure, Mr. Brancaleone's design departs in significant ways from what the Court has ordered. For example, the Court approved for each of five topics a single corrective statement that contains a Preamble and four or five substantive bullet points. But Mr. Brancaleone proposes breaking those statements apart into 18 separate statements. Similarly, the Court-approved corrective statements included the Preamble at the beginning of the statement, but Mr. Brancaleone proposes placing it at the end and making less prominent than the substantive statement. *See, e.g., United States v. Philip Morris USA, Inc.*, 907 F.Supp.2d 1, 23 (D.D.C. 2012); *United States v. Philip Morris USA, Inc.*, 855 F.3d 321, 326 (D.C. Cir. 2017).

offer Mr. Brancaleone's opinion that forcing the Manufacturers and retailers to post corrective-statement signs at retail locations would prevent and restrain the Manufacturers from committing future RICO violations. Ordinarily, an expert opining on a crucial factual issue in the case would not be any cause for concern. The problem here, however, is that Mr. Brancaleone admitted that he has *no basis* for this opinion other than an instruction that counsel provided him. Because that is not a proper *expert* opinion, but rather is *counsel's* opinion, the Court should not admit Mr. Brancaleone's report into evidence or permit him to offer any opinion at the hearing.

In his expert report, Mr. Brancaleone stated that, "[i]n this case, the design problem was to prevent and restrain future fraud and deception by the covered cigarette manufacturers," and that, based upon his "extensive experience and expertise in graphic design, [his] professional judgment is that the recommended style guide provides effective solutions to the design problem." Ex. 1 (Expert Report of Mr. Greg Brancaleone) ¶¶ 253, 257. Mr. Brancaleone reiterated this at his deposition, making clear that "the design problem was to prevent and restrain future fraud and deception" and that, "[u]ltimately, our goal was accomplished." Ex. 2 (Deposition Transcript of Mr. Greg Brancaleone) at 75:5-76:2. Mr. Brancaleone also agreed at his deposition that his proposed signs would "prevent and restrain future fraud and deception by communicating truthful information about cigarettes to consumers." Ex. 2 at 69:6-10. Thus, he unequivocally opined that, based on his expertise and due to his design, the corrective-statement signs *would* prevent and restrain the Manufacturers from engaging in future fraud and deception.

At Mr. Brancaleone's deposition, however, when the Manufacturers' counsel asked him *how* the corrective-statement signs would achieve this, counsel for the Government instructed Mr. Brancaleone not to answer, claiming that "[t]he mechanism … through which this legal [ef]fect comes about" was a legal assumption that counsel provided him, and that Mr. Brancaleone "is not

an attorney." Ex. 2 at 70:1-79:9 (Mr. Crane-Hirsch); *see also id.* 77:14-17 (Mr. Crane-Hirsch) ("[T]he link between prevent and restrain and the results … of manufacturers to communicate truthful information, that is an assumption provided by DOJ, it is a legal statement, and it is not the subject of [Mr. Brancaleone's] expertise."). When the Manufacturers' counsel again asked the same question and told Mr. Brancaleone to eliminate from his answer any information that he obtained only through counsel, he responded: "I don't know. … I don't have the research behind me to go through this." *Id.* 79:8-9.

It is clear, then, that Mr. Brancaleone's ultimate opinion was pre-ordained and provided to him by counsel for the Government, and that he cannot provide any independent expert analysis to support that opinion. To the extent Mr. Brancaleone has any basis to support his opinion, the Government has affirmatively prohibited him from disclosing it. In either scenario, the Court should exclude Mr. Brancaleone's report and not permit him to offer any opinion at the hearing.

## LEGAL STANDARD

The Court has discretion to consider motions in limine "pursuant to [its] inherent authority to manage the course of trials," *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013), as such motions are "designed to narrow the evidentiary issues at trial," *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010). "[T]rial judges are afforded broad discretion" in resolving motions in limine, *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011), particularly where the question is "whether to admit or exclude expert testimony," *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 895 (D.C. Cir. 2010).

Pursuant to Federal Rule of Evidence 702, the Court has an "inherent responsibility to exclude irrelevant or unreliable expert testimony." *Fireman's Fund Ins. Co. v. United States*, 92 Fed. Cl. 598, 649 (2010) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003)); *see also United States v. Second Chance Body Armor, Inc.*, 289 F. Supp. 3d 145, 151

(D.D.C. 2018) (noting the court's "responsibility" to act "as 'gatekeepers' to shield unreliable or irrelevant expert testimony and evidence from the jury").

