# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  Plaintiff, )<br>             )<br> and          )<br>             )<br>TOBACCO-FREE KIDS   )<br>ACTION FUND, *et al.*,   )<br>  Plaintiff-Intervenors  )<br>             )<br> v.           )<br>             )<br>PHILIP MORRIS USA INC., *et al.*, )<br>  Defendants,    )<br>             )<br>   *and*        )<br>             )<br>ITG BRANDS, LLC, *et al.*,  )<br>  Post-Judgment Parties Regarding )<br>  Remedies.      )<br>             ) | Civil Action No. 99-CV-2496 (PLF)<br>Next scheduled court appearance:<br>January 24, 2022 10:00 am (status conf.) |

## JOINT STATUS REPORT
## IN RESPONSE TO ORDER #114-REMAND

    In Memorandum Opinion and Order #114-Remand (Dkt. 6457), the Court instructed the parties, after meeting and conferring, to file a joint status report concerning the disposition of privileged documents in the Secure Room of the Minnesota Tobacco Document Depository ("the Depository").[1] At the joint request of all parties, the Court subsequently extended the deadline for

---

[1] The parties are the United States and the Public Health Intervenors (collectively "Plaintiffs"); Philip Morris USA Inc., Altria Group, Inc., and R. J. Reynolds Tobacco Company (individually, as successor in interest to Brown & Williamson Tobacco Corporation, and as successor to Lorillard Tobacco Company) (collectively "Defendants"). ITG Brands, LLC, Commonwealth Brands, Inc., and Commonwealth-Altadis, Inc. (collectively "Remedies Parties") did not participate in the filing of this joint status report because the Remedies Parties do not have documents in the depository.

NAI-1522987777v2

the joint status report to November 29, 2021. This Joint Status Report is submitted in accord with the Court's directive.

## BACKGROUND

The Depository was created in 1995 in connection with *State of Minnesota v. Philip Morris Inc., et al.*, No. C1-94-8565 (Dist. Ct. Ramsey Cty., Minn.). The consent judgment in that case required the Defendants to maintain the Depository through 2008, but this Court's Order #1021 both extended the requirement to maintain the Depository until September 1, 2021, and expanded its document collection in certain respects. Order #1021 (Dkt. No. 5765); *see also* Order #1015 (Dkt. No. 5733). Further, in Order #26-Remand, this Court assumed jurisdiction and supervision over the Depository as part of this case. (Order #26-Remand (Dkt. No. 5949)). That order provided that "all existing Court Orders from the State Court in Minnesota, as well as the Minnesota Tobacco Document Depository General Procedures will remain in effect until further notice." *Id.* at 2. Consistent with Order #1021, the Depository closed to the public on August 31, 2021 and now is being shut down. (*See* Order #114-Remand (Dkt. 6457)).

The Depository has a nonpublic, locked room (the "Secure Room") that houses documents designated as protected by the attorney-client privilege and/or the work product doctrine, as well as documents that are designated as confidential and subject to protective orders (collectively, the "Secure Room Documents").[2] The Secure Room Documents fall into the following four general categories:

---

[2] Order #114-Remand (at 1-2) refers to the documents in the Secure Room as documents "over which the tobacco entities have asserted privilege." As noted above, while the Secure Room contains documents designated as protected by the attorney-client privilege, it also contains documents designated as protected by the work product doctrine and documents that are designated as confidential and subject to protective orders.

2

1. Defendants R. J. Reynolds Tobacco Company's and Philip Morris USA, Inc.'s documents (the "Defendant Documents"[3]);

2. Liggett Group LLC, B.A.T. Industries p.l.c., and British American Tobacco Company Ltd.'s documents (the "Other Tobacco Companies' Documents");

3. Council for Tobacco Research ("CTR") and Tobacco Institute ("TI") documents (the "CTR/TI Documents" and, combined with the Other Tobacco Companies' Documents, the "Other Tobacco Entities' Documents"); and

4. The remaining Secure Room documents (the "Uncategorized Documents").

A separate nonpublic area of the Depository holds a fifth category of documents: chamber files from the Minnesota litigation (the "Chamber Files").

