UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>　　　and<br><br>TOBACCO-FREE KIDS<br>ACTION FUND, *et al.*,<br>　　　Plaintiff-Intervenors<br><br>　　　v.<br><br>PHILIP MORRIS USA INC., *et al.*,<br>　　　Defendants,<br><br>　　　*and*<br><br>ITG BRANDS, LLC, *et al.*,<br>　　　Post-Judgment Parties Regarding<br>　　　Remedies. | Civil Action No. 99-CV-2496 (PLF)<br>Next scheduled court appearance:<br>July 20, 2022 at 2:00 p.m.<br>(Motions Hearing) |

**JOINT MOTION TO ENTER FOURTH SUPERSEDING CONSENT ORDER IMPLEMENTING THE CORRECTIVE-STATEMENTS REMEDY AT POINT OF SALE**

In 2006, Judge Kessler adopted a corrective statement remedy that ordered Defendants to communicate certain specified statements in several media channels. *See* Order #1015, at 4-9, D.E. #5733.[1] For the "point of sale" channel, the Court ordered Defendants to require retailers that participate in Defendants' retail-merchandising programs to post the court-ordered corrective statements in their stores for a period of two years (the point-of-sale or "POS" remedy). The D.C.

---

[1] The parties are the United States and the Public Health Intervenors (collectively "Plaintiffs"); Philip Morris USA Inc., Altria Group, Inc., and R.J. Reynolds Tobacco Company (individually, as successor in interest to Brown & Williamson Tobacco Corporation, and as successor to Lorillard Tobacco Company) (collectively "Defendants"); and ITG Brands, LLC, Commonwealth Brands, Inc., and Commonwealth-Altadis, Inc. (collectively "Remedies Parties"). Defendants and Remedies Parties are collectively referred to as "Manufacturers." The nonparty national retailer groups are the National Association of Convenience Stores and the National Association of Tobacco Outlets (collectively "Retailer Groups").

Circuit upheld the requirement that Defendants communicate corrective statements, *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1139 (D.C. Cir. 2009), but vacated the POS media channel. *Id*. at 1042. The D.C. Circuit directed this Court on remand "to evaluate and 'mak[e] due provision for the rights of innocent persons,' either by abandoning this part of the remedial order or by crafting a new version reflecting the rights of third parties." *Id.* at 1142 (quoting 18 U.S.C. § 1964(a)). It also directed the Court on remand to "clarify" in any order adopting a POS remedy that "duplicative displays" are not required. *Id.*

On remand, after receiving multiple rounds of briefing on the POS issue, this Court concluded that an evidentiary hearing was warranted to determine whether to reimpose a POS remedy and, if so, to define the contours of that remedy. *See* Order #86-Remand, D.E. #6283; Opinion & Order #92-Remand, D.E. #6308. The Court ultimately set the hearing to begin in June 2022. *See* Order #109-Remand, D.E. #6434.

While preparing for that hearing, the parties—together with the Retailer Groups—engaged in extensive negotiations in an effort to reach a resolution of the POS issue. The parties' objective during the negotiations was to craft a proposed POS remedy that communicates the substance of the corrective statements to customers at the point of sale in an effective manner while, at the same time, "making due provision for the rights of innocent persons." 18 U.S.C. § 1964(a).

On May 3, 2022, the parties notified the Court that they had reached a settlement in principle, *see* Joint Mot. for Status Conference and Stay of Deadlines, D.E. #6496, and the Court subsequently vacated the dates for the evidentiary hearing, *see* Order #122-Remand, D.E. #6497. The parties—with continued input from the Retailer Groups—have now reduced that settlement to writing in the form of the proposed Fourth Superseding Consent Order Implementing the Corrective-Statements Remedy at Point of Sale ("Proposed Order"), which is attached as Exhibit

1 to this Motion. The parties believe that the terms of the Proposed Order satisfy the requirements established by the Circuit Court. The parties therefore respectfully request that the Court enter the Proposed Order.

A high-level summary of the principal features of the POS remedy embodied in the Proposed Order is set forth below.[2]

**General Contours of POS Remedy**

- Manufacturers will amend or supplement their contracts with retailers that participate in their merchandising programs ("Participating Retailers") to require the posting of POS Corrective-Statement Signs in Participating Retailers' stores ("Participating Retailer Locations") for a period of 21 months. *See* Proposed Order ¶¶ III.1, III.2, III.4.

