UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHILIP MORRIS USA, INC., et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 99-2496 (PLF) |

NOTICE

On July 15, 2022, the parties filed a joint motion proposing that the Court enter a consent order to govern the corrective-statements remedy at the point of sale. See Joint Motion to Enter Fourth Superseding Consent Order Implementing the Corrective-Statements Remedy at Point of Sale ("Joint Motion") [Dkt. No. 6507].[1] The Joint Motion included a proposed Fourth Superseding Consent Order Implementing the Corrective-Statements Remedy at Point of Sale ("Proposed Consent Order") [Dkt. No. 6507-3]. On July 28, 2022, the Court conducted a "Point-of-Sale Settlement Hearing" at which the parties, national retailer groups, and participating retailers (as defined in the Proposed Consent Order) were invited to offer their views in support of or opposition to the Proposed Consent Order.

---

[1] The parties are the United States and the Public Health Intervenors (collectively, "plaintiffs"); Philip Morris USA Inc., Altria Group, Inc., and R.J. Reynolds Tobacco Company (individually, as successor in interest to Brown & Williamson Tobacco Corporation, and as successor to Lorillard Tobacco Company) (collectively, "defendants"); and ITG Brands, LLC, Commonwealth Brands, Inc., and Commonwealth-Altadis, Inc. (collectively, the "remedies parties"). Defendants and the Remedies Parties are collectively referred to as the "manufacturers."

On August 18, 2022, after carefully reviewing certain provisions of the Proposed Consent Order and having interviewed Judge Richard Levie and Linda Singer as proposed candidates for appointment as Adjudicator under Section VII.4.b of the Proposed Consent Order, the Court raised several questions about the Proposed Consent Order to the parties via email. The Court requested that the parties respond to the questions on or before August 29, 2022. On August 26, 2022, defendants filed an unopposed motion on the public docket seeking a two-week extension to jointly submit written responses to the questions posed by the Court on August 18, 2022. See Unopposed Motion for Extension of Time [Dkt. No. 6514] at 2. The Court granted this request on August 26, 2022 and ordered the parties to meet and confer and submit responses to the Court's questions on or before September 12, 2022. See Minute Order (Aug. 26, 2022). The Court now wishes to provide public notice of the questions previously emailed to the parties on August 18, 2022, copied below:

1) When do the parties anticipate the Adjudicator's work will actually start? Once the work begins, for how many months will it last? And will most of the work be early in the time period following the Effective Date or later?

2) Under the consent order, must the Adjudicator be present at every Working Group meeting? See Consent Order § VII.2 ("Attendance of six members of the Working Group . . . and attendance of the Adjudicator constitutes a quorum for the transaction of business." (emphasis added)).

3) If so, why is the Adjudicator's presence required at every meeting? The Court assumes that there may be several meetings, especially during the Ramp-Up Period, at which Noncompliance Appeals will not be at issue.

4) Relatedly, what is the Adjudicator's role when it comes to Working Group discussions outside of Noncompliance Appeals? For example, the consent order states that "[t]he Adjudicator may be asked to resolve issues including Noncompliance Appeals on the terms provided in Section V.7 above, or other tie votes of the Working Group." Consent Order § VII.4.a (emphasis added). Specifically, what do "other tie votes" entail?

5) Does the Adjudicator have a role to play as a mediator to resolve issues in dispute in or outside the Working Group? In other words, does he or she wear two hats – one as mediator/facilitator and the other as adjudicator/appellate decision-maker?

6) What is the effect of a tie vote in the Working Group if neither the Participating Retailer Location nor a member of the Working Group appeals the decision?  See Consent Order § V.7.f.

7) At the settlement hearing, counsel for the manufacturers represented that the Adjudicator's presence at the Working Group is intended to aid efficiency so that he or she is fully informed and can decide Noncompliance Appeals quickly.  A particular retailer may, however, raise concerns that the Adjudicator is involved in ex parte discussions with the Working Group.  Have the parties accounted for this potential concern?

8) Is the Adjudicator required to issue a decision on a Noncompliance Appeal in writing?  See Consent Order §§ V.7.i, VII.4.  Similarly, is the Working Group required to issue decisions in writing?

9) Will the Adjudicator be provided funds to hire a law clerk or some other individual to aid him or her with Noncompliance Appeals?

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE:  August 31, 2022