Moreover, Federal Rule of Civil Procedure 37 provides that, "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial," and if a party violates Rule 26(a), the court may impose any "appropriate sanction[]," including "prohibiting the disobedient party from … introducing designated matters into evidence." Fed. R. Civ. P. 37(c)(1), (b)(2)(a)(ii). "Pursuant to Rule 37, a district court has broad discretion to impose sanctions for discovery violations." *Burns v. Georgetown Univ. Med. Ctr.*, 106 F. Supp. 3d 238, 240 (D.D.C. 2015).

## ARGUMENT

**I.   Mr. Brancaleone's Ultimate Opinion That The Proposed Remedy Would Prevent And Restrain Is Based On Nothing More Than Counsel's Instruction And Thus Is Not Proper Expert Testimony.**

The Government's view of this case is that it need not offer even a scintilla of evidence that its proposed remedy would, in fact, prevent and restrain the Manufacturers from engaging in future RICO violations. According to the Government, the D.C. Circuit resolved the prevent-and-restrain question in 2009, meaning this Court is legally barred from considering it. All the Government intends to show at the hearing, therefore, is that its proposed design would "effectively communicate" the court-ordered statements to consumers. Of course, the Government is fundamentally wrong about what the D.C. Circuit held: it cannot be that this Court can impose a remedy that would infringe the Manufacturers' and retailers' core First Amendment rights without even a shred of evidence that the remedy would actually accomplish something (here, preventing and restraining future RICO violations). Relatedly, the corrective-statement signs cannot "*effectively*" communicate their message unless they do so in a way that prevents and

restrains. Either way, the prevent-and-restrain question is a factual one that the Court must resolve to determine whether the proposed remedy complies with the First Amendment.

In keeping with this erroneous premise that "prevent and restrain" is an already-decided *legal* issue, the Government instructed Mr. Brancaleone to bury his head in the sand and simply *assume* that the proposed remedy would prevent and restrain, and refused to let him explain the basis for his opinion, assuming he has one. As a result, Mr. Brancaleone's ultimate opinion—that the proposed remedy would prevent and restrain—is nothing more than his regurgitation of an assumption provided to him by counsel. That is not a proper *expert* opinion, but rather is *counsel's* opinion, and the Court should not admit Mr. Brancaleone's report into evidence or permit him to offer this opinion at the hearing.

"Rule 702 … imposes a 'gatekeeping' duty on this Court to exclude from trial expert testimony that is unreliable and irrelevant." *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 270 (D.D.C. 2018) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Thus, "[p]ursuant to Rule 702, *Daubert*, and its progeny, when determining the admissibility of expert testimony, the Court must consider: (1) whether the testimony is based upon sufficient facts and data; (2) whether the testimony is the product of reliable principles and methods … ; and (3) whether the witness has applied the principles and methods reliably to the facts of the case." *Id.* (citing *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996)). "The party proffering the expert testimony bears the burden of showing its admissibility under Rule 702." *Id.*

Courts have observed that an expert's opinion does not meet this standard when it is merely "a conduit for the attorney's opinion," *In re Tri State Outdoor Media Grp., Inc.*, 283 B.R. 358, 365 (Bankr. M.D. Ga. 2002), or "a regurgitation of [a party's] theory of the case," *Robertson Transformer Co. v. Gen. Elec. Co.*, 2016 WL 4417019, at *4 (N.D. Ill. Aug. 19, 2016). Put another

way, an expert may "not merely parrot the arguments of counsel." *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F. Supp. 2d 908, 933 (W.D. Wis. 2007); *see also Johnson v. City of Rockford*, 2018 WL 1508482, at *6 (N.D. Ill. Mar. 27, 2018) ("Experts should not be attorneys' puppets who merely parrot opinions ginned up by counsel."); *Higgins v. Koch Dev. Corp.*, 2013 WL 6238650, at *5 (S.D. Ind. Dec. 3, 2013) ("[T]he court must be wary that experts are not simply parroting the opinions of counsel."). To be sure, "[a]n expert may … rely on information provided by counsel that limits the scope of his analysis." *In re Jimmy John's Overtime Litig.*, 2018 WL 3231273, at *11 (N.D. Ill. June 14, 2018). But an expert must "reach[] his own conclusions," and his lawyers may not "formulate the expert['s] ultimate opinions" for him. *Southwire Co.*, 528 F. Supp. 2d at 933; *see also In re Jimmy John's Overtime Litig.*, 2018 WL 3231273, at *11 (counsel cannot "formulate the expert['s] ultimate opinions").[3]