Neither the Secure Room Documents nor the Chamber Files have ever been publicly accessible.

## STATUS REPORT

Order #114-Remand (Dkt. 6457) instructed the parties to first meet and confer and then file a joint status report addressing (1) the disposition of documents in the Secure Room; (2) the views of the tobacco entities that are not parties to the action and that have documents in the Secure Room; and (3) whether a status conference is necessary. Each topic is addressed in turn below.

**1.    The Parties' Positions Regarding the Secure Room Documents and Chamber Files.**

   **A.  Plaintiffs' Position.**

<u>Defendants' Documents and Other Tobacco Companies' Documents</u>:  Plaintiffs do not object to the immediate return of documents in boxes labeled with the names of individual

---

[3] Since the *State of Minnesota* action was tried in 1998, R. J. Reynolds Tobacco Company has engaged in transactions that have resulted in it being responsible for the smoking-and-health-related liabilities of American Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company. Accordingly, R. J. Reynolds owns the documents identified in Order #114-Remand as belonging to those entities.

3

Defendants or Other Tobacco Companies. These boxes account for some 669 or about 80% of the approximately 851 boxes tabulated in Order #114-Remand.[4]

Council for Tobacco Research and the Tobacco Institute Documents: Sixteen boxes are ascribed to the Council for Tobacco Research (4 boxes) and the Tobacco Institute (12 boxes). These entities have been dissolved for a number of years, and more information is needed about their privilege assertions. It is true that privilege relating to an individual human client is not extinguished upon death, as in the *Swidler & Berlin v. United States* case Defendants cite below, 524 U.S. 399 (1998). By contrast, though, "the weight of authority suggests otherwise if the client is a corporation." *Official Comm. of Admin. Claimants v. Moran*, 802 F. Supp. 2d 947, 948-49 (N.D. Ill. 2011). *Accord*, *United States v. Walters*, No. 2:19-CR-51, 2020 WL 1934803, at *2 (S.D. Miss. Apr. 21, 2020) ("The weight of federal authority supports a holding that there is a presumption the attorney-client privilege is no longer viable after a business entity ceases to function."); *SEC v. Carrillo Huettel LLP*, No. 13-CV-1735, 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015) ("The weight of authority, however, holds that a dissolved or defunct corporation retains no privilege.") (citing cases). Plaintiffs requested an explanation of the legal authority (if any) CTR and TI rely upon to continue to assert privilege. Plaintiffs do not understand either the Master Settlement Agreement, or routine document-specific, pre-trial privilege-challenge rulings,

---

[4] These materials include about 39,000 so-called "Bliley Documents." The *Minnesota* court overrode the tobacco companies' privilege assertions for these documents and ordered them produced in the *Minnesota* litigation. Separately, in response to subpoenas issued by Congressman Thomas Bliley, Chairman of the House Commerce Committee, the companies then produced the same documents to that committee. In 2002, this Court ruled that Defendants had waived all privilege and work-product protection in the Bliley documents because they "failed to meet their burden of establishing that they took all reasonable measures to safeguard the confidentiality of the Bliley documents prior to producing them to the House Commerce Committee." *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 426 (D.D.C. 2002). Rather than appeal that decision, Defendants eventually produced the Bliley documents to the United States during discovery in this lawsuit. Plaintiffs thus have no need or desire for another copy of the Bliley documents and have no objection to their immediate return from the Secure Room to the tobacco companies that produced them.

to change background law or to settle the current questions. It is thus premature for a decision to be made about the disposition of the CTR and TI materials.

The Uncategorized Documents and Chambers Files:  All parties agree that more information is needed before the proper disposition of Uncategorized Documents can be determined. The 147 poorly-labeled boxes of Uncategorized Documents in the Secure Room include, for example, 35 boxes labeled "Miscellaneous"; 23 boxes designated as "Trial Exhibits"; 16 boxes relating to Dr. Gary Huber[5]; 4 boxes identified as "Glossaries"; 4 boxes designated as "Archived Diskettes, etc."; 3 boxes designated as "Multi-party"; 2 boxes categorized as "Secured Document Room Notebooks"; 1 box identified as "R.J. Reynolds Company Bates Number Lists"; and more. There is also an unknown quantity of documents that Depository staff have not been allowed to examine and thus have been unable to categorize. The Chambers Files are in similar need of particularized descriptions, although it seems unlikely that large quantities of allegedly privileged materials would have been stored and maintained in chambers. Plaintiffs observe that the Minnesota statutory provision Defendants rely upon with respect to chambers files only protects from public view "*notes and memoranda or drafts thereof* prepared by a judge or by a court employed attorney, law clerk, legal assistant or secretary *and used in the process of preparing a final decision or order*" (emphases added). Plaintiffs understand that there may be as many as 88 boxes of Chamber Files and question whether they are all "notes and memoranda or drafts