- Participating Retailer Locations (other than Kiosk Stores, defined below) will be required to post a 348-square-inch POS Corrective-Statement Sign that is attached to and above, or hung above, the main cigarette Merchandising Set in the store. *See* Proposed Order ¶ III.1.a.i; *see also id.* Ex. A (Style Guide depicting sample POS Corrective-Statement Signs). If that placement is not possible given the existing placement of the cigarette Merchandising Set in a particular store, the sign may be placed in one of several alternative, highly visible locations. *See id.* ¶ III.1.a.ii-iv.

- Participating Retailer Locations (other than Kiosk Stores) with more than nine horizontal linear feet of visible cigarette Merchandising Set space devoted to Manufacturers' brands covered by the POS remedy ("Covered Brands")—which Manufacturers have represented as being approximately 10% of all Participating Retailer Locations—will be required to post a second 348-square-inch POS Corrective-Statement Sign; that sign will be subject to the same placement requirements as the first 348-square-inch sign. *See* Proposed Order ¶ III.1.b.

- Participating Retailer Locations (other than Kiosk Stores) that post signage for Manufacturers' Covered Brands (other than signage limited to identifying price and brand) in a location that is not within the four corners of the cigarette Merchandising Set will also be required to post a 144-square-inch POS Corrective-Statement Sign in a highly visible location within 48" of the main customer entrance of the store that can be seen by customers as they enter the store and that is at least 48" above the floor. *See* Proposed Order ¶ III.2.

---

[2] The summary below captures the key features of the Proposed Order but, for the sake of brevity, omits some details. To the extent that the summary deviates from the terms of the Proposed Order, the parties intend that the terms of the Proposed Order control. Capitalized terms in the summary are defined in the Definitions section of the Proposed Order. *See* Proposed Order ¶ I.

3

- Kiosk Stores—defined to include (1) stores that do not allow customers to enter and that have a selling window in front of one or more selling counters, or (2) stores that are no more than 325 square feet in area regardless of whether customers are allowed to enter the store—will be required to post a single 144-square-inch POS Corrective-Statement Sign in a location that is near the selling window, that is highly visible to customers, and that can be seen by customers as they approach or are standing at the selling window.  *See* Proposed Order ¶ III.4.  If a Kiosk Store does not have a selling window, then the POS Corrective-Statement Sign will be placed in a highly visible location that can be seen by customers as they approach or are standing at the cash register/point of sale, or in a location approved by the Working Group established by the Proposed Order.  *Id.*

- Each of the POS Corrective-Statement Signs will include a preamble as well as one of the 17 bullet points from the 5 messages previously approved by the Court.  *See* Proposed Order ¶ I.EE.  To facilitate readability, the language of the preamble will be shortened from prior iterations of the corrective statements.  *See id.* ¶ I.FF.  In approximately one-half of the POS Corrective-Statement Signs the shortened preamble text will read "A FEDERAL COURT HAS ORDERED R.J. REYNOLDS TOBACCO & PHILIP MORRIS USA TO STATE:" and in approximately one-half of the signs the shortened preamble text will read "A FEDERAL COURT HAS ORDERED PHILIP MORRIS USA & R.J. REYNOLDS TOBACCO TO STATE:".  *Id.*

- If a Participating Retailer Location is required to post more than one POS Corrective-Statement Sign and is located in a census tract identified by Plaintiffs as having a significant percentage of Spanish speakers, then the POS Corrective-Statement Sign adjacent to the merchandising set will be in English and the second sign will be in Spanish.  *See* Proposed Order ¶ II.3.

- The typeface, color, and other design features of the POS Corrective-Statement Signs will comply with the Style Guide attached as Exhibit A to the Proposed Order.  *See* Proposed Order ¶ I.E.

**Implementation Timeline**

- The first day of the first month following this Court's entry of the Proposed Order is the beginning of a six-month Ramp-Up Period, during which Manufacturers will amend or supplement their contracts with Participating Retailers to reflect the terms of the order and will print and begin to distribute the POS Corrective-Statement Signs to Participating Retailer Locations.  *See* Proposed Order ¶¶ I.LL, III.1, III.2, III.4, IV.1.