The law is clear, then, that Mr. Brancaleone must offer some independent basis for his opinion other than the assumption provided to him by counsel. Yet he has offered none. Indeed, at his deposition, Mr. Brancaleone admitted that he does not "have a really elaborate understanding of prevent and restrain," which he considers to be "more of a legal term." Ex. 2 at 80:20-21. The Government's counsel likewise admitted that Mr. Brancaleone "does not know about prevent and restrain and how it works" and that it is "*outside the ambit of his expertise*." *Id.* 143:23-144:2 (emphasis added). And, of course, when asked to explain *how* the corrective-statement signs that he designed would prevent and restrain, Mr. Brancaleone said: "I don't know. … I don't have the research behind me to go through this." *Id.* 79:8-9. So there can be no debate that Mr. Brancaleone does not have *any* basis to opine that the corrective-statement signs would prevent and restrain,

---

[3] This is consistent with the rule that an "expert must … not merely regurgitate another expert's opinion." *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009); *see also Town of Wolfeboro v. Wright-Pierce, Inc.*, 2014 WL 1806843, at *2 (D.N.H. Apr. 2, 2014) (where expert "simply parrots the conclusions of other experts' reports in his report, those are not his opinions based on facts or data appropriately relied on in his field").

other than the assumptions counsel provided him. That means there is no basis for Mr. Brancaleone to offer his opinion—really, his counsel's opinion—at the evidentiary hearing.

Alternatively, assuming *arguendo* that the prevent-and-restrain question *is* a legal one, as the Government contends, then it would obviously be improper for the Court to take a design expert's opinion on that question. One of the well-established prerequisites for the admission of an expert opinion is that it "will help the trier of fact to understand the evidence or to determine *a fact* in issue." Fed. R. Evid. 702(a) (emphasis added). The D.C. Circuit has explained that "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact," and that "an expert … may not testify as to whether the legal standard has been satisfied." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) (quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)); *see also United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002) ("[E]xpert testimony consisting of legal conclusions will not be permitted because such testimony merely states what result should be reached[.]"). Needless to say, this Court is far more capable than Mr. Brancaleone of discerning what the D.C. Circuit held in 2009 and what this Court's current obligations are, meaning that—even under the Government's warped view of this case—there is no need for Mr. Brancaleone's opinion. If this truly is a legal question decided by the D.C. Circuit, then this Court needs no evidence to resolve it, much less the lay opinion of a design expert about the meaning of prior opinions in this case.

## II. To The Extent Mr. Brancaleone Has Any Basis For His Opinion Other Than The Instruction Provided To Him By Counsel, The Government Has Affirmatively Prohibited Him From Disclosing It.

If Mr. Brancaleone has any basis for his opinion other than the information that counsel for the Government instructed him to assume, the Government has affirmatively prohibited him from disclosing it. That, too, renders Mr. Brancaleone's opinion improper.

It is a fundamental litigation principle that a party must fully disclose any expert opinion it intends to offer at trial. "Under Rule 26(a)(2)(B), a party using an expert witness must disclose a report containing … 'a complete statement of all opinions to be expressed and the basis and reasons therefor.'" *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (quoting Fed. R. Civ. P. 26(a)(2)(B)). "The purpose of the rule is to eliminate 'unfair surprise to the opposing party.'" *Id.* (quoting *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)); *see also Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 233-34 (D.D.C. 2011) (explaining that the purpose of the Rule 26 expert disclosures "is to prevent unfair surprise at trial and to permit the opposing party ... to depose the expert, and to prepare for depositions and cross-examination at trial"). An expert opinion that "does not provide any basis … is lacking in foundation, lacking in expertise, and would not assist the jury but would supplant it." *Sykes v. Napolitano*, 634 F. Supp. 2d 1, 7 (D.D.C. 2009).

Here, the Government affirmatively prohibited Mr. Brancaleone from disclosing—either in his report or in response to direct questioning at his deposition—any basis for his opinion that the corrective-statement signs would prevent and restrain the Manufacturers from committing future RICO violations. *See* Ex. 2 at 72:1-6 (instructing the witness not to answer "how communicating truthful information about cigarettes prevents and restrains").