---

[5] Dr. Huber conducted smoking-and-health research during the 1970s and early 1980s. The tobacco companies initially funded his research, but stopped after he found that commercially-sold cigarettes caused disease in animals. He later worked summarizing scientific articles for a tobacco law firm, and gave a whistleblower interview to PBS's *Frontline* in the 1990s. During the State AG lawsuits in the 1990s, the tobacco companies asserted privilege and work-product protection over Dr. Huber's research from the 1970s and early 1980s. This Court admitted Dr. Huber's testimony and documents over Defendants' objections. Order #603 (Dkt. No. 3486; issued July 22, 2004).

thereof' covered by this statute. These documents would be of great historical interest, and they should be made available to the public unless they are protected by the statute or otherwise.

Plaintiffs urge that the Court appoint someone not affiliated with the parties (such as Minnesota Depository staff) who would be instructed to examine and then provide useful descriptions of the Uncategorized Materials and the Chambers Files. The appointee's descriptive work would be subject to an appropriate order preserving any privilege or other confidentiality protections that may apply to these documents, perhaps modeled, with appropriate adaptations, upon paragraph B.5 of Order #45 (Dkt. No. 240; issued 2/5/2001). The Depository staff have been working with tobacco documents for over two decades. They are familiar with documents of this vintage from these companies' files, and—if authorized to access the Secure Room and Chambers Files—should have little difficulty providing helpful descriptions of these materials. If desired, the appointee could meet virtually with counsel for the Parties to discuss the scope of their examination and the procedures to be followed to expedite their descriptive work. Such arrangements would not prejudice the Defendants in any way and are likely to facilitate a timely and efficient resolution of any remaining disputes about the disposition of documents held in the Depository.

Given the evident disagreement among the Parties about the appropriate steps to be taken with respect to many of the documents held in the Minnesota Depository, Plaintiffs believe a status conference is necessary and will be helpful.

### B. Defendants' Position.

#### i. The Defendant Documents Should Be Returned to Their Owners.

Defendants submit that the Defendant Documents should be returned to their owners.[6] Plaintiffs do not object to this course of action. Nonetheless, Defendants briefly summarize the rationale for Defendants' position, to the extent helpful to the Court.

The Orders from *State of Minnesota* creating the Depository envisioned that the documents would be destroyed or returned to Defendants at this juncture. The first protective order in that case, dated June 15, 1995, was supplemented by an Addendum to Protective Order for Highly Sensitive Material or Information, entered June 4, 1996 (the "Addendum"), which provides:

> Within thirty (30) days after conclusion of all aspects of this litigation (herein "Termination") (or, insofar as production is made for use in other litigation, that other litigation), all material and information, including but not limited to court papers, drafts, and notes containing Category I [Highly Sensitive Trade Secret Documents] or Category II [Cigarette formula] material or information and all copies thereof (other than exhibit to the official court record) *shall be returned to the producing party or, at the sole option of the producing party, shall be destroyed*.

(¶15 (emphasis added))[7]. The original Protective Order in this case also supports the return of these documents. Order #7 requires that at the conclusion of this action, "*all Confidential information* produced in this litigation *shall be returned to the Designating party or, at the sole option of the Designating Party, shall be destroyed*." (Dkt. 88, ¶21 (emphases added)).