- A three-month Posting Period will follow the Ramp-Up Period.  *See* Proposed Order ¶ I.GG.  During the Posting Period, Manufacturers will continue to distribute the POS Corrective-Statements Signs to Participating Retailer Locations.  Manufacturer representatives will assist Participating Retailer Locations they visit in properly displaying the POS Corrective-Statement Signs.  *See id.* ¶ IV.2.  If no Manufacturer representative visits a Participating Retailer Location during the Posting Period,

4

- Manufacturers will mail or otherwise deliver the POS Corrective-Statement Signs to the Participating Retailer Location for posting. *See id.* ¶ IV.4.

- The Implementation Period begins on the first day of the first month following the Posting Period and lasts for 21 months. *See* Proposed Order ¶ I.K. Participating Retailer Locations are required to post the POS Corrective-Statement Signs for the duration of the Implementation Period. *Id.* ¶ II.1.

- During the Rotation Period, which will occur over the course of the tenth, eleventh, and twelfth months of the Implementation Period, each POS Corrective-Statement Sign in a Participating Retailer Location shall be replaced with another Manufacturer-supplied POS Corrective-Statement Sign bearing a different message. *See* Proposed Order ¶¶ I.RR, IV.5.

**Audits**

- The Proposed Order establishes an audit procedure to monitor Participating Retailer Locations' compliance with the order. *See* Proposed Order ¶ V.

- The Auditor will be one or more firms, unaffiliated with and independent of any Manufacturer and acceptable to Plaintiffs, retained by Manufacturers to carry out the audit procedure. *See* Proposed Order ¶ I.D.

- A photo audit will occur during the Posting Period and Rotation Period. *See* Proposed Order ¶ V.4. Manufacturer representatives who post signs in Participating Retailer Locations during those periods will be required to submit photos demonstrating compliance with the order's requirements to the Auditor's Photo Database; Participating Retailer Locations that are not visited by a Manufacturer Representative during those periods will have the option of submitting photos but will not be required to do so. *Id.* ¶¶ IV.3-IV.5. During each photo audit, the Auditor will review the photos in the Photo Database and notify Participating Retailer Locations that appear to be noncompliant with the requirements of the Proposed Order. *Id.* ¶ V.4. Participating Retailer Locations that fail to demonstrate compliance in response to the Auditor's notice will be added to the Suspected Noncompliance Pool, which means that they will be at an increased risk of an In-Person Audit. *Id.* ¶ V.4.b.

- The Auditor will create a Tip Line for the general public to report suspected noncompliance with the requirements of the Proposed Order. *See* Proposed Order ¶ V.5. Participating Retailer Locations identified through the Tip Line as suspected of noncompliance will be added to the Suspected Noncompliance Pool. *Id.* ¶ 5.b.

- There will be four Audit Periods during the 21-month Implementation Period: two nineteen-week periods before the Rotation Period and two nineteen-week periods after the Rotation Period. *See* Proposed Order ¶¶ I.C, V.3.

- During each Audit Period, the Auditor will conduct In-Person Audits of Participating Retailer Locations drawn from two separate pools: the Representative Sample Pool and the Suspected Noncompliance Pool. *See* Proposed Order ¶ V.6. The Representative Sample Pool will be a random sample of 6,000 Participating Retailer Locations selected based on a formula specified in the Proposed Order. *Id.* ¶¶ I.NN, V.6.a. The Suspected Noncompliance Pool will be an audit pool of Participating Retailer Locations (a) for which no photo showing compliance has been submitted, (b) that have been flagged as suspected of noncompliance by the Tip Line, or (c) that were found in Major Noncompliance via an In-Person Audit in the immediately prior Audit Period. *Id.* ¶ I.WW. If there are more than 4,000 Participating Retailer Locations in the Suspected Noncompliance Pool in any Audit Period, then Plaintiffs will select the Participating Retailer Locations from the Suspected Noncompliance Pool that will be subject to an In-Person Audit. *Id.* ¶ V.6.b.

**Noncompliance Consequences**

- The Proposed Order provides consequences for Participating Retailer Locations for both Minor Noncompliance and Major Noncompliance and provides for monetary penalties to be imposed on Manufacturers in the event that a certain percentage of a representative sample of Participating Retailer Locations are found to be noncompliant.