And that failure to disclose was not harmless. To determine whether a failure to disclose was harmless, courts in this Circuit ask whether the proposed expert offered the "impermissible testimony … within a larger body of otherwise unobjectionable testimony … from which the [finder of fact] could easily have drawn the same conclusions that [the expert] did," and whether "the evidence supporting the expert's legal conclusion was 'strong.'" *Burkhart*, 112 F.3d at 1214 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 365 (2nd Cir. 1992)). Here, the Government does not offer

any other evidence or testimony that the corrective-statement signs would prevent and restrain the Manufacturers from violating RICO, and the "evidence" that Mr. Brancaleone relied upon was anything but "strong"—he admitted there is none and that he "[doesn't] have the research" to support his conclusion. Ex. 2 at 79:8-9.

As noted above, Rule 37(c) precludes a party from introducing at trial information or testimony that it did not properly disclose pursuant to Rule 26(a), and the Court "has broad discretion to impose sanctions" for such violations. *Burns*, 106 F. Supp. 3d at 240. Since the Government has affirmatively prohibited Mr. Brancaleone from disclosing the basis of his opinion (assuming he has one), the Court should not admit his report into evidence or permit him to offer that opinion at the hearing.

### III.   The Court Should Exclude Mr. Brancaleone's Opinion In Its Entirety And Not Permit Him To Testify At The Hearing In Any Capacity.

In light of the foregoing, the Court should exclude Mr. Brancaleone's *entire* report and not permit him to offer *any* opinion at the hearing. Mr. Brancaleone's ultimate opinion is tainted, and any subsidiary opinion he may offer is inevitably intertwined with that improper ultimate opinion.

For instance, Mr. Brancaleone also opines that his proposed design "communicate[s]" the court-ordered statements to consumers "effectively." *E.g.*, Ex. 1 ¶ 253.  But that testimony is likewise dictated by counsel's instruction. Under the Government's own theory of the case, "communicating truthful information about cigarettes to consumers" is "[t]he mechanism … through which th[e] legal [ef]fect" of preventing and restraining "comes about." Ex. 2 at 76:18-77:21 (Mr. Crane-Hirsch). That means that Mr. Brancaleone could not have concluded—without violating counsel's instruction—that his proposed design did *not* communicate effectively. Because, if he did, that would mean his design could *not* effectively prevent and restrain, and that is a possibility Mr. Brancaleone was not even allowed to consider.

More generally, it is impossible to know whether the proposed signs communicate the corrective statements "effectively" without knowing whether they "prevent and restrain." A sign cannot possibly be "effective" in accomplishing the Government's sole "legitimate … interest here—"preventing future RICO violations" (Opinion & Order #92–Remand at 11)—unless it has the effect of preventing and restraining. And since Mr. Brancaleone does not even know what preventing and restraining *is*, he cannot possibly opine on whether his proposed corrective-statement signs are effective in accomplishing it.

This is particularly true because Mr. Brancaleone expressly opines that his designs affirmatively *do not* accomplish any of the effects that could potentially lead to preventing and restraining the Manufacturers from deceiving consumers in the future. Specifically (and remarkably), he opines that his designs *do not* "prevent future consumer deception" or "'inoculate' or 'arm' consumers against future misinformation." Ex. 1 ¶ 57. Since the corrective-statement signs do not inoculate consumers from the effects of the Defendants' past lies about cigarettes ("effectively" or otherwise), they cannot have *any* effect on the Manufacturers' propensity to lie in the future. Thus, Mr. Brancaleone's affirmative assertions that his designs do not "effectively" arm consumers against the Defendants' past and future lies negate the possibility that they indirectly "prevent and restrain" in this way.

Since Mr. Brancaleone's designs do not "effectively communicate" the message that would most obviously prevent and restrain the Manufacturers from engaging in future falsehoods (that is, alerting consumers to the Defendants' prior falsehoods), it is incumbent on him and the Government—at a minimum—to explain how a corrective statement can possibly "prevent and restrain" if it does not perform that basic, threshold function. But since the Government prevented Mr. Brancaleone from elucidating how a sign can effectively "prevent and restrain" the

10

Manufacturers' falsehoods without educating consumers about those falsehoods, it has chosen not even to *attempt* to meet that burden.