---

[6] The Depository contains an additional category of privileged documents, which were involuntarily produced to the Commerce Committee of the U.S. House of Representatives, then chaired by Representative Thomas Bliley, Jr. (the "Bliley Documents"). On June 7, 2000, the Defendants in the *State of Minnesota* action were ordered to produce the Bliley Documents into the Depository. See Minnesota Order (June 6, 2000). Notably, the order directing production specifically states that the release and production were "compelled and not voluntary," and did not "constitute a waiver of any objections or rights." *Id.* ¶¶6-7. The Defendants understand that the Minnesota Historical Society is not attempting to take copies of the Bliley Documents from the Depository. Should this change, Defendants reserve the right to object to the transfer of the Bliley Documents.

[7] A copy of the Addendum is attached for the Court's reference.

The Defendant Documents belong to the Defendants, and Defendants should be able to direct their disposition, consistent with these orders. There is no reason to re-review the Defendant Documents to determine they are, in fact, privileged or protected. Claims of privilege and protection were fully vetted in the Minnesota Litigation, this case, or both. In addition, from the effective date of Order #1015 until the closure of the Depository, Defendants performed triennial review of documents subject to trade-secret claims and made available to the public those documents that no longer merited trade-secret protection. The attorney-client privilege does not expire with the passage of time, and the work product protection continues after the termination of the litigation in connection with which it was prepared. *See Swidler & Berlin v. United States*, 524 U.S. 399, 410-11 (1998) (attorney-client privilege survived privilege-holder's death); *F.T.C. v. Grolier*, 462 U.S. 19, 25 (1983) (language of Fed. R. Civ. P. 26(b)(3) "protects materials prepared for *any* litigation or trial") (emphasis in original). Defendants no longer have an ongoing obligation to further downgrade trade secret materials, and should no longer have an obligation to re-review materials for privilege or protection. What remains in the Secure Room, and is not found in the general collection, now permanently remains subject to limitations on the disclosure of those documents.

Defendants object to UCSF taking any documents from the Secure Room.[8] Only Defendants, as the owners of the Defendant Documents and the parties who assert privilege with respect to the Defendant Documents, would be able to identify materials responsive to any future subpoena or court order and to protect any claim of privilege. As the Court correctly stated in

---

[8] Defendants object to USCF taking possession of any other documents housed at the Depository. Defendants understand the Minnesota Historical Society will take possession of the materials housed at the Depository outside the Secure Room, and any such materials that the Minnesota Historical Society does not take will be returned to Defendants.

Order #114, "[a]ny other custodian, such as UCSF, would lack authority to review the [Defendant Documents] or retrieve them in response to such an order." Order #114, at 2. UCSF is not a party to this case, and also is not in a position to maintain the necessary level of confidentiality indefinitely.

There is no plausible rationale for UCSF (or any other third party) to retain the Defendant Documents because those documents will never become publicly available. Rather, documents currently in the Secure Room will permanently remain subject to confidentiality designations. Thus, maintaining the Secure Room documents in a new secure facility at UCSF serves no conceivable purpose.

In short, Defendants are not only the best but the *only* proper custodians of their own privileged, protected, confidential, and trade-secret information.

### ii. The Other Tobacco Companies' Documents and the CTR/TI Documents Should Also Be Returned to Their Owners.

For the same reasons, Defendants believe the Other Tobacco Companies' Documents and the CTR/TI Documents should be returned to the entity that produced the documents. The Other Tobacco Entities' views, which are consistent with the Defendants' position, are described in a separate section below.

### iii. Defendants Request the Ability to Review the Uncategorized Documents and Chamber Files.

Defendants do not know the content of the Uncategorized Documents or Judge Fitzpatrick's Chamber Files. But the materials were not placed in the Secure Room solely on the say so of Defendants and Other Tobacco Entities, without the opportunity for any challenge or adjudication. Rather, those documents were deliberately placed in the Secure Room by the court

in *State of Minnesota*, after the completion of a process by which designations of privilege or other protection were subject to challenge and adjudication.[9]

For this reason, all parties are bound by the prior treatment of these documents as containing privileged or otherwise confidential information; those determinations are not subject to a do-over. And even if they were, it is too late to revisit the determinations that put these materials in the Secure Room. This Court assumed jurisdiction over the Minnesota Depository more than a decade ago; Plaintiffs have been on notice since that time that the Depository would be closing in 2021; and the Depository now has closed and the lease has nearly reached its end.[10] Accordingly, as a next step, the documents should be reviewed for attribution to various Defendants or the Other Tobacco Entities, without reengaging in the sort of privilege and confidentiality disputes over these materials that concluded decades ago.