- Minor Noncompliance includes, for example, obstructing any portion of a POS Corrective-Statement Sign other than the preamble, message, or icon, posting a POS Corrective-Statement Sign in a location that makes the message visible to customers but that is not the precise location required, and posting a POS Corrective-Statement Sign in English where it is required to be posted in Spanish. *See* Proposed Order Ex. B.

- Major Noncompliance includes, for example, failing to post a required POS Corrective-Statement Sign, obstructing a POS Corrective-Statement Sign in a manner that results in the preamble, message, or icon not being visible from the customer's vantage point, or damaging or removing a required POS Corrective-Statement Sign. *See* Proposed Order Ex. B.

- The Proposed Order provides for the following consequences to be imposed on Participating Retailer Locations for Minor Noncompliance:

  - First determination of Minor Noncompliance: the noncompliant Participating Retailer Location will be counseled into compliance by Manufacturers;

  - Second determination of Minor Noncompliance: the noncompliant Participating Retailer Location will be counseled into compliance by Manufacturers and receive a warning letter from the Auditor that the third finding of Minor Noncompliance will result in the posting of an additional POS Corrective-Statement Sign;

6

- Third determination of Minor Noncompliance: the noncompliant Participating Retailer Location will be counseled into compliance by Manufacturers and will be required to post an additional 144-square-inch POS Corrective-Statement Sign for 120 days. *See* Proposed Order ¶ VI.1.

- The Proposed Order provides for the following consequences to be imposed on Participating Retailer Locations for Major Noncompliance:

  - First determination of Major Noncompliance: the noncompliant Participating Retailer Location will be (i) counseled into compliance by Manufacturers and (ii) required to post an additional 144-square-inch POS Corrective-Statement Sign for the remainder of the Implementation Period (but if Manufacturer representatives do not regularly visit and have not visited the noncompliant Participating Retailer Location since the beginning of the Posting Period, the noncompliant Participating Retailer Location will (i) be counseled into compliance by Manufacturers and (ii) receive a warning letter);

  - Second determination of Major Noncompliance: the noncompliant Participating Retailer Location will (i) be counseled into compliance by Manufacturers and (ii) owe to each Manufacturer with which it is contracted a payment equal to 4 weeks of any Price Promotion payments for Covered Brands that are owed to the Participating Retailer Location by each contracted Manufacturer;

  - Third determination of Major Noncompliance: the noncompliant Participating Retailer Location will (i) be counseled into compliance by Manufacturers and (ii) owe to each Manufacturer with which it is contracted a payment equal to 13 weeks of any Price Promotion payments for Covered Brands that are owed to the Participating Retailer Location by each contracted Manufacturer;

  - Fourth determination of Major Noncompliance: the noncompliant Participating Retailer Location will (i) be counseled into compliance by Manufacturers and (ii) be suspended for 17 weeks from the retail-merchandising contracts of each Manufacturer with which it is contracted. *See* Proposed Order ¶ VI.2.

- The Proposed Order provides for the following monetary penalties to be imposed on Manufacturers based on noncompliance by Participating Retailer Locations:

  - If the Auditor finds a noncompliance rate among the Representative Sample of greater than 15% (as calculated pursuant to the Proposed Order) in any of the first, second, or third Audit Periods, then Manufacturers will pay a civil penalty to the U.S. Treasury of $3,500,000 to be apportioned among Manufacturers as determined by Manufacturers;

  - If the Auditor finds a noncompliance rate among the Representative Sample of greater than 15% (as calculated pursuant to the Proposed Order) in the fourth Audit Period, then Manufacturers will pay a civil penalty to the U.S. Treasury of

$7,500,000 to be apportioned among Manufacturers as determined by Manufacturers. *See* Proposed Order ¶ VI.4.

**Working Group And Noncompliance Appeals**

- The Proposed Order provides for the parties to establish a Working Group to address implementation and compliance questions and any individual circumstances that do not meet the order's terms. *See* Proposed Order ¶ VII.1.

- The Working Group will consist of ten individuals: three individuals appointed by the Department of Justice, two individuals appointed by the Public Health Intervenors, one individual appointed by each of (i) Altria Group, Inc., or Philip Morris USA Inc., (ii) R.J. Reynolds Tobacco Company, and (iii) ITG Brands, LLC, and one individual appointed by each of the two Retailer Groups. *See* Proposed Order ¶ I.YY.