Nor could it do so even if it had tried. A corrective statement made in Week One can deter or otherwise restrain the Manufacturers from making a false statement in Week Two only if consumers recognize that the statement made in Week Two is inconsistent with the corrective statement made in Week One. And that is possible only if the consumer has retained the basic content of the corrective statement made in Week One and understands that it was the Manufacturers who made it. But, again, Mr. Brancaleone affirmatively asserted that the corrective-statement signs do not prevent future consumer deception (Ex. 1 ¶ 57), thereby negating the possibility that consumers will retain the information over time in a way that would inoculate them against a future false statement by the Manufacturers. *See also* Ex. 2 at 66:7-16 (agreeing that he was "not concerned with whether the consumers retain the information so it would have the side effect of arming them or inoculating them against future deceptions"). Indeed, it is highly unlikely that consumers would understand that it is the Manufacturers who are making the corrective statements since Mr. Brancaleone's proposed design consciously de-emphasized the Preamble, which is the only portion of the corrective statement that attributes itself to the Manufacturers. *See* Ex. 1 ¶ 177 (admitting that his design did not "give equal primacy to the Preamble" and intentionally sought to "draw … attention" away from it because it is not as "important" as "the actual text of the corrective statement"); Ex. 2 at 98:3-6 (admitting that he "avoided giving prominence to the preamble").

In short, the Government wants it both ways. It wants the Court to accept, as a legal conclusion, the counterintuitive notion that the corrective statements *ipso facto* prevent and restrain in all contexts. But then it seeks to bolster this legal conclusion with faux expert testimony

expressly based on this legal conclusion. This is a fig-leaf intended to disguise the facially meritless notion that the Court can somehow order the Manufacturers to post corrective-statement signs without examining whether, as a matter of fact, they actually do prevent and restrain, or without explaining how they could do so if the signs do not educate consumers. But the Government cannot have its cake and eat it too. If its (implausible) legal theory is correct, then the Court needs no evidence—including expert opinion—on the prevent-and-restrain question since it is "law of the case." Conversely, if Mr. Brancaleone's opinion is a true expert opinion on a material factual issue, then he must explain his conclusion that the signs effectively prevent and restrain. But he cannot do so.

Because each of Mr. Brancaleone's subsidiary opinions is inexorably tainted by counsel's instruction regarding his ultimate opinion, it would be improper and prejudicial for the Court to consider *any* of Mr. Brancaleone's opinions or to permit him to offer *any* of them at trial.

## CONCLUSION

For the foregoing reasons, the Manufacturers and Retailers respectfully request that the Court exclude Mr. Brancaleone's expert report and not permit him to testify at the evidentiary hearing in this matter.

Dated: October 29, 2021

Respectfully submitted,

/s/

Robert J. Brookhiser (D.C. Bar No. 202168)
Elizabeth B. McCallum (D.C. Bar No. 451361)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
Telephone: (202) 861-1500
Fax: (202) 861-1783

*Attorneys for Post-Judgment Parties
Regarding Remedies ITG Brands, LLC,
Commonwealth Brands, Inc. and
Commonwealth-Altadis, Inc.*

/s/

Michael J. Baratz (D.C. Bar No. 480607)
Douglas S. Kantor (D.C. Bar No. 455895)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Telephone: (202) 429-3000

*Attorneys for National Association of
Convenience Stores*

/s/

Thomas A. Briant (Minn. Bar No. 157764)
Thomas A. Briant, P.A.
17595 Kenwood Trail
Minneapolis, MN 55044
Telephone: (952) 683-9270

*Attorney for National Association of Tobacco
Outlets, Inc.*

/s/

Miguel A. Estrada (D.C. Bar No. 456289)
Amir C. Tayrani (D.C. Bar No. 490994)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8257
mestrada@gibsondunn.com
atayrani@gibsondunn.com

George C. Lombardi
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5969
Fax: (312) 558-5700
glombard@winston.com

*Attorneys for Defendants Altria Group, Inc.
and Philip Morris USA Inc.*

/s/

Michael A. Carvin (D.C. Bar No. 366784)
Mark A. Belasic (pro hac vice)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
macarvin@jonesday.com
mabelasic@jonesday.com

Jeffrey A. Mandell (D.C. Bar No. 999791)
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Madison, Wisconsin 53703
Telephone: (608) 256-0226
Fax: (608) 259-2600
jmandell@staffordlaw.com

*Attorneys for Defendant R.J. Reynolds
Tobacco Company (individually, as
successor in interest to Brown & Williamson
Tobacco Corporation, and as successor to
Lorillard Tobacco Company)*

13