As for the mechanics of the reviews that Defendants recommend, with respect to the Uncategorized Documents, Defendants believe that an outside-counsel review of the materials by defense counsel will allow the Uncategorized Documents to be attributed to various Defendants or the Other Tobacco Entities, as warranted, and that Defendants can agree among themselves that an outside-counsel review for this purpose will not waive privilege. To the extent the documents

---

[9] The extent of the disputes regarding privilege are described in an article written by counsel for the State of Minnesota in the Minnesota tobacco litigation, Ciresi, et al., *Decades of Deceit: Document Discovery in the Minnesota Tobacco Litigation*, 25 William Mitchell Law Review 447 (1999).

[10] The doctrine of laches precludes Plaintiffs from seeking to litigate these issues now. *See, e.g.*, *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 531 (D.C. Cir. 2010) ("The equitable defense of laches is designed to promote diligence and prevent enforcement of stale claims" by those who have slumbered on their rights. Laches applies where there is (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." (internal citations and quotation marks omitted)). In addition, if the Court is inclined to allow relitigation of the designations for any materials in the Secure Room, Defendants reserve the right to challenge Plaintiffs' standing with respect to some or all of the materials at issue.

belong to Defendants or the Other Tobacco Entities, they can be returned in the same manner as the Defendant Documents and the Tobacco Entity Documents.

Plaintiffs' suggestion that the review of Uncategorized Documents should be conducted by a "neutral" is inappropriate: to the extent materials contain privileged or other confidential information belonging to one or more Defendants and/or Other Tobacco Entities, the only proper reviewers would be those approved by those companies for reviewing these kinds of sensitive information. If that review reveals there are some documents that do not include privileged or confidential information of any Defendant or Other Tobacco Entity (and therefore should not be returned to their owner), Defendants will notify the Court.[11]

With respect to the Chamber Files, there is a significant possibility that those records contain, or reference in ways that could reveal, privileged, trade-secret, or otherwise confidential information. For that reason, Defendants respectfully request the opportunity for outside defense counsel to review those documents for privileged and trade-secret information and an opportunity to submit for the Court's review a log of those documents and which ones contain information that is not public. Only after reviewing such a log should this Court decide the final disposition of the Chamber Files. In making such a decision, this Court should be mindful of Rule 4(1)(c) of the Minnesota Rules of Access to Records of the Judicial Branch, which provides that "the following case records are not accessible to the public: … (c) Judicial Work Product and Drafts"; the exceptions set forth in Rule 4(4) are inapposite here. *See* Minn. Stat. ch. 13 appx.

---

[11] Even if this Court deems it appropriate to require review by a "neutral," Defendants have concerns that The Depository staff are not qualified for this purpose, as they lack the expertise and resources required for sifting privileged and confidential information from unprotected information. If there is to be some sort of "neutral" review, Defendants request that the Court appoint a Special Master, and that the parties be permitted to identify potential candidates.

To the extent that there are Chambers Files materials that are neither related to the State of Minnesota court's written opinions nor reflective of privileged or confidential information, this Court can then decide their proper disposition. But until the documents can be reviewed for privileged or confidential information, Plaintiffs' conclusion that the documents should be made public is premature. Moreover, it is not for Plaintiffs to decide whether any Chamber Files materials that do not contain privileged or confidential information are of public interest; that is an assessment best made by the Minnesota Historical Society, which, as of this date has not, to Defendants' knowledge, expressed any interest in the Chamber Files.

## 2.      The views of the Other Tobacco Entities.

Counsel for Defendants have contacted representatives of Liggett Group LLC,[12] the Tobacco Institute, Inc., the Council for Tobacco Research – U.S.A., Inc., B.A.T. Industries p.l.c., and British American Tobacco Company Ltd. Those contacts confirm that representatives of these groups share the views of Defendants outlined in Section 1. Specifically, the Other Tobacco Entities stated the following preferences with respective to their own documents:

| Entity | Preference |
|---|---|
| Liggett Group LLC | Documents in the Secure Room returned. Liggett Group LLC would also like the copies of documents it produced to the general collection at the Depository returned, if the MN Historical Society declines to take them. |
| Tobacco Institute, Inc. | Documents in the Secure Room returned. |
| Council for Tobacco Research – U.S.A., Inc. | Documents in the Secure Room returned. |
| B.A.T. Industries p.l.c. | Documents in the Secure Room returned. |

---

[12] Order #114-Remand states (at 3) that Liggett Group Inc. no longer exists. More precisely, in December 2005, Liggett Group Inc., a Delaware corporation, was converted to Liggett Group LLC, a Delaware limited liability company that continues to manufacture cigarettes.

| | |
|---|---|
| British American Tobacco Company Ltd. | Documents in the Secure Room returned. |

Concerning Plaintiffs' questions regarding the privilege assertions of CTR and TI, the dissolution of these entities was agreed to in the Master Settlement Agreement with respect to CTR "in accordance with the laws of the State of New York (and with the preservation of all applicable privileges held by any member company of CTR)" and with respect to TI "in accordance with the laws of the State of New York and under the authority of the Attorney General of the State of New York (and with the preservation of all applicable privileges held by any member company of TI)." Master Settlement Agreement at § III(o). Furthermore, the law of this case is settled that both dissolved entities maintain the right to defend themselves in this litigation, including to assert all applicable privileges and protections. *See, e.g.*, Orders 453 and 478 (sustaining both attorney-client privilege and work product protection objections of TI and CTR, respectively). In response to Plaintiffs' inquiry regarding the legal authority CTR and TI rely upon to continue to assert privilege, the Defendants provided Plaintiffs with contact information for CTR's and TI's counsel, so that Plaintiffs could ask them directly.

**3.    Whether a status conference would be useful.**

Plaintiffs believe a status conference will be useful and that a substantive order is premature at this juncture.

Defendants do not believe that a status conference is necessary or would be useful prior to Defendants completing the review of documents belonging to various tobacco entities and submitting a log of the Chamber Files to this Court for *in camera* review.

Defendants respectfully request that the Court issue an order:

a) providing for return of the Defendant Documents, the Other Tobacco Companies' Documents, and the CTR/TI Documents,

b) requiring the Defendants, after consultation with the Other Tobacco Entities, to submit for Court approval an agreed procedure for outside-counsel review of the Uncategorized Documents and the Chamber Files, and

c) setting a timeframe for the completion of outside-counsel review and submission for *in camera* review of a log reflecting the content of the Chamber Files.

Dated: November 29, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General
Consumer Protection Branch

GUSTAV W. EYLER, Director
LISA K. HSIAO, Assistant Director
Consumer Protection Branch

/s/
ADAM E. LYONS
Assistant Director
DANIEL K. CRANE-HIRSCH
Senior Trial Attorneys
Trial Attorneys
Civil Division
United States Department of Justice
PO Box 386
Washington, DC 20044-0386
Telephone: 202-532-4406
adam.e.lyons@usdoj.gov

*Attorneys for Plaintiff United States of America*

/s/
Scott P. Lewis (pro hac vice)
slewis@andersonkreiger.com
Melissa C. Allison (admitted pro hac vice)
mallison@andersonkreiger.com
Christina S. Marshall (D.C. Bar # MA0022)
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor

Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Attorneys for the Public Health Plaintiff-Intervenors*

/s/

Anand Agneshwar
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Fax: (212) 836-8689

*Attorneys for Defendants Altria Group, Inc. and Philip Morris USA Inc.*

/s/

Michael A. Carvin (D.C. Bar No. 366784)
Jon G. Heintz (pro hac vice)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700
macarvin@jonesday.com
djheintz@jonesday.com

Jeffrey A. Mandell (D.C. Bar No. 999791)
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Madison, Wisconsin 53703
Telephone: (608) 256-0226
Fax: (608) 259-2600
jmandell@staffordlaw.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company (individually, as successor in interest to Brown & Williamson Tobacco Corporation, and as successor to Lorillard Tobacco Company)*