- The Proposed Order further provides for the parties to select, and the Court to appoint, an Adjudicator to hear appeals from Working Group decisions. *See* Proposed Order ¶ VII.4. The parties will endeavor to select the Adjudicator by agreement in advance of the settlement hearing. *Id.* ¶ VII.4.b. If the parties are unable to agree on the Adjudicator, the Court will select the Adjudicator from among the individuals nominated by the parties. *Id.*

- If a Participating Retailer Location receives a notice of Minor Noncompliance or Major Noncompliance from the Auditor, the Participating Retailer Location or a member of the Working Group may submit a Noncompliance Appeal to the Working Group. *See* Proposed Order ¶ V.7.b.

- A decision on a Noncompliance Appeal of Minor Noncompliance made by the vote of a majority of the members of the Working Group is final and not subject to appeal. *See* Proposed Order ¶ V.7.d.

- A decision adverse to the Participating Retailer Location on a Noncompliance Appeal of Major Noncompliance made by the vote of a majority of the members of the Working Group may be appealed to the Adjudicator. *See* Proposed Order ¶ V.7.e.

- If there is a tie vote of the members of the Working Group regarding a Noncompliance Appeal of either Major Noncompliance or Minor Noncompliance, the Participating Retailer Location or a member of the Working Group may appeal to the Adjudicator. *See* Proposed Order ¶ V.7.f.

- The Adjudicator's decision on a Noncompliance Appeal of Major Noncompliance is appealable to the Court by the Participating Retailer Location or a member of the Working Group. *See* Proposed Order ¶ V.7.g. The proposed standard of review for the Court to apply in reviewing a Noncompliance Appeal decision made by the Adjudicator is clear error, regardless of the basis for the appeal. *Id.* ¶ V.7h.

The parties would be pleased to answer any questions from the Court in advance of, or during, the Point-of-Sale Settlement Hearing.

Dated: July 15, 2022

                                          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LISA K. HSIAO, Assistant Director
Consumer Protection Branch

/s/
ADAM E. LYONS
Assistant Director
DANIEL K. CRANE-HIRSCH
JAMES T. NELSON
Senior Trial Attorneys
ZACHARY A. DIETERT
MEREDITH B. HEALY
Trial Attorneys
Civil Division
United States Department of Justice
PO Box 386
Washington, DC 20044-0386
Telephone: 202-532-4406
adam.e.lyons@usdoj.gov

*Attorneys for Plaintiff United States of America*

/s/
Scott P. Lewis (pro hac vice)
slewis@andersonkreiger.com
Melissa C. Allison (admitted pro hac vice)
mallison@andersonkreiger.com
Christina S. Marshall (D.C. Bar # MA0022)
cmarshall@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Attorneys for the Public Health Plaintiff-Intervenors*


/s/
Miguel A. Estrada (D.C. Bar No. 456289)
Amir C. Tayrani (D.C. Bar No. 490994)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8257
Fax: (202) 530-9016
mestrada@gibsondunn.com
atayrani@gibsondunn.com

George C. Lombardi
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5969
Fax: (312) 558-5700
glombard@winston.com

*Attorneys for Defendants Altria Group, Inc. and Philip Morris USA Inc. and Altria*

/s/
John M. Gore (D.C. Bar No. 502057)
Jon G. Heintz (pro hac vice)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
jheintz@jonesday.com

Jeffrey A. Mandell (D.C. Bar No. 999791)
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Madison, Wisconsin 53703
Telephone: (608) 256-0226
Fax: (608) 259-2600
jmandell@staffordlaw.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company (individually, as successor in interest to Brown & Williamson Tobacco Corporation, and as successor to Lorillard Tobacco Company)*


/s/
Elizabeth B. McCallum (D.C. Bar No. 451361)
Carey S. Busen (D.C. Bar No. 982217)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
Telephone: (202) 861-1500
Fax: (202) 861-1783

*Attorneys for Post-Judgment Parties Regarding Remedies ITG Brands, LLC, Commonwealth Brands, Inc. and Commonwealth-Altadis, Inc.*

11

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of July 2022, a copy of the foregoing Joint Motion to Enter Fourth Superseding Consent Order Implementing the Corrective-Statements Remedy at Point of Sale was filed electronically with the Clerk of Court, using the CM/ECF system, which sent notification of the filing to counsel of record in this case.

/s/